# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD. | )<br>)<br>) |
| Plaintiffs, | ) Case No. 1:17-CV-01973<br>)<br>) |
| v. | ) Honorable Samuel Der-Yeghiayan<br>) |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., and HYTERA COMMUNICATIONS AMERICA (WEST), INC. | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**HYTERA DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6), OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT <u>UNDER FED. R. CIV. P. 12(e)</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ ii

I. INTRODUCTION ...............................................................................................................4

II. BACKGROUND .................................................................................................................6

    A. The allegations in the complaint are based on events that occurred more than five years ago. ........................................................................................6

        1. The complaint acknowledges the alleged acts of Motorola Malaysia's former employees took place long ago. ..................................6

        2. If there was a conspiracy between Motorola Malaysia's former employees and Hytera China, Motorola should have been on notice more than seven years ago. ........................................................................6

        3. The only features the complaint describes were readily observable and publicly touted by Motorola years ago. .............................7

    B. Motorola's pleadings in its related International Trade Commission action demonstrate Motorola's ability to analyze and obtain detailed information about Hytera's products. ..................................................................8

III. ARGUMENT .......................................................................................................................9

    A. The complaint relies on acts that occurred well outside the statute of limitations for the causes of action it alleges. ..........................................................9

    B. The Court should dismiss the complaint, or at least order a more definite statement, because the complaint fails to provide sufficient information for Hytera to answer. ........................................................................11

        1. The complaint fails to establish Motorola USA, the only party residing in this district, is a proper plaintiff. ............................................12

        2. The complaint fails to identify the alleged trade secrets. .........................13

        3. The complaint improperly assigns collective blame to the Hytera defendants. ..................................................................................15

IV. CONCLUSION ..................................................................................................................16

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................9

*AutoMed Techs., Inc. v. Eller*,
   160 F. Supp. 2d 915 (N.D. Ill. 2001)......................................................................12

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ..................................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................9

*Bladeroom Grp., Ltd. v. Facebook, Inc.*,
   No. 5:15-cv-1370-EJD,
   2015 WL 8028294 (N.D. Cal. Dec. 7, 2015)..........................................................11

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ....................................................................................4

*C&F Packing Co. v. IBP, Inc.*,
   No. 93 C 1601,
   1998 WL 1147139 (N.D. Ill. Mar. 16, 1998)...........................................................7

*Carpenter v. Aspen Search Advisers, LLC*,
   No. 10 C 6823,
   2011 WL 1297733 (N.D. Ill. Apr. 5, 2011) ...........................................................10

*Computer Care v. Serv. Sys. Enterprises, Inc.*,
   982 F.2d 1063 (7th Cir. 1992) ................................................................................10

*Davis v. Bank of Am. Corp.*,
   No. 16 C 5993,
   2017 WL 569159 (N.D. Ill. Feb. 13, 2017) ...........................................................10

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ......................................................................................5

*Mission Measurement Corp. v. Blackbaud, Inc.*,
   216 F. Supp. 3d 915 (N.D. Ill. 2016)......................................................................11

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
   407 F.2d 288 (9th Cir.) .............................................................................................8

*Mopex, Inc. v. Barclays Global Investors, N.A.*,
 No. 01 C 5976,
 2003 WL 880996 (N.D. Ill. Mar. 5, 2003) ..............................................................................8

*RPM, Inc. v. Oatey Co.*,
 No. 3282-M, 3289-M,
 2005 WL 663057 (Ohio Ct. App. Mar. 23, 2005) ..................................................................9

*Thermal Zone Prod. Corp. v. Echo Eng'g, Ltd.*,
 No. 93 C 0556,
 1993 WL 358148 (N.D. Ill. Sept. 14, 1993) ........................................................................10

*Thermodyne Food Serv. Prods. v. McDonald's Corp.*,
 940 F. Supp. 1300 (N.D. Ill. 1996) ......................................................................................11

**STATUTES**

18 U.S.C. § 1836(b) ........................................................................................................................9

18 U.S.C. § 1836(b)(1) .................................................................................................................12

18 U.S.C. § 1836(d) ......................................................................................................................10

765 ILCS § 1065/7 ........................................................................................................................10

**OTHER AUTHORITIES**

Unif. Trade Secrets Act § 6, ULA TRADE SECR § 6 ................................................................11

