IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and<br>MOTOROLA SOLUTIONS MALAYSIA<br>SDN. BHD. | )<br>)<br>) | |
| | ) | Case No. 1:17-CV-01973 |
| Plaintiffs, | )<br>) | |
| v. | ) | Honorable Charles Norgle |
| | ) | |
| HYTERA COMMUNICATIONS<br>CORPORATION LTD.,<br>HYTERA AMERICA, INC., and<br>HYTERA COMMUNICATIONS<br>AMERICA (WEST), INC. | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**DECLARATION OF DING LIANG**

I, Ding Liang, hereby declare as follows:

1. I am over the age of eighteen and, except where I note that I am relying on information and belief, have knowledge of the facts set forth herein. If called to testify as a witness thereto, I could do so competently under oath.

2. I am an attorney at law and a partner in DeHeng Law Offices of Beijing, China. I am licensed to practice law in China.

3. I specialize in International Trade Law, Dispute Resolution, Intellectual Property Law, and Antitrust & Competition Law.

4. I hold three Master of Law degrees from Georgetown University and the University of International Business & Economics.

5. I have been asked by Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, to provide my opinion on whether the order Motorola seeks with its Motion to Compel Forensic Inspection of Hytera Computers, Inspection of Source Code, and Production of Additional Custodial Documents complies with Chinese Law.

6. In my opinion, the part of the proposed order requiring Hytera to "make available for forensic inspection by a third-party examiner the computers (or mirror images of those computers) of key Hytera witnesses (defined as at least seven engineering employees of Hytera), as well as its network folders containing Motorola documents" will likely conflict with Chinese Law.

7. I am informed and believe that Hytera is a Chinese telecommunications company that manufactures, among other things, "walkie-talkies," hand-held and portable radios. Due to the nature of its business, Hytera's customers include police departments, fire departments, and other public security/safety organizations. As a result, a significant number of Hytera's

2

customers are city, regional, and national governments, including several Chinese governmental organizations.

8. I am also informed and believe that the personal computers of the engineering employees are used by the employees in their daily work for Hytera. Based on my understanding of Hytera's business (Hytera is one of my clients) and familiarity with how most employees typically use their work computers, I believe it is highly likely that most or all of the computers covered by Motorola's proposed order contain one or more of the following categories of information defined by Chinese Law: personal information; and state secrets.

9. "Personal information" is defined by Article 76 of China's Cyber Security Law. Article 76 provides that "personal information" refers to all kinds of information recorded by electronic means or otherwise that can be used to independently identify or be combined with other information to identify natural persons' personal information, including but not limited to: natural persons' names, dates of birth, ID numbers, biologically identified personal information, addresses and telephone numbers, etc.

10. "State secret" information is defined by Article 2 of China's Law on Protecting State Secrets. Article 2 provides that "state secrets" refers to matters that have a vital bearing on state security and national interests, being specified by legal procedures. State secrets are permitted to be disclosed only to a limited number of people during a given period of time.

11. Chinese laws and regulations now give high value and attention to the protection of personal information. Personal information collected by key information infrastructure operators shall be kept within the territory of the People's Republic of China. If there is any need for personal information to be exported, a security evaluation according to the rules established

3

by Chinese authorities needs to be conducted. More than this, consent of the affected person is also needed before his or her personal information can go abroad.

Hytera's major business scope is telecommunication and it offers telecommunication-related products and services to various levels of government authorities. Therefore, in my opinion, Hytera would probably be considered by the Chinese government to be a Key Information Infrastructure Operator. Personal information and important data stored in the computers of Hytera are therefore probably subject to security evaluation.

Furthermore, according to Article 11 of the Circular of the Cyberspace Administration of China on Seeking Public Comments on the Measures for Evaluating the Security of Transmitting Personal Information and Important Data Overseas (Draft for Comment), due to Hytera's business of working with emergency personnel in different cities, the data stored in the computers at issue likely falls into the category of data that is forbidden to be transmitted overseas. The below listed articles are chosen from the related laws and regulations in China. Some of them are from the draft regulations made in 2017 that will come into effect soon.

(1) Cyber Security Law(《网络安全法》)

Article 37. Key information infrastructure operators shall store personal information and important data gathered and produced during operations within the territory of the People's Republic of China. Where it is really necessary to provide such information and data to overseas parties due to business requirements, a security assessment shall be conducted in accordance with the measures formulated by the national cyberspace administration authority in concert with the relevant departments under the State Council. Where the laws and administration regulations have other provisions, those provisions shall prevail.

