# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 1973 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| HYTERA COMMUNICATIONS CORP, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

From the outset of this case, Hytera has contended that Motorola waited too long to file suit. Thus, Hytera moved to dismiss Motorola's Complaint, arguing that the statute of limitations for the federal Defense of Trade Secrets Act (two years) and the Illinois Trade Secrets Act (five years) barred Motorola's trade secret, misappropriation claims, because Motorola had (or should have) discovered its claims more than five years before it filed suit on March 14, 2017. [Dkt. #32]. Motorola's position is that it only discovered the misappropriation shortly before it filed its Complaint and that its former employees – now Hytera employees – secretly downloaded the trade secret materials and concealed not only their intent to take them to Hytera, but even that they were going to work for Hytera. [Dkt. #49, at 7-8].

On September 7, 2017, Judge Der-Yeghiayan (who has since retired) concluded that "Motorola's claims appear to be untimely based upon the representations made by [Hytera]," but he determined it was best to convert Hytera's motion to dismiss to a motion for summary judgment in order to resolve the statute of limitations issue based on evidence rather than allegations and

representations, which, of course, would not suffice. [Dkt. #58]. The court allowed the parties until October 6, 2017, to conduct discovery on the statute of limitations issue. [Dkt. #58].

Despite the cooperativeness among counsel, and even though discovery was limited to the statute of limitations issue, discovery proceeded with perhaps even more than the usual difficulties, thus validating Judge Posner's dreary (but unfortunately realistic) view that discovery is the bane of modern litigation. *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000). The October 6, 2017 discovery deadline was extended twice for a total of more than five months to February 2, 2017, and then extended twice more for depositions. [Dkt ## 153, 169]. During that time, the parties repeatedly required judicial intervention to resolve disputes. [Dkt. ##67, 84, 110, 119, 121, 140, 173]. Along the way, there have been nearly fifty discovery-related filings amounting to about 3400 pages.[1]

As so often occurs, claims of privilege have played an important role in this case, with Motorola raising the privilege to the turnover of over 700 documents, which were supported by a plainly inadequate privilege log, which Motorola was forced to redo to comply with basic requirements under the Federal Rules of Civil Procedure. *See Motorola Solutions, Inc. v. Hytera Corp.*, 2018 WL 1281393 (N.D.Ill. 2018). [Dkt. #128]. Motorola then slashed its privilege claims to cover just over 100 documents, proving once again that unfortunately excessive claims of privilege are commonplace in modern litigation, and that they are often indiscriminately and improperly used "on documents that do not truly qualify for protection." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889 (N.D. Ill. 2018). *See also Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 2069280, at *6 (E.D. Pa. 2015)*; Falin v. Condo. Ass'n of La Mer*

---

[1] A number of documents filed under seal also have redactions. *See, e.g.,* Dkt. #141-1, at 98-102/191.

*Estates, Inc.*, 2012 WL 760831, at *1 (S.D. Fla. 2012 ); *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003). The claims of privilege often dissipate when a party is required to properly support them. That is what happened here. For Hytera, the 100 or so purportedly privileged documents that remained are still too many.

Hytera argues in addition that it isn't fair for Motorola to claim that it did not discover the alleged misappropriation that is the basis of its lawsuit until 2016 (Dkt. #141-1, at 111/101), and, at the same time, to raise a claim of attorney-client privilege to production of otherwise privileged documents that would or might show otherwise. Part of the focus is on item 364 on Motorola's privilege log. Item 364 is an email sent by a Motorola engineer to numerous other Motorola engineers. No lawyer was involved in the communication either as sender or recipient, or even as a person copied on the email. Legal advice was not sought, nor is any such advice revealed. *See United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319 (N.D. Ga. 2015)(the court held that an e-mail sent by and to non-attorneys was not protected by attorney-client privilege).

For Motorola none of this matters, because – its lawyers assure us, with absolutely no evidentiary support – that the email was the necessary first step in the obtaining legal advice. But, "[u]nfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). "Lawyers' talk is no substitute for data." *Phillips v. Allen,* 668 F.3d 912, 916 (7th Cir. 2012). Little wonder that the courts are unanimous in requiring proof of assertions made in briefs. *See* cases cited *infra* at 18.

