# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 1973 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| HYTERA COMMUNICATIONS CORP, et al, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

*Henslee v. Union Planters Nat. Bank & Trust Co.,* 335 U.S. 595, 600 (1949)

(Frankfurter, J., dissenting)

Early on in this case, Hytera filed a motion to dismiss Motorola's Complaint, arguing that Motorola failed to file within the applicable limitations period. Indeed, it would seem that Motorola waited almost ten years after its intellectual property was allegedly taken to initiate suit. On September 7, 2017, after the parties had briefed the motion to dismiss, Judge Der-Yeghiayan (shortly before his retirement) wrote that "Motorola's claims appear to be untimely based upon the representations made by [Hytera]." However, he determined it was best to convert Hytera's motion to dismiss to a motion for summary judgment in order to resolve the statute of limitations issue based on evidence rather than allegations and representations. [Dkt. #58, at 2].

Notably, the court allowed the parties until October 6, 2017, to conduct discovery on the statute of limitations issue and stayed all other discovery. [Dkt. #58]. We say "notably" because, nearly *eight months ago*, the judge allowed the parties *one month* in which to take discovery on a

*very limited topic*. While the inquiry should have been uncomplicated, it has become a long, drawn out, pitched battle – one, in a rhetorical sense, to rival the Punic Wars – albeit without the elephants and the Alps and the sheer drama.

On September 20, 2017, Motorola filed a motion to compel, seeking a broad range of documents and arguing they were relevant to the issue of Hytera concealing the theft of Motorola's trade secrets. There were three categories of documents going back nine years: Hytera's internal documents explaining how they developed their radio products; documents covering Hytera's use, receipt, and consideration of Motorola's trade secrets and products; and documents covering any investigation by Hytera into its possession of Motorola trade secrets. [Dkt. #81, at 13-15]. Hytera protested that such discovery went beyond the statute of limitations issue. [Dkt. #81, at 12]. Judge Der-Yeghiayan, while reiterating that discovery on issues beyond the statute of limitations was stayed [Dkt. #81, at 10-11], expressed concern that Hytera's motion for summary judgment could "basically eliminate [Motorola's] complaint" and allowed the broad discovery over Hytera's objections. [Dkt. #81, at 13]. Hytera said it would need until December 1, 2017, to make such an expansive production, and Judge Der-Yeghiayan set that as the new statute of limitations discovery deadline. [Dkt. #81, at 15].

After that, the parties exchanged motions to compel repeatedly. [Dkt. ## 67, 84, 110, 119, 121, 140, 173]. Deadlines were extended, from one month to several. [Dkt. #91]. Thousands of pages of memoranda and exhibits were filed.[1] And, again, this was all over the supposedly limited discovery on a limited topic that ought to have taken little time and effort. The very nature of what

---

[1] The filings and orders in this case which, again, is only in the preliminary stage of determining whether Motorola's filing is timely, already cover more than 7,500 pages. *See also* n. 5, *infra*.

occurred tends to sustain the all too prevalent observation that discovery has become more important than the actual case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 595, n.13 (2007); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).

The upshot of all this is Motorola's March 1, 2018 motion to compel was filed five months into this "limited" discovery process and one month after the final, extended deadline for this "limited" discovery had passed. [Dkt. #91]. Among other things, Motorola now asks to conduct a forensic examination of the computers of "key Hytera witnesses who have been involved in the use of Motorola's confidential information and any relevant Hytera servers . . . on which Hytera has stored Motorola documents," all of which are located in China. [Dkt. # 175, at 5]. But even that is not the end. Indeed, Motorola says it wants to "*begin* with forensic inspection of the computers of the following Hytera employees: G.S. Kok, Y.T. Kok, Samuel Chia, Jue Liang, Roger Zhang, Phaik Ee Ooi, Yu Kok Hoong." [Dkt. #175, at 5 n.2 (emphasis added)]. The word "begin" is italicized for obvious reasons. We are now over eight months into this statute of limitations discovery with no end in sight. In fact, Motorola wants to "begin" forensic inspection one month after the deadline for statute of limitations discovery has passed. One is reminded of Churchill's famous quip: "Now this is not the end. It is not even the beginning of the end."

