1  **TRANSCRIBED FROM DIGITAL RECORDING**

2              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4  MOTOROLA SOLUTIONS, INC., et al.,    )
                                        )
5               Plaintiffs,             )
                                        )
6               vs.                     )  No. 17 C 1973
                                        )
7  HYTERA COMMUNICATIONS CORPORATION    )
   LTD., et al.,                        )  Chicago, Illinois
8                                       )  November 8, 2018
                Defendants.             )  8:33 A.M.
9
                  TRANSCRIPT OF PROCEEDINGS – Motion
10      BEFORE THE HONORABLE JEFFREY COLE, Magistrate Judge

11 APPEARANCES:

12 For the Plaintiffs:       KIRKLAND & ELLIS LLP
                             555 California Street
13                           27th Floor
                             San Francisco, California  94101
14                           BY:  MR. ADAM R. ALPER

15                           KIRKLAND & ELLIS LLP
                             333 South Hope Street
16                           Los Angeles, California  90071
                             BY:  MR. JUSTIN SINGH
17                                MR. MICHAEL W. DE VRIES

18 For the Defendants:       STEPTOE & JOHNSON, LLP,
                             115 South LaSalle Street
19                           Suite 3100
                             Chicago, Illinois  60603
20                           BY:  MR. DANIEL STEVEN STRINGFIELD

21               PAMELA S. WARREN, CSR, RPR
                     Official Court Reporter
22               219 South Dearborn Street
                          Room 2342
23               Chicago, Illinois   60604
                      (312) 408-5100
24
   **NOTE:  Please notify of correct speaker identification.**
25 **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
   **UNINTELLIGIBLE.**

1          (Proceedings held in open court:)

2          THE CLERK:  17 C 1973, Motorola Solutions versus

3    Hytera Communications, et al.

4          MR. STRINGFIELD:  Good morning, your Honor.  Daniel

5    Stringfield of Steptoe & Johnson on behalf of the defendants.

6          THE COURT:  I can barely lift what you sent.

7          MR. ALPER:  Good morning, your Honor.  Adam Alper on

8    behalf of Motorola.

9          THE COURT:  Good morning.

10          MR. DE VRIES:  And Mike De Vries, your Honor, on

11    behalf of Motorola.

12          MR. SINGH:  Justin Singh on behalf of Motorola.

13          THE COURT:  Good morning.

14          MR. SINGH:  Good morning.

15          THE COURT:  Well, I -- your motion to file under seal

16    is granted.  I mean, I -- I thought there was some things in

17    here I couldn't quite figure out why you want them under seal,

18    but you know better than I, and people aren't objecting.

19          So the brief in support of the motion to compel

20    discovery, I'm -- I -- you have to help me.  I thought we had

21    already decided that you had to make discovery.

22          MR. ALPER:  Yes, your Honor, we did.  And so we --

23          THE COURT:  So what --

24          MR. ALPER:  So we --

25          THE COURT:  -- is all this?

1          MR. ALPER:  Yeah.  So, your Honor, maybe I'll overview

2     it, and then if you would like to go into any specific

3     issues --

4          THE COURT:  Sure.

5          MR. ALPER:  -- we, of course, can.

6          So we have been attempting to move discovery

7     forward.  We have been asking for discovery now that it is open

8     for all issues.  Defendant hasn't been asking us for discovery,

9     even though it is open on all issues.

10          We have been meeting and conferring for quite a while

11     and have kind of hit a road block on a number of issues,

12     including the three issues that we put in the brief.  And

13     although we agree that discovery should be moving forward and

14     we should be receiving basic items, like the source code that

15     we have alleged has been copied, like answers to basic requests

16     for production and interrogatories, and the third item was the

17     dep -- a dep -- just a deposition, we're asking for a

18     deposition of one of their --

19          THE COURT:  But hadn't we all decided that?  And I

20     thought Judge Norgle actually entered an order right, after one

21     of mine, that said, well, he thought I have ruled on this.

22          MR. ALPER:  Yes, your Honor, we did.  We did.  So we

23     should be --

24          THE COURT:  But --

25          MR. ALPER:  -- getting --

1          THE COURT:  -- despite that, we are where we are with

2     all this.

3          MR. ALPER:  We are where we are.  And we felt -- we

4     know that discovery is set to cut off at the end of February --

5          THE COURT:  Right.

6          MR. ALPER:  -- and so we wanted to bring this to your

7     attention so we could keep things moving because there will be

8     follow-up discovery that we would like to take as well before

9     the cutoff.

10          THE COURT:  Okay.

11          MR. DE VRIES:  Your Honor, I mean, I don't -- this is

12     Mike De Vries.  The -- the interrogatories and the requests for

13     production that we served related to our copyright claim and

14     then also related to the trade secret claim.  There has simply

15     been a refusal to provide any information or documents in the

16     response to those.  And so we, unfortunately, think that --

17          THE COURT:  Well, what do you mean, they say, no, we

18     won't?

19          MR. DE VRIES:  Yeah.  So if you look at

20     Exhibit -- Exhibits 3 and 4, what you'll see is a reference to

21     a pending motion to dismiss and also a summary judgment motion.

22          THE COURT:  That's not a basis not to make discovery.

23     I mean, it is a basis if somebody wants to -- says that is the

24     basis.  But not to me and, obviously, not to Judge Norgle, more

25     importantly.

1          MR. DE VRIES:  Yeah, but we absolutely agree.  And we

2     have communicated that to Hytera, but still we have a refusal

3     to produce documents and to answer those interrogatories.

4          THE COURT:  What about that?  Is that -- is that

5     accurate?

6          MR. STRINGFIELD:  No, your Honor, it is not

7     accurate.  Counsel is correct that we have been meeting and

8     conferring on these issues.  And I think that Motorola

9     misunderstands our position as a refusal to provide

10    discovery.  That's not our position.

11         Our position is that we're --

12         THE COURT:  Have you produced anything in response to

13    the discovery requests that he's adverted to?

14         MR. STRINGFIELD:  I believe we have, your Honor.  And

15    I -- I can represent that we are not withholding discovery

16    based on objections as set forth.  We are making those

17    productions.

18         But just to drill down on couple of the things that

19    we're being asked about, related to the interrogatories and the

20    requests for production, there are new requests for production

21    that seek information about Hytera's affirmative defenses

22    related to the copyright claims.

23         THE COURT:  What's wrong with that?

24         MR. STRINGFIELD:  We haven't answered, your Honor.  We

25    haven't answered those claims.  We don't have affirmative

1   defenses pled yet, so we don't have discovery related to that.

2   So it is a matter of sequencing for that particular instance.

3         Other interrogatories are contention interrogatories

4   that we believe are premature at this state of the case.

5         THE COURT:  I don't agree with you.

6         MR. STRINGFIELD:  Your Honor --

7         THE COURT:  I have a certain view of contention

8   interrogatories that goes back a long way.  And I think

9   contention interrogatories are valuable.  You can change things

10   you want to change.

11         I just think discovery that bogs down like this does,

12   and does in all major cases, is nonsensical.  And Courts beg

13   lawyers to do things differently, and lawyers will do what they

14   want to do, and I understand that.

15         But I'm telling you discovery -- folks, you have got

16   dates that are set by the district court.  I can't change

17   those, and he won't.  And discovery on both sides or all sides

18   is simply going to go forward.  And I'm not going to concern

19   myself with kind of abstract theoretical objections.

20         I don't want people to go to trouble they shouldn't

21   have to go to.  But beyond that, it all works out in the wash.

22         But go ahead.  I'm just not -- and we'll talk about

23   the Apex Doctrine in a bit, but I -- my view of this is that

24   each side should be compliant with reasonable discovery, and

25   unreasonable demands on both sides should remain.

1          Having said that, I mean, we're here because you have

2   concerns.  But my feeling is is both sides or all sides need to

3   make discovery, provide discovery.  And I'm not going to

4   entertain what I think are really theoretical and

5   (unintelligible) motions.

6          MR. STRINGFIELD:  Well, your Honor, and it is

7   not -- it is not merely that they are contention

8   interrogatories.  We have fundamental issues with Motorola's

9   claim underlying those contentions.

10         For example, we have been pushing Motorola --

11         THE COURT:  Look, can I interrupt you?  You know, bear

12  with me.  Let's say Motorola is just crazy and they're lying

13  and everything else.  The question is what's your contention,

14  besides that they are just wrong?  You must have a contention

15  about various things.

16         I wouldn't say that there is anything wrong with

17  contending that you were in a suit and flower tie.  And they

18  may argue that you should be wearing a parasol.  Who cares what

19  they say?  It is what do you contend.  That's what the

20  interrogatories seek, your view of whatever is being asked for.

21         Why was that bad?

22         MR. STRINGFIELD:  Your Honor, there is nothing wrong

23  with that.  But the issue is that we don't understand their

24  claims.  They have given us a recitation of 20,000 trade

25  secrets.  Many of these are multi-hundred-page documents

1    without any specificity as to what within those multi-hundred

2    page documents is the trade secret.

3        THE COURT:  And, of course, you can't get them to tell

4    you, you say.

5        MR. STRINGFIELD:  We have been asking them, your

6    Honor.  And that's an issue that's moving up in a meet and

7    confer process.

8        THE COURT:  It is an issue that is in every single

9    trade secret case.  Every one.  It is always the same thing.

10   The one party says they won't tell me what the trade secret is,

11   and the other party says, oh, sure we have done that.  And no

12   matter how much is forthcoming, it is never enough.

13       I just want to know how we're going to collectively

14   get by this.

15       MR. ALPER:  And, your Honor, let me actually correct

16   the record, I mean, actually in multiple respects because

17   that's incorrect.

18       So on September the 14th, we served a more detailed

19   contention interrogatory that lays out with specificity what

20   our trade secrets are.  Two months ago.  They have never come

21   back to us outside the context of opposing this discovery and

22   said, here's what's wrong with that disclosure.  We have

23   specifically identified our trade secrets.

24       In addition, most of this discovery relates to our

25   copyright claims.  So if you look at, for example, the first

1   interrogatory that we're moving on in Exhibit 3, it is

2   Interrogatory Number 16 at page 4.

3          THE COURT:  Wait.  Hold on.

4          Okay.

5          MR. ALPER:  And we're asking here, this is -- this is

6   basic factual discovery.  It says, describe with particularity

7   all facts and circumstances concerning how and when Hytera

8   received, considered, used, copied, reproduced, created

9   derivative works from, and/or disclosed any information

10  provided by or obtained from Motorola -- and then we identify

11  some of the individuals who left Motorola -- related to any

12  Motorola copyrighted works.

13         And if you look on the next page, you have a series of

14  objections, including a reference to the motion to dismiss, and

15  there is no answer.

16         And then the same is for Interrogatory Number 17,

17  there is no answer.

18         Interrogatory Number 18, there is no answer.

19         Interrogatory 19, which simply seeks their -- the

20  basis for their affirmative defenses, including for claims that

21  they have answered and have asserted affirmative defenses for,

22  and if you look at the page -- at the end of page 8, it says

23  that it references the pending motion to dismiss at the bottom

24  of that page.  And at the top it says, you know, that we have

25  failed to identify the trade secrets with reasonable

1    particularity.  Your Honor has already ruled on this issue.

2           Last time they made this argument, they said,

3    discovery shouldn't proceed.  Our trade secrets aren't

4    particular enough.  Your Honor said in your order that an

5    inchoate motion is not going to stop discovery.  Doesn't

6    entitle them to do so.

7           And what we have here in --

8           THE COURT:  But did not Judge Norgle effectively

9    confirm that?

10          MR. ALPER:  Absolutely.

11          THE COURT:  I thought he did.

12          MR. ALPER:  And we -- to be honest, Judge, we're

13   confused and all about what the position is.  But what we do

14   know is we don't have answers to these interrogatories.  And if

15   you look at Exhibit 4, there is a request for production after

16   request for production that seeks basic fact information, and

17   no agreement to produce them.

