IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.<br><br>Plaintiffs<br><br>v.<br><br>HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC.<br><br>Defendants | Civil Action No.: 1:17-cv-01973<br><br>Honorable Charles R. Norgle Sr.<br><br>Magistrate Judge Jeffrey Cole<br><br>**PUBLIC VERSION** |

**PLAINTIFFS' SECOND RENEWED MOTION TO COMPEL FORENSIC INSPECTION OF HYTERA COMPUTERS AND NETWORK SERVERS**

Plaintiffs Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD ("Plaintiffs" or "Motorola") respectfully move this Court to compel Defendants Hytera Communications Corporation Ltd., Hytera America, Inc., and Hytera Communications America (West), Inc. ("Defendants" or "Hytera") to (1) make available for forensic inspection the computers of key Hytera witnesses,[1] as well as its network folders containing Motorola documents. In support of the Motion, Motorola states as follows:

1. On March 1, 2018, Motorola moved to compel Hytera to make available for forensic inspection the computers (or images of those computers) of key Hytera witnesses, as well

---

[1] Motorola requests that it be permitted to begin with forensic inspection of the computers of the following Hytera employees: G.S. Kok, Y.T. Kok, Samuel Chia, Jue Liang, Roger Zhang, Phaik Ee Ooi, Yu Kok Hoong, and Qingzhou Chen.

as Hytera's network folders. Dkt. 175. On March 21, 2018, the Court granted Motorola's motion in part, subject to an agreed protocol for conducting the forensic inspection in China and further discussion about the effect of Chinese law. Dkt. 191. The parties subsequently negotiated a detailed forensic inspection protocol. Dkt. 210 (4/4/18 Hrg. Tr.) at 5, 57-58, 102-103, 104-111, 111-114. At that time, only one issue remained—Hytera's request that the inspection be administered through the Hague Convention in view of Article 277 of the Civil Procedure Law of China. *Id*.

2. Pursuant to the Court's request, the parties briefed Hytera's objection regarding the Hague Convention. *See* Dkt. 202, 212, 225. However, the Court did not resolve that issue. Instead, in view of Hytera's then-pending summary judgment motion on the statute of limitations, the Court denied Motorola's motion, finding that the inspection was not warranted in light of the "limitations of discovery to the statute of limitations issue" because "the material sought by Motorola was not relevant to the narrow issue of whether Motorola knew or should have known enough to have filed its Complaint earlier." Dkt. 231 at 5-6. However, recognizing that the requested forensic inspection seeks information relevant to the case at large, the Court acknowledged that the unresolved foreign law issues for the forensic inspection could be revisited once discovery on the merits opened. Dkt. 234 (5/15/2018 Hrg. Tr.) at 8:20–23. During a status conference on February 7, 2019, the parties reported that two issues remained: (1) whether Chinese law conflicts with Motorola's request and (2) whether the inspection is necessary in light of discovery provided by Hytera. Accordingly, the Court set an agreed upon briefing schedule for this motion. Dkt. 402.

3. Ongoing discovery has confirmed the need for a forensic inspection of key computers as part of discovery in this proceeding. Hytera continues to deny that it had copies of

the thousands of confidential Motorola technical documents on its computers, while Hytera personnel involved in misappropriating Motorola's source code and other trade secrets have refused to answer key questions about the theft based on the Fifth Amendment or have been rendered unavailable for deposition because Hytera says those employees were recently terminated from the company. And just recently, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ without any explanation of why those highly relevant files were not produced earlier.

4. Hytera has argued in prior briefing (Dkt. 202, "Hytera Br.") that a forensic inspection of Hytera computers in China must be administered through the Hague Convention in view of Article 277 of the Civil Procedure Law of China. Hytera further raised "state secret" and "cyber security" related concerns under Chinese law. But the parties have already negotiated a Proposed Protocol for the inspection that would address those concerns.

