# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD. | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 1:17-CV-01973<br>) |
| v. | ) Honorable Charles R. Norgle Sr.<br>) |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., and HYTERA COMMUNICATIONS AMERICA (WEST), INC. | ) Magistrate Judge Jeffrey Cole<br>)<br>) **PROVISIONALLY FILED UNER SEAL**<br>) |
| Defendants. | ) **CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**<br>)<br>) |

## HYTERA'S OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION TO COMPEL FORENSIC INSPECTION OF HYTERA COMPUTERS AND NETWORK SERVERS

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ........................................................................1

II. A FORENSIC INSPECTION IS UNWARRANTED, UNREASONABLE, AND NOT PROPORTIONAL ..................................................................................................3

    A. Forensic Inspections Are a Drastic Remedy for Only Extreme Cases ....................3

    B. Motorola's Proposed Forensic Inspection Is Duplicative and Cumulative of Hytera's Own Discovery Efforts—And Motorola Knew This Before Filing .........................................................................................................................4

    C. Not Only Is the Proposed Forensic Inspection Duplicative and Cumulative, It Is Also Incredibly Burdensome, Disruptive, and Possibly Destructive ................................................................................................................8

    D. Motorola's Justifications for Its Proposed Forensic Inspection Are Meritless...................................................................................................................10

III. ABSENT PROCEEDING UNDER THE HAGUE CONVENTION, THE FORENSIC INSPECTION THAT MOTOROLA PROPOSES IS ILLEGAL .................13

IV. CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ameriwood Industries, Inc. v. Liberman*,
   No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006)......................................12

*Diepenhorst v. City of Battle Creek*,
   No. 1:05-cv-734, 2006 WL 1851243 (W.D. Mich. June 30, 2006)...........................................3

*Hespe v. City of Chi.*,
   No. 13 C 7998, 2016 WL 72407547 (N.D. Ill. Dec. 15, 2016) ..................................................4

*McCurdy Grp. v. Am. Biomedical Grp., Inc.*,
   9 F. App'x 822 (10th Cir. 2001) .......................................................................................3, 12

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
   No. 2:06-CV-899, 2007 WL 1723509 (S.D. Ohio June 12, 2007)..........................................13

**Other Authorities**

Fed. R. Civ. P. 26(b)(1), (2)(C)(i) & (ii)..................................................................................4, 6, 8

Fed. R. Evid. 706 ............................................................................................................................9

Fed. R. Civ. P. 34(a) .......................................................................................................................4

I.  **INTRODUCTION AND BACKGROUND**

Motorola puts the "Chinese law" cart before the "Reasonableness" horse. Though, as explained below, Chinese law prohibits the type of forensic inspection that is embodied in Motorola's proposed protocol, the Court need not reach that issue. Rather, Motorola's request may be denied by applying fundamental tenants of burden, reasonableness and proportionality.

The case law makes clear that forensic inspections are a "drastic" and "extreme" measure, reserved for only the most extraordinary circumstances. And they are certainly not employed as a matter of course, as Motorola would incorrectly lead the Court to believe. Rather, given the incredibly burdensome and intrusive nature of such inspections, they are exceptional, and the relevance, reasonableness and proportionality of the request must be highly scrutinized.

Indeed, this Court has already twice applied the tenants of burden, reasonableness and proportionality to reject Motorola's bid to ransack Hytera's computers. *See* Dkt. 234, 5-15-2018 Hrg. Tr. at 5-7 (the Court "revers[ing]" its prior decision granting Motorola's original forensic inspection motion upon reconsideration of relevance and propriety); Dkt. 398 at 1 (denying Motorola's "renewed" forensic inspection motion based on Motorola's failure to address relevance and proportionality). As the Court most recently observed on this subject:

> The **court is concerned with the proportionality of the discovery Motorola is requesting**, especially **given massive amount of discovery it has already obtained** and which it claims in its brief proves that there is Motorola code on Hytera's computers.

