1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                  IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4   MOTOROLA SOLUTIONS, INC., et al.,      )
                                           )
5                  Plaintiffs,             )
                                           )
6                  vs.                     ) No. 17 C 1973
                                           )
7   HYTERA COMMUNICATIONS CORPORATION      )
    LTD., et al.,                          ) Chicago, Illinois
8                                          ) February 7, 2019
                   Defendants.             ) 8:57 A.M.
9

10                 TRANSCRIPT OF PROCEEDINGS - Status
        BEFORE THE HONORABLE JEFFREY COLE, Magistrate Judge

11

    APPEARANCES:
12

13  For the Plaintiffs:         KIRKLAND & ELLIS LLP
                                333 South Hope Street
                                Los Angeles, California  90071
14                              BY:  MR. MICHAEL W. DE VRIES

15                              KIRKLAND & ELLIS LLP
                                555 California Street
16                              27th Floor
                                San Francisco, California  94101
17                              BY:  MR. ADAM R. ALPER
                                     MR. BRANDON HUGH BROWN

18

19                    PAMELA S. WARREN, CSR, RPR
                        Official Court Reporter
20                    219 South Dearborn Street
                            Room 2342
21                    Chicago, Illinois   60604
                         (312) 408-5100

22

    **NOTE:   Please notify of correct speaker identification.**
23  **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
    **UNINTELLIGIBLE.**

24

25

1    **APPEARANCES:   Continued**

2    For the Defendants:          STEPTOE & JOHNSON, LLP
                                   115 South LaSalle Street
3                                  Suite 3100
                                   Chicago, Illinois  60603
4                                  BY:  MR. DANIEL STEVEN STRINGFIELD

5                                  STEPTOE & JOHNSON LLP
                                   1330 Connecticut Ave., N.W.
6                                  Washington, DC 20036
                                   BY:  MR. MICHAEL J. ALLAN
7                                       MR. BOYD T. CLOERN
                                        MS. KASSANDRA MICHELE OFFICER
8                                       MS. JESSICA ILANA ROTHSCHILD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings held in open court:)

2         THE CLERK:  17 C 1973, Motorola Solutions versus

3  Hytera.

4         MR. CLOERN:  Good morning, your Honor.

5         THE COURT:  Hi, everybody.

6         MR. STRINGFIELD:  Good morning.

7         THE COURT:  Sorry to make you wait.

8         MR. STRINGFIELD:  No problem, Judge.

9         THE COURT:  Okay.

10        MR. STRINGFIELD:  Good morning, your Honor.  Daniel

11  Stringfield of Steptoe & Johnson on behalf of defendants.

12        With me this morning is Boyd Cloern, Mike Allan,

13  Jessica Rothschild, and Kassie Officer.  All from Steptoe &

14  Johnson on behalf of the defendants.

15        THE COURT:  Thank you very much.

16        MR. CLOERN:  Good morning.

17        MR. DE VRIES:  And good morning, your Honor.  I'm Mike

18  De Vries on behalf of the plaintiff Motorola Solutions.

19        With me is my colleagues Adam Alper and Brandon Brown.

20        THE COURT:  Well, I have missed all of you.

21     (Laughter.)

22        THE COURT:  Life is boring without you guys.

23     (Laughter.)

24        THE COURT:  So are we just here for status or what are

25  we here for?

1      MR. DE VRIES:  We are, your Honor.  So the parties

2  filed three different motions to compel in December and in

3  January.  Your Honor entered orders on those motions.  And I

4  think it is fair to summarize them as directing the parties to

5  confer about the motions to see what we could resolve.

6      THE COURT:  Well, I thought they all said that there

7  would be -- there was going to be some stuff that's in, some --

8  or out.  And I said, well, then I don't want briefs just

9  sitting and then trying to rummage through things later and

10  figure what's in and what's out.  And you should file more

11  compressed linear relevant documents, I think.

