IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Motorola Solutions, Inc., et al., | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 1:17-cv-1973 |
| v. | ) |
| Hytera Communications Corporation Ltd., et al., | ) Hon. Charles R. Norgle |
| Defendants. | ) |

## ORDER

Defendants' motion for partial summary judgment [279] is denied. Defendants' motion for extension of time on briefing [181] is denied as moot.

## STATEMENT

Plaintiffs Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD. (collectively, "Motorola") bring this action against Defendants Hytera Communications Corporation Ltd., Hytera America, Inc., and Hytera Communications America (West), Inc. (collectively, "Hytera"). Motorola's Amended Complaint sets forth three claims against Hytera: trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. §§ 1836(b), 1839 et seq. (Count I); trade secret misappropriation under the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065 et seq. (Count II); and copyright infringement under 17 U.S.C. §§ 106, 501 et seq. (Count III). Before the Court is Hytera's partial motion for summary judgment as to Counts I and II. For the following reasons, the motion is denied.

Counts I and II concern Hytera's alleged misappropriation of Motorola's trade secrets related to its Digital Mobile Radio ("DMR") products. In the instant motion, Hytera argues that Motorola's claims for trade secret misappropriation under the DTSA and ITSA are barred by the applicable statute of limitations. Therefore, the Court recites only those facts necessary for the disposition of the instant motion.

Motorola is an industry leader in the development of two-way digital radio products, including its line of MotoTRBO products based on the DMR standard.[1] Motorola has made significant investments developing proprietary data and source code for its MotoTRBO products. Motorola states that it has zealously protected and kept confidential various trade secrets related to its MotoTRBO products. For the purpose of this motion, Hytera does not dispute that Motorola possesses certain trade secrets related to its DMR products.

In 2008, Gee Siong Kok ("G.S. Kok"), Yih Tzye Kok ("Y.T. Kok"), and Samuel Chia ("Sam Chia") (collectively, the "former Motorola Employees") left their positions at Motorola and went to work for Hytera. Defendants' Statement of Material Facts ("SOMF") ¶ 9. While at Motorola, G.S. Kok was a Senior Engineering Manager, Y.T. Kok was a Senior Engineer, and Sam Chia was an Engineering Section Manager. Each of the former Motorola Employees worked on developing DMR products for Motorola, including MotoTRBO products. Given their senior-engineering positions, the former Motorola Employees worked extensively with Motorola's proprietary and confidential information related to MotoTRBO products. Motorola required that each of the former Motorola Employees sign two Non-Disclosure Agreements ("NDA"): the first NDA was part of Motorola's Employment Agreement and the second NDA was signed by the former Motorola Employees when they left the company. Both NDAs provided that the former Motorola Employees were "[n]ot to use, or to publish, or to otherwise disclose to others, either during or subsequent to [their] employment by Motorola, any confidential information of Motorola or its customers." Plaintiffs' Statement of Additional Facts ("SOAF") ¶ 4.

---

[1] DMR is one of numerous competing digital radio standards.

Each of the former Motorola Employees participated in an exit interview before their departure. During the exit interview, they were asked which organization they would be working for after they left Motorola. None of the former Motorola Employees revealed that had accepted positions with Hytera. Nevertheless, Motorola management learned that G.S. Kok and Sam Chia had started working for Hytera shortly after they left Motorola. By January 2009, Motorola was aware that G.S. Kok was the Director of R&D at Hytera and that he had hired at least three of his previous staff members from Motorola who also worked on MotoTRBO products; and in June 2010, Motorola knew that G.S. Kok had been promoted to Vice President at Hytera and that he was working on developing DMR products. In July 2010, Motorola was aware that Sam Chia was listed as an inventor for Hytera on a patent application for technology similar to what he worked on at Motorola.

In February 2010, Motorola licensed certain patents related to its DMR products to Hytera. The license agreement required Hytera to report and pay quarterly royalties to Motorola on its DMR sales. Hytera does not assert that the intellectual property it licensed from Motorola correlates in any way with the trade secrets at issue in this case.

Hytera released its first DMR product in 2010. In February 2010, Motorola employees acquired a Battery Life Chart that was included in a Hytera marketing presentation for DMR products. Motorola employees noticed that the Hytera Battery Life Chart displayed the same numbers as Motorola's DMR products. In 2010, Motorola also became aware that Hytera was producing certain DMR products that were similar to Motorola's products, in terms of the appearance and product features. From 2010 through 2011, rumors began to circulate within Motorola that its proprietary and confidential source code was being used in Hytera's DMR products.

In 2012, Motorola acquired and analyzed a digital radio manufactured by Hytera to determine whether it contained any of Motorola's source code. Motorola's investigation "found no obvious evidence of proprietary material" in the Hytera radio. SOAF ¶ 35. Motorola considered hiring an outside consultant to further investigate the matter, but ultimately it decided to forego this option based on the results of its internal investigation and the additional cost required.

