# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 1973 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| HYTERA COMMUNICATIONS CORP, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### A.

Motorola has filed a "Second Renewed Motion to Compel Forensic Inspection of Hytera Computers and Network Servers" seeking permission to allow it to conduct a forensic inspection of several Hytera computers in China: namely those of G.S. Kok, Y.T. Kok, Samuel Chia, Jue Liang, Roger Zhang, Phaik Ee Ooi, Yu Kok Hoong, and Qingzhou Chen. Ominously, Motorola cautions that this may only be the beginning [Dkt. # 403, at 1 n.1], despite the fact that discovery is over in less than a month on April 12th. [Dkt. #399].

Motorola's quest for forensic inspection began about a year ago on March 1, 2018. [Dkt. # 173]. At that time, discovery was supposedly limited to Hytera's statute of limitations defense, an issue that has eluded resolution since May of 2017 [Dkt. # 32], until a few days ago. [Dkt. #435]. But discovery unfortunately went far beyond that. [Dkt. #231]. And, based on Motorola's representations to the court since it amended its Complaint to add a copyright claim (ostensibly, in order to avoid its case being scuttled by Hytera's statute of limitations defense), its quest has gone far enough.

When Motorola first sought forensic examination of the computers in China, it claimed that discovery of Hytera's source code for certain specified products was necessary to combat Hytera's motion for summary judgment and that what was sought was "*highly relevant*" to Hytera's statute of limitations defense. [Dkt. # 175, at 1](Emphasis supplied).  But Motorola was never able to explain how concealment or destruction of information on computers in China  – computers that Motorola never had access to or claimed to have access to – somehow thwarted Motorola from discovering that former employees in Malaysia left Motorola's employ with trade secrets. [Dkt. # 231, at 9-12].  And, as it turned out, the discovery was not necessary.  It was not even mentioned in the parties' "Stipulated Order to Extend Briefing on Hytera's Motion for Summary Judgment" [Dkt. #181-1], and Motorola responded to Hytera's motion for summary judgment with a 25-page brief without it on May 4, 2018 [Dkt. #216, at 23-25], two weeks prior to resolution of its motion to compel forensic inspection.

As I noted at the hearing on the motion to compel in May:

. . . if you thought it was relevant to summary judgment, you should have interrupted the briefing on that issue and said, "Wait a minute. We can't do what we should be doing effectively because we haven't completed discovery."

The mere fact that you all went ahead and filed and thought whatever you did was enough is -- speaks volumes with me.

[Dkt. # 234, at 9].   And it continues to speak volumes. Indeed, the cases are quite uniform in rejecting claims of prejudice where a party could, but does not, take action and later cries foul. *See, e.g., Alexander v. City of South Bend*, 433 F.3d 550, 556 (7th Cir. 2006)("It is telling that Alexander did not move to suppress or otherwise object to the introduction of the identification evidence on grounds of unconstitutional suggestiveness."); *Escandon v. Los Angeles County,* 584 Fed.Appx. 517,

520 (9th Cir. 2014); *DesRosiers v. Moran,* 949 F.2d 15, 22 n. 8 (1st Cir.1991); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 340 (N.D.Ill. 2005)("It is inconceivable that the plaintiffs would have taken the depositions of Harmon and Dullea, let alone *numerous* Noranda and Falconbridge witnesses who had extensive collusive dealings with Delta and GAC throughout the class period, if they truly felt they were being or would be severely prejudiced by not having GAC's responses to the outstanding discovery requests. Rather, they would have moved to compel and vigorously complained to the court that the depositions could not proceed without the requested information.").

Motorola indicated that once the summary judgment hurdle was cleared and full-blown discovery was opened, it would come back with a renewed motion for forensic discovery. [Dkt. #234, at 13-14]. Full-blown discovery, in fact, commenced on July 10, 2018 [Dkt. # 252], or ought to have. [Dkt. #277]. There was some confusion over Judge Norgle's Order adopting the parties' plan but, in any event, my subsequent Order of August 13, 2018, made it clear that fact discovery was to proceed apace and conclude on February 28, 2019. [Dkt. # 277, at 7]. But, remarkably and inexplicably, the balance of the year went by without a peep from Motorola about renewing its motion for forensic inspection.[1] If that inspection were as critical as now claimed, one would have expected something more than silence from Motorola. *See* cases cited above. What Judge Posner said in *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008) applies here, *mutatis mutandis*: "if there is an executed standstill agreement, one would expect an allegation to that effect. There is none. The ... silence is deafening." The principle of experience underlying these cases applies to

---

[1] It would seem that the first anyone heard from Motorola regarding another forensic inspection motion was December 21, 2018, when counsel for the parties spoke on the phone. [Dkt. # 388, at 6].

