**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:17-CV-01973 |
| v. | ) ) ) | Honorable Charles R. Norgle Sr. |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC., | ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole  **PUBLIC VERSION - REDACTED** |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO HYTERA'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 3

    A.  Hytera Has Been Provided Significant Discovery Concerning Motorola's Investigations Of Hytera And No More Should Be Required ................................ 3

        1.  Motorola Has Provided Substantial Discovery Regarding Investigations of Hytera ............................................................................ 4

        2.  Motorola's Response To Interrogatory No. 19 Is Justified ......................... 5

        3.  Requiring Motorola To Produce Every Custodial Document That Includes The Word "Compass" Would Impose Massive, Unjustified Burden On Motorola ............................................................... 6

        4.  Hytera Has Already Received The Pertinent Compass Access Logs And Motorola Has Provided A Fulsome Response To Interrogatory No. 11 ........................................................................................................... 8

    B.  Motorola Has Also Provided Substantial Discovery Regarding Its Stolen Trade Secrets ...................................................................................................... 9

    C.  Motorola Should Not Be Required To Produce Documents From Additional Custodians ......................................................................................................... 12

III.  CONCLUSION ............................................................................................................. 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Educ. of Evanston Township High School Dist. No. 202 v. Admiral Heating and Ventilating, Inc.*,
 104 F.R.D. 23 (N.D. Ill. 1984)......................................................................................6

*Computer Assoc. Int'l, Inc. v. Quest Software, Inc.*,
 No. 02-C-4721, 2003 WL 22159022 (Sept. 17, 2003 N.D. Ill.)...............................6

**Rules**

Rule 30(b)(6)............................................................................................................. *passim*

## I.    INTRODUCTION

Motorola has produced a tremendous amount of discovery in response to Hytera's numerous requests throughout the litigation, frequently despite Hytera's inability to articulate how that discovery is relevant to any cognizable defense, let alone proportional to the needs of the case. Motorola has produced approximately 2.1 million documents, including from 49 separate Motorola custodians using 81 search terms, as well as from non-custodial sources. Motorola also has provided hundreds of pages of interrogatory responses in response to dozens of interrogatories and interrogatory sub-parts served by Hytera. And Motorola witnesses have already sat for numerous days of depositions, with Hytera seeking additional deposition testimony on over 100 corporate topics and at least 17 additional individual depositions of Motorola employees in the waning weeks of the fact discovery period (which concludes April 12, 2019). In particular, Hytera already has received substantial discovery on the topics raised in its motion, and no more is required or justifiable. With the Court having recently denied Hytera's statute-of-limitations-based summary judgment motion (Dkt. 435) and having set trial for November of this year, the time has come for the years-long fact discovery process to come to a close so that the parties can finish the remaining tasks required by the Court's schedule. Hytera's latest request for a mish-mash of additional discovery is not only unnecessary, but at odds with that objective. Hytera's motion should be denied.

First, contrary to Hytera's suggestion, Motorola has in fact produced substantial discovery concerning its investigations into potential unlawful activity by Hytera—as confirmed by Hytera's arguments concerning those investigations in support of its recently-denied summary judgment motion. *See, e.g.*, Dkt. 435 at 4 ("Further, Motorola argues that when suspicions arose regarding Hytera's use of its source code, it conducted an investigation in 2012, which turned up empty handed. . . . While Hytera disputes the purported results of the 2012 investigation, the Court

ultimately agrees with Motorola in concluding that [there] are genuine issues of material fact. . . .").  Hytera's claim to need more on this topic is contradicted by its decision to move for summary judgment on this issue many months ago, at a time when it presumably believed it had whatever discovery it needed to support this defense.  Hytera has failed to explain how the numerous documents, interrogatory responses, and deposition witnesses already produced by Motorola on this topic do not enable Hytera to present this defense at trial.

Second, Motorola has provided large quantities of information concerning the trade secrets stolen by Hytera in response to Hytera's numerous requests, and no more is necessary or proportional to the needs of the case.  Motorola has produced numerous documents concerning the trade secrets taken by Hytera, including custodial files from at least 16 individuals involved with developing those trade secrets, as well as offered numerous knowledgeable witnesses to answer any questions that Hytera might have concerning the stolen trade secrets and their development. Motorola has also provided 67 pages of interrogatory responses answering numerous Hytera questions concerning each of those trade secrets—dozens of them, in fact, frequently nested within single interrogatories in Russian doll fashion (*e.g.*, Hytera's Interrogatory No. 6 contains 13 distinct sub parts)—providing Hytera with more than sufficient information to conclude fact discovery in this case.  Any follow-up questions are properly posed to the deponents who Motorola has put up to testify on these topics, not through seriatim requests for more and more in what are already highly-detailed interrogatory responses.

