**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 1973 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| HYTERA COMMUNICATIONS CORP, | ) | |
| et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

On April 1, 2019, Motorola filed a motion to compel discovery "without further delay" of the source code and sales data for Hytera's "TETRA" products, which Motorola contends consists of a digital two-way radio product line that allegedly offers similar functions as Hytera's DMR products, that are alleged in this case to use Motorola's trade secrets and infringe Motorola's copyrights. [Dkt. #480 at 1; 494 at 6-8].[1] The motion contrasts quite markedly with what occurred at Hytera's 30(b)(6) deposition of Motorola as recently as January 15, 2019; when Hytera's counsel sought to examine the witness regarding TETRA products, Motorola's counsel objected, insisting that TETRA was outside the scope of the case. [Dkt. #494 – 2, at 85:8 – 23].[2]

_____

[1] Hytera has a number of issues with Motorola's contentions. [Dkt. # 494, at 6-8].

[2] The Rule 30(b)(6) topics clearly would have included TETRA related inquiries. Paragraph 4 asked for:

The identity of each Person at Motorola who wrote or authored those portions of Motorola's claimed copyrighted works that Motorola contends were infringed by Hytera, their contractual status with Motorola now and at the time any such alleged works were written, and the facts surrounding Motorola's preservation and retention of their files.

(continued...)

Yet, Motorola's Motion insists that the TETRA discovery is relevant – indeed Motorola says it is critical – that it is narrow in scope, appropriately proportionate, and has been timely brought since discovery has been timely brought. We are also told that it was not until quite recently that Motorola discovered a document in a then-recent Hytera document production indicating that some of the same Motorola code allegedly copied by Hytera into its DMR products involved in this case is also present in Hytera's TETRA products.

This claimed "fact," Motorola contends, was subsequently confirmed by a Hytera corporate witness in a deposition. Based on this purportedly "new" information, Motorola says it supplemented its interrogatory responses on February 15, 2019, to include the TETRA products. During a recent meeting, Hytera denied that any Motorola source code was used in its TETRA products and made it clear that it would refuse to provide the requested discovery. In response to Hytera's argument that Motorola's request was untimely, Motorola insisted it first learned of the presence of the allegedly stolen code in Hytera's TETRA products in February 2019, when it came upon a document in Hytera's December 14, 2018 production – a production that included nearly 300,000 documents and spanned nearly 3 million pages.[3] Motorola supplemented its interrogatory responses to identify

---

[2](...continued)

Paragraph 5 asked for:

The identity of each Person at Motorola who developed or contributed to the development of each Motorola trade secret asserted against Hytera in this case, the specific contribution made to the development of the trade secret, their contractual status with Motorola now and at the time any such alleged trade secrets were developed, and the facts surrounding Motorola's preservation and retention of their files.

[Dkt. # 493-1; 493-2].

[3] It should be remembered the Motorola has said there are 142 trade secrets in this case.

Hytera's TETRA products as incorporating Motorola's source code. Motorola asked for the TETRA source code then, and in early February 2019. Motorola insists that for the ensuing five-week period it reasonably believed that Hytera was in the process of collecting and producing the code.

As proof of the claimed reasonableness of its belief – a matter Hytera vigorously disputes – Motorola excises and quotes a single sentence from page 4 of Hytera's brief of March 14 in support of Hytera's Motion to Extend the Scheduling Order. The sentence stated: "'Motorola's February 15, 2019 supplements to Hytera's Interrogatory Nos. 6(k) and 8(n) identify for the first time an entirely new category of products now accused of misappropriation or infringement, namely, TETRA products.'" [Dkt. #479 at 4, quoting Dkt. # 437 at 4]. Motorola construes this statement as at least an implicit concession that the TETRA product line *was* part of the case – why else it asks would Hytera have found it necessary to seek a four-month extension of the discovery schedule.

