1  **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
3                            EASTERN DIVISION

4   MOTOROLA SOLUTIONS, INC., et al.,      )
                                           )
5                Plaintiffs,               )
                                           )
6                vs.                       )  No. 17 C 1973
                                           )
7   HYTERA COMMUNICATIONS CORPORATION      )
    LTD., et al.,                          )  Chicago, Illinois
8                                          )  April 17, 2019
                 Defendants.               )  8:29 A.M.
9
                        TRANSCRIPT OF PROCEEDINGS – Motion
10        BEFORE THE HONORABLE JEFFREY COLE, Magistrate Judge

11  APPEARANCES:

12  For the Plaintiffs:        KIRKLAND & ELLIS LLP
                               333 South Hope Street
13                             Los Angeles, California  90071
                               BY:  MR. MICHAEL W. DE VRIES
14

15  For the Defendants:        STEPTOE & JOHNSON, LLP
                               115 South LaSalle Street
16                             Suite 3100
                               Chicago, Illinois  60603
17                             BY:  MR. DANIEL STEVEN STRINGFIELD

18
                            PAMELA S. WARREN, CSR, RPR
19                            Official Court Reporter
                             219 South Dearborn Street
20                                  Room 2342
                             Chicago, Illinois   60604
21                                (312) 408-5100

22

23  **NOTE:  Please notify of correct speaker identification.**
    **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
24  **UNINTELLIGIBLE.**

25

1   (Proceedings held in open court:)

2   THE CLERK:  17 C 1973, Motorola Solutions versus

3   Hytera.

4   MR. DeVRIES:  Good morning, your Honor.  Mike De Vries

5   for Motorola.

6   THE COURT:  Hi, Mr. DeVries.

7   MR. STRINGFIELD:  Good morning, your Honor.  Daniel

8   Stringfield for Hytera.

9   MR. DeVRIES:  And, your Honor, I think I can report an

10  update, if it would be helpful to your Honor.

11  THE COURT:  Okay.  I hope you guys have resolved this.

12  MR. DeVRIES:  So two nights ago we received an email

13  from Hytera indicating that they would make -- a different

14  witness than they had previously offered to make available,

15  available to testify on the same topics.  They said that

16  he -- that that witness, who is the CFO of Hytera, is available

17  for deposition in Chicago on May the 10th.

18  We -- Mr. Stringfield and I talked yesterday, and then

19  again this morning.  We expressed that May 10th was a month

20  delay beyond what we had originally been planning on.  Our

21  expert reports on damages are due June the 3rd.  And asked if

22  they could find an earlier time.

23  Mr. Stringfield indicated that he is a busy person,

24  and he didn't think he could -- not -- that the CFO is busy and

25  didn't think he could do a deposition earlier than that.

1          And so what we think -- although it is suboptimal to

2    do the deposition that week, the week that ends in May the

3    10th, we think if we can embody in a court order a requirement

4    that the deposition happen in Chicago by no later than May

5    10th, that we can reach an agreement with Hytera about exactly

6    what day that week the deposition will occur, if it can't occur

7    earlier.

