1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
3                            EASTERN DIVISION

4    MOTOROLA SOLUTIONS, INC., et al.,        )
                                              )
5                    Plaintiffs,              )
                                              )
6             vs.                             )  No. 17 C 1973
                                              )
7    HYTERA COMMUNICATIONS CORPORATION        )
     LTD., et al.,                            )  Chicago, Illinois
8                                             )  May 20, 2019
                     Defendants.              )  8:34 A.M.
9
                     TRANSCRIPT OF PROCEEDINGS – Motion
10        BEFORE THE HONORABLE JEFFREY COLE, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiffs:         KIRKLAND & ELLIS LLP
                                 555 California Street, 27th Floor
13                               San Francisco, California  94104
                                 BY:  MR. ADAM R. ALPER
14

15   For the Defendants:         STEPTOE & JOHNSON, LLP
                                 115 South LaSalle Street, Suite 3100
16                               Chicago, Illinois  60603
                                 BY:  MR. DANIEL STEVEN STRINGFIELD
17
                                 STEPTOE & JOHNSON, LLP
18                               1130 Connecticut Avenue, N.W.
                                 Washington, DC  20036
19                               BY:  MS. KASSANDRA MICHELE OFFICER

20
                          PAMELA S. WARREN, CSR, RPR
21                           Official Court Reporter
                           219 South Dearborn Street
22                                 Room 2342
                            Chicago, Illinois   60604
23                              (312) 408-5100

24   **NOTE:  Please notify of correct speaker identification.
     FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
25   UNINTELLIGIBLE.**

1    (Proceedings held in open court:)

2         THE CLERK:  17 C 1973, Motorola Solutions versus

3    Hytera.

4         MR. ALPER:  Good morning, your Honor.  Adam Alper for

5    Motorola.

6         THE COURT:  Good morning.

7         MS. OFFICER:  Good morning, your Honor.  Kassandra

8    Officer for Hytera.

9         MR. STRINGFIELD:  Dan Stringfield also on behalf of

10   Hytera.

11        THE COURT:  Okay.  So I read your motion.

12        MR. ALPER:  Okay.  Thank you, your Honor.  We have

13   been continuing to discuss the issues since we filed the

14   motion.  This seems to be an issue of really when depositions

15   and documents related to the individuals that have been added

16   to the initial disclosures are -- happened.

17        THE COURT:  Well, are we talking about 18 or 23?  It

18   seems like it is 23.

19        MR. ALPER:  Yes.  So it is 18 were -- 18 plus --

20        THE COURT:  And five more.

21        MR. ALPER:  -- five more.  And --

22        THE COURT:  Right.

23        MR. ALPER:  And one of the five has been -- was

24   previously deposed.  So it may be that we don't need that one.

25   But it is either 22 or 23.

1        THE COURT:  Okay.  So let me hear from you guys.

2        MS. OFFICER:  Your Honor, as we see this, Rule 26

3   (unintelligible) the disclosures requires Hytera to identify

4   the name of each individual likely to have discoverable

5   information that may support Hytera's claims and defenses.

6        THE COURT:  And you did that.

7        MS. OFFICER:  Correct.  And there is no --

8        THE COURT:  But discovery is about to end.

9        MS. OFFICER:  Correct.  That's --

10       THE COURT:  So what are they supposed to do, take all

11  20 -- all 13?

12       MS. OFFICER:  Well, as we read the Federal Rules, as

13  well as the committee notes and the (unintelligible) cited,

14  there is nothing that requires the depositions and documents of

15  all these people.  And parties frequently identify individuals

16  in excess of the ten depositions allotted by Rule 30.  So we

17  would submit that they don't need these depositions.

18       The subject matter is -- for these individuals have

19  already been covered in the previous 25 depositions, and that

20  these additional 22 would be excessive.

21       THE COURT:  Well, I -- could I -- help me

22  with -- there is only 13 that I think the motion deals with,

23  correct?

24       MR. ALPER:  Right.

25       THE COURT:  Well, I'm looking at page 1.  It says,

1  Hytera failed to disclose in reliance on these 18 until

2  recently.

3          Then on the 3rd with six weeks remaining, Hytera

4  amended its disclosures adding an additional five.  I count

5  that as 23 people.

6          Well, no, let her finish, Mr. Alper.

7          MS. OFFICER:  Yes, your Honor.  That's correct.  There

8  are 23 additional people.  One of which Motorola deposed, I

9  believe, two weeks ago.  So as we see it --

10          THE COURT:  Twenty-two.

11          MS. OFFICER:  -- 22.

12          THE COURT:  Okay.

13          MS. OFFICER:  And then we believe six are former

14  employees over which Hytera has no control.

15          THE COURT:  Well, can we talk -- look, that's the one

16  -- the initial question.  How many of these 22 do you folks

17  control?

18          MS. OFFICER:  Six.

19          THE COURT:  In other words, if you were forced to,

20  could you even produce them?

21          MS. OFFICER:  Sixteen.

22          THE COURT:  How many?  Huh?

23          MS. OFFICER:  Sixteen, your Honor.

24          THE COURT:  Okay.  It seems to me, Mr. Alper, that if

25  16 are there, and there is -- you're talking about 22 -- the

1  remaining folks they have no more control over than you do.

