**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD. | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No.: 1:17-cv-01973 |
| v. | ) ) | Honorable Charles R. Norgle Sr. |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC. | ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF DEBRA ARON**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. LEGAL STANDARDS ............................................................................................... 1

III. DR. ARON'S RELIANCE ON STANDARD-ESSENTIAL PATENT LICENSES CONTRAVENE THE LAW AND SHOULD BE EXCLUDED ...................................... 2

IV. CONCLUSION ........................................................................................................... 5

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DataQuill Ltd. v. High Tech Comput. Corp.*,
No. 08CV543-IEG BGS, 2012 WL 1284381 (S.D. Cal. Apr. 16, 2012) ..................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...............................................................................................................1

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)..............................................................................................4

*IP Innovation L.L.C. v. Red Hat, Inc.*,
705 F. Supp. 2d 687 (E.D. Tex. 2010).....................................................................................3

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)...............................................................................................................1

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...............................................................................................3, 5

*Liquid Dynamics Corp. v. Vaughan Co.*,
No. 01 C 6934, 2004 WL 2260626 (N.D. Ill. Oct. 1, 2004) .......................................................2

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)............................................................................................3, 5

*Microsoft Corp. v. Motorola, Inc.*,
No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) .......................................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)..............................................................................................3

*University Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) .................................................................................................3

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010)............................................................................................3, 5

## I.      INTRODUCTION

Although Motorola disagrees with many of the opinions expressed by Hytera's experts about Hytera's misappropriation of Motorola's trade secrets and copyright infringement, and the appropriate amount of damages that should be awarded to address Hytera's unlawful conduct, the proper avenue for expressing the vast majority of those disagreements is cross-examination at trial.  There is one limited aspect of the expert testimony that Motorola believes Hytera will attempt to advance at trial, however, that warrants pre-trial exclusion through the *Daubert* process.  Specifically, Hytera's damages expert Dr. Debra Aron relies on patent license agreements for Motorola's standard-essential Digital Mobile Radio ("DMR") and TETRA patents to form her reasonable royalty opinions and to criticize Motorola's damages expert's opinions without performing any analysis of the economic comparability of such licenses, as the law requires.  Because Dr. Aron does not perform this analysis to support her reliance on these licenses, the aspects of her opinions concerning those licenses should be excluded.

Granting Motorola's motion here will not bar Dr. Aron from testifying altogether, as she offers many additional opinions that Motorola will challenge through cross-examination at trial rather than through the *Daubert* process, consistent with the law.  For the reasons set forth below, Motorola respectfully requests that its motion to exclude certain testimony from Dr. Aron be granted.

## II.      LEGAL STANDARDS

Courts are charged with a "gatekeeping role" to ensure expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  "District courts are obligated to prevent unreliable expert testimony from admission.  This obligation, however, does not include determination of whether the expert opinions are correct; rather the court's obligation is to

examine the reliability of the expert's methodology." *Liquid Dynamics Corp. v. Vaughan Co.*, No. 01 C 6934, 2004 WL 2260626, at \*17 (N.D. Ill. Oct. 1, 2004).

## III. DR. ARON'S RELIANCE ON STANDARD-ESSENTIAL PATENT LICENSES CONTRAVENE THE LAW AND SHOULD BE EXCLUDED

In criticizing the opinions of Motorola's damages expert and forming her own opinions regarding a reasonably royalty form of damages, Dr. Aron relies on certain license agreements entered into by Motorola and Hytera covering standard-essential patents ("SEPs") related to standardized DMR and TETRA technology (the "SEP Licenses").[1] In particular, Dr. Aron opines that those licenses evidence that a hypothetical negotiation between Motorola and Hytera would take the form of "a running, per unit royalty" (8/13/2019 Expert Report of Dr. Debra J. Aron ("Aron") (Ex. 7) ¶ 207) that is non-exclusive because "Motorola has licensed its DMR technology to numerous other companies." *Id.* ¶ 211. Dr. Aron also directly opines that those licenses are evidence of the appropriate amount of royalty damages in this case:

> Additionally, in the actual world, ***Motorola and Hytera settled on a royalty rate of*** ▮▮▮▮ ***per terminal unit and*** ▮▮▮▮ ***per infrastructure unit*** for Motorola's set of DMR Standard Essential Patents. I understand that Motorola was obligated to license its DMR SEPs on a fair, reasonable, and non-discriminatory ("FRAND") basis and that, in a hypothetical negotiation, Hytera would assume validity and misappropriation of the trade secrets. However, even considering these factors, the fact that Mr. Malackowski's effective per unit royalty rate for the use of

