**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and | ) | |
| MOTOROLA SOLUTIONS MALAYSIA | ) | |
| SDN. BHD. | ) | |
| | ) | Case No. 1:17-CV-01973 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Honorable Charles R. Norgle Sr. |
| | ) | |
| HYTERA COMMUNICATIONS | ) | |
| CORPORATION LTD., | ) | |
| HYTERA AMERICA, INC., and | ) | **PUBLIC VERSION** |
| HYTERA COMMUNICATIONS | ) | |
| AMERICA (WEST), INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**HYTERA'S BRIEF IN SUPPORT OF ITS MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.    Introduction ........................................................................................................... 1

II.    Argument ................................................................................................................ 2

    A.    Motorola's Claim for Copyright Damages Must Be Limited to Three Years Before Motorola Brought Its Copyright Claim ......................................... 2

    B.    Motorola May Not Recover for Copyright Infringement Not Alleged in Its Complaint ................................................................................................... 4

    C.    Motorola's DTSA Claim Should Be Dismissed Because DTSA Has No Retroactive Application ............................................................................... 6

    D.    Motorola Cannot Assert a "Development Cost" Damages Theory Not Disclosed During Discovery ........................................................................ 7

        1.    Motorola's "Development Cost" Theory Is Untimely ............................... 7

        2.    Motorola's "Development Cost" Theory Fails as a Matter of Law ............ 8

    E.    There Is No Evidence that Hytera Acquired, Disclosed, or Used Any of Motorola's Claimed Trade Secrets ...................................................... 10

III.    Conclusion ........................................................................................................... 12

APPENDIX A ................................................................................................................ 14

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Auston v. Schubnell*,
116 F.3d 251 (7th Cir. 1997) ...................................................................5

*Avago Techs. U.S. Inc. v. Nanoprecision Products, Inc.*,
16-CV-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) .............6

*Barlow v. Gen. Motors Corp.*,
595 F. Supp. 2d 929 (S.D. Ind. 2009) .....................................................8

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310, 246 P.3d 877 (2011) ...................................................12

*Carter v. Pallante*,
256 F. Supp. 3d 791 (N.D. Ill. 2017) .......................................................3

*Diversey v. Schmidly*,
738 F. 3d 1196 (10th Cir. 2013) ..............................................................3

*Frerck v. John Wiley & Sons, Inc.*,
11-CV-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ......................2

*Hydrogen Master Rights, Ltd. v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017) .........................................................6

*Karum Holdings LLC v. Lowe's Cos., Inc.*,
15 C 380, 2017 WL 10311207 (N.D. Ill. Sept. 8, 2017) .........................7

*Lancelot Inv'rs Fund, L.P. v. TSM Holdings, Ltd.*,
07 C 4023, 2008 WL 1883435 (N.D. Ill. Apr. 28, 2008) ........................8

*Leventhal v. Schenberg*,
917 F. Supp. 2d 837 (N.D. Ill. 2013) ..............................................2, 3, 4

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
13 C 3994, 2015 WL 3419831 (N.D. Ill. May 28, 2015) ........................7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ............................................................................3, 4

*Raytheon Co. v. Indigo Sys. Corp.*,
895 F.3d 1333 (Fed. Cir. 2018) .............................................................11

*Resnick v. Copyright Clearance Ctr., Inc.*,
    422 F. Supp. 2d 252 (D. Mass. 2006) ...................................................................5

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (Cal. App. 2010) .............................................................11

*Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc.*,
    118 F.3d 955 (2d Cir. 1997).................................................................................9

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) .............................................................................3

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
    504 F.2d 518 (5th Cir. 1974) ...............................................................................9

*Young Soon Kim v. TD Ameritrade, Inc.*,
    891 F. Supp. 2d 936 (N.D. Ill. 2012) ...................................................................5

**Statutes**

Defend Trade Secrets Act of 2016, Pub. L. No. 114–153, § 2(e), 130 Stat. 376
    (2016).....................................................................................................................6