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................12

Fed. R. Civ. P. 12(e) ......................................................................................................................12

I.  **INTRODUCTION**

The essence of the complaint filed by Motorola Solutions, Inc. ("Motorola USA") and Motorola Solutions Malaysia SDN, BHD ("Motorola Malaysia") (collectively "Motorola") is that almost a decade ago in Malaysia, three Malaysian non-parties took trade secrets belonging to either Motorola USA or Malaysia and used those secrets while working for Hytera Communications Corporation, Ltd. ("Hytera China") in China to develop products first sold seven years ago. The complaint says nothing concrete about the alleged trade secrets, such as what specific technologies they relate to, where they exist in Hytera's products, which Motorola entity owns them, or how, as the complaint alleges, the Hytera Defendants were able to hide the alleged bad acts. This latter issue is particularly important since the complaint acknowledges Hytera's products, plans, and details were all public, and the products have been available for many years for Motorola to examine them for any improper use of Motorola technology.

One of the more glaring problems with this case is its untimeliness. The complaint must allege acts that occurred on or after March 14, 2014 to avoid the statute of limitations for the Federal Defend Trade Secret Act, and on or after March 14, 2012 to avoid the statute of limitations for the Illinois Trade Secret Act. But the only acts of misappropriation the complaint describes occurred in 2008, when three non-parties allegedly stole trade secrets from Motorola Malaysia computers, or 2010, when Hytera China released a product Motorola accuses of incorporating some undefined trade secrets.

Another problem with the complaint is that it lumps together both Motorola companies, making it impossible to know which one of them owns what (if any) trade secrets, and lumps allegedly confidential documents with public documents (e.g., patents, product manuals, and whitepapers) to describe what Motorola claims to be its proprietary information. The complaint then confuses things further by lumping Hytera China with Hytera America, Inc. ("Hytera

4

Florida") and Hytera Communications America (West), Inc. ("Hytera California") to allege that one or more of them conspired with the three former Motorola Malaysia employees to take one or the other Motorola parties' trade secrets and use them in the products Hytera China makes.

Yet another significant problem with the complaint is the fact that Motorola's devices that contain the alleged trade secrets have been sold and used publicly for more than a decade. During that time, Motorola has made public a large amount of information about those products and their features in presentations, products, patents, and papers. As a result, only Motorola knows what information might still be secret, but they are not telling.

Federal Notice Pleading does not require a lot of detail, but it does require allegations to which the defendants can respond. There is no way for the Hytera defendants to answer the complaint. It does not identify what the Hytera defendants (as opposed to the three non-party ex-Motorola employees) did, or what Motorola U.S. or Malaysia trade secrets (if any) made their way into Hytera China's products. Confusing matters worse is how long plaintiffs waited to sue, making it likely that even if there was some Motorola information in the accused Hytera products, that information is now public.

Instead of providing such basic information, Motorola repeatedly issues general and vague charges against the Hytera defendants. What the complaint omits is any explanation why Motorola waited so long to act. It suggests it just noticed the former employees downloaded a number of documents before they departed, but Motorola knew long ago these employees joined Hytera. If Motorola waited nine years to check its own download records, it cannot seriously claim it was diligent in protecting its secrets.

Nor can Motorola legitimately assert that Hytera concealed its activity. Throughout its complaint, Motorola relies on Hytera's public statements and documents from 2008, 2009 and

2010 as evidence of misappropriation. And, of course, Hytera released its products in 2010, so Motorola had the opportunity to study those products in great detail. In fact, Motorola does have a great deal of information about the accused products, which is evident from patent infringement actions Motorola brought in this court and the International Trade Commission, the latter complaint requiring detailed claim charts.

## II. BACKGROUND

### A. The allegations in the complaint are based on events that occurred more than five years ago.

#### 1. The complaint acknowledges the alleged acts of Motorola Malaysia's former employees took place long ago.

The events that form the basis of the complaint revolve around three individuals who left Motorola Malaysia and joined Hytera China in 2008. Complaint, ¶5. According to the complaint, "in the weeks prior to their resignations from Motorola (and unbeknownst to Motorola), the Hytera Employees surreptitiously downloaded and misappropriated more than 7,000 technical, marketing, sales, and legal documents related to Motorola's digital radio and infrastructure products." *Id.*, ¶6. Motorola does not explain how they could have hidden such acts or when or why the "subsequent investigation" was conducted.