(2) Circular of the Cyberspace Administration of China on Seeking Public Comments on the Measures for Evaluating the Security of Transmitting Personal Information and Important

Data Overseas (Draft for Comment)《个人信息和重要数据出境安全评估办法》（征求意见稿）

Article 4. Where personal information is to be transmitted overseas, subjects relating to such personal information shall be notified of the reason why their personal information is provided to overseas parties, the scope of information to be provided, content of such information, the parties receiving such information, countries or regions in which the information recipients are located, and grant approval for such transmission; transmitting minors' personal information overseas must be approved by their guardians.

Article 9. Where the data to be transmitted overseas falls under any of the following circumstances, network operators shall inform the competent authority or regulator of the industry in order security evaluation to be carried out: 1. where the data involves or totally involves the personal information of over 500,000 individuals; 2. where the data volume exceeds 1,000GB; 3. where the data contains information in the fields of nuclear facilities, chemical biology, national defense and military, population health and the like, and information about major engineering activities, the marine environment and sensitive geography; 4. where the data contains network security information such as system vulnerabilities and security protection of key information infrastructure; 5. where key information infrastructure operators provide personal information and important data for overseas parties; and 6. other factors which may affect national security and public interests, and should be evaluated by the competent authority or regulator of the industry. Where the competent authority or regulator of the industry is not clear, the national cyberspace administration authority shall organize the evaluation.

Article 11. Data concerned shall not be transmitted overseas under any of following circumstances: 1. where no approval has been obtained from the subjects concerned to transmit their personal information overseas, or the personal information transmission may infringe their personal interests; 2. where transmitting data overseas exposes the safety of state politics, the economy, science and technology, national defense and other aspects to risks, and may affect national security and harm public interests; and 3. other circumstances identified by the national

cyberspace administration authority, public security departments, security departments and other relevant departments.

Article 17. The following terms in the Measures shall have the meaning as below:

Important data refers to the data closely related to national security, economic development and public interests, and the relevant national standards and guidelines for identification of important data shall apply mutatis mutandis to the specific scope of important data.

(3) Security Evaluation Guidelines for the Information Security Technology and Data Going-abroad (Draft) 《信息安全技术 数据出境安全评估指南（草案）》

Guideline for the Identification of Important Data 重要数据识别指南

Important Data means the data (including the original data and derivative data) generated and collected by the Chinese government, enterprise, person in the territory of China that does not involved in the state secret but is closely related to the state security, development of economics and public interests, which possibly cause the following results if unauthorized to be disclosed, missing, abused, tampered, destroyed, or after the compiling, or organizing, or analyzing:

    A. undermining state security, state defense, breaking the international relationship;
    B. damaging the state property, social public interest and personal legitimate interest;
    C. giving influence to the state's prevention and fighting of economic and military spy…;
    D. …
    E. …
    F. endangering state economic order and financial safety;
    G. being able to be analyzed of state secret and sensitive information;
    H. giving influence to or endangering state politics, homeland, military affairs,

(4) 《Practice Guideline for state net security inspection》（《国家网络安全检查操作指南》）

3.1 Key information infrastructure means the information system or industry controlling system that face to the public and provide the net information service or support the energy, telecommunication, finance, transportation, public facilities and etc., of which once occurs any accident will give influence to the normal operation of important industries and cause great

damages to the state politics, economics, technology, society, culture, defense, environment and people's health.

(5) Circular of the Cyberspace Administration of China on Seeking Public Comments on the Regulations on the Protection of the Security of Critical Information Infrastructure (Draft for Comment)《关键信息基础设施安全保护条例（征求意见稿）》

Article 18. The network facilities and information systems under the operation and administration of the following entities shall be covered under the scope of protected critical information infrastructure, if the national security, national economy, people's livelihood and public welfare might be seriously impaired as a result of any destruction of such facilities and systems, unavailability of their functions or data leakage: 1. government agencies and entities in industries such as energy, finance, transportation, water conservancy, hygiene and medical treatment, education, social security, environmental protection and public utilities; 2. entities of information networks such as telecom networks, broadcasting and TV networks and the Internet, and those providing cloud computing, big data and other large public information network services; 3. scientific research and production entities in industries and fields such as national defense, science and industry, large equipment, chemical, food and drugs; 4. news entities such as broadcasting stations, TV stations and news agencies; and 5. other major entities.