Beyond this we are presented with the question of whether there has been an implied waiver of the privilege by Motorola – what in common parlance is the permissibility of a party injecting an issue into the case. In varying contexts, courts have consistently refused to allow a party to use the

3

privilege simultaneously as in an affirmative and defensive fashion – what is commonly referred to as using the privilege both as a "sword and as a shield." *See* discussion *infra* at 9.[2] Hytera claims that by filing suit, Motorola has impliedly waived the attorney-client privilege as to the question of whether it knew or should have known by virtue of statements from its lawyers that the applicable limitations periods had run, but filed suit nonetheless. Needless to say, Motorola has a very different view; it contends that the mere filing of a suit does not impliedly waive the attorney-client privilege and that the case law supports its contention.

We begin with a brief overview of the attorney-client privilege.

## I.

## THE ATTORNEY–CLIENT PRIVILEGE

The attorney-client privilege is the oldest of the recognized privileges for confidential communications known to the common law. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, (2011); *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege's central concern—and its ultimate justification—is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is

---

[2] For example, a document dated January 2008 indicates that when Motorola learned G.S. Kok was going to Hytera, Motorola management warned its engineers "to ensure that any confidential knowledge that employees took with them to [Hytera] [i]s protected." [Dkt. #141-1, at 2/191]. That may be at odds with Motorola's contention that when the employees left Motorola in January 2008 and later in June 2008, they hid from Motorola the fact that they were going to Hytera. [*See, e.g.,* Dkt. # 1, at ¶ 44]. The January 2008 document bears upon the question of whether Motorola was as gulled as it claims. Stated differently, the document and related documents are "relevant" to the state of Motorola's knowledge at a time deemed crucial by the litigants.

unattainable. *Jicarilla Apache Nation*, 564 U.S. at 169; *Upjohn*, 449 U.S. at 389.

The privilege extends to confidential communications between counsel and his or her client "[w]here legal advice of any kind is sought ... from a professional legal advisor in his capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir.2000). *See also Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011). The question is whether the "primary" or "predominant purpose" of the communication is to render or solicit legal advice. *See United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014); *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017); *In re County of Erie,* 473 F.3d 413, 420 (2nd Cir. 2007); *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir. 1984); *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 322 F.R.D. 571, 584–85, 2017 WL 4227026, at *10 (S.D. Cal. 2017); *Dansko Holdings, Inc. v. Benefit Tr. Co.*, 2017 WL 5593321, at *7 (E.D. Pa. 2017); *Koumoulis v. Independent Financial Marketing Group, Inc.*, 295 F.R.D. 28, 45–46 (E.D.N.Y. 2013); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005). It cannot be too often repeated or too strongly emphasized that while a particular communication may be privileged, the underlying facts are not. *Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981).[3]

Thus, the status of the drafter (or the recipient) of the supposedly privileged document is not decisive on the question of whether the document is protected. It is for that reason that progress or status reports, investigation summaries, and general updates are generally not privileged merely because they were written by a lawyer to the client. *See Loguidice v. McTiernan*, 2016 WL 4487779,

---

[3] Suppose a person witnesses a crime or some other event and thus has come into possession of knowledge regarding the event. That individual then consults with a lawyer about what he witnessed. While communications to obtain legal advice between the client/observer and the lawyer are privileged, what the individual observed or heard is not and may be the subject of appropriate inquiry.

at *16 (N.D.N.Y. 2016); *Koumoulis*, 295 F.R.D. at 45–46; *A & R Body Specialty & Collision Works, Inc. v. Progressive Casualty Ins. Co.*, 2013 WL 6044342 at *3 (D. Conn. 2013); *Navarrete v. Gov't Employee Ins. Co.*, 2010 WL 11558228, at *22 (S.D. Fla. 2010); *Wolf Creek Ski Corp. v. Leavell–McCombs Joint Venture,* 2006 WL 1119031, at *2 (D. Colo. 2006); *In Re Sealed Case*, 737 F.2d 94 (D.C.Cir.1984)("The letter summarizes statements made by third persons to the partnership's attorney, and neither reveals any confidences of the client (the partnership) nor suggests a legal opinion.").