Over the course of two lengthy hearings on March 21 and April 4, 2018, I tentatively concluded that forensic examination of Hytera's computers would be appropriate, but only if the parties could arrive at a suitable protocol that would not, among other things, run afoul of Chinese law. As we discuss, *infra* at 5, that was a mistake. But the law frowns on relying on a blunder to gain an opportunistic advantage. *Cf. Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.,* 58 F.3d 1227, 1231 (7th Cir.1995); *Market Street Associates; Packer Trading Co. v. CFTC,* 972 F.2d

3

144, 150 (7th Cir 1992); *Centex Construction v. James,* 374 F.2d 921, 923 (8th Cir.1967).[2]

In any event, I was told that examination of the computer could be accomplished without running afoul of Chinese Law, by resort to the Hague Convention procedures. Motorola, however, maintained that this would take up too much time – a remarkable protest considering the already unnecessarily prolonged history of the discovery that was supposed to be limited to the timeliness of the Motorola Complaint. What impressed me initially at the March 21 hearing were Motorola's discussion of two emails that Hytera had long produced to Motorola, that seemed to indicate that Hytera thought certain software should be rewritten to make it look different from Motorola software. That initially appeared relevant to fraudulent concealment as such a tack would seem make it more difficult for Motorola to discover that the formerly-Motorola-now-Hytera employees had somehow misappropriated trade secrets. [Dkt. #209, at 20-25, 49, 53-54].

But at some point between March 21 and April 4, as counsel for Hytera put it at the April 4 hearing, those emails became a "crowbar to get everything" [Dkt. #210, at 45], and we went from discovery relevant to the equitable tolling of the statute of limitations, which remains the scope of discovery allowable at this point, to looking for anything, as I unfortunately and incorrectly put it at the April 4 hearing, "of value or relevance to this case." [Dkt. #210, at 46].

---

[2] We should not be understood as ascribing fault to plaintiff's counsel. After all, in our adversary system, lawyers properly play a partisan role. *Masias v. Secretary of Health and Human Svcs*, 2009 WL 1838979 at *27 (Fed. Cl. 2009); *Philips Medical Systems Intern. B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993) (Posner, J.). *See also Smith v. Robbins,* 528 U.S. 259, 293 (2000) (Souter, J., dissenting) ("a partisan scrutiny of the record and assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system...."). Mistakes are ultimately (and in most cases) the responsibility of the court.

And, as the April 4th hearing progressed, that is clearly where things went, with the limitations of discovery to the statute of limitations issue being put out of view and replaced by what was relevant to the alleged theft of Hytera's "confidential information" and generally those who may have been recipients of it. [Dkt. #210, at 54]. Under that expanded view, discovery would then encompass any file that implicated any Hytera/Motorola confidential information or showed use of the Motorola code or information by Hytera related to this case. [Dkt. #210, at 58-60, 64]. Evidence that Hytera was using Motorola code or information might be relevant to Motorola's case-in-chief but, but the issue at hand was equitable tolling of the statute of limitations. And, the material sought by Motorola was not relevant to the narrow issue of whether Motorola knew or should have known enough to have filed its Complaint earlier. *See generally* 4 Wright, Miller, Steinman, Federal Practice and Procedure, Section 1056 at 257, *et. seq.* (2015)

Toward the end of the hearing, in response to counsel for Hytera stating that he "accept[ed] that [he] lost the argument," I pointed out that I could change my mind and that "reconsideration is a valuable tool." [Dkt. #210, at 72]. As indeed it is. *See White v. Wheeler*, _U.S._, 136 S.Ct. 456, 462 (2015); *Terry v. Spencer*, _F.3d_ (7th Cir. 2018); *Zoretic v. Darge*, 832 F.3d 639 (7th Cir. 2016); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990); *BP Amoco Chemical v. Flint Hills Resources LLC*, 2007 WL 1232085 (N.D.Ill. 2007)(Moran, J.).