18          And so we are at a loss.  We need your Honor's help, I

19   think, to order them to respond or else we will not get a

20   response.

21          And we think -- your Honor has already done that.  And

22   we agree that Judge Norgle has already confirmed what your

23   Honor has done.  He has recognized that.

24          Discovery is open.  These are not reasons --

25          THE COURT:  He's at least, I thought -- because I

1    looked at the docket last time -- I thought he sort of

2    confirmed that -- now I can't find it.  Hold on one second.

3            MR. ALPER:  I believe it is Docket 252, your Honor.

4            THE COURT:  I thought it was actually later.  But

5    maybe you're right.  Hold on.

6            No, it is later than that.  Where it says -- he says

7    -- yes, it is 278.  It says, for case control purposes,

8    defendants's motion to compel, and so on -- I don't know.

9    Well, then he has got defendants's amended motion to

10   compel -- defendants's motion to compel are denied -- the

11   failure to -- are denied as moot.

12           These motions appear to have been resolved by me, to

13   which this order was referred on October 26, 2017.

14           Now above -- above that on 8-13 there was a memorandum

15   opinion that I wrote, and I guess his next -- his order, 278,

16   sort of refers to that.

17           But I just thought that we had decided -- maybe I'm

18   wrong --

19           MR. ALPER:  No, we absolutely --

20           THE COURT:  -- that we were going to go ahead and

21   discovery -- nobody really liked it, but -- they didn't like

22   it.  You didn't like it.  And he didn't like it.

23           MR. ALPER:  We believe it is appropriate discovery.

24   It is November.  Discovery closes in February.  And we have a

25   trial date next year that Judge Norgle set.

1    Your Honor, absolutely in that August 13th, 2018,

2    order considered these issues, rejected them, and told the

3    parties that they needed to move forward with discovery.

4    Here we are more than two months later, and what I am

5    showing you in Exhibits 3 and 4 is they simply refused to give

6    us an answer.  They refuse to agree to produce documents.  And

7    so we're at a point where we -- what we would ask your Honor is

8    to order them --

9    THE COURT:  Again?

10   MR. ALPER:  -- to respond to this discovery.

11   THE COURT:  Do you want me to order them again to do

12   it?

13   MR. ALPER:  Yes.

14   And --

15   THE COURT:  Go ahead.

16   MR. ALPER:  I'm sorry.

17   MR. STRINGFIELD:  Your Honor --

18   THE COURT:  I really don't understand the objections

19   that you made and the extent to which the other side wants

20   information.  There is nothing new.  It is just the language is

21   a little bit different.

22   Everybody objects on the same bases you object.  And

23   everybody wants what they want.

24   It's -- the cases strike me as very complicated, but

25   ultimately very simple.  Either somebody took something and

1    used it or they didn't.

2           MR. STRINGFIELD:  Yes, your Honor.  And so let me

3    start with -- you know, of course Motorola's brief is 15 pages,

4    citing 800 page -- 800-plus pages of exhibits.  So I -- I do

5    understand the Court's concerns.  We would like to go through

6    and systematically in detail address these --

7           THE COURT:  Uh-uh.  I shouldn't say uh-uh.  I'm happy

8    to do it.  You can -- so I'll spend the day with you.  That's

9    not -- I'm just telling you, I want you to know what I am going

10   to be listening to and looking at.

11          I think you were ordered, as were they, to make

12   production.  I realize it is a major case, and I realize it is

13   incredibly complicated, but not beyond the capacity of people

14   to understand, besides counsel who is involved in the case and

15   the people who work at the companies.

16          I just do understand why you can't, and they can't, do

17   the best you can.  Your folks are saying, we're not going to

18   give you anything, and here are our legal reasons for why.  And

19   I don't find them very compelling.

20          MR. STRINGFIELD:  Understood.

21          THE COURT:  You must have millions and millions of

22   pages of documents and really smart people who work for you who

23   certainly can make sense out of what is being asked for and

24   separate, you know, the wheat from the chaff.  And then at

25   least respond to the things that require a response to.

1    The (unintelligible) fill in is -- who cares?

2    Go ahead.

3    MR. STRINGFIELD:  Understood, your Honor.  And

4    so -- and not to go too deeply into the substance of our

5    arguments, but, again, you know, we have difficulty

6    understanding the contours --

7    THE COURT:  Why?

8    MR. STRINGFIELD:  -- of it.

9    So, your Honor --

10    THE COURT:  I read this stuff, and I don't know the

11    case one trillionth as well as you do, and I have got the gist

12    of what they want.

13    MR. STRINGFIELD:  Well, your Honor, insofar as it

14    relates to their trade secret misappropriation claims.  As I

15    mentioned earlier, they gave us 20,000 different documents.  We

16    asked for more specificity.  They went the opposite

17    direction.  They gave us 169 broader categories that --

18    THE COURT:  Well, they are afraid if they don't give

19    you -- yet, part of it is designed to obscure, and part of it

20    is out of a sense of fear if they are not overinclusive, you

21    will then turn around, should there be a trial, and say, oh,

22    no, you can't use that or it is very different than what you

23    told us.  We can't defend here at trial because you have

24    changed the trade secret.  It is a game.

25    MR. ALPER:  And let me assure your Honor, because this

1  is not something that they have ever -- I think for a very good

2  reason they have not actually filed anything with your Honor,

3  although they have said they're going to.  We are not playing

4  any game here.  We gave very specific detail about the trade

5  secrets that they clearly stole.  They took tens of thousands

6  of documents from us --

7          THE COURT:  Let's leave aside whether they did or they

8  didn't --

9          MR. ALPER:  -- and put the -- understood.

10         THE COURT:  -- because I don't know.

11         MR. STRINGFIELD:  But our contention I should say.

12         THE COURT:  Well, what -- yes, your contention is they

13  stole the evidence sort of seems to maybe, maybe sort of

14  support that.  But who knows?  You're entitled to find out, and

15  they're entitled to find out, and somebody will decide what's

16  what.  And it is not going to be me.

17         I just want for everybody to get what they are asking

18  for.  And I think stonewalling, through clever artifice, isn't

19  the way to do it on either side.

20         MR. STRINGFIELD:  And, your Honor, to be clear, we're

21  not stonewalling.  And it is a matter --

22         THE COURT:  Well, if you are not giving anything, it

23  strikes me that that's -- that's an appropriate word to use to

24  be withholding of anything that isn't particularly responsive

25  to anything.

1          MR. STRINGFIELD:  And, your Honor, that's not what we

2    are doing.  There are some specific examples where we haven't

3    produced them, but there is a source code version, for example,

4    that --

5          THE COURT:  What you -- what you just read to me, and

6    bear with me, what I have looked at is all the very clever

7    reasons, and maybe some very legitimate, why he shouldn't do

8    anything.

9          Not -- all right.  We'll give you this pen, and we'll

10   give you this cup, but that's it.  We're not going to give you

11   anything else because you asked for too much.

12         But you -- your folks don't seem to give anything.

13         MR. ALPER:  And we --

14         THE COURT:  I'm sorry --

15     (Discussion off the record.)

16         THE COURT:  Can you guys wait five minutes?

17         MR. ALPER:  Of course, your Honor.

18         THE COURT:  I just don't want him to have to sit here

19   and --

20     (Whereupon the Court turned his attention to other matters

21   on his call.)

22         THE COURT:  All right, guys.  Come back.  Sorry.

23         MR. ALPER:  Thank you, Judge.  What I was just going

24   to say, I mean, to -- maybe to -- if this aids the Court, in

25   our motion, in the memorandum, in the brief, we identify

1  specific discovery requests where there has been --

2  interrogatories where there has been no answer, and document

3  requests where there has been no agreement to produce anything.

4          And those are found in our brief at pages 2 and 3.  On

5  the left there are four interrogatories, Numbers 16 through 19.

6          And then on the top right, so on page 3, there are

7  some discovery document requests, Numbers 101 and there are --

8  102 to '3.  One --

9          THE COURT:  101 through 128?

10         MR. ALPER:  Yes.

11         THE COURT:  Okay.

12         MR. ALPER:  And they -- those have -- for the most

13 part there is no agreement to produce anything in response.

14 And so we would ask your Honor to order them to provide answers

15 and documents in response to those requests.

16         THE COURT:  Let me hear from them.

17         MR. STRINGFIELD:  Your Honor, again, there is a lot

18 of -- there is a lot of issues implicated in this brief, and so

19 --

20         THE COURT:  Yeah, there is a lot.

21         MR. STRINGFIELD:  And what -- what I fear the

22 direction the Court is going, and I'll express that fear, is

23 that the Court is going to grant this motion in its entirety,

24 and we think that it is more nuanced than that.

25         There are things that they are entitled to.  And these

1   are --

2           THE COURT:  How about this -- I don't mean to

3   interrupt you.  What -- would it be terrible if you folks sat

4   down here and actually had another Rule 37 conference in which

5   you tried to resolve what your outstanding issues on these two

6   pages are and what you're willing to do and what they're

7   willing to accept?  I think anything, mainly, that you guys

8   agree to is better, generally, than anything a Court does,

9   especially in a case like this where you know everything.

10          MR. ALPER:  We're happy to confer and --

11          THE COURT:  Well, when do you want to do that?  Do you

12  want to do that?

13          MR. STRINGFIELD:  Your Honor, we would as well.  But I

14  need to get team members from my -- I'm here solo versus three

15  or four of them.  And there is people that are more

16  knowledgeable.

17          THE COURT:  Well, they travel in groups; you travel

18  alone.

19          So the question is, what do you want to do?

20          MR. STRINGFIELD:  Well, your Honor, here's what we

21  would propose to do.  We would propose to set a date for

22  Hytera's response to this motion for three weeks from now.

23          THE COURT:  Oh, no.

24          MR. STRINGFIELD:  In that intervening three weeks --

25          THE COURT:  No, no, no.  Absolutely not.

1    I will set -- if you want to try to talk about this, I

2    will set a date just a few days out.  And if you can't resolve

3    it, I'll rule on it.  But I'm not going to let this go on and

4    on and on, especially not with what I have seen, which is

5    forget what they argue, I have seen what your objections are.

6        And so you tell me what you want to do.  Either you

7    can do that or I'll just -- we'll just try to do it now.

8        And I want to talk about the Apex Doctrine because

9    that's in the brief.

10        MR. STRINGFIELD:  Your Honor, to respond to your first

11    point, our preference would be to have a few days to confer

12    with them and --

13        THE COURT:  Okay.  Then let's set this up for -- today

14    is the 8th.  How about -- how about the 13th?

15        Let me take a look at something.  Hold on.

16        Can you come back on the 13th?  Or, no, maybe that's

17    too quick.

18        MR. ALPER:  Yes, your Honor, we can certainly come on

19    the 13th.  We are here, in any event.  And that would be

20    convenient for us.  And not that our convenience is what drives

21    things, but it will also allow us to --

22        THE COURT:  It is half what drives you.

23        MR. ALPER:  Well, it is -- it will, most importantly,

24    from our perspective, it will keep this process moving.

25    Because we have been meeting and conferring with now three

1  different law firms for months, and we have nothing.  And

2  discovery closes in February, so --

3        THE COURT:  Let's do it on the 13th.

4        Bring in whoever you want to bring in.  But I would

5  think you guys really can work this out.  Every case ever,

6  ever, ever decided in the history of the world, urges lawyers

7  to act cooperatively together and for Courts to urge them.  And

8  that's all I'm asking you to do.  It is what everybody wants

9  you to do.

10        I realize how hard it is.  And it is terribly

11  adversarial.  But you can still resolve it.  It is just basic

12  discovery.

13        MR. STRINGFIELD:  Your Honor, if I may, I don't have

14  -- personally I don't have an objection to the 13th.  But I

15  would like to check with my partners most knowledgeable to

16  check their availability to travel on that date.

17        And if we may, may we set up a time to call the Court

18  and advise the Court of a date?

19        THE COURT:  You can call me in a few hours and tell

20  me.  I'm not going to set up something (unintelligible).  I

21  want to do this.