5. The "Hague Convention d[oes] not deprive the District Court of the jurisdiction it otherwise possesse[s] to order a foreign national party before it to produce evidence physically located within a signatory nation." *Société Nationale Industrielle Aérospatiale v. U. S. Dist. Court*, 482 U.S. 522, 539-40 (1987). Even if a foreign statute is shown to block the requested discovery, the Court may order the requested discovery after taking into account five specific factors. *Id.* at 543-44, n.28.

6. Regardless, Hytera has failed to meet its burden to establish that Article 277 is a blocking statute, let alone that the People's Republic of China would enforce it. Article 277 only applies when discovery is collected by *foreign* corporations or individuals (Dkt. 211-2 ("Fang Decl.") ¶¶ 36-39), but, per the parties' Proposed Protocol, the inspection is to be conducted by *Chinese nationals* who have been *selected and authorized by Hytera*. Article 277 does not bar

3

such a review. Indeed, Hytera previously engaged in precisely the type of discovery at issue here without resort to the Hague. For example, Hytera recently produced approximately 198,000 documents using a protocol substantively the same as that proposed here. Dkt. 352 ¶ 8.

7. Hytera also argues that the inspection *could* implicate Chinese "state secrets" laws. Hytera Br. at 4. But, again, the Protocol addresses this with a "state secrets" review by a ***Chinese*** national, preventing export of state secret materials to the United States, which vitiates Hytera's concern. With respect to Chinese Cyber Security laws, Hytera also argues that the inspection could cover "personal information." Hytera Br. at 4. But these laws do not apply here because Hytera does not provide "Critical Information Infrastructure"—e.g., cellular carriers—as recently confirmed by an Australian tribunal reviewing the same question. *Motorola v Hytera* [No 4] (2018) FCA 1651, ¶¶ 25-28 (Austl.). And although it had the burden to do so, Hytera produced no evidence that Chinese companies have been prosecuted for hiring a vendor to provide documents and other information in a U.S. litigation, nor has Hytera produced any specific evidence that Chinese authorities outlaw forensic inspections.

8. Moreover, even if Article 277 were a "blocking" statute—which it is not—that would not end the inquiry. In such circumstances, courts employ a multi-factor comity analysis established by the Supreme Court in *Societe Nationale Industrielle Aerospatiale*. The factors confirm that Motorola's request is appropriate.

9. First, the forensic examination is necessary to reveal what happened to the ███████████████████████████████████████████████████████ ███████████████████████████████████████ And as the Court noted, such evidence "would be *significant*." Dkt. 210 (4/4/18 Hrg. Tr.) at 50:22-24

(emphasis added). The inspection is also critical because Hytera discovery responses, deposition testimony, and investigation failed to shed light on these critical questions.

10. Second, the proposed protocol is specific: the Examiner will use an electronically-implemented search protocol applying specific search criteria designed to only produce results relevant to Motorola's claims in this case, using Motorola-related keywords, source code, Motorola trade secrets, and specific metadata or other computer information regarding such files. Moreover, only a small subset of Hytera's computers will be searched (*Id.* ¶ 3)—a fact the Court found to be reasonable (Dkt. 210 (4/4/18 Hrg. Tr.) at 56:9–20).

11. Third, the information targeted by the search criteria are **Motorola** confidential documents and source code, which originated at Motorola facilities in the United States.

12. Fourth, Motorola has engaged in extensive efforts to obtain this information though traditional discovery, but Hytera has not provided it. Hytera failed to provide key information about ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ And although Motorola reviewed Hytera's produced code and identified that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, the individual responsible for that Hytera code pled the Fifth Amendment when asked about how he acquired Motorola's source code or where it was located. Dkt. 212, Ex. 10 (Y.T. Kok Tr.) at 248:13–250:19.