Dkt. 398 at 1 (emphasis added). The Court is absolutely correct—Hytera has produced over 2,500,000 documents, totaling over 20 million pages, and has produced over ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇. And, as the Court correctly observes, Motorola purports to have built its case, and even based this very motion, on documents and code that Hytera *voluntarily produced*. What's more, as Hytera previously informed Motorola—almost an entire month before Motorola renewed its request for a forensic inspection—Hytera has *already* performed a forensic

1

inspection, including recovery of deleted files, on the identified custodians' laptops. Ex. A, Luo 12-15-2018 Dep. Tr. at 89:7-11; 102:18-103:9. Indeed, Hytera's forensic inspection efforts have recovered documents from the laptop of one of the identified custodians ███████ ████████████. Hytera voluntarily produced these files, and referenced them in a recently supplemented interrogatory response ████████████████████████████████████ ████████████████████████████████████████. As evidenced by this voluntarily provided discovery, Hytera is clearly not "hiding the ball."

If the foregoing were not enough to convince the Court that Motorola's demanded forensic inspection is neither reasonable nor proportional, Motorola's treatment of this issue removes any doubt. As the Court will certainly recall, Motorola initially raised the specter of a forensic inspection **nearly a year ago** in the context of Hytera's statute of limitations summary judgment motion. Motorola contended that such an inspection was *necessary* to its defense against Hytera's motion. *See, e.g.*, Dkt. 175 at 1. Then, after forcing the Court to consider *5 briefs* and conduct *3 hearings* related to the propriety of a forensic inspection, **Motorola went ahead and filed its opposition to Hytera's summary judgment motion <u>without the forensic inspection Motorola had previously represented was *required*</u>**. Upon learning this, the Court realized it had been "seduced . . . into going off the wrong way" by Motorola and therefore, "reverse[d] [it]self" and denied Motorola's forensic inspection motion. *See* Dkt. 234, 5-15-2018 Hrg. Tr. at 5-6, 12; *see also id.* at 9 ("[I]f [Motorola] thought [the forensic inspection] was relevant to summary judgment, [Motorola] should have interrupted the briefing on that issue . . . . **The mere fact that [Motorola] went ahead and filed [its opposition] and thought whatever you did was enough is – speaks volumes with me**.") (emphasis added).

With its motion for a forensic inspection denied based on its own tacit admission of

2

irrelevance, Motorola vowed to re-raise its request when the general fact discovery period opened. *Id.* at 13-14. And general fact discovery thereafter opened on July 10, 2018. Dkt. 252. But Motorola did not re-raise its request for a forensic inspection in July 2018. Nor did Motorola think it was urgent or meritorious enough to re-raise in August, September, October, November or December of 2018 either. It was **not until** <u>**6 months**</u> **after general discovery opened**, on January 11, 2019, that Motorola dusted this issue off and finally made good on its threat. Dkt. 389. But by the time this thrice-resurrected motion is argued on March 20, 2019, **fact discovery will close in just over three weeks**, on April 12, 2019. It is apparent that Motorola seeks to run out the clock and use this self-inflicted time crunch as a lever to force the Court into side-stepping the procedures of the Hague Convention and trampling upon the sovereignty of China. Having delayed re-raising this request for so long, Motorola cannot credibly assert that whatever speculative fruits may result from this incredibly invasive and burdensome investigation are so important and critical to this case as to warrant such "drastic" and "extreme" relief.

Therefore, as with the prior incarnation of Motorola's request for a forensic inspection, Motorola's tacit admission as to the utter lack of relevance and importance of this issue "speaks volumes." The Court should not again allow itself to be "seduced . . . into going off the wrong way" and should instead deny this baseless motion for a third and final time.