12      MR. DE VRIES:  That's exactly right, your Honor.

13      THE COURT:  Okay.

14      MR. DE VRIES:  And what we have done since then is we

15  have met and conferred extensively.  And we have resolved, from

16  our perspective, the vast majority of the issues that have been

17  presented to your Honor.  And I'm happy to provide as much

18  detail about that as you'd like.  But we have had --

19      THE COURT:  I don't --

20      MR. DE VRIES:  -- multiple many-hour calls.

21      From our perspective there is a single issue that

22  remains that -- after talking about it for literally hours and

23  hours and hours.  For example, Mr. Alper and I spoke with

24  Mr. Allan and Mr. Cloern for multiple times this week.  And I

25  think on both sides we could say the parties made a very good

1   attempt to see if they could resolve the forensic inspection

2   issue.

3           What -- what I can report is that I think that the

4   parties agree that many of the issues that have previously been

5   presented to your Honor are no longer in dispute.  There are,

6   as I understand it, two issues that remain on the forensic

7   inspection.

8           And issue one is that Hytera's position is that China

9   law prohibits any form of this forensic inspection discovery.

10          THE COURT:  So we're still at the -- that issue.

11          MR. DE VRIES:  We are.  And I will say that both

12  parties, I think, in very good faith talked about different

13  ways that we might approach this in order to try to resolve

14  that issue.

15          We have suggested a whole bunch of different things

16  that we believe will obviate the -- that objection.  You know,

17  di- -- you know, remote access, transferring the files,

18  you -- designating certain people within the country.  Many,

19  many different things.  Reducing the number of machines we're

20  talking about.  You know, so we have talked about a lot of

21  different things.

22          What I understand Hytera's position is -- and of

23  course they'll tell you if this is right, but I think it is --

24  that no matter what we do in that regard, that they believe

25  that there is no practical solution that allows any form of

1    this discovery to occur consistent with China law.

2         THE COURT:  Can I interrupt you?

3         MR. DE VRIES:  Yes, of course.

4         THE COURT:  Where are you procedurally with Judge

5    Norgle?

6         MR. DE VRIES:  So trial remains set for November.  And

7    expert --

8         THE COURT:  Trial?  The trial?

9         MR. DE VRIES:  The trial.  Trial remains set for --

10        THE COURT:  Not -- okay.  Is set for when?

11        MR. DE VRIES:  November.

12        THE COURT:  Okay.

13        MR. DE VRIES:  And there is an expert discovery

14   process that proceeds essentially over the summer.

15        Discovery was to end at the end of this month.

16        THE COURT:  Uh-huh.

17        MR. DE VRIES:  But Hytera requested more time to

18   complete certain discovery.

19        THE COURT:  Okay.

20        MR. DE VRIES:  We met and conferred.  We reached an

21   agreement about that.  We presented that to Judge Norgle, and

22   he has extended, by nearly two months, the fact discovery

23   period.  But that didn't impact our going to trial or the

24   expert discovery process.  I mean --

25        THE COURT:  How can you go to trial if you are still

1    in discovery?

2         MR. DE VRIES:  Discovery will still conclude by April.

3         THE COURT:  And then --

4         MR. DE VRIES:  And --

5         THE COURT:  Okay.

6         MR. DE VRIES:  Yes.

7         THE COURT:  Right.

8         MR. DE VRIES:  And so that's the status of the

9    case.  And so we're in the process of finalizing the discovery

10   process.  Although it is a few more months at this point in

11   light of that extension of the facts.

12        THE COURT:  But the only real issue is the Chinese

13   computers.

14        MR. DE VRIES:  Well, I tell you there is just --

15        THE COURT:  Or the computers in China.

16        MR. DE VRIES:  And there are also ongoing

17   depositions.  So, for example, we are all -- you know, many of

18   us, probably, are headed to Hong Kong for a number of

19   depositions starting towards the end of next week, continuing

20   on for a couple of weeks.

21        So there are a number of depositions that are

22   occurring, and that was the reason -- primary reason, I think,

23   for extending the fact discovery period.

24        THE COURT:  Okay.

25        MR. DE VRIES:  And so -- so there is the China law

1    issue.