Motorola states that the 2012 investigation failed to uncover any evidence of trade secret misappropriation because Hytera concealed its use of Motorola's source code. Motorola asserts that Hytera rewrote portions of the source code to prevent Motorola from determining that it had been copied. In support, Motorola has submitted internal communications between Hytera employees, including the former Motorola Employees, wherein the Hytera employees discuss their concerns about "using a lot of Moto[rola's] code" and the need to "re-write softwares [sic] to look different from Motorola." SOAF ¶¶ 21-22. Motorola also submits a Hytera document created by Sam Chia on August 1, 2008, in which he states "[O]ption 2 is the best…[it] also had a low chance of detection if the code was dissembled by Moto[rola]." Id. ¶ 23. Hytera does not dispute these statements.

The central basis of Motorola's trade secret claims is that each of the former Motorola Employees, shortly before their departure in 2008 from Motorola, secretly accessed and downloaded thousands of Motorola's confidential technical documents that contained Motorola's trade secrets, including Motorola's source code for its DMR products, and that these trade secrets were incorporated into Hytera's products and business strategies. Id. ¶ 11; Amended Complaint ("Compl.") ¶¶ 61, 70. Motorola states that it first discovered that the former Motorola Employees had downloaded and misappropriated its trade secrets in late 2016, in connection with an investigation of possible patent infringement by Hytera. SOAF ¶ 28. Hytera disputes that Motorola has any evidence that the former Motorola Employees actually downloaded the trade secrets, apart from file access logs showing that the former Motorola Employees accessed certain files before their departure. Moreover, Hytera states that based on the testimony of Motorola's Rule 30(b)(6) witness, Scott Shepard, it was "feasible" that Motorola could have generated the same file access report in 2008 for the former Motorola Employees that it did in 2016. SOMF ¶ 77.

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must

view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

In the instant motion, Hytera asserts that Motorola's claims under the ITSA and DTSA are barred by the applicable statute of limitations. Hytera raises four arguments in support: (1) Motorola was on notice by 2010 of its trade secrets claims based on the inevitable disclosure doctrine; (2) Motorola had actual notice of actionable conduct in February 2010 based on its belief that Hytera possessed its trade secrets and had copied product features; (3) Motorola's suspicion in 2011 of Hytera's copying and intellectual property infringement put Motorola on notice of its claims; and (4) Motorola failed to exercise reasonable diligence when it waited until 2016 to check the former Motorola Employees' file access logs. The Court addresses each argument in turn.

Under the ITSA and DTSA, an action for trade secret misappropriation must be brought within five and three years respectively "after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." 765 ILCS 1065/7; 18 U.S.C. § 1836. The parties agree that Motorola's trade secret claims are governed by the discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." Motorola, Inc. v. Lemko Corp., No. 08 C 5427, 2010 WL 1474795, at *2 (N.D. Ill. Apr. 12, 2010) (quoting Jackson Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill.2d 240, 249, 633 N.E.2d 627, 630–31 (1994). Motorola filed this action on March 14, 2017, and therefore its claims will be barred if it knew or reasonably should have known of Hytera's alleged misappropriation of trade secrets prior to March 14, 2012, for its ITSA claim and March 14, 2014, for its DTSA claim.

Hytera first argues that Motorola's trade secret claims are based on the "inevitable disclosure" doctrine, and therefore it knew or should have known of its claims by 2010 at the latest, when it became aware that G.S. Kok and Sam Chia were working on DMR products for Hytera. This argument fails for several reasons.

First, as Motorola points out, its claims are not based on the inevitable disclosure doctrine. Under the inevitable disclosure doctrine "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995). Here, Motorola is not asserting that Hytera's employment of the former Motorola Employees will *inevitably* lead to the misappropriation of its trade secrets. Rather, Motorola claims that the former Motorola Employees secretly accessed and downloaded thousands of Motorola's trade secrets—including its source code for its DMR products—and that these trade secrets were incorporated into Hytera's products and business strategies. SOAF ¶ 11; Compl. ¶¶ 61, 70. Second, Motorola's knowledge that its employees were working on DMR products for Hytera does not, without more, amount to notice of trade secret misappropriation. See PepsiCo, 54 F.3d at 1269 (7th Cir. 1995) ("[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it inevitable that he will use or disclose trade secret information so as to demonstrate irreparable injury." (internal quotations omitted)). Accordingly, the Court rejects that Motorola had sufficient notice of its claims in 2010 based on the inevitable disclosure doctrine.