Motorola's conduct.[2]

On January 11, 2019, fully five months into merits discovery, and just a month and a half before fact discovery was then set to close, Motorola finally filed its "Renewed Motion to Compel Forensic Inspection of Hytera Computers and Network Servers" There was certainly no sense of urgency revealed by that timeline.[3] That is significant because Local Rule 16.1 provides that "discovery must be completed before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order." *In RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013). *See also Finnerman v. Daimler Chrysler Corp.*, 2017 WL 4772736, at *4 (N.D. Ill. 2017); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill. 2016). It would be truly remarkable had the briefing and resolution of Motorola's motion, and then the complicated process

---

[2] Common sense and human experience – which have a role to play in all litigation – underlie the notion that people do not remain inactive when the situation calls for some action. *See, e.g., United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *United States v. Reichling*, 781 F.3d 883 (7th Cir. 2015); *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.)– *See also* Posner, How Judges Think, 116 (Harvard University Press 2008*).*

The principle is especially applicable here where the case involves sophisticated lawyers and their equally sophisticated corporate clients.

[3] The motion was summarily denied when filed since the parties had not complied with Local Rule 37.2. [Dkt. #398]. While they "conferred" telephonically, all this consisted of was Motorola asking Hytera if it still opposed forensic inspection and Hytera saying it did. [Dkt. # 388, at 6]. Obviously, that doesn't pass muster under any interpretation of meeting and conferring in good faith. *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc*., 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Gunn v. Stevens Sec. & Training Servs., Inc*., 2018 WL 1737518, at *3 (N.D. Ill. 2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp*., No. 15 CV 11229, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute that has engendered nearly 500 pages of briefs and exhibits doesn't come close to sufficing.").

Motorola than refiled the motion on February 13th.

of scheduling and completing forensic examination in China, been accomplished between January 11th and February 28th. It wasn't until after Motorola filed its motion that Judge Norgle extended the fact discovery deadline to April 12th. [Dkt. #399].

Even with that extension, Motorola's motion is untimely.[4] The briefing schedule – which Motorola played a role in setting – was set to go through March 6th, with a further hearing on March 20th. Even if Motorola's motion were granted instantaneously, and Hytera did not file objections with Judge Norgle under Fed.R.Civ.P. 72(a), that would leave 3 weeks to complete the whole forensic examination process in China. Perhaps tellingly, Motorola never indicates how long it expects that examination to take; the proposed protocol for the inspection suggests it will take at least a week, and probably longer, as Hytera is to allow "reasonable requests for overtime . . . on weekends." [Dkt. # 405-1, at 4].

Even more than in ordinary, less complicated cases, resort to court intervention could be anticipated here, involving *in camera* inspections of materials and complicated issues and extended presentations by counsel on both sides, [Dkt. # 405-1, at 7-9], which would entail lengthy briefing and argument, consideration of those arguments and finally, rulings, which require time for reflection and preparation. *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 521, 547 (1957) (Frankfurter, J., dissenting) And, of course, Motorola versus Hytera isn't the only case on the docket and, Motorola does not own the discovery schedule. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018)("The parties do not "own" the discovery schedule, and cannot suspend or extend discovery in accordance with their own desires."); *Jones v. UPR Prod.,*

---

[4] As was the first motion for forensic discovery Motorola filed, on March 1, 2018, bearing on the statute of limitations issue. It came a month after the statute of limitations discovery deadline had passed. [Dkt. ##91, 173, 231, at 3].

*Inc.,* 2016 WL 6518652, at *1 (N.D. Ill. 2016)("Lawyers and parties do not own the discovery schedule. There is an overriding public interest in the prompt resolution of legal disputes. That interest transcends the immediate interest of the parties . . . .").