Finally, Hytera's requests that Motorola produce even more custodial documents are not justified by any need in the case, and would impose unnecessary cost and delay on an already-unduly-expensive process.  As noted above, Motorola has already produced millions of documents from 49 separate Motorola custodians using 81 search terms, in compliance with the Court's

November 2018 order. At least much of that production—which has resulted in Motorola receiving several millions of dollars of invoices from its document processing vendor in the last few months alone—has no discernible relevance to any defense that Hytera has articulated in this case, let alone any proportionality to the needs of this case. Hytera's end-of-discovery request to add two additional custodians—bringing the total number of custodians to 51—has even less justification or nexus to any articulated defense. One is Motorola's Chief Executive Officer Greg Brown, purportedly based on limited public statements to the press about the litigation as a spokesperson for the company. As Hytera concedes, it already has those statements, and Hytera has not articulated how any additional discovery from Mr. Brown would bear on any cognizable defense it is pursuing in this case. Similarly, the files of a former Hytera employee now at Motorola have no relevance to any of Hytera's defenses in this case. Hytera has requested, and received, far more than enough custodial productions from Motorola and no more should be required.

## II. ARGUMENT

### A. Hytera Has Been Provided Significant Discovery Concerning Motorola's Investigations Of Hytera And No More Should Be Required

Even after Judge Der-Yeghiayan carved out six months of discovery dedicated solely to Hytera's statute of limitations defense—and after Hytera felt confident in moving for summary judgment on the purported strength of that discovery—Hytera now complains that it has not obtained enough discovery regarding Motorola's investigations into Hytera. In fact, Motorola has produced a substantial amount of information concerning its investigations, including numerous documents, interrogatory responses, and numerous Rule 30(b)(6) depositions on issues such as the capabilities of Motorola's electronic repositories. No more should be required.

### 1. Motorola Has Provided Substantial Discovery Regarding Investigations of Hytera

Throughout discovery, Hytera has propounded numerous interrogatories and other discovery requests directed towards understanding any Motorola investigations of Hytera, including facts surrounding the "Compass" electronic data repository. In response to those requests, Motorola has provided a substantial amount of information (interrogatory responses, documents, deposition testimony) concerning those matters. Hytera's suggestion that it has not been provided fulsome discovery concerning these issues is therefore incorrect.

For example, Hytera's motion states that Hytera wants to understand what led "Motorola to pull" the access logs that evidence Hytera's theft. Br. at 2. But that was already the subject of various other discovery requests to which Motorola has responded, including in Motorola's response to Hytera's Interrogatory No. 2, which asks Motorola to disclose "when and how" Motorola "first became aware that Hytera allegedly had misappropriated" its trade secrets. Ex. 1 (9/14/18 Motorola Supp. Resp. Rog 2) at 44-50 (explaining that Motorola started investigating Hytera in late 2016 in connection with a patent lawsuit and that Hytera's theft was evidenced through the Compass access logs). And in October 2017, when Hytera deposed the person that was responsible for pulling those access logs from Compass, that person explained that he was asked to do so in January 2017 in response to a request from legal counsel. Ex. 2 (10/6/2017 Shepard Dep. Tr.) at 73:18-25. In the same month, Motorola also provided a Rule 30(b)(6) witness to testify regarding Motorola's awareness and study of Hytera products. Ex. 3 (1/11/19 Motorola Supp. Resp. 2nd Rule 30(b)(6) Notice) at Topics 1-2, 14, and 19-22.