While perhaps Hytera's lawyers should think more carefully about the message that their contentions may convey, *Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 564 F.3d 817, 820 (7th Cir. 2009), Motorola's reliance on a single sentence taken from the broader and informing context of its utterance is not an approach guaranteed or even likely to arrive at a fair and accurate approximation of the truth. *See, e.g., Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 322 (1985); *Thompson v. Lance Cope*, 900 F.3d 414 (7th Cir. 2018). "Context matters," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) – in *all* circumstances – for "the character of every act depends upon the circumstances in which it is done...." *Schenck v. United States*, 249 U.S. 47, 52 (1919) (Holmes, J.).

Hytera's Brief in Support of the Motion to Amend the Scheduling Order was anything but a concession – even an implicit one – that TETRA was properly in the case and that a discovery

3

extension was being sought because it was. The brief in support of the Motion castigated Motorola for what it contended was Motorola's misconduct in discovery, which was alleged to have included production of 37 million pages of documents since the start of 2019, with over 23 million having been produced in just the last 3 weeks. [Dkt. #437 at 8]. Carefully read, the Brief's focus was not so much on TETRA, as it was on what Hytera contended was Motorola's misconduct in discovery. Hytera's Motion also complained that Motorola had never fully or properly explained or defined its trade secret. Thus, Hytera explained that an extension of the discovery schedule was needed and concluded with the sentence Motorola relies on. But the relevant (but ignored) portion of the brief not quoted by Motorola reads:

> *Finally*, it appears Motorola intends to expand—yet again—the scope of its case to include an entirely separate category of products — *one that its counsel represented just two months ago was not at issue in this case*. [And then came the single sentence quoted by Motorola's brief]. February 15, 2019 supplements to Hytera's Interrogatory Nos. 6(k) and 8(n) identify *for the first time* an *entirely new category of products* now accused of misappropriation or infringement, namely, TETRA products. Yet, at a Rule 30(b)(6) deposition *just one month earlier— on January 15, 2019—Motorola's counsel represented that TETRA was outside the scope of the case*. With four weeks left in discovery, there is no time to investigate and discover Motorola's contentions as to this late addition to the case.

> But the brief did not end there. It went on to say:

> This later insertion, *to the extent it is allowed at all*, leaves Hytera with no time to develop its *defenses*, a manifestly unfair outcome. [Dkt. #437 at 4, 9][footnote omitted](Emphasis supplied).

When the brief is read in its entirety, makes clear that Hytera vigorously disagreed that the TETRA line of products was in the case.

It was in this setting that the matter was presented to Judge Norgle, who told the parties to go across the hall and work the issue out. The lawyers did so and finally agreed on a five-week

extension, rather than the several months initially sought by Hytera. Of course, given the history of the case, the ultimately agreed upon period of time of 5 weeks obviously would not have been adequate to deal with all that was unresolved, along with TETRA discovery, if TETRA were part of the case. Thus, the shortness of the extension counsel agreed on, as opposed to the far lengthier extension Hytera sought, compellingly suggests that Hytera was not agreeing to TETRA discovery being in the case, and that Motorola was not insisting that it be in the case. Given the agreement, the Motion to Amend the Scheduling Order was deemed moot by the District Court. [Dkt. #436].

While assessing the meaning of what occurred is circumstantial in nature, it must not be forgotten that circumstantial evidence may be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Freelain v. Village of Oak Park*, 888 F.3d 895 (7th Cir. 2018). Or in the words of Judge Easterbrook; "[t]he evidence was circumstantial, but what circumstances!" *Branion v. Gramly*, 855 F.2d 1256, 1258 (7th Cir.1988). Thus, in this case, agreeing to a brief rather than an extended extension of discovery supports the conclusion that the parties had agreed that TETRA wasn't in the case – which is essentially what, Kassandra Officer, counsel for Hytera, stated at the hearing on the motion for TETRA discovery. She recounted that a five-week extension – rather than the four month extension sought by Hytera – was negotiated based on the case *as it was* (i.e, before the TETRA controversy). That necessarily meant that TETRA discovery would not be part of the case.