8          THE COURT:  What's his name?

9          MR. STRINGFIELD:  Your Honor, his name is Nuo Xu.

10         THE COURT:  How do you spell that?

11         MR. STRINGFIELD:  I will spell it.  It is N-u-o.

12         THE COURT:  Yeah.

13         MR. STRINGFIELD:  First name.

14         THE COURT:  Yeah.

15         MR. STRINGFIELD:  Last name X-u.

16         THE COURT:  X-u?

17         MR. STRINGFIELD:  Correct.

18         THE COURT:  That's it?

19         MR. STRINGFIELD:  That's it.

20         THE COURT:  Okay.  And he's the CFO of Hytera?

21         MR. STRINGFIELD:  Correct.

22         THE COURT:  Okay.  And when do you want to do this by?

23         MR. DeVRIES:  By May the 10th.

24         THE COURT:  So not later than May the 10th.

25         MR. DeVRIES:  Yes, please.

1          THE COURT:  Where at?

2          MR. DeVRIES:  In Chicago.  Preferably at our offices.

3    Although we don't actually feel that strongly about that point.

4          THE COURT:  No, it will be at your offices.  At

5    Kirkland & Ellis?

6          MR. DeVRIES:  Yes, please, your Honor.

7          THE COURT:  Starting at 9:00?  8:30?  What?

8          MR. STRINGFIELD:  9:00 A.M. sounds perfect.

9          THE COURT:  So -- okay.  And --

10         MR. DeVRIES:  And then there is --

11         THE COURT:  -- is that agreeable with everybody?

12         MR. DeVRIES:  Then there is -- oh, I'm sorry.

13         MR. STRINGFIELD:  Yes.  Yes, your Honor.  Hytera

14   agrees to that.

15         THE COURT:  So why in the world would you make these

16   folks come out from California for something like this?

17         MR. STRINGFIELD:  Your Honor, we didn't make them come

18   out here.  It was their motion.  We did contact --

19         THE COURT:  Well, come on.  You absolutely made them

20   come out here.  Your client made them come out here.

21         MR. STRINGFIELD:  Your Honor --

22         THE COURT:  Your client forced this motion to be made,

23   and I think it is terrible.

24         MR. STRINGFIELD:  Your Honor, we -- we rescheduled --

25         THE COURT:  They're making a lot of money, so good for

1  them.

2      But really that you would come before somebody -- I

3  have nothing of any insight to give you, any of you, as to what

4  date and place and where and when.  I think it is shameful.

5      MR. STRINGFIELD:  Your Honor, without getting into all

6  the details that caused us to have to reschedule this

7  deposition --

8      THE COURT:  I read the motion.  I mean, I think --

9  even if you discount 50 percent of what they say, which I tend

10  to do -- you have won the last two rather important ones.  I

11  just think this kind of thing is pointless.  That's why Judge

12  Norgle told you he didn't even want to hear the last motion,

13  you go out in the hall and you work it out.

14      MR. STRINGFIELD:  Understood, your Honor.

15      And so we had to cancel -- or not cancel -- excuse me.

16  We had to reschedule the 30(b)(6) deposition because of various

17  circumstances that I won't get into.

18      THE COURT:  Mr. Stringfield, I realize -- maybe I'm

19  wrong -- it is not your doing, it is the client's doing.  I

20  just think what -- what is being done is unnecessary.

21      MR. STRINGFIELD:  Your Honor, we worked to reschedule

22  the deposition as quickly as possible.  As soon as we had

23  identified a suitable replacement designee, we notified

24  counsel.

25      THE COURT:  Why not pick the right guy the first time?

1  It is pretty simple what they want.

2      MR. DeVRIES:  We were concerned -- and just to give

3  you a little color here, your Honor.  I deposed the person who

4  they had designated, Andrew Yuan, in California, where he and I

5  both live, last Tuesday.  So it was about nine days ago.

6      He and I, as we left that deposition, with counsel for

7  Hytera present, laughed to one another that we were both going

8  to have to fly, the next day in his case, and for me the day

9  after, to Chicago for me to depose a guy who happens to live

10 about 20 minutes from my house in California.

11     And then by the time I got home that night, they had

12 canceled the deposition.  And now they're actually refusing to

13 ever put up that particular witness again for deposition.

14     THE COURT:  Well, do you want him?

15     MR. DeVRIES:  We do.  He's on our initial disclosures.

16 And they won't agree they are not bringing him to trial.  And,

17 in fact, he was the witness who in the ITC trial was the face

18 of the company witness.  I had to cross examine him in that

19 trial without ever having deposed him.

20     So I don't know exactly what led them to say that they

21 needed to find an alternate witness.  But something happened

22 that --

23     THE COURT:  Now my question is really simple.  In

24 light of where we are and how we have come to be here, you can

25 designate a 30(b)(6) witness.  Normally it is true that the

1  opposite number are designated.  But I don't think there is any

2  prohibition, either in the rules or under the case law, for you

3  to do a designation.  Or, alternatively, just to take that

4  deposition.