2  They can't control them.

3          MR. ALPER:  I think there is an asterisk to that.

4  During our meet and confer conversations, what they have told

5  us is the reason that they want all of these, including that

6  remaining six, is so they can potentially use them as trial

7  witnesses.  In other words, bring them to trial.  If they don't

8  have control over them now, then presumably they won't have

9  control over them for trial --

10          THE COURT:  Presumably they won't.

11          MR. ALPER:  -- and that wouldn't reply to that six.

12  So -- so the --

13          THE COURT:  Wait, wait.  If they can get them -- if

14  they get the six to come in, that's -- that's just the way it

15  is.  If they -- if they can't produce them, we shouldn't be

16  talking about those six.

17          MR. ALPER:  I agree.  That's not what they told us

18  during the meet and confer conversations that we had.

19          THE COURT:  What did they tell you?

20          MR. ALPER:  They told us that they wanted to leave it.

21  That these were all potential trial witnesses for them.  So

22  presumably they would have control over them if they are

23  potential trial witnesses.

24          THE COURT:  Well, for the moment can we just

25  eliminate -- not eliminate -- but put to the side the six?

1  Then that leaves us with how many?

2          MR. ALPER:  Sixteen.

3          THE COURT:  Sixteen that they can produce if they

4  chose to.

5          MR. ALPER:  Yes, your Honor.

6          THE COURT:  Okay.  Go ahead.  I'm sorry.  So we're

7  talking -- let's talk about the 16.

8          MS. OFFICER:  Okay.

9          THE COURT:  Why shouldn't you produce them?

10          MS. OFFICER:  Your Honor --

11          THE COURT:  You're not going to need to identify

12  anybody, just -- they are people with knowledge.  Whether they

13  depose them or not is for them to decide.  But if you have

14  control over the people, why shouldn't you make them available?

15  I don't see why you shouldn't do that.

16          MS. OFFICER:  Well, your Honor, there have been 25

17  depositions in this case.

18          THE COURT:  Oh, listen, the shoe is clearly on the

19  other foot.  I laughed when I read the motion.  But whatever it

20  is, it is.  I mean, the rules apply bilaterally in this case.

21          MS. OFFICER:  We would submit that there is no reason,

22  and Motorola has not identified or articulated, any reason that

23  any of these witnesses are independently relevant.  Motorola

24  wants to characterize this as Hytera's trial list.

25          THE COURT:  Well, they are independent and relevant

1   because they have knowledge.  You have identified them as folks

2   with knowledge.  Unless you have -- you've effectively

3   satisfied the relevancy component of the inquiry, I think.

4          MS. OFFICER:  But we believe that that knowledge is

5   duplicative of depositions and witnesses they have already had.

6          THE COURT:  I know.  But how in the world -- here's

7   the problem.  I wouldn't know that.  I wouldn't have any idea.

8   You have listed the folks as people with knowledge.  They have

9   the right, do they not, to depose them.  I think they do.  You

10  have -- they get to depose whoever they want.  And you have

11  listed a number of people as having knowledge, which means they

12  are relevant.  Therefore, they can depose them.  They can

13  choose not to or to.

14         All they want to do -- they are not even asking who

15  you are going to call.  I guess they would like that.  But I

16  don't think you have to tell them that.  They simply want you

17  to make available people you have identified as people who are

18  relevant.  I don't see what's wrong -- pardon me -- what's

19  wrong with that if in fact you can produce them.

20         MS. OFFICER:  Proportionality as my colleague,

21  Mr. Stringfield --

22         THE COURT:  Well, proportionality has nothing to do

23  with this --

24         MS. OFFICER:  Your Honor, we have --

25         THE COURT:  -- with all due respect.

1        MS. OFFICER:  We have one month left in the discovery

2   period.

3        THE COURT:  That's precisely why they want you to do

4   this.

5        MS. OFFICER:  It's --

6        THE COURT:  The burden -- look, you guys have

7   unlimited resources.  So do they.  They probably have more.

8        MS. OFFICER:  Admittedly.

9        THE COURT:  But the -- proportionally speaking for

10  this case, there is -- you have the same resources.  And I

11  would think you would know who is really important and who is

12  not.  And for those folks who are not as important as others of

13  the 16, you would allocate lesser resources to that -- that

14  person than somebody at the top of the food chain.

15       MR. STRINGFIELD:  Your Honor, may I add a little color

16  to my proportionality comment?

17       THE COURT:  No.  I would really like to hear from her.

18       MR. STRINGFIELD:  Sure.  Sure.

19       THE COURT:  You can when she's done.

20       MR. STRINGFIELD:  Okay.

21       MS. OFFICER:  Your Honor, we have offered to make the

22  four witnesses that we think have the most relevant knowledge

23  and information --

24       THE COURT:  But he's -- here's the --

25       MS. OFFICER:  -- available for a deposition.

1          THE COURT:  Look, honestly, I am not -- I understand

2     your view.  But who you think is significant is not the

3     touchstone for decision.  You may think that X is really the

4     key, and Mr. Alper may think X is just full of baloney and that

5     really Number 14 is really the key and you just didn't realize

6     it or maybe you did or maybe he's got it all wrong.  But I

7     can't tell people, and I shouldn't, no judge should, who is

8     significant, the most significant, and who is the least

9     significant.

10          There have been people here that have tried over the

11    years to do that.  I always thought -- sometimes they guessed

12    right.  They were pretty smart.  And sometimes I thought they

13    were as wrong as could be.  And I have never understood why

14    judges did that.  And I decided I would never do that.  And I

15    can't -- I couldn't, if I wanted to, do that in this case.