---

[1]  These licenses include Moto-1053-05636352 (DTX-4086) (Ex. 1) ("Motorola, Inc. / Shenzhen HYT Science & Technology Co., Ltd, Digital Mobile Radio (DMR) Essential Properties Cross License Agreement, dated February 1, 2010"); Moto-1973-26665587 (DTX-4676) (Ex. 2) ("Motorola, Inc. / Hytera Communications Corporation Ltd., DMR Signaling Protocol License Agreement, dated February 8, 2011"); HYT1973-21737441 (DTX-3607) (Ex. 3) ("Motorola Solutions, Inc. / Hytera Communications Corporation Ltd., Digital Mobile Radio (DMR) Essential Properties Cross License Agreement, dated March 17, 2016"); Moto-1973-16604669 (DTX-4568) (Ex. 4) ("Motorola, Inc. / Shenzhen HYT Science & Technology Co., Ltd., Tetra Essential Properties Cross License Agreement (International License), dated April 1, 2008"); Moto-1973-16604687 (DTX-4569) (Ex. 5) ("Motorola, Inc. / Shenzhen HYT Science & Technology Co., Ltd., Tetra Essential Properties Cross License Agreement (PRC License), dated April 1, 2008"); and Moto-1973-16604704 (DTX-4570) (Ex. 6) ("Motorola Solutions, Inc. / Hytera Communications Corporation Ltd., First Amendment to TETRA Essential Properties Cross License Agreement – International License, dated December 1, 2011"). *See* Aron (Ex. 7) ¶¶ 22-23.

2

>Motorola's trade secrets is approximately $58.07 for accused devices and approximately $290.35 for accused repeaters (based on *all* 2010-2018 accused unit sales, i.e., not limiting accused sales to any sub-period), ***calls into question the reasonableness of Mr. Malackowski's conclusions*** and highlights his failure to conduct any apportionment.

*Id.* ¶ 221 (emphasis added); *see also id.* ¶ 45 (opining that "the outcome of a hypothetical negotiation [would] be on the lower end of the range based on my understanding of other licenses between the parties.").

Dr. Aron's reliance on these licenses does not comport with the law because she does not perform an analysis to determine if they are sufficiently comparable to the hypothetical negotiation at issue. In the patent context, the Federal Circuit requires that the "licenses relied on by the [party] in proving damages [be] sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1332 (Fed. Cir. 2009). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). "[C]omparisons of past patent licenses to the infringement must account for the technological and *economic* differences between them." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (internal quotation marks and citation omitted) (emphasis added). A party cannot "rely on license agreements that [are] 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (citation omitted). Reliance on non-comparable licenses can be grounds for exclusion of opinion testimony. *See DataQuill Ltd. v. High Tech Comput. Corp.*, No. 08CV543-IEG BGS, 2012 WL 1284381, at *4 (S.D. Cal. Apr. 16, 2012) (citing *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690–91 (E.D. Tex. 2010)); *University*

3

*Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974) (applying the Georgia-Pacific factors to trade secrets claims).

Despite the foregoing law, Dr. Aron did not analyze whether the SEP Licenses were economically comparable to the circumstances here before incorporating them into her analysis. To the contrary, Dr. Aron states that the patents at issue in the SEP Licenses are subject to Reasonable and Non-Discriminatory ("RAND") licensing terms. Aron (Ex. 7) ¶ 221 ("I understand that Motorola was obligated to license its DMR SEPs on a fair, reasonable, and non-discriminatory [] basis . . . ."). The Federal Circuit has explained that "[i]n a case involving RAND-encumbered patents, many of the *Georgia–Pacific* factors simply are not relevant; many are even contrary to RAND principles." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014). It also has been stated that "[i]ndustry participants in the standard-setting process enjoy significant potential benefits to having their technology incorporated into a standard independent of potential royalty income from licensing patents they own." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *5 (W.D. Wash. Apr. 25, 2013). And it further has been stated that "[t]hese non-income benefits can include increased demand for participants' products, advantages flowing from familiarity with the contributed technology potentially leading to shorter development lead times, and improved compatibility with proprietary products using the standard." *Id.*

There is no allegation that the asserted trade secrets in this case are encumbered by RAND obligations. Yet Dr. Aron makes no effort to analyze why the SEP Licenses are economically comparable to the issues she is analyzing in this case. Despite the absence of any such analysis, Dr. Aron relies on these SEP Licenses to criticize Motorola's damages expert's opinion. *Id.* ¶ 221 (stating that the "reasonableness" of "Mr. Malackowski's effective per unit

4

royalty rate for the use of Motorola's trade secrets" is "call[ed] into question," because "in the actual world, Motorola and Hytera settled on a royalty rate of ▇ per terminal unit and ▇ per infrastructure unit for Motorola's set of DMR Standard Essential Patents.").  Because Dr. Aron failed to analyze economic comparability, her opinions concerning those licenses should be excluded.  *See Lucent Techs.*, 580 F.3d at 1325, 1332; *LaserDynamics, Inc.*, 694 F.3d at 79; *Wordtech Sys.*, 609 F.3d at 1320.

## IV.    CONCLUSION

For the foregoing reasons, Motorola respectfully requests that its motion to exclude certain testimony from Dr. Aron be granted.

DATED: September 17, 2019

Respectfully submitted,

*/s/ Justin Singh*
Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Ali-Reza Boloori (*admitted pro hac vice*)
ali-reza.boloori@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle

5

Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Plaintiffs*
*Motorola Solutions, Inc. and Motorola*
*Solutions Malaysia SDN. BHD.*

6