## I. Introduction

Defendants Hytera Communications Corporation Ltd., Hytera America, Inc., and Hytera Communications America (West), Inc. (collectively, "Hytera") respectfully submit this brief in support of their Motion for Partial Summary Judgment. Hytera seeks summary judgment on the following five issues:

1. Copyright damages must be limited to three years prior to the addition of the copyright infringement claim. Because Motorola amended its Complaint to add its copyright claim on August 2, 2018, it may only seek damages for a period commencing August 2, 2015—not for a period of time commencing in 2010.

2. When Motorola amended its Complaint to add its copyright infringement claim, it specified that its claim was being brought with respect to two copyright registrations. Since that time—and without amending its complaint to add any additional copyright registrations—Motorola has sought to double its claim to four registrations. One of the new registrations relates to a new category of products and the other relates to a registration that was not even registered with the Copyright Office until several months after Motorola amended its Complaint. Motorola should not be able to pursue its non-pleaded registrations.

3. The Defend Trade Secrets Act was enacted on May 11, 2016, and does not have retroactive effect. Because Motorola's claims under the Act relate to activity that pre-dates the Act, its claim should be dismissed.

4. Motorola just disclosed—after the close of discovery—that it seeks to recover development costs as part of its theory of damages for actual loss for trade secret misappropriation. Not only should this category of damages be stricken as untimely disclosed, but it should also be stricken as impermissible as a matter of law.

1

5.      Finally, Motorola cannot prove that any of its 29 claimed trade secrets were acquired by Hytera.  Absent proof of acquisition, there can be no disclosure or use.  As such, there is no evidence of misappropriation, and Motorola's trade secret misappropriation claims should be dismissed.

## II.      Argument

### A.      Motorola's Claim for Copyright Damages Must Be Limited to Three Years Before Motorola Brought Its Copyright Claim

Motorola seeks to recover more copyright damages than it is entitled to under the law. Motorola seeks recovery based on the entirety of Hytera's sales in the United States from 2010 to 2018, Statement of Facts ("SOF") ¶ 15, Ex. 3 (Malackowski Rpt. § 15), but it is only entitled to claim damages based on U.S. sales starting three years before Motorola added its copyright infringement claim.

Motorola is barred by the statute of limitations from recovering any damages allegedly suffered more than three years before the filing of its copyright claim in its Amended Complaint on August 2, 2018.[1]  *See Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 846 (N.D. Ill. 2013) (plaintiff "is barred from recovering damages for any acts of infringement accruing prior to February 9, 2009, three years before the filing of [his] Second Amended Complaint" alleging copyright violations); *Frerck v. John Wiley & Sons, Inc.,* 11-CV-2727, 2014 WL 3512991, at *5 (N.D. Ill. July 14, 2014) ("Plaintiff filed the original complaint on April 25, 2011. Hence, the straight-forward application of the statute of limitation would otherwise bar any recovery of damages for infringements that occurred prior to April 26, 2008.").

---

[1] This is a distinct statute of limitations issue from that raised in Hytera's pending Motion for Partial Summary Judgment regarding Motorola's failure to bring its trade secret misappropriation claims in a timely manner.  Dkt. 610.  This statute of limitations argument limits the lookback on Motorola's claim of damages for copyright infringement.