#### 2. If there was a conspiracy between Motorola Malaysia's former employees and Hytera China, Motorola should have been on notice more than seven years ago.

The complaint repeatedly refers to collusion between Motorola Malaysia's former employees and Hytera, but provides no specifics. For instance, the complaint cites as evidence of Hytera China's conspiracy, a Hytera China presentation made in 2009 by one of the former Motorola Malaysia employees, Samuel Chia. *Id.*, ¶50. Rather than suggesting a secret conspiracy, this public act shows Hytera was not hiding anything.

The complaint also alleges the three former Motorola Malaysia employees "were lured to Hytera and accepted employment at Hytera as part of Hytera's unlawful scheme to take Motorola's confidential trade secrets" (*id.*, ¶57), but the complaint's only evidence of any "unlawful scheme" is, tautologically, the hiring of these individuals in 2008. The complaint also alleges the three individuals hid the fact they were joining Hytera (*id.*, ¶44), but never denies Motorola knew they went to Hytera China shortly after they resigned. This is clear from the complaint, which cites the 2009 public report noted above and a Hytera China patent application naming Samuel Chia as an inventor that was published internationally in June 2010 and in the United States in August 2011. *Id.*, ¶58, citing U.S. Pat. No. 8,982,736.[1]

Motorola's complaint also describes a 65-page, mid-2010[2] presentation as showing "Hytera publicly touts [misappropriated material as] *its* own 'innovations," which "evidenc[es] a degree of wanton misappropriation rarely seen even in cases like these." Complaint, ¶6. This presentation, however, shows that Hytera was not hiding what it was doing and demonstrates that Motorola did not think that (or care whether) Hytera had used Motorola trade secrets.

### 3. The only features the complaint describes were readily observable and publicly touted by Motorola years ago.

Motorola alleges certain features in "Motorola's MotoTRBO hardware and software include Motorola's confidential and proprietary technology and trade secrets" (complaint, ¶ 28), but the complaint cites a publicly available document, the MotoTRBO System Planner, which

---

[1] A copy of the '736 patent is attached as Exhibit A to the Declaration of Erik Puknys ("Puknys Decl.") in support of this motion. In deciding this motion to dismiss, the Court may consider this and the other documents referenced in the complaint under the "incorporation-by-reference" doctrine. *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

[2] Puknys Decl., Ex. B, http://www.w4cll.com/Digital/TDMA/HyteraIntro.pdf, at 51 (Phase I release of April 2010 and predicting Phase II in Q3 2010 and Phase III in 2011).

describes the allegedly stolen features. *See* Complaint, ¶¶29-35. The MotoTRBO System Planner was published at least as early as 2008, the same year the former Motorola Malaysia employees allegedly stole this information. Puknys Decl., Ex. C. It was published at least two more times, in 2010 and again in 2011, outside the statute of limitations period. Puknys Decl., Exs. D and E.

    **B.    Motorola's pleadings in its related International Trade Commission action demonstrate Motorola's ability to analyze and obtain detailed information about Hytera's products.**

Motorola filed infringement claim charts in its International Trade Commission ("ITC") action against Hytera that included detailed information based on Hytera's public documents and Hytera's physical products, which Motorola purchased on the open market. *See* ITC Investigation No. 337-TA-1053.[3] Motorola cites to 24 Hytera documents that include Hytera's white papers, product release notes and specifications, presentations, service publications, marketing materials, user guides, case studies, corporate overviews, and software. *See* Puknys Decl., Exs. F-L, (claim charts from Motorola's ITC Complaint). Motorola also analyzed Hytera products purchased from retailers. *Id.* These documents and products gave Motorola a great deal of information on Hytera's products.

For example, Motorola relies on Hytera's "DMR Conventional Series: Release Notes," which includes detailed descriptions of features for Hytera's DMR software and indicates that Hytera released versions of the software with these features as early as September 2011. Puknys Decl., Ex. M at 4 (Exhibit 69 to Motorola's ITC Complaint). Motorola further relies on Hytera's "Introduction to Hytera DMR" presentation, which identifies features in its products including

---

[3] The ITC pleadings are appropriate for consideration in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) because they are subject to judicial notice. *See, e.g., Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (stating a "district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment.") (citations and internal quotation marks omitted).