12. Chinese law also restricts access to "state secrets."

Law on Protecting State Secrets (《保守国家秘密法》)

Article 25. Organs and institutions shall strengthen the management of state secret media, and no organization or individual may conduct the following acts:

…

4. Mailing or consigning State secret media out of China; and

5. Carry or transmitting any state secret carrier out of China without approval by relevant authorities.

13. As I understand the procedure in American courts, if the Court adopts Motorola's proposed order, it will order Hytera to make the entire contents of the computers (or a copy of the contents) available for inspection by an expert or vendor specializing in computer forensics.

14. Because it is illegal under Chinese Law to export state secrets and state sensitive data without prior government approval, that inspection cannot occur outside of China.

(1) Law on Protecting State Secrets (《保守国家秘密法》)

Article 25. Organs and institutions shall strengthen the management of state secret media, and no organization or individual may conduct the following acts: .... 4. Mailing or consigning State secret media out of China; and ....

Article 48 In the case of any of the following acts in violation of the provisions of this Law, disciplinary measures shall be imposed in accordance with the law; if the act constitutes a criminal offense, criminal liability shall be imposed in accordance with the law: ... 4. Sending any state secret carrier out of the territory of China by mail or consignment or carrying or transmitting any state secret carrier out of the territory of China without the approval of the relevant authorities; ...

(2) Circular of the Cyberspace Administration of China on Seeking Public Comments on the Measures for Evaluating the Security of Transmitting Personal Information and Important Data Overseas (Draft for Comment) 《个人信息和重要数据出境安全评估办法》（征求意见稿）

Article 11. Data concerned shall not be transmitted overseas under any of following circumstances: 1. where no approval has been obtained from the subjects concerned to

8

transmit their personal information overseas, or the personal information transmission may infringe their personal interests; 2. where transmitting data overseas exposes the safety of state politics, the economy, science and technology, national defense and other aspects to risks, and may affect national security and harm public interests; and 3. other circumstances identified by the national cyberspace administration authority, public security departments, security departments and other relevant departments.

15. Further, because the expert or vendor would be enforcing the American Court's order and/or be acting on behalf of Motorola, a foreign corporation, the inspection cannot occur even if it were conducted within China. That is because the law restricts the dissemination of state secrets to foreign governments or foreign nationals without prior government approval.

Law on Protecting State Secrets（《保守国家秘密法》）

Article 30. Where state secrets have to be furnished for the benefits of contacts and co-operation with foreign countries by an organ or institution or a foreign-appointed or foreign-employed person needs to know a State secret because of the actual needs, the organ or organization shall report the same to the relevant competent department of the State Council or the relevant competent department of the people's government of a province, autonomous region or municipality directly under the Central Government for approval, and conclude an agreement on confidentiality with the other party.

16. I am not aware of the Chinese government ever granting the approval referred to in paragraphs 14 and 15.

17. The Chinese government has stressed that it considers compliance with these laws to be in the national interest. On April 15 of 2014, President of the People's Republic of China, Mr. Xi Jinping, when attending the meeting of Central National Security Commission, gave a very important speech and emphasized that, "we should master the new characteristics of national security trend, insist the idea of overall nation security and make a special Chinese way of protecting national security." (www.xinhuanet.com/politics/2014-04/15/c_1110253910.htm )

Furthermore, a particular article of building a legal system of national security protection is published in the website of the Supreme People's Procuratorate of the P.R.C. ( http://www.spp.gov.cn/llyj/201704/t20170415_188127.shtml)

Most significantly, in the recently closed 19th General Meeting of Communist Party of China (CPC), a report has been given emphasizing that there is a need to accelerate the pace of legislation in the field of national security. China has made more than 190 laws and regulations such as the National Security Law, which essentially form the legal system of national security protection to satisfy the demands of national security.
( http://theory.people.com.cn/n1/2018/0111/c40531-29758158.html )

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct pursuant to 28 U.S.C. § 1746. This declaration was executed on March 16, 2018, in Beijing, China.

/s/ _Ding Liang_

Ding Liang