"Evidentiary privileges in litigation are not favored." *Herbert,* 441 U.S. at 175. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710 (1974). *See also Pierce County, Wash. v. Guillen,* 537 U.S. 129, 144–145 (2003); *University of Pennsylvania v. EEOC,* 493 U.S. 182, 189 (1990). The privilege, like all testimonial privileges and all exclusionary rules, comes at a significant price. Since it makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant information, the privilege "contravene[s] the fundamental principle that 'the public ... has a right to every man's evidence,'" and is therefore strictly construed. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990). *See also Pierce County, Wash. v. Guillen*, 537 U.S. 129, 144–145 (2003); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). The privilege is limited to those instances where it is necessary to achieve its purposes. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007).

Whether the privilege exists is a fact intensive inquiry, *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000), and cannot be solved by simply looking to the identity of the sender

or recipient of a communication. *See In re: Subpoena Upon Nejame Law PA*, 2016 WL 3125055 at *3 (N.D.Ill. 2016). The burden of proof is on the party claiming privilege. *Shaffer v. AMA,* 662 F.3d 439, 446 (7th Cir. 2011); *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 2010 WL 5014483, at *3 (S.D. Ohio 2010). Thus, the lawyer-client relationship, itself, "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.'" *In re Walsh*, 623 F.2d 489, 494 (7th Cir.1980). *See also Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir.2003).

Consequently, not all communications even between an attorney and client are privileged. Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer. *See Bell Microproducts, Inc. v. Relational Funding Corp.*, 2002 WL 31133195, at *1 (N.D.Ill.2002) (instruction from an attorney to employees to copy him as a recipient on any emails or documents in order to assure the privilege was not by itself enough to make the document privileged).

Similarly, communications from the attorney to the client may be privileged if they constitute legal advice or would reveal the substance of a client confidence—directly or indirectly. *United States v. Leonard–Allen*, 739 F.3d 948, 952–53 (7th Cir. 2013); *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990); *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984); *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D.Ill.2014); *Koumoulis*, 295 F.R.D. at 45–46; *Village of Rosemont v. Priceline.com Inc.*, 2010 WL 4876217, at *3 (N.D. Ill. 2010); *Jones v. Murphy*, 2009 WL 604937 at *1 (D.Md. 2009). *Cf. Vardon Golf Co.,*

*Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 531 (N.D.Ill. 2003).

A loose, general concern for protecting "confidentiality" will not justify some tacit application or expansion of the attorney-client privilege or the recognition of the privilege when improperly asserted. Consequently simply labeling a document "confidential" or "privileged" will not result in the document being protected from disclosure by the attorney-client privilege. Labels do not control; substance does. *Colorado Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 622 (1996); *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). Questions relating to the attorney-client privilege are not an exception to this basic principle. *Perry v. Jeep Eagle Corp.*, 1989 WL 118750, at *6 (S.D. Ind.1989); *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003).

## II.

## IMPLIED WAIVER

### A.

The simplest form of waiver of the attorney-client privilege occurs when there is purposeful disclosure of an otherwise protected communication to a third party. *In re Pebsworth*, 705 F.2d 261, 263 (7th Cir.1983). Thus, statements made to one's attorney in the presence of a third party non-lawyer, who is not necessary to the obtaining or giving of legal advice will result in a waiver of the privilege. *Jenkins*, 487 F.3d at 490; *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). This is so despite the client's subjective intention not to waive the privilege. *Jenkins*, 487 F.3d at 490; 8 Wigmore, Evidence § 2327. *See generally United States ex rel. McGee v. IBM*, 2017 WL 1232616 (N.D. Ill. 2017).

A "party [impliedly] waives the privilege only when he or she 'has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.'" *U.S. Fire Insurance Co. v. Asbestospray, Inc.,* 182 F.3d 201, 212 (3d Cir.1999). *See also Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1175 (7th Cir.1995) ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."). To be sure, a litigant cannot hide behind the privilege if he is relying upon privileged communications to make his case. Or, in common parlance, "the attorney-client privilege cannot at once be used as a shield and a sword.". *Willy v. Administrative Review Bd.,* 423 F.3d 483, 497 (5th Cir. 2005); *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir.2003). But, while the sword stays sheathed, the privilege generally stands.

The more difficult issue arises when, as here, the allegedly privileged communications are not expressly relied on in the case, but it is argued by the opponent that "fairness" requires that privileged assertions be explored and the privilege be deemed waived because it is necessary to an informed determination of the claim or defense. That is the situation in this case.