And so, after reviewing the transcripts of the hearings and Motorola's arguments in its two briefs in support of how the materials on these computers that Motorola wanted to inspect are relevant, I have concluded that my tentative inclination to allow discovery in China was in error. "Being manned by humans, the courts are not perfect and are bound to make some errors." *Illinois v. Allen,* 397 U.S. 337, 346-347 (1970). *Accord In re City of Milwaukee*, 788 F.3d 717, 722 (7th Cir.

2015); *Mukhtar v. California State University, Hayward* 319 F.3d 1073, 1076 (9th Cir.2003); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332 (1997). But the law frowns on relying on a blunder to gain an opportunistic advantage. *Cf. Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.,* 58 F.3d 1227, 1231 (7th Cir.1995); *Market Street Associates; Packer Trading Co. v. CFTC,* 972 F.2d 144, 150 (7th Cir 1992); *Centex Construction v. James,* 374 F.2d 921, 923 (8th Cir.1967).

The scope of discovery that I was initially inclined to allow was, in the context of the present inquiry that had been narrowed by the district court to the limitations issue, overbroad. What is being sought goes beyond the issue of equitable tolling. In the end, Motorola's counsel and I were talking about relevance to allegations in Motorola's complaint. [Dkt. #210, at 92-95]. And so, well beyond the statute of limitations, by the end of the April 4 hearing, discovery was encompassing documents related to Motorola's entire case. [Dkt. #210, at 96].

As we have said, "all judges make mistakes," *Fujisawa Pharm. Co.*, 115 F.3d at 1339, and, when possible, it is best that judges put them right. And so, it must now be said that there are two significant problems with Motorola's motion that dictate it be denied. First, it is not apparent that the Hytera computers in China – or as Motorola's counsel put it, "evidence of where our stuff went" [Dkt. #209, at 61] – is relevant to the statute of limitations issue, and Motorola does not explain how it might be relevant. Motorola filed suit some time after the applicable statutes of limitations ran, but has indicated that it hopes to rely on the doctrine of fraudulent concealment to toll the statutes and stave off Hytera's pending motion for summary judgment. [Dkt. #173, at 2]. But nothing in any of Motorola's filings shows how the information it hopes to find in the computers in China through forensic examination has anything to do with equitable tolling of the statute of limitations and

6

fraudulent concealment. Indeed, without any forensic inspection, Motorola has filed its response to Hytera's motion for summary judgment and has not made a motion before Judge Norgle to delay the briefing, as Rule 56(d), Federal Rules of Civil Procedure, would have permitted. Of course, inferences from silence are often perilous. But in a context where some prompt outcry would be expected, Motorola's willingness to proceed in the summary judgment case is significant. *See Richman v. Sheahan,* 415 F.Supp.2d 929, 940 (N.D.Ill.2006); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646, 651 (N.D.Ill. 2006)(claim of prejudice as result of belated disclosure of expert report belied by party's decision to proceed with expert's deposition instead of filing a motion to bar); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 340 (N.D.Ill.2005)(claim of severe prejudice by lack of responses to discovery requests was undermined by party taking the depositions).

The substantive issues at play in Hytera's motion for summary judgment are, of course, beyond the authority of a magistrate judge absent the consent of the parties. But still, we may proceed, carefully to be sure, into that area for the purposes of resolving this ongoing discovery battle. Fraudulent concealment is a type of tolling within the doctrine of equitable estoppel.

> Fraudulent concealment presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time. In order for a plaintiff to benefit from tolling for fraudulent concealment, he must show that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.

*In re Copper Antitrust Litig.*, 436 F.3d 782, 790–91 (7th Cir. 2006)(quotations omitted). *See also* 4 Wright, Miller and Steinman*, supra.* The party asserting fraudulent concealment bears the burden of proof. *Hamilton v. Smith*, 773 F.2d 461 (2nd Cir. 1985); *Charlotte Telecasters, inc. v. Jefferson-*

*pilot Corp.*, 546 F.2d 570 (4th Cir. 1976); *Beach Community Bank v. Cushman & Wakefield of Georgia, Inc.*, 2017 WL 579918 (S.D.Miss. 2017).