22        MR. ALPER:  And, your Honor, perhaps we can even

23  take --

24        THE COURT:  And your folks -- this is a big time case.

25  They can travel.  Unless they are going to be

```
 1   detained -- elsewhere detained.  But I want to get this done.
 2            MR. ALPER:  Your Honor, perhaps we can even -- and I
 3   don't want to waste your Honor's time, but perhaps we could
 4   take even a couple minute break so that counsel could call and
 5   find out.
 6            Whatever would be best for your Honor, of course.
 7            THE COURT:  No, whatever -- what are you -- it would
 8   be better if you call.  Well, I don't want to put the onus on
 9   you.  I realize that you're here.  And people who have to make
10   those decisions are not and -- but you should do what you want
11   to do.
12            MR. STRINGFIELD:  Your Honor, our preference would be
13   to give me an opportunity --
14            THE COURT:  Yeah.
15            MR. STRINGFIELD:  -- to confer with my partners.
16            THE COURT:  I think he -- he needs to call and talk to
17   them and -- all right.  So that will be the thing.
18            Now let's talk about the --
19            MR. DE VRIES:  The Apex Doctrine, your Honor?
20            THE COURT:  Yeah.
21            MR. DE VRIES:  Mr. Alper on our side is going to
22   address that.
23            THE COURT:  Oh, okay.
24            MR. ALPER:  Thank you, your Honor.  If it would be
25   helpful, I can introduce the subject.
```

1          THE COURT:  I know about the subject.

2          MR. ALPER:  Yeah.

3          THE COURT:  I actually don't really.  You know about

4    the subject.  So go ahead.

5          MR. ALPER:  Well, you know, so we have asked for

6    the -- a document production, not a deposition at this stage,

7    but just a document production from Mr. Chen, who is the

8    chairman of Hytera.

9          THE COURT:  And involved in the case --

10         MR. ALPER:  And involved in the case.

11         THE COURT:  -- other than being the chairman of

12   the -- you don't allege he is the chairman, ergo, he should be

13   deposed.

14         MR. ALPER:  Absolutely right.

15         THE COURT:  He's involved according, at least, to your

16   allegations.

17         MR. ALPER:  Yeah.  Not only involved, directly

18   involved, centrally involved.

19         THE COURT:  Right, centrally involved.  Okay.

20         MR. ALPER:  And so there is really -- the objection is

21   based on an allegation of the Apex Doctrine.  It is based on

22   the Apex Doctrine.  Whatever that means and whatever that means

23   in the Seventh Circuit, we can talk about that.

24         But, you know, we have two primary responses.  The

25   first is the Apex Doctrine does not typically apply to document

1    productions, and it certainly doesn't apply here.  So there

2    shouldn't be a heightened relevance standard applied here.

3         Second of all, regardless of what standard of

4    relevance you apply, Mr. Chen is so centrally involved to the

5    facts in this case --

6         THE COURT:  There is only one definition of

7    relevance.  It doesn't vary depending on whether important

8    people or Oprah is called or -- relevance is relevance.

9         MR. ALPER:  Relevance is relevance.  There may be a

10   heightened analysis of burden when it comes to senior

11   executive.

12        THE COURT:  Burden, that's exactly right.

13        MR. ALPER:  But in this case when you're dealing with

14   a document production, there is no heightened burden because it

15   is a document production.

16        THE COURT:  Right.

17        MR. ALPER:  So really all we're looking at is ordinary

18   traditional relevance.  And, your Honor, Mr. Chen easily meets

19   that standard.  He is the person -- I can show you specific

20   evidence that we have identified.  I can show you three

21   documents.

22        THE COURT:  Are you talking about document production

23   in relevance in that context and therefore there should be no

24   objection if relevance is satisfied to document production?

25        MR. ALPER:  Yes.

1    THE COURT:  And then we'll talk about depositions in a

2    moment.

3    MR. ALPER:  Exactly, your Honor.  Precisely.  So when

4    this comes to Mr. Chen's role in this case, he was -- there is

5    three things at -- just at the tip of the iceberg that I can

6    direct your attention to.

7    The first, your Honor, it is -- I'll go from the

8    beginning to the story in terms of the interaction

9    between -- or in terms of the allegations in this case.  I'll

10   go to the middle.  And then I'll go to the -- kind of the end.

11   He is highly relevant at all points.

12   If we start with the beginning, Mr. Chen is the person

13   who recruited the people from the former Motorola employees and

14   is essentially the mastermind who talked to them, told them to

15   come over to Hytera.  And that's when they took thousands of

16   documents and source code with them.

17   And that, by the way -- your Honor, we -- we deposed

18   as you know -- we deposed some of the people from -- who used

19   to work at Motorola who became senior executives at

20   Hytera.  And as you know, most of the -- for many of the

21   answers that they provided they took -- they pled the Fifth.

22   They refused to answer it.

23   But one thing that they did say was that the person

24   who was recruiting them -- and these were the core group, the

25   first three, was Mr. Chen.  As an example of that, your Honor,

1  I have a deposition transcript.  This is Exhibit 5 on page 138

2  at -- as an example, line 5.

3        And, by the way, I think this -- some of this

4  information has been designated by Hytera as attorneys's eyes

5  only.  So I'm going to ask one of our colleagues to -- if he

6  can leave the courtroom just to make sure that we -- we, you

7  know, keep this --

8        THE COURT:  Okay.

9        MR. ALPER:  -- in case there is a -- a concern on the

10  part of Hytera.

11        So at line 5, Question:  And who was the person that

12  you later learned Mr. G S Kok -- that was the first person who

13  was recruited by Hytera from Motorola -- Mr. G S Kok was

14  working with at Hytera about recruiting you?  It was Mr. Chen.

15        THE COURT:  I don't even see, frankly, why in the

16  world this and lots of other things have been designated as

17  confidential.  They are not.  They are just not.  I understand

18  why you did it.  It is just easier than trying to -- but this

19  discussion of who did you recruit and what the company -- it is

20  not confidential at all.

21        MR. ALPER:  We designated it because they designated

22  it.  We didn't want to run afoul.  So we agree with you.

23        THE COURT:  Is that fellow that you just asked to

24  leave, is he with you?

25        MR. ALPER:  He is with us, but he's not -- he's not

 1   under the protective order.

 2           THE COURT:  As long as he's with you, he should be

 3   subject to your order.  That's okay.  I just didn't want

 4   somebody, you know, who is on another case have to leave

 5   because I don't think this is -- his -- this is

 6   (unintelligible) designated.

 7           But go ahead.  So tell me -- I know what it is.  But

 8   what -- so what?

 9           MR. ALPER:  So that's --

10           THE COURT:  I accept that he's intimately involved and

11   is certainly relevant within the meaning of relevancy, which is

12   a relational concept between various things.  I get -- I

13   understand that.

14           MR. ALPER:  Right.

15           THE COURT:  I don't doubt that.

16           MR. ALPER:  So if -- as that is the case, if I -- and

17   it goes to the end of the --

18           THE COURT:  Yeah, yeah.

19           MR. ALPER:  It goes all the way to the end of the

20   story.

21           Your Honor, if I can show you one other thing on that.

22           THE COURT:  Sure.

23           MR. ALPER:  If you go to Exhibit 12.

24           THE COURT:  Okay.

25           MR. ALPER:  This is an email from the -- it is -- his

1    Chinese name.  But Mr. Sam Chia on May 22nd 2017.  It is listed

2    as Xiahohua Zheng, 04725.  That's Mr. Sam Chia's Chinese name

3    and Chinese Hytera email address.  Mr. Chia was one of the

4    three former Motorola employees who took thousands of documents

5    over to Hytera and source code and so forth.

6            And he is sending it to Chen Qingzhou.  That's

7    Mr. Chen.  That's the individual whose documents we're asking

8    for, the chairman of Hytera.

9            THE COURT:  Okay.

10           MR. ALPER:  In May.

11           Now this is after the filing of this lawsuit.  And

12   Mr. Chia -- there is two people on this email.  Mr. Chia

13   sending to Mr. Chen a private email.

14           And if we go to the second page of the email, you can

15   see Mr. Chia is expressing his great concern over a number of

16   items.

17           And if we go to -- you can see at the top --

18           THE COURT:  Is this a -- is this where he says, key

19   items that are troubling me?

20           MR. ALPER:  Yes.  And he says -- you can see three

21   lines down from the top, about the middle of the sentence, I

22   was told to tell the truth of all the events that happened.

23   However, after this happened, I was told I should have said too

24   much.

25           There is also no alignment done between all three of

1   us.  Although I had approached G S -- that's G S Kok -- three

2   times requesting to align our stories.

3           And then it goes on and on.

4           But if you can go down about four lines, he says, I

5   fear that I can be personally implicated once the trial starts.

6           And then the last thing, I think, is very important

7   because, remember, Mr. Chen recruited this individual,

8   Mr. Chia.  And look what he says to Mr. Chen, the last -- on

9   the second line from the bottom of that paragraph, towards the

10  end.  I currently feel that the risk to reward when deciding to

11  join this company was not properly balanced, and it is now

12  impacting many aspects of my life.

13          And if you go down to his fourth bullet point below

14  that, about halfway through the line, he talks about how he now

15  knows there is a risk in going to jail.

16          And what that means is that when Mr. Chen --

17          THE COURT:  Well, I'm sorry --

18          MR. ALPER:  Oh, I'm sorry.

19          THE COURT:  I don't -- no, it is my fault -- I don't

20  see that.

21          I see on page -- on 1966, key items that are troubling

22  me.

23          MR. ALPER:  Yes.

24          THE COURT:  Okay.  And then where are you reading

25  from?

1          MR. ALPER:  The fourth one down.

2          THE COURT:  Oh, stress going through a lawsuit?

3          MR. ALPER:  Lawsuit process.  I do not feel protected

4    at all.

5          And then he goes on and says, knowing that there is a

6    risk in going to jail and destroying my life while the company

7    only risks losing money is worrying me.

8          THE COURT:  Okay.

9          MR. ALPER:  And what does that mean?  Mr. -- if you --

10         THE COURT:  Well, we don't know what it means.

11         MR. ALPER:  And you don't --

12         THE COURT:  -- to find out.

13         MR. ALPER:  We need to find out.

14         THE COURT:  Right.

15         MR. ALPER:  Because, remember, Mr. Chen recruited this

16   individual.

17         THE COURT:  I know.

18         MR. ALPER:  And he's saying, we didn't properly assess

19   the risk of taking the materials versus the reward of more

20   money.

21         THE COURT:  Well, it could mean a lot of things.

22         MR. SINGH:  It could mean a lot of things.

23         THE COURT:  Having said that, you're entitled to see

24   what he says it means.

25         MR. ALPER:  Right.  We --

```
1              THE COURT:  Okay?

2              MR. SINGH:  -- believe we think we know what it means,

3    but we would like more.

4              THE COURT:  Right.

5              MR. ALPER:  We would like to take the discovery, get

6    the documents, and then we believe there is a sufficient basis

7    in this case for a deposition.  But we should start with the

8    documents.

9              THE COURT:  Yeah, no, I -- I understand your

10   concern.  He -- may be totally different than what you think it

11   means, but you have got to find out.

12             So what -- why shouldn't he be deposed?

13             MR. STRINGFIELD:  We're talking about the documents.

14             THE COURT:  I mean -- I'm sorry.  Why shouldn't the

15   documents be produced?

16             MR. STRINGFIELD:  Sure, your Honor.  So counsel -- so

17   counsel's first point about the --

18             THE COURT:  The Apex Doctrine does not govern

19   documents, does it?

20             Well, I suppose in a general sense it does.  But it is

21   really contrary.  The doctrine itself is contrary to the -- but

22   the Supreme Court has said constantly is that courts are

23   entitled to -- that put it -- every man's evidence.  It is a

24   maxim of the common law that floats it over into case after

25   case after case.
```

1          And the Apex Doctrine is sort of at odds with that.

2          MR. STRINGFIELD:  Understood, your Honor.  And so

3    there is case law supporting the applicability of the Apex

4    Doctrine.

5          THE COURT:  I absolutely understand that.  But there

6    is nothing that says, a Judge doesn't because -- the guy is a

7    big cheese and he operates a high position, that the Apex

8    Doctrine applies, and therefore he is automatically insulated

9    from discovery.