13. Fifth, The U.S. has a significant interest in this discovery. This case involves trade secrets developed domestically by a U.S.-based company, stolen by a foreign corporation in its bid to develop a competing product line for sale in the U.S. By contrast, the interests of China would not be undermined by the proposed inspection because the Protocol uses safeguards to avoid implicating Chinese interests and authority, including the inspection being conducted by Chinese

nationals, narrowly-tailored search criteria, and a process for Hytera to withhold privileged and "state secret" materials.

14. Finally, despite Hytera's burden, it has produced no evidence that Chinese companies have ever been prosecuted for anything described in the Protocol, nor that a forensic inspection to accomplish that task would expose it to any liability. Thus, any purported hardship is entirely speculative and insufficient to carry Hytera's burden.

15. Furthermore, a forensic inspection of Hytera's electronic files is necessary to explain what happened to the volumes of Motorola's confidential information taken and used by Hytera. For example, Hytera's ▮▮▮▮▮▮▮▮▮▮ Hytera's ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ to create Hytera's technologies.

16. Hytera nevertheless argues that its recent productions obviate the need for an examination. But despite the overwhelming evidence of ▮▮▮▮▮▮, Hytera's production is still ▮▮▮▮▮▮▮▮▮▮. For example, Hytera engineers discussed ▮▮▮▮▮▮ but Hytera claims ▮▮▮▮▮▮ Moreover, Sam Chia's Hytera laptop contains evidence showing that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Similarly, Hytera also claims it ▮▮▮▮▮▮

6

██████████████████████████████████████████████████████████████
████████████

17. A forensic inspection can remedy all of the issues above by helping to determine

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████. A forensic inspection will also provide much needed transparency into Hytera's discovery process, given that Hytera had *secretly withheld approximately 198,000 documents* on the basis of a "state secret review" while informing the Court that no such documents had been withheld.

WHEREFORE, Plaintiffs respectfully request that this Court compel Defendants to make available for forensic inspection the computers of key Hytera witnesses G.S. Kok, Y.T. Kok, Samuel Chia, Jue Liang, Roger Zhang, Phaik Ee Ooi, Yu Kok Hoong, and Qingzhou Chen, as well as its network folders containing Motorola documents.

**Certification Under Local Rule 37.2**

Motorola's counsel hereby certifies that it has satisfied the requirements pursuant to Local Rule 37.2 to meet and confer with counsel for Hytera in good faith before filing this motion to compel and has determined that the matter upon which a ruling is sought is actually in dispute.

Prior to filing Motorola's original March 1, 2018 motion to compel a forensic inspection, the parties met and conferred telephonically regarding the forensic inspection on January 22, 2018, and February 21, 2018, leaving the parties at an impasse. The motion was then denied without prejudice. The parties met and conferred telephonically again regarding the forensic inspection on December 21, 2018. Justin Singh and Brandon Brown participated on behalf of

7

Motorola, and Daniel Stringfield participated on behalf of Hytera. During this telephone call, Hytera confirmed that they still oppose a forensic inspection. On January 15, 2019, the Court ordered the parties to further meet and confer regarding this motion. Dkt. 398. In accordance with the Court's order, the parties met and conferred on at least January 22 and 24, 2019. Justin Singh participated on behalf of Motorola, and Daniel Stringfield participated on behalf of Hytera. During the February 7, 2019 status conference, the parties informed the Court that the two issues that remained in dispute were (1) whether Chinese law conflicts with Motorola's request and (2) whether the inspection is necessary in light of discovery provided by Hytera. Accordingly, the Court set an agreed upon briefing schedule for this motion. Dkt. 402.

DATED: February 13, 2019

Respectfully submitted,

/s/ Justin Singh
Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Ali-Reza Boloori (*admitted pro hac vice*)
ali-reza.boloori@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

                    David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Plaintiffs*
*Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD.*

## **CERTIFICATE OF SERVICE**

  I, Justin Singh, an attorney, hereby certify that on February 13, 2019, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED: February 13, 2019        */s/ Justin Singh*
                     Justin Singh