**II.  A FORENSIC INSPECTION IS UNWARRANTED, UNREASONABLE, AND NOT PROPORTIONAL**

    **A.  Forensic Inspections Are a Drastic Remedy for Only Extreme Cases**

The case law makes clear that forensic examination of a party's computer is a drastic remedy reserved for only the most extreme cases. *See, e.g.*, *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001) (referring to forensic inspection as a "drastic discovery measure"); *Diepenhorst v. City of Battle Creek*, No. 1:05-cv-734, 2006 WL 1851243,

3

*4 (W.D. Mich. June 30, 2006) (grouping forensic inspection in with other "extreme, expensive, or extraordinary means to guarantee compliance" in discovery).

Therefore, the Court's previously expressed concerns regarding the reasonableness, scope and proportionality of Motorola's requested forensic inspection are well founded. *See* Dkt. 398 at 1 ("The court is concerned with the proportionality of the discovery Motorola is requesting, especially given massive amount of discovery it has already obtained and which it claims in its brief proves that there is Motorola code on Hytera's computers."). Indeed, Judge Alonso approved of Magistrate Judge Mason's application of reasonableness, scope and proportionality to deny a motion to compel forensic inspection. *Hespe v. City of Chi.*, No. 13 C 7998, 2016 WL 72407547, at *7 (N.D. Ill. Dec. 15, 2016). The court observed:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information **is not meant to create a routine right of direct access to a party's electronic information system**, although such access might be justified in some circumstances. **Courts should guard against undue intrusiveness** resulting from inspecting or testing such systems.

*Id.* at *4 (quoting Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment) (emphasis is Judge Alonso's). To be clear, Rule 34(a) expressly references and incorporates the scope limitations of Rule 26(b), which mandates proportionality, reasonableness, evaluation of burden, and additionally mandates rejection of discovery that is cumulative or duplicative. Fed. R. Civ. P. 34(a); Fed. R. Civ. P. 26(b)(1), (2)(C)(i). Therefore, the exceptional remedy of the forensic inspection must be weighed against its relevance, reasonableness and proportionality.

**B.    Motorola's Proposed Forensic Inspection Is Duplicative and Cumulative of Hytera's Own Discovery Efforts—And Motorola Knew This Before Filing**

As this Court alluded to in its reference to the "massive amount of discovery" that Motorola "has already obtained," Hytera has voluntarily produced over 2,500,000 documents,

4

totaling over 20 million pages. Hytera collected documents and electronic materials from over two dozen individual custodians—including all 8 of the individuals targeted by Motorola's motion—and numerous other repositories, including Hytera's also-targeted ▮▮▮▮▮▮.

For each of the 8 targeted individuals, their laptops were collected and provided to Hytera's outside e-discovery vendor, Epiq, for processing. Ex. B, Luo Decl., ¶¶ 4-5. Epiq then took an image of the entire hard drive of each laptop and ran a data recovery process. *Id.* ¶ 6. ***This data recovery process includes use of a forensic inspection tool*** called X-Ways Forensics. *Id.* "X-Ways Forensics is an advanced work environment for computer forensic examiners [that] finds deleted files and search hits that the competitors will miss . . . ." *Id.* ¶ 7 (quoting http://www.x-ways.net/forensics/). Among the features offered by X-Ways, and applied by Epiq to the custodial images, are "[a]utomatic identification of lost/deleted partitions," "[r]ecursive view of all existing and deleted files in all subdirectories," and the ability to find "more traces of deleting [sic] files than competing programs, thanks to superior analysis of file system data structures, including $LogFile in NTFS, .journal in Ext3/Ext4." *Id.* These processed hard drive images were searched using search terms, and documents were produced, according to the State Secret Protocol described in the Court's Order of November 16, 2018 (Dkt. 352). *Id.* ¶ 8. By Motorola's admission, the search terms run according to Hytera's discovery process were more comprehensive than the terms that would be applied under even Motorola's forensic inspection protocol. Dkt. 406 at 9 ("These search terms [in the proposed forensic inspection protocol] are ***far narrower*** than those Hytera used in connection with its document productions.") (emphasis Motorola's). Moreover, Hytera has already searched these laptops ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and voluntarily produced ▮▮▮▮▮▮▮▮ recovered from a recently-located computer. Ex. B, Luo Decl., ¶¶ 17-18.