2         And then, you know, we did, on both sides, we took

3    your Honor's directions to heart.  We talked about, you know,

4    are there relevance objections?  Proportionality?  You know,

5    what are the other things that, you know, remain?  Because, of

6    course, the parties have presented a lot of briefing to your

7    Honor, a lot of argument to your Honor about this issue, and we

8    are -- I think are all sensitive to that.  We don't want to

9    inundate the Court with unnecessary disputes.

10        And so my understanding is that there is only one

11   other dispute, and -- in addition to the China law issue, and

12   that is that there has been some recent discovery that Hytera

13   has, we probably say, finally produced.  They would probably

14   put it differently.  I think maybe they would say they just

15   found it.  They say that by producing that discovery we don't

16   need the forensic inspection --

17             THE COURT:  In China?

18             MR. DE VRIES:  -- anymore.

19             For the China materials.

20        And so just -- I will not argue this here unless your

21   Honor would like to hear about it.  But our position --

22             THE COURT:  Well, I would -- sort of in a general way

23   want to know about it.  I don't want you to argue back and

24   forth about the merits so much.  What's the issue?

25             MR. DE VRIES:  Exactly.  So the issue --

1    THE COURT:  They are saying it is not necessary and

2  thus not proportional.

3    MR. DE VRIES:  Exact --

4    THE COURT:  Yeah.

5    MR. DE VRIES:  That's my understanding.

6    So we -- I think we have two disputes that remain

7  after really, I think, hours and hours of discussions --

8    THE COURT:  Let me ask you.

9    MR. DE VRIES:  -- attempting to compromise.

10    Supposing -- if the argument that regardless of what

11  you found on the computers and how incriminating you think it

12  may be, that whatever is now being turned over to you is really

13  every bit as bad, and thus all that becomes is more of the

14  same, albeit it is not significant, I'm not saying it is not

15  significant, but you don't really need it.  Is that the

16  argument?

17    MR. DE VRIES:  I won't --

18    THE COURT:  Or something else?

19    MR. DE VRIES:  I won't try to purport to

20  characterize --

21    THE COURT:  Well, what do you think it is?

22    MR. DE VRIES:  But my understanding is that -- I guess

23  at a high level I would say maybe it is something like that.

24  We don't see it that way at all, and so I -- I have a

25  difficulty --

1    THE COURT:  Oh, okay.

2    MR. DE VRIES:  -- understanding it that way.

3    THE COURT:  Well, did -- is that the way it is being

4  pitched to you?

5    MR. DE VRIES:  Well, I guess what I -- what I would

6  say is that get -- you know, just at a high level it has been

7  pitched as we have provided discovery, including some recent

8  discovery, and it is no longer proportional to the -- our

9  request for a forensic inspection.

10    What I do believe though --

11    THE COURT:  Well, necessary and proportional are very

12  different concepts.

13    MR. DE VRIES:  And I'm sorry, your Honor, I should be

14  more precise.

15    THE COURT:  Well, no, no, it is my fault.  I'm just

16  trying to think out loud with you.  But I -- go ahead, I'm

17  sorry.

18    MR. DE VRIES:  And I think -- but what I do think,

19  because I think this is an important part and it relates to

20  what your Honor wrote in your January 15th order --

21    THE COURT:  Yes, Number 398.

22    MR. DE VRIES:  -- as I understand it.

23    Yes, your Honor.

24    I understand that Hytera intends to continue to deny

25  that they had at least most or perhaps all of our trade secrets

1    on their computers.

2            THE COURT:  Okay.

3            MR. DE VRIES:  And that they intend to deny that the

4    senior executives at Hytera --

5            THE COURT:  Knew.

6            MR. DE VRIES:  -- knew.

7            And we had, you may recall, the opportunity to depose

8    the chairman of Hytera --

9            THE COURT:  Right.

10           MR. DE VRIES:  -- pursuant to your Honor's order, and

11   that deposition has occurred.

12           THE COURT:  What does he say in brief?

13           MR. DE VRIES:  Ummm --

14           THE COURT:  He doesn't know anything about it?  Or he

15   admits it or what?

16           MR. DE VRIES:  Perhaps I'll ask my colleague Mr. Alper

17   to, you know, share about that.  He was the person who took the

18   deposition.  I want to be most, you know, precise in answering

19   your Honor.