Next, Hytera argues that Motorola believed in February 2010 that Hytera possessed Motorola's trade secrets and copied Motorola's product features, which put Motorola on notice of its trade secret claims. More specifically, Hytera points to Motorola's knowledge in February 2010 of the Hytera Battery Life Chart that displayed the same numbers as Motorola's DMR products and Motorola's knowledge in 2010 that Hytera was producing DMR products that were similar to Motorola's DMR products. However, as Motorola points out, the product information and features that it suspected Hytera of copying in 2010 could have been derived from publicly available information—either through publicly released documents or by analyzing Motorola's products. Plaintiffs' Response to Defendants' Statement of Material Facts ("Resp. to SOMF") ¶¶ 42, 45. It follows that Hytera did not necessarily need to use any of Motorola's trade secrets when it created the Battery Life Chart or the features on its DMR products. Accordingly, when viewing the record in favor of Motorola, a jury could infer that Motorola believed in 2010 that Hytera was attempting to offer DMR products with a similar look-and-feel to Motorola's products, rather than implementing Motorola's trade secrets. See Flotec, Inc. v. S. Research, Inc., 16 F. Supp. 2d 992, 1000 (S.D. Ind. 1998) ("[T]rade secret law does not protect information that is publicly available, including information that can be discerned with reasonable effort by inspecting a product available for purchase on the market.").

Hytera's third argument relies on the rumors which circulated within Motorola from 2010 through 2011, regarding Hytera's use of Motorola's source code. Hytera asserts that in 2011, multiple Motorola employees believed that Sam Chia copied Motorola's source code when he left in 2008 and used it to develop Hytera's DMR

3

products. SOMF ¶¶ 47-48. Hytera's argument is based on Nickie Petratos's testimony, who was a Vice President at Motorola from 2007-11. Ms. Petratos testified that she overheard "hallway conversations" in late 2010 or early 2011 that Motorola had identified a portion of its source code in Hytera's products and that engineers were "speculating" or "guessing" that a former Motorola Employee had copied some of the source code. SOMF, Ex. 8, Deposition of Nickie Petratos ("Petratos Dep.") 32:7-23, 34:7-17. Contrary to Hytera's assertion, Ms. Petratos did not specifically testify that Motorola employees believed or knew that Sam Chia copied Motorola's confidential source code and used it in Hytera's products. Instead, her testimony reveals that Motorola engineers were suspicious that Hytera had acquired Motorola's confidential source code and that it may have been copied by Sam Chia, but such "concerns and suspicions…do not start the clock of the statute of limitations." Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1430 (7th Cir. 1994). Further, Motorola argues that when suspicions arose regarding Hytera's use of its source code, it conducted an investigation in 2012, which turned up empty handed. SOAF ¶ 35. While Hytera disputes the purported results of the 2012 investigation, the Court ultimately agrees with Motorola in concluding that the are genuine issues of material fact concerning whether Motorola should have known of its trade secret claims prior to 2012, based on its employees' suspicions of trade secret theft by Hytera.

Next, Hytera argues that Motorola failed to exercise reasonable diligence in investigating its claims because it had the capability to check the former Motorola Employees' file access logs prior to 2012, which would have revealed that they accessed Motorola's trade secrets prior to leaving the company. Hytera contends that despite Motorola's ability to check the file access logs earlier, Motorola did not check them until 2016, and offers no explanation for the delay. In response, Motorola states that it did not have the capability during this period to automatically determine whether an employee was downloading files for an inappropriate use and submits evidence challenging the feasibility of recovering the former Motorola Employees' file access logs prior to 2012. See Resp. to SOMF ¶¶ 72-77. Moreover, Motorola states that checking the former Motorola Employees' file access logs would not have revealed that they copied Motorola's source code—one of the primary trade secrets at issue in this case. SOAF ¶ 9. Accordingly, there are numerous genuine issues of material fact concerning whether Motorola exercised reasonable diligence when it waited until 2016 to check the former Motorola Employees' file access logs.

Finally, Motorola raises the issue of fraudulent concealment, which may be invoked under Illinois law to extend the statute of limitations when the plaintiff "could not have discovered his cause of action even in the exercise of due diligence because defendants hid it from him." Gredell v. Wyeth Labs., Inc., 346 Ill. App. 3d 51, 60, 803 N.E.2d 541, 548 (2004). "In order to prove fraudulent concealment, plaintiff must show affirmative acts or representations by defendants which were designed to prevent and, in fact, did prevent, plaintiff from discovering his claim." Id. Here, Motorola submits evidence showing that the former Motorola Employees concealed their plans to work for Hytera after leaving Motorola and made false statements regarding whether they had returned all of Motorola's confidential information before their departure. SOAF ¶¶19-20. Motorola also submits evidence showing that the former Motorola Employees might have engaged in efforts to conceal Hytera's use of Motorola's confidential source code, which according to Motorola, thwarted its 2012 investigation. Id. ¶¶ 21-23. However, the facts surrounding Hytera's purported fraudulent concealment are disputable, and therefore the issue must be left for a jury to decide.

For the reasons stated above, the Court concludes that there are numerous genuine issues of material fact concerning whether Motorola knew or reasonably should have known of Hytera's alleged misappropriation of its trade secrets prior to March 14, 2012 for its ITSA claim, and March 14, 2014 for its DTSA claim. Accordingly, Hytera's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

*/s/ Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 12, 2019