Then, when all that is completed, the examiner must prepare a "forensic report as to the actions taken by the Examiner, including a detailed description any personnel interviewed, each piece of digital media inspected, copied or imaged, as well as documentation of the chain of custody of the media collected." [Dkt. # 405-1, at 10]. By waiting half a year, until fact discovery was winding down, to revisit its quite complicated forensic examination request, Motorola played a dangerous game. Motorola's motion violated Local Rule 16.1 when it was filed and even after Judge Norgle granted an extension of the discovery deadline.

## B.

But there is more. Motorola has insisted on how crucial this forensic examination is. But, as past is prologue, it unfortunately has a somewhat hollow ring to it. Motorola told us once that the discovery was necessary to its defense against the statute of limitations. It was not. As a result, Motorola's cries should now be viewed with perhaps greater scrutiny than they would have been had Motorola acted in a more timely and expected fashion. The question that remains is, why is this additional and intrusive discovery necessary, when it certainly appears not necessary?[5] According

---

[5] Where the information that is sought is truly necessary to maintain a claim or defense, denial of discovery is not countenanced. *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014). *See also* Order of 1/15/19 [Dkt. #398]. But that is not the situation here. There has been a massive amount of discovery on both sides and Motorola has a wealth of evidence, or so it says, of Hytera's alleged duplicity. Proving the identity of the person on whose computer Motorola's claimed code appears is hardly necessary; nor does it warrant the massive cost and expenditure of time and effort that would be involved simply to learn the name of the particular Hytera person on whose computer the Motorola code appears. Finally, it should not be overlooked that there have been a number of assertions of the Fifth Amendment by Hytera engineers and employees in this case. Those assertions may play a role in the evidentiary presentation by Motorola at trial.
(continued...)

to Motorola, discovery already conducted has "confirmed that Hytera was in possession of dozens of Motorola confidential documents, [and] also revealed . . . that Hytera copied Motorola's confidential and copyrighted code that forms the foundation for essential functions, instructions, and user interfaces in Motorola's digital radio products into Hytera's competing products." Motorola has told the court that discovery has already "revealed that the source code for Hytera's products contains a substantial amount of Motorola's confidential and copyrighted source code, copied verbatim into Hytera's products, right down to the capitalization, wording, and formatting that were chosen by Motorola's engineers in designing Motorola's products." [Dkt. ## 256, at Par. 3; 258, at 1-2].

Even though discovery was limited to Hytera's trade secrets statute of limitations defense, Motorola "examined Hytera's source code, spent months analyzing that code, and obtained email correspondence between Hytera engineers that revealed evidence of copyright infringement." [Dkt. # 258, at 14]. In its review of these materials, Motorola says it "discovered that Hytera's source code contains at least tens of thousands of lines of source code that include wording, formatting, and capitalization of elements that are identical to or inconsequentially different than the corresponding lines of Motorola's copyrighted source code." [Dkt. # 311, at 3].

The copying was so "brazen" – Motorola's word – that typos were even reproduced. [Dkt. # 311, at 3]. *See Inv. Serv. Co. v. Fitch Pub*. Co., 291 F. 1010, 1011 (7th Cir. 1923)("There were enough errors [in typography] to repel any theory of accidental coincidence and to warrant a finding

[5](...continued)
*See generally Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2nd Cir. 1983). Of course, the ultimate question of admissibility will be made by Judge Norgle.

of intentional trespass upon appellee's property. Such a situation justified a further finding that appellant's copying was not confined to copying appellee's mistakes."); *Evony, LLC v. Feng Inv., Ltd.*, 2014 WL 12658954, at *6 (N.D. Cal. 2014)("A work is considered "copied" under the Copyright Act when it is "so overwhelmingly identical that the possibility of independent creation is precluded." . . . The source code used in Defendant's . . . game is substantially similar to Plaintiff's registered game, even including the same typographical errors, so the second criterion for a copyright infringement claim is met."); *TRAX, LLC v. Cont'l Cas. Co.*, 2012 WL 3777042, at *3 (N.D. Ill. 2012)(". . . comparison established that portions of [defendant's]. . . code were identical to the [plaintiff's] code, including numerous typographical errors."). And – again, according to Motorola – Hytera engineer Y.T. Kok "confirmed that a substantial portion of Hytera's source code was identical to Motorola's confidential and copyrighted source code . . . ." [Dkt. # 311, at 3].