Hytera's motion (Br. 2-3) also states that Hytera should be able to take discovery regarding facts alleged in Paragraphs 46, 63, and 65 of Motorola's complaint, which relate to representations made in non-disclosure agreements by former Motorola employees now at Hytera, as well the fact

that those former employees had downloaded confidential Motorola documents. Dkt. 265. In fact, it already is taking that discovery. In response to earlier Hytera discovery requests, Motorola produced to Hytera the non-disclosure agreements, the Compass system logs evidencing Hytera's theft, and provided a Rule 30(b)(6) witness to explain in detail the capabilities of the Compass system. *See* Ex. 1 (9/14/18 Supp. Resp. Rog 2) at 44-50; Ex. 3 (1/11/19 Motorola Supp. Obj. 2nd Rule 30(b)(6) Notice) at Topic 1. Hytera also conducted a Rule 30(b)(6) deposition directed to the meaning of those Compass logs and how they were generated. Ex. 4 (9/27/17 Motorola Obj. 1st Rule 30(b)(6) Notice) at Topics 3-13. In a 16-page response to Interrogatory No. 11, Motorola also provided details regarding the Compass system logs that have been retrieved and produced to Hytera regarding former employees that left to Hytera. Ex. 5 (1/30/19 Motorola Resp. Rog 11). Thus, Hytera's allegation that Motorola refused "to produce file access logs that show access of documents at issue in the case by the former Motorola employees who are accused of taking those Motorola documents" (Br. at 2) is incorrect. Indeed, those access logs were specifically discussed in Hytera's now denied motion for summary judgment on the statute of limitations. *E.g.*, Dkt 98 at 8-9.

At bottom, in light of the discovery provided by Motorola to date, Hytera cannot credibly claim that it has been denied discovery regarding Motorola's Hytera investigation and Compass file system.

### 2.     Motorola's Response To Interrogatory No. 19 Is Justified

Given the abundance of discovery provided to Hytera as described above, Motorola was justified in asking Hytera to meet and confer regarding what additional information Hytera sought with respect to Interrogatory No. 19. During the meet and confer requested by Motorola, Hytera explained that it wishes to understand the facts that outside counsel for Motorola considered in preparing this lawsuit. Consistent with that explanation, Hytera's motion ponders "what triggered

the filing of this lawsuit." Br. at 2. To be clear, there is no dispute that Hytera should be able to discover underlying facts, even if those facts were learned by Motorola's counsel, and Motorola has provided substantial discovery concerning those facts. But as Hytera has characterized it, the additional information that Interrogatory No. 19 seeks—beyond the substantial discovery already provided by Motorola concerning its investigations and Compass—comprises the mental impressions and processes of Motorola's outside litigation counsel in preparing this lawsuit. There is no justification for such a request.

In general, the mental processes and impressions of outside litigation counsel are not discoverable. *See, e.g.*, *Computer Assoc. Int'l, Inc. v. Quest Software, Inc.*, No. 02-C-4721, 2003 WL 22159022, at *1 (Sept. 17, 2003 N.D. Ill.) ("[D]efendants may not use the discovery process to improperly gain insight into plaintiff's lawyers preparation for the case.") (*citing Bd. of Educ. of Evanston Township High School Dist. No. 202 v. Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 32 (N.D. Ill. 1984)). Hytera has not identified any basis for reaching a different result here, and there is none. Hytera has already been provided with substantial discovery concerning Motorola's investigations and Compass system, and no more should be required.

### 3. Requiring Motorola To Produce Every Custodial Document That Includes The Word "Compass" Would Impose Massive, Unjustified Burden On Motorola

Under the guise of a purported need to learn more about Motorola's investigations, Hytera asks the Court to require Motorola to apply the search term "compass"—the generic name of Motorola's file system—to the electronic files of 49 Motorola. Doing so implicates over 261,000 documents—an unsurprising result given that the term "compass" is the name of a file repository itself, akin to searching for the world "Google" in connection with the Google search engine. Hytera has not shown any willingness to narrow or limit this search term in any way, or to pay for the costs of the massive, undifferentiated search it is proposing. Hytera also has not provided any

6

valid justification for imposing such undue burden and expense on Motorola at this late stage of

the case. Hytera has already taken a Rule 30(b)(6) deposition of Motorola on the capabilities of

the Compass system, and has received the Compass download logs of former Motorola employees

now at Hytera, as well as logs showing which other Motorola employees accessed the documents

contained in those logs. *See* Ex. 1 (9/14/18 Supp. Resp. Rog 2) at 44-50; Ex. 3 (1/11/19 Motorola

Supp. Obj. 2nd Rule 30(b)(6) Notice) at Topic 1; Exs. 6-7 (Moto-1973-00275961 and Moto-1973-

00298712). Again, no more should be required.