While Motorola's lawyers who were present at the discussion outside Judge Norgle's presence contended that no agreement regarding TETRA had been reached, I am certainly not precluded from reviewing all of the available evidence and concluding that one person's version is

more persuasive than another's, even though the participants have differing recollections. Even in so-called routine "he said she said" controversies, courts and juries routinely conclude whose version of an event is more credible, *United States* v. *Sutton*, 337 F.3d 792, 801 (7th Cir. (2003); *United States* v. *Akram* 152 F.3d 698, 702 (7th Cir.1998)*; United States v. Agostino,* 132 F.3d 1183, 1198 (7th Cir.1997), and more in accord with common sense and human experience, which always have a role to play in litigation – as we have discussed in this very case. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2019 WL 1216406, at *2 (N.D. Ill. 2019).[4] In the end, it cannot be concluded that by moving for a continuation of the discovery schedule Hytera had agreed to the inclusion of TETRA discovery into the case. Quite the contrary.

Motorola's explanation of what occurred at the conference outside Judge Norgle's presence does not alter this conclusion. Motorola's counsel claimed he "*thought* we were giving them an extension *to accommodate that [TETRA] discovery*." (Emphasis supplied). But he also conceded that no resolution about TETRA discovery was made in the conference. In his words, he said that he "would say [TETRA was] raised as a thing that we needed to work together on . . . not discussed in terms of is it in or out of the case." Even if we were to fully credit this version of events, it would not change the result. Under Illinois law, indeed, under the law of every state, the interpretation of an agreement is governed by the parties' objective expressions of intent. *Hampton v. Ford Motor Co.,* 561 F.3d 709, 714 (7th Cir. 2009). Secret hopes and uncommunicated thoughts do not count. do not count. Whether there was a "meeting of the minds," to use the unfortunate phrase used at the

---

[4] In contract cases – and the instant case involves a contract of sorts – i.e. the parties agreement to a five-week rather than a four-month continuance – Judge Posner tells us there is a long tradition in of reading contracts sensibly. Common sense should not be abandoned. *Call v. Ameritech Management Pension Plan* 475 F.3d 816, 821 (7th Cir. 2007); *In re Comdisco*, 434 F.3d 963 (7th Cir. 2006).

hearing, is of no moment. There must be a determination based on an objective appraisal of the parties' conduct, not their subjective beliefs. We do not "take a tour through [a party's] cranium, with [the party] as the guide." *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 814 (7th Cir.1987). In Illinois, as elsewhere, it is objective intent that governs, not some subjective theory of "meeting of the minds" that determines whether contract formation has occurred and what the agreement entails. Contract formation "'depends on what the parties express to each other and to the world, not on what they keep to themselves.'" *Newkirk v. Vill. of Steiger,* 536 F.3d 771, 774 (7th Cir.2008); *Todd v. Kohl's Dept. Stores, Inc.*, 443 Fed.Appx. 215 (7ᵗʰ Cir. 2011).[5]

Counsel for Motorola said he thought the five-week extension mooted Hytera's concerns about TETRA discovery. But, with all deference, the contention blinks reality. It will be recalled that counsel felt Motorola's efforts to sift through 3 million pages of documents – the needle in the haystack search – in three months was heroic. The agreement then for only a five-week continuance could not reasonably have been thought sufficient time to deal with Motorola's 20 million-page production *and* TETRA discovery.

_____

[5]Although the cases often use the phrase, "meeting of the minds," as a handy shorthand, the language is misleading if taken literally. *See Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 802 (7 th Cir.1992). "The law has nothing to do with the actual state of the parties' minds. In contract, as elsewhere, it must go by externals, and judge parties by their conduct." Holmes, The Common Law, 242 (1881) (Howe ed., Harvard University Press 1963). A contracting party cannot expect that the other party will "peek into" the other's "mind and discover" that it had a different view of the terms than stated in the contract. *Aeroground, Inc. v. CenterPoint Properties Trust*, 738 F.3d 810, 813 (7th Cir.2013).

Thus, the inquiry will focus not on the question of whether the subjective minds of the parties have met, but on their outward expression of assent as evidenced by the language used, the contract's purpose, and all of the relevant circumstances surrounding the contract's formation. *See Winforge, Inc. v. Coachmen Industries, Inc.*, 691 F.3d 856, 875 (7 th Cir.2012); E. Allan Farnsworth, Farnsworth on Contracts, § 7.10 at 287 (3 rd ed.2004).