5          Do you want to take that deposition?

6          MR. DeVRIES:  We do.  We don't have any objection to

7  them bringing the CFO to testify about the topics.  But we

8  continue to want the Rule 30(b)(1) individual deposition of

9  Mr. Yuan, who is on their initial disclosures.

10          MR. STRINGFIELD:  So, your Honor --

11          THE COURT:  He is.

12          MR. DeVRIES:  Yes, he is.

13          MR. STRINGFIELD:  So, your Honor, we disagree with

14  providing the deposition of Mr. Yuan.

15          THE COURT:  Did -- I don't know -- was he -- was he

16  provided in the initial disclosures as a person with knowledge?

17          MR. STRINGFIELD:  He is in our initial disclosure,

18  your Honor.

19          THE COURT:  Okay.  So if they want to depose him, why

20  can't they?

21          MR. STRINGFIELD:  Well, your Honor, we don't -- we

22  think that the testimony of Mr. Yuan's boss, who is Mr. Xu that

23  we just mentioned, any -- he's a -- Mr. Yuan is not a

24  (unintelligible) fact witness.  He was not in Hytera in 2008.

25          THE COURT:  You put him on the list.

1      MR. DeVRIES:  Your Honor, yes, because he had

2  knowledge of financial topics.  However --

3      THE COURT:  I don't -- look, I -- you have no idea,

4  Mr. Stringfield, what he knows and what he doesn't know.

5  You're a lawyer in the case.  We take what we're given as

6  gospel.  Half the time or more it is not true.  A lot of times

7  it is.

8      The point is simple.  If they -- if you put him on the

9  list, he must have knowledge.  They're entitled to take who

10  they want.  And given where we are, I would see nothing that

11  precludes them from taking his deposition.

12      If you don't want him to be a 30(b)(6) witness, okay.

13  But they can take a deposition of a person who you put on the

14  list as having knowledge.

15      I don't see why, especially in an area that is so

16  critical as what the damages are.  It is half the case.

17      MR. STRINGFIELD:  Your Honor, I have a couple of

18  responses.

19      THE COURT:  Yeah.

20      MR. STRINGFIELD:  First, the matter of --

21      THE COURT:  Yeah, I can't wait to hear them.

22      MR. STRINGFIELD:  Certainly, your Honor.  So, first,

23  just a matter of law.  It would be duplicative and cumulative

24  of deposition testimony that they will get from Mr. Xu.

25      THE COURT:  In your view; not in mine.

1    MR. STRINGFIELD:  Understood, your Honor.

2    And then my second point, as a matter --

3    THE COURT:  You put him on the list as a person with

4  knowledge.

5    MR. STRINGFIELD:  Understood, your Honor.

6    THE COURT:  Go ahead.

7    MR. STRINGFIELD:  The second point is a matter of

8  logistics.  Mr. Yuan is not available in the United States

9  until the end of May.  He has a visa issue.  He's back in the

10  United Kingdom working out his visa issue.

11    So as a matter of logistics, we cannot offer him in

12  the United States during the fact discovery period.  We can

13  discuss with counsel, if they insist on taking his deposition

14  over our objection --

15    THE COURT:  Well, let's discuss now.  We're not going

16  to discuss with counsel any more outside, in light of what's

17  gone on in this case on both sides.  We are almost done.  Can

18  you believe it?

19    We are going to finish, and your folks -- not you,

20  Mr. Stringfield, I understand.  Your folks are not going to

21  conceal or hide a witness.  He may turn out to be of no value.

22  And he may turn out to be critical.  I don't have a clue as to

23  what's the right answer.

24    You put him on -- your -- your predecessors put him on

25  a list.  They didn't need to do that.  I assume they did it in

1  good faith.  If they want to take the depositions -- it is kind
2  of late in the game.  They should have done it earlier.  But
3  they can do it, and I'm going to let them do it.

4          Now the question then is, where it is going to be
5  done.  Apparently it can't be done here.  If they want to go
6  over to England, be my guest.

7          MR. DeVRIES:  We're happy to do that, your Honor.

8          THE COURT:  Okay.  We'll set a date right now, and
9  he'll make himself available.  We're not going to work around
10 his schedule.  There has been enough of that in connection with
11 -- this is really nonsensical.  I understood the problem with
12 the discovery as it related to the matter before Judge Norgle.