16    That's for you and Mr. Alper to figure out.

17          And if he guesses wrong, it is his time and -- you're

18    getting paid.  I get it, I really do.  But I -- I think he's

19    got the right to try to figure out who it is.  I guess -- maybe

20    he's asking to identify your trial witnesses, but I'm not quite

21    sure.  But you don't have to do that.

22          MS. OFFICER:  Well, we would certainly, to the extent

23    that we don't have the time, money, and resources to conduct

24    all these depositions, we would have to limit our trial list

25    because if we take these people off, we're then precluded at

```
1    trial.

2              THE COURT:  Well, that's --

3              MS. OFFICER:  We have all kinds of visa issues.

4              THE COURT:  -- really -- I'm -- honestly, with all

5    deference to you, I think that's really not an excuse.  You

6    listed them.  You can't then say, oh, we don't have the time,

7    resources, and money.

8              Hytera has got huge, huge resources, as evidenced by

9    their defense of this case.  That -- that can't be an excuse.

10   And I couldn't, you understand, I couldn't take your or

11   Mr. Alper's word for who is -- for all I know Hytera is five

12   times the size of Motorola.  I don't -- I have no idea.  And

13   that's not the basis, at least, to try to figure out who

14   (unintelligible).

15             When I read this, I got the impression that there

16   wasn't any reason in the world why you guys should not make

17   available the people you could make available, if you can -- if

18   you can.  I just think it is courtesy between lawyers, frankly,

19   if nothing else.  It wasn't even a legal question so much as a

20   question of sort of camaraderie among lawyers.  Sure, we'll

21   make Joe available, and we'll make Lefty available.  And you

22   just sort of work things out.

23             And if we look at it as a power issue -- I mean, I

24   (unintelligible) the authority to say to you, I'm not going to

25   tell you who to call and who not to call, and I'm not going to
```

1 tell you all of those cases, by the way, that hold that a judge

2 in the interest of streamlining things -- that's why all the

3 local patent rules came into effect -- can streamline a case by

4 making somebody in advance tell their trial witnesses.  I'm not

5 doing that.  I'm just saying all that they want is for you to

6 make people who you can available.  I don't see anything wrong

7 with that.

8           But -- if you want to -- I'll hear from you.

9           MR. STRINGFIELD:  Just briefly, your Honor.  So --

10          THE COURT:  Sure.

11          MR. STRINGFIELD:  -- I think we all agree that Rule 26

12 is not a blank check to depose everybody on there.  That's --

13 and, you know, and I think that -- and I don't think Motorola

14 is trying to argue that either.  But we see Rule 26 as our

15 obligation to identify people with knowledge.  This is not our

16 trial list.  Mr. Alper --

17          THE COURT:  We're past Rule 26.  You don't have to

18 argue Rule 26 with me.  I don't think Rule 26 is the well

19 sprung from which whatever I do stems.

20          MR. STRINGFIELD:  Well, that's right, your Honor.  But

21 it is sort of a funnel from Rule 26 down to when we get to

22 trial.  And just because somebody is at the top of the funnel

23 certainly doesn't mean that they're going to make it to the

24 bottom of the funnel for our trial list.

25          THE COURT:  But how does Mr. Alper know who is -- who

is significant and who is not?  He might depose somebody that

he thinks is the, you know, the Rosetta Stone to the case, and

you never even thought they were relevant, and he's wrong.  So

what?

MR. STRINGFIELD:  Well, your Honor, we -- and

Mr. Alper can correct me if I am wrong.  We have represented

that the people that they have already talked to and deposed

are who we understand are the most relevant people.  But that

-- Rule 26 --

THE COURT:  But maybe he will -- I can't make the

judgment of who is better and who I can rank.  That's for you

guys to do.  And you may have one view.

Let me tell a very fast story.  If I told you this,

raise your hand and -- I don't mean to be repetitive.  A lawyer

came in here the other day who is a major, major guy in town,

and probably throughout the country.  He was convinced, I

think, he could not lose the case.  He had one won three of

four counts on motions.  Patent counts.

What remained was an antitrust count.  And

(unintelligible) at least the lawyers on the plaintiff's side

because they had been in a multi-year long antitrust case with

me.  And I thought they were really pretty capable people and

smart and -- I couldn't know the case the way they knew it.

The case didn't get resolved, went to trial.  And guess what?

The man who thought he couldn't lose has a judgment against his

```
 1    client -- pardon me -- for one half billion dollars.  That's
 2    lot of money, even for you guys.
 3         Did it mean he was wrong?  Maybe he was right and the
 4    jury got it wrong.  The point is the best case can be lost and
 5    vice versa.  Courts say that all the time.
 6         I can't tell people how to prepare a case.  And I
 7    can't tell people who is the most relevant person.  And you may
 8    think, rightly so, that witness one through eight don't have
 9    (unintelligible).
10         The only loss is really Mr. Alper's in the main
11    because he gets through with the depositions, and he says, my
12    goodness, these people don't have what I thought they had.
13    He's wrong.  But that has nothing to do with the ability of
14    somebody to say, produce.  Don't even tell them anything.  Just
15    make sure they're available.  And if they want to exercise
16    their time and spend their money, that's their business.
17              MS. OFFICER:  Well, your Honor -- but, your Honor --
18              THE COURT:  Just as the same is true for you.
19              MR. STRINGFIELD:  Absolutely, your Honor.  But
20    obviously we have to collect documents and prepare these people
21    for depositions.
22              THE COURT:  So do they.
23              MR. STRINGFIELD:  But there is just not time, your
24    Honor.  There is only four weeks left in the fact discovery
25    period.
```

1    THE COURT:  Then the answer is not to have fought

2    them, but to produce the people.  And both of you go in to

3    Judge Norgle and say, listen, they want us to produce people.

4    We have to produce them.  And we can't do it in this time.  We

5    need one more month, and we are both agreed.  And Cole agrees

6    that it is the right thing to do.  I would be happy to put that

7    in an order.