Citing a nearly 40-year-old case, Motorola attempts to sidestep this straightforward conclusion by claiming Hytera has committed a continuing violation, such that damages can reach back for the entire duration of infringement, provided the "last infringing act" occurred within the statutory period. Dkt. 690-7 at 2 n.16 (citing *Taylor v. Meirick*, 712 F.2d 1112, 1119 (7th Cir. 1983)). However, intervening jurisprudence has called the continued vitality of *Taylor* into question. In *Leventhal*, for example, this Court departed from *Taylor*, stating it was "'powerfully convinced that the Seventh Circuit would rule otherwise at the first opportunity' and would overturn the almost thirty-year-old precedent of *Taylor* given the opportunity to do so." *Leventhal*, 917 F. Supp. 2d at 845 (citation omitted); *see also Diversey v. Schmidly*, 738 F. 3d 1196 (10th Cir. 2013) ("Accordingly, we reject as unnecessary the "continuing wrong" doctrine in the copyright infringement context and adopt the majority view.") (citation omitted). Instead, *Leventhal* followed more recent decisions of the Seventh Circuit, noting that the circuit had clarified "'a regular habit of violating'" a statute "'[does not] convert multiple individual violations into one long continuing wrong.'" *Leventhal*, 917 F. Supp. 2d at 846 (quoting *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002)).

Indeed, since *Leventhal*, the Supreme Court has also made plain that "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs"—directly contradicting the continuing violation rule. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014); *see also Carter v. Pallante*, 256 F. Supp. 3d 791, 800 n.5 (N.D. Ill. 2017) ("Insofar as Carter seeks to proceed on the basis of infringing actions that took place more than three years prior to his commencing this action, such claims could be barred because there is no continuing violation doctrine under the Copyright Act.").

3

Here, Motorola has alleged actions as far back as 2010 that, if true, would cause a full claim of infringement to accrue at that time. Plainly, Motorola agrees, since it seeks copyright damages covering the period beginning in 2010. SOF ¶ 15, Ex. 3 (Malackowski Rpt. § 15). This Court should follow the reasoning of *Leventhal*, as confirmed by *Petrella*, and hold Motorola's damages claim must be limited to a period beginning August 2, 2015, or three years prior to the filing of the operative amended complaint. Claimed damages from the period of 2010 through August 1, 2015 exceed the period of statutory limitations and are not actionable.

### B. Motorola May Not Recover for Copyright Infringement Not Alleged in Its Complaint

When Motorola amended its Complaint on August 2, 2018, to add a copyright infringement claim, it alleged: "Motorola is the owner of valid copyrights in the DMR Program, and the Register of Copyrights has issued valid Certificates of Registration **as indicated in Exhibit A**." SOF ¶¶ 4-5; Dkt. 265 ¶ 95 (emphasis added). Exhibit A included two Certificates of Registration: TXu 1-578-438 for MOTOTRBO Mobile Subscriber FW Package R01.00.01 and TXu 1-578-439 for MOTOTRBO Portable Subscriber FW Package R01.00.01. SOF ¶ 6; Dkt. 265-1. These two registrations cover the first public release of Motorola's firmware for its two radio device (or subscriber) products. SOF ¶¶ 7-8.

Motorola has not since amended its Complaint to add any additional copyright registrations to its copyright infringement claims. However, when Motorola served its expert reports on June 28, 2019, it purported to double its copyright infringement claims to cover four separate registrations, the two that were pleaded in the Amended Complaint and two additional registrations:



4

████████████████████████████████

SOF ¶¶ 9-10, Ex. 1 (Wicker Rpt. ¶ 1713). The "Cypher" registration correlates to Motorola's infrastructure product, also known as a repeater, which is a separate category of product. SOF ¶ 11. For example, Motorola's expert Jim Malackowski uniformly separates out Repeaters from the other Devices in computing claimed damages. SOF ¶¶ 13-14, Ex. 3 (Malackowski Rpt. § 15). The "Portable R01.03" registration relates to Motorola firmware release 1.3, which is firmware that is several release versions after the initial release version of code that Motorola listed in Exhibit A to its Amended Complaint. SOF ¶ 12.

Motorola's eleventh-hour revelation seeks to expand Motorola's copyright claims in two substantive ways: First, Motorola seeks to add a new category of DMR products to its copyright damages claim: infrastructure (or repeater) products. Second, Motorola seeks to add a later version of its firmware for one of its radio device (or subscriber) products—firmware for which Motorola did not even register with the Copyright Office until 2.5 months *after* Motorola amended its complaint. SOF ¶¶ 12, Ex. 2.