8

"mix mode" scanning, "GPS revert," "Lone Worker," "Telemetry," and "Man Down." Puknys Decl., Ex. N (Exhibit 81 to Motorola's ITC Complaint) (identifying products released with each software version, features in each software version, and targeted release months for each software version). The presentation indicates that all the software versions containing these features were released or targeted for release as of May, 2011. *Id.* at 4-5. Motorola also cites to a 2009 presentation on the DMR protocol by a former Motorola Malaysia employee. Puknys Decl., Ex. O (Exhibit 70 to Motorola's ITC Complaint).

## III.  ARGUMENT

This lawsuit is not a serious attempt to vindicate any rights. It was brought for publicity, timed to coincide with a major trade show that was set to begin on March 27, 2017.[4] On its face, the complaint relies solely on allegations of acts that occurred before 2010, well outside of the limitations period. The complaint contains admissions the Motorola Plaintiffs knew, or should have known, whether there was basis for the complaint over seven years ago. The complaint does not explain why Motorola waited to make the allegations in the complaint, but its press releases[5] show the complaint was a marketing ploy.

### A.  The complaint relies on acts that occurred well outside the statute of limitations for the causes of action it alleges.

The complaint asserts two causes of action: trade secret misappropriation under the federal Defend Trade Secret Act, 18 U.S.C. § 1836(b), and trade secret misappropriation under the Illinois Trade Secret Act. Complaint, Counts I and II. The Defend Trade Secrets Act has a statute of limitations of three years:

---

[4] http://urgentcomm.com/iwce-2017
[5] https://newsroom.motorolasolutions.com/news/motorola-solutions-files-patent-infringement-and-trade-secret-misappropriation-complaints-against-hytera-communications.htm
http://urgentcomm.com/motorola-solutions/motorola-solutions-sues-hytera-communications-using-stolen-patents-trade-secrets

> A civil action under [18 U.S.C. § 1836(b)] may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation.

18 U.S.C. § 1836(d).

The Illinois Trade Secret Act has a statute of limitations of five years:

> An action for misappropriation must be brought within 5 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this Act, a continuing misappropriation constitutes a single claim.

765 ILCS § 1065/7.

Most of the allegations revolve around the alleged bad acts of the three former Motorola Malaysia employees in 2008, yet Motorola provides no explanation for waiting to sue until after the limitations periods for both Counts in their complaint. The facts in the complaint dispel any dispute that Motorola knew or should have known about the facts underlying its complaint before the statutes of limitations extinguished Motorola's right to sue. *See, e.g., C&F Packing Co. v. IBP, Inc.*, No. 93 C 1601, 1998 WL 1147139, at *4 (N.D. Ill. Mar. 16, 1998) (a claim for misappropriation accrues when the defendant "either wrongfully disclosed or used one or more of [plaintiff's] trade secrets.").

The complaint asserts that in 2008 the three Motorola Malaysia employees left to join Hytera China and took plaintiff's trade secrets. Complaint, ¶ 59. Although the complaint states Motorola was not aware of where they were going when they left Motorola, it admits that it was public knowledge that at least one of the ex-employees was working on the same technology for Hytera China before 2010. *See supra* page 4.

10

Further, the complaint admits Hytera released its first competing product in 2010 and relies on a 2010 Hytera presentation as evidence of Hytera's "egregious[]" theft of Motorola trade secrets. Hyperbole aside, the presentation certainly shows Motorola had sufficient information about Hytera's products to be on notice of in 2010. *Id.,* ¶48. In fact, from publicly available information, much of it available no later than 2011, Motorola was able to craft extraordinarily detailed claim charts for the Hytera products, as shown by its complaint against Hytera in the International Trade Commission. *See supra* pages 5-6. There is no excuse for Motorola's delay in bringing this suit.

Because the complaint itself shows Motorola knew or should have known of the claims it asserts in this case long before March 14, 2012, the complaint must be dismissed. See *Mopex, Inc. v. Barclays Global Investors, N.A.*, No. 01 C 5976, 2003 WL 880996, at **1, 3 (N.D. Ill. Mar. 5, 2003) (finding Mopex "pleaded itself out of court" because the complaint revealed Mopex learned of the alleged misappropriation when Barclays's product was first publicly traded, several months outside the limitations period).[6]

### B. The Court should dismiss the complaint, or at least order a more definite statement, because the complaint fails to provide sufficient information for Hytera to answer.