**B.**

**THE IMPLIED WAIVER DOCTRINE AS APPLIED IN THIS CASE**

We come then to the more complicated question involved in determining application of the waiver doctrine: whether there has been an implied waiver of the privilege by Motorola. This is an issue on which courts have invoked somewhat differing theories. Waiver of the attorney-client privilege will certainly occur if a party expressly relies on an attorney-client communication to advance a claim or defense. *See e.g., In re Itron*, 883 F.3d 553, 564 (5th Cir. 2018); *Certain Underwriters of Lloyd's v. Old Republic Ins. Co.*, 2015 WL 12748248, at *7 (D.N.M. 2015); *United*

9

*States v. Simpson,* 69 F. App'x 492, 493 (2d Cir. 2003).[4]  But to impliedly waive the privilege, a party must do more than merely file suit or merely deny the opposing party's accusations. *Oxyn Telecommunications, Inc. v. Onse Telecom*, 2003 WL 660848, at *6 (S.D.N.Y. 2003). It must affirmatively inject a new factual or legal issue into the case. Absent that, "a [court] cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." *Chick-fil-A v. ExxonMobil Corp*., 2009 WL 3763032, 8 (S.D.Fla. 2009). *See, In re Itron*, *supra*; *In re: Gregory Lott*, 424 F.3d 446 (6th Cir. 2005); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987).

A number of courts have noted that basically three tests have been applied in determining whether an "at issue" waiver has occurred: (1) the "automatic waiver" rule, which provides that a party automatically waives the privilege upon assertion that a claim or defense raises an issue to which otherwise privileged information is relevant. This is often called the least restrictive test and is not employed by our Court of Appeals. Courts have also employed the so-called intermediate or *Hearn* test and the "anticipatory waiver" test set forth in *Rhone-Poulenc Rorer, Inc. v. Home Index. Co.* 32 F.3d 851 (3rd Cir.1994), which provides that the privilege is waived if a party places in issue its reliance upon counsel's advice. Waiver of the attorney-client privilege in this context should be

---

[4] *In re Itron* has been exceptionally critical of the so-called *Hearn* test , (*Hearn v. Ray*, 68 F.R.D. 574 (E.D. Wash, 1975) as have others. *See In re City of Erie*, 546 F.3d 222, 227 – 28 (2d Cir. 2008). *Itron* rejected the notion that merely by filing suit a plaintiff has waived entitlement claim attorney-client privilege. "Thus the court said: On Defendant's logic, moreover any tort plaintiff would waive the privilege by filing suit, as there is always a 'hypothetical' possibility that imperfect advice from counsel unreasonably exacerbated or failed to stanch the injury. That is plainly not the law." *Id.* at 566. *Compare Garcia v. Zenith Elec. Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir.1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.").

automatic. *See Frontier Refining, Inc. v. Gorman-Rupp. Co., Inc.,* 136 F.3d 695, 699 (10th Cir.1998); *see also Union County, Iowa v. Piper Jaffray & Co., Inc.,* 248 F.R.D. 217, 219 (S.D.Iowa 2008) (for a discussion of the *Hearn* and *Rhone* tests).

Most courts have adopted the shield-sword analogy which holds that the privilege only prohibits a party from simultaneously using the confidential information as both a shield and sword – that is, a party cannot use privileged information both offensively and defensively at the same time. *In re County of Erie*, 546 F.3d 222, 229 (2nd Cir. 2008); *Willy v. Administrative Review Bd.,* 423 F.3d 483, 497 (5th Cir. 2005). *Cf. Garcia v. Zenith Elec. Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir.1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation.

A number of courts agreed that a party does not waive the attorney-client privilege simply by pleading a claim which sounds in fraud or misrepresentation. Indeed, such claims are common, and it would substantially undercut the attorney-client privilege if the privilege were deemed waived in every case where a party made a claim of reasonable reliance upon the misrepresentations or omissions of the other party. In rejecting such a broadside assault on the attorney-client privilege, courts have said, for example, that although "the client in a fraud or similar action, may be required to disclose its thoughts and knowledge, whether or not those were acquired in whole or in part from conversations with its attorneys ... [i]t is not required to disclose what was said between client and counsel." *Tribune Co. v. Purcigliotti,* 1997 WL 10924, *8 (S.D.N.Y. 1997), citing, *inter alia, Chase Manhattan Bank N.A. v. Drysdale Securities Corp.,* 587 F.Supp. 57, 58 (S.D.N.Y.1984). The court in *Tippenger v. Gruppe,* 883 F.Supp. 1201 (S.D.Ind.1994) reached a similar result, as did the court in *Sedco International, S.A. v. Cory,* 683 F.2d 1201 (8th Cir.1982)(observing that receipt of ordinary