Cases from the Supreme Court and various jurisdictions suggest that there is quite a bit more to fraudulent concealment than the mere deletion of evidence. *See, e.g., Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012)("It is well established, moreover, that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff. . . . Thus, we have explained that the statute does not begin to run until discovery of the fraud " 'where the party injured by the fraud remains in ignorance of it *without any fault or want of diligence or care on his part*." (emphasis in original)); *S.B. v. Tenet Healthcare Corp.*, 2018 WL 1836029, at *3 (11th Cir. 2018)("allegations [of] . . . knowingly and willfully conceal[ing] material facts about . . . wrongdoing and . . . did not satisfy the requirement that a party establish something more tha[n] mere concealment"); *Estate of Miller ex rel. Miller v. Hudson*, 528 F. App'x 238, 242 n.6 (3rd Cir. 2013)(requiring plaintiff to show that "[n]o objective or observable factors may exist that might have put ... [them] on notice of an injury"); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012)(". . . there must be some trick or contrivance intended to exclude suspicion and prevent inquiry . . . ."); *Lewicki v. Washington Cty., Pa.*, 431 F. App'x 205, 208 (3rd Cir. 2011)("Equitable tolling of the statute of limitations is appropriate when a plaintiff has been induced 'to relax vigilance or deviate from the right of inquiry' by reason of the defendant's fraud or concealment of material facts."); *Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005)("Without a duty to disclose, mere concealment is not fraudulent concealment for purposes of tolling the statute of limitations.").

According to Motorola, "forensic inspection of the Hytera laptops and servers would provide substantial information relevant to Hytera's concealment of its theft, including (1) how the Motorola materials were sent and received among the Hytera employees; (2) whether they were deleted and by whom; and (3) who had possession of them and during what time frames." [Dkt. #175, at 10]. As already noted, at the hearing, Motorola made it clear that it felt entitled to anything at all that had to do with its information, use of it, or what might have been done with it. More recently, Motorola has asserted that "Hytera's concealment of its theft – for instance, by deleting evidence of its use of Motorola's confidential information" is somehow "highly relevant" to "Hytera's statute of limitations defense, as they corroborate Motorola's inability to discover the theft during the limitations period." [Dkt. #212, at 10]. But, throughout this tortuous journey, it has been left to speculation how any of this would show that Motorola could not have discovered the theft of its trade secrets earlier than it claims to have. Motorola seems to be confused regarding what constitutes fraudulent concealment in the context of equitable tolling with, perhaps, proof of the theft itself or perhaps spoliation. Indeed, it argues that the evidence it's looking for would "rebut Hytera's assertions that the absence of that [evidence] means it was never taken." [Dkt. #212, at 10]. That may be relevant to liability, but Motorola has never explained how it is relevant to the statute of limitations, equitable tolling, or fraudulent concealment.

Discovery was limited to back in September of 2017 – a limitation that has been more honored in the breach than the observance. The issue was what Motorola knew or should have known, and when it knew or should have known it. Deleted documents don't move that meter one way or the other. "[E]vidence of where [their] stuff went" [Dkt. #209, at 61] is irrelevant. Let's say the employees took the trade secrets, sent them around Hytera, and then deleted them or hid them

9

in a folder designated "vacation photos." So what? Motorola never had access to any of Hytera's computers any more than it does now, so how would Hytera deleting or hiding the files in China prevent Motorola from discovering it had a claim in Chicago or Malaysia? In other words, Motorola was not relying on some act of Hytera that inappropriately lulled it into not filing or believing it had no case. Conversely, Hytera could never have deleted or hidden Motorola's trade secrets; it could have posted them on a video screen in their offices in China. How would that allow Motorola, in Chicago or Malaysia, to discover they had a claim? Motorola has never had an answer for any of this.