10          It is totally contrary to hundreds of years of -- well

11    not hundreds -- but at least since 1937 when the Federal Rules

12    of Civil Procedure came into vogue.  It is just contrary to

13    that.

14          MR. STRINGFIELD:  And it makes good sense.  You

15    shouldn't be able to get the head of Apple to, you know, cause

16    a lot of people trauma and, therefore, they settle.

17          But in the -- why in this circumstance ought he not to

18    be -- forget the documents.  Why should he not be deposed?  And

19    certainly why should the documents not be produced?  That

20    doesn't affect him and impinge on his sort of freedom to be

21    free from inquiry where he shouldn't be.

22          MR. STRINGFIELD:  Well, your Honor, speaking to the

23    documents only, you know, under Guerding (phonetic) the

24    discovery process is reasonableness and proportionality.

25          And we have given them documents from the other three

1  -- it is to Mr. Kok and the third gentleman, which should have

2  the information already within it, that Motorola seeks.  They

3  are seeking interactions between these four gentlemen.  They

4  have three of them, and they claim that they need the fourth.

5        THE COURT:  Well, the third -- no, they don't -- they

6  -- doesn't say that -- they want to see what there is.  And

7  that's why discovery exists, especially in light of this.  I

8  don't know what he's saying.  I shouldn't say that.

9        I don't know what he means.  But at least what is

10  being said is susceptible to inquiry and certainly should

11  justify further inquiry.

12        It is pretty clear that it is an up in the air thing.

13  Why is he concerned about going to jail?  Maybe because he

14  would say or the documents would say, this is really unfair.

15  And all they're trying to do -- I don't know anything about

16  anything.  And they're trying to get a settlement so that I

17  won't be brought into this.  How unfair.  I could go to jail

18  unfairly.  I mean (unintelligible).

19        Or he might say, well, this is what happened, and this

20  is what occurred, and thus I have a legitimate fear.  But you

21  don't know until you ask.

22        But they only want documents.  What's wrong with that?

23        MR. STRINGFIELD:  Well, your Honor, the statement

24  about the fear of going to jail is not Mr. Chen, to be clear,

25  it is a different person.  So Mr. Chen wouldn't know this other

1   gentleman's fears.  And it would be hearsay in any event.

2           And so I guess --

3           THE COURT:  Well, his has nothing to do with

4   discovery.

5           MR. STRINGFIELD:  Understood, your Honor.  Understood,

6   your Honor.

7           But I guess my point is is that --

8           THE COURT:  I do not feel protected at all.  That

9   could mean a million things.  Knowing that there is a risk in

10  going to jail and destroying my life, while the company only

11  risks losing money, is of concern to me.

12          Well, is -- why does he think there is a risk in going

13  to jail?  It may be that he's a really smart guy, and he knows

14  that he could be brought into something that he had no part of

15  it.

16          Or it could be that he had a lot of involvement, and,

17  therefore, he's concerned.  There is no way to know.  And they

18  don't have to accept the sort of benign version that favors him

19  and your side of the case.

20          MR. STRINGFIELD:  Well, your Honor, I guess it is

21  -- Mr. Chen's documents wouldn't have the feelings of this

22  other gentleman --

23          THE COURT:  I don't know that.

24          MR. STRINGFIELD:  -- if that makes sense.

25          THE COURT:  How do I know that?

1          MR. STRINGFIELD:  So we have given them --

2          THE COURT:  People say the most astonishing things in

3    emails.  Email traffic -- there is a whole bunch of Law Review

4    articles on this.  Email traffic is probably now one of the

5    most significant forms of evidence that can be presented in a

6    case because of the unguarded and insane things people say.

7    And they lead to all other forms of evidence.  That's what the

8    cases say, and that's what the Law Review articles say.  And it

9    makes common sense.

10          MR. STRINGFIELD:  Understood, your Honor.  I guess --

11   where we're coming out on this is that, you know, we believe

12   that the doctrine does provide some protection for Mr. Chen's

13   documents.  We think that, you know, there is -- there is

14   already sufficient documentation already in the production from

15   the three other custodians.

16          But more to the point, we are not today refusing to

17   give discovery for Mr. Chen.  That's -- the Apex Doctrine is

18   one of the bases that we think we would want to use to limit

19   that discovery in ways that make sense.

20          But this is an issue that was just brought to us

21   within the past couple of weeks.  We had a conference with the

22   other side.  We gave them our position.  And we got no response

23   from them until this motion weeks later.  So we're a little bit

24   caught on our heels right now.

25          But I guess --

1        THE COURT:  I think -- I think that's horrible and

2  unfortunate.  But we're here.

3        MR. ALPER:  And, your Honor, I must respectfully

4  object to that recount of the facts.  We are trying to, in an

5  orderly fashion, move through discovery.  They have sent us a

6  letter in black and white that under no circumstances would

7  they produce his documents, and so we figured it was an

8  appropriate time to bring the issue.

9        THE COURT:  Doesn't make a difference.  You're here

10  now.  And what are we going to do?

11        MR. STRINGFIELD:  So, your Honor, I guess we would

12  like a chance to negotiate with them on Mr. Chen.  This is one

13  of the freshest issues in the set of issues here.  You know, I

14  --

15        THE COURT:  Do you have from them a document request

16  in effect regarding this gentleman?

17        MR. STRINGFIELD:  Is there one specifically?

18        Yes, we do.

19        MR. ALPER:  Your Honor, on October 10th we sent them a

20  letter, including search terms that we asked them to run, and

21  they refused to do that, so we -- they have our proposal.

22        MR. STRINGFIELD:  Well, the search term issue was more

23  of we were trying to negotiate search terms back and forth.  It

24  wasn't a blanket refusal.  I don't -- that's not my

25  recollection.

1          MR. ALPER:  We actually provided specific search terms

2     for Mr. Chen in our letter.

3          THE COURT:  For Mr. Chen.

4          MR. ALPER:  Correct.

5          THE COURT:  Okay.

6          MR. ALPER:  And they outright refused to run them and

7     told us they will not, without an order, produce documents from

8     Mr. Chen.

9          THE COURT:  Okay.

10         MR. STRINGFIELD:  Well, your Honor, if -- if that's

11    what we said, then that's incorrect.  It is not our position

12    that we're not --

13         THE COURT:  Well, then let's talk about the here and

14    the now and not I don't want to -- I don't want to -- I don't

15    want to cause more difficulty by having you go and start

16    fighting about search terms and what means what.

17         I'm telling you his -- all the Apex Doctrine was

18    designed initially to do, and it is relatively new in that it

19    has a name, is that people who are of significance shouldn't be

20    brought into cases to cause trouble and to make things

21    difficult.  And because -- but it strikes me that from what I

22    have seen there is enough to demonstrate that here's a fellow

23    who may or may not have information.  Is it a burden to him?

24    It is a burden for you to be here.  It is a burden for you to

25    go out and call your colleagues in New York, I think, or

1    wherever to find out various things.

2          Life is filled with burdens.  And because you have a

3    huge CEO of a company doesn't mean you're immune from otherwise

4    appropriate discovery.  And nothing in any case ever has said

5    that.  All it says is you can't bring people in to irritate

6    people who know nothing.  Okay?

7          Well, he knows something.  He's involved.  I mean,

8    they are not trying to get the head of Lever Brothers or the

9    head of Apple.  Well, we don't know what he knows, but he's a

10   big cheese, he must know something.  Well, that isn't fair to

11   the head of Apple.

12         But here's a fellow who at least there is a

13   demonstration has some involvement.  He recruited various

14   people.  He's writing emails.  If I knew nothing but that, I

15   would think he ought to be, under reasonable circumstances,

16   deposed.

17         MR. STRINGFIELD:  Well, your Honor, again, I think

18   we're only here to address the document issue, not his

19   deposition.  But I -- your point is taken.

20         THE COURT:  Then if you conclude or I conclude that he

21   ought to be subject to reasonable, reasonable inquiry, then why

22   ought his documents not be amenable to production to see if

23   there is anything -- if there is nothing in there, it all to

24   the good for him.

25         If there is something of value to the plaintiff under

1  traditional relevancy standards, they are entitled to them.

2  They are what they are.  Maybe they account for nothing, and

3  they will -- they will yield nothing.

4          And maybe they will be something very different.

5          I have no idea if you are right or wrong in this case.

6  I have no idea whether the plaintiff is right or wrong.

7  Because it is Motorola on the plaintiff's side doesn't mean

8  anything.

9          But I think, just looking at this letter, is enough to

10  give me some basis to conclude that he must know -- that they

11  are entitled to discovery to find out if the atmosphere and

12  emanations of this email are bottomed in the concern over his

13  involvement in what has occurred.  Or just that people get

14  screwed all the time who have no involvement.

15          But how do you know until you ask?  So I think you're

16  entitled to the documents.

17          MR. STRINGFIELD:  Your Honor --

18          THE COURT:  And I think -- no, no.  I think also you

19  should -- not deciding it.  But I don't see any reason in the

20  world why given what I have seen, he shouldn't be deposed.

21          Now I'm not saying where or when or how or whatever.

22  I mean, the rules provide for a seven-hour deposition -- a date

23  -- seven hours of being deposed, with appropriate time for

24  cross examination.

25          But he's a big player in this, and he's central to

1    this.  He recruited the guys who allegedly stole stuff.  And he

2    writes an email -- if I knew nothing else about concerns about

3    going to jail -- so I don't want to repeat myself.

4           Are those concerns because of what occurred in this

5    case?  Or are they, despite what -- his lack of involvement, he

6    has a legitimate fear that he will get caught up in something

7    that he's innocent of?  I have no idea.

8           MR. STRINGFIELD:  Your Honor, if I may, I propose that

9    we add this subject of discovery to the discussion that the

10    parties are planning to have in the next week, and then

11    hopefully we can resolve this issue.

12           MR. ALPER:  And if I may --

13           THE COURT:  Today is Tuesday.  Why in the world do you

14    have to wait -- discovery is running.  You have a trial date.

15    You should sit down today.  If you have to call your folks in

16    -- are they in New York?

17           MR. STRINGFIELD:  Washington, D.C., your Honor.

18           THE COURT:  Washington, D.C.  Same thing.

19           There are phones.  They can call and everybody can

20    talk today.  If you guys can't get any farther, then come back

21    right away.  I just don't want Judge Norgle to be annoyed that

22    I have let you go on so that his date, right or wrong, is

23    affected.

24           MR. STRINGFIELD:  Your Honor, today is Thursday.  And

25    as we discussed earlier, we were talking about having this

1  conference next Tuesday.  As I stated, I'm not opposed to that

2  personally, I just need to check the availability of my

3  partners.  Tuesday may very well work for us.

4         It will be next week for sure.  But, you know, we're

5  targeting Tuesday.  I just need a chance to confer with my

6  partners and confirm their availability for an in-person

7  conference.

8         THE COURT:  Okay.  Let's say that I do it Tuesday, and

9  you want to then come back on, what, the 14th?

10        MR. ALPER:  It was the 13th, your Honor.

11        THE COURT:  The 13th.  Sorry.  Thank you.

12        MR. ALPER:  And if we could have your guidance on this

13  issue.  They told us that they wouldn't produce Mr. Chen's

14  documents.  What we would like to avoid is having to come back

15  and argue about that very same issue.

16        So with respect to Mr. Chen's documents, we would like

17  to take that off the table.  We have these other issues that

18  we're going to meet and confer about, various requests and so

19  on.

20        THE COURT:  Well, I -- but it is not that easy.  The

21  underlying substance of what you're looking for I think you're

22  entitled to.  The question is what do they have to give you?