5

Therefore, insofar as Hytera has *already* performed a forensic inspection of laptops for the 8 custodians targeted in its motion—using an outside vendor employing forensic inspection software, and applying search terms that are more comprehensive than those in Motorola's proposed protocol—no further forensic inspection is necessary or appropriate. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (disallowing discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Most troubling, Motorola *already* knew, at least as early as a month before it renewed its motion for a forensic inspection, that Hytera has *already* performed a forensic inspection, including recovery of deleted files, on the identified custodians' laptops. This was raised during the December 15, 2018 Rule 30(b)(6) deposition of Hytera regarding the collection and production of certain source code files:



Ex. A, Luo 12-15-2018 Dep. Tr. at 89:7-11; 102:18-103:9. Notwithstanding its awareness that an additional forensic inspection would be cumulative, Motorola re-raised this issue anyway.

Hytera's ███████, also targeted by Motorola's motion, is a software versioning and

6

control system. Ex. B, Luo Decl., ¶¶ 18. ▮

▮

▮. *Id.* Although the ▮ does not support searching document contents using keywords, Hytera has collected from its ▮, and produced to Motorola, ▮. *Id.* ¶ 21. Hytera has also produced, and continues to collect and produce, ▮ ▮. *Id.* Moreover, as with the laptop images discussed above, Hytera has already searched the ▮ ▮. *Id.* ¶ 22.

Due to its nature and the volume of materials, the ▮ cannot be copied or imaged as contemplated by Motorola's forensic inspection protocol. *Id.* ¶ 21; *see also* Dkt. 405-1 at 3. However, the ▮ can generate revision histories that ▮ ▮ *Id.* ¶ 20. Motorola has previously requested, and Hytera has provided, certain such revision history logs from the ▮. *Id.* The ▮ revision history logs that Hytera has provided ▮

▮

▮

▮ Dkt. 406 at 14. Therefore, because the revision history logs that Hytera has provided ▮ from the forensic inspection, no forensic inspection of the ▮ (even if it was possible) is warranted or appropriate.

Identically to how Motorola long-ago knew that Hytera has already done a forensic inspection of the requested custodians' laptops, as discussed above, Motorola also learned (or

7

reconfirmed) during the same December 15, 2018 Rule 30(b)(6) deposition that the ▇▇▇▇ could generate these revision logs ▇▇▇▇▇▇▇▇. Ex. A, Luo 12-15-2018 Dep. Tr. at 117:17-119:6 (witness testifying: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

Motorola also long-ago knew that the forensic inspection of the ▇▇▇▇ that Motorola seeks is not technically feasible. Indeed, even back in April 2018, Motorola's proposal expressly contemplated that the Examiner would not be able to create an image of the ▇▇▇▇. Dkt. 211-1 at 3. Incredibly, Motorola's proposed workaround is to provide the Examiner with unfettered "direct[] access" to Hytera's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* Hytera's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. B, Luo Decl., ¶ 19. Therefore, the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* Already foreseeing a dispute, the protocol contemplates *further* meet-and-confers, *further* motion practice, and *further* Court intervention. *Id.* All for discovery that is duplicative of what Hytera has already provided.

    **C.    Not Only Is the Proposed Forensic Inspection Duplicative and Cumulative, It Is Also Incredibly Burdensome, Disruptive, and Possibly Destructive**

As discussed above, Motorola's demanded forensic inspection, even under the best circumstances, is duplicative and cumulative of discovery efforts already undertaken by Hytera. This alone merits dismissal of Motorola's motion. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). But if that were not enough, Motorola's demanded forensic inspection would also be incredibly burdensome and disruptive to Hytera. And the potential for compromising the integrity of Hytera's ▇▇▇▇ networks is so likely that it is fully contemplated by the protocol.[1]

---

[1] Overlaying the discussion of burden herein is the fact that, as a People's Republic of China