20           MR. ALPER:  I would say at a high level he is

21   attempting to deny having known what happened.  In some

22   instances that is very difficult for him to do, and

23   (unintelligible) have some documents.  But, generally speaking,

24   he is attempting to deny that he knew what was happening.

25           THE COURT:  Did he say or maybe it is not --

1       MR. ALPER:  He -- he did.

2       THE COURT:  No, did he -- was some sort of an

3  investigation conducted thereafter that is amenable to your

4  discovery in terms of --

5       MR. ALPER:  If there was, there was (unintelligible)

6  --

7       THE COURT:  And did he talk about that?

8       MR. ALPER:  He said that he was unaware of any

9  conclusions that were drawn from an investigation --

10      THE COURT:  How about regardless of conclusions?  What

11  about that the facts of what came out of that endeavor?

12      MR. ALPER:  He -- he did not have per -- he said that

13  he didn't have specific knowledge, I believe.

14      THE COURT:  And he's the chairman of -- the president

15  of the company?

16      MR. ALPER:  He is the CEO of the company.

17      THE COURT:  And who -- who undertook the

18  investigation, did he say?

19      MR. ALPER:  We -- I -- I don't think we got that

20  information from our deposition of the CEO.  We do -- we are

21  going to have a corporate designee on that topic, and we're

22  hoping to --

23      THE COURT:  But, I mean, was it done by an outside law

24  firm or was it done by people -- folks under him?

25      MR. ALPER:  It -- I think -- that I will -- I don't

```
1    want to --
2           THE COURT:  No, I don't --
3           MR. ALPER:  -- misquote his testimony.
4           THE COURT:  No, if you don't know, you don't know.
5           MR. ALPER:  But he basically said, in essence, that he
6    is not aware of it -- of -- he understands that there is
7    generally an investigation going on.  He doesn't know anything
8    about it.  He doesn't know what conclusions.  And he couldn't
9    say one way or another --
10          THE COURT:  All right.  And is it still ongoing, did
11   he say?
12          MR. ALPER:  It -- I believe that's what he said, that
13   it is still ongoing two years --
14          THE COURT:  And how long has it been --
15          MR. ALPER:  -- into it.
16          THE COURT:  Two years.
17          MR. ALPER:  Two years.  He confirmed that it has been
18   at least two years.  And that after two years he can't say one
19   way or the other whether the --
20          THE COURT:  Or -- and I am -- I am (unintelligible)
21   opinion, I'm just asking.
22          And that he has no essential transmittable knowledge
23   of what has gone on vis-a-vis the investigation over that
24   two-year period, is that --
25          MR. ALPER:  That is correct.
```

1          THE COURT: Is that a fair summary of what has --

2          MR. ALPER: That is correct.

3          THE COURT: Okay.

4          MR. ALPER: That is a fair summary.

5          THE COURT: Okay.

6          MR. ALPER: And does not have any transmittable

7 knowledge from before the -- the two year -- when this case was

8 filed.

9          THE COURT: Does he know about the case?

10          MR. ALPER: He knows about the case. But you would be

11 very surprised, your Honor, he doesn't -- he says that he is

12 not even aware of entire product lines that have been

13 introduced in response to this dispute.

14          THE COURT: Your damage claim was for how much or is

15 it not finalized?

16          MR. ALPER: Our damage -- I'm sorry. Our damage claim

17 has not been finalized. We're still in the discovery phase.

18          Your Honor, to be --

19          THE COURT: I assume though it is in the millions.

20          MR. ALPER: Yes.

21          THE COURT: Or larger.

22          MR. ALPER: It should be.

23          And to -- your Honor, just to -- to the extent that

24 you are having a hard time believing this --

25          THE COURT: No I'm not -- no, it is for nothing.

1          MR. ALPER:  Okay.

2          THE COURT:  I'm truly -- if --

3          MR. ALPER:  We --

4          THE COURT:  If I have expressed that to you, I want to

5    apologize.

6          MR. ALPER:  Okay.

7          THE COURT:  And it is just -- it is sort of an

8    untutored reaction to what you're telling me.  But I express no

9    view.  The only person you have to persuade is Judge Norgle.