What more would a cumbersome and intrusive forensic examination of several computers in China during the final couple of weeks of discovery accomplish? Unfortunately, all too many counsel subscribe to the view that if a belt is good, adding suspenders is even better, and all too many delight in overkill and overproof, often regardless of the need for and effect on their case. Indeed it is fair to say that "this case presents yet another example of the discovery overkill that plagues civil litigation" and that "there is no basis to view the discovery request ... as anything more than lawyers trying to fulfill their duty of zealous advocacy."*Whole Woman's Health v. Smith*, 896 F.3d 362, 382 (5th Cir. 2018). *See also ACF Indus., Inc., Carter Carburetor Div. v. E.E.O.C.*, 439 U.S. 1081, 1087 (1979)(Powell, J., dissenting from denial of certiorari)("It has been my experience ...that ... excessive discovery has significantly contributed to the delays, complexity and high cost of civil litigation in the federal courts.").

In its fifteen-page brief in support of its motion, Motorola says only this: it "is necessary to combat Hytera's ongoing denials of malfeasance and knowledge of that malfeasance by senior management, and further to reveal what happened to the thousands of documents and source code Hytera stole from Motorola, how they were obtained and used by Hytera, and whether they were disposed in an attempt to conceal the theft." [Dkt. #406, at 8]. But, "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir.2010).

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017). According to what Motorola has represented to the court in a number of filings, its copyrights are registered, and it already has incredible amounts of evidence on the second point. It has also hauled in volumes of evidence on its trade secret claim. Given those representations, anything more would seem to be cumulative. And, needless to say, if denials of liability were the trigger for forensic examination, they would be routine and ordered as a matter of course. They are not. Quite the contrary.

## C.

That brings us to claims (or more properly questions) of things like concealment of the theft and who deleted a document and when that are claimed to be "relevant" to Motorola's trade secret claims – they certainly do not appear to be relevant to Motorola's copyright infringement claim. Again, Motorola never explains how they are relevant to either cause of action – it does not even mention the elements of either cause of action – and we cannot make that case for Motorola. *See*

*Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)("It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel."); *Pine Top Receivables of Illinois, LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 987 (7th Cir. 2014).

It is Motorola's tacit view that so long as the material it seeks is, in its view, "relevant," the inquiry is at an end, and it is entitled to take discovery. With all deference, that view is fundamentally mistaken. Not all relevant information is discoverable. *See, e.g., Makor v. BNSF Ry. Co.*, 2015 WL 13358362, at *2 (C.D. Cal. 2015); *Santer v. Teachers Ins. & Annuity Ass'n*, 2008 WL 755774, at *2 (E.D. Pa. 2008)*; Axcan Scandipharm Inc. v. Ethex Corp.*, 2008 WL 11349882, at *12 (D. Minn. *Prism Techs., LLC v. Adobe Sys., Inc.*, No. 8:10CV220, 2011 WL 6210292, at *2 (D. Neb. 2011). For example, district courts, which have extensive discretion in granting and denying discovery, have long held that it is permissible to refuse to grant discovery of matters of "marginal relevance." *See, e.g., Taylor v. Horizon Distributors, Inc.*, 398 F. App'x 306, 307 (9th Cir. 2010); *MediaNews Grp., Inc. v. McCarthey*, 494 F.3d 1254, 1266 (10th Cir. 2007); *United States v. Ardila*, 275 F. App'x 39, 40 (2nd Cir. 2008); *United States v. Mauro,* 80 F.3d 73, 76-77 (2nd Cir.1996); *Robert L. Citroen, Law Corp. v. Micron Optics, Inc.*, 2017 WL 3707391, at *4 (D. Nev. 2017); *Baez v. Brown*, 2014 WL 2434192, at *6 (E.D.N.Y. 2014).