The wholly unreasonable nature of this request is underscored by Hytera's incorrect

assertion that Motorola failed to comply with its discovery obligations, including the Court's

November 2018 order. In that order, the Court set a procedure for searching Motorola custodial

documents, whereby the parties were to exchange proposals on the number of search terms, and

meet and confer over them to reach resolution regarding the burden they impose. Dkt. 352. Prior

to that order, Hytera had caused delays in the discovery process by failing to tell Motorola which

search terms it was requesting that Motorola apply, despite the parties agreeing they would have

such discussions to expedite the discovery process. Ex. 8 (10/17/18 Allan letter); Ex. 9 (11/2/18

Singh email) (proposing that the parties exchange lists of up to 20 custodians and accompanying

search terms). In compliance with the Court's order, Motorola produced documents in December

for the initial round of custodians that Hytera requested; but Hytera's requests have continued to

expand, in a wholly unreasonable manner untethered from any articulated defense or legitimate

need in the case:

- On October 26, 2018, Hytera identified 35 custodians it was interested in for purposes of document searching. Ex. 10 (10/26/18 Rothschild email).

- On November, 16, 2018, Motorola proposed 34 search terms. Ex. 11 (11/16/18 Singh email).

- On November 19, 2018, Hytera proposed adding *57 additional terms*, for a total of 89 search terms, including highly overly broad or irrelevant terms as applied to Motorola's documents such as "copies," "secret*," "steal*," "cheat*," "fraud*," and "Compass." Ex. 12 (11/19/18 Rothschild email).

- On November 28, 2018, after Motorola disputed the relevance of such terms and attempting to avoid a dispute, Motorola agreed to run 76 of Hytera's proposed search terms, pointing out that the remaining 13 of them (including "Compass") were unduly burdensome, resulting in over 1 million hits for 27 custodians. Ex. 13 (11/28/18 Singh email). Hytera refused to narrow these 13 additional search terms.

- In December 2018, Hytera requested custodial documents from an *additional 7 custodians*. Ex. 14 (12/3 and 12/12/18 Rothschild emails).

- In January 2019, Hytera requested custodial documents from an *additional 10 custodians*.

- On February 13, 2019, Hytera continued to refused to narrow the remaining 13 disputed search terms, even though Motorola agreed to produce several hundred thousand additional documents from some of those search terms as a compromise.

- On February 19, 2018, Hytera requested custodial documents from *3 additional custodians*.

Due to its good faith efforts to meet Hytera's ever-expanding demands, Motorola has now produced over 2.1 million documents, including from 49 Motorola custodians, using 81 search terms proposed by Hytera, many of which have little to no relevance to any defense articulated by Hytera. As a result, Motorola has been forced to incur millions upon millions of dollars in discovery costs, including several million dollars of document processing costs in just the last few months alone. Piling on more than 261,000 documents generated by the term "compass" is needless and wasteful. No more should be required.

### 4. Hytera Has Already Received The Pertinent Compass Access Logs And Motorola Has Provided A Fulsome Response To Interrogatory No. 11

Motorola provided a 16-page response to Hytera's Interrogatory No. 11, including details regarding the Compass system logs that have been retrieved and produced to Hytera regarding former Motorola employees that left to join Hytera. Ex. 5 (1/30/19 Motorola Resp. Rog 11).

Motorola also has produced Compass access logs disclosing the identities of other Motorola employees who accessed the same documents that were stolen by G.S. Kok, Y.T. Kok, and Samuel Chia. Exs. 6-7 (Moto-1973-00275961 and Moto-1973-00298712). Hytera has not identified any reasonable justification for requiring Motorola to do more, and there is none.

To the extent it asks Motorola to identify any possible query of the Compass system that ever in any way touched the over 20,000 documents that the access logs (and other evidence) show were stolen by G.S. Kok, Y.T. Kok, Samuel Chia, and others, Hytera's Interrogatory No. 11 goes far beyond what is relevant or proportional to the needs of the case. Hytera's motion fails to articulate the alleged need for such expansive discovery in order for it to support any defense, thereby failing to justify the extreme burden of requiring Motorola to track down each and every query of its Compass system that ever implicated any such documents. Indeed, the Compass system itself does not even keep a record of every query that was run against it. Ex. 15 (1/15/19 Shepard Tr.) at 149:3-21. Motorola has already provided the access data that is reasonably accessible in its Compass system, and there is no discernible relevance of whatever additional information that Hytera requests to any defense or other issue in the case.