**B.**

Motorola's timeliness argument seems particularly unjustified. At the time Motorola filed its motion for TETRA discovery, discovery was set to close on April 12. Clearly, at the time the Motion was filed, given what would be necessary in ruling on the motion and, assuming it were granted, – even if no appeal were taken to Judge Norgle – the time required to search for and produce documents on an entirely new product line in China, coupled with necessary and inevitable defense discovery, could not be completed by the 12th. Motorola's motion was therefore late under Local Rule 16.1. *See In RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013); *Finnerman v. Daimler Chrysler Corp*., 2017 WL 4772736, at *4 (N.D. Ill.2017); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *7 (N.D. Ill. 2016). Punctual adherence to schedules is a problem that is not uncommon in this case – and indeed is not uncommon in significant civil litigation. *See, e.g., Motorola Sols., Inc. v. Hytera Commc'ns Corp*., 2019 WL 1216406, at *2 (N.D. Ill. 2019). As of November of 2018, Motorola had produced about 60,000 documents. Since February 21st, it has produced over one million. [Dkt. # 437, at 2-3].

Motorola has argued that the reasons for any delay in not raising the TETRA issue until now is because it only learned of the possibility of Motorola source code in TETRA products "in February 2019, when it came upon a document in Hytera's December 14, 2018 production." [Dkt. #480, at 3]. Motorola seeks to explain the two-month lag time by explaining that the document that alerted it was part of a 3 million page, 300,000 document production. But the reality is that Motorola has refused to pare down its trade secret claims to less than 142, which Hytera has continually insisted it cannot fully understand and which Motorola has largely defined as constituting the sum total of what it contends was stolen from its computers and brought to Hytera and placed on the latter's

8

computers. This would seem to account for the voluminous turnover, not some sinister attempt to hide documents.

In any event, it turns out that TETRA documents were produced as early as January 5, 2018, a year before Motorola acknowledges that they were. They were contained in a production on which Motorola now relies. At that time, Hytera had produced at least one TETRA document along the same lines as the one Motorola claims triggered its epiphany in February 2019. Indeed, it is part of the same brief email chain. [Dkt. ##480-1, at 14; 494-1]. Thus, Motorola had access to at least similar and sufficient information regarding TETRA a year earlier than it now claims. *See* emails of October 11 and October 20, 2017. [Dkt. #480-1; 494-1, 3 *et seq.*]. It arguably had enough either to expand its claim or at least to attempt to take discovery regarding TETRA. Still, at the hearing on this motion on April 4th, Motorola maintained that "we just couldn't, we didn't have the information to allow us to make that allegation." In any event, *under the circumstances of this case*, waiting more than a year to bring a motion to compel or to have sought discovery regarding TETRA, was too long.

## CONCLUSION

This hard-fought, contentious case has proceeded for two years based on one type of product. Motorola now seeks to expand the litigation significantly. Although Motorola has had TETRA related information for some time, TETRA was never in the case and indeed Motorola has opposed any attempt by Hytera to even explore the subject was resisted on the ground that TETRA was not in the case. Ultimately, Motorola agreed to a discovery schedule that was sufficiently tight that it could not *reasonably* have envisioned that adequate TETRA related discovery – along with the other discovery related to issues that the parties unequivocally acknowledged *were* in the case – could be completed in the agreed-to five week extension of the discovery schedule.

I do not accept Motorola's contention that it agreed to the short extension of the discovery "to allow Hytera to address TETRA discovery, *among other things*." (Emphasis supplied) [Dkt. # 480, at 4]. The intentionally cryptic phrasing by Motorola shows that the brief, extended discovery period to which it agreed was not to accommodate TETRA discovery. The reality is that 5 weeks simply was not sufficient to allow both sides time for TETRA related discovery, along with the "other things" that concededly remained to be completed. The reality in this case is that "there [has been] enough discovery ... to choke a horse. ... [E]nough is enough." *Walker v. Sheahan*, 526 F.3d 973, 981 (7th Cir. 2008).

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/15/19