13         MR. STRINGFIELD:  Your Honor, if I may make a brief
14 proposal on the date and timing of this deposition.

15         THE COURT:  Sure.

16         MR. STRINGFIELD:  We proposed to go forward with the
17 deposition of Mr. Xu first, during the week of May 10th, as we
18 just discussed.  And then I think the parties should evaluate
19 whether a second deposition is necessary.

20         THE COURT:  They can -- you can evaluate anything you
21 want.  If they choose not to take -- Mr. Xu's deposition, good
22 for them.  That's fine.  But we're going to have a date set.
23 And then it is up to you as to whether you want to go forward
24 or not.  But we're not leaving things hanging for more
25 discussions and more emails and more pointless exchanges.

1   We're going to get this done.

2          Now what do you -- what date do you want for the

3   30(b)(6) witness?

4          MR. DeVRIES:  By May 10th would work on our end.  And

5   I believe it is agreeable to Hytera.

6          THE COURT:  All right.  So by May -- Mr. Xu, X-u, by

7   May 10th in Chicago?

8          MR. DeVRIES:  Yes.

9          THE COURT:  Or where?

10          MR. DeVRIES:  Yes, your Honor.

11          THE COURT:  At Kirkland & Ellis?

12          MR. DeVRIES:  Yes, please.

13          THE COURT:  Okay.

14          What's the gentleman's -- the other gentleman's name?

15          MR. DeVRIES:  Yuan.

16          THE COURT:  How do you spell it?

17          MR. DeVRIES:  Y-u-a-n.  And his English name is Andrew

18   Yuan.

19          THE COURT:  So calling him for purposes of the order

20   Andrew Yuan.

21          MR. DeVRIES:  Yes, please.

22          THE COURT:  Okay.  Will be deposed in -- where?

23          MR. DeVRIES:  Anywhere is fine with us.

24          THE COURT:  In London?

25          MR. DeVRIES:  Sure.

1      THE COURT:  Do you have offices there?  I assume you
2  do.
3      MR. DeVRIES:  Yes, your Honor.
4      THE COURT:  At Kirkland & Ellis.
5      When and -- beginning in at 9:00 o'clock.  But where?
6  Oh, at Kirkland & Ellis in London.
7      MR. DeVRIES:  Yes, please.
8      THE COURT:  At 9:00 P.M. -- 9:00 A.M.
9      MR. DeVRIES:  Yes, please.
10      THE COURT:  Okay.  And it will be taken under whatever
11  the rules are that govern a deposition.
12      If it turns out that he has nothing of value, so be
13  it.  If it turns out that he really has something, then he
14  does.
15      MR. DeVRIES:  He does.  I'm very familiar with him and
16  his documents, and he's highly relevant to damages issues.
17      THE COURT:  Okay.  My sort of guess, my non-judicial
18  tentative guess, is the desire to insulate Mr. Yuan sort of
19  suggests that he may have something of value to say.  But I
20  could be wrong.  Only -- that's why it is called discovery.
21      MR. STRINGFIELD:  Your Honor, there is no attempt to
22  insulate him --
23      THE COURT:  Okay.
24      MR. STRINGFIELD:  -- I can assure the Court.
25      THE COURT:  Good.  Then that -- that takes care of

1    those two.

2         May 10th for Mr. Xu in Chicago at Kirkland & Ellis.

3         And for Mr. Yuan in London at Kirkland & Ellis at 9:00

4    o'clock.

5         Now on what date?

6         MR. STRINGFIELD:  Your Honor, we would propose --

7    again, we would propose to have it after the May 10th.

8         THE COURT:  It is their deposition.

9         MR. DeVRIES:  We're fine as long as --

10        THE COURT:  I don't care -- you guys agree.  But I

11   want to -- I want the date now so that we have an order.

12        MR. DeVRIES:  May we say by no later than May 20th?

13        Would that be acceptable, Mr. Stringfield?

14        THE COURT:  That's fine.

15        Yeah.  And then you guys can work it out.  No later

16   than May 20.

17        MR. STRINGFIELD:  And, your Honor, I'll just note now

18   that I don't know Mr. Yuan's specific availability.  We will

19   work to comply, but we may have to come back.