8    MR. STRINGFIELD:  Well, your Honor, I think it will be

9    more in the order of two months.  And I highly doubt that

10   Mr. Alper will agree that there is any further modification of

11   the schedule necessary.  And so that's the position that we're

12   fearing is that we're going to be compelled to offer 16

13   depositions, and there is not time to do it within the four

14   weeks that we have left.

15   THE COURT:  Yeah.

16   MR. ALPER:  Your Honor, if I may.

17   THE COURT:  Yeah.

18   MR. ALPER:  So we -- when they put this large number

19   of witnesses on their list, just with the generic label

20   potential --

21   THE COURT:  Witness.

22   MR. ALPER:  -- witnesses --

23   THE COURT:  People with knowledge.

24   MR. ALPER:  -- (unintelligible).  They said that --

25   you know, an important issue in the case after we have done --

1        THE COURT:  Well, do they -- I'm sorry.  Do they say

2   that they are potential witnesses or does the designation of

3   people with knowledge conveyed to you that they are potential

4   witnesses?

5        MR. ALPER:  They are -- two ways.  One, they say that

6   they are knowledgeable about independent development.  Rule 26,

7   of course, says list of people who you may rely on --

8        THE COURT:  Right.

9        MR. ALPER:  -- for your claims or defenses.  And then

10  in meet and confer conversations, they have told us these are

11  people we may call at trial.

12        THE COURT:  Okay.

13        MR. ALPER:  If -- we told them at the time, just to be

14  clear, this is a large number of witnesses.  We don't really

15  want to go through the exercise of having to take all these

16  people if -- take them -- we thought the right way to go was,

17  if these are people who they truly didn't believe were likely

18  that they would call, take them off their list, we won't depose

19  them.  And then if later on something happens, there is a visa

20  problem or something like that, they can come to us, and we can

21  try to see if there is, you know -- they can -- you know how

22  that happens.  Sometimes people have to make a swap out later

23  in the case.  And if we can't agree on it, then we can bring

24  that to either your Honor or Judge Norgle.

25        So that's what our position was.  It wasn't that we're

```
1   kind of trying to, you know, reopen a bunch of discovery on our
2   side.  We thought we were done with depositions of their people
3   for the most part on our side.  And we are ready for the end of
4   close of discovery while we get them the remainder of our
5   witnesses.
6          And so that was the choice we provided them.  We said,
7   look, take them off.  Or if you are -- if you want to leave it
8   open that you could bring these people to trial for purpose of
9   proving a key issue, independent development by Hytera, then
10  you have got to make them available to us, and you have got to
11  produce their documents.  It is just the way -- so we can have
12  a deposition.
13         THE COURT:  That's how the rules work.
14         MR. ALPER:  Right, that's how the rules work.
15         And so here's the thing.  That's up to them, right?
16  We're not trying to micromanage their trial witness list.  If
17  they want to have more optionality, then that's up to them.
18  Except for the one thing that doesn't seem fair to us is that
19  toward the -- at the very end here, they could add that volume
20  of witnesses and then use that to extend the discovery deadline
21  once again.  That seems unfair to us that they could just --
22  what's the (unintelligible) over that if they can just list,
23  you know, 16 current employees and then say, we can't get
24  that -- those depositions done, so, sorry, we need another, as
25  Mr. Stringfield said, two months.  And that's going to, of
```

1   course, cause the trial -- entire trial date to get pushed.

2          Whereas currently all that stuff about the depositions

3   on our side and the contentions, we worked it out so we have

4   got the schedule to work and the trial date did not even move.

5   We went to Judge Norgle, we, as you probably saw, extended a

6   couple of interim dates.  But the trial date stuck by way of

7   agreement.

8          So we're very concerned -- we'll -- you know, again,

9   we're not trying to micromanage their trial witness list.  But

10  if they want to keep the option of calling any of these 16

11  witnesses, they have got to get it done by the current

12  discovery cutoff.  It would be unfair for them to use their own

13  kind of -- I can't even imagine them bringing, you know, 16

14  more witnesses on top of what they have disclosed -- but their

15  own disclosures to then delay the trial in this case.

16         THE COURT:  I'm not even looking at it as a matter of

17  sort of strategy -- that's probably not the right word.

18  Strategy in quotes -- of bringing more people on to get more

19  time to delay the trial.  I don't think that's what's involved.

20         But if you really think these are a potential people

21  who may have significant enough information that you might want

22  to use them at trial, they have the right to take discovery.

23  You wouldn't disagree with that.

24         MR. STRINGFIELD:  Well, your Honor, it's --

25         THE COURT:  Or would you?

1          MR. STRINGFIELD:  I --

2          THE COURT:  If you would, I would like to hear your

3   rationale.