Motorola cannot add or expand its copyright claims beyond what is alleged in the amended complaint. It is hornbook law that a plaintiff "may not add additional counts to their complaint without actually amending the complaint." *Young Soon Kim v. TD Ameritrade, Inc.*, 891 F. Supp. 2d 936, 940 (N.D. Ill. 2012); *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) (the "summary judgment stage . . . is too late in the day to be adding new claims"); *see also Resnick v. Copyright Clearance Ctr., Inc*., 422 F. Supp. 2d 252, 259 (D. Mass. 2006) (holding that the plaintiff "expressly abandoned" a copyright infringement claim alleged in the original complaint by "filing an amended complaint" that omitted such claim). Motorola may not now expand its allegations to encompass copyright registrations not fairly alleged in the

operative amended complaint. As such, Motorola's claims of copyright infringement for registrations TXu 1-572-947 and TX 8-654-512 may not proceed and Motorola is not entitled to seek copyright damages from repeater products or Release 1.3 firmware.

### C. Motorola's DTSA Claim Should Be Dismissed Because DTSA Has No Retroactive Application

The Defend Trade Secrets Act ("DTSA") was enacted on May 11, 2016. Because all of the alleged conduct Motorola complains of occurred before DTSA's effective date, *see* Dkts. 1 & 265, it is not subject to liability under DTSA. DTSA provides that it applies "to any misappropriation of a trade secret . . . for which any act occurs on or after the effective date." Defend Trade Secrets Act of 2016, Pub. L. No. 114–153, § 2(e), 130 Stat. 376 (2016). Courts have therefore repeatedly declined to enforce the Act's provisions against alleged conduct occurring before the effective date. In *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017), the court held that "a plaintiff states a plausible claim for relief only if [the claim] sufficiently alleges a prohibited 'act' occurring after May 11, 2016." The court dismissed the misappropriation claim at issue because "[t]he complaint does not allege any acts on or after May 11, 2016 other than a conclusory allegation of continuing use and disclosure." And in *Avago Techs. U.S. Inc. v. Nanoprecision Products, Inc.,* 16-CV-03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017), the court held that, DTSA does not allow "a misappropriation claim to be asserted based on the continued use of information that was disclosed prior to the effective date of the statute." Motorola's claims in this case all relate to alleged access to files in 2008 and supposed incorporation of Motorola's claimed trade secrets into products released in 2010. Motorola's DTSA claim is clearly based on pre-May 11, 2016 activity and, as such, should be dismissed.

### D. Motorola Cannot Assert a "Development Cost" Damages Theory Not Disclosed During Discovery

#### 1. Motorola's "Development Cost" Theory Is Untimely

Motorola's damages expert, Mr. Malackowski, served his expert report on June 28, 2019. SOF ¶ 23. In that report, Mr. Malackowski quantifies only a single theory of ██████," which were Motorola's alleged "████████████████████." SOF ¶ 23, Ex. 3 at 68-79.[2] Malackowski served a reply report on September 3, 2019, and he was deposed on September 17, 2019. SOF ¶¶ 24-25. Nowhere did he disclose or quantify a theory of ████████" besides ████. ██████ SOF ¶¶ 23-25. It was not until September 19, 2019, after the deadline for motions *in limine* and *Daubert* motions that Motorola first disclosed that it intends to claim ████████ in alleged "development costs," above and beyond ████████ in alleged lost profits, as a theory of actual loss for trade secret misappropriation. SOF ¶ 27, Ex. 6.