The complaint also fails to put each defendant sufficiently on notice of what it is accused of because there is essentially no information about the allegedly misappropriated trade secrets. A plaintiff's conclusory allegations does not satisfy the requirement of Federal Rule of Civil

---

[6] Motorola cannot argue that it still might recover for the continuing use of its trade secrets after the limitations period. Both the ITSA and DTSA adopted language from the Uniform Trade Secrets Act ("For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation") that "reject[ed] a continuing wrong approach to the statute of limitations . . . ." *See* Unif. Trade Secrets Act § 6, ULA TRADE SECR § 6 (Editors' Notes); *see also Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir.) ("The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated. The cause of action arises but once . . , .").

Procedure 8(a)(2) that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, because the complaint does not meet the pleading standard of the Federal Rules of Civil Procedure, it should be dismissed under Fed. R. Civ. P. 12(b)(6). But even if the Court declines to dismiss the complaint on this ground, it should, at a minimum, require Motorola to provide a more definite statement under Rule 12(e). *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.")

### 1. The complaint fails to establish Motorola USA, the only party residing in this district, is a proper plaintiff.

Only an "owner of a trade secret" may sue for misappropriation under the Federal Defend Trade Secrets Act. *See* 18 U.S.C. § 1836(b)(1). The same is true for an action brought under state trade secret statutes, like Illinois's, based on the Uniform Trade Secrets Act. *See, e.g., RPM, Inc. v. Oatey Co.,* No. 3282-M, 3289-M, 2005 WL 663057, at *3 (Ohio Ct. App. Mar. 23, 2005) ("to bring a claim for misappropriation of trade secrets, one must either own or have possession or a right to control the trade secrets and have taken active steps to maintain their secrecy").

The only party with any connection to this Court is Motorola USA. But the complaint does not allege Motorola USA owns the allegedly misappropriated trade secrets. Instead, in describing whose trade secrets were allegedly stolen, the complaint refers only to "Motorola," which is defined to include both Motorola USA and Motorola Malaysia. Complaint, at 1. Because it fails to show which Motorola Plaintiff owned or possessed which trade secret, the complaint fails to meet the Supreme Court's *Twombly* and *Iqbal* standards. *See Davis v. Bank of*

12

*Am. Corp.*, No. 16 C 5993, 2017 WL 569159, at *1 (N.D. Ill. Feb. 13, 2017) ("Rule 8(a)(2) precludes lumping plaintiffs and defendants together without clarifying which plaintiff alleges what wrongdoing against which defendant.").

### 2. The complaint fails to identify the alleged trade secrets.

A complaint asserting an ITSA claim must show how the alleged trade secrets differ from public information. *See, e.g., Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (dismissing trade secret counterclaims because "Aspen's allegations, while lengthy, provide no specifics about the nature of the confidential data for which it claims trade secret protection"); *Thermal Zone Prod. Corp. v. Echo Eng'g, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 14, 1993) ("In order for this court to attempt to categorize the alleged material as a trade secret, it is necessary for the court to be directed as to how this information is unique and protected. The necessary detail required in pleading a cause of action under this Act is not present in the complaint.").

At best, the complaint appears to allege that Motorola trade secrets at issue were incorporated in several features of its MotoTRBO products including "VOX," "Telemetry," "Mixed Mode Scanning," and "GPS Revert Channel." *See* Complaint, at ¶¶29-35. But the complaint, by incorporating a document publicly describing these features in 2008 (the same year they were allegedly stolen), demonstrates these features are not trade secrets. *See* Puknys Decl., Ex. C, at 37, 77, 87, 117, 128.

Moreover, Motorola had those features in its MotoTRBO products, which the complaint indicates were released in 2006. Complaint, ¶48. Any feature that is apparent to the user or that can be reverse-engineered from a publicly available product is not protectable because it can be "readily duplicated without involving considerable time, effort or expense." *Computer Care v. Serv. Sys. Enterprises, Inc.*, 982 F.2d 1063, 1072 (7th Cir. 1992); *see also* 765 ITSA § 1065/2(a)

13

("Reverse engineering or independent development shall not be considered improper means"); *Thermodyne Food Serv. Prods. v. McDonald's Corp.*, 940 F. Supp. 1300, 1307 n.8 (N.D. Ill. 1996) ("Reverse engineering is the process by which a completed product is systematically broken down into its component parts to discover the properties of the product with the goal of gaining the expertise to reproduce the product.") (internal quotation marks omitted).