legal advice was irrelevant to the issue of whether a party reasonably relied upon misrepresentations made by an opposing party). *See also In re Divine Tower Int'l Corp.*, No. 04-02169, 2007 WL 1108457, at *2 (S.D. Ohio 2007); *Standard Chartered Bank PLC v. Ayala International Holdings (US),* 111 F.R.D. 76 (S.D.N.Y.1986).[5]

Here, Hytera raised the statute of limitations, not Motorola. Motorola responded by asserting it did not discover the basis of its claim until late 2016. Under these circumstances, and under the holdings of most cases, it didn't inject a new issue into the case. Notably, in two of the cases Hytera relies on – which happen to be inapplicable as they deal with the Illinois state law of privilege and this is a case brought under federal law, *see Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007), the court pointed out that the plaintiffs raised the question of their inability to discover their cause of action in their Complaints. *See Lama v. Preskill*, 353 Ill.App.3d 300, 306, 818 N.E.2d 443, 449 (2nd Dist.2004)("Plaintiff argues that defendant, not plaintiff, raised the issue of when plaintiff knew of her injury by asserting the affirmative defense that the complaint was untimely. We do not agree. In her complaint, anticipating that timeliness would be an issue, plaintiff alleged that the limitations period was tolled because she first learned of her injury in June 1999. Consequently, at the onset of the lawsuit, plaintiff raised the issue of whether she knew or should have known of her injury prior to the end of the limitations period. As a result, plaintiff voluntarily injected into the case the factual and legal issues of when she learned of her injury."). "The party asserting the

---

[5] *See United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002)(raising a good-faith defense does not effect waiver when there is no assertion of reliance on the advice of counsel); *In re Itron, Inc.*, 883 at 564.

attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived." *See Kordek v. United Agri Prod., Inc.*, 2007 WL 1118435, at *4 (N.D. Ill. 2007) ("Plaintiff also alleged . . . that prior to October 2005, he had no reason to believe that his exposure to the carcinogenic products may have caused his cancer.").

A number of cases have invoked "considerations of fairness" or "fundamental fairness" to the adversary in deciding claims of implied waiver. *See, e.g.*, *John Doe Co. v. United States,* 350 F.3d 299, 302 (2nd Cir.2003). But these cases do not stand for the proposition that the question of implied waiver is a function of what is essentially the "incandescent conscience" of each particular judge. Fairness, like equity, is not a floating commission to do good – what the judge thinks is "fair." Nor is it a limitless fount of power which invests judges with unfettered discretion to decide cases in accordance with their private notions of justice. "[E]quity [which] varies like the Chancellor's foot," *Albermark Paper Co. v. Moody*, 422 U.S. 405, 407 (1975), would ultimately result in a regime of personal preference and unpredictability of decision. *See also*, Cardozo, The Nature of the Judicial Process, 33-34, 68-69 (1921). So too with *undefined* and canalized notions of fairness.

In the end, the courts that have found implied waivers have concluded that a party may not advance a claim or defense that relies on materials that the adversary needs to effectively contest or impeach the claim. *See e.g.*, *Sanofi-Synthelabo v. Apotex Inc.*, 363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005). In this case, it bears repeating that, Hytera concedes that it raised the relevant issue, not Motorola. (Dkt. #141, at 1). The filing of a lawsuit did not waive the attorney-client privilege. *Standard Charter Bank*, 111 F.R.D. at 76 (while it would be "useful and convenient" to obtain privileged materials, they were not discoverable). Motorola hasn't (yet) used selected privileged

13

documents (or privileged communications) to show that it had no cause to investigate the facts underlying its claim – *i.e.*, that it could not have discovered its claim by exercising due diligence – before late 2016. *See also Spagnoli v. Medtronic Minimed, Inc.*, 2008 WL 11333238, at *4 (S.D. Fla. , 2008); *Green v. Beer*, 2010 WL 3422723, at *6 (S.D.N.Y. 2010) (rejecting argument that the mere assertion of a fraud theory or other legal claim implicating the plaintiff's knowledge is sufficient to trigger a broad waiver of the plaintiff's attorney-client privilege).