The cases Motorola relies upon have nothing to do with what it's asking for here. *Frees, Inc. v. McMillian*, 2007 WL 184889 (W.D. La. 2007), which Motorola adverts to more than once, has nothing to with a statute of limitations defense or a fraudulent concealment claim. Neither do *M-I L.L.C. v. Stelly*, 2011 WL 12896025 (S.D. Tex. 2011); *RealPage, Inc. v. Enter. Risk Control, LLC*, 2017 WL 1165688 (E.D. Tex. 2017); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291 (E.D. Mo. 2006); *See Brocade Commc'n Sys., Inc. v. A10 Networks, Inc.*, 2010 WL 70428 (N.D. Cal. 2012). More importantly, the two fraudulent concealment cases upon which Motorola relies – *In re Copper Antitrust Litig.* and *Harry Miller Corp. v. Mancuso Chemicals Ltd.*, 469 F. Supp. 2d 303 (E.D. Pa. 2007), both suggest that Motorola is on the wrong track.

In *Copper Antitrust Litig.*, for example, the eventual defendant affirmatively acted to conceal its involvement using a variety of mechanisms: confidentiality agreements; its separation agreement with a former high level executive prohibiting him from disclosing confidential business information in exchange for $225,000; a media strategy; and *finally* the destruction of evidence. *In re Copper Antitrust Litig.*, 436 F.3d at 791-92. "[D]enying liability or failure to cooperate is not enough to

invoke the doctrine of fraudulent concealment . . . ." *Id.* at 792. Neither is deletion of purportedly purloined trade secret documents. Whether a party has deleted documents would never come into play – as in, say, a claim of spoliation – until litigation is underway, because the deletion of such documents does not affect, one way or the other, whether the injured party – which, again, has no access to the computers – can discover it has a claim. *Harry Miller Corp.* has even less to do with this case. There, in order to establish fraudulent concealment, the court required evidence that someone from the defendant's side misled the plaintiff regarding its potential cause of action. 469 F. Supp. 2d at 316. Deletion of documents on the computers in China, or concealment of documents on those computers, does not "cause[] the plaintiff to relax vigilance or deviate from the right of inquiry." *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006)(cited in *Harry Miller Corp.*, 469 F.Supp.2d at 316).[3]

Second, a forensic examination of the computers in China is out of proportion with the needs of this case, as presently limited by the district court. *See* Rule 26(b)(1), Federal Rules of Civil Procedure. At a minimum, even if relevant to the present limited issue, discovery of computers in China is not proportional to the importance of discovery in resolving the issues and the burden and expense of the proposed discovery manifestly outweighs its likely benefit to the very limited question of equitable tolling. Although the federal discovery rules are permissive, they are not, as Judge

---

[3] Suppose a houseguest absconded with a priceless painting leaving a forgery hanging in its place. The forgery would be an act of fraudulent concealment; without it, the host would immediately realize the masterpiece was gone. But if the thief hid the purloined picture in a safe behind a wall in the thief's house in another country, there is no adverse affect on what the host can discover at home. Such concealment has nothing to do with fraudulently concealing the theft from the host or whether the host ought to have realized the painting was missing. Motorola essentially wants a search warrant to look through everything that might be in that safe for evidence of what was done with the painting, but that doesn't matter to the fraudulent concealment analysis. What matters is what Motorola could have discovered about the theft in its very own home.

Moran wisely put it, "a ticket to an unlimited ... exploration of every conceivable matter that captures an attorney's interest." *Sapia v. Bd. of Educ. of the City of Chi.*, 2017 WL 2060344, at *2 (N.D. Ill. 2017); *see also Leibovitch v. Islamic Republic of Iran*, 2018 WL 1072567, at *11 (N.D. Ill. 2018). "[J]udges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Failure to exercise that control results in needless and enormous costs to the litigants and to the due administration of justice.