23  You could do this in a way where you define things so that it

24  wouldn't be fair, you know.  Mr. Chen's -- I know I can't think

25  of what -- you know, hotel schedule with -- that's probably a

1    bad idea -- a bad example.

2        But there are some things that maybe they wouldn't

3    want you to see, and other things you absolutely should see.

4        MR. ALPER:  So we have provided search terms to --

5    maybe I may make this recommendation.  We had provided search

6    terms, as Mr. Singh noted a moment ago.  They have had those in

7    their possession for quite a while.

8        It seems that at this point the issue is now funneled

9    down to if there is a search term that they think creates

10   problems, in other words, it is creating a lot of hits that

11   they say -- they are going to say actually hits irrelevant --

12       THE COURT:  Can I ask you --

13       MR. ALPER:  Yes.

14       THE COURT:  -- in a general way, how extensive are

15   your search terms?

16       MR. ALPER:  They are --

17       THE COURT:  Because I'm sure they are very broad and

18   very inclusive.

19       MR. ALPER:  They are no more extensive than the search

20   terms they have already agreed to for other custodians.

21       THE COURT:  Oh, okay.

22       MR. ALPER:  So they should be perfectly acceptable.

23       THE COURT:  Okay.

24       MR. ALPER:  And by the way, your Honor, just to -- a

25   quick note, they have asked us for 35 documents custodians,

1    with broad search terms, including, I think, H-y-t asterisk.

2    Like things like -- very broad singular terms like that, and we

3    have agreed to provide them that discovery.  And so we are

4    attempting to treat -- you know, trying to move through that

5    piece of this case in a very sort of open way.  And we'd like

6    to just simply get what we have previously gotten and move past

7    this.  And so that's why we're scratching our head right now as

8    to why we have to have now another hearing on search terms when

9    we're just asking for the same stuff they have agreed to

10   before.  And it feels a little bit like another hurdle that's

11   being thrown in the way here on discovery that's been

12   outstanding now for quite a while.

13            MR. STRINGFIELD:  And, your Honor, I guess I'll

14   respond to a few points that counsel made.  The search term

15   issue is an ongoing discussion between the parties.  I don't

16   necessarily agree that this scope is the same as stuff that we

17   have already agreed to.  I just don't -- I don't have that

18   information at my fingertips, which is why I would appreciate

19   the opportunity to confer with my partners.

20            The second point is that if we're already going to

21   have a conference where we're going to address these other

22   issues, I see no reason to ramrod the Mr. Chen documents

23   through at this time.  I think it deserves and merits a more

24   reasoned consideration and an opportunity for the parties to

25   get together and try to whittle it down before we ask the Court

1    for its help on that.

2            So I would propose that we put Mr. Chen with the other

3    issues raised in their motion, and we'll take them up at

4    our -- at a follow-up hearing.

5            MR. ALPER:  It -- I understand counsel's position.

6    Respectfully, it feels a little bit like we're going to be

7    rearguing the same thing.

8            THE COURT:  I think so.  And also to start lumping

9    everything in with everything else and this sort of homogeneity

10   to all the things and one thing is lost and another -- the Chen

11   thing seems strikingly straightforward.

12           MR. STRINGFIELD:  And so I think if you --

13           THE COURT:  If I agree that he recruited these people,

14   that's -- that's something.  So he has some -- I'm not saying

15   it is enough, but he certainly has some significant involvement

16   at the very beginning of the enterprise.

17           Then the question I suppose is, well, what happened

18   thereafter?  Did he talk to these people?  Did he know they had

19   purloined information?  If they did, did he know they were

20   bringing things with them?  If he did, did he have any

21   involvement in whatever was done with the materials once it was

22   brought?  After it was brought, what happened to it?

23           I mean, the questions strike me as so incredibly

24   straightforward and simple, at least on the very first level.

25           The only issue is should Chen be deposed.  And I'm

1    telling you my view is that the Apex Doctrine, which is just

2    something courts have made up, it is a name that has existed

3    for a long time, should apply to bar his deposition.  And I'm

4    telling you it does not.

5            Will he have to travel to the United States?

6            MR. STRINGFIELD:  I don't -- I don't believe, your

7    Honor.

8            THE COURT:  Is he here?

9            MR. STRINGFIELD:  No.

10           THE COURT:  He's not here.

11           MR. STRINGFIELD:  I believe he's in China.

12           THE COURT:  Okay.  So how would you plan to -- because

13   that could be a real burden.

14           MR. ALPER:  If that was an issue, as we have in other

15   instances, we fly to their location to take the deposition.  Or

16   at least fly to Hong Kong, which is very close to their

17   location to take the deposition.

18           THE COURT:  And do you need anybody's approval other

19   than the Courts --

20           MR. ALPER:  No.

21           THE COURT:  -- to go -- I mean, none of the --

22           MR. ALPER:  No.  In Hong Kong we don't need approval.

23           THE COURT:  So it is like (unintelligible)?

24           MR. ALPER:  Yes.

25           THE COURT:  Okay.  My inclination -- not -- is that

 1  he's going to be deposed.  And there is no question that the

 2  documents, assuming the request is properly tailored and

 3  reasonable, they should have.  And I don't think it is all that

 4  hard given -- oh, it probably is.  It is hard to get documents.

 5  And there is -- and search terms can be overly broad.  But

 6  we're just not going to go on and on fighting about somebody

 7  who is a real player in this.

 8      MR. STRINGFIELD:  And, your Honor, we don't intend to

 9  go on and on either.  I -- in just breaking it down, first

10  regarding the deposition, that's a different issue that wasn't

11  briefed.  We would appreciate, if they do end up seeking the

12  deposition, we would like an opportunity to brief that.  That's

13  something well beyond what we can address today.

14      The Apex Doctrine certainly squarely addresses the

15  deposition of a senior executive such as Mr. Chen.

16      THE COURT:  And I'm just telling you, I would bet on a

17  million and one issues, I wouldn't know one -- one fraction of

18  what you know.  But on what the Apex Doctrine means, nothing

19  could be more basic.  And my instinct is -- you can brief

20  whatever you want.  My instinct is he's going to be deposed.

21      MR. STRINGFIELD:  Understood, your Honor.

22      THE COURT:  It is the nature of the questions that are

23  asked that may prove problematic.  And people shouldn't be

24  allowed to go and on and on.  But, I mean, he's -- he's a real

25  player in this.

```
 1            And if it is -- where does he live, in China?
 2            MR. STRINGFIELD:  I don't know specifically, your
 3   Honor.
 4            THE COURT:  Do you all know?
 5            MR. ALPER:  We believe that he's located in China.
 6            THE COURT:  And how far from Hong Kong is that?
 7            MR. ALPER:  I believe he's in Shenzhen.
 8            MR. DE VRIES:  Yeah.
 9            MR. ALPER:  And Shenzhen is a drive, your Honor, from
10   Hong Kong.  It is about a -- it is about a two-hour drive from
11   Hong Kong.
12            THE COURT:  We really are arguing -- I mean, the Apex
13   Doctrine is designed to prevent people from being deposed that
14   shouldn't.  It is an intrusion on their time, and it is
15   invasive, and it shouldn't be, except where it should.  I don't
16   think submit -- having a person with his central involvement be
17   deposed for a day -- we can easily divide up the day into
18   direct and cross -- is a terrible imposition.  And the Apex
19   Doctrine doesn't apply.  You can brief whatever you want, but
20   I'm telling you what my inclination is.
21            And you should, by the way -- I don't think -- there
22   is an article in Litigation Magazine that E.N. Johnson wrote
23   about the Apex Doctrine pretty recently.  You should look at
24   that too.  It has a lot of cases.
25            And -- can I ask you, has the Seventh
```

1  Circuit -- because I can't remember if it has.  Has the Seventh

2  Circuit done anything with this?

3          MR. ALPER:  The answer, your Honor, is in 2002 the

4  Seventh Circuit had its Patterson case --

5          THE COURT:  Yeah.

6          MR. ALPER:  -- which laid out the principles that you

7  have articulated in exactly the same way that you have

8  articulated them.

9          THE COURT:  It is not a flat rule that --

10         MR. ALPER:  It is not.

11         THE COURT:  -- big time people.  Oprah Winfrey can be

12 deposed maybe.

13         MR. ALPER:  Yeah.  And they didn't call it even the

14 Apex Doctrine.  And the most recent district court cases in

15 this district have said, the Seventh Circuit has informally

16 adopted anything called the Apex Doctrine.  It has acknowledged

17 the burden issue and how that needs to be, you know, assessed

18 in connection with the --

19         THE COURT:  It is a burden problem.

20         MR. ALPER:  Yeah.

21         THE COURT:  It isn't any different.  It is just

22 somebody gave it a name.

23         MR. ALPER:  Yeah.  And case after case when you have

24 a -- when you have an actual tie to the facts, when it -- with

25 respect to the CEO, when the high -- the up -- the senior

1    executive, they say then that overcomes the burden argument.

2            It is really when you have, as you put it, your Honor,

3    the CEO who is receiving maybe reports generally because they

4    are a CEO just from their position as a CEO, there is a request

5    for a deposition --

6            THE COURT:  Right.

7            MR. ALPER:  -- that that sometimes cannot be enough.

8    But that's not what we have here.

9            THE COURT:  It is often not enough.  What did the

10   person -- what's his involvement?  Oh, none.  But maybe

11   he -- generally seeking a deposition of a high-ranking

12   individual is often just a vehicle to try to coerce a

13   settlement.  That's not what's involved here at all I don't

14   think.

15           So you do what you want to do.  But I really think you

16   should go ahead with the idea that somebody is going to be

17   deposed.  And lengthy briefing is just going to -- going to

18   expand the time needed for consideration.

19           MR. STRINGFIELD:  Understood, your Honor.  And as

20   counsel told us at the beginning of this hearing or earlier in

21   the hearing, they wanted to see the documents first and then

22   make an evaluation as to whether --

23           THE COURT:  Maybe -- right.  Maybe they will decide

24   this guy, you know, the book is not worth the candle.  But who

25   knows.

1    MR. STRINGFIELD:  And so, your Honor --

2    THE COURT:  Oh, well, what -- you're coming back, and

3  then you'll tell me --

4    MR. STRINGFIELD:  So I think what we agreed to, and

5  counsel can correct me if I am wrong, is that I will get back

6  to the Court by the end of the day today with the availability

7  of my partners, targeting Tuesday of next week.  But if they

8  are unavailable to travel, then another date next week.

9    THE COURT:  Well, you're going to call.

10    MR. STRINGFIELD:  I will --

11    THE COURT:  Yeah, don't come back here, call.

12    MR. STRINGFIELD:  No.  Yeah, call, correct, your

13  Honor.

14    THE COURT:  (312)435-5601.

15    MR. STRINGFIELD:  Okay.

16    THE COURT:  And then you'll tell me what the right

17  date is and what we're going to do.  And I don't care if one

18  calls, two calls, all call, it doesn't matter.  But once, once.

19    So -- and, of course, if you want to brief something,

20  I will certainly let you brief it.  And maybe you'll tell me

21  something that I otherwise don't know.  But --

22    MR. ALPER:  And as to Mr. Chen's documents, may we

23  proceed --

24    THE COURT:  Yes.

25    MR. ALPER:  -- with that production at this point?

1           THE COURT:  Absolutely.

2           MR. ALPER:  Okay.  Thank you.

3           THE COURT:  I think Mr. Chen's documents must be

4      produced.

5               Now the question you guys have to decide is the

6      legitimacy and the scope of the search terms.  And I think they

7      should be sufficiently narrowed so that you get what you want,

8      but it isn't a, you know, a tremendous burden.  And the

9      likelihood that the -- at the -- you know, on the outskirts of

10     the situation you're going to find something is really

11     unlikely.  I mean, it is what he wrote and what he got, I would

12     think, but maybe -- I don't know.

13              All right.  Well, thank you.  It is always edifying.

14          MR. ALPER:  Your Honor, I'm sorry, there was a third

15     and final issue.