8

The forensic inspection that Motorola demands involves an "Examiner," who is appointed by the Court and is the Court's adviser pursuant to Fed. R. Evid. 706. Dkt. 405-1 at 1. Hytera has no control over the Examiner. *Id.* at 6 ("**Hytera shall have no control over the [Examiner's] analysis performed.**") (emphasis added). Hytera may not even *communicate* with the Examiner absent Court approval. *Id.* at 1, 5. Hytera is expected to blindly cooperate with the Examiner and assent to its demands "without unreasonable delay." *Id.* at 2. Part of this unquestioning cooperation is allowing the Examiner to set up shop at Hytera (in a "secure room" that Hytera must provide) and bring in its own "servers or other forensic lab equipment." *Id.* at 4. The Examiner (and unknown numbers of "Examiner's staff") will have "open access" to Hytera's facilities, for a minimum weekly stay of 45 hours (and, if requested, nights and weekends too). *Id.* Constrained by only the close of the fact discovery period in this case, there is no contemplated limit on the number of weeks that the Examiner and its staff will maintain residence at Hytera. *See id.* What's more, not only is Hytera forbidden from *communicating* with the Examiner, as discussed above, but Hytera is not even allowed to *watch* the Examiner—with a limited exception for when the Examiner compromises Hytera's ███████████ ███████████, as discussed below. *Id.* at 4.

As noted in the preceding section, Hytera's ███████ cannot be copied or imaged—a safeguard that would aid in protecting the integrity of Hytera's ███████ (which, as also noted above, ████████████████████████████████████████ ████████████). Though Motorola has long been aware of the inability of the Examiner to

---

government contractor████████████████████████████████████████████████. Ex. C, Wagner Decl. ¶ 21. The specific concerns implicated by Chinese law are addressed below—and, to be sure, these considerations must be evaluated as part of the burden of the proposed inspection. However, this section is intentionally content neutral to illustrate the incredibly burdensome nature of the protocol, independent of ████████████████████████████ ████████████████████.

9

safeguard Hytera's █████████, it nonetheless persists with requesting unfettered "direct[] access" to Hytera's ██████████. *Id.* at 3.[2]  **And, disruption and compromise of Hytera's ██████████ system not just a mere possibility—it is a *contemplated contingency* of the protocol**. *Id.* at 4-5. Indeed, though Hytera is forbidden from *talking to* or *watching* the Examiner, if Hytera independently discovers that the Examiner's secret, behind-the-scenes, activities "potentially impact the integrity of its ████████ or the files on it" (presumably, only after its ██████████ fail because Hytera cannot monitor the Examiner), Hytera must scramble to get Motorola's participation in a "joint" notification to cease the Examiner from causing further harm. *Id.* at 5. Even then, such suspension is only "temporary"—and, as with other overreaching aspects of the proposal, will require *further* meet-and-confers, *further* motion practice, and *further* Court intervention—all at great burden to Hytera, and to the Court. *Id.*

Rather than wait to take up the issue of burden *after* the damage has been done (perhaps irreparably) to Hytera's systems and business, the Court should weigh the above-described duplicative and unnecessary nature of Motorola's request against the immense burden of the invasive, disruptive, and potentially destructive protocol and deny Motorola's request.

### D. Motorola's Justifications for Its Proposed Forensic Inspection Are Meritless

Motorola's justification for its forensic inspection may be fairly summarized as follows. Alleged misappropriation of confidential information took place in 2008. Dkt. 1 ¶¶ 5-7. Motorola delayed bringing suit until March 2017. *See id.* Upset that its theories of grand conspiracy of misappropriation are simply not borne out by the evidence in the case a decade later, Motorola concocts another, *grander* conspiracy of a cover-up—one so perfectly executed

---

[2] Though Motorola's proposed protocol pays lip service to the Examiner using its "best efforts" to avoid disruption, Dkt. 405-1 at 4, it is unclear how permitting the Examiner to have "direct" access to Hytera's ██████████████ will not disrupt Hytera. Indeed, though Hytera is forbidden from communicating with the Examiner, *id.* at 1, 5, the Examiner is permitted unfettered access to Hytera's staff, *id.* at 3, facilities, *id.* at 4, and ████████, *id.* at 3.

and concealed, that only a full-on ransacking of Hytera's computers can reveal it.