10   And if it is a jury, a jury.

11         MR. ALPER:  Yes.

12         THE COURT:  I just wondered if the questions were

13   asked.  Because the question you asked, Justice Frankfurter

14   said, depends the answer you get.

15         MR. ALPER:  We were -- we were having a hard time

16   believing --

17         THE COURT:  Yeah, that's okay.

18         MR. ALPER:  -- (unintelligible.)

19         THE COURT:  Nothing would surprise me anymore.

20      (Laughter.)

21         MR. DE VRIES:  So I think, your Honor, from our

22   perspective where this is left is that we continue to believe

23   that a forensic inspection of the --

24         THE COURT:  It is (unintelligible).

25         MR. DE VRIES:  -- computers is necessary because -- in

1  part because of the positions they are taking.  We're not able

2  to test them.

3       We do think, and we're not going to, you know, go into

4  all the details, of course, that China law is an impediment to

5  this kind of discovery any more than it is an impediment to

6  having a third-party vendor apply search terms to, you know,

7  electronically-stored information in China.  And we think that

8  the invocation of China law and state secrets, even though we

9  have a protocol to block -- to block this -- is not -- is not

10  appropriate.

11       THE COURT:  Okay.

12       MR. DE VRIES:  And we also do think it is necessary.

13       But we understand that the -- that the -- that Hytera

14  has a very different position.  I think we are all confident,

15  because we talked about this, you know, is there any way that

16  we can resolve this?  Can we limit it to these particular

17  computers?  Can we agree that we're going to move this data to

18  a particular place or access it remotely, like the Hytera

19  employees in the U.S. do?  Is there any way that we can resolve

20  these issues?  And they have told us, I think definitively, no,

21  there is no compromise that will let you have any of that

22  discovery.  And so for that reason, what we would request from

23  your Honor is an ability to refile the motion in as targeted --

24       THE COURT:  All right.

25       MR. DE VRIES:  -- and short a way as possible as

1    informed by the meet and confer.

2         THE COURT:  Yeah, I'm -- first of all, thank you very

3    much for really abiding by this order.  I honestly thought that

4    all extraordinary -- extraordinary talent could resolve sort of

5    basic issues.  I didn't think you would resolve the one issue,

6    I just didn't.  And that's the way it has turned out.

7         But you have got rid of everything else.  So this is

8    the central issue maybe that's left in the case, and I

9    understand the significance of it.  And the issue is really a

10   difficult one.

11        So let me hear from Hytera.

12        MR. STRINGFIELD:  Thank you, your Honor.  So there was

13   a fair amount there.  And I think we agree with a lot of it.

14   So I just want to unpack a little bit of it.

15        Both sides did file motions.  Hytera filed some

16   motions to compel in December, and Motorola filed some motions

17   to compel in January.  There was some discussion about

18   scheduling.  The parties thought they could work some of those

19   issues out, and in fact we did.

20        We did have a number of calls between the senior

21   decision makers on the two teams.  We got along quite well, I

22   think.  They were very pleasurable calls and dealt with a lot

23   of the issues.

24        What Hytera would like to address today is, I think,

25   there are a couple of issues that are left from our

1   motion.  And what it really --

2          THE COURT:  You mean the motion that he -- that is on

3   file, that was on file?

4          MR. STRINGFIELD:  Yes, your Honor.

5          THE COURT:  I'm not going to deal with what was on

6   file.  I really don't want to do that.  I told you, I thought

7   in the motion, that what I wanted to do was to have a targeted

8   motion or -- if it -- multiple issues, so be it.  But I wasn't

9   going to try and figure out what was in and what was out, and

10  I'm not going to do that.  I'm not going to go back to the old

11  motions --

12         MR. STRINGFIELD:  Understood.

13         THE COURT:  -- which are -- have a plethora of issues,

14  and then look at pages -- certain pages, you know, and I'm not

15  going to do that.

16         MR. STRINGFIELD:  Right.  All I am doing, your Honor,

17  is attempting to do what Motorola just did, is identify the

18  issues that are still open that we would like to --

19         THE COURT:  Well, what -- I would think the only issue

20  that I have heard that's open -- if you have a difference of

21  view -- is the issue about computers in China.