Under Rule 26, the discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Lechuga v. Magallanes*, 2017 WL 8181556, at *1

(W.D. Tex. 2017). In other words, relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26. An assessment of proportionality is essential. *Goldman v. As You Like It Silver Shop, Inc.*, 2019 WL 718739, at *2 (E.D. La. 2019); *Bradley v. Cty. of San Joaquin*, 2018 WL 4502481, at *3 (E.D. Cal. 2018). *Cf. Begay v. United States*, 2018 WL 557853, at *10 (D.N.M. 2018)("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").[6]

Relevance focuses on the claims and defenses in the case, not its general subject matter. Proportionality analysis involves consideration of various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Thus, my Order of January 15, 2019 emphasized that the "court is concerned with the *proportionality* of the discovery Motorola is requesting, especially given [the] massive amount of discovery it has already obtained *and which it claims in its brief proves that there is Motorola code on Hytera's computers.*" [Dkt. #398, citing #391 at 3-7](Emphasis supplied). Yet, the core concept of proportionality has been ignored by Motorola in favor of the *ipse dixit* that the information is relevant, as though that alone were outcome-determinative.

The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994

---

[6] The party seeking the discovery has the burden of demonstrating that the discovery is proportional to the needs of the case.

WL 75055 at *2 (N.D.Ill.1994)(Moran, J.). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id.* And a forensic examination in a foreign country is out of proportion here.

### D.

Forensic examination of a party's computers, even on American soil, is no routine matter. The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information *is not meant to create a routine right of direct access to a party's electronic information system*, although such access might be justified in some circumstances. *Courts should guard against undue intrusiveness* resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis added). Likewise, the Sedona Principles urge general caution in this area:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.... [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.

The Sedona Principles, *supra,* at 34, 47. Obviously, when the added complication of inspection taking place on the other side of the globe, with accompanying issues of comity, interpretation of foreign law, and application of treaties, "side issues and satellite disputes" is putting it mildly.

Given all that forensic inspection entails, even when done domestically, courts rightly require a showing that such a request is proportional to the needs of the case. *See, e.g. Henson v. Turn, Inc*., 2018 WL 5281629, at *5 (N.D. Cal. 2018)*; Tingle v. Hebert*, 2018 WL 1726667, at *7–8 (M.D. La. 2018)(quoting *John Crane Grp. Corp. v. Energy Devices of Tex., Inc*., 2015 WL 11112540, at *2 (E.D. Tex. 2015) ); *Crabtree v. Angie's List, Inc*., 2017 WL 413242, at *3 (S.D. Ind. 2017); *Hespe v. City of Chicago*, 2016 WL 7240754, at *3 (N.D. 2016); *Areizaga v. ADW Corp*., 2016 WL 9526396, at *3 (N.D. Tex., 2016); *In re Anthem, Inc. Data Breach Litig*., 2016 WL 11505231, at *1–2 (N.D. Cal. 2016).

Motorola has made no showing here. [Dkt. #406, at 8-9]. This, despite the fact that Motorola was informed in no uncertain terms that proportionality was the major concern the court had with the request a month before Motorola filed the current version of its motion. [Dkt. #398]. The closest it comes is to say, essentially, that while it has uncovered mountains of evidence – totaling millions and millions of pages –  there must be more. [Dkt. # 406, at 12-14].

In addition to the numerous representations made in other filings in this court and before Judge Norgle, Motorola tells us in its current motion that discovery has established that:  Hytera's current source code contains at least thousands of explicit copies of Motorola's own confidential source code (it obviously did not get there by accident or without Hytera's knowledge  – and no reasonable fact finder would conclude otherwise); Hytera's technical documents contain verbatim or paraphrased descriptions of Motorola's own *confidential* technical documents – what could be of greater significance to the fact finder – and Hytera's employees discussed not just how to copy Motorola's source code, but how to conceal that copying. And, Hytera took Motorola's confidential information. [Dkt. #406, at 12].  Given the elements of a claim for copyright infringement, what

more does Motorola want? Or more precisely, what more is Motorola reasonably entitled to. While most lawyers may prefer the belt and suspenders approach to information gathering, the doctrine of proportionality may not allow that luxury. It certainly does not here.