     **B.**     **Motorola Has Also Provided Substantial Discovery Regarding Its Stolen Trade Secrets**

Hytera's motion argues that it does not understand the parameters of Motorola's trade secrets and cites a handful of specific discovery requests as the basis of that claim. Specifically, Hytera contends that it has not received an adequate response to certain sub parts of its Interrogatory Nos. 6 (specifically, subparts (a), (j), and (k)), 12, and 13. As described below, Motorola has provided more than sufficient detail in response to these requests (and others) and additional supplementation should not be required.

With respect to subpart (a) of Interrogatory 6, Hytera first argues that it does not know who

9

was involved in the development of the stolen trade secrets. But the 19 persons identified by Motorola in response to subpart (a) at Hytera's urging (Ex. 16 (2/15/19 Motorola Supp. Resp. Rog 6))—which are specifically correlated to Motorola's individual trade secrets—are not only knowledgeable about the development of Motorola's trade secrets, but are in fact some of the key drivers of Motorola's development efforts. And Hytera is set to depose at least many of these individuals. Moreover, even stretching back to the earliest days of this case, Motorola produced at least 25,000 documents describing the Motorola technical implementations and other proprietary information that comprise the trade secrets asserted in this case. Ex. 17 (12/7/18 Motorola Resp. Rog 1). These documents likewise contain information responsive to Hytera's request. Indeed, on the basis of those documents, in October 2018, Hytera identified a list of 35 custodians it was interested in for the purposes of document production. Ex. 10 (10/26/18 Rothschild email).

With respect to subpart (j) of Interrogatory 6, Hytera complains that it has not been given sufficient information about which Motorola patents relate to the subject-matter of each trade secret. But Motorola's response to subpart (j), provides identification of hundreds of patents that relate generally to those technology areas. Ex. 16 (2/15/19 Motorola Supp. Resp. Rog 6(j)) at 31. And as explained in Motorola's response, Motorola contends that these patents do not disclose the subject-matter of Motorola's trade secrets (*id.*), and that there is therefore no mapping of trade secrets to patents to provide. Regardless, Hytera's motion has not even articulated the relevance of this request, let alone why the burden associated with it should be required.

With respect to subpart (k) of Interrogatory 6, Motorola has responded that its "MotoTRBO DMR subscriber and repeater" line of products are "using or benefitting from" Motorola's trade secrets. Ex. 16 (2/15/19 Motorola Supp. Resp. Rog 6(k)) at 32. This is not surprising because

10

Motorola is claiming its actual implementations of its products as trade secrets, as explained in Motorola's response to Interrogatory No. 1. Furthermore, some trade secrets, such as Motorola's legal or marketing strategies, are not per se "contained" within those products, and that's why Motorola has explained that its products "benefit" from Motorola's claimed trade secrets. Hytera has not explained why more information beyond this disclosure is necessary or required.

With respect to Hytera's Interrogatory No. 12 (and associated Rule 30(b)(6) topics[1]), which ask how the asserted trade secrets were selected for litigation, Motorola has already provided ample discovery into the nature and history of Motorola's trade secrets, including by providing detailed narrative descriptions of each trade secret with citations to documents produced by Motorola (Ex. 17 (12/7/18 Motorola Supp. Resp. Rog 1)), identifying those who can testify about them at deposition in response to subpart (a) of Interrogatory 6, answering dozens of interrogatory subparts about them, and making available for deposition 17 Motorola witnesses in the waning weeks of fact discovery. As such, Hytera has already received far more than enough information to evaluate each of the asserted trade secrets and the identity of those of whom to ask follow up questions regarding them. Hytera has not justified or even adequately explained why Motorola's process for determining which trade secrets to assert in this litigation has any bearing on the merits of this case—it does not. Regardless, Motorola's trade secret identification is a function of the trade secrets that Hytera stole, which Hytera obviously understands.