20        THE COURT:  Mr. -- please.  Mr. Yuan is not the

21   President of the United States, and he's not the chairman in

22   China.  He absolutely can be made available.  He can adjust his

23   schedule.  He's not that -- the world doesn't hinge on him.

24        Folks, we're going to get this done, kicking and

25   screaming by either side, we're going to get it done.  And

1  you're going to go to trial on whatever date Judge Norgle gives

2  you.

3        So I'm going to enter an order.  You work it out as

4  best you can.  If you can't, you'll abide by the order.  No

5  later than May 20th, with the date to be determined -- the

6  exact date before that, the May 20th date, to be determined by

7  consultation among counsel.

8        My suggestion is you do it whatever way you want.

9  Stop exchanging emails and pick up the phone and call each

10 other.  I know the world functions and operates on emails.

11       MR. DeVRIES:  Yes, your Honor.

12       THE COURT:  But I don't -- it is -- to schedule

13 something, why do you have to write an email?

14       MR. DeVRIES:  Then there was a third issue, but I'm

15 happy to report to your Honor that as of this morning we have

16 dates certain to produce the financial materials, and if -- as

17 long as --

18       THE COURT:  I'd like to include that in the order as

19 well.

20       MR. DeVRIES:  We would ask that you do, your Honor,

21 and we appreciate it.  So we have been told that the

22 transactional level financial data --

23       THE COURT:  Wait.  Hold on.  Hold on.

24       MR. DeVRIES:  I'm sorry.

25       THE COURT:  Transactional -- I just want to be sure

1    that what I put in the order is what you all agree on.

2            MR. DeVRIES:  Yes, your Honor.

3            THE COURT:  The transactional level.

4            MR. DeVRIES:  Financial data.

5            THE COURT:  That's been sought previously?

6            MR. DeVRIES:  Yes, your Honor.

7            THE COURT:  All right.

8            Yes.

9            MR. DeVRIES:  Will be produced by this Friday, April

10   the 19th.

11           THE COURT:  Be produced by Friday, April 19th.

12           MR. DeVRIES:  And this is the -- I'm sorry.

13           THE COURT:  Yeah, no, go ahead.

14           MR. DeVRIES:  And then the corrected financial

15   summaries will be produced by Friday, April the 26th.

16           THE COURT:  Hold on.

17        (Brief interruption.)

18           THE COURT:  Now you -- I think you made a mention of

19   this in the motion.  There was some discussion, I guess, about

20   them producing, I guess, not documents, sort of maybe kept in

21   the ordinary course of business, but documents that they were

22   going to prepare for this litigation that was going to outline

23   what they claimed was the -- are you willing to accept that?

24           MR. DeVRIES:  So the answer is the agreement we have

25   reached has taken care of this issue.

```
 1              THE COURT:  Okay.

 2              MR. DeVRIES:  So they did --

 3              THE COURT:  Then that's fine.

 4              MR. DeVRIES:  Yes, they have produced per -- what I

 5   understand to be prepared for litigation summaries.  It is all

 6   they have ever produced, and we said that wasn't enough.

 7              THE COURT:  Well, it is not enough.

 8              MR. DeVRIES:  And in fact it turns out that they are

 9   inaccurate, and they're going to produce new summaries.  But,

10   in addition, that transactional level data that they are

11   producing by this Friday are the actual records from their

12   financial system.

13              THE COURT:  Right.  Because their stuff is

14   not -- unless you're willing to accept it -- it is not

15   appropriate, and it is not even admissible.

16              MR. DeVRIES:  Right.

17              THE COURT:  Unless you want it to be.

18              MR. DeVRIES:  No, we -- we had -- there was

19   inaccuracies.  They produced two summaries, and they were

20   inconsistent with one another.  And so we want this data

21   they're providing this Friday.  We also understand that they're

22   going to correct the summaries, and they are going to do that

23   by --

24              THE COURT:  Well, I won't put in the order.  Just -- I

25   am going to just put in what you said.  And then if it accords
```

1   with the Rules of Evidence and your -- and their obligations

2   and your satisfaction, then that -- that will be fine.  But I

3   don't want to go into too much detail in the order.