4          MR. STRINGFIELD:  Sure, your Honor.  I mean, it comes

5   back to, as I mentioned earlier, the tenets of proportionality,

6   and that just because they are on the Rule 26 disclosure as may

7   have discoverable evidence doesn't mean that they necessarily

8   are going to be deposed.  And we have -- we found numerous

9   cases.  And I won't bore your Honor with the --

10         THE COURT:  Yeah, don't.

11         MR. STRINGFIELD:  -- details of them.  But that's what

12  the case law says.  Rule 26 does not equal deposition.

13         THE COURT:  Well, then tell them who you are not going

14  to call.  You don't have to tell me who you are going to call.

15  They're not entitled to that at all.

16         As I say to you, my own independent research, which I

17  may put in an order or I may not, reveals that in fact a judge

18  can do that.  And it is a matter of discretion in part, at

19  least, and -- essentially it is now (unintelligible).

20         But I'm not doing that.  All I'm saying to you is you

21  know better than anybody.  You're not going to have an endless

22  witness list.  First of all, time constraints won't let you,

23  and common sense precludes it.

24         So look and say, okay, you got 13, 16 people.  Who

25  really are -- do we want to put on?  We're not going to put on

1    six people to say the same thing.  Judge Norgle will never let

2    you do that.  And you'd have to be nuts to bore the jury.

3         In your own mind, just to streamline things, pick

4    people who you think you really may call and use those, and the

5    others you can discard.  You don't need three witnesses to say

6    the same thing.

7         And if -- if they really are different, and you really

8    need the -- you know, three, not one, or six, not three, then

9    they are entitled under the rules to -- the notion of

10   proportionality cannot mean that you get to list 100 witnesses

11   but you preclude them from taking discovery of those hundred

12   witnesses.  That would be an odd kind of thing.  That's not

13   what proportionality means.

14        MR. STRINGFIELD:  I agree with that, your Honor.  And

15   let me -- and I have a couple different responses.

16        THE COURT:  Okay.

17        MR. STRINGFIELD:  First, regarding telling them who we

18   intend to call at trial, we don't -- we're not there.  We --

19   they're --

20        THE COURT:  I have already said to you you need not

21   tell them --

22        MR. STRINGFIELD:  Right.

23        THE COURT:  -- who you were going to call at trial.

24   He is not asking you that.  I don't -- if he is, I'm not going

25   to give him that.  Wright & Miller couldn't be clearer.  You

1  don't have the right to demand trial witnesses.  Although, as I

2  say, there are cases that say the opposite.

3       MR. STRINGFIELD:  Well, it is sort of the inverse

4  because now they are asking us to tell us who are not going to

5  be trial witnesses.  And we candidly don't have that

6  information.  And I can give the Court a little color why.  As

7  the Court has seen the parties engaging --

8       THE COURT:  You don't have to.  I accept your word.

9       MR. STRINGFIELD:  But I think it is important to note

10  that their trade secrets have recently reduced from 142 to 29.

11       THE COURT:  I understand completely.

12       MR. STRINGFIELD:  And we're -- so we're trying to get

13  our heads around -- you know, these people deal with the

14  independent development story.  We're finally zeroing in, we

15  hope, on what these specific trade secrets are.  We don't know

16  which of these specific people have information that's related

17  to the specific 29 that they have now focused on.  We're trying

18  to figure that out.

19       In a perfect world, your Honor, I would love to stand

20  here and tell you that we don't need these people, but we don't

21  know that.  And what Mr. Alper --

22       THE COURT:  Then if you don't know -- believe me, it

23  is sort of grieves me to think Mr. Alper has the right of the

24  issue.  I certainly didn't think that before when I entered

25  that long order.  And maybe it was very late in coming, and I

1 apologize if it was.  And suddenly after that order, you guys

2 went from a 142 whatever down to some manageable number of

3 trade secrets.  I thought that was great.

4       That pales in comparison to -- or what you are arguing

5 about -- now pales in comparison to what you agreed on.  And I

6 can't for the life of me understand why you can't agree on the

7 number of people who should be deposed.  If you want to reserve

8 your right to call any of them, I think you have that right for

9 sure.

10       But he has the equivalent right to take the

11 depositions, to see who -- so he doesn't say, oh, my goodness,

12 they called Mr. Cole.  I never thought they'd call him.  He is

13 a bum.  He knows nothing.  Yet there he is on the.  Stand, and

14 poor Mr. Alper says, I have got nothing.  Now maybe that's the

15 way it was done in the old days, but not anymore.

16       MR. STRINGFIELD:  Sure.  And, your Honor, and one

17 point, just to clarify, it is absolutely not our position that

18 they will not have an opportunity to depose each of our trial

19 witnesses.  It -- but it might not happen in the current

20 discovery period is our only -- Mr. Alper mentioned earlier --

21 I think he said, we might agree to some substitutions later.

22       THE COURT:  Well, it is not up to you, it is up

23 to -- really up to Norgle what he decides.  What if he says,

24 no, there is going to be no more discovery, and you can't even

25 take -- pardon me -- you can't even take unofficial discovery,

1   which people do up to the date of the trial.  I won't let you

2   do it.  If you do it, fine.  But I'm not going to let you use

3   anything you get.

4           What are you going to do then?

5           MR. STRINGFIELD:  Well, that would be a risk we would

6   take, your Honor.  If Judge Norgle --

7           THE COURT:  But he doesn't want to take that risk.

8           MR. STRINGFIELD:  Well, I would think that if Judge

9   Norgle says we can't take dep -- discovery -- late, you know,

10  out-of-time discovery from these people, then that may impact

11  whether we can put them on our trial list.