Motorola's delay in raising its "development costs" damages theory until after its expert reports were served (and, indeed, after the motion *in limine* and *Daubert* deadline, SOF ¶ 26) is fatal to Motorola's claim. *See Karum Holdings LLC v. Lowe's Cos., Inc.*, 15 C 380, 2017 WL 10311207, at *4 (N.D. Ill. Sept. 8, 2017) ("the Court finds that the disclosure of the new damages theories that Plaintiffs provided in their supplemental damages disclosures is untimely" where plaintiffs filed supplemental disclosure after close of fact discovery) (citing *McDavid, Inc. v. Nike USA, Inc*., 2013 WL 1749805, at *1, 5 (N.D. Ill. Apr. 23, 2013) (striking new damages theory in a supplemental report where offering party failed to explain how new information necessitated the new theory)); *see also Paramount Media Grp., Inc. v. Village of Bellwood*, 13 C

---

[2] As set forth by Mr. Malackowski on June 28, 2019, the totality of Motorola's claim for actual loss is either "████████████████" (which Mr. Malackowski purports to quantify in his report as ████████) or "████████████████████" (which Mr. Malackowski expressly declined to quantify). SOF ¶ 23.

3994, 2015 WL 3419831, at *3 (N.D. Ill. May 28, 2015) (excluding new damages calculations because there was "no excuse" for plaintiff not to have disclosed its "damages assertion—whether new theory or new calculation—until the close of expert discovery"); *Lancelot Inv'rs Fund, L.P. v. TSM Holdings, Ltd*., 07 C 4023, 2008 WL 1883435, at *5 (N.D. Ill. Apr. 28, 2008) (excluding late damages evidence absent showing the failure to provide it earlier was "either justified or harmless") (citation omitted); *Barlow v. Gen. Motors Corp*., 595 F. Supp. 2d 929, 935 (S.D. Ind. 2009) (excluding late-disclosed damages theories and evidence because Rule 26 does not give litigants "a right to hold back their real damages theories and computations until nearly the eve of trial").

Thus, Motorola's belated attempt to tack on over ▆ million in damages at the eleventh hour should be rejected.[3]

### 2.  Motorola's "Development Cost" Theory Fails as a Matter of Law

Timeliness aside, Motorola's late-added "development cost" theory additionally fails as a matter of law.  An award of the value of the trade secret—which Motorola seeks to measure based on its development cost investment—is "an appropriate measure of damages only when

---

[3] In opposing this motion, Motorola may point to its responses to Interrogatory No. 20 to argue that it had sufficiently disclosed this "development costs" theory to Hytera earlier in the case. But in its responses to that interrogatory, Motorola only made a passing reference to "development costs" as part of its "actual damages," and then went on to narrow the "actual damages" theory to only lost profits.  SOF ¶¶ 20, 22, Ex. 5 at 38 & Ex. 7 at 6-7.  Hytera thereafter specifically challenged Motorola's conclusory and unsupported reference to development costs in its own response to a corollary damages interrogatory served by Motorola. SOF ¶ 21, Ex. 6 at 7.  And yet, even after being explicitly challenged by Hytera to provide detail on its "development costs" theory, Motorola's next and final supplement to its response to Interrogatory No. 20 identically repeated the same threadbare and self-narrowing reference to development costs, confirming Motorola was not earnestly pursuing such a theory.  SOF ¶ 22, Ex. 7 at 6-7.  And, if there was any doubt that Motorola was not advancing any claim for development costs as part of its actual loss, Mr. Malackowski's failure to include such a theory in his report, as noted above, left no ambiguity.  SOF ¶ 23-24.  Notably, Motorola never attempted to quantify any such theory during discovery.

the defendant has in some way destroyed the value of the secret." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974). However, "[w]here the plaintiff retains the use of the secret, as here, and where there has been no effective disclosure of the secret through publication the total value of the secret to the plaintiff is an inappropriate measure." *Id.*; *see also Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc.*, 118 F.3d 955, 969 (2d Cir. 1997) (using lost development costs is "appropriate only where the defendant had destroyed the value of the secret." The Court affirmed the exclusion of development costs because defendant "did not publish [Plaintiff's] secrets, and therefore did not destroy their value . . . other than to the extent that [Defendant] itself used them.").