Motorola's MotoTRBO product line is subject to public standards, Puknys Decl., Exs. D and E (MotoTRBO System Planner) at 29 (stating that Motorola employs "manufacturer-specific extensions that comply to the ETSI DMR Tier 2 standards"), and "Motorola has been awarded thousands of patents covering, among other things, its digital two-way technology." Complaint, ¶37. Neither category of information qualifies as a trade secret. *See, e.g., Bladeroom Grp., Ltd. v. Facebook, Inc.*, No. 5:15-cv-1370-EJD, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015) ("It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain.") (citation and internal quotation marks omitted).

Defendants are not insisting that Motorola put its trade secrets in the complaint. *See, e.g., Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) ("while it is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated, trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.") (citations and internal quotation marks omitted). But Motorola has to do more than point to "broad areas of technology." It needs to indicate what portion of the accused features it asserts contain protected secrets, and represent

14

that those secrets have been maintained in confidence.[7] As it stands right now, there is no indication that Hytera has done anything other than incorporate common and readily observable features into its products, which Motorola had not challenged for seven years. Accordingly, the complaint fails to assert a cognizable claim for trade secret misappropriation.

### 3. The complaint improperly assigns collective blame to the Hytera defendants.

A plaintiff cannot simply lump together a group of defendants and generally allege that one of them, or some combination of them, is liable. *See, e.g., Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."). The complaint lumps together three non-party ex-employees of Motorola Malaysia with Hytera China, Hytera Florida, and Hytera California and assigns collective blame. Hytera California and Hytera Florida are each mentioned just twice in the complaint, first in the complaint's introductory paragraph, where they are grouped together with Hytera China to form the collective "Hytera" or "Defendants" that are invoked throughout the remainder of the complaint (Complaint at 1), and again where they are individually listed in "The Parties" section of the complaint (*id.*, ¶¶14, 15).

---

[7] Motorola's discovery requests demand information that encompasses Hytera's own trade secrets and confidential information. Because Motorola has not yet identified its trade secrets in enough detail to distinguish them from common knowledge, the parties are negotiating a phased discovery process that stays at least some discovery from the Hytera Defendants until Motorola has provided this identification. *See, e.g.*, *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed . . . to compel discovery") (citations and internal quotation marks omitted).

15

## IV. CONCLUSION

The complaint in this case fails to meet the standards for pleading required by the Federal Rules of Civil Procedure and should therefore be dismissed. Alternatively, the Court should order a more definite statement of Motorola's causes of action.

Dated: May 31, 2017

Respectfully submitted,

    /s/ Erik R. Puknys

| | |
|---|---|
| John T. Schriver (SBN 2507692) | Erik R. Puknys (*pro hac vice*) |
| JTSchriver@duanemorris.com | erik.puknys@finnegan.com |
| Hillary August (SBN 6308512) | Nicholas D. Petrella (*pro hac vice* to be filed) |
| HAugust@duanemorris.com | nicholas.petrella@finnegan.com |
| Duane Morris, LLP | FINNEGAN, HENDERSON, FARABOW, |
| 190 South LaSalle Street, Suite 3700 |  GARRETT & DUNNER, LLP |
| Chicago, Illinois 60603 | 3300 Hillview Avenue |
| Telephone:   (312) 499-6700 | Palo Alto, CA 94304 |
| Facsimile:   (312) 499-6701 | Telephone:   (650) 849-6600 |
| | Facsimile:   (650) 849-6666 |

E. Robert Yoches (*pro hac vice* to be filed)
bob.yoches@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

*Attorneys for Defendants,*
*HYTERA COMMUNICATIONS*
*CORPORATION LTD., HYTERA AMERICA,*
*INC., and HYTERA COMMUNICATIONS*
*AMERICA (WEST), INC.*

16

## CERTIFICATE OF SERVICE

I, Erik R. Puknys, an attorney, hereby certify that on **May 31, 2017**, I caused a true and correct copy of the **HYTERA DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6), OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e)** to be served via the Court's ECF system upon all counsel of record.

       */s/ Erik R. Puknys*