Thus, unlike the situation in *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) and many other cases, "advice of counsel [has not been] placed in issue" by Motorola; nor has it yet attempted to prove its claim or its defense by disclosing or describing an attorney-client communication. In other words, Motorola isn't using an "investigation or its results" or privileged communications to defeat Hytera's statute of limitations defense. Of course, that situation may change, and if it does, the issue will have to be revisited. *See Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 318 (N.D. Ill. 2010)("It would be unfair to allow an employer to hide its investigations and remedial efforts in the case up to the point of trial when it intends to use related evidence of its remedial efforts to evade liability.").

In the end, Hytera has not cited any federal cases where a court determined – as opposed to a party conceding – that a defendant's assertion of a statute of limitations defense has been found to trigger a waiver of a plaintiff's attorney-client privilege. In *United States v. Kellogg Brown & Root Servs., Inc.*, 2016 WL 5344419, at *3 (C.D. Ill. 2016), the court stated, without discussion, that the "[defendant's] statute of limitations defense squarely puts the [plaintiff's] knowledge of [defendant's] allegedly false claims at issue, and the government's invocation of the discovery rule waives the relevant privileges." *Id*. As it happened, the government had not challenged the

14

defendant's assertion that it had waived its privilege, only the scope of that waiver. 2016 WL 5344419, at *1 n.3.

Similarly, in *Memorylink Corp. v. Motorola, Inc.*, 2010 WL 3167277, at *5 (N.D. Ill. 2010) – which applied state law – the plaintiff conceded that it had waived the privilege, but challenged the scope of that waiver. 2010 WL 3167277, at *5. As the issue of waiver was never joined, much less analyzed, these cases are of not helpful. *United States v. Acox*, 595 F.3d 729, 731 (7th Cir. 2010)("the briefs in those cases did not join issue on the standard of appellate review, and the opinions do not discuss this subject . . . , so they do not establish holdings."); *Szmaj v. Am. Tel. & Tel. Co.*, 291 F.3d 955, 956 (7th Cir. 2002)(calling an opinion where "there is no discussion of the point, only a conclusion . . . weak authority").[6]

It is worth noting that Hytera filed its summary judgment motion on November 27, 2017. It didn't have to file until March 19, 2018. [Dkt. #91]. It obviously thought it had enough evidence to support its statute of limitations argument months ago, even without the documents it is fighting over now.

## III

### ENTRY 364 ON MOTOROLA'S PRIVILEGE LOG IS NOT PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE[7]

Entry 364 on Motorola's privilege log refers to an October 10, 2012 email string, which

---

[6] District court cases are not binding precedent. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009); *LM Ins. Corp. v. Spaulding Enter. Inc.,* 533 F.3d 542, 553 (7th Cir.2008)(district court opinions lack precedential value)*; DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 831 n. 6 (7th Cir. 1999); *Mayo v. Lane*, 867 F.2d 374, 376 (7th Cir. 1989).

[7] I had previously ruled that Entry 364 was not privileged. [Dkt. #191]. That decision is explained more thoroughly in this Opinion.

included materials in Chinese and in English. The critical email was sent by an engineer at Motorola (Tan CeahHeng) to a host of other Motorola engineers. No lawyer was a recipient on the email chain, and none was even copied. In fact, the word lawyer or attorney does not appear anywhere on the email. The email referred to a former Motorola engineer, Chuan Hoe Choo, who, the email's author thought may have taken a "very similar idea" that was recently patented by Motorola and that he possibly conceived the idea for the new Hytera product when he was with Motorola. Indeed, the author of the email said that he and other engineers "are suspecting [sic] that [the former Motorola employee] may have learned and replicated this idea from us." The purpose of the email was explicitly stated to be a desire "to bring this recent event to *your* attention." (Emphasis supplied). The email made absolutely no mention of a lawyer or of the author's desire to bring the matter to the attention of a lawyer.