The original idea here was for a month or so of discovery focused on the very limited issue of the statute of limitations. While it is rare for parties to complete discovery even by dates chosen by their counsel, there can be no dispute that things have already gone far beyond what was intended and what was necessary in the statute of limitations portion of this case, in terms of time and scope. Now, Motorola wants things to go very much further. Forensic examination is generally regarded as a drastic step even in general discovery. *See, e.g., John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008)("mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures."). As the court said in *In re Ford Motor Company*, 345 F.3d 1315 (11th Cir. 2003):

> ""In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance. Forensic inspection of computer hard drives is an expensive process, and adds to the burden of litigation for both parties, as an examination of a hard drive by an expert automatically triggers the retention of an expert by the responding party for the same purpose. Furthermore, examination of a hard drive inevitably results in the production of massive amounts of irrelevant, and perhaps privileged, information.... This court is therefore loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information."

The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information ***is not meant to create a routine right of direct access to a party's electronic information system***, although such access might be justified in some circumstances. ***Courts should guard against undue intrusiveness*** resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis added). Likewise, the Sedona Principles urge general caution in this area:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.... [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.

The Sedona Principles, *supra,* at 34, 47.[4]

---

[4] An added layer to the proportionality issue here is the fact that the computers are in China. While the Supreme Court has "decline[d] to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective." it has affirmed that "the concept of international comity requires . . . a . . . particularized analysis of the respective interests of the foreign nation and the requesting nation . . . ." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 543–44 (1987).

The Supreme Court has also found the factors set forth in the Restatement of Foreign Relations Law of the United States to be relevant in such an analysis: (1) the importance to the ... litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the

(continued...)

Parties are entitled to a reasonable opportunity to investigate the relevant facts – and no more. *Upjohn Company v. United States*, 449 U.S. 383, 390 (1981); *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055 at *2 (N.D. Ill. 1994)(Moran, J.). Motorola has already had that reasonable opportunity and far more. What was intended to be a month-long process of discovery on a very limited issue has turned into a protracted affair in which Motorola has received 700,000 documents – nearly 3 million pages – over a period of eight months.[5]

Yet, apparently for Motorola, it's not enough. It now wants a forensic inspection of several computers *in China* – and it warns that that is only the "beginning." What should have been limited discovery on a "straightforward [issue has] spiral[ed] out of control." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). The time has come to say: "enough is enough." *Walker v. Sheahan*, 526 F.3d 973, 981 (7th Cir. 2008). Eight months of "limited," single-issue discovery are now at an end. Motorola's motion for forensic inspection [Dkt. #173] is denied. *See also* Dkt. ##191, 202.

---

[4](...continued)
information is located. *Aerospatiale*, 482 U.S. at 544 n.28.

Given the problems with Motorola's motion in terms of relevance and proportionality, we need not delve too deeply into these factors. But it can be noted that at least 3 of the factors weigh against Motorola's motion: (1) as detailed above, Motorola has claimed, but not explained or shown how the discovery sought is relevant to the statute of limitations/equitable tolling issue; (2) Motorola's request is an exceedingly broad one – a request for forensic examination of several computers to "begin" with, and for a broad category of information; it is anything but specific; and (3) given that one of the Motorola plaintiffs is located in Malaysia and it seems the employees involved were located there as well – Motorola does not distinguish between its parent company and its Malaysian subsidiary anywhere in its complaint, *see* [Dkt. #1] – based on Motorola's own complaint, it is as likely as not that the information stolen did not originate in the United States. While Motorola claims that the confidential documents and source code originated in the United States [Dkt. # 212, at 12], it does so without any support. The fact of the matter is that the employees Motorola is accusing of having stolen confidential trade secret information worked at Motorola's Malaysian subsidiary, over 9,000 miles from the United States. [Dkt. #99-1].

[5] A ream of paper is 500 sheets, which is 2 inches tall. Three million pages is 6,000 reams, meaning that 3 million pages of discovery, which is about 1,000 feet high or 100 stories high. By any measure, that is extraordinary.

ENTERED:
_____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/17/18