16          THE COURT:  Oh.

17          MR. ALPER:  It is short.

18          THE COURT:  No, no.

19          MR. ALPER:  May I address it quickly?

20          THE COURT:  Please do.  I'm sorry.

21          MR. ALPER:  It is straightforward.  And it is source

22     code.  And we would like to respectfully ask your Honor to

23     order Hytera to produce the source code that -- it's relevant

24     to our claims, and I'll explain to you exactly what I mean.

25              I want to show you just one thing, your

 1    Honor.  Exhibit 17, if I may.

 2             Exhibit 17 is an interrogatory response from us.  And

 3    if you start by looking after the document itself.  So the

 4    document goes through page 11.  Then you will see a chart and

 5    -- that begins -- it is a non-numbered page, but it is

 6    approximately 14 pages in.  And it consists -- and then it goes

 7    on for 180 some pages.  187 pages there is this chart.

 8             THE COURT:  Okay.

 9             MR. ALPER:  And what that chart explains in detail is

10    where we have discovered that Motorola source code has been

11    copied into Hytera's source code.  And I know we have

12    previously talked about this issue, so I won't belabor it.  But

13    what we discovered in discovery in this case by looking at a

14    snap -- a portion of their source code was that somehow they

15    took our source code and copied it into theirs.  And that was

16    the basis -- that is a basis, not only for our trade secret

17    claim, but for the copyright infringement claim that Judge

18    Norgle allowed us to add over the summer.

19             And so what is it that we're here to ask your Honor

20    for?  They have produced some source code, but it is incomplete

21    and it is not the right versions.  And they won't give us a

22    deposition to have -- where somebody explains issues about the

23    source code, although we asked for it months ago.

24             We have been meeting and conferring with them for

25    three months about this issue.  And because of the change in

1  counsel, that I was approved by Judge Norgle, we had expressed

2  concern about, you know, discovery issues.  But there is a new

3  -- there is new counsel, so we have had to confer with three

4  different law firms.  We have done that.

5        And where we stand currently is that they're

6  continuing to investigate.  They're looking into it.  We don't

7  have a date certain when we're going to get it, and it is

8  incomplete.

9        And so very specifically what we would ask your Honor

10  to do is to order them to provide a complete --

11        THE COURT:  Well, how long have your discussions been

12  going on, months?

13        MR. ALPER:  For months.  And they are actually

14  outlined, your Honor, on page 12 of our brief where we describe

15  how we were first meeting with the Finnegan lawyers in

16  August.  It is these four bullets at the top in all --

17        THE COURT:  No, I see it.

18        MR. ALPER:  And so we were first meeting with the

19  Finnegan lawyers.  They are the lawyers who had been in front

20  of your Honor in prior hearings.

21        Then in September a -- I think at that time it may

22  have been a fifth law firm joined Hytera's counsel, the Calfee

23  firm.  They told us that we should start talking with them.  We

24  did.

25        Then we eventually, as you can see, started talking

1    with the Steptoe firm after they substituted in in September.

2    And here we -- and they said they needed time to get up to

3    speed.  They said they were going to China to investigate.

4            And now here we are in November -- it is

5    November.  Fact discovery closes in February.  Our expert

6    reports are due in April.  And we don't have a complete version

7    of any of their source code.  And we don't have the proper

8    versions that we need to make our claims.

9            And so very specifically we'd ask your Honor to, by a

10   date certain so that it is not some indeterminate time in the

11   future, order them to do three things.  One, make a complete

12   version of their source code available on the source code

13   computer.  All I'm referring to there -- your Honor I'm sure

14   knows this better than me -- is that there is a protocol that

15   we have agreed to and that your Honor has blessed for making

16   source code available.  It is put on a computer.  We go there

17   and review it.  So that's -- so but we'd ask your Honor to

18   order them to provide a complete copy of the source code,

19   everything, all the files in it because they have not done so.

20           They have suggested that maybe some of those files are

21   missing.  That seems inconsistent with the evidence we have

22   seen.

23           But more importantly they say -- they haven't told us

24   that definitively.  They said that they are investigating it,

25   and it is not clear when they're going to finish their

1    investigation.

2              So we'd ask your Honor to order them --

3              THE COURT:  How long does it take --

4              MR. ALPER:  I think --

5              THE COURT:  -- to find out if source code exists?  It

6    doesn't take very long.

7              MR. ALPER:  It should have been months ago.  There is

8    no question in our mind.

9              THE COURT:  Doesn't take months.

10             MR. ALPER:  Exactly.

11             Then, second, they should be ordered to produce all

12   major versions of their source code.

13             If you look at page 11, your Honor, at the line -- a

14   line that is seven up from the bottom of the page, there are

15   three version numbers there, 7.6, 8.0, and 8.6.  They have

16   provided -- produced -- made available for inspection

17   incomplete copies of those three versions.  They have not

18   been -- they have not made available Version 1.0, which we

19   think will contain evidence of copying of our code into theirs.

20             And they say that they are still considering --

21             THE COURT:  Can I ask why not?

22             MR. ALPER:  That -- what they have told us --

23             THE COURT:  You have asked for it, I take it?

24             MR. ALPER:  Yes.

25             THE COURT:  And?

1          MR. ALPER:  And they have told us we are still

2    considering the relevance.

3          And so --

4          THE COURT:  How long -- how many months have gone by?

5          MR. ALPER:  Months -- three months.

6          And so we are here because although we 100 percent

7    agree with your Honor that working cooperatively in discovery

8    is a very important thing, we take it very seriously --

9          THE COURT:  Not three months worth.

10         MR. ALPER:  -- but we can't -- we are going to not be

11   able to make our case out on the time frame the Court has set

12   because it is -- February is the deadline.

13         So we would like to respectfully ask your Court to

14   order them to produce Versions -- Version 1.0, and then each

15   major release, 2, 3, 4, 5, 6 and 7.0.

16         THE COURT:  Wait, wait.  1.0 and what are the other

17   versions?

18         MR. ALPER:  And then so -- up through the current

19   version that they have produced -- the most recent is 8.6.

20         THE COURT:  So you want Version 1.0 through 8.6?

21         MR. ALPER:  Yes.  But in order -- we are trying to

22   reduce any burden here, and so what we have asked for is each

23   major release 1.0, 2.0, 3.0, 4.0, 5.0, 6.0, and 7.0.

24         It may be, just to be clear, that when we look at

25   that, we may need to ask for additional versions, but -- and we

1    had previously talked about trying to figure out ways to do

2    this in stages.  It has gone on for so long now that we need to

3    see at least those versions at this point so that we can fully

4    investigate.

5              And so then there is a third and final thing, your

6    Honor, that we would respectfully ask that you order them to

7    do.

8              THE COURT:  Well, let me --

9              MR. ALPER:  I'm sorry?

10             THE COURT:  -- hear from --

11             MR. ALPER:  Of course.

12             THE COURT:  -- the defendant.

13             MR. STRINGFIELD:  Sure, your Honor.  Thank you.  So as

14   far as why it has taken time to evaluate the source code, the

15   reasons are many.  It is an Asian-based client.  We have time

16   barrier and a language barrier.

17             But more fundamentally, the claims that Motorola

18   brought are eight-year-old claims.  These are -- you know, this

19   -- I won't reargue our statute of limitations brief, but this

20   is why the statute of limitations exists, it is not to force

21   companies to have to go that far back for evidence.

22             That being said, we are doing our best.  And so the

23   issues with Version 1.0, I'll start with, this was something

24   that we had not been able to locate.  As counsel indicated,

25   when my firm took over, one of our first orders of business

1  within weeks of taking over the case is we went to China to

2  find out what's going on.  And we spent a week in China talking

3  to the people there to see what we could find.

4       Through that process we did secure many pieces of the

5  code that they have been asking for, and we produced those to

6  them immediately upon securing them.

7       THE COURT:  In a Version 1.0?

8       MR. STRINGFIELD:  No, not 1.0, the other -- other

9  files that were part of other versions that they contended were

10  incomplete.

11       THE COURT:  Okay.

12       MR. STRINGFIELD:  So --

13       THE COURT:  Sorry.

14       MR. STRINGFIELD:  And the reason I state this, your

15  Honor, is that I want to illustrate that we are working hard to

16  get to the bottom of these issues.  And, you know, we are

17  facing some barriers, but that's -- that's the back drop.

18       As far as 1.0, we had trouble locating that until very

19  recently.  I think we have just found it.  At least what we

20  believe to be 1.0.  And why I say that is that it is not

21  straightforward to figure out what's what and what went into

22  what.

23       For example, if the software never made it into a

24  product that made its way to the United States, that would not

25  be the subject of a copyright claim.  You can't infringe a U.S.

```
 1   copyright that way.
 2         And so we need to investigate these things and find
 3   out, A, what was the software; B, where did it go, if anywhere;
 4   what products did it go into.  And once we figure that out --
 5   did they come into the United States?  These are things that
 6   we're working hard on.  I assure the Court that we are actively
 7   pursuing these.
 8         The other request that counsel made for all major
 9   versions, this was a request we got for the first time at 7:30
10   P.M. this Monday night.
11         THE COURT:  Well, let me stop you.  Pardon me.
12         MR. STRINGFIELD:  Bless you.
13         THE COURT:  Thank you.
14         So as to 1.0, has there been -- has that gone on for
15   the last three months?
16         MR. STRINGFIELD:  So one point --
17         THE COURT:  The search or discussions or whatever?
18         MR. STRINGFIELD:  There have been discussions previous
19   to my firm's involvement.  But --
20         THE COURT:  But given the fact that Judge Norgle has
21   given all of us a date, and assuming he's going to live up to
22   that date, make you live up to that date, it would seem that at
23   least your client, not the lawyers, but your client would have
24   to and could find out what was required about Version 1.0.
25         MR. STRINGFIELD:  And that's what we're trying to do,
```

1    your Honor.  The obstacle that we're running --

2          THE COURT:  But you're still -- you're still -- you're

3    telling me, and I -- it is not your fault.  I'm not -- it is

4    your client's issue.  It isn't satisfactory for them to say,

5    we're doing our best.  We'll let you know when we can.  It is

6    not.

7          MR. STRINGFIELD:  Your Honor, it is a little bit more

8    complicated than that because -- for example, key people that

9    would have this knowledge have left in the eight years since

10   this -- you know, these claims should have been brought.

11         THE COURT:  But then you can file -- you can file

12   something --

13       (Phone ringing.)

14         THE COURT:  -- that says this is the best we can do,

15   and here's why we can't.  But to have done nothing in three

16   months strikes me as not reasonable.

17         MR. STRINGFIELD:  And, your Honor, I just want to make

18   clear that it -- we have -- it has not been doing nothing.  As

19   I mentioned, we went to China --

20         THE COURT:  Do they have an answer?  I am not faulting

21   you at all.  Do they have an answer as yet to the question they

22   have asked?

23         MR. STRINGFIELD:  We don't believe we have an answer,

24   but we're trying to find it.

25         THE COURT:  Okay.  So you only can convey what's

1   conveyed to you, and I accept that.  I'm not faulting you at

2   all.

3          But discovery requires involvement and cooperation in

4   doing by the parties.  And the reality simply is that people

5   who may be on the hook for a lot of money or involved in major

6   litigation drag their feet.  Sometimes all they want is the

7   stuff.  If it helps them, it does.  If it doesn't, it doesn't.

8          I just don't think three months is satisfactory.  And

9   then to be put off by -- not by you as a person, but by you as

10  the spokesman of, I don't know, we're doing the best we can, is

11  not satisfactory.

12         MR. STRINGFIELD:  Your Honor --

13         THE COURT:  If your clients can't do better, then

14  something will happen.  That -- you're dealing with a very

15  sophisticated adversary who will be filing motions, I promise

16  you, that you won't like.  So you tell me what's going to be

17  done about 1.0.

18         MR. STRINGFIELD:  Your Honor, I would propose this.

19  This is a very live and timely issue that we are actively

20  investigating.  As I'm sitting here -- or standing here today,

21  this issue is being investigated.