Rather than consider the most probable explanation—that evidence (if there ever was any) is almost certain to become lost to the sands of time when Motorola unreasonably delays in bringing suit for a decade—Motorola faults Hytera for its own failures of proof. So indignant is Motorola that Hytera and its executives would deny allegations that Motorola has not proved, and that Hytera's own investigation has not found, Motorola absurdly asserts that those denials themselves are somehow evidence of wrongdoing. Dkt. 406 at 2. And, when Hytera *voluntarily produced* ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—which Hytera uncovered through its own diligent investigation and own forensic inspection of the very laptops that Motorola seeks to re-do here—Motorola asserts that the timing of this production was another conspiracy, and could not possibly be due to the fact that the subject laptop was an ancient one that had to be tracked down due to Motorola's unreasonable delay in bringing this suit.[3] *Id.*; *see also* Ex. B, Luo Decl., ¶¶ 15-16.

Similarly, Motorola points to circumstantial evidence that ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉ on a laptop belonging to Sam Chia, and asserts that the fact that Hytera has not found them is confirmation that a forensic inspection is required. Dkt. 406 at 13. But once again, if anything or anyone is to blame, it is Motorola's delay in bringing suit, and not a Hytera conspiracy. Indeed, Hytera's investigation indicates that, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉ (and there is no evidence that they did), the subject laptop is another ancient one. *See* Ex. B, Luo Decl., ¶¶ 9-14. But unlike the ancient laptop discussed above that Hytera was able

---

[3] Hytera located these files on a laptop computer assigned to Phaik Ee Ooi that Ms. Ooi failed to provide during the document collection process. Ex. B, Luo Decl., ¶¶ 15-17. Hytera located this particular laptop through its diligent search efforts, but only after Ms. Ooi had already left Hytera. *Id.* Hytera is ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

11

to track down, this one was reported to have been lost in 2013 (long before Motorola brought this suit, but long *after* Motorola *could have* brought it). *Id.* ¶10. Suffice it to say, a laptop that was lost years ago cannot be forensically inspected. Epiq did, however, apply its forensic tools to search Mr. Chia's other laptops, and could not find ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 11, 14.

Finally, Motorola points to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ and a handful of other documents and communications, which Motorola asserts are part of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Dkt. 406 at 12-13. What Motorola's bold claims overlook—but which the Court astutely observed—is that Motorola cannot claim that "massive amount of discovery it has already obtained" necessitates a forensic inspection, while at the same time claiming that such discovery already "proves that there is Motorola code on Hytera's computers." Dkt. 398 at 1. Motorola's reliance upon this ample discovery confirms that Hytera is not "hiding the ball."

The above descriptions of Hytera's efforts (Section II.B.), the burden the requested inspection would impose on Hytera (II.C.) and the invalidity of Motorola's complaints (II.D.) all confirm that the circumstances here are much different than the extreme circumstances that warranted a forensic inspection in the cases that Motorola cites.[4] Hytera has done everything required by its discovery obligations, and perhaps a great deal more, to provide Motorola the

---

[4] For example, in *Ameriwood Indus. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), there were serious questions as to whether the responding parties had provided information responsive to certain discovery requests, as evidenced by "discrepancies or inconsistencies" in their responses. Here, besides pointing to the aforementioned "massive amount" of discovery that Hytera voluntarily provided, Motorola points to only suspicions that additional files are being withheld. Dkt. 406 at 12-13. But Motorola's skepticism about Hytera's discovery compliance is insufficient to justify forensic inspection. *See McCurdy*, 9 F. App'x at 831 ("Although ABGI was apparently skeptical that MG produced copies of all relevant and nonprivileged documents from the hard drive(s), that reason alone is not sufficient to warrant such a drastic discovery measure."); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) ("Plaintiff's speculation is, in the view of this Court, entirely insufficient.").

information it seeks—notwithstanding Motorola's unreasonable delay in bringing this suit.