22         MR. STRINGFIELD:  Oh --

23         THE COURT:  I'm not here to resolve any disputes or

24  come to any conclusions.  I just want to know where you are and

25  what you're doing.

1    MR. STRINGFIELD:  Understood.  And that's what I was

2  trying do is identify the issues from Hytera's side that have

3  not been resolved.  And there is one issue from Motorola's

4  side, which is --

5    THE COURT:  Can I -- I don't mean to interrupt.  There

6  are -- you guys are here -- how many of you flew in?

7    Okay.  When are your flights going out?  Late today?

8    MR. STRINGFIELD:  Yes, your Honor.

9    MR. DE VRIES:  We have -- I believe that Mr. Alper and

10  I both will -- I know we have hearings in Washington, D.C.

11  tomorrow.  I believe that our flights are at 3:00 P.M.

12  approximately.

13    THE COURT:  All right.  Can I ask you just to wait a

14  few minutes and let me get through with the folks that were

15  sort of before you, if I can do that?

16    MR. DE VRIES:  Sure.

17    THE COURT:  And then I'll recall you.  So if you -- by

18  the way, if you want coffee or anything, go to the second

19  floor, bring it back up.  Take off your jackets.  Do whatever

20  you want to do.

21    But I don't want them to have to sit here because

22  that -- your thing will take a bit more time than theirs will.

23    MR. DE VRIES:  And are we going to take -- we had

24  actually understood that we had resolved the issues in their

25  motion, so maybe we can take an opportunity to understand what

1    they think is --

2            THE COURT:  Well, talk in the hallway or go across the

3    hall and talk.  But as I say, if you want to bring something up

4    from the cafeteria, please do not hesitate.  I do every day.

5        (Laughter.)

6            MR. DE VRIES:  Thank you, your Honor.  We appreciate

7    it.

8            MR. STRINGFIELD:  Thank you, your Honor.

9            THE COURT:  You want to talk on the phone?  You can

10   talk on the phone.  Whatever you want to do.

11           All right.  And I'll come -- Jan will come and get you

12   or you'll come back in.  Okay?  Thanks a lot for being patient.

13           MR. ALPER:  Sure.

14           MR. DE VRIES:  Thank you, your Honor.

15           MR. STRINGFIELD:  Thank you.

16           THE COURT:  Okay.

17       (Whereupon the Court turned his attention to other matters

18   on his call.)

19           THE COURT:  Okay.  So whoever was last, go ahead.

20           MR. STRINGFIELD:  Sure, your Honor.  I -- let me just

21   jump to the quicker point.

22           THE COURT:  Okay.

23           MR. STRINGFIELD:  We talked about the forensic motion

24   in the hall, and we disagreed on a briefing schedule.  And if

25   it is okay with your Honor --

1          THE COURT:  Sure.

2          MR. STRINGFIELD:  -- I can -- we can give it now or --

3          THE COURT:  Whatever you want to do.

4          MR. STRINGFIELD:  -- submit it.

5          THE COURT:  So the briefing schedule on whatever

6     motion is that -- who is going to be filing first?

7          MR. DE VRIES:  We will, your Honor.

8          THE COURT:  I assume Motorola.

9          MR. DE VRIES:  Yes, your Honor.

10          THE COURT:  All right.  So Motorola will file a brief

11    related to the computer search issues by?

12          MR. DE VRIES:  Next Wednesday.

13          THE COURT:  Wow.

14          MR. DE VRIES:  Which is February the 12th.

15          THE COURT:  February 12th, comma, limited --

16          MR. DE VRIES:  I'm sorry, the 13th.

17          THE COURT:  The 13th, comma, limited to 15 pages.

18          MR. DE VRIES:  Yes, your Honor.  That should be plenty

19    given the narrow issues that remain.

20          THE COURT:  Okay.  The defendants's response would be

21    due?

22          MR. STRINGFIELD:  Two weeks, if that's acceptable.

23          THE COURT:  In two weeks.

24          With the reply a week thereafter.

25          Okay.  And then let me have you come back a week after

1   that.