Motorola tells us that it has evidence that Hytera engineers discussed and copied Motorola's confidential materials in internal emails. That is rather damning evidence in and of itself in light of Hytera's failure to have produced any such emails. Nonproduction under appropriate circumstances has its own independent evidentiary significance, which in this case would favor Motorola and disfavor Hytera. While it also says it has emails from Hytera indicating that Sam Chia discussed aligning their stories as a result of Motorola's lawsuit, it insists on discovery regarding a missing email from Hytera's chairman. It says it has evidence that Sam Chia's Hytera laptop contains evidence showing that he possesses (or at one time possessed) large amounts of Motorola source code. Nonetheless, it wants what it believes are over one-hundred files that Hytera has not produced. [Dkt. #406, at 13-14]. Despite all the evidence it acknowledges it already has, and the inevitable and damning inferences from Hytera's nonproduction of certain documents alleged by Motorola to be significant, Motorola claims that forensic examination is *necessary* to show where stolen files were stored, how they moved around Hytera's computers, and who deleted them. [Dkt. # 406, at 14]. But Motorola fails to explain how any of that is relevant to a claim for copyright infringement – and certainly not how it is necessary to proving its case in light of what it already has. At best, the evidence is of marginal relevance and thus discovery related to it may properly be denied either on the grounds that the evidence is, at best, marginally relevant and certainly that the discovery that Motorola seeks is not proportional to the needs of the case.

In the end, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931, 939 (N.D. Ill. 2018). "[A] mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason." *Memry Corp. v. Kentucky Oil Tech., N.V.*, 2007 WL 832937, at *3 (N.D. Cal. 2007); *Areizaga v. ADW Corp.*, 2016 WL 9526396, at *3 (N.D. Tex.2016). Even if one concedes that Motorola's skepticism and suspicion are well-founded, Motorola has not explained how the evidence it suspects can be unearthed through a forensic examination in China is necessary or more than marginally relevant – if that. And even if one assumes some of the evidence is relevant to Motorola's trademark claims, it certainly appears to be cumulative, at least based on Motorola's representations to the court. In conclusion, the requested discovery is significantly out of proportion to the needs of the case. *See* Fed.R.Civ.P. 26(b)(1); (2)(C)(I).

## E.

Motorola's motion, then, must be denied without any foray into the complex issues of Chinese law and state secrets. Nevertheless, a brief excursion into that labyrinthian question is perhaps worthwhile. Motorola's position is that Chinese law doesn't hinder its inspection of Hytera's computers in China, and the Hague convention and, indeed, comity, don't come into play. Hytera, of course, sees it quite differently. The parties tell us that the Chinese statute at issue here is Article 277 of the Civil Procedure Law, which provides:

> The request for and provision of judicial assistance shall be conducted through the channels stipulated in the international treaties concluded or acceded to by the People's Republic of China. Where no treaty relations exist, the request for and provision of judicial assistance shall be conducted through diplomatic channels.

The embassy or a consulate in the People's Republic of China of a foreign state may serve documents on, investigate, and take evidence from its citizens, provided that the law of the People's Republic of China is not violated and that no compulsory measures are adopted.

Except for the circumstances set forth in the preceding paragraph, no foreign agency or individual may, without the consent of the competent authorities of the People's Republic of China, serve documents, carry out an investigation or collect evidence within the territory of the People's Republic of China.

The parties have submitted opinions from experts in Chinese law who, to no one's surprise, vehemently disagree with each other over whether this article applies and whether Chinese law would allow the forensic examination that Motorola envisions. Of course, I am not bound by either of these competing positions. *Animal Science Products v. Hebei Welcome*, _U.S._, 138 S.Ct. 1865 (2018).

Motorola has submitted an affidavit from an attorney in China – a former judge there – stating:

The purpose of the last two paragraphs of Article 277 is mainly to ensure that the Chinese judicial sovereignty over its subjects within the Chinese territory is not violated by any foreign party in contravention of Chinese and international laws and conventions.

It is clear from the context that the act of "making an investigation and collecting evidence" within the meaning of Article 277 refers mainly to the exercise of investigative power reserved for Chinese judicial and executive authorities, which would include, for example, such acts as deposing of witnesses, the viewing and examining of a party's medical records, and the raiding of corporate offices, for the purpose of a judicial proceedings. The act of "making investigations and collecting evidence" under Article 277 *does not include voluntary production of documents or voluntary disclosure of information* of one party to another party or to a third-party investigator for the purpose of resolving a dispute in or out of court because these acts do not encroach on the supremacy of Chinese judicial or executive authorities. Thus, the hiring of a discovery vendor to search for and produce information in a company's own files would not implicate Article 277.