Finally, with respect to Interrogatory No. 13, Hytera seeks information regarding which Motorola patents, trade secrets, and portions of source code apply to certain consumer-facing features of Motorola DMR radios. Hytera has not articulated why this information is relevant to

---

[1] Hytera also complains that Motorola has not designated a witness to discuss the contents of Motorola's interrogatory responses. Motorola does not anticipate that this will present a dispute once the parties meet and confer regarding which interrogatories are amenable to testimony from a Motorola witness, given the abundance of Hytera confidential information cited in many of them.

any claim or defense in this case. Regardless, as described above, Motorola has identified patents in response to Interrogatory 6, subpart (j) (Ex. 16, (2/15/18 Motorola Supp. Resp. Rog 6(j) at 31), disclosed trade secrets in response to Interrogatory No. 1 (Ex. 17 (12/7/18 Motorola Supp. Response Rog 1)), and described functionality of the source code that Hytera copied in response to Interrogatory No. 8 subpart (c) (Ex. 18, (2/15/18 Motorola Supp. Resp. Rog 8(c) at 36-62). If Hytera wishes to conduct further analysis of this information, it may do so, but there is no basis or justification for requiring Motorola to do more in response to this interrogatory.

C.     **Motorola Should Not Be Required To Produce Documents From Additional Custodians**

Despite the massive amount of document custodian discovery it has already received from Motorola—including the approximately 2.1 million documents, including those produced from 49 custodians using 79 search terms, as well as other non-custodial documents—Hytera still seeks more. In particular, Hytera asks the Court to require Motorola to produce custodial documents from Motorola's Chief Executive Officer Greg Brown because, according to Hytera, (i) Mr. Brown made limited statements to the press about the litigation, as a spokesperson for the company, and (ii) a Motorola witness testified that Mr. Brown authorized the institution of this lawsuit in consultation with Motorola's counsel. Br. at 8. Neither comes close to justifying requiring Motorola to add Mr. Brown as an additional document custodian. First, Hytera has not articulated why Mr. Brown's limited public statements concerning the litigation have any relevance to its defenses this case. Moreover, Hytera admits to already having discovery of those statements, as they are publicly available. And whether Mr. Brown was involved in authorizing the filing of a lawsuit as CEO of Motorola, Hytera does not explain any potential relevance this has to any claim or defense, or why such information would not be privileged. Motorola should not be forced to add Mr. Brown as an additional document custodian in these circumstances—doing so would only

12

needlessly add additional undue burden expense to an already unduly expensive and overly burdensome process.

For similar reasons, Hytera's request to add Nick Bacigalupi as an additional document custodian is unjustified and should be denied. Hytera contends that Motorola employees asked Mr. Bacigalupi to provide information about Hytera pricing. But Hytera has not established that this topic is relevant to any claim or defense. Hytera argues this discovery is relevant to "industry practice," Br. at 9, but does not explain how a request for pricing information relates could possibly justify (or even relate to) its theft of thousands of documents and source code to build a competing product line. At bottom, Hytera's request to add Mr. Bacigalupa as an additional document custodian to the list of 49 custodians from which Motorola has already produced documents is unjustified and should be denied. Motorola has produced far more than enough custodial documents and nothing more should be required.

## III.    CONCLUSION

For the reasons stated above, Motorola respectfully requests that Hytera's motion to compel be denied in its entirety.

DATED: March 18, 2019                                   Respectfully submitted,


                                                        /s/ Justin Singh
                                                        Adam Alper (*admitted pro hac vice*)
                                                        adam.alper@kirkland.com
                                                        Brandon H. Brown (IL Bar No. 266347 CA)
                                                        brandon.brown@kirkland.com
                                                        KIRKLAND & ELLIS LLP
                                                        555 California Street
                                                        San Francisco, CA 94104
                                                        Telephone: (415) 439-1400
                                                        Facsimile: (415) 439-1500

                                                        Michael W. De Vries (*admitted pro hac vice*)
                                                        michael.devries@kirkland.com

13

Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Ali-Reza Boloori (*admitted pro hac vice*)
ali-reza.boloori@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200


*Attorneys for Plaintiffs*
*Motorola Solutions, Inc. and Motorola*
*Solutions Malaysia SDN. BHD.*

14

## CERTIFICATE OF SERVICE

I, Justin Singh, an attorney, hereby certify that on March 18, 2019, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  March 18, 2019                    */s/ Justin Singh*
                                                  Justin Singh