4           MR. DeVRIES:  Yes, your Honor.

5           THE COURT:  Because you know what you're doing, and

6   they know what they're going to produce.

7           MR. DeVRIES:  Yes.

8           THE COURT:  Okay.  What else?

9           MR. STRINGFIELD:  Your Honor, and one further point.

10          THE COURT:  Yes.

11          MR. STRINGFIELD:  Our agreement was based on

12  reciprocity from Motorola that they are also producing their --

13          THE COURT:  Oh, fun.

14          MR. STRINGFIELD:  -- transactional data.

15          THE COURT:  So I'll put in, and Motorola --

16          MR. DeVRIES:  Absolutely, your Honor.

17          THE COURT:  -- will produce, what?

18          MR. DeVRIES:  It the -- the same type of transactional

19  data.

20          THE COURT:  The identical -- will produce --

21          MR. DeVRIES:  Identical.

22          THE COURT:  The identical stuff from Motorola,

23  identical materials regarding Motorola.  By when?  Same date?

24          MR. DeVRIES:  By this Friday.

25          THE COURT:  By this -- Friday, what's the date?

```
 1              MR. DeVRIES:  April 19th.

 2              THE COURT:  Okay.

 3              MR. DeVRIES:  And I believe those are the only issues

 4    that we have, your Honor.

 5              THE COURT:  Okay.  My offer to you folks is still

 6    good.  You -- anybody wants to do this by phone, I really hate

 7    to have people come here.

 8              Mr. Stringfield, where did you come from, Washington?

 9              MR. STRINGFIELD:  Chicago.

10              THE COURT:  Oh, you're here.

11              But I just don't want to have you guys fly in on this.

12    You know, what we have been doing is sort of important, but not

13    this.  This is just a scheduling thing.

14              All right.  Is there anything else that you think we

15    should talk about?  You need to have done or --

16              MR. DeVRIES:  Not from -- not from Motorola, your

17    Honor.

18              THE COURT:  All right.  Folks, really --

19              MR. STRINGFIELD:  Your Honor --

20              THE COURT:  Yeah.

21              MR. STRINGFIELD:  I'm sorry.  Nothing -- not to

22    address today, but, you know, respecting your Honor's prior

23    admonitions that silence is deafening, we just wanted to let

24    you know that the issue with the trade secret identification

25    is --
```

1          THE COURT:  No, Posner said it; I didn't say it.  I

2    wish I had said it.

3          MR. STRINGFIELD:  The issue with the trade secret

4    identification is ongoing.  We're still having an issue with

5    that.  We're still having unsatisfactory deposition testimony

6    from the Motorola witnesses.

7          My partner, who you spoke to on the phone, Mike Allan,

8    is leading the charge on that.  I presume that he'll continue

9    working with Motorola to address that.

10          I just wanted to make the Court aware that this is

11    still an ongoing and live issue.

12          THE COURT:  I'm not particularly surprised.  The

13    question is what do we do and what do you all do?

14          MR. DeVRIES:  And to be clear, your Honor, actually --

15    and I think maybe Mr. Stringfield doesn't have --

16          THE COURT:  I know what I would do --

17          MR. DeVRIES:  -- doesn't have the benefit of the most

18    recent interactions on this since he's not leading the charge

19    on it.  I have personally spoken to Mike Allan, to talk with

20    him about making sure that their -- that Hytera is getting the

21    testimony about the trade secrets that they want.  And I have

22    heard -- and no reports since that conversation of concerns

23    about witness testimony.  And every one of the reports I have

24    received from our depositions about the trade secrets is that

25    they're getting exactly -- Hytera is getting exactly the kind

1   of information that it is looking for.

2          So I actually believe that this is not an ongoing

3   problem.  This is something that Hytera is getting.  And if

4   they have more concerns, I suppose they will give us a call and

5   we'll talk about it.  But what's happened in the depositions is

6   not, from our perspective, consistent in any way with what

7   Hytera is arguing.

8          MR. STRINGFIELD:  Your Honor, that's actually

9   incorrect.  So Mr. Wong, I think that both parties would agree

10  that his deposition has to be redone.  It was wholly

11  unsatisfactory.  That was the deposition that Mr. Allan

12  discussed with you in detail --

13         THE COURT:  Right.

14         MR. STRINGFIELD:  -- all of the non answers.  So

15  that's an outstanding deposition.