12          THE COURT:  Who knows what he'll do.  I -- all I am

13  saying to you is we are, I think, arguing over nothing.  There

14  is a handful of people involved.  And I -- if you don't want to

15  tell who your witnesses are, so be it.

16          But you're saying, oh, we in effect are telling them

17  who our witnesses are by saying they are all the witnesses.

18  They are not.  To a certain extent, but not really.  You still

19  have a massive number of people from whom you -- you have got a

20  large number of people from whom you can call.  And he won't

21  know who you're going to use.  I would not think you're going

22  to use all of the people.  This is a huge case, but not that

23  huge.

24          Now I think you do have to produce the people.  Those

25  you can't produce, who are not in your control, of course you

1  don't have to produce.  And you should tell Mr. Alper who those
2  people are, and he's left to his own devices.  If he gets them,
3  fine.  If he doesn't, fine.  If he does it within the time
4  constraints, okay.  If he doesn't, that's a different issue.
5       But of the remaining people that you think may be
6  witnesses, and maybe that's all 16, I think you have to produce
7  promptly those you can produce.  Those you can't, of course,
8  you can't.
9       MR. STRINGFIELD:  Your Honor, we will not be able to
10 accomplish that in the remaining discovery period.  It will
11 take us multiple weeks just to collect our documents.  Then we
12 need to provide them to the other side so they have a chance to
13 meaningfully review them.  There is no point in taking the
14 deposition --
15      THE COURT:  Well, I don't have any of that before me.
16 I have before me a single question.  Not whether it can be done
17 or not done, whether it can be accomplished or not.  It is
18 whether you have to produce them.  I think you do.
19      Now as to more time because of this -- here, I'm not
20 blaming you at all.  People come to the truth late.  You say,
21 oh, my goodness, I just discovered so and so, and he's so
22 critical or they're so critical.  If you need more time
23 legitimately, both of you, then you should go to Judge Norgle.
24      He has -- I don't know how many hundred cases on his
25 calendar.  You're not the only one.  And the world won't end --

1    don't repeat that.  But the world won't end if you guys have
2    to -- if he extends discovery.
3            You may be taking discovery up until the day of trial.
4    That's for him.  But they have the right to know what people
5    might say.  And if you think people are important enough to put
6    on the list, he has the right to take them.  And it has nothing
7    to do with proportionality.  That's not what the
8    (unintelligible) is.  At least I don't think it is.  Not in
9    this case.  Not now.
10           So I'm going to grant the motion with the
11   understanding that you guys should meet and -- immediately and
12   figure out who you want to have on that list.  Because there is
13   some people you don't care about.
14           And, look, if you told him -- how would the world end
15   or be changed if you said to Mr. Alper, you know, we have
16   looked at this, and I -- we think Cole is interesting, but
17   we're not going to use Cole as a witness.  So what?  Would
18   that -- you would be the first person in the history of the
19   world to have ever told your opponent that?  I don't think so.
20   Lawyers do it all the time with each other.
21           Anyway, so the motion is granted.  You can -- you will
22   produce the ones that you can produce.  Those you can't, of
23   course that they are -- you need not produce those people.  You
24   work out with Mr. Alper what -- thanks a lot, Mary Ellen --
25   what a schedule (unintelligible) -- an appropriate schedule is

1   with an eye towards the discovery close in this case.

2          If you cannot, and I'll put this in the order, if you

3   cannot or if you do not think that there is sufficient time to

4   accommodate those whom you will disclose or name -- produce

5   sorry -- then I think you should immediately go to Judge Norgle

6   and ask him for an extension of time for discovery to

7   accommodate the discovery of those people who you have now

8   named.

9          If there is 16, or however many there are, there are.

10  If there is some less number, I can't imagine -- it strikes me

11  when I read this that I know you guys have not been in the case

12  from the beginning, but that you're -- you and your clients

13  would not know who really was critical.  And they have known

14  them for a long time is not a -- is not -- doesn't commend

15  itself to reason.  They would know and you would know who is

16  really important.  And you will also know who might be

17  peripheral.  And if they are peripheral, you shouldn't use

18  them.  The jury is going to be overwhelmed with this case as it

19  is.

20         MR. STRINGFIELD:  Your Honor, just a brief response to

21  your last point.

22         THE COURT:  Okay.

23         MR. STRINGFIELD:  As far as us, you know, knowing who

24  is more important, we're talking about events that happened a

25  decade ago.  This is an ongoing investigation.  It is not as

1    though somebody in our client has all this knowledge.

2        THE COURT:  But how long has it been ongoing?  I'm --

3    really I am not trying to be disputatious with you.  But how

4    long has it been ongoing?  There is a reality to the

5    (unintelligible).

6        MR. STRINGFIELD:  They're talking about --

7        THE COURT:  They waited ten years.  It is what it is.

8    How long have your folks been investigating this case?

9        MR. STRINGFIELD:  I would -- the case was filed 2017.

10   But, in all honesty, fact discovery has only been going on for

11   the last five or six months.

12       THE COURT:  No, but your folks did not hinge the scope

13   of their discovery -- sorry -- the scope of their inquiry and

14   their own internal -- he's ordered investigation loosely -- on

15   dates for discovery.  I would think they would have wanted to

16   have known immediately what in the world was going on and what

17   was happening.  I certainly would have.