Here, Motorola has not asserted that Hytera has published Motorola's alleged trade secrets or otherwise "destroyed [their] value." *See Univ. Computing*, 504 F.2d at 535. In fact, Motorola has expressly represented that it "retains the use of the secret." *See id.* at 536. For example, Motorola's damages expert, Mr. Malackowski, purports to explain how multiple of Motorola's trade secrets are incorporated into Motorola's currently sold products. SOF ¶ 23, Ex. 3 at 39-41. And he articulates a theory of lost profits from allegedly lost sales of such products. SOF ¶ 23, Ex. 3 at 73-83. Moreover, Mr. Malackowski advances a damages theory of a "reasonable royalty" structured as a ██████████████████████████████ ████████████████—which confirms again that Motorola purports to derive value from its alleged ███████████████████████████. SOF ¶ 23, Ex. 3 at 100; *see also id.* at 96-98 (discussing value of trade secrets to Motorola).

Therefore, because Motorola expressly contends it retains value in its trade secrets, Hytera has not "destroyed [their] value" and "development costs" are unavailable to Motorola as a matter of law.

9

### E. There Is No Evidence that Hytera Acquired, Disclosed, or Used Any of Motorola's Claimed Trade Secrets

Motorola has defined each of its 29 claimed trade secrets by reference to combinations of documents and/or source code. SOF ¶¶ 16-19, Ex. 4 (Trade Secret Disclosures from May 2019). In a stipulation submitted to the Court, Motorola has represented that:

> with respect to each alleged trade secret that describes multiple components or features, each such trade secret is drawn to the combination of all such components and not to any individual component in isolation and that each such trade secret is described by the combination of the referenced aspects of the documents and/or source code cited.

SOF ¶ 19, Dkt. 520 at 2-3. These statements apply to each of the 29 trade secrets that Motorola is claiming in this litigation. *See* SOF ¶¶ 16-17, Ex. 4. As such, Motorola must prove not only that Hytera had each component in its possession but also that Hytera combined the components and possessed the unified, claimed trade secret.

Motorola cannot meet its burden for a single one of its 29 claimed trade secrets: For none of the 29 asserted trade secrets is there evidence that anyone at Hytera combined the components of each trade secret, such that Hytera had the entirety of any trade secret. And for 27 of the 29 asserted trade secrets in this case, there is no evidence that anyone at Hytera acquired each component that discloses the claimed trade secret—*i.e.*, each cited document or cited source code file. Many of the source code files and documents cited therein have not been located in Hytera's files or within Hytera's products. Appendix A contains a non-exhaustive list of the materials that have not been located.

Motorola's deficiency is not minor either; for most of the claimed trade secrets, the majority of the cited materials have not been located in Hytera's files. For example, Asserted Trade Secret No. 1 cites to six documents, five of which have not been located in Hytera's files. As another example, Asserted Trade Secret No. 141 cites to five documents and no code files.

10

Three of those five documents, or 60% of the cited materials, have not been located in Hytera's files. The code Motorola claims as comprising its asserted trade secrets was similarly not located in Hytera's files or products. Asserted Trade Secret No. 2 cites to 70 files, 69 of which (or 99%) have not been located in Hytera's files or products. Asserted Trade Secret Nos. 134, 136, and 137 each cite to thousands of source code files, thousands of which have not been located in Hytera's files or products. The missing source code files are significant both in terms of number as well as in terms of their functionality. As evidenced by the source code file names listed in Appendix A, the fundamental code files for the implementation of the claimed trade secrets are not located in Hytera's files or products. For example, Asserted Trade Secret No. 23 is the ███, and there is no evidence that Hytera had the basic █████ code: ███ ██████████████████████) and ████████████████████ ████████████. As another example, there is no evidence that Hytera had the basic ███ code that Motorola claims as part of Asserted Trade Secret No. 39, as the following two basic ██ files are not in Hytera's files: ██████ and ████████ Motorola defined its trade secrets as specific combinations of documents and code files; yet, the constituent pieces of the following 27 Asserted Trade Secrets are not in Hytera's files or products: 1, 2, 21, 23, 30, 39, 50, 51, 52, 53, 54, 55, 56, 58, 60, 64, 65, 67, 79, 80, 130, 134, 136, 137, 139, 141, and 142 (the "27 Asserted Trade Secrets"). Motorola cannot prove that Hytera acquired any of these claimed trade secrets, let alone disclosed or used them.