It merely asked the non-lawyer recipients to "advice [sic] what will be the next course of action." Only literary perversity or jaundiced partisanship could suggest that the email was at bottom really seeking an attorney's advice and counsel is clear from the context of what was said, and context after all is the chief determinant of meaning. *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 413 (2012). Thus, *immediately* after the strain, "please advise what will be the next course of action," the email said "[a]s of now, *we are currently gathering more evidence*, but we need proper help *to go about with this*." (Emphasis supplied). Any doubt that this email was not a veiled attempt to seek help from a lawyer is silenced by the closing sentence of the email, which stated "I am copying the inventors of our filed invention if you need *more technical* inputs from them." (Emphasis supplied). The email never mentioned a lawyer, or hinted at a desire to get input or assistance from a lawyer, or to have a lawyer assess what was being said in the email. The author

16

of the email does not ask that the email be forwarded to a lawyer; nor does it asked that a lawyer's views on the content of the email be solicited. It bears repeating that there are no attorneys involved in the communication, and the recipient states only that he will forward the communication to yet another non-lawyer. Motorola's unsupported, contrary, and partisan construction of the email is strained and unpersuasive.

The email discussed above was written four years before Motorola claims it decided to investigate any misappropriation. [Dkt. #141-1, at 110-111/181]. And while Motorola might claim that the October 2012 email does not reflect that Motorola was aware its trade secrets were surreptitiously downloaded so that departing employees could take them to Hytera, [Dkt. #158, at 4], the email is significant in the statute of limitations analysis. But that is a matter for another day. For now, it is enough to say Item 364 is not privileged and is plainly relevant. Further inquiry will reveal what it will.

What we have said is sufficient to demonstrate that the October email is not protected by the attorney-client privilege. But we must take note of Motorola's unsupported claim that this type of e-mail chain directed to multiple non-attorneys was the necessary first step for the email's author to seek legal advice, and therefore the email was privileged. Apart from the inherent unpersuasiveness of the claim it must be noted that it rests solely and ultimately on the word of Motorola's lawyers – actually of Motorola itself. But, that is not enough. *See* cases *supra* at 3. After all, "[n]othing is simpler than to make an unsubstantiated allegation." *Parko v. Shell Oil*, 739 F.3d 1083, 1086 (7th Cir. 2014). And if the Solicitor General's unsupported assertions, standing alone, are not enough, *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018), certainly those of Motorola are not. Phrased somewhat differently, not even Motorola is entitled to speak *ex cathedra*.

17

Thus, courts throughout the nation have been emphatic and unanimous in holding that unsupported representations by lawyers in briefs – which is what we have here – will not be accepted. *See, e.g.*, *I.N.S. v. Phinpathya*, 464 U.S. 183, 188 (1984)(1984);*United States v. Morton Salt Co.*, 338 U.S. 632, 653 (1950); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1068 (9th Cir. 2015)("The NCAA also asserts before us that it has no intent to license its intellectual property for use in video games in the future, but we place no weight on that assertion. Statements in... briefs are not evidence."). We adhere to that sound doctrine in this case and reject Motorola's argument that 364 is protected by the attorney-client privilege.

A final thought. In the end the controversy may be academic. It cannot be too often repeated or too strongly emphasized that while a particular communication may be privileged, the underlying *facts* are not. *Upjohn Co. v. U.S.*, 449 U.S. 383, 396 (1981).[8] Thus, even if some or all of the email were privileged, the *facts* that prompted its writing and which were obviously known to the writer are not. In this case, the name of the author of Item 364 would have to be listed by Motorola in its required disclosures, and his knowledge disclosed. And this whether or not the actual email was privileged. What would happen next would be up to Hytera. But a deposition would seem a forgone conclusion, and disclosure of the *facts* that ultimately were expressed in the email would be inevitable. So, too, would be the identities of any individuals to whom he communicated these *facts*.

---

[8] A simple illustration will make the point. Suppose a person witnesses an event. That individual then consults with a lawyer about the event. While the communications between the client/observer and the lawyer are privileged, what the individual observed or heard is not, and the witness may be be required to tell the authorities the facts of which he has knowledge.

## CONCLUSION

For the foregoing reasons, Item #364 is not privileged and must be produced if it has not already been turned over by Motorola. Additionally, merely by filing suit, Motorola has not waived the attorney-client privilege. This is not to say that some other or future action may not require that this conclusion to be revisited.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/17/18