22         What I would propose, and I know counsel is not going

23  to like this, but I would propose to add this topic to our

24  upcoming conference to give us a little more time to drill down

25  and give you a concrete answer.  Or if not -- I guess maybe not

 1    a concrete answer.  I can't promise that.

 2           But what I can get the Court is what our current

 3    status is, what we -- what further we can expect to know, and

 4    our approximate timeline for that.  And then if that's not

 5    satisfactory, then --

 6           THE COURT:  It is not --

 7           MR. STRINGFIELD:  -- we can --

 8           THE COURT:  It is not satisfactory.  And I'm

 9    not -- I'm not blaming you in the slightest.  It is not.

10           If we did not have any kind of date, you know, and the

11    case was going to be tried on the 12th of never, well, so what,

12    we can all be leisurely, and we'll do it.

13           But we have somebody who is -- he likes schedules, and

14    he adheres to the schedules that he creates.  That's what we

15    all have to live with.

16           But I don't think in any event that somebody who says,

17    I can't tell you anything more about the source code, but we're

18    looking into it.  And three months has gone by, and you have

19    tried, because you have gone there, I don't think the other

20    side or a Court has to say, okay, well, tell us in the fullness

21    of time when you'll get to it or when it will be done.  It is

22    not acceptable.

23           MR. ALPER:  Your Honor, may we ask -- I think as you

24    can see from the -- where at least we believe we're at here, I

25    feel reasonably confident that unless the Court orders them by

1    a date certain to produce complete version --

2           THE COURT:  You won't get it.

3           MR. ALPER:  -- that we won't get it.

4           THE COURT:  Right.  What's the day you propose?

5           MR. ALPER:  For next Friday.  A week from tomorrow is

6    what we would propose.

7        (Telephone ringing.)

8           MR. ALPER:  Beyond that --

9           THE COURT:  I'm sorry.  Let me turn this off.

10          MR. ALPER:  No, I'm sorry.

11          THE COURT:  I'm very sorry.

12          Okay.  I'm sorry.

13          MR. ALPER:  Of course, your Honor.  I think that

14   anything past that -- like yesterday there was a proposal to

15   move -- by them to move this hearing off till after

16   Thanksgiving.

17       (Laughter.)

18          MR. ALPER:  And so -- so we said we couldn't do

19   that.  I think that anything past that date we will be

20   absolutely prejudiced in our ability to put on our case.  And

21   this is the most core evidence in the case.  It is the source

22   code they copied.

23          By the way, this is an aside, there is no statute of

24   limitations for copyright.  The Supreme Court considered that

25   in the MGM case, found very clearly there is no statute of

```
 1   limitations.
 2           So to the extent that there was -- I don't think there
 3   was an attempt to suggest that that issue is somehow wrapped up
 4   in the copyright claim, it is not, but I think a week from
 5   tomorrow at the latest would be what we would respectfully
 6   request.
 7           THE COURT:  Okay.
 8           MR. STRINGFIELD:  And, your Honor, I would --
 9           THE COURT:  Yes.
10           MR. STRINGFIELD:  I think we could set a date
11   certain.  I'm not sure that next Friday is going to work for
12   us.
13           If we could set it --
14           THE COURT:  Well, I thought we set it for the 13th.
15   No?
16           MR. STRINGFIELD:  That's our -- okay.  So there is a
17   few things.
18           We are going to have a follow up meeting with the --
19           THE COURT:  Well, let's just make sure that the --
20   then our next get together will be on the 13th.
21           MR. ALPER:  Yes, your Honor.  Next Tuesday morning,
22   the 13th.
23           THE COURT:  Hold on.  Tuesday A.M., the 13th.
24           MR. ALPER:  And then what we're proposing is that your
25   Honor order them to produce all -- all complete copies of every
```

1    major version of their source code by Friday, the 16th.

2            THE COURT:  Well, the main -- I guess -- forgetting --

3    or putting aside the schedule for a moment -- what

4    substantively is your view or objection to the request that's

5    being made?  Forget the timing.  How about the doing of it?

6            MR. STRINGFIELD:  So --

7            THE COURT:  Or are you objecting to doing it at all?

8            MR. STRINGFIELD:  So, your Honor, there is a few

9    things.  There is versions that they asked for for the first

10   time in their motion to compel.  That was never the subject of

11   any discussions among the parties.  They asked for it for the

12   first time.

13           I don't even know to begin to start.  But we can't

14   have an answer on that stuff by next Friday.  We just learned

15   about their request for that stuff on Monday.

16           THE COURT:  Well, if they have only requested -- a

17   request has been made on Monday, if it has, then that's

18   obviously a different matter.

19           MR. ALPER:  But --

20           THE COURT:  But your folks have it --

21           MR. ALPER:  I can explain.  And then I'll ask

22   Mr. Singh if he wants to weigh in.

23           So over the past three months, we have talked about

24   what versions it is that we're going to need to see.  We asked

25   what -- we explored whether there was -- there would be

1  agreement on their part that certain versions would be

2  representative of others so that they would not later say, oh,

3  but you didn't look at Version 2.4, and that's where it was

4  all --

5              THE COURT:  Right.

6              MR. ALPER:  Those discussions have stalled.  They have

7  not gone anywhere.  We don't have anything beyond incomplete

8  versions of three recent source code versions.  And so at this

9  point --

10             THE COURT:  And you don't have 1 through 7.

11             MR. ALPER:  Correct.  And at this point we can't wait

12  any longer.  And so although we had been discussing whether

13  there are ways to reduce any burden on their part, we really

14  aren't getting anything helpful in response.  Again, it is not

15  counsel's fault.  I mean, this is the client.  And I don't know

16  why they say they can't find certain things and why they can't

17  figure out what Version 1.0 is.

18             But whatever the answer is, you know, we can't wait

19  anymore.  And so at this point we are not asking for Version

20  1.0, 1.1, 1.2.  We could do that.  We think that we -- if we

21  can see those seven snapshots, that will allow us to maybe

22  explore further whether we can reach the representative

23  agreement we have been talking about for months.

24             THE COURT:  So 1.0 to 7.0, without subversions or

25  versions or whatever you'd call it.  Right?

1    MR. ALPER:  Yes, exactly, your Honor.

2    THE COURT:  And you're not getting an answer.  So

3  you'll have an answer or you won't have an answer.  And then I

4  can do whatever I'm going to do.

5    But the idea that the -- a party can simply stall or

6  in good faith not be responsive is one that I think is

7  antithetical to all the cases, all of the cases.

8    MR. ALPER:  And may I suggest something?  Here is -- I

9  think this would help us, your Honor.  If he ordered them to

10  produce each major version of the source code by next Friday,

11  then at Tuesday morning's meeting -- conference with your

12  Honor, if they want to come and explain, okay, look, we're

13  going to need until the following Monday for Version 3.0 and

14  4.0, they can do that, but it will be at a time when their

15  client knows that they have been ordered by the U.S. Court to

16  produce these versions so that we get an actual -- the

17  evidence, as opposed to a -- something -- you know, an

18  indication that they are looking into it.

19    THE COURT:  Have you been talking for the last three

20  months about 1 through 7?

21    MR. STRINGFIELD:  No, your Honor.

22    So that was my point is that versions 2 through 7 and

23  -- that's loosehand because there is different --

24    THE COURT:  2 through 7, I'm sorry.

25    MR. STRINGFIELD:  Versions 2 through 7, we -- they

1  just asked for this stuff on Monday, your Honor.  So I -- I

2  can't say I -- I am being set up for failure.  But by next

3  Friday, given the language barrier, given the time difference,

4  given the difficulty we have had learning these things from the

5  client, I just -- I don't feel comfortable with a deadline last

6  Friday.

7          THE COURT:  No, I think you're right.

8          MR. STRINGFIELD:  And so -- you know, again, and what

9  counsel, I think, is proposing is the Court to issue an order

10  that's subject to modification early next week.  And I just

11  don't think that makes a lot of sense.

12          THE COURT:  No, I think -- I don't disagree with you.

13          MR. STRINGFIELD:  So --

14          THE COURT:  But you really have to tell your clients,

15  and your partners, that time is up.

16          MR. STRINGFIELD:  Your Honor, we are working hard on

17  this.

18          THE COURT:  I'm just telling you.  Now if you just

19  tell me that, for example, realistically that one of these

20  versions is irrelevant to anything, that's different.  But

21  that's not what I am hearing.  It is just, well, we're doing

22  the best we can, and we'll get to it or we're trying -- and

23  that's not good enough.

24          MR. ALPER:  And I have -- am worried -- I just -- I

25  want to preview this for your Honor.  I am worried that there

1  is going to be a round two.

2        So once they're ordered to do something, then we'll

3  hear something like counsel was talking about now, well,

4  Version 1.0 we're not sure if it came into the U.S., ergo it

5  may not be relevant.

6        We would fundamentally disagree with that.  If they

7  stole our -- our allegation is they stole our source code.

8  There is no legitimate basis for any company to have another

9  company's source code.  And they put it into their products

10  that are coming into the U.S. because we can see it.

11        And if they were to say, well, we copied all of your

12  source code into Version 1.0, but it was only Version 1.1 that

13  came into the U.S., and so 1.0 is irrelevant to that chain, we

14  would absolutely disagree with that.

15        And the point the -- the more important point is I can

16  see by observing what we're seeing in this case, that until

17  your Honor orders them to do something, we are going to have

18  what we have now, which is no answers to our interrogatories,

19  no agreement to produce documents.

20        THE COURT:  It is the life --

21        MR. ALPER:  No source code.

22        THE COURT:  It is the life we have chosen.  I just

23  wrote an opinion I'm finishing up -- it is relatively long --

24  dealing with kind of what you're talking about, only to the nth

25  degree, with major law firms involved in the case.  I thought

1    it was scandalous and shocking what's gone on.

2           It is just the way people function.  You know, it is

3    what it is.  So I'm -- don't be so shocked.  But I think it is

4    not right.  And the world is not going to be administered that

5    way.

6           We have a schedule.  You're going to meet the

7    schedule.  And if not, you'll have to explain to Judge Norgle

8    why your client isn't complying.  And I really don't think you

9    want to do that.

10          He's the Judge in the case, and you ought not to start

11   the thing out with him having a view of you that's not good, if

12   that's what's happening.

13          MR. ALPER:  And I -- that's -- I almost think that it

14   would -- I mean, I'm not going to -- but I wonder if counsel

15   for Hytera might even welcome having an order in place.  Maybe

16   it will help --

17          THE COURT:  No, they won't.

18          MR. ALPER:  -- with their client.

19          THE COURT:  No, they won't.  They won't.  They won't

20   welcome it.

21          MR. STRINGFIELD:  Your Honor, I think we're on the

22   same page here.  I don't think it is right to issue an order --

23   a blank check order, and let us try to come back and negotiate

24   that down.  That's not a good --

25          THE COURT:  Well, that's fine.  But when you come

1   back, if you don't have definitive answers, then I'm going to

2   enter an order. And then you can argue about why you can't and

3   how you can't. But I really don't think that that's, you know,

4   what -- what your client should do. I don't think it is the

5   appropriate way to do it.

6        Well --

7        MR. ALPER: So then, your Honor, shall we --

8        THE COURT: I mean, you (unintelligible) motion,

9   maybe, by them that seeks entry of judgment for discovery

10   non-compliance. And they will make a case that will make your

11   client look worse maybe than it is. Or bad when it shouldn't

12   be made to look bad.

13        I just simply -- they have to comply. If there is

14   nothing there, there is nothing there. Is it hard? Yes, it is

15   hard. I understand that. But that's what major litigation is

16   about.

17        I'm sure they have provided you with discovery that's

18   not easy for the -- for them.

19        So let's come back. You're going to come back on the

20   13th. I'm just going to enter an order that says, you know,

21   basically we had a discussion, and it is entered and continued

22   till next week.