### III. ABSENT PROCEEDING UNDER THE HAGUE CONVENTION, THE FORENSIC INSPECTION THAT MOTOROLA PROPOSES IS ILLEGAL

Hytera's concerns about Motorola's proposal to trample the sovereignty of China in violation of Chinese law are not a mere roadblock to discovery, as Motorola wishes to cast them. Rather, these are safeguards to protect legitimate Chinese interests. And they are not insurmountable—as Hytera had repeatedly explained in the past, Motorola could have proceeded under the Hague Convention. Rather than proceeded under the Hague over a year ago when it first raised this issue (or even 6 months ago when general discovery opened), Motorola delayed in what can only be interpreted as an attempt to run out the clock and impose some manufactured sense of urgency on the Court. But as explained below, proceeding under the Hague is still required. And it is Motorola's fault *alone* if there is not enough time for it to do so.

Motorola's Chinese law arguments boil down to a false equivalency between its proposed inspection, on the one hand, and the discovery that Hytera has already voluntarily conducted, on the other. To be sure, and as described at great length above, Hytera has voluntarily provided substantial discovery in this case, including conducting its own forensic inspection of its computers, without violating Chinese law. There is, however, one key and fundamental difference between Motorola's proposed forensic inspection and Hytera's voluntarily conducted discovery: control. Whereas Hytera's own discovery has been conducted using law firms and discovery vendors that Hytera exclusively controls, Motorola's proposed protocol would be conducted by an "Examiner," who is an agent under the control of this Court and, insofar as it is collecting evidence for Motorola, it is an agent of Motorola's by proxy. *See* Ex. C, Wagner Decl., ¶¶ 24. The Examiner does not work for Hytera and Hytera has no control over it. *See* Section II.C. The express language of the protocol removes any doubt: "**Hytera shall have no**

13

**control over the [Examiner's] analysis performed.**" Dkt. 405-1 at 6 (emphasis added).

Article 277 of the PRC Civil Procedure Law prohibits adverse parties and foreign courts from conducting investigations and evidence collection activities on Chinese soil for use in a foreign proceeding, unless authorized in accordance with an applicable international treaty (such as the Hague) or, in the absence of an applicable treaty, through diplomatic channels. Wagner Decl., ¶¶13-14. It is for this reason, and it is not disputed here, that Article 277 prohibits foreign adverse parties from taking U.S. case depositions on Chinese soil without authorization. *Id.* at ¶14. In the same way, (and perhaps more so given that the forensic inspection is more invasive than a deposition), Article 277 would prohibit Motorola's proposed forensic inspection—conducted by an Examiner outside of Hytera's exclusive control—as "investigative and evidence collection activities" in China by a foreign adverse party and/or foreign court. *Id.* ¶ 15.

Motorola concedes that "Article 277 only applies when discovery is collected by *foreigners*." Dkt. 406 at 5 (emphasis Motorola's). But Motorola argues, incorrectly, that the question turns on ethnicity or nationality. *Id.* It does not. Rather, the question is one of loyalty and control. Ex. C, Wagner Decl., ¶¶ 16, 18-19. Article 277 does not allow a Chinese national under the control or loyalty of a foreign adverse party or court to collect evidence by proxy. *Id.* Therefore, without proper resort to the Hague, the forensic inspection proposed by Motorola would be illegal as a matter of Chinese law. *Id.* ¶ 20.[5]

Having established that Article 277 prohibits an unauthorized inspection, Hytera

---

[5] What's more, insofar as Hytera is ███████████████████████████████ ████████████████████████ PRC criminal statues—Articles 111 and 398 of the PRC Criminal Law—would subject the involved parties to potential (and substantial) criminal liability ██████ ████████████ were accessed without authorization. Ex. C, Wagner Decl., ¶¶ 21-23. Even if he or she were a Chinese national, the Examiner—who would not be "working for Hytera," as explained above—would need PRC approval (including security checks and confidentiality agreements) to access these materials. *Id.* ¶¶ 24-25.

incorporates its prior discussions of the comity factors. Dkt. 202 at 6-12; Dkt. 225 at 7-15.