2          MR. STRINGFIELD:  So, your Honor, most of this will be

3   in Hong Kong.  And we had -- we had -- I think we talked about

4   in the hall a little bit later --

5          THE COURT:  Oh, I'm sorry.

6          MR. STRINGFIELD:  -- after the --

7          THE COURT:  Well, you pick the date to come back when

8   everyone is available.  I'm sorry.

9          MR. STRINGFIELD:  Okay.

10         MR. DE VRIES:  The date that we had talked about was,

11  I think, March the 20th.

12         THE COURT:  Okay.

13         MR. DE VRIES:  If it's -- of course subject to your

14  Honor.

15         THE COURT:  Yeah, of course, fine.  March 20 for folks

16  to return.  That's fine.  It gives me more time.

17         MR. DE VRIES:  Yes, your Honor.

18         THE COURT:  Okay.  Exciting.

19         MR. STRINGFIELD:  All right.

20         THE COURT:  That's it.  I am so sorry to keep you

21  waiting.

22         MR. STRINGFIELD:  Not at all.  Not at all.

23         So, your Honor, I think we just have one other issue

24  that we would like --

25         THE COURT:  Okay.

1     MR. STRINGFIELD:  -- to address with the Court.

2     THE COURT:  Yeah.

3     MR. STRINGFIELD:  And it is really just a status.

4     THE COURT:  Okay.

5     MR. STRINGFIELD:  So we have -- we resolved most of

6  the issues in Hytera's motion to compel.  And we have a plan to

7  resolve the one remaining issue.

8         We have all spent a lot of time on the phone.  And

9  this is actually all related to the issue that we talked to

10 your Honor about for a very long time in your chambers at our

11 first hearing, and it is the -- sort of getting the specificity

12 on the trade secrets and the number of trade secrets that are

13 currently at issue.

14    THE COURT:  That (unintelligible) still hasn't been

15 resolved?

16    MR. STRINGFIELD:  We are making -- we're making

17 progress.

18    THE COURT:  How old is the case?

19    MR. STRINGFIELD:  The case is --

20    MR. CLOERN:  2017.

21    MR. STRINGFIELD:  I think March 2017.  So a year and a

22 half.

23    THE COURT:  Good things come slowly.

24    MR. STRINGFIELD:  That's right.

25    THE COURT:  You don't want to rush anything.

1        MR. STRINGFIELD:  That's right.  We're getting there.

2   We're getting there.

3        THE COURT:  Right.  That's good.  Good.

4        MR. STRINGFIELD:  So --

5        THE COURT:  So what do we do?

6        MR. STRINGFIELD:  So what Hytera would like to do is

7   just to give the Court a status about where we are and what --

8   to sort of signpost what we hope will not become an issue,

9   provided that the plan works, as we have sort of all laid it

10  out.  We're going to get together in a room, and we're going to

11  go over the trade secrets --

12        THE COURT:  Good.

13        MR. STRINGFIELD:  -- and hopefully find -- like

14  literally lock us together in a room and figure out the right

15  level of specificity that they are happy with on their end and

16  that we're happy with on our end for the trade secrets.  And

17  hopefully what that avoids is the need to sit down and do a

18  very long 30(b)(6) deposition on 142 trade secrets, sort of

19  trying to figure out, you know, the details of each one.  I

20  think the lawyers can get there a lot quicker.  And I think we

21  have got a schedule for doing that over -- I don't know what it

22  is -- but over the next week -- week or two to really figure

23  that out.

24        If we're unable to figure that out, I think

25  where -- where we will be --

1    THE COURT:  Well, hold on.  What's the date you want
2  to give the status on the issue of the trade secret?  Do you
3  have a date?

4    MR. STRINGFIELD:  Did we get a final date in the hall?

5    MR. CLOERN:  To provide the Court with another --
6  where we are on that?

7    THE COURT:  Yeah.

8    MR. CLOERN:  I think we hadn't discussed that, that
9  issue.

10    THE COURT:  Oh, I'm sorry.

11    MR. CLOERN:  We -- we -- we were actually, as you will
12  recall, your Honor, we went back into your chambers and
13  discussed those issues several months ago.  We provided a
14  supplement in December.