I am not aware of any Chinese law or regulation that generally forbids the litigant

16

opening up "access" of foreign individuals or organizations to documents, information, or objects that might be used in a judicial proceeding in a foreign country.

[Dkt. #211-2, Pars. 36-39 (emphasis supplied)].

The obvious problem with this opinion is that the forensic examination at issue here is not voluntary. Motorola is moving for a court-ordered examination under Fed.R.Civ.P. 34. The opinion Motorola submitted – which confines itself to *voluntary* provision of evidence – even if correct, is irrelevant to consideration here.[7]

**F.**

Motorola next argues that, even if Article 277 applies to the discovery sought in this case, comity factors favor the discovery proceeding under the Federal Rules of Civil Procedure rather than the Hague convention. In *Societe Nationale*, the Supreme Court concluded that district courts have complete discretion in resolving conflicts between the application of the Federal Rules of Civil Procedure and the Hague Convention because the convention is not the exclusive procedure for

---

[7] Motorola interprets the opinion it submitted as stating that Article 277 applies only when discovery is collected by foreigners, and that it does not apply here because discovery will be conducted by a third-party, Chinese national. [Dkt. # 406, at 5]. But the opinion is focused on voluntary versus involuntary production, and does not indicate that Article 277 applies only to foreigners gathering evidence. Nevertheless, it makes little sense to say that a "foreign authority" – under Article 277 – would not be involved in the evidence gathering process in this case if Motorola's motion were granted.

As the Supreme Court instructed in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987), "[w]hen it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings *particularly closely* to prevent discovery abuses. . . . Objections to 'abusive' discovery that foreign litigants advance should therefore receive the most careful consideration." 482 U.S. at 546.

Clearly, where an American court orders the examination of computers and, pursuant to not only the Supreme Court's admonition but the protocol the parties put together, that court would be overseeing the process closely and ruling on the breadth of that examination as it takes place. Accordingly, we cannot accept Motorola's position that a "foreign authority or individual" is not involved in the investigation.

obtaining information located in a foreign signatory's territory, nor is it mandatory. 482 U.S. at 534, 539. In a footnote, the Court referred district courts to the comity factors from the Restatement (Third) of the Law of Foreign Relations § 442 (Am. Law Inst. 1987) as relevant to the resolution of conflicts between laws of foreign nations and broad U.S. discovery rules:

> (1) the importance to the ... litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

482 U.S. at 544 n.28.

The first factor – the importance to the litigation of the documents requested – has already been discussed at length. The amount of discovery Motorola has already accumulated and what, according to Motorola, it already proves detracts from the importance of (and need for) further discovery. This factor clearly goes against ordering a forensic examination of computers in China.

The second factor – the degree of specificity of the request – is a closer call, but also tends to work against Motorola. While, on the one hand, Motorola's request involves what appears to be a fairly specific keyword search protocol, on the other, there is no denying that forensic examination is generally broadly intrusive, As the Supreme Court said in *Societe Nationale*, "[s]ome discovery procedures are much more 'intrusive' than others." 482 U.S. at 545. The Court happened to be distinguishing the less intrusive interrogatory from the more intrusive request for production.

Obviously, forensic examination of computers in China is, by any measure, on the more intrusive end of the spectrum, easily more intrusive than a request for production.

The Supreme Court advised that "[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." 482 U.S. at 546. Here, we have a fairly specific search protocol offset by the fact that it is, nevertheless, a court-ordered forensic examination, seasoned with the fact that so much discovery has already been produced that, according to Motorola, proves its case. It is, as said, a closer call, but this factor weighs slightly against Motorola's request as well.