16         Mr. Berger --

17         THE COURT:  Well, can I -- look, have they agreed that

18  they're going to reproduce the guy?

19         MR. STRINGFIELD:  Not my knowledge.

20         MR. DeVRIES:  I don't believe that that request has

21  been made.  When I had a meet and confer with Allan, it was in

22  the middle of a deponent who was deposed from last Friday

23  through Tuesday, which is the only other deposition that has

24  occurred since the hearing before your -- telephonic hearing

25  that --

1          THE COURT:  I would like to do this, I would like you

2    guys to go -- since you're here, you're (unintelligible) can't

3    be until later today.  Go into my office, have a seat, and talk

4    about all of the things that you think are still open issues,

5    and then we'll try and address them.  I would like to get as

6    much done as possible.  I don't want to leave things hanging

7    open.

8          I know the trade secret issue is a burning and

9    constant thorn in everybody's side.  I know what I would do,

10   but I'm not running the case, Judge Norgle is running the case.

11   If you folks came up with reports, for example, that somehow

12   took 142 trade secrets and made them simplicity itself, so that

13   any fool can understand them, I would reopen discovery.  But

14   I'm not running the show.  So you would not get away with what

15   is at least they say you're trying to do.

16         But if there is issues, I am telling you to go and

17   talk about it.  I don't want to leave things that could -- for

18   future that can be maybe resolved among you folks today.

19         MR. DeVRIES:  And we -- and we're happy to talk more.

20   As you can tell after the hearing before your Honor last week,

21   we affirmatively reached out and said, let's have a regular

22   dialogue with Hytera about what it is, if they have concerns

23   about the witness's testimony concerning the trade secrets.

24   And we have not heard any since that -- that conversation any

25   other concerns.  But we're happy to, and we would prefer to sit

1    down with Mr. Stringfield.  We're attempting to get discovery

2    done.

3            THE COURT:  Do you want to do that or not?

4            MR. STRINGFIELD:  Your Honor, I cannot do that today,

5    your Honor.

6            THE COURT:  Okay.  Then I'll leave you to your -- to

7    each other.

8            MR. DeVRIES:  Thank you, your Honor.

9            THE COURT:  And we'll see what you can do and what you

10   can work out.

11       (Phone ringing.)

12           THE COURT:  I'm sorry, let me just --

13       (Brief interruption.)

14           THE COURT:  Sorry.

15       (Brief interruption.)

16           THE COURT:  Okay.

17           MR. DeVRIES:  And we appreciate your Honor's

18   assistance.

19           THE COURT:  Thanks for coming in.  I'm so sorry you

20   all had to travel.

21           MR. STRINGFIELD:  Thank you, your Honor.

22           MR. DeVRIES:  Thank you, your Honor.

23           THE COURT: All right.  Thanks.

24           If you are not happy with the order, if it isn't

25   right, call me, and I'll correct it.

1          MR. DeVRIES:  Yes, your Honor.

2          THE COURT:  I think I'll get it right.

3          MR. DeVRIES:  Thank you very much.

4          THE COURT:  Okay.  Yeah.

5          So -- well, wait a minute.  Is the motion then -- how

6   do you want it to read?  The motion is moot because you worked

7   out -- or the motion is granted?

8          MR. DeVRIES:  Yeah, I think it could be mooted by the

9   agreements embodied in the Court's order.

10         THE COURT:  Okay.  The motion is moot in light of the

11  agreements.

12         All right.  Thank you all very much.

13         MR. DeVRIES:  Thank you very much, your Honor.

14         MR. STRINGFIELD:  Thank you.

15         THE COURT:  Thank you.

16      (Which concluded the proceedings.)

17                       CERTIFICATE

18         I certify that the foregoing is a correct transcript
    from the digital recording of proceedings in the above-entitled
19  matter to the best of my ability, given the limitation of using
    a digital-recording system.

20

21

    */s/Pamela S. Warren*                    April 22, 2019
22  Official Court Reporter                      Date
    United States District Court
23  Northern District of Illinois
    Eastern Division

24

25