18       MR. STRINGFIELD:  That's right, your Honor.  And it

19   took us being over in China for almost two months to figure out

20   as much as we have figured out.

21       THE COURT:  But they are in China, and they can know,

22   by talking to their own people, what in the world is going on.

23   They would know who really is significant and who is really

24   marginal.

25       MR. STRINGFIELD:  But it is sort of -- it depends on

1    what the scope of their claims are, and that's something that

2    we have been trying to pin down.

3                THE COURT:  I --

4                MR. STRINGFIELD:  And I know your Honor is well

5    familiar with these issues.

6                THE COURT:  We can argue this endlessly.  And I am not

7    trying to persuade you of anything.  I am just -- somebody has

8    to make a decision.  You guys can't resolve it, which really

9    shocked me when I -- but didn't surprise me in light of all

10   that's gone on.  I was not -- I smiled as I read this.

11               I honestly thought I wouldn't see you again after you

12   worked out the last thing, so this motion really surprised me.

13               Here we are.  Do what you can do.  The order will make

14   sure that it says that it -- if you can't resolve this

15   thing -- not resolve.  If you can't -- if there isn't adequate

16   time to depose the people who are going to be -- who are

17   involved, then you should approach Judge Norgle and ask him for

18   additional time.

19               Now that's as close as I can get to making a

20   recommendation to him.  And don't go back and say I said it is

21   okay because you would be sure not to get the time.

22               MR. STRINGFIELD:  Understood, your Honor.

23               MR. ALPER:  And that's our feeling that we -- we

24   shouldn't have to lose our trial date because they disclosed a

25   number of witnesses that they are even here saying they know --

1  you know, that may or may not be important.

2        THE COURT:  Well, they're going to tell me, Mr. Alper,

3  that they literally just found them.

4        MR. ALPER:  Right.

5        THE COURT:  And I can't -- we're not going to have a

6  mini trial as to whether those representations are true or

7  false or whether they knew about these people for the last two

8  years and decided to tell their lawyers now so their lawyers

9  could be part of a -- the gimmick.  It doesn't -- I don't know,

10 and we'll never know.

11       All I know is they have listed people, and you are

12 entitled to take discovery.  Unless you can prove, not through

13 discovery -- unless you have independent knowledge that this is

14 all a game designed to hoodwink the Court, and then we have a

15 very different matter.

16       But I would bet anything you're not going to be able

17 to do that.

18       MR. ALPER:  We haven't had to look at that issue so

19 far.

20       THE COURT:  Well, I would -- I would advise you not to

21 look at that issue.  I mean, I assume everybody is

22 (unintelligible) in good faith.  Some people act more slowly

23 than others.  It is what it is.

24       So -- but I think what I would like to have you do is

25 -- where are all these people?  Are they all in China?

1      MR. STRINGFIELD:  Yes, your Honor.

2      MR. ALPER:  They are all in China.  So we'd like to

3  try to work towards -- here's what I would suggest, your Honor.

4      THE COURT:  Yeah.

5      MR. ALPER:  And I think this is what you were saying

6  you were going to order.  We would like to work towards

7  addressing any of these additional witnesses they have control

8  over on their initial disclosures by the end of the current

9  fact discovery cutoff.  With that in mind --

10     THE COURT:  And when is that?  What date is that?

11     MR. ALPER:  I think it is June 20th.

12     MR. STRINGFIELD:  That sounds right.

13     MR. ALPER:  And with that in mind --

14     THE COURT:  Wait.  Hold on.  Let's -- so we really

15  have only a month left with which to do anything.

16     MR. ALPER:  Right.  So -- because these came at the

17  very end.  So if we have that in mind, we believe that that

18  will cause Hytera to decide which ones they are not going to

19  want to bring to trial.  They can then keep it open for the

20  others.  But that will be a good way to cabin this in so we're

21  not taking, you know, a dozen and a half depositions and

22  pushing trial dates and stuff like that.

23     THE COURT:  And if they choose not to, if they want to

24  leave everybody in place and say, you do what you want to do,

25  you pick the people that are important because we're not

1  telling you anything other than we will make them available,

2  then the ball is in your court, and you have decide what to do.

3  And they can certainly do that.

4       MR. ALPER:  That's understood, your Honor.  And we

5  would ask that, along with the depositions that they have, they

6  produce the custodial documents within a certain reasonable

7  amount of time before any depositions as well.  That would --

8  that's the only way for us to actually understand what these --

9       THE COURT:  If you needed more time, how much more

10  time would you really -- both of you would you really need to

11  do this?

12       MR. ALPER:  We don't want any more time.  We want to

13  keep the deadlines where they are -- where they are currently.

14  And we will do what we need to do in order to -- if they are

15  not -- obviously your Honor has made this clear, you're not

16  going to force them to limit their list.  So if we --

17       THE COURT:  Well, they can limit (unintelligible) --

18       MR. ALPER:  They can limit it on their own.  We will

19  get -- we will do what we need to do during the current

20  discovery period.  We very strongly -- we have already extended

21  the discovery period many times.  We -- at this point it is

22  not -- there is -- we're very compressed with the -- or rather

23  there are -- I'm not sure there would be a lot more room in the

24  schedule to push the discovery deadline back.  Maybe some, but

25  not a lot without affecting the trial date.  There is some room

1   for sure.  But we don't want to have them go -- we don't want

2   to lose our trial date.  That's all I am saying, your Honor.