It is a basic matter of logic and law that a defendant must first acquire a trade secret in order to use it. *Raytheon Co. v. Indigo Sys. Corp.*, 895 F.3d 1333, 1341 (Fed. Cir. 2018) (affirming district court's decision of no liability because "[i]f . . . [defendant] did not acquire the trade secret, it necessarily could not have used or disclosed it."); *Silvaco Data Sys. v. Intel Corp.*,

184 Cal. App. 4th 210, 222–23 (Cal. App. 2010) (affirming summary judgment of no trade secret violation where "there is no basis to suppose that [the defendant] ever 'acquired' the source code constituting the trade secrets" because it did not "receive" or "come into possession of" it), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 246 P.3d 877 (2011). As a matter of law, Motorola cannot prove that Hytera acquired, disclosed, or used any of the 27 Asserted Trade Secrets because it cannot prove that Hytera ever received or came into possession of them.

As noted above, Motorola has no evidence that each constituent element of 27 of its 29 Asserted Trade Secrets was in Hytera's possession. In addition, Motorola has no evidence that anyone at Hytera ever combined the set of elements to consider the unique, claimed trade secret as a whole. As Motorola has stipulated, its claimed trade secrets are "drawn to the combination of all such components and not to any individual component in isolation." Dkt. 520 at 2. Consequently, Motorola must show that Hytera (1) obtained each element, which it cannot do for 27 of the 29 claimed trade secrets, and (2) put those individual pieces together to use the claimed trade secret, which it cannot do for any of the 29 claimed trade secrets. This dooms Motorola's misappropriation claim, whether the claim be misappropriation by acquisition, disclosure, or use. As such, Motorola's trade secret misappropriation claims, Counts I and II of the Amended Complaint, should be dismissed.

## III. Conclusion

For the foregoing reasons, Hytera respectfully requests that this Court grant its Motion for Partial Summary Judgment by limiting Motorola's copyright claims to the two copyrights enumerated in its Amended Complaint, limiting any claim of copyright damages to three years prior to the date Motorola amended its complaint, and dismissing both trade secret misappropriation claims or excluding development costs from Motorola's claim of actual losses.

12

Date: October 10, 2019                        Respectfully submitted,

*/s/ Boyd Cloern*

Boyd Cloern (*pro hac vice*)
bcloern@steptoe.com
Michael Allan (*pro hac vice*)
mallan@steptoe.com
Jessica Rothschild (*pro hac vice*)
jrothschild@steptoe.com
Kassandra Officer (*pro hac vice*)
kofficer@steptoe.com
Bill Toth (*pro hac vice*)
btoth@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone:  (202) 429-300
Facsimile:  (202) 429-3902

Daniel Stringfield
dstringfield@steptoe.com
Tron Fu
tfu@steptoe.com
STEPTOE & JOHNSON LLP
227 W. Monroe Street, Suite 4700
Chicago, IL 60606
Telephone:  (312) 577-1300
Facsimile:  (312) 577-1370

Mark McDougall (*pro hac vice*)
mmcdougall@calfee.com
Joshua Ryland (*pro hac vice*)
jryland@calfee.com
Todd Tucker (*pro hac vice*)
ttucker@calfee.com
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816

*Attorneys for Defendants Hytera*
*Communications Corp., Hytera America, Inc.,*
*and Hytera Communications (West), Inc.*

13

APPENDIX A

| Trade Secret | Materials Not Located in Hytera's Files |
|---|---|
| TS 1 – ███████ | Documents not found:<br>• Moto-1973-00116453<br>• Moto-1973-00116994<br>• Moto-1973-00117041<br>• Moto-1973-00117084<br>• Moto-1973-00117098<br>Source code files not found include:<br>████████████ |
| TS 2 – ████ | Documents not found:<br>• Moto-1973-00126931<br>• Moto-1973-00143955<br>• Moto-1973-00173730<br>• Moto-1973-00189096<br>Source code files not found include:<br>████████████ |
| TS 21 – ██████ | Document not found:<br>• Moto-1973-00174718<br>Source code files not found include:<br>████████████ |
| TS 23 – ████ | Document not found:<br>• Moto-1973-00161115<br>Source code files not found include:<br>████████████ |
| TS 30 – ███ | Document not found:<br>• Moto-1973-00196445<br>Source code files not found include:<br>████████████ |

| Trade Secret | Materials Not Located in Hytera's Files |
|---|---|
| TS 39 – ██████ | Source code files not found include: ██████ |
| TS 50 – ██████ | Source code files not found include: ██████ |
| TS 51 – ██████ | Document not found:<br>• Moto-1973-00226463<br>Source code files not found include: ██████ |
| TS 52 – ██████ | Source code files not found include: ██████ |
| TS 53 – ██████ | Document not found:<br>• Moto-1973-00228070<br>Source code files not found include: ██████ |
| TS 54 – ██████ | Source code files not found include: ██████ |
| TS 55 – ██████ | Source code files not found include: ██████ |
| TS 56 – ██████ | Source code files not found include: ██████ |
| TS 58 – ██████ | Document not found:<br>• Moto-1973-00222024<br>Source code files not found include: ██████ |

| Trade Secret | Materials Not Located in Hytera's Files |
|---|---|
| TS 60 – ███████ | Document not found:<br>• Moto-1973-00228070<br>Source code files not found include:<br>████████████ |
| TS 64 – ███████ | Document not found:<br>• Moto-1973-00116648<br>Source code files not found include:<br>████████████ |
| TS 65 – ████ | Source code files not found include:<br>████████████ |
| TS 67 – ███████ | Document not found:<br>• Moto-1973-00222024<br>Source code files not found include:<br>████████████ |
| TS 79 – ████ | Document not found:<br>• Moto-1973-00153593<br>Source code files not found include:<br>████████████ |
| TS 80 – ████ | Source code files not found include:<br>████████████ |
| TS 130 – ███████ | Documents not found:<br>• Moto-1973-00196727<br>• Moto-1973-00197822<br>• Moto-1973-00197848<br>Source code files not found include:<br>████████████ |

| Trade Secret | Materials Not Located in Hytera's Files |
|---|---|
| TS 134 – ███████ | Source code files not found include: ██████████ |
| TS 136 – ███ | Source code files not found include: ██████████ |
| TS 137 ███ | Source code files not found include: ██████████ |
| TS 139 – ███ | Document not found:<br>• Moto-1973-00124888<br>Source code files not found include: ██████████ |
| TS 141 – ███ | Documents not found:<br>• Moto-1973-00124658<br>• Moto-1973-00124682<br>• Moto-1973-00271995 |
| TS 142 ███ | Documents not found:<br>• Moto-1973-00127066<br>• Moto-1973-00180080<br>• Moto-1973-00180446<br>Source code files not found include: ██████████ |

<u>**CERTIFICATE OF SERVICE**</u>

I, Boyd Cloern, an attorney, hereby certify that on October 10, 2019, I caused a true and

correct copy of the **HYTERA'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL**

**SUMMARY JUDGMENT** to be served via the Court's ECF system upon all counsel of record.

*/s/ Boyd Cloern*
Boyd Cloern