23        Will that satisfy everybody?

24        MR. STRINGFIELD: You know --

25        MR. ALPER: Yes, your Honor. And we appreciate the

```
 1   time --
 2          THE COURT:  Do I have to rule definitively?  I guess I
 3   would I assume -- and that the --
 4          MR. ALPER:  We --
 5          THE COURT:  Hold on.
 6          MR. ALPER:  I'm sorry.
 7          THE COURT:  I'm going to say the Apex Doctrine is not
 8   a bar to document production in this case.
 9          MR. ALPER:  Yes, we -- we think that would be helpful,
10   your Honor.
11          THE COURT:  And the -- and that the requested
12   production should be complied with immediately.  Okay.
13          MR. STRINGFIELD:  Which production, your Honor, just
14   for clari- --
15          THE COURT:  Well, the -- you said that you want right
16   now only document production.  Yes?  Not the deposition of
17   Mr. Chen?
18          MR. ALPER:  Correct, at this point --
19          THE COURT:  At this point.
20          MR. ALPER: -- the document production.
21          THE COURT:  So all I'm saying is that the -- I'm going
22   to say the Apex Doctrine or theory is not a bar to document
23   production or to the document production in this case that is
24   being sought.  And that the defendant is ordered to comply with
25   the requested production.
```

1    MR. STRINGFIELD:  Your Honor, as I understood our

2    discussion earlier, I thought that we were going to discuss the

3    con -- I think that you had -- the Court had already indicated

4    that there wasn't going to be a -- the specific contours of the

5    scope are still up for negotiations.

6    THE COURT:  The -- all I'm saying is the scope of

7    production is to be discussed further and will be decided on

8    our next -- your next -- I'm telling you now though that the

9    doc- -- the Apex Doctrine is not a bar to document production

10   in this case.  Not some other case.

11   You know, if Apple gets sued by some lady who doesn't

12   like the way her phone was fixed or some guy who doesn't like

13   the way he was treated, and they want to take the deposition of

14   the head of Apple, that's totally different.  Or they wanted to

15   get all his documents.  Of course that's different.  That's not

16   what's involved here.

17   MR. ALPER:  And, your honor for the record, this is

18   Adam Alper, we -- we agree with the word that you used in the

19   order, that is the order should be complied with immediately.

20   We will stand by to work out any issues over the scope, but

21   that we have been waiting for these documents and they should

22   produce them immediately.

23   MR. STRINGFIELD:  Well, your Honor, he's trying

24   to -- I think that we do need to discuss the scope of the

25   production.  I don't think an order to produce immediately, you

1  know, putting that cart before the scope of discovery horse,

2  makes sense.  Again, I don't --

3       THE COURT:  So all we do is kick the can down the

4  road.

5       MR. STRINGFIELD:  No, your Honor, I think what we

6  decided is that we're going to come back next week and discuss

7  the -- the parameters for discovery in light of their motion.

8  And I -- and, it -- you know, understanding that the Court is

9  not going to hear argument that the Apex Doctrine bars

10  production.  But I think the Court is inclined to give us an

11  opportunity to discuss the scope of that production.

12       I can't produce immediately, as counsel requests,

13  until we discuss that scope, which we're going to do next

14  week.  It is just -- it is a timing and sequencing thing that I

15  just want to make sure is clear.

16       MR. STRINGFIELD:  Your Honor --

17       THE COURT:  So another week goes by, and your folks do

18  nothing.

19       MR. STRINGFIELD:  No, your Honor, we're not doing

20  nothing.

21       THE COURT:  What are you doing in -- within the week?

22  Are you going to produce documents?

23       MR. STRINGFIELD:  Your Honor, within the week we're

24  going to --

25       THE COURT:  Or you are going to produce nothing.

1          MR. STRINGFIELD:  Your Honor, we're continuing to

2     produce.  I don't know necessarily whether it will be documents

3     related to these issues.  But that's an underlying assumption

4     is that we're continuing to make discovery.

5          As far as what's related to this motion, here's what I

6     anticipate that we're going to do between now and the next time

7     we get together.  We are going to continue investigating

8     Version 1.0 so that when we come back we can update the Court

9     on what we think we can do with it.  I can't make any promises

10    right now, but we will tell the Court where we stand on 1.0.

11         Versions 2 through 7 --

12         THE COURT:  No, wait a second.  The first thing that I

13    thought you talked about is the production of the documents of

14    Mr. --

15         MR. ALPER:  Chen.

16         THE COURT:  -- Chen.

17         MR. STRINGFIELD:  Sure.

18         THE COURT:  Are you going to produce those?

19         But you haven't even decided on search terms as I

20    understand it.

21         MR. STRINGFIELD:  Well, that's why we need to get

22    together, your Honor.  And I think that's the point.

23         THE COURT:  And how long has this been going on?  I

24    don't mean to be -- it is not you, but you're here.

25         How long has this discussion about -- well, your

```
 1   initial reaction was you weren't going to produce anything.
 2   You didn't have to.
 3              MR. STRINGFIELD:  Your Honor, I think that the
 4   discussion for search terms has been going on on the order of a
 5   couple of weeks.
 6              MR. ALPER:  A month, your Honor.  We are just in a
 7   couple of -- in a couple of days it will be a month.
 8              MR. STRINGFIELD:  So, your Honor, I get --
 9              THE COURT:  Hold on.  Hold on.
10              MR. STRINGFIELD:  Sorry.
11              THE COURT:  Search terms will be decided on by
12   November 13th.  If not, the Court will select the terms.
13              But I'm telling you now that Mr. Chen's documents,
14   whatever they consist of, and that will be a function of the
15   search terms, are going to be produced.
16              If you guys have not agreed on search terms, I will
17   pick the search terms based upon what they're telling me.  And
18   if Mr. Alper, for example, says, well, these are the search
19   terms, I'm going to -- I have got to pick somebody's.  I'm not
20   an expert.  Neither -- none of us are.  And I don't think you
21   will like what's been selected.  You ought -- you will have to
22   come up with search terms.  If you can't agree, I am going to
23   impose them.
24              MR. STRINGFIELD:  Understood, your Honor.
25              THE COURT:  And if you think that Judge Norgle will do
```

1  anything about it, honestly you're mistaken.  It is not going

2  to go on any longer.  There has been too many delays in

3  discovery.

4        You have a trial date when?

5        MR. ALPER:  November 2019, your Honor.  And discovery

6  -- in February.

7        THE COURT:  It is a huge case.  And when are pretrial

8  motions -- yeah, pretrial motions due?

9        MR. ALPER:  I have to look, your Honor.  It is some

10  time, I believe, in the summer, over the summer of next year,

11  your Honor.

12        THE COURT:  Boy, that will come by -- come so quickly.

13        MR. ALPER:  Absolutely, your Honor.

14        THE COURT:  All right.  And I won't say anything about

15  Mr. Chen's -- there will be a ruling on Mr. Chen's deposition

16  will also be decided on November 13th.  There is no reason not

17  to and to keep putting it off.

18        You guys then can try to work out a schedule for him.

19  And you should have that opportunity.  And if you can't agree,

20  I'll set the date.  That's -- that would be foolish.  You

21  should do it.  But one way or another his materials and he are

22  going to be produced in discovery.

23        I think the source codes are harder.  They really are

24  harder.  But talk about it.

25        If you come back in and you still can't agree after

1    all this discussion, so be it.  But you should have an extra

2    few days to resolve it.  It is a thorny problem.

3              MR. STRINGFIELD:  Thank you, your Honor.

4              THE COURT:  Okay.  All right.  If you don't like the

5    order I issue, and I'll try and make it as bland and compressed

6    as -- call me, with everybody else on the line, and I'll issue

7    a subsequent order.  But I'm just telling you, tell your people

8    discovery is going to be had and go forward.  It is going to be

9    on both sides, not just on your side.

10             MR. STRINGFIELD:  Understood, your Honor.

11             THE COURT:  But what I have hard has been very, very

12   helpful.  And it doesn't persuade me that discovery has been

13   ongoing in the best of faith, let's put it that way.  I think

14   it could be better.

15             And you should make this -- your client should make

16   decisions, I shouldn't.

17             MR. STRINGFIELD:  So, your Honor, just one last point.

18             THE COURT:  Yes.  Sure.

19             MR. STRINGFIELD:  On the 13th, the 13th date, as we

20   discussed earlier, I don't know if that's a problem, but I just

21   would hope for the opportunity --

22             THE COURT:  Oh, yes, you're going to call.  But you're

23   going to call with everybody today on the phone, and you'll

24   tell me if the 13th is a problem.

25             I don't see why it should be.  But I'm not willing to

1    extend it sort of indefinitely after the 13th.  Like you can't

2    say, oh, well, we'll do it in a week from -- that's not going

3    to work.

4              MR. STRINGFIELD:  It will be next week, your Honor.  I

5    just don't know if the 13th date --

6              THE COURT:  No, I understand.

7              All right.  Well, let's see what we can do.  I think

8    we can do more than we have done.  But, listen, this is the way

9    all cases go.  You're not alone.  And I feel badly that you're

10   sort of getting stuck with what's happening.  And I realize it

11   is not your doing, and I'm sorry.

12             All right.  Well, let's see what happens on the 13th.

13   And hopefully you will come and tell me that you have resolved

14   all these issues, and you're going to do what you are going to

15   do.

16             MR. STRINGFIELD:  Your Honor, one point -- go ahead.

17             MR. ALPER:  Oh, I'm sorry.  I was going to thank the

18   Judge, so --

19             MR. STRINGFIELD:  Just one final point.  Just for the

20   Court's planning and scheduling purposes and because I always

21   like to let the Court know, we are planning to file a motion to

22   compel of our own --

23             THE COURT:  Sure.

24             MR. STRINGFIELD:  -- related to their trade secret

25   identification.  I just don't want it to --

```
 1            THE COURT:  And what's that?  They have -- they have
 2    not identified their trade secrets?
 3            MR. STRINGFIELD:  Not with sufficient specificity.  It
 4    was the issue that I was talking about earlier with the large
 5    volume and so forth.  But that's a motion that's forthcoming.
 6            THE COURT:  And they have to -- and I will tell you
 7    they have to do that.  Now they will say they have done it.
 8    But in almost no trade secret case does the plaintiff come in
 9    and adequately, by any stretch, identify its trade secret.  It
10    just -- it is the way of things.
11            MR. ALPER:  I think you will see it
12    differently.  We --
13            THE COURT:  Okay.  I hope so.
14            MR. ALPER:  We share your view about the need to
15    specifically define these.  We worked very, very hard to
16    describe them with great specificity.  And when you look at
17    them, you will see that we have done that in good faith.  And
18    not to play a game in the manner that your Honor was talking
19    about earlier.  We are -- we have tried to be very precise
20    about what we're saying that they took and are using.
21            MR. DE VRIES:  And we're going to talk to them.  They
22    have asked us for a conference, I think, tomorrow.  We're going
23    to talk to them and hear from them what the issues they have
24    are with our supplemental disclosure.  And at that point
25    perhaps we can work out those issues.
```

1          THE COURT:  All right.  I'm sorry it took so long.

2    And forgive me if I went on, but do the best you can.

3          Thanks for coming in.

4          MR. ALPER:  Thank you for the time, your Honor.

5          THE COURT:  Okay.  And if you're not happy with the

6    order, please just pick up the phone and call, and I'll try to

7    do it so that it fits what we did here.

8          MR. STRINGFIELD:  Thank you.

9          MR. ALPER:  Your Honor, thank you.

10          MR. DE VRIES:  Thank you, your Honor.

11       (Which concluded the proceedings.)

12                        CERTIFICATE

13          I certify that the foregoing is a correct transcript

14    from the digital recording of proceedings in the above-entitled

15    matter to the best of my ability, given the limitation of using

16    a digital-recording system.

17

18

19    */s/Pamela S. Warren*              October 8, 2018
      Official Court Reporter                  Date
20    United States District Court
      Northern District of Illinois
21    Eastern Division

22

23

24

25