However, for the "importance of the discovery" and "alternative means" factors, Hytera additionally notes that its own extensive discovery efforts, discussed in Section II.B., as well as Motorola's 6-month delay in re-raising this issue after general discovery opened, discussed in the Background, underscore that the requested inspection is unimportant and cumulative.

Regarding the "specificity" factor, Hytera additionally notes that the proposed protocol is not specific at all. It purports to include files with "**partially the same** md5 'hash value,'" which could mean virtually any file. Dkt. 405-1 at 5 (emphasis added). And, notwithstanding the inclusion of keywords and other parameters, the inspection also includes a catch-all that renders the scope to be virtually unlimited:

> The Examiner shall be permitted to search, review, and analyze data or information on the Forensic Images **in their entirety**, including active files, data fragments, log files, application data, and unallocated or deleted space, and **other artifacts that can lead to an understanding of content and historical use**, as **related to the claims and defenses in this litigation**.

*Id.* at 6 (emphasis added).

Regarding the "hardship" factor, Hytera additionally notes the burden of the inspection, discussed in Section II.C., as well as the risk of prosecution for complying with such inspection.[6]

## IV. CONCLUSION

For the foregoing reasons, Hytera respectfully requests that this Court deny Motorola's request for a forensic inspection.

---

[6] Motorola is incorrect that a lack of published Chinese cases would indicate that certain Chinese laws were not enforced. Dkt. 406 at 7. The PRC legal system is a predominantly code-based civil law jurisdiction and case decisions rarely provide primary legal authority. Ex. C, Wagner Decl. ¶¶ 6-7. Cases involving PRC state secrecy may not be published online. *Id.* ¶ 8. Thus, the absence of published cases applying a law does not allow one to draw any conclusions as to how the law—and particularly secrecy laws—may be applied in practice. *Id.* ¶ 7. Moreover, the current tension between the U.S. and China heightens the risk of enforcement. *Id.* ¶¶ 27-28.

15

Date: February 27, 2019             Respectfully submitted,

*/s/ Boyd Cloern*
Boyd Cloern (*pro hac vice*)
bcloern@steptoe.com
Michael Allan (*pro hac vice*)
mallan@steptoe.com
Jessica Rothschild (*pro hac vice*)
jrothschild@steptoe.com
Kassandra Officer (*pro hac vice*)
kofficer@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-300
Facsimile: (202) 429-3902

Daniel Stringfield
dstringfield@steptoe.com
Tron Fu
tfu@steptoe.com
STEPTOE & JOHNSON LLP
115 South LaSalle Street, Suite 3100
Chicago, IL 60603
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

Mark McDougall (*pro hac vice*)
mmcdougall@calfee.com
Joshua Ryland (*pro hac vice*)
jryland@calfee.com
Todd Tucker (*pro hac vice*)
ttucker@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816

*Attorney for Defendants Hytera Communications Corp., Hytera America, Inc., and Hytera Communications (West), Inc.*

## CERTIFICATE OF SERVICE

I, Boyd Cloern, an attorney, hereby certify that on February 27, 2019, I caused a true and correct copy of the **HYTERA'S OPPOSITION TO PLAINTIFFS' SECOND RENEWED MOTION TO COMPEL FORENSIC INSPECTION OF HYTERA COMPUTERS AND NETWORK SERVERS** to be served via the Court's ECF system upon all counsel of record.

/s/ *Boyd Cloern*
Boyd Cloern