15    A couple of days ago counsel raised further questions
16  about it.  We want -- we believe what we have is
17  sufficient.  But we also want to continue to work with
18  counsel --

19    THE COURT:  That's fine.

20    MR. CLOERN:  -- to allow them to understand.  So --
21  and we will make ourselves available as soon as possible.  I
22  think next week.  Hopefully that will resolve things.

23    But I think then it should be two -- we would be happy
24  to report to the -- your Honor or we can --

25    THE COURT:  You can report to me.  We can have a

1   conference call.  I don't want you folks flying all over to

2   tell me that you have resolved something.  That's silly.  I

3   just want to have a -- some date that we're going to shoot for,

4   either here or on the phone.

5           The last thing that you want to do in this case is to

6   wind up in a situation where through one device or another

7   Judge Norgle learns that the trade secret is not yet resolved

8   to everyone's satisfaction because you -- nobody will be happy

9   with the results.

10          MR. CLOERN:  We agree with that, your Honor.

11          THE COURT:  Okay.

12          MR. CLOERN:  So thank you.

13          So we had not discussed a date for a --

14          MR. STRINGFIELD:  So I -- you know, I'm going to be in

15  Hong Kong with some or all of you guys, so it will really be

16  Mike -- I don't know which.

17          MR. DE VRIES:  We can do it any time over the phone.

18          THE COURT:  Yeah.  You'll call.

19          Let's -- Hytera will give the status or Hytera and

20  Motorola will give the status of the issues (unintelligible) by

21  phone at a mutually convenient date to them.  How is that?

22          MR. DE VRIES:  That sounds fine.

23          MR. STRINGFIELD:  That sounds great, your Honor.

24          THE COURT:  Okay.

25          MR. STRINGFIELD:  Thank you.

```
 1              THE COURT:  And then you're not locked into anything.

 2         Okay.  All right.  So what -- when is our next

 3    meeting?  Do we have a date?

 4              MR. DE VRIES:  I don't think, your Honor, other than

 5    the March 20th date that your Honor just set on the --

 6              THE COURT:  Then let's --

 7              MR. DE VRIES:  -- forensic.

 8              THE COURT:  -- leave the March 20th date as the date.

 9              MR. STRINGFIELD:  And then we -- then I guess

10    we -- that will be for the forensic hearing inspection, and

11    then if there are -- whatever other issues.  Because at that

12    point I think we'll be within, what, three weeks of the end of

13    fact discovery?

14              MR. DE VRIES:  Yes.

15              MR. STRINGFIELD:  So if we -- that would be, I think,

16    also --

17              THE COURT:  And we have got dates for the filing of

18    the various briefs.

19              MR. STRINGFIELD:  Yes, your Honor.

20              THE COURT:  Yeah.  So okay.

21              MR. STRINGFIELD:  Yeah.

22              THE COURT:  Well, I look forward to seeing what you

23    give me.  I think it will be very -- it is very interesting.

24              MR. STRINGFIELD:  Thank you.

25              THE COURT:  Illusive and interesting.
```

1       All right.  Thank you all very much.

2       MR. STRINGFIELD:  Thank you, your Honor:

3       THE COURT:  Oh, can I ask you -- let's go off the

4   record.  Let me ask a really foolish --

5       (Discussion off the record.)

6       THE COURT:  Okay.  Thanks, everybody.

7       MR. STRINGFIELD:  Thank you, your Honor.

8       MR. DE VRIES:  Thank you.

9       THE COURT:  Have a nice trip.

10      What -- are we still off the record?

11      (Discussion off the record.)

12      THE COURT:  Where are you all staying?

13      (Which concluded the proceedings.)

14                      CERTIFICATE

15      I certify that the foregoing is a correct transcript

16  from the digital recording of proceedings in the above-entitled

17  matter to the best of my ability, given the limitation of using

18  a digital-recording system.

19

20

21  */s/Pamela S. Warren*              February 11, 2019
    Official Court Reporter                Date
22  United States District Court
    Northern District of Illinois
23  Eastern Division

24

25