The third factor is whether the information at issue originated in the United States. Motorola claims that the information it is seeking through the proposed forensic examination originated in the Untied States, but provides nothing to support this claim. [Dkt. #406, at 10]. Indeed, based on the allegations in Motorola's Amended Complaint, it certainly seems that the source code at issue here originated, not in the United States, but in Malaysia. Motorola states that Samuel Chia, Y.T. Kok, and G.S. Kok were directly involved in developing the technology at issue here. [Dkt. # 265, ¶. 55]. Samuel Chia did coding, documentation, testing, and release of software. [Dkt. # 265, ¶. 56]. Y.T. Kok did design, development, and release of software. [Dkt. # 265, ¶. 57]. G.S. Kok did design, development, and release of software. [Dkt. # 265, ¶. 58]. The majority of this development and work was done in Malaysia at Motorola Solutions Malaysia SBN, BHD; the rest in Singapore. [Dkt. # 99-1, Page 43/134]. Against this backdrop, Motorola may not by virtue of its mere *ipse dixit* persuasively convince the fact finder that the source code originated in the United States. Again, merely saying so doesn't make it so. Everything in the record suggests the code originated overseas

19

by foreign nationals working for a foreign subsidiary. As it stands, this factor weighs against any forensic examination in China.

The fourth factor works in Motorola's favor. There appear to be no alternative means of securing the information Motorola wants. Hytera has produced over two million documents totaling more than twenty million pages. It has voluntarily performed a forensic inspection of the computers at issue and produced some deleted files. The additional information Motorola wants either never existed, or no longer exists – after all, Motorola did not file suit until nearly ten years after its employees left for Hytera and eight years after Hytera released its product – or is so deeply imbedded in the computers and servers that, as Motorola claims, only a forensic examination can get to it.

The fifth factor – the extent to which denying the request would undermine important interests of the United States (and the extent to which granting the request would undermine Chinese interests) – is a bit of a toss-up. Motorola points out that enforcement of United States trademark and copyright laws is a significant interest. In the end, the trade secrets and copyrighted material are owned by a United States-based company. But, again, there is some attenuation as the source code was developed in Malaysia by foreign nationals working for a foreign subsidiary. United States interests would be implicated much more directly, of course, had Motorola not chosen to develop this product 9,000 miles away. On the other side there is China's interest in enforcing its laws. Motorola doesn't think Chinese law even applies here, but, again, the opinion it submitted is couched in terms of voluntary discovery. Court-ordered discovery is not voluntary.

Again, we need not resolve issues regarding Chinese law or rule on that basis because Motorola's motion must be denied for other reasons. It would seem that comity factors tend to go against ordering a forensic examination of computers in China. In the end though, Motorola waited

too long – five months by the most lenient reckoning – to reintroduce the forensic examination issue into these proceedings. Filing the motion a handful of weeks before the close of discovery ensures the complicated process would not be completed before discovery ended. Moreover, the lack of urgency with which Motorola acted undermines its claims of how important this discovery is – and similar claims proved unreliable during statute of limitations discovery.

Motorola has failed to carry its burden that the additional discovery it seeks – which would come after mountains of discovery have already been produced – is necessary or proportional to the needs of the case. Proportionality determinations, as we have shown, are made on a case by case basis with no single factor outweighing other factors. A court's decision regarding proportionality and the court's handling of discovery generally will only be disturbed on a showing of an abuse of discretion, which, of course, is highly deferential. *Yonts v. Easton Tech. Prod., Inc.*, 676 F. App'x 413, 421 (6th Cir. 2017); *Camp v. Carmike Cinemas*, 126 F. App'x 334, 335 (8th Cir. 2005); *Hayden v. Bracy,* 744 F.2d 1338, 1342 (8th Cir.1984); *Lakeview Pharmacy of Racine v. Catamaran Corp.*, 2019 WL 587296 at 2 (M.D.Pa. 2019).

As we have shown, Motorola has not even made a convincing case that what it seeks is relevant. But even if it had, the proposed forensic examination of computers in China is far out of proportion with the needs of this case.

Judicious use of the court's case-management authority during the litigation can help to check overlawyering, and appropriate limits on discovery can effectively channel the efforts of counsel *before* excessive time and resources are expended. *See Montanez v. Simon,* 755 F.3d 547, 552 (7th Cir.2014). *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989. *See also Hickman v. Taylor,* 329 U.S. 495, 507–508 (1947).

Those goals are served by a denial of the plaintiff's renewed motion to compel.

**CONCLUSION**

For the foregoing reason, plaintiff's Second Renewed Motion to Compel Forensic Inspection of Hytera Computers and Network Servers [Dkt. #403] is denied.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 03/15/19

22