3          THE COURT:  And the case has been pending, and I

4   realize there were preliminary matters, but the case has been

5   pending since some time in 2017.

6          MR. ALPER:  Yes, it is -- I believe March or April

7   2017, your Honor.

8          THE COURT:  It just would strike me that a seemingly

9   efficient company like Hytera would have been investigating

10  what this case is all about and for a long time.  And I

11  would --

12         MR. ALPER:  And they had, you know, multiple law firms

13  (unintelligible) your Honor.

14         THE COURT:  Yes, I -- and they have switched law

15  firms, and that creates a problem.

16         But trying to identify people who would have really

17  significant knowledge I wouldn't think would have awaited the

18  end of the case.

19         MR. ALPER:  Especially when we invested our time to go

20  depose the witnesses that through their investigation had shown

21  those are the ones that they decided were the important ones.

22  So we already went through a whole process, as you know, your

23  Honor, and you were presiding over it when we went over to

24  China.  We took the depositions of their witnesses.

25         Now (unintelligible) greater set that they are saying

1    are, you know, new ones that they want to add.  And like you

2    said, this -- that's their prerogative, but it shouldn't be --

3    we should not have to lose our trial date because they have now

4    in the final month and a half of the -- three times per --

5    three times extended discovery period decide, you know, figure

6    it out that there is this large set of additional witnesses.

7          So we --

8          THE COURT:  No, I understand that.

9          MR. ALPER:  We just -- if we were going to go meet and

10   confer about this, we would strongly believe it has to be with

11   an eye towards getting this done by the end of discovery.  And

12   that will cause Hytera to really think about which ones they

13   want to keep on the list and which ones they don't.

14         THE COURT:  Well, the motion asks for a specific kind

15   of relief and nothing else, and that's what I have -- that's

16   how I have looked at it.  Doesn't ask for anything but, please

17   produce people.  And I -- that's how I have -- I have read the

18   motion and how I'm ruling.

19         So the motion is granted.  And I'll add a couple

20   things.  But based upon what we have talked about today, if you

21   can't get it done and you don't think you can get it done, then

22   your next avenue of approach is to go back to him and to

23   discuss with him because he's the scheduler, what can we do?

24   Maybe he'll say oh, well, you know what, I just had a case

25   settle, and I can slide you in in the next month.  I have no

1    idea what he is doing, so --

2         MR. ALPER:  And we will get it done.  This would be

3    Hytera saying, we have added 16 people, and now I'm going to

4    use that in order to push the date of the trial, which is what

5    Mr. Stringfield said, by two months.  That's what he said a few

6    minutes ago.  We don't think that's particularly fair.  I

7    understand that's not before you, and that's --

8         THE COURT:  Well, that's for Judge Norgle.

9         MR. ALPER:  -- an issue for Judge Norgle.  I just want

10   to make that clear that that to us would be really

11   fundamentally unfair when we have been working -- really

12   working hard to keep that trial date with all of the other

13   things that have been going on.

14        THE COURT:  Well, if that happens, I'm sure it won't

15   be the first time in your life that something like that has

16   occurred.  I mean, I don't know what the right answer is.  I

17   never thought two months meant very much in the big scheme of

18   things, but who knows.  That's for you and Judge Norgle.

19        Okay.  Thanks for coming in.  Work together and do

20   what you can do.

21        If you have additional troubles, come back and let me

22   know, and we'll do the best we can.

23        MR. ALPER:  And, your Honor, just one thing, for --

24   just for the record, that additional witness that we had

25   deposed before, Ms. Officer and I have conferred before we came

1    in here.  My notes are a little different in terms of what we

2    had deposed that individual on.  But if we did take the -- that

3    witness's personal capacity deposition in the past, then we'll

4    work that out.

5         THE COURT:  What happened -- was that a 30(b)(6)

6    witness?

7         MR. ALPER:  Yeah, I think -- I think that they had put

8    that witness up as a 30(b)(6) witness.  But I don't think we

9    had known that they were going to designate -- you know, in

10   their initial disclosures they say, here's what this person has

11   knowledge of.  I don't think that we knew that at the time that

12   we took that person's deposition.

13        But I -- we will confer.  That doesn't mean that we

14   necessarily need another deposition.  I just need to go back

15   and we need to make sure that we -- that we're all on the same

16   page on that one additional witness.

17        THE COURT:  Okay.  So you don't intend to kind of

18   reduplicate -- to duplicate what was done.

19        MR. ALPER:  No, definitely not.  No reduplication.

20   Solely if we had not covered --

21        THE COURT:  An area.

22        MR. ALPER:  -- an area.  And then we'll obviously

23   also, as your Honor we were just discussing, we will work out

24   the document production of their custodial documents for

25   whichever of these witnesses they keep on their disclosures.

1    THE COURT:  Okay.  If you have further issues, please

2  either call or come back, and we'll try and resolve them.

3    MR. ALPER:  Thank you.

4    THE COURT:  Thanks a lot.

5    MR. STRINGFIELD:  Thank you, your Honor.

6    (Which concluded the proceedings.)

7                      CERTIFICATE

8    I certify that the foregoing is a correct transcript

9  from the digital recording of proceedings in the above-entitled

10  matter to the best of my ability, given the limitation of using

11  a digital-recording system.

12

13

14  */s/Pamela S. Warren*                    May 20, 2019
     Official Court Reporter                     Date
15  United States District Court
     Northern District of Illinois
16  Eastern Division

17

18

19

20

21

22

23

24

25