# EXHIBIT A

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 1:17-cv-01973 |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC., | ) ) ) ) ) ) | Honorable Charles R. Norgle Sr. |
| Defendants. | ) ) ) | |

**PROPOSED JURY INSTRUCTIONS**
**(APPENDIX 8A)**

# TABLE OF CONTENTS

**Page**

Instruction No. ## (##) - Summary of the Parties' Claims ...................................................... 2

Instruction No. 1 (Agreed)– Functions of the Court and Jury ........................................ 3

Instruction No. ** – No Inference From Judge's Questions ........................................ 4

Instruction No. 2 (Revised) – What is Evidence.......................................................... 5

Instruction No. 3 (Revised) – Deposition Testimony .................................................... 7

Instruction No. 4 (Agreed) – What is Not Evidence...................................................... 8

Instruction No. 6 (Agreed) – Consideration of All Evidence Regardless of Who Produced It...... 9

Instruction No. 8 (Agreed) – Weighing the Evidence .................................................. 10

Instruction No. 9 (Agreed) – Direct vs. Circumstantial Evidence ................................. 11

Instruction No. 10 (Agreed) – Testimony of Witnesses ............................................... 12

Instruction No. (##) – Prior Inconsistent Statements.................................................. 13

Instruction No. 13 (Agreed) – Expert Witnesses ........................................................ 14

Instruction No. 14 (Revised) – Translated Language .................................................. 15

Instruction No. 15 (Agreed) – Demonstrative Exhibits ................................................ 16

Instruction No. 16 (Disputed) – Destruction of Evidence ........................................... 17

Instruction No. 17 (Disputed) – Fifth Amendment...................................................... 26

Instruction No. 18 (Disputed) – *Respondeat Superior*............................................... 30

Instruction No. 19 (Revised) – Burden of Proof.......................................................... 34

Instruction No. 20 (Disputed) – Misappropriation of Trade Secrets ............................. 35

Instruction No. 21 (Agreed) – Trade Secret Definition Generally ................................................. 38

Instruction No. 22 (Disputed) - Specific Elements of the Definition of a Trade Secret.............. 39

Instruction No. 23 (Disputed) – Combination Trade Secrets ....................................................... 43

Instruction No. 24 (Disputed) – Definition of Misappropriation................................................. 45

Instruction No. 25 (Disputed) – Improper Means........................................................................ 48

Instruction No. 26 (Disputed) – Acquisition of Every Part of a Trade Secret............................. 50

Instruction No. 27 (Disputed) – Employee's General Skills and Experience............................... 52

Instruction No. 28 (Disputed) – Modifications or Improvements ................................................ 54

Instruction No. ** – No License Defense .................................................................................... 57

Instruction No. 29 (Disputed) – Trade Secret / Damages Generally ........................................... 58

Instruction No. 30 (Disputed) - Trade Secret / Compensatory Damages .................................... 60

Instruction No. 31 (Disputed) – Trade Secret / Actual Loss........................................................ 62

Instruction No. 32 (Disputed) – Trade Secret / Unjust Enrichment ............................................ 63

Instruction No. 33 (Disputed) – Trade Secret / Reasonable Royalty........................................... 67

Instruction No. 34 (Disputed) – Head Start Period...................................................................... 73

Instruction No. 35 (Disputed) – Trade Secret / Punitive Damages.............................................. 77

Instruction No. 36 (Disputed) – Trade Secret/Statute of Limitations.......................................... 80

Instruction No. ** (Disputed) - Fraudulent Concealment ........................................................... 84

Instruction No. 37 (Agreed) – References to Other Trade Secrets ............................................... 86

Instruction No. 38 (Disputed) – Copyright Allegation Generally ............................................... 87

Instruction No. 39 (Disputed) – Copyright Infringement ............................................................. 90

Instruction No. 40 (Agreed) – Copyright Ownership .................................................................. 91

Instruction No. 41 (Disputed) – Copying .................................................................................... 92

Instruction No. 42 (Disputed) – Protected Expression ................................................................ 94

Instruction No. 43 (Revised) – Copyright Damages Generally .................................................... 98

Instruction No. 44 (Disputed) – Copyright / Defendants' Profits................................................. 100

Instruction No. 45 (Disputed) – No Double Recovery ................................................................ 102

Instruction No. 46 (Agreed) – Selection of Presiding Juror; General Verdict............................ 103

Instruction No. 47 (Agreed) – Communication with Court ........................................................ 104

Instruction No. 48 (Agreed) – Disagreement Among Jurors...................................................... 105

Where the parties agreed on contiguous portions of an instruction, that language is offered without any brackets.  Any disputed language offered in addition to the agreed language is bracketed either as **[Motorola's Proposal . . . ]** or **[Hytera's Proposal . . . ].**  To the extent any disputed proposal is offered only conditionally, it is identified as such.

Where the parties did not agree on any contiguous portions of an instruction, each party's instruction, followed by the opposing party's objections, is offered sequentially.  Similarly, where only one party proposed an instruction, that party's instruction is offered, followed by the opposing party's objections.

1

**Instruction No. ## (##) - Summary of the Parties' Claims[1]**

Plaintiffs Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD. (collectively, "Motorola") allege that Defendants Hytera Communications Corporation Ltd., Hytera America, Inc. and Hytera Communications America (West), Inc. (collectively, "Hytera") misappropriated Motorola's trade secrets and infringe Motorola's copyrights relating to two-way Digital Mobile Radio ("DMR") technology.

Motorola asserts the following claims against Hytera:

Count I: Trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. §§ 1836(b), 1839 et seq.) by all Defendants. This is a claim under federal law;

Count II: Trade secret misappropriation under Illinois Trade Secret Act (765 ILCS 1065 et seq.) by all Defendants. This is a claim under Illinois state law;

Count III: Copyright Infringement under the Copyright Act (17 U.S.C. §§ 106, 501 et seq.) by all Defendants. This is a claim under federal law.

Hytera generally denies the claims asserted by Motorola and asserts a single affirmative defense—that the statute of limitations bars Motorola's trade secret claims.

You will be instructed as to each element of each claim and defense. You must consider each claim and defense separately.

---

[1]    Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

**Instruction No. 1 (Agreed)– Functions of the Court and Jury**[2]

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part, about what the facts are or about what your verdict should be.

---

[2] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.01.

3

**Instruction No. \*\* – No Inference From Judge's Questions**[3]

 During this trial, I have asked witnesses questions myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

---

[3]  **Motorola's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.02.

4

**Instruction No. 2 (Revised) – What is Evidence[4]**

The evidence consists of the testimony of the witnesses, the exhibits admitted in

evidence, [**Motorola's Proposal**: and stipulations. A stipulation is an agreement between both

sides that certain facts are true. I will now read you those facts:

1. Hytera Communications Corporation Ltd. (previously known as HYT) was founded in Shenzhen, China, in 1993. The company started as a dealer/distributor for two-way radios and began manufacturing its own two-way radio products in 1995.

2. Hytera America, Inc. is a Florida company with its principal place of business in Miramar, Florida. Hytera America, Inc. sells two-way radio products and provides customer service for those products.

3. Hytera Communications America (West), Inc. is a California company with its principal place of business in Irvine, California. Hytera Communications America (West), Inc. sells two-way radio products and provides customer service for those products.

4. The U.S. Copyright Office issued registration certificates relating to certain software associated with Motorola's DMR radio products at issue in this case.

5. Motorola Malaysia hired G.S. Kok in February 1987 as a hardware engineer. When G.S. Kok left Motorola Malaysia in 2008, he was a Senior Engineering Manager.

6. Motorola Malaysia hired Y.T. Kok in May 1997 as a software engineer. When Y.T. Kok left Motorola Malaysia in 2008, he was a Senior Software Engineer.

7. Motorola Malaysia hired Samuel Chia in August 1999 as a software engineer. When he left Motorola Malaysia in 2008, he was an Engineering Section Manager for Motorola.

8. G.S. Kok joined Hytera on February 18, 2008 as a Director, Shenzhen R&D Center, Government and Industry Terminal Product Department. When G.S. Kok left Hytera in November 2018, he was a Deputy General Manager, Hytera UK.

9. Y.T. Kok joined Hytera on June 10, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department. When Y.T. Kok left Hytera in October 2018, he was a Senior Sales Manager in the Overseas Sales Department Headquarters.

---

[4] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.04.

10. Samuel Chia joined Hytera on June 16, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department.  When Samuel Chia left Hytera in October 2018, he was Senior Technical Consultant, Terminal Platform Center Line.][5]

---

[5] **Motorola's Authority**: The jury has heard references to stipulated facts throughout the trial so the instructions should explain what those stipulations are and what they mean.

**Instruction No. 3 (Revised) – Deposition Testimony**[6]

During the trial, certain testimony was presented to you by **[Motorola's Proposal**: the reading of the depositions and**]**[7] video.  You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

---

[6] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.05.

[7]  **Motorola's Authority**: Certain deposition designations were read to the jury so this instruction should include reference to that.

**Instruction No. 4 (Agreed) – What is Not Evidence**[8]

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

---

[8] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction Nos. 1.06, 1.24.

**Instruction No. 6 (Agreed) – Consideration of All Evidence Regardless of Who Produced It**[9]

 In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

---

[9] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.08.

**Instruction No. 8 (Agreed) – Weighing the Evidence**[10]

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

---

[10] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.11.

**Instruction No. 9 (Agreed) – Direct vs. Circumstantial Evidence**[11]

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

---

[11] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.12.

**Instruction No. 10 (Agreed) – Testimony of Witnesses**[12]

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

---

[12] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.13.

**Instruction No. (##) – Prior Inconsistent Statements**[13]

You may consider statements given by one of the parties or a witness under oath before trial as evidence of the truth of what he or she said in the earlier statements, as well as in deciding what weight to give his or her testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his or her testimony here in court, you may consider the earlier statement or conduct only in deciding whether his or her testimony here in court was true and what weight to give to his or her testimony here in court.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

---

[13] **Motorola Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.14

**Instruction No. 13 (Agreed) – Expert Witnesses**[14]

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

---

[14] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.21.

**Instruction No. 14 (Revised) – Translated Language**[15]

You have heard testimony of witnesses who testified in the Chinese language, and seen documents written in Chinese.  Witnesses who do not speak English, or are more proficient in another language, testify through an official Court certified interpreter.  In addition to the witnesses' interpreter, **[Hytera's Proposal**: the parties may also have a check interpreter present] **[Motorola's Proposal**: a check interpreter was also present].[16]  Although some of you may know Chinese, it is important that all jurors consider the same evidence.  You should consider only the evidence provided through the official interpreter.  Therefore, you must base your decision on the evidence presented in the English translation. Therefore, you must accept the interpreter's translation of the witnesses' testimony, or of Chinese text in documents.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or a party.[17]

---

[15] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.22.

[16] **Motorola's Authority**: Since check interpreters were present, Motorola proposes revising the instruction to reflect taht

[17] **Joint Authority:** Jury Instructions, *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, No. 14-01351 (W.D. Wash. May 16, 2017) ECF No. 476.

**Instruction No. 15 (Agreed) – Demonstrative Exhibits[18]**

       Certain slides, diagrams, and illustrations prepared by attorneys have been shown to you.

Those demonstratives are used for convenience and to help explain the facts of the case. They

are not themselves evidence or proof of any facts.

---

[18] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.24.

**Instruction No. 16 (Disputed) – Destruction of Evidence**

*Hytera objects to the inclusion of an instruction on spoliation, loss, or destruction of evidence.*[19] *The following is proposed only if such an instruction is to be offered at all.*

**[Motorola's Proposal:** You have heard evidence that Hytera may have lost, destroyed, and/or altered computers and files before and after this litigation was filed.]**[20]** **[Hytera's**

---

[19] **Hytera's Authority:** *See Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) ("This circuit requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the tendered instruction."); *see also Miksis v. Howard*, 106 F.3d 754, 763 (7th Cir. 1997); 4 Hon. Leonard B. Sand, et al., Mod. Fed. Jury Instr.-Civil P Instruction No. 75-7, Comment (2012) ("The charge should not be given in cases of . . . disappearance while outside the party's control[.]").

[20] **Motorola's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.20; Grenig, 3B West's Fed. Forms, District Courts- Civil, Jury Instructions §34.43 (Failure to Produce Available evidence) (adapted from O'Malley, Grenig & Lee, 3 Federal Jury Practice & Instructions § 104.26). The trial record demonstrates that Hytera lost, destroyed, and/or altered evidence before and after this litigation began. Prior to the litigation beginning, Peiyi Huang and Sam Chia deleted evidence of misappropriation to conceal their misappropriation from Motorola. Trial Tr. 1365:7-19, 1367:5-16, 1467:12-20, 1481:22-25, 1572:17-1573:7, 3213:12-3215:9 3216:8-23, 3242:4-17 (testimony related to destruction of evidence: Trial Tr. 1154:23-1155:25 (discussing rebranding code, erasing documents, and losing laptops), 1157:2-17 (discussing rebranding of Motorola's conformance testing document); *id.* 1549:7-14; *id.* 1839:15-1840:1; *id.* 4406:11-22, 4796:22-4797:4; Yuan: 3559:11-15; PTX-263 (task list showing Hytera decided to create libraries by "extracting only required component and change interface to own interface" because this option it "has a low chance of detection if the code was disassembled by Motorola"); PTX-0047 (discussing the "sensitive relationship between RAF and Motorola so the distribution and application scope of RAF should be minimized"); PTX-46 (showing PE instructing Qin Jun to rebrand training slides related to repeater technology). Because the evidence demonstrates that Hytera destroyed this evidence to conceal its misappropriation, an adverse inference instruction is warranted. *See Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1322–23 (Fed. Cir. 2011) (affirming spoliation finding where purpose of document retention policy was to "frustrate[e] the fact-finding efforts of parties adverse to Rambus").

Once the litigation began, Hytera was on notice to preserve relevant evidence, but failed to do so. Trial Tr. 3263:20-23 (admitting that one of Peiyi Huang's laptops was reformatted after litigation began); Trial Tr. 3259:14-3261:13 (admitting that Hytera did nothing to collect Sam Chia's laptops until his departure in mid-2018 and only then discovered one of his laptops was "missing"). Hytera's failure to preserve relevant evidence warrants an adverse inference instruction. *See Buonaura v. City of Berwyn*, No. 08-cv-6687, 2011 WL 3754820, at *12 (N.D. Ill. Aug. 25, 2011) (instructing jury on adverse inference based on destruction of evidence where defendant "knew that litigation had actually commenced by the time the first tape was erased and knew that the tapes contained information potentially relevant to Plaintiffs' claims"); *see also Pillay v. Millard Regrigerated Servs., Inc.*, No. 09-cv-5725, 2013 WL 2251727, at *3-*5 (N.D. Ill. May 22, 2013) (similar); *Weitzman v. Maywood*, No. 13-cv-1228, 2014 WL 4269074, at *3-*4 (N.D. Ill. Aug. 29, 2014 (granting adverse inference where filing of complaint was "sufficient to inform [defendant] of its obligation to suspend its ordinary document destruction policies and put into place an effective litigation hold").

This instruction is particularly warranted in this case because Hytera is seeking to benefit from this spoliation by suggesting that the jury should hold Hytera's intentional destruction against Motorola. *See, e.g.*, Trial Tr. 1467:5-9, 1468:20-1469:2, 1484:25-1485:23, 1549:15-1550:5, 1584:4-14 1628:19-1631:11.

**Proposal:** You have heard evidence that computers and files may have been lost, destroyed, and/or altered, and that those computers and files may have contained evidence that is relevant to this case.][21]  You may assume that such evidence would have been unfavorable to [**Motorola's Proposal:** Hytera][**Hytera's Proposal:** the person who lost, destroyed. or altered the information]**[22]** only if you find by a preponderance of the evidence that:

(1) [**Motorola's proposal:** Hytera][**Hytera's proposal:** the person][23] intentionally destroyed the evidence or caused it to be destroyed; and

(2) [**Motorola's proposal:** Hytera][**Hytera's proposal:** the person][24] destroyed the evidence or caused the evidence to be destroyed in bad faith.

"Bad faith" means destruction for the purpose of hiding adverse information.[25]

[**Hytera's Proposal**: The destruction or inability to produce a document, standing alone,

---

[21]  **Motorola's Response:** Hytera's proposed "party neutral" instruction is improper.  There is no evidence that Motorola deleted any evidence relevant to this case.  To the extent Hytera is referring to data relating to Motorola's ticketing system for submitting Compass access log requests, there is also no evidence of spoliation.  When Motorola switched ticketing systems for access log requests in 2015 (two years before this lawsuit was filed), tickets showing ***requests*** for access log pulls prior to that date were not carried over into the new system.  But as Mr. Shepard's trial testimony confirmed, Motorola maintained any corresponding access log reports; the absence of an access log confirms that there was no request.  Shepard Tr. 530:2-531:22 ("There would have been an e-mail record of it had it been requested. And I don't believe there's an e-mail record, so I don't believe there was a request.").  This is further evidenced by the fact that several pre-2015 Compass access log requests were produced and introduced at trial.  *See, e.g.*, DTX-4512; DTX-4505 Further, Hytera contends that it is undisputed that (a) Motorola maintains Compass system access logs back to 1997, and (b) Motorola first ran access reports for G.S. Kok, Y.T. Kok, and Sam Chia in January 2017.  *Id.* ¶¶ 4, 25.  Thus, requests to pull access logs prior to January 2017 are irrelevant and duplicative of the access log data that does exist.

[22]  **Motorola's Authority:** *See* footnote 21 above regarding Motorola's position on why this instruction applies only to Hytera.

[23]  **Motorola's Authority:** *See* footnote 21 above regarding Motorola's position on why this instruction applies only to Hytera.

[24]  **Motorola's Authority:** *See* footnote 21 above regarding Motorola's position on why this instruction applies only to Hytera.

[25]  **Joint Authority:** *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) ("That documents were destroyed intentionally no one can doubt, but "bad faith" means destruction for the purpose of hiding adverse information.").

does not warrant an inference that the document, if produced, would have contained information adverse to the party originally in possession of the document.][26][27]

[**Hytera's Proposal:** The destruction of documents in the ordinary course of business does not constitute destruction in bad faith.][28][29]

[**Hytera's Proposal:** Even if you find a person lost, deleted, or altered evidence intentionally and in bad faith, you may not infer that the evidence would have been unfavorable to that person's employer unless a superior officer of the employer, while acting in his managerial capacity, ordered, participated in, or ratified the conduct and bad faith intent of the

---

[26] **Hytera's Authority:** *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) ("An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case.").

[27] **Motorola's Response**: Motorola objects to this instruction as repetitive and confusing. Motorola's proposal, consistent with the Seventh Circuit Model Instruction, explains that the jury must find documents were intentionally destroyed and that the destruction was in bad faith. Hytera's proposal simply repeats the first the requirement and states that is not sufficient for an adverse inference. This is unnecessary and Hytera identifies no reason to lengthen the jury instructions with this repetitious instruction. Indeed, in *Park*, which Hytera cites, the very next sentence states that "to draw such an inference, the employer must have destroyed the documents in bad faith." 297 F.3d at 615.

[28] **Hytera's Authority:** *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) ("The district court concluded that, standing alone, Illinois Bell's system of destroying the ranking sheets does not imply that it used age as a criteria in reaching the ultimate rankings.").

[29] **Motorola's Response:** Motorola objects to this instruction because it is contrary to the law. Destruction of documents in the "ordinary course of business" does, indeed, constitute bad faith once a party is on notice that those documents may be relevant to litigation. *Krumwiede v. Brighton Assocs.*, L.L.C., No. 05 C 3003, 2006 WL 1308629, at *8 (N.D. Ill. May 8, 2006) ("Once a party is on notice that files or documents in their possession are relevant to pending litigation, the failure to prevent the destruction of relevant documents crosses the line between negligence and bad faith, even where the documents are destroyed according to a routine document retention policy."); *Weitzman v. Maywood*, No. 13-cv-1228, 2014 WL 4269074, at *3-*4 (N.D. Ill. Aug. 29, 2014 (granting adverse inference where filing of complaint was "sufficient to inform [defendant] of its obligation to suspend its ordinary document destruction policies and put into place an effective litigation hold"). Moreover, Hytera has offered no evidence that any of the evidence it destroyed was, in fact, destroyed in the ordinary course of business.

employee.][3031]

      **[Hytera's proposal:** Evidence that is unfavorable to a person who destroyed that

---

[30]  **Hytera's Authority:** *Cf. West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 399 (7th Cir. 1988) ("A corporation can be liable for punitive damages only when the responsible employee was acting in a managerial capacity or when the acts were authorized or ratified by the corporation."); *Pendowski v. Patent Scaffolding Co.*, 89 Ill.App.3d 484, 488-489 (1st Dist. 1980); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("bad faith is personal" and "may not automatically be visited on others", rather specific evidence of a supervisor's bad faith is needed); *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 803 (N.D. Tex. 2011) (same); *Cenveo Corp. v. S. Graphic Sys.*, Inc., No. CIV. 08-5521 JRT/AJB, 2010 WL 3893680, at *11 (D. Minn. June 18, 2010) (imputing intent only where the individual acting in bad faith was an officer of defendant corporation), report and recommendation adopted, No. CIV. 08-5521 JRT/AJB, 2010 WL 3893709 (D. Minn. Sept. 30, 2010).

[31]  **Motorola's Authority:** Hytera's proposed instruction regarding when an employee's destruction of evidence may be imputed to his or her employers is wrong as a matter of law. *First*, destruction of evidence after litigation began is routinely held against the party that allowed that evidence to be destroyed. *See* footnote 20.

*Second*, an employer's liability for an employee's spoliation of documents during the course of their employment is no different than an employer's liability for any other act: it is subject to principles of *respondeat superior*, which the jury will be instructed on. *Am. Builders & Contractors Supply Co. v. Roofers Mart, Inc.*, No. 1:11-CV-19 CEJ, 2012 WL 2992627, at *6 (E.D. Mo. July 20, 2012); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F.Supp.2d 469, 509 (E.D.Va.2011); Nucor Corp. v. Bell, 251 F.R.D. 191, 196 (D.S.C. 2008); *Ackerson v. Rector & Visitors of Univ. of Virginia*, No. 3:17CV00011, 2018 WL 3097346, at *7 (W.D. Va. Apr. 11, 2018), report and recommendation adopted, No. 3:17-CV-00011, 2018 WL 3097334 (W.D. Va. June 22, 2018). None of the cases Hytera cites hold otherwise, and are inapposite. *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 399 (7th Cir. 1988) (case on punitive damages, not spoliation); *Pendowski v. Patent Scaffolding Co.*, 89 Ill.App.3d 484, 488-489 (1st Dist. 1980) (same); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (bad faith in context of awarding attorney's fees or sanctioning attorneys, not employees spoliating documents); *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 803 (N.D. Tex. 2011) (finding corporate defendant and individual defendant spoliated evidence); *Cenveo Corp. v. S. Graphic Sys.*, Inc., No. CIV. 08-5521 JRT/AJB, 2010 WL 3893680, at *11 (D. Minn. June 18, 2010) (imputing knowledge of corporation to officer and officer's knowledge to corporation), *report and recommendation adopted*, No. CIV. 08-5521 JRT/AJB, 2010 WL 3893709 (D. Minn. Sept. 30, 2010).

*Third*, contrary to Hytera's claim, employee's bad faith actions may be imputed to their employer under *respondeat superior*. *Toney v. St. Francis Hosp.*, 169 F. Supp. 2d 822, 831 (N.D. Ill. 2001) ("[T]his court finds that Mook acted within her scope of employment when she spoke to Webb and gave false statements concerning the employment history of Toney at the Hospital."); *Buechele v. St. Mary's Hosp. Decatur*, 509 N.E.2d 744, 746 (Ill. Ct. App. 1987) (holding that *respondeat superior* liability may attach if an employee criticizes a co-employee in bad faith in a report filed with a state agency).

*Fourth*, Hytera's proposed instruction is not the law on vicarious liability. *See* footnote 167.

evidence is not necessarily unfavorable to that person's employer.][32][33]

**Hytera's Response to Motorola's Proposal**

As an initial matter Hytera objects to the inclusion of an instruction regarding spoliation, loss, or destruction of evidence at all, since it is unwarranted by the evidence and particularly as Motorola has not sought a spoliation order from this Court. But if such an instruction is to be given, Motorola's proposed instruction suffers from several critical flaws, which must be addressed in any instruction. Namely, Motorola's proposed instruction is improperly partisan, given that alleged spoliation relates to both sides in the case. Motorola's proposed instruction also improperly conflates the actions and scienter of certain former Motorola employees with that of Hytera. Motorola's proposed instruction is also open-ended, inviting the jury to draw adverse inferences with no relationship to the evidence in question. Motorola's proposed instruction also suffers from other examples of imprecision. Each issue is addressed below.

First, some background will assist the Court. Presumably, Motorola's proposed instruction relates to the deletion of certain files on one former Motorolan's laptops (some of which appear to have been deleted in 2013 or 2014, and others appear to have been deleted in 2017 or 2018), and the loss of another former Motorolan's laptop in 2013. Motorola's argument that the proposal relates to some other alleged conduct *by Hytera*, Hytera disputes any such allegations, but that is a factual issue for the jury to resolve (to the extent supported by the evidence at all), and that highlights the importance of an instruction that clearly delineates

---

[32] **Hytera's Authority:** *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("bad faith is personal" and "may not automatically be visited on others", rather specific evidence of a supervisor's bad faith is needed); *Cenveo Corp. v. S. Graphic Sys.*, Inc., No. CIV. 08-5521 JRT/AJB, 2010 WL 3893680, at *11 (D. Minn. June 18, 2010) (imputing intent only where the individual acting in bad faith was an officer of defendant corporation), report and recommendation adopted, No. CIV. 08-5521 JRT/AJB, 2010 WL 3893709 (D. Minn. Sept. 30, 2010).

[33] **Motorola's Authority:** *See* footnote **31**.

between an employee and an employer. But Motorola's deletion of evidence relating to its document access logs is also relevant to the case. Indeed, the evidence will show that Motorola deleted evidence relating to its Compass logs even as it had mounting suspicions regarding Hytera's DMR product, and even as it examined those logs in support of separate investigations, as detailed in Hytera's pending motion for summary judgment. To the extent Motorola disputes that, that is an issue for the jury to resolve, but the charge to the jury must be tailored to prepare the jury to evaluate all issues concerning destruction of evidence.

Addressing the threshold issue, an instruction on loss or destruction of evidence requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence. But the charge should *not* be given in cases of disappearance while outside the party's control. Indeed, the authority that Motorola cites acknowledges that the spoliation inquiry is directed at the party responsible for the loss or destruction. The evidence at trial will not permit a reasonable jury to find that Hytera, as opposed to certain former Motorolans, performed an intentional act to lose or destroy evidence or that it did so with regard to evidence in its control, much less that it did so in bad faith. An instruction on spoliation presents considerable risk that the jury might improperly impute the actions and state of mind of individuals acting outside the scope of their employment to Hytera. It further presents considerable risk that the jury might draw inferences adverse to Hytera without tethering them to an appropriate inference adverse to the individual responsible for the destruction or loss.

For the same reason, Motorola's proposed instruction is objectionable to the extent it fails to distinguish between Hytera the corporation and certain individuals, and to the extent it fails to explain the particular circumstances in which an individual's conduct can be imputed to Hytera.

Given the complexity of the facts surrounding who was responsible for any loss,

22

destruction, or alteration, and the number of other issues relating to scienter and the fact that there is no direct evidence concerning the rationale for any such conduct, it is appropriate to instruct the jury in detail regarding what does and does not constitute bad faith as part of this instruction. Motorola's argument that its proposed instruction on vicarious liability addresses this issue is incorrect and inadequate.

Motorola's later proposed instruction on vicarious liability does not address the heightened burden that would be required to impute intent and bad faith to an employer. That proposed instruction also concerns *liability*, and offers no guidance regarding how conduct and scienter concerning subsidiary issues should or should not be imputed, which is a different standard. Motorola cites out-of-circuit and out-of-state authority to support its apparent position that respondeat superior applies to impute adverse inferences to an individual's employer. This is contrary to the authority that Hytera has cited with regard to its own proposed instruction, imposing a higher burden for imputation of scienter.

Motorola's instruction is overbroad in its construction of appropriate adverse inferences. Motorola proposes instructing that the juror can draw "any reasonable inference" about bad faith conduct. The model instruction, which both sides draw from, already delineates the scope of inferences available, namely by stating "You may assume that such evidence would have been unfavorable to" the party responsible for the destruction (the model instruction does not account for imputation issues). Motorola's open-ended proposal is inappropriate and likely to confuse the jury.

Motorola argument concerning a hypothetical company that "regularly intentionally destroys evidence in bad faith" is a straw man and it rests on circular logic: regular bad faith

destruction of evidence is *not* the ordinary course of business.

Motorola's citation of *Brown & Williamson* is also inapposite. For one, Hytera's instructions are not in conflict with that decision. But that decision also did not consider the propriety of drawing adverse inferences against the company based on the conduct of an employee. Rather, the issue there was whether the conduct in question constituted bad faith. Accordingly, that decision (and Motorola's proposed instruction) fails to address all of the nuances involved in this case, where the alleged loss and destruction occurred at various time periods.

Motorola's focus on loss or destruction of evidence subject to a litigation hold is indicative of its intent to conflate the complex issues surrounding alleged spoliation. That is, the basis for Motorola's proposal of this instruction appears to relate to numerous materials, at least some of which appear to have been lost or deleted long before this litigation began. Without clear instructions regarding what constitutes intentional and bad faith destruction and what does not, the jury is likely to be confused.

Hytera further objects to the extent Motorola's proposed instruction is directed solely at alleged conduct by Hytera, as opposed to instructing on Motorola's conduct as well. The events in question in this case occurred more than ten years ago, and in the intervening years, Motorola has also lost, destroyed, and altered evidence relating to this case. A neutral instruction is therefore appropriate.

Hytera also objects to Motorola's proposed instruction to the extent it assumes that the record will conclusively show the disposition of the evidence in question, by stating "[y]ou have heard evidence that computers and files were lost, destroyed, and/or altered . . . ." To the extent this instruction is offered at all, it should be for the jury to determine the disposition of the

24

evidence in question.

Hytera also objects to Motorola's proposed title to the extent it describes the instruction as "spoliation." That word is not actually used in the instruction, and so it is unnecessary and likely to lead to confusion.

**Instruction No. 17 (Disputed) – Fifth Amendment[34]**

*Hytera objects to the inclusion of an instruction on Fifth Amendment adverse inferences.[35] The following is proposed only if such an instruction is to be offered at all.*

During the depositions of G.S. Kok, Y.T. Kok, and Samuel Chia which were presented at our trial, they invoked their right not to incriminate themselves under the Fifth Amendment in our Bill of Rights. This was their right to do so. [**Motorola's proposal**: You may, but you need not, infer by such refusal that the answers would have been adverse to Hytera's interests.]

[**Hytera's proposal**: Nevertheless, you may, but are not required to find that the questions called for answers that would have incriminated them and that these answers would have been adverse to their respective positions,][36][37] to the extent that inference is justified by corroborating

---

[34] **Motorola's Authority**: In allowing deposition testimony during which the Fifth Amendment was invoked, the Court stated that "with respect to taking the Fifth Amendment in a civil cases, negative inferences can be drawn" and that during closing arguments, counsel could "advise the jury or argue the reasonable inference to draw from the exercising of that constitutional right. Trial Tr. 562:18–563:16. Motorola proposes this instruction consistent with the Court's ruling. *See Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 276 (3d Cir. 1986) (affirming instruction that jury could infer employee's invocation of Fifth Amendment was adverse to employer); *F.D.I.C. v. Fid. & Deposit Co.*, 45 F.3d 969, 979 (5th Cir. 1995) (similar). Motorola's proposal specifies that the jury may infer that the adverse inference is specific to the answer. The *LiButti* factors confirm that it is appropriate to attribute G.S. Kok's, Y.T. Kok's, and Sam Chia's invocations of the Fifth Amendment to Hytera. *First*, Messrs. Kok, Kok, and Chia were employed by Hytera, and Hytera was paying for their criminal attorney at the time of their deposition, meaning it is "less likely the non-party witness[es] would … render testimony in order to damages the relationship." *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997); Dkt. 766, Ex. A at 8:3–9; Dkt. 766, Ex. B at 186:12–16; Chia Dep. Tr. 230:13–19; Dkt. 690-1 ¶¶ 14–16; Dkt. 682 at 10–15. Messrs. Kok, Kok, and Chia also received substantial compensation once they were let go from Hytera several months after their deposition, further evidencing the close relationship between Hytera and these individuals. DTX-5037. *Second*, Hytera exercised a high degree of control at the time of the depositions because they were employed by Hytera. *LiButti*, 107 F.3d at 123. *Third*, Messers. Kok, Kok, and Chia's assertion of privilege advanced their interest and Hytera's, but shielding form discovery facts regarding their theft and Hytera's involvement. *LiButti*, 107 F.3d at 123. *Fourth*, Messers. Kok, Kok, and Chia are central figures in this litigation, as they are the individuals who stole Motorola's trade secrets for Hytera. *LiButti*, 107 F.3d at 123–24; *see also Cerro Gord Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481–82 (8th Cir. 1987) (similarly applying factors).

[35] **Hytera's Authority**: *See LiButti v. United States*, 107 F.3d 110, 122 (2d Cir. 1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000).

[36] **Motorola's Authority**: For the reasons explained in footnote 34, the adverse inference should be against Hytera, not merely against the individuals invoking.

[37] **Hytera's authority**: *Sebastian v. City of Chicago*, 05 C 2077, 2008 WL 2875255, at *34 (N.D. Ill. July 24, 2008).

evidence.[38]

[**Hytera's proposal:** That however, would not necessarily be the same as being adverse to the position of Motorola or Hytera.  Before finding that a particular answer would have also been adverse to another party in the case, you should consider all of the other evidence and circumstances.  You are not required to find that any answer to a particular question by one of those witnesses would have been adverse to that witness or to any party in this case.][3940]

[**Hytera's proposal:** You are to consider each assertion of the Fifth Amendment privilege, and what inferences, if any, to draw from it, on a question by question basis.][41]

### Hytera's Response to Motorola's Proposal

Motorola's proposed instruction is inappropriate to the extent it is open-ended and inappropriately conflates the individuals invoking the Fifth Amendment privileges with their employer.  Motorola similarly inappropriately conflates adversity against the witness with adversity against their employer.  Given the complexity of issues surrounding the Fifth Amendment privilege in this case, a more precise instruction is appropriate.

As with the prior instruction, Motorola again proposes an open-ended instruction—"You

---

[38]    **Joint authority**: *Sebastian v. City of Chicago*, 05 C 2077, 2008 WL 2875255, at *34 (N.D. Ill. July 24, 2008).

[39]    **Hytera's Authority:** Penultimate Jury Instructions on Trade Secret Misappropriation, *Waymo LLC v. Uber Tech. Inc.*, No. 17-00939 (N.D. Cal. Jan. 3, 2018) ECF No. 2449-1.

[40]    **Motorola's Response**: Motorola objects to Hytera's proposal because it suggests that Messers. Kok, Kok, and Chia invocation of the Fifth Amendment would be adverse to Motorola, the victim of the theft in this case.  Hytera cites no support for making such an unsupported suggestion to the jury.  As explained in footnote 34, the adverse inference from their invocation of the Fifth Amendment should be against Hytera alone.  In addition, Hytera's proposed language is repetitive of the language earlier in the instruction—including language Hytera agrees with—regarding the requirements for finding an adverse inference.

[41]    **Motorola's Response**: Motorola objects to this instruction because it is repetitive. The jury will already be instructed that they may infer that answers to the questions may have been adverse to Hytera, which necessarily requires the jury to consider the questions they were asked.

may . . . draw adverse inference"—permitting the jury to run wild with regard to the scope of adverse inferences it might draw, rather than tethering the inferences to the question prompting invocation of the privilege or to evidence that indicates that such an inference is warranted. This unrestricted instruction is imprecise, and it is inconsistent with the law. Indeed, Motorola's proposal is even inconsistent with its own cited authority. For example, the instruction offered in *Martinez*, which Motorola cites as its primary authority, was careful to explain the scope of the inference that is appropriate to draw, namely by explaining "you may infer that [the witness invoking the privilege] had information that would have incriminated her." The Court took similar care in *Empress Casino*. In *Martinez*, the Court also appropriately distinguished between the individual invoking the privilege and other persons involved in the case. Motorola's proposed instruction offers no guidance to the jury with regard to the nature of the inferences that may be appropriate to draw. Such an open-ended instruction risks directing the jury to draw inferences that are entirely unsupported by the evidence and untethered to the question that drew the Fifth Amendment invocation.

Motorola's proposed instruction also improperly assumes (and directs the jury to assume) that a witness's invocations of the Fifth Amendment privilege must have related to information that would have been adverse *to Hytera*. Not so. As discussed in greater detail in Hytera's motion in limine concerning the Fifth Amendment invocations, a witness's response to certain questions could have *exculpated* Hytera or otherwise adversely impacted Motorola's case, even if the responses would have accepted premises that *inculpated* the respective witness. For example, the question "Did Hytera assist you in stealing trade secrets?" would have inculpated the witness regardless of the response, though a "no" response would have exculpated Hytera. The jury must be directed to carefully consider each question and the implications of a response

28

that is unfavorable *to the witness* as opposed to other parties.

To that end, the jury should be entitled to draw inferences against *either* party, to the extent warranted by the question and the surrounding evidence.

Motorola offers no authority to refute the requirement that an adverse inference be supported by corroborating evidence. That requirement makes sense, the case law surrounding whether an adverse inference instruction is appropriate generally concerns the trustworthiness of the inference. Absent corroborating evidence, there is no basis for evaluating that trustworthiness.

Indeed, the Indiana decision cited by this Court in *Sebastian* (Hytera's cited authority) in turn cites Supreme Court and Seventh Circuit authority directly supporting Hytera's position. *See Kontos v. Kontos,* 968 F. Supp. 400, 408 (S.D. Ind. 1997) (citing, inter alia, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), and *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("an analysis of [probative evidence triggering the Fifth Amendment invocation] is nonetheless required. Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden.")). The principles discussed in those decisions also support directing the jury to consider drawing adverse inferences on a question-by-question basis, particularly where Motorola intends to proffer a bevy of such invocations that might otherwise confuse the jury.

Instruction No. 18 (Disputed) – *Respondeat Superior*

## Proposal if the Court finds *Respondeat Superior Applies*:[42][43]

This is an appropriate time to discuss the liability of corporations.  Corporations can act

only through their employees.  A corporation can be liable, that is, responsible, for its employees'

---

[42] **Hytera's Authority**: Hytera joins in this proposal only if the Court holds *respondeat superior* applies to Motorola's trade secret claims.

[43]  **Motorola's Authority**: It is appropriate to instruct the jury on *respondeat superior*, and the proposed instruction is consistent with that doctrine.  *See Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2019 WL 6467323, at *8–9 (N.D. Ill. Dec. 2, 2019) (denying motion to dismiss trade-secret misappropriation claims as to corporate defendants because plaintiff pleaded sufficient fact for corporate defendants to be liable under *respondeat superior*).  Hytera argues that *respondeat superior* does not apply to the ITSA based on Indiana courts' interpretation of the Indiana Trade Secret Act.  Indiana, however, is "[t]he sole UTSA jurisdiction that does not allow for vicarious liability" and "has different statutory language than … other UTSA jurisdictions."  *Deluxe Fin. Servs., LLC v. Shaw,* No. CV 16-3065, 2017 WL 3327570, at *5 (D. Minn. Aug. 3, 2017).  In deciding that *respondeat superior* did not apply to claims brought under the Indiana Trade Secret Act, the Indiana Supreme Court reasoned that the Indiana Trade Secret Act's "statement about displacement of conflicting law is somewhat stronger than the one contained in the uniform act.  *Infinity Prod., Inc. v. Quandt*, 810 N.E.2d 1028, 1033–34 (Ind. 2004).  By contrast, instead of "displac[ing] conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret," other states trade secret acts' displace only "conflicting tort, restitutionary, and other law … providing *civil remedies* for misappropriation of a trade secret."  765 Ill. Comp. Stat. 1065/8 (emphasis added).  Thus, the provision in ITSA and other states "is not a barrier for vicarious liability because vicarious liability does not fit within any of those enumerated forms of conflicting types of law."  *See Deluxe Fin. Servs., LLC v. Shaw*, No. CV 16-3065, 2017 WL 3327570, at *5 (D. Minn. Aug. 3, 2017).  Indeed, every other court interpreting a trade-secret act that includes a pre-emption provision like the pre-emption provision in ITSA has held that *respondeat superior* does apply.  *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 750-51 (E.D. Va. 2001) (holding the Virginia UTSA does not preempt vicarious liability because "*[r]espondeat superior* is not an independent conflicting tort, civil claim or remedy. Rather, it is a legal precept that presupposes the existence of an underlying claim"); *Thola v. Henschell*, 140 Wash. App. 70, 80, 164 P.3d 524, 529 (2007) ("concluding that vicarious liability is a general theory of civil liability that is not based on trade secret misappropriation and, therefore, the UTSA does not preempt it."); *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV1307563, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (same under CUTSA); *Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 486 (M.D. Pa. 2018) (same under PUTSA).

*Respondeat superior* applies equally to the DTSA.  "The common law rule is that an employer is liable for intentional torts of its employees committed in furtherance of their employment[.]"  *Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990) (citation omitted).  "The rule usually is carried over to statutory torts, because statutes creating torts rarely bother to set forth all the ancillary doctrines—governing such issues as causation, immunity, or, here, derivative liability—that are necessary to compose a complete regime of tort liability."  *Id.* That is the case with the DTSA, which expressly states that it "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret."  18 U.S.C. 1838; *see Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) (finding employer could be held liable for an employee's trade secret misappropriation under the DTSA); *SolarCity Corp. v. Pure Solar Co.*, No. CV1601814, 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016) (same).

conduct whenever the employee is acting within the scope of his or her employment. An employee is acting within the scope of his or her employment if:

- The employee's conduct is of a kind he or she is employed to perform or reasonably could be said to have been contemplated as part of his or her employment; and

- The employee's conduct occurs substantially within the authorized time and space limits of his or her employment; and

- The employee's conduct is motivated, at least in part, by a purpose to serve the employer.[44]

    [**Motorola's Proposal**:  Conduct is within the scope of employment when actuated, at least in part, by a purpose to serve the employer.[45][46]] A corporation knows what its employees know about subjects that are within the scope of the employees' duties and responsibilities.[47]

---

[44] **Joint Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

[45] **Motorola's Authority:** 3C Fed. Jury Prac. & Instr. § 178:22 (6th ed.) ("Even though an act is forbidden by the law, it may still be within the scope of employment so as to impose liability on the corporation."); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743–44 (1998) ("An intentional tort is within the scope of employment when *744 actuated, at least in part, by a purpose to serve the employer."); *Dana Container, Inc. v. Sec'y of Labor*, No. 16-1087, 2017 WL 430079, at *2 (7th Cir. Feb. 1, 2017) ("Conduct is within the scope of employment when [it is] actuated, at least in part, by a purpose to serve the [employer], even if it is forbidden by the employer.") (internal quotations and citations omitted).  Hytera offers no explanation for why this statement of the law is "unnecessary, superfluous, [or] prejudicial."  Indeed, this instruction is necessary because Hytera has repeatedly suggested that the employees who stole Motorola's trade secrets were acting outside the scope of their employment.

[46] **Hytera's Response:** Motorola's proposed instruction is unnecessary, superfluous, and prejudicial.  To the extent vicarious liability applies at all, this rule is inherent: if illegal acts could *not* be imputed, then the question of imputing liability is irrelevant.  Motorola has not identified any actual jury instruction incorporating this statement.

[47] **Joint Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

[**Hytera's Proposal:** A corporation does not know information that an employee knows, if the employee gained that knowledge prior to his employment or outside the scope of his duties.[48] [49]]

A different rule applies with regard to punitive damages.

### Hytera's Proposal If the Court Holds *Respondeat Superior* Inapplicable[50]:

You may not find that Hytera is liable for trade secret misappropriation merely because you find that one of its employees committed trade secret misappropriation. Rather, to find for Motorola on its trade secret claims, you must find that Motorola proved every element of its

---

[48] **Hytera's Authority:** *Penn Mut. Life Ins., Co. v. Rotter*, No. 17 C 3562, 2018 WL 1453554, at *9 (N.D. Ill. Mar. 23, 2018) (dismissing claims where plaintiff "ha[d] not pleaded any facts suggesting that the individual Defendants somehow learned of the non-solicitation clauses in their contracts with their old employer within the course and scope of their employment by their new one"); *Bryant v. Livigni*, 250 Ill.App.3d 303, 308 (1993); *Installation Servs., Inc. v. Elecs. Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, at *3 (N.D. Ill. Nov. 23, 2005); *Evanston Bank v. Conticommodity Servs., Inc.*, 623 F. Supp. 1014, 1034 (N.D. Ill. 1985) ("An agent's knowledge is generally imputed to his principal if it is received while he is acting within the scope of his agency and concerns a matter within the scope of his authority."); *Campen v. Exec. House Hotel, Inc.*, 105 Ill. App. 3d 576, 586 (1982) ("Thus, knowledge which a corporate agent receives while acting within the scope of his or her agency is imputed to the corporation if the knowledge concerns a matter within the scope of the agent's authority.").

[49] **Motorola's Response:** Hytera's proposal will lead to juror confusion and allow Hytera to improperly argue that it is not liable for its misappropriation of Motorola's trade secrets. Specifically, by telling the jury that Hytera does not know information that an employee gained "prior to his employment," the jury may think that Hytera is not liable at all because G.S. Kok, Y.T. Kok, and Sam Chia knew of Motorola's trade secrets before they left Motorola. Motorola has presented significant evidence that the misappropriation was within the scope of G.S. Kok's, Y.T. Kok's, and Sam Chia's employment at Hytera. This is not the law, and none of Hytera's cases saw otherwise.

[50] **Motorola's Response**: Motorola objects to Hytera's proposed instruction because it is wrong as a matter of law. *Respondeat superior*, not vicarious liability, applies to employer liability in cases of trade secret misappropriation, as further explained in footnote 43. And even if the court disagrees, Hytera's proposed instruction does not even correctly recite the elements for vicarious liability and misstates the law that it does cite. *See Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 515 (7th Cir. 1997). For example, Hytera's instruction states that "an employee's knowledge may only be imputed if the employee had a duty to speak to his employer about that specific item of knowledge." As an initial matter, this relates to a principal-agent relationship, not an employer-employee relationship. *Installation Servs., Inc. v. Elecs. Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, at *3 (N.D. Ill. Nov. 23, 2005). Moreover, Hytera's proposed instruction omits that "[w]here a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation." *United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida Cty., Wis.*, 965 F.2d 311, 316 (7th Cir. 1992). Motorola objects to the last sentence in Hytera's proposal as explained in footnote 49.

trade secret claims as to each Hytera defendant.[51]

The knowledge of an individual cannot be imputed to Hytera merely because that individual went to work for Hytera.[52]  Rather, the knowledge of an employee may only be imputed to Hytera if the employee had a duty to speak to his employer about that specific item of knowledge.[53]  Additionally, an employee's knowledge can only be imputed to his employer if the employee gained that knowledge within the scope of his employment and if the knowledge was acquired in the scope of his duties.[54]

---

[51] **Hytera's Authority**: *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 870 (N.D. Ind. 2007); *Infinity Prod., Inc. v. Quandt*, 810 N.E.2d 1028, 1034 (Ind. 2004); 765 ILCS 1065/8(a) (Subject to exceptions not relevant here, "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.").  If the Court holds, consistent with Indiana courts, that the statutory knowledge elements displaced common law respondeat superior liability, then Motorola cannot satisfy that element with an employee's knowledge gained prior to or outside of the employment relationship.  Regardless of how this issue plays out, the numerosity and complexity of issues surrounding knowledge, imputation, and intent demonstrate that care must be taken to explain how the jury should approach corporate scienter as to each issue that raises it.  Motorola's proposed instruction cannot function as a panacea.

[52] **Hytera's Authority**: *Forest Labs., Inc. v. Pillsbury Co.*, 452 F.2d 621, 626 (7th Cir. 1971).

[53] **Hytera's Authority**: *Installation Servs., Inc. v. Elecs. Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, at *3 (N.D. Ill. Nov. 23, 2005).

[54] **Hytera's Authority:** *Bryant v. Livigni*, 250 Ill.App.3d 303, 308 (1993).

**Instruction No. 19 (Revised) – Burden of Proof**[55]

When I say a particular party must prove something by "a preponderance of the evidence," [**Hytera's Proposal**: or when I use the expression if you find" or "if you decide,"][56] this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

---

[55] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.27, 1.28.

[56] **Motorola's Response**: Motorola proposes deleting this phrase because the jury must consider two evidentiary burdens.

34

**Instruction No. 20 (Disputed) – Misappropriation of Trade Secrets**

Now I will instruct you on Motorola's claim for trade secret misappropriation

[**Motorola's Proposal**: under Illinois law and federal law.

Under Illinois law,][57] in order to establish a claim for misappropriation of trade secrets,

Motorola has the burden of proving the following propositions by a preponderance of the

evidence:

[**Motorola's Proposal:** (1) That Motorola owned the information at issue;

(2) That the information at issue is a trade secret;

(3) That the information at issue was misappropriated by Hytera in Illinois; and

(4) That the information was used by Hytera in its business.][58] [59]

[**Hytera's Proposal:**

(1) That the information at issue, as defined by Motorola, is a valid trade secret;

(2) That Hytera misappropriated the information at issue that Motorola contends is a

trade secret; and

---

[57]  **Motorola's Authority**: The jury should be instructed on the requirements for trade secret misappropriation under Illinois and federal law because Motorola has claims under both.

[58]  **Motorola's Authority:** Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020; Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp., et. al,*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) ("To prevail on a claim for misappropriation of a trade secret under the Act, the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business.").  Motorola preserves its argument that the ITSA rebuts the presumption against extraterritorially.

[59]  **Hytera's Response:**  Given the numerosity and complexity of the alleged trade secrets, as well as Motorola's ever-changing definition of those trade secrets, there is good reason to explain these elements to the jury in greater detail and with reference to the particular information that Motorola contends constitutes its trade secrets. Hytera's proposal hews closer to Motorola's cited authority, but even so, Motorola's arguments generally presume that the trade secret identified is clearly defined.  Here, by contrast, Motorola's definitions have shifted numerous times, and its experts and corporate representatives often change their own understandings of what constitutes a given trade secret in order to suit the evidence in front of them.  The jury should be instructed to consider misappropriation only as to the claims that Motorola has proffered and against which Hytera has prepared its defense.

(3) That Hytera used the information at issue that Motorola contends is a trade secret in its business.[60] [61]]

[**Motorola's Proposal:** Under federal law, in order to establish a claim for misappropriation of trade secrets, Motorola has the burden of proving the following propositions by a preponderance of the evidence:

(1) That Motorola owned the information at issue;

(2) That the information at issue is a trade secret;

(3) That the information at issue was misappropriated by Hytera; and

(4) That the trade secret is related to a product used in, or intended for us in, interstate or foreign commerce.][62]

[**Hytera's Proposal:** If you find from your consideration of all the evidence that each of these propositions has been proved for a defendant, then your verdict should be for Motorola on this claim as to that defendant. On the other hand, if you find that any of these propositions has

---

[60] **Hytera's Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp., et. al,*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) ("To prevail on a claim for misappropriation of a trade secret under the Act, the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business."). For explanation of and justification for the modifications to these statements of the law, s*ee* Footnote 57.

[61] **Motorola's Response:** Hytera's proposal does not track the authority it cites. Rather, Hytera's authority is consistent with Motorola's proposal. *See* Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp., et. al,*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) ("To prevail on a claim for misappropriation of a trade secret under the Act, the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business."). Hytera attempts to inject its case themes into the instructions, which is improper and results in duplicative instructions. For example the first prong of the instruction tells the jury that the information must be a trade secret, yet in Hytera's proposal, the third prong reincorporates the first instruction to state that Hytera must be using the information Motorola contends is a trade secret. In addition, Hytera adds a requirement that the trade secret be "valid." This term appears nowhere else in the jury instructions and will lead to juror confusion about whether there is some additional requirement that must be met.

[62] **Motorola's Authority:** 18 U.S.C. § 1836(b)(1)

not been proved for a defendant, your verdict should be for that defendant on this claim.[63] [64]]

I will explain what these terms and several related terms mean.[65]

**[Hytera's Proposal:** But first, I will explain Hytera's statute of limitations defense to Motorola's trade secret claims. [66] [67]]

---

[63] **Hytera's Authority:** As Motorola indicates, this proposed instruction clarifies how the jury should handle the question of liability concerning the separate Hytera entities each named as defendants. To that end, Hytera reserves the right to amend its proposal if the Court does not offer instructions regarding the individual defendants.

[64] **Motorola's Response:** Each Hytera defendant is jointly and severally liable to the other for the misappropriation. *Colyer v. City of Chicago*, No. 12 C 04855, 2014 WL 8796112, at *6 (N.D. Ill. Dec. 8, 2014) ("Under Illinois law, a person can be held jointly and severally liable for another's tortious conduct if he (a) commits a tortious act in concert with the other person or pursuant to a common design, (b) knows that the other person's conduct constitutes a breach of duty and gives that person substantial assistance or encouragement, or (c) independently breaches a duty to the injured person and gives substantial assistance to the other person in accomplishing a tortious result."); *Woods v. Cole*, 693 N.E.2d 333, 337 (Ill. 1998); *In re Emerald Casino, Inc.*, 538 B.R. 417, 427 (N.D. Ill. 2015) (explaining that under Illinois law, "in a tort case, where multiple defendants contribute to a single indivisible harm, courts in effect merge the joint liability and causation questions."); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1217–18 (N.D. Cal. 2012) (explaining that "rule allowing joint and several liability in trade secret misappropriation likely survived the adoption of" California's UTSA, which was "consistent with commentators' opinions on the subject.") *reconsidered on other grounds*, 2012 WL 12925716 (N.D. Cal. July 8, 2012); *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) (explaining that under federal common law principles "[i]t is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury.").

[65] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.2.1.

[66] **Hytera's Authority:** The statute of limitations issue is a threshold issue for the jury and should be explained at the outset.

[67] **Motorola's Response:** Motorola contends that it would be in confusing to include instructions relating to Hytera's affirmative defenses before the instructions relating to Motorola's claims.

**Instruction No. 21 (Agreed) – Trade Secret Definition Generally**

A trade secret is information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that (l) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.[68]

I will explain what these terms mean.

---

[68] **Joint Authority:** Jury Instructions, *Miller UK Ltd. et al. v. Caterpillar, Inc.*, No. 10-cv-3770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020; 18 U.S.C. § 1839(3).

**Instruction No. 22 (Disputed) - Specific Elements of the Definition of a Trade Secret**

In determining whether Motorola has proven [**Motorola's Proposal:** by a preponderance of the evidence that it possessed one or more specific, identifiable trade secrets] [**Hytera's Proposal**: that certain information is the subject of reasonable confidentiality measures and sufficiently secret to confer independent economic value,][69] you may consider the following factors:

1. The extent to which the information is known outside of Motorola's business;

2. The extent to which the information is known by employees and others involved in Motorola's business;

3. The extent of measures taken by Motorola to guard the secrecy of the information, including the existence or absence of an express agreement restricting disclosure [**Hytera's Proposal**: and the extent to which the circumstances of any disclosure indicated that further disclosure without Motorola's consent was prohibited];[7071]

4. The value of the information to Motorola's business and to its competitors;

5. The amount of time, effort, and money expended by Motorola in developing the information; and

---

[69] **Motorola's Authority**: Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285. Hytera's proposal unnecessarily repeats the trade secret definition the jury was just provided.

[70] **Hytera's Authority:** *Machen, Inc. v. Aircraft Design, Inc.*, 65 Wash. App. 319, 329 (1992), overruled on other grounds by Waterjet Tech., Inc. v. Flow Int'l Corp., 140 Wash. 2d 313 (2000); *J. Irizarry y Puente v. President & Fellows of Harvard Coll.*, 248 F.2d 799, 802 (1st Cir. 1957).

[71] **Motorola's Response**: Motorola objects to Htyera's proposal as confusing and contrary to the law by suggesting that because Hytera employees decided to disseminate at Hytera the material that they stole from Motorola in violation of their agreements with Motorola, this somehow impacts the secrecy or confidentiality of Motorola's information. That is not the law, and none of Hytera's cited authorities say otherwise. In addition, Hytera's proposal is not in the model instructions.

6.  The ease or difficulty with which the information could be properly acquired or duplicated by others.[72]

[**Hytera's Proposal**: The key to secrecy is the ease with which information can be developed through proper means.  If the information can be readily duplicated without involving considerable time, effort, or expense, then it is not secret and, it follows, not a trade secret.][7374]

[**Hytera's Proposal:** In articulating a trade secret it is not enough for Motorola to point to broad areas of technology and assert that something there must have been secret.[75]  Instead, it is Motorola's burden to identify concrete information that it contends to constitute its trade secrets.][7677]

[**Hytera's Proposal:** The phrase "sufficiently secret to derive independent economic value"] [**Motorola's Proposal**: To derive independent economic value from not being generally known][78] means that the information gives a business a competitive advantage over other

---

[72]  **Hytera's Authority:** *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003) (interpreting the common law factors as "instructive guidelines for ascertaining whether a trade secret exists under the Act"); *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074–75 (7th Cir.1992).  These factors will assist the jury in getting a grasp on the elusive issue of what constitutes a trade secret.  Indeed, Motorola acknowledges the issue is a difficult one to comprehend.

[73]  **Hytera's Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

[74]  **Motorola's Response**: Hytera's proposal repeats some of the redundant of the factors just recited and suggests that those factors are more important than others.  Motorola objects to including an internally inconsistent instruction.

[75]  **Hytera's Authority:** *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992).

[76]  **Hytera's Authority:** *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 710 (7th Cir. 2006); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992); *Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 853 (N.D. Ill. 2017).

[77]  **Motorola's Response**: Motorola's proposal at the beginning of this instruction makes clear that the identifies factors are intended to assist the jury in identifying whether Motorola "possessed one or more specific, identifiable trade secrets," which renders Hytera's proposal redundant and unnecessary.

[78]  **Motorola's Authority**: Motorola proposes this phrasing so the instruction is consistent for the ITSA and DTSA. 18 U.S.C. § 1839(3); 765 ILCS 1065/2(d).

businesses that do not know the information.[79] [**Hytera's proposal:** In order to be "sufficiently secret"][80] the information must not be generally known or understood by others in the industry. Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret. But information that requires considerable time, effort, and expense to duplicate, even if it is derived from public sources, can still qualify as a trade secret.[81] [**Motorola's proposal**: Absolute secrecy, in the sense that no one else in the world possess the information, is not required.][82]

As I explained, to qualify as a trade secret, a certain piece of information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. There are no absolute requirements that define what measures are "reasonable" in a given situation.[83] [**Motorola's Proposal**: "Reasonable efforts" to maintain the secrecy or confidentiality of information does not require "perfect" efforts. What is reasonable depends on all of the surrounding circumstances.][84]

(i)       Hytera's Response to Motorola's Proposal<b>:</b>

Hytera objects to Motorola's proposed instruction to the extent it fails to account for

---

[79] **Hytera's Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

[80] **Motorola's Response**: Motorola proposes deleting this language as redundant and to avoid confusion between the ITSA and DTSA.

[81] **Joint Authority:** Jury Instructions, Plas-Tool Co. v. A-1 Tool Corp., et. al,, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

[82] **Motorola's Authority**: Jury Instructions, Plas-Tool Co. v. A-1 Tool Corp., et. al,, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

[83] **Joint Authority:** Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

[84] **Motorola's Authority**: Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, et. al,, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

Motorola's burden to identify concrete trade secrets. Motorola's failure to clearly identify its trade secrets has been a hotly contested issue in this case, and it is appropriate to instruct the jury regarding that burden.

Hytera further objects to the phrase "at the very least . . ." which is argumentative and offers no clarity to the jury.

Moreover, Hytera objects to Motorola's proposed instruction to the extent it fails to address the common law factors, which are frequently recited in case law as well as jury instructions offered within the Seventh Circuit. Indeed, Hytera's recitation of the common law factors closely mirrors the *Playwood* instructions that Motorola cites as authority for many of its other proposed instructions. *See* Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

**Instruction No. 23 (Disputed) – Combination Trade Secrets**

[**Hytera's Proposal**: Motorola has stipulated that "with respect to each alleged trade secret that describes multiple components or features, each such trade secret is drawn to the combination of all such components and not to any individual component in isolation."][85][86]

A trade secret may exist in a combination of [**Motorola's Proposal**: one or more][87] publicly known elements, though such a combination does not itself constitute a trade secret unless it transforms the individual features into something that is itself secret, i.e., not generally known or easily duplicated by the industry.[88] A combination of known elements also does not constitute a trade secret if the inclusion of the elements in a system or the specific way to combine those elements would be obvious to anyone in the industry, or easily duplicated based on publicly available knowledge.[89]

---

[85] **Hytera's Authority:** Joint Motion to Modify Discovery Schedule and Stipulations (ECF Doc. 520) at ¶ 5(c). A recitation of this stipulation is helpful to the jury, particularly given the complexity and vagueness of Motorola's alleged trade secrets.

[86] **Motorola's Response**: Motorola objects to reading an excerpt portion of the parties "joint motion to modify discovery schedule and stipulation" as part of the jury instructions. That stipulation also states "[n]othing in this agreement is intended as a waiver of rights by either side concerning the merits of the case or any discovery disputes going forward. It is solely a compromise for the purpose of resolving ongoing discovery disputes about Motorola's disclosures of its trade secrets and the preparedness of its Rule 30(b)(6) witnesses on trade secret topics. Dkt. 520 ¶ 8. Hytera's attempt to use that joint motion in the jury instructions is contrary to the agreement's plain terms and would confuse the jury.

[87] **Motorola's Response**: Motorola objects to Hytera's instruction as incomplete and likely to cause confusion. In this case, none of Motorola's trade secrets are based on the combination of all publicly known elements so there is no reason to suggest otherwise to the jury. Thus, Motorola's instruction more closely tracks the factual posture of this case.

[88] **Hytera's Authority:** *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074–75 (7th Cir.1992); *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 542 F. Supp. 2d 849, 862–63 (N.D. Ill. 2008); Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020. This instruction offers additional clarity beyond either party's proposed "sufficiently secret" instruction. Absent an explanation about combination trade secrets, the jury is likely to be confused about how to consider trade secrets that are largely described by public materials or obvious implementations from that information.

[89] **Hytera's Authority:** *Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074–75 (7th Cir. 1992). Contrary to Motorola, this language accounts for the possibility of a trade secret relating to "interrelatedness" by addressing "the specific way to combine" the public elements.

**Instruction No. 24 (Disputed) – Definition of Misappropriation[90]**

If you find that Motorola has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether that trade secret information was misappropriated by Hytera.

To prove that a misappropriation occurred, Motorola must prove by a preponderance of the evidence that:

1.  Hytera acquired Motorola's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or

2.  Hytera disclosed or used Motorola's trade secret without Motorola's express or implied consent, and Hytera:

    (i)    Used improper means to acquire knowledge of the trade secret; or

    (ii)    At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:

        1.    Derived from or through a person who used improper means to acquire it; or

        2.    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        3.    Derived from or through a person who owed a duty to Motorola to maintain its secrecy or limit its use; or

    (iii)    Before a material change of position, knew or had reason to to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

When the word "knowingly" is used in these instructions, it means that a person realized what he or she was doing and was aware of the conduct, and did not act through ignorance,

---

[90] **Joint Authority:** Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

mistake, or accident. Knowledge may be proved by a person's conduct, and by all the facts and circumstances surrounding the case.[91] [**Hytera's Proposal**: Hytera can only be liable for misappropriation if it knew or had reason to know that information it was using had originated with Motorola in breach of some confidence.[92] [93]]

[**HYTERA'S PROPOSAL:** In determining whether Hytera's conduct constituted misappropriation of a trade secret that describes multiple components or features, you must determine whether Hytera acquired or had access to each of the components alleged to constitute the trade secret and information concerning how to combine those components. That is, Motorola cannot prove misappropriation of a multi-component trade secret based only on evidence that Hytera used any individual component of it in isolation.[94] [95]]

---

[91] **Joint Authority**: Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

[92] **Hytera's Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196. This instruction concerns "knowledge" which is an element of multiple prongs of the test for misappropriation. Motorola offers no explanation of what "knowledge" means in this context, and instead points to an instruction concerning who information was "derived from," which concerns only a sub-prong of a sub-prong of misappropriation. Motorola is incorrect in its suggestion that the "derived from" language adequately explains knowledge.

[93] **Motorola's Response:** Hytera's proposed instruction is an incorrect statement of the law, including as the jury is being instructed. The jury will be instructed on both *respondeat superior* and "improper means," which includes several acts beyond breach of a duty of confidentiality. Hytera's attempt to limit its liability under a single type of improper means is improper. Nor does Hytera's proposal appear in the *Playwood* instructions on which Htyera relies.

[94] **Hytera's Authority:** *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 110 (8th Cir. 1997) (affirming summary judgment where an expert opined that an alleged trade secret involved five elements, but the defendant "had only received four of the general elements at the conceptual level without information as to how the concepts were to be combined"); Joint Motion to Modify Discovery Schedule and Stipulations (ECF Doc. 520) at ¶ 5(c). Motorola's stipulation has made crystal clear that its multi-component trade secrets are *not* individual components in isolation. Where Hytera is shown only to have used a single component of a multi-component trade secret in isolation, then Motorola cannot prove use of such a multi-component trade secret. Were that not the case, a party could evade its obligation to define a concrete trade secret (to be clear, Hytera maintains that Motorola still has not met that burden) and proving misappropriation of *that* trade secret. Motorola must be held to that burden, and the jury should be instructed accordingly.

[95] **Motorola's Response:** This is one of three places Hytera has attempted to inject this concept in the instructions, and the appropriate place to address this is in the instruction on modifications and improvements. Moreover, Hytera's proposal suggests that it must use every component of a trade secret to be liable. This is inconsistent

with its own cited authority. *See Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996) (quoting and affirming jury instruction that read, "In order for you to find that defendants misappropriated one of Mangren's trade secrets, ***you do not have to find that defendants copied or used each and every element of the trade secret***.")(emphasis added).  Any instruction on this issue should make clear that the absence of one or more components of a trade secret does not absolve Hytera of liability. Finally, Hytera's instruction is likely to create confusion in light of the fact that the user of another's trade secret can be liable even if he uses it with modifications, *see* footnote 104.

**Instruction No. 25 (Disputed) – Improper Means**

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

[**Motorola's Proposal**:  On the other hand, the phrase "improper means" does not include acquiring information through reverse engineering or independent development.][96]

[**Hytera's Proposal:** On the other hand, the phrase "improper means" does not include acquiring information through independent development or invention, research of public or industry resources, or reverse engineering.[97] [98]]      [**Hytera's Proposal:** Independent development refers to the development of information without reference to improperly acquired trade secrets. Reverse engineering refers to examining a competitor's product in order to determine how to produce it, including via disassembly or technological analysis. [99] [100]]

---

[96]    **Motorola's Authority:** 765 ILCS 1065/2; 18 U.S.C. § 1839(6).

[97]   **Hytera's Authority:**  765 ILCS 1065/2 ("reverse engineering or independent development shall not be considered improper means"); Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261 ("reverse engineering or independent development shall not be considered improper means.").  Although the statute does not identify research of public and industry resources explicitly, there can be no dispute that those are not improper means of discovery.  The facts of this case, which relate extensively to public and industry documentation concerning the ETSI DMR standard and interoperability, warrant this additional instruction.

[98]   **Motorola's Response:**  Hytera's cited authority supports Motorola's proposal and does not support including "invention" or "research of public or industry resources."  Indeed, Hytera cites no authority from deviating from the plain terms of both the ITSA and DTSA, and doing so would only lead to jury confusion about improper means and suggest that because Hytera has its own patents or because Hytera is an industry participant, it properly acquired Motorola's trade secrets.

[99]  **Hytera's Authority:**  *Scan Top Enter. Co. v. Winphus N. Am. Inc.*, No. 14-cv-7505, 2015 WL 4945240, at *4 (N.D. Ill. Aug. 19, 2015 ("reverse engineering [is a process] in which a skilled person studies a product and figures out how to produce it").  Neither ITSA nor DTSA explain what "reverse engineering" or "independent development" mean, though the terms are plainly excluded from the definition of "improper means."  An explanation such as this one will be of assistance to the jury in better understanding the division between proper and improper means.  This also warrants the inclusion of "invention" alongside the first reference to independent development.

[100] **Motorola's Response:** Hytera's proposal is not supported by any instruction previously adopted in this district or the case law it cites.  There is no reason to lengthen these instructions with confusing and unsupported statements, particularly when this instruction is clear and based on the plain terms of the statute.  Further, Hytera' proposal

fails to make clear that any reverse engineering process must also be free of reference or exposure to the trade secret information.  It must start from a properly procured product or piece of information and developed by people who have not been exposed to the trade secret information.  "Reverse engineering" based off or otherwise relying on the trade secret information is just an illusion of independence.

49

**Instruction No. 26 (Disputed) – Acquisition of Every Part of a Trade Secret**

[**Hytera's Proposal**: In determining whether Hytera's conduct constituted misappropriation of a trade secret that describes multiple components or features, you must determine whether Hytera acquired each of the components alleged to constitute the trade secret and information concerning how to combine those components to form the claimed trade secret.[101]  That is, Motorola cannot prove misappropriation of a multi-component trade secret based only on evidence that Hytera used any individual component of it in isolation.][102]

**Motorola's Response to Hytera's Proposal**:

Motorola objects to the inclusion of an instruction on this issue.   As an initial matter, Hytera's proposal is unsupported by any instruction previously adopted in this district.  It provides no support for its proposal that requires the misappropriator to receive not only every component of a trade secret—but also "information concerning how to combine those components." *Cf. Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 110 (8th Cir. 1997) (affirming summary judgment where an expert opined that an alleged trade secret involved five elements, but the defendant "had only received four of the general elements at the conceptual level").

This is one of three places Hytera has attempted to inject this concept in the instructions,

---

[101] **Hytera's Authority:** *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 110 (8th Cir. 1997) (affirming summary judgment where an expert opined that an alleged trade secret involved five elements, but the defendant "had only received four of the general elements at the conceptual level without information as to how the concepts were to be combined").  This instruction is particularly appropriate here, where Motorola has identified sprawling multi-component trade secrets that are purportedly grounded in the details of Motorola's implementation, and yet Motorola cannot prove that Hytera ever acquired (much less used) all of the alleged components.

[102] **Hytera's Authority:** *Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1308 (N.D. Ill. 1996) ("The Court concludes that Defendants' argument focusing on the distinction between the component parts of each oven is misplaced.  Indeed, Plaintiffs are not claiming a trade secret in the component parts, rather they are claiming a trade secret in the *interrelationship* of the component parts.") (citing *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996)).

and the appropriate place to address this is in the instruction on modifications and improvements.

Motorola incorporates by reference its objections to that instruction.

**Instruction No. 27 (Disputed) – Employee's General Skills and Experience**

**Hytera's Proposal:**

There is nothing wrong with one competitor hiring an employee of another competitor.
An employee cannot be prevented from using his general skills or experience, even if they were
obtained or developed while working for another employer.[103]

(i)      **Motorola's Response to Hytera's Proposal:**

Motorola objects to the inclusion of an instruction on this issue.   To the extent it
suggests that Motorola's confidential information involved the use of "general skills," the
instruction is misleading.  Further, the instruction is unnecessary in light of the parties' proposed
0, which makes clear that a trade secret must not be "generally known or understood by others in
the industry."

Finally, to the extent any instruction is given on this issue, Motorola objects to the
wording of Hytera's proposal.  The Federal Circuit case upon which Hytera relies, *C&F Packing
Co. v. IBP, Inc.*, 224 F.3d 1296, 1303 (Fed. Cir. 2000), read: "employing a competitor's former
employee is not in and of itself sufficient to find misappropriation"—not "there is nothing wrong
with hiring an employee of another competitor."

**Motorola's Conditional Proposal**

To the extent this instruction is given, Motorola would ask that it be supplemented with:
"There is, however, something wrong with one competitor hiring an employee of another

---

[103] **Hytera's Authority:** *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1303 (Fed. Cir. 2000) (finding no error in a
similar instruction, coupled with an instruction about inevitable disclosure); Plaintiff's Opposition to Defendants'
Motion for Summary Judgment at 2 (Dkt. No. 216) ("Motorola has not asserted an inevitable-disclosure
claim[.]").  Motorola's disclaimer of inevitable disclosure is significant to many aspects of the case, and failure
to explain that the law does not prohibit hiring from a competitor (or working for a competitor) per se offers
critical background to this case.  Hytera's proposed language avoids the complications of the phrase "in and of
itself."

competitor for the purposes of acquiring that competitor's trade secrets."

(ii)    Hytera's Response To Motorola's Proposal

Motorola's conditional proposal of an instruction stating "There is, however, something wrong with one competitor hiring an employee of another competitor for the purposes of acquiring that competitor's trade secrets" misstates the law.  The tort at issue in this case is misappropriation, which requires some *conduct* in addition to certain scienter requirements. Motorola's conditionally proposed instruction would eliminate misappropriation from the case entirely.

**Instruction No. 28 (Disputed) – Modifications or Improvements**

[**Motorola's Proposal**: It is not a defense to trade secret misappropriation for an alleged misappropriator to use another's trade secrets with modifications or improvements effected by his own efforts, so long as the process and/or product used by the alleged misappropriator is substantially derived from the other's secret].[104][105]

(i)     Hytera's Response to Motorola's Proposal**:**

Hytera objects to Motorola's proposal to instruct the jury that "the user of another's trade secret *is* liable if . . ." inasmuch as that phrasing risks short circuiting the rest of the findings the jury must make in this case.  To that extent, the proposed instruction misstates the law.  For example a user of a trade secret may *not* be liable if he lacked the requisite knowledge of the origins of the trade secret materials.  Such an incomplete statement of the law risks confusing the jury or leading it to error.  This instruction explains a subsidiary issue, *use* of a trade secret, not the ultimate issue of liability, but Motorola's proposal conflates those concepts.

Motorola's proposed instruction asks the jury to consider whether the "substance" of a

---

[104] **Motorola's Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196 Jury Instructions ("The user of another's trade secret is liable even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the ***substance of the process*** used by the actor is substantially derived from the other's secret.")(emphasis added); *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 326 (7th Cir. 1984) ("The first is that a party may not use another's trade secret, even with independent improvements or modifications, ***so long as the product or process is substantially derived from the trade secret.***")(emphasis added).

[105] **Hytera's Response**: Hytera objects to Motorola's proposal to instruct the jury that "the user of another's trade secret *is* liable if . . ." inasmuch as that phrasing risks short circuiting the rest of the findings the jury must make in this case.  To that extent, the proposed instruction misstates the law.  For example a user of a trade secret may *not* be liable if he lacked the requisite knowledge of the origins of the trade secret materials.  Such an incomplete statement of the law risks confusing the jury or leading it to error.  This instruction explains a subsidiary issue, *use* of a trade secret, not the ultimate issue of liability, but Motorola's proposal conflates those concepts. Motorola's proposed instruction asks the jury to consider whether the "substance" of a product is "substantially derived from" a trade secret.  Neither substance nor substantially is defined in Motorola's proposed instruction, and the use of such similar words to describe distinct concepts risks confusing the jury.  Motorola's proposed instruction also misreads the *Mangren* decision it cites.  That decision treats the "could not have" language as an explanation of the meaning of "substantially derived," rather than as an alternative route to liability.

product is "substantially derived from" a trade secret. Neither substance nor substantially is defined in Motorola's proposed instruction, and the use of such similar words to describe distinct concepts risks confusing the jury.

Motorola's proposed instruction also misreads the *Mangren* decision it cites. That decision treats the "could not have" language as an explanation of the meaning of "substantially derived," rather than as an alternative route to liability.

### Hytera's Proposal:

You may find that a person used another's trade secret even if he uses it with modifications or improvements, only if the resulting product is substantially derived from the other's secret rather than from public information or any employee's own contributions. You may find that Hytera's products are substantially derived from Motorola's trade secrets if you find Hytera could not have created a DMR product without Motorola's trade secrets.

(i)     Motorola's Response to Hytera's Proposal:

The first sentence of Hytera's proposal deviates from Motorola's in three substantive ways: (1) it adds the phrase "rather than from public information or any employee's own contributions"; (2) it deletes "substance" from the phrase "substance of the product . . . is substantially derived from the other's secret"; and (3) it changes "is liable" to "may be liable." Hytera's cited authority does not support its first change. This instruction invites error; to the extent that Hytera employees who were exposed to Motorola trade secrets "contributed" based on their knowledge of Motorola's confidential information, their contributions do not absolve Hytera of responsibility. Hytera's authority also contradicts its second and third changes. *See* Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196 ("The user of another's trade secret *is liable* even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the

***substance of*** the process used by the actor is substantially derived from the other's

secret.")(emphasis added).

Further, the second change suggests that a defendant can escape liability if trivial aspects of its product are not derived
    from the plaintiff's secret (when, in fact, only the "substance of the product" is relevant).

       Finally, the third change inaccurately suggests that a liability finding is permissive even if

the resulting product is substantially derived from the other's secret (when in fact such a finding

is mandatory, absent other defenses).  The final sentence of Hytera's proposal improperly adds

an additional element of proof; it implies that, even if Hytera was using Motorola's trade secrets

in their entirety, Hytera can only be liable if Motorola ***also*** proves that Hytera could not

theoretically have created ***any*** DMR product without Motorola's trade secrets.  In other words,

Hytera attempts to excuse itself form liability entirely because it purportedly developed an

inferior DMR radio without Motorola's trade secrets.  That is not the law, and in any event, it is

sufficient that the substance of Hytera's process and/or product is substantially derived from

Motorola's secret.  *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 328-29(7th Cir. 1984) ("The

first is that a party may not use another's trade secret, even with independent improvements or

modifications, so long as the product or process is substantially derived from the trade secret.")

**Instruction No. \*\* – No License Defense[106]**

You have heard testimony in this case regarding license agreements between Motorola and Hytera. The existence of those licenses is not a defense to Motorola's claim for misappropriation. Those license agreements do not involve the trade secrets that Motorola alleges that Hytera has stolen and they do not give Hytera permission to use Motorola's trade secrets.

---

[106] Throughout the trial, Hytera has repeatedly introduced evidence and repeatedly suggested that the existence of licenses between Motorola and Hytera give Hytera permission to use Motorola's trade secrets. Trial Tr. 4590:20–4591:7, 1656:21–1657:4; 2282:24–2283:3; 3106:21–3108:5; 3456:20–3457:25; 3690:19–3693:25; 3696:12–23; 3701:12–3703:17. Hytera, however, has never asserted a license defense, and permitting Hytera to suggest otherwise to the jury would be unduly prejudicial to Motorola. Thus, a clarifying instruction regarding these licenses should be given.

**Instruction No. 29 (Disputed) – Trade Secret / Damages Generally[107] [108]**

I will now instruct you on the law you must follow in determining damages.

You should not interpret the fact that I am giving instructions about Motorola's potential damages as an indication in any way that I believe that Motorola should, or should not, prevail on any claim. It is your task to decide first whether Hytera is liable. I am instructing you on damages only so that you will have guidance in the event that you decide that Hytera is liable and that Motorola is entitled to recover money from Hytera.[109] You will be asked to determine

---

[107] **Hytera's Preface:** Hytera contends that the issues of unjust enrichment and disgorgement of profits are equitable issues for resolution by the judge in conjunction with other issues relating to equitable remedies and defenses. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 686 (2014) (identifying "disgorgement of unjust gains" from infringement as "equitable relief"); *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue."). Hytera joins in the proposed instructions relating to unjust enrichment only to the extent the Court permits those issues to go to the jury, notwithstanding Hytera's objections. Hytera reserves all rights, including the right to propose instructions on other equitable issues, to the extent the judge determines that certain equitable issues should be tried to the jury.

[108] **Motorola's Response:** Both the ITSA and DTSA define actual loss and unjust enrichment as "damages." 18 U.S.C. § 1836(b)(3)(B) ("a court may … award damages for actual loss" and "award damages for any unjust enrichment); 765 ILSC 1065/4(a) ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation."). The Seventh Circuit clearly contemplates that the jury decide disgorgement and unjust enrichment damages. Indeed, the Committee on Pattern Civil Jury Instructions of the Seventh Circuit included instructions relating to those issues in other areas including trademark and copyright. *See, e.g.*, Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.1, 12.8.2, 13.6.4. Further, courts routinely hold that disgorgement and unjust enrichment are legal remedies that involve questions of fact for the jury. *See RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008) (jury allowed to determine unjust enrichment damages in trade secret case and were read jury instructions "[i]n accordance with both the ITSA and the Uniform Trade Secrets Act ('UTSA')" which "stated that ***damages can include Plaintiff's actual loss caused by Defendant's misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing Plaintiff's actual loss***."); *Miller UK Ltd. v. Caterpillar Inc.*, No. 10-CV-03770, 2017 WL 1196963, at *11 (N.D. Ill. Mar. 31, 2017), *appeal dismissed*, No. 17-1890, 2017 WL 5053963 (7th Cir. Sept. 6, 2017) (affirming jury award of unjust enrichment in trade secret case); *see also LinkCo, Inc. v. Fujitsu, Ltd.*, 232 F. Supp. 2d 182, 192 (S.D.N.Y. 2002) ("Where a plaintiff seeks damages for trade secret misappropriation, rather than equitable relief, the claim is essentially legal in nature"); *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 891 F. Supp. 935, 943 (S.D.N.Y. 1995) ("plaintiff's claim for damages for trade secret misappropriation is essentially legal in nature"); *Inland Steel Products Co. v. MPH Mfg. Corp.*, 25 F.R.D. 238, 243 (N.D. Ill. 1959) ("The issues raised by the defendants' counterclaim, which seeks damages for alleged appropriation of a trade secret ... are clearly legal in nature"); *Burns Philp Food, Inc. v. Cavalea Cont'l Freight, Inc.*, 135 F.3d 526, 528 (7th Cir. 1998) (rejecting ruling that restitution based on unjust enrichment is an equity claim and stating "we do not find persuasive indications that the Supreme Court of Illinois thinks of restitution as an action in equity rather than at law."); *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02 C 3293, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) (holding that plaintiff seeking unjust enrichment sought "legal, rather than equitable, relief").

[109] **Hytera's Authority:** Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill.

Motorola's damages through June 30, 2019, if any.

If you find that Motorola proved that Hytera misappropriated Motorola's trade secrets and that Hytera has not proved its statute of limitations defense [**Hytera Proposal**: which I have explained above[110] [111]] then you must decide whether Motorola is entitled to damages on its claim for misappropriation of trade secrets.

Motorola has the burden of proving whether Hytera caused the damage that Motorola is claiming by a preponderance of the evidence.[112]

Motorola is seeking both compensatory damages and punitive damages. I will now instruct you on compensatory and punitive damages.

---

Nov. 16, 2007), ECF No. 285.

[110] **Hytera's Authority:** As discussed below, Hytera contends that the statute of limitations, as a threshold issue, should be among the first issues the jury is instructed on. This language should be adjusted according to the Court's resolution on that issue.

[111] **Motorola's Response:** Motorola's claims and Hytera's defenses will all be discussed before the damages instruction, and Hytera's addition is unnecessary.

**Instruction No. 30 (Disputed) - Trade Secret / Compensatory Damages**

      I will now instruct you on Motorola's claim for compensatory damages. The purpose of compensatory damages are to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendant's violation of a plaintiff's rights. [**Motorola's Proposal**: If you find that Hytera is liable for misappropriation, then you must award Motorola sufficient damages to compensate Motorola for any injury proximately caused by Hytera's conduct.] [**Hytera's Proposal**: Compensatory damages seek to make a plaintiff whole—that is, to compensate the plaintiff for any damage suffered.][113] [114] Compensatory damages are not intended to punish the defendant. [**Motorola's Proposal**: Motorola must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Motorola is not entitled to damages that are remote or speculative. If, however, the uncertainty stems from defendants' conduct, defendants may not benefit from the uncertainty they created].[115]

      If you find that Hytera misappropriated Motorola's trade secrets, Motorola is entitled to compensatory damages from the time you find that Hytera's misappropriation began [**Motorola's Proposal**: under Illinois law and for any misappropriation from May 11, 2016 under federal law]. Motorola's compensatory damages can include both (1) the actual loss caused by Hytera's misappropriation and (2) the unjust enrichment to Hytera caused by its misappropriation, but only to the extent [**Motorola's Proposal**: the unjust enrichment][**Hytera's**

---

[113]   **Motorola's Authority**: 4 Hon. Leonard B. Sand, et al., Mod. Fed. Jury Instr.-Civil P 77.01, Instr. No. 77-3 (2012) (adapted). Hytera's proposal is not in the model and omits the concept of proximate cause.

[114]   **Hytera's Authority:** 4 Hon. Leonard B. Sand, et al., Mod. Fed. Jury Instr.-Civil P 77.01, Instr. No. 77-3 (2012) (adapted); Federal Jury Practice and Instructions, §§ 127.14; 1-17 Jury Instructions in Commercial Litigation §17.15-17.17.

[115] **Motorola's Authority:** *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 927 (N.D. Ill. 2002).

**Proposal**: it][116] is not taken into account in calculating Motorola's actual loss.[117]

[**Hytera's Proposal**: If you find that Hytera misappropriated Motorola's trade secrets and you find that Motorola proves neither actual-loss damages nor unjust enrichment by a preponderance of the evidence, you may award compensatory damages caused by misappropriation measured in terms of a reasonable royalty.][118][119]

I will explain each of these three measures of damages, that is, actual loss, unjust enrichment [**Hytera's Proposal**:, and reasonable royalty.][120]

---

[116]   Motorola proposes referencing "the unjust enrichment" instead of "it" for clarity.

[117]   **Joint Authority:** Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020.  This is agreed only to the extent the Court determines that unjust enrichment is appropriate for the jury.  *See* Footnote 89.

[118]   **Joint Authority:** Jury Instructions, *Miller UK Ltd. et al. v. Caterpillar, Inc.*, No. 10-cv-3770, (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

[119]   **Motorola's Response**: Motorola objects to this instruction based on its *Daubert* of Dr. Aron, and because neither party presented a reasonable royalty opinion.  Dkt. 628.

[120]   [120]   **Motorola's Response**: Motorola objects to this instruction based on its *Daubert* of Dr. Aron, and because neither party presented a reasonable royalty opinion.  Dkt. 628.

**Instruction No. 31 (Disputed) – Trade Secret / Actual Loss**

In determining Motorola's actual loss, you should determine what profits Motorola

proves that it would have made, if any, had Hytera not misappropriated Motorola's trade

secret.[121]  To recover **[Hytera's Proposal:**  lost profits][**Motorola's Proposal**: its actual loss],

Motorola must prove:

> 1.     A reasonable probability that, if Hytera had not misappropriated trade
>        secrets, Motorola would have made additional sales of DMR products that
>        Hytera made.
>
> 2.     The amount of profit Motorola would have made on those sales.  Motorola
>        does not need to prove this amount with precision.[122] [123]

---

[121] **Joint Authority:** Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

[122] **Hytera's Authority:**  CA7 Instruction No. 11.4.3.  No trade secret instructions exist in the Seventh Circuit's Pattern Civil Jury Instructions.  The patent instructions are a close analog, and offer a helpful explanation of how a jury should evaluate a lost profits claim.

[123] **Motorola's response:**  Motorola proposes referencing actual loss, instead of lost profits, to be consistent with the other damages instructions.

**Instruction No. 32 (Disputed) – Trade Secret / Unjust Enrichment**

Unjust enrichment is the benefit retained by Hytera caused by its misappropriation of Motorola's trade secret.[124]  The amount of unjust enrichment need not be shown with mathematical precision but Motorola must establish the amount with reasonable certainty on evidence presented. You are not to guess or speculate as to the amount.  [**Motorola's Proposal**: If, however, the uncertainty stems from defendants' conduct, defendants may not benefit from the uncertainty they created].[125]] [126]

In determining unjust enrichment, you should determine how much Hytera benefited as a result of the misappropriation to the extent it exceeds Motorola's actual loss.[127]  [**Motorola's Proposal**: For unjust enrichment, Motorola must prove by a preponderance of the evidence the amount of Hytera's revenues.  Then, Hytera must prove by a preponderance of the evidence the amount of costs that should be subtracted from those revenues.][128]  [**Hytera's Proposal**: If you

---

[124] **Joint Authority:** Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261.

[125] **Motorola's Authority:** *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 927 (N.D. Ill. 2002).

[126] **Hytera's Authority:** Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261 ("mathematical precision need not be shown"); Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285 ("Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.").  Also, see Footnote 97 for Hytera's objection to the issue of unjust enrichment going to the jury at all.

[127] **Joint Authority:**  Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285. ("In determining unjust enrichment you should determine the amount of money Sears benefited as a result of the misappropriation to the extent it exceeds RRK's actual loss.")

[128] **Motorola's Authority**: *Peerless Indus., Inc. v. Crimson AV LLC*, No. 14-cv-6949 (N.D. Ill.) (Dkt. 610) (Jury Instructions; *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 78–79 (10th Cir. 2007) ("Citing 17 U.S.C. § 504(b) as persuasive authority, the Massachusetts Supreme Judicial Court has set forth the following rule for apportionment in trade secrets cases: Once a plaintiff demonstrates that a defendant made a profit from the sale of products produced by improper use of a trade secret, the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and ***the portion of its profit attributable to factors other than the trade secret***.")(emphasis added); *id.* at 79 (quoting Comment (f) to the Restatement (Third) of Unfair Competition § 45 (1995)) ("The plaintiff is entitled to recover the defendant's net profits.  The plaintiff has the burden of establishing the defendant's sales; ***the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits***.")(emphasis added).

find that Motorola has proven that it is entitled to unjust enrichment damages in excess of its actual loss, you must deduct the costs and expenses that Hytera incurred related to that benefit.][129]

     [**Hytera's Proposal:**  You must also not award unjust enrichment based on profits attributable to factors other than misappropriation.[130] [131]]  [**Motorola's Proposal if the preceding instruction is given:**  Hytera has the burden of proving that any portion of its profit is

---

[129] **Joint Authority:**  Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

[130] **Hytera's Authority:** *In re Avaya Inc.*, 602 B.R. 445, 459 (S.D.N.Y. 2019) ("[The entire market value] is the appropriate measure of calculating damages only in those circumstances where the basis of customer demand for the infringing product is traceable to the infringing features of the product." (citing patent case law on point)).  It is important to clarify the fact that apportionment distinguishes between profits attributable to misappropriation and profits attributable to other factors, especially in contrast to lost sales, where the amount of a lost sale is *not* apportioned.  This clarification is especially important for parallelism purposes if Motorola's redundant instruction regarding expenses other than those relating to misappropriation is offered.

[131] **Motorola's Response:**  Hytera's proposal is repetitive of the parties' preceding proposals and add nothing with its vague reference to unidentified "factors other than misappropriation."  Further, Hytera's focus on "profits" ignores any benefit it may have gained from reduced risk or time to market.  Hytera's reliance on the entire market value rule is inapposite because the two-way radio is the smallest saleable trade secret practicing unit, and this is what Motorola and Hytera have premised damages on.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("Thus, it is generally required that royalties be based not on the entire product, but instead on the "smallest salable patent-practicing unit.");  Although not its burden, Motorola also provided a methodology for apportionment, which is a fact question for the jury.  *Mattel Inc. v. MGC Entm't, Inc.*, 2011 WL 836418, at *2 (C.D. Cal. Mar. 4, 2011) (apportionment is for the fact finder).

not attributable the misappropriation."[132] [133]]

[**Hytera's Proposal:** As stated, your award for unjust enrichment must not be duplicative of your award for actual loss. As an example, if you find that Motorola proved that Hytera made 100 sales as a result of any misappropriation, but that Motorola only could have made 40 of those sales, due to factors such as the geographical market, the customer base, or competition from third parties, your award of damages due to actual loss may not exceed Motorola's profits on the 40 sales Motorola could have made. You may award unjust enrichment only with regard to Hytera's enrichment from remaining 60 sales attributable to any

---

[132] **Motorola's Authority:** *Peerless Indus., Inc. v. Crimson AV LLC*, No. 14-cv-6949 (N.D. Ill.) (Dkt. 610) (Jury Instructions. In this case, both experts agree Hytera bears the burden to deduct costs for purposes of unjust enrichment. Expert Report of James E. Malackowski (Dkt. 621, Ex. 4) at 7; Expert Report of Dr. Debra J. Aron (Dkt. 628, Ex. 7) ¶ 113. Moreover, Hytera has repeatedly revised its costs data—even after the court ordered Hytera to produce accurate data in April 2019, Dkt. 503, Hytera redid that data in the middle of trial and served an entirely new expert report to create a criticism of Motorola's damages expert. Hytera should therefore bear the burden of proving what amoutns from its unreliable data should be deducted. *Peerless Indus., Inc. v. Crimson AV LLC*, No. 14-cv-6949 (N.D. Ill.) (Dkt. 572) (Order at 34) (explaining that burden-shifting framework applied to unjust enrichment under ITSA "where defendant is the party whose interest lies in demonstrating appropriate deductible costs" and defendant had "repeatedly failed to provide relevant documents that would allow Peerless to better assess damages. To allow it to undercut Peerless's legitimate damages claim by refusing to produce key documents and data would only reward [defendant] for its incalcitrance."); *see also Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 78–79 (10th Cir. 2007) ("Citing 17 U.S.C. § 504(b) as persuasive authority, the Massachusetts Supreme Judicial Court has set forth the following rule for apportionment in trade secrets cases: Once a plaintiff demonstrates that a defendant made a profit from the sale of products produced by improper use of a trade secret, the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and ***the portion of its profit attributable to factors other than the trade secret***.")(emphasis added); *id.* at 79 (quoting Comment (f) to the Restatement (Third) of Unfair Competition § 45 (1995)) ("The plaintiff is entitled to recover the defendant's net profits. The plaintiff has the burden of establishing the defendant's sales; ***the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits***.")(emphasis added).

[133] **Hytera's Response:** Motorola has cited no authority within the Seventh Circuit or applying Illinois law that has held that the defendant has the burden to prove deductible costs and expenses under Trade Secret law. Moreover, Motorola's proposed instruction is inconsistent with its own authority, which discusses the defendants' burden to establish "any portion" not attributable to misappropriation, rather than the bare entitlement to apportionment. *See* Comment (f) to the Restatement (Third) of Unfair Competition § 45 (1995)) ("The plaintiff is entitled to recover the defendant's net profits. The plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing ***any portion*** of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits.")(emphasis added).

misappropriation and accounting for costs and expenses. Otherwise, you would be double-counting the damages relating to the first 40 sales.[134] [135]]

---

[134] **Hytera's Authority:** The statutes governing Motorola's trade secret misappropriation claims both unambiguously state that any unjust enrichment damages can only be that which are "not addressed in computing damages for actual loss," 18 U.S.C. 1836(b)(3)(B), or "not taken into account in computing actual loss," 765 ILCS 1065/4. A concrete but simple example to demonstrate to the jury how to avoid double counting across measures of damages is appropriate here. Hytera disagrees that this instruction, which makes it easier for the jury to understand how to properly award damages, is somehow advocacy in Hytera's favor. Nevertheless, in the interest of assisting the jury in the complicated findings it must make, Hytera is amenable to discuss an alternative way to explain factors other than misappropriation in concrete terms.

[135] **Motorola's Response:** Hytera's proposal is unsupported. Moreover, Hytera's inclusion of an example is improper because it may improperly skew the jury's view of the percentage of Hytera's sales on which the jury should award lost profits (actual loss) damages. Additionally, Hytera proposes including the the language "As an example, if you find . . . that Motorola only could have made 40 of those sales, *due to factors such as the geographical market, the customer base, or competition from third parties*, your award of damages due to actual loss may not exceed Motorola's profits on the 40 sales Motorola could have made." This is attorney argument that reflects Hytera's position regarding why lost profits may not be awarded to Motorola and is improper for inclusion in a jury instruction.

**Instruction No. 33 (Disputed) – Trade Secret / Reasonable Royalty[136]**

If you conclude that Motorola is entitled to any damages and that you cannot determine the amount, if any, that Hytera caused Motorola to lose or that Hytera was unjustly enriched, you may award compensatory damages caused by misappropriation measured in terms of a reasonable royalty. Motorola has the burden of proving any damages under a reasonable royalty calculation, just as it has the burden of proving any actual loss or unjust enrichment.

A royalty is a payment made to the owner of trade secrets so that the person paying the royalty can use those trade secrets. A "reasonable royalty" is the amount that Motorola and Hytera would have agreed upon as a royalty at the time Hytera's use of the trade secrets began.[137]

**[Motorola's Proposal:** This determination by you of a "reasonable royalty" after misappropriation, like many devices in the law, rests on legal fiction. The "reasonable royalty" calculation assumes there is both a "willing" licensor and a licensee. There was, of course, no actual willingness between either Motorola or Hytera, and no license for Hytera to use Motorola's alleged trade secret.

In your determination of what is a "reasonable royalty," the law asks you to imagine that a negotiation took place at the time Hytera misappropriated Motorola's trade secret, and before it knew if the trade secret would have commercial value. You must assume that Motorola was

---

[136] **Motorola's Response**: Motorola objects to this instruction based on its *Daubert* of Dr. Aron, and because neither party presented a reasonable royalty opinion. Dkt. 628.

[137] **Joint Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19.

willing to grant a license and that Hytera was willing to accept a license.[138] [139]]

[**Hytera's Proposal:**  In determining a reasonable royalty, you should assume that Motorola would have been willing to allow Hytera to use the trade secrets and that Hytera would have been willing to pay Motorola to do so.  You should take into account what Motorola's and Hytera's expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations.  You should assume that both Motorola and Hytera would have believed that Motorola had articulated valid trade secrets and that Hytera would have used them.

You should also assume that Hytera would have been willing to pay, and Motorola would have been willing to accept, the reasonable royalty they negotiated. [140] [141]]

Your role is to then determine what Motorola and Hytera would have agreed upon,  if they had negotiated in this manner, not just what either Motorola or Hytera would have preferred.

[**Hytera's Proposal**: In determining a reasonable royalty, you may consider the following factors in addition to any others that are shown by the evidence:

- Any royalty arrangements that were generally used or recognized in the industry for similar or comparable information at the time of misappropriation;

- Whether Motorola had a policy of licensing or not licensing the trade secrets;

---

[138] **Motorola's Authority**: Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19.

[139] **Hytera's Response:** Motorola's proposed instruction is unwieldy (e.g., "this determination by you of . . .") and includes unnecessary and convoluted discussion of metaphysics and personification of the law that is likely to confuse, rather than assist the jury.  A simpler and more direct instruction is appropriate.

[140] **Hytera's Authority:**  Jury Instructions, *Miller UK Ltd. et al. v. Caterpillar, Inc.*, No. 1:10-cv-03770, (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

[141] **Motorola's Response:**  Hytera's proposed deviation from previously-issued instructions is unsupported.  Further, Hytera's proposal suggests that the jury must assume that Motorola would have been willing to allow Hytera to *use* its trade secrets, when the appropriate assumption is that Motorola would have been willing to *grant a license*.

- The advantages of using the trade secret over DMR products that are not substantially derived from the trade secret;

- What the parties reasonably anticipated would be their profits or losses as a result of entering into a licensing agreement at the time of misappropriation;

- The value and size of the anticipated market at the time of the misappropriation

- Expert opinions regarding what would be a reasonable royalty;

- The duration of the license;

- The ability to reverse engineer the trade secret from products embodying the trade secret that are released in the market.[142]

- Whether Motorola and Hytera are competitors;[143] and

- The extent of Hytera's use of the trade secret and the value of that use to Hytera.[144]][145]

**[Motorola's Proposal of additional factors:**

- the change in the parties competitive posture;[146] [147]

---

[142] **Joint Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19.

[143] **Joint Authority:** *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), at Factor No. 5.

[144] **Joint Authority:** *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), at Factor No. 11.

[145] **Motorola's Response**: As neither party's damages expert relied on these factors as a basis for his or her opinions, these factors are not relevant to the royalty determination in this case and are thus likely to confuse the jury. Hytera cites no authority that permits the additional of factors not typically considered; they are not supported by case law or other instructions from this district or under the ITSA or DTSA  Hytera's factors amount to attorney argument because Hytera is only including factors that it believes favors Hytera and they are not a neutral recitation of the law.

[146] **Motorola's Authority:** *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974).

[147] **Hytera's Response:** This factor is vague and superfluous in light of the remaining factors.  To the extent "importance" is relevant at all, the importance of the trade secret to both parties is relevant to the reasonable royalty inquiry.

- the importance of the secret to Motorola's business;[148] [149]

**[Hytera's Proposal of additional factors:**

- Royalties that Hytera paid to Motorola and to others for comparable information;

- Whether the product made using the trade secret is commercially successful, as well as its profitability;

- The portion of the profit on sales that is due to the trade secret, as opposed to other factors, such as unprotectable elements or processes, features, or improvements developed by Hytera.[150] [151]]

---

[148] **Motorola's Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19.

[149] **Hytera's Response:** Hytera objects to the inclusion of this factor to the extent it is cumulative of the other factors and irrelevant to the question of what Motorola would have considered a reasonable royalty. To the extent some vague notion of "importance" is relevant to the determination of a reasonable royalty, the importance to the licensee is equally relevant.

[150] **Hytera's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 11.4.4. (identifying commercial success, advantages of using the intellectual property in question, and the related portion of profits attributable to that use among relevant factors in the context of patent damages royalties). Whether or not an expert considered certain factors has no bearing on whether the factors can be presented to the jury. The question is whether the evidence warrants consideration of those factors. In particular, the royalties paid for standard-essential patents are relevant to the calculation of a reasonable royalty.

[151] **Motorola's Response:** As neither party's damages expert relied on these factors as a basis for his opinions, these factors are not relevant to the royalty determination in this case and are thus likely to confuse the jury. Hytera cites no authority that permits the additional factors not typically considered; they are not supported by case law or other instructions from this district or under the ITSA or DTSA. Hytera's factors amount to attorney argument because Hytera is only including factors that it believes favors Hytera and they are not a neutral recitation of the law.

Further, standard-essential patents are not relevant to the calculation of a reasonable royalty in this trade secrets case. SEP licenses are not economically comparable to the circumstances here. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1332 (Fed. Cir. 2009) ("licenses relied on by the [party] in proving damages [be] sufficiently comparable to the hypothetical license at issue in suit"). SEP licenses are subject to Reasonable and Non-Discriminatory ("RAND") licensing terms. The Federal Circuit has explained that "[i]n a case involving RAND-encumbered patents, many of the *Georgia–Pacific* factors simply are not relevant; many are even contrary to RAND principles." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014). Further, "[i]ndustry participants in the standard-setting process enjoy significant potential benefits to having their technology incorporated into a standard independent of potential royalty income from licensing patents they own." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *5 (W.D. Wash. Apr. 25, 2013). "These non-income benefits can include increased demand for participants' products, advantages flowing from familiarity with the contributed technology potentially leading to shorter development lead times, and improved compatibility with proprietary products using the standard." *Id.* Hytera has not alleged that the asserted trade

70

secrets in this case are encumbered by RAND obligations.

**Instruction No. 34 (Disputed) – Head Start Period**

*Motorola objects to the inclusion of an instruction on the head-start period. The following is proposed only if such an instruction is to be offered at all.*

**Hytera's Proposal:** [152]

If you find that Hytera has misappropriated a trade secret, then in determining the amount of damages, you must consider whether or not to award damages only for the head start period.

The "head start" period is the time it would have taken Hytera to develop **[Hytera's Proposal:** a

---

[152] **Hytera Authority:** Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19 ("If you find that Learning Curve has misappropriated a trade secret, then in determining the amount of damages, you must consider whether or not to award damages only for the head start period."); *Schulenburg v. Signatrol, Inc.*, 33 Ill. 2d 379, 388 (1965) (focusing on the "period of time . . . required to duplicate the *product* by lawful means" (emphasis added)); *Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1433 (7th Cir. 1994) (evaluating a head start in terms of whether the defendant "would never have developed a workable VCXO had it not misappropriated Sokol's trade secret."); *see also BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 708 (7th Cir. 2006) (describing head start in injunction context as lasting "until the advantage over competitors conferred by this wrongfully acquired lead time has dissipated."); *Brunswick Corp. v. Outboard Marine Corp.*, 79 Ill. 2d 475, 479 (1980) (discussing an injunction for "the approximate length of time it would require a legitimate competitor to develop a competitive product following a lawful disclosure of the information"). Motorola's assertion that a head start instruction is not *required* does not support its position that it is inappropriate here. Its cited authority only goes so far as to hold it was not error to deny judgment as a matter of law on the basis that the plaintiff failed to limit damages to a head start period. *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008). The *Playwood* instructions that Motorola cites for many of its proposed instructions include a head start period instruction on damages. Ultimately, the evidence will show that any use Hytera made of the alleged trade secrets did no more than to confer a mild head start on its launch into the standards-driven DMR industry. In light of that evidence, a head start instruction is entirely appropriate.

Motorola's position that a head start is not warranted is also inconsistent with its position and that of its expert throughout the case. First, Motorola's original draft instructions, served on Hytera on September 6, 2019, included Instruction No. 27 "Head Start Period," which proposed language substantially similar to Hytera's proposal here. Thus, Motorola previously asserted that such an instruction is required and warranted. Second, both sides' expert witnesses on damages issues rely upon a "head start period" analysis. Hytera's expert, Dr. Aron, relies on a head start analysis in Section X of her report. Likewise, Motorola damages expert, James Malackowski applies a head start analysis, which he calls a "Development Time Period" analysis in in Sections 12.2 and 13.3 of his Opening Report. Though he gives it a different name in his report, Mr. Malackowski confirmed at his deposition that this analysis is, in fact, a "head start period" analysis. *See* 9-17-2019 James Malackowski Dep. Tr. (Rough), at pp. 158-161. Moreover, both sides' experts cite and rely upon the article, "Disputed Issues in Awarding Unjust Enrichment Damages in Trade Secret Cases", David Almeling, Walter Bratic, Monte Cooper, Alan Cox and P. Anthony Sammi, The Sedona Conference Journal, Vol. 19, No. 2, 2018, which states the "***general rule*** is that the accounting of unjust enrichment damages commences at the moment that use of the misappropriated trade secret confers a benefit on the defendant. Damages then accrue until such time, if ever, that the defendant would have acquired knowledge of the trade secret through legitimate means, such as public disclosure, reverse engineering, or independent development." *Id.* at 680 (emphasis added).

competing product with equivalent features][**Motorola's Proposal**: the trade secrets][153] without any misappropriation.  You must decide if Hytera could have developed [**Hytera's Proposal**: a competing DMR product]; [**Motorola's Proposal**: the misappropriated trade secrets and if so, how long it would have taken Hytera to achieve the same level of product sales it obtain with Motorola's misappropriated trade secrets].[154]  If you find that Hytera would never have developed **Hytera's Proposal**: a competing DMR product]; [**Motorola's Proposal**: the misappropriated trade secrets or achieve the same level of product sales it obtain with Motorola's misappropriated trade secrets][155], you are not restricted to a head start period.  If you find that Hytera would have developed [**Hytera's Proposal**: a competing DMR product]; [**Motorola's Proposal**: the misappropriated trade secrets and achieved the same level of product sales it obtain with Motorola's misappropriated trade secrets][156], you must determine how long that time—the head start period—would have been.  [You may not find any unjust enrichment for any period after the time it would have taken Hytera to develop [**Motorola's Proposal**: the misappropriated trade secrets] [**Hytera's Proposal**: a competing DMR product[157]]  You may not award damages for any amounts under any theory after that period.][158]

---

[153]   **Motorola's Response**: Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000),  Motorola's proposal tracks the instruction given in *Playwood Toys* with adjustments for the facts of this case, including Motorola's expert's opinion that Hytera would never catch-up to its actual sales without the misappropriation.  Hytera's revisions are misleading, and suggest that Hytera's ability to develop any DMR product is sufficient to deny Motorola damages, which is not supported by any case law.

[154]   **Motorola Response**: *See* footnote 153.

[155]   **Motorola Response**: *See* footnote 153.

[156]   **Motorola Response**: *See* footnote 153.

[157]   **Motorola Response**: *See* footnote 153.

[158]   **Motorola Response**:  Even if the court were to give this instruction (the entirety of which Motorola objects to), these last two sentences should not be read as explained below.

*Motorola's Response to Hytera's Proposal:*

Motorola objects to the inclusion of an instruction on this issue. "While Illinois case law requires damages be limited to a head start period for injunctive relief, it has not made such a requirement for monetary damages." *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008); *see also Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2010 WL 610725, at *27 (Del. Ch. Feb. 18, 2010) ("To prevent underenforcement and to remedy the defendant's increased market share, therefore, it is equitable to grant Agilent monetary damages beyond the three year 'head start' period."). Indeed, courts have allowed the jury to award damages for economic effects that persist as a result of the misappropriation. *See Russo v. Ballard Med. Prod.*, 550 F.3d 1004, 1020 (10th Cir. 2008) (allowing jury to award damages "for a time period equal to the amount of time (1) you find that Mr. Russo's trade secret would be entitled to protection, plus (2) any additional period, if any, that you find that the trade secret afforded the particular Defendant a competitive advantage."); *see also Kilbarr Corp. v. Bus. Sys., Inc.*, B.V., 679 F. Supp. 422, 427 (D.N.J. 1988), aff'd, 869 F.2d 589 (3d Cir. 1989) ("Regardless of when defendants might have been able to develop the secret process … by legitimate business means, defendants did not learn the proprietary information from legitimate business means … but learned them from its knowing misappropriation of plaintiff's trade secrets. Accordingly, the Court determines as a matter of law that head start is not available to these defendants on the facts in this case."). A blanket limitation on any type of damages makes little sense and is contrary to the plain terms of 765 ILCS 1065/4, which also allows for damages from "the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation" Whatever hypothetical headstart period may exist, that does not change the reality that Motorola actually suffered losses or that Hytera was, in fact, actually unjustly enriched by its

misappropriation.

**Instruction No. 35 (Disputed) – Trade Secret / Punitive Damages**

Motorola also seeks punitive damages with respect to its claims for misappropriation of trade secrets. The purpose of punitive damages is to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future.

You may award Motorola punitive damages only if Motorola demonstrates [**Motorola's proposal**: by a preponderance of the evidence] that Hytera's acts giving rise to liability for misappropriation of trade secrets were willful and malicious.[159]

Willful and malicious misappropriation includes intentional misappropriation as well as misappropriation resulting from the conscious disregard of the rights of another.[160] [**Hytera's Proposal:** However, exemplary damages should only be awarded if you determine that Hytera's conduct was particularly shocking, outrageous, and offensive.[161] [162]]

[**Hytera's Proposal:** An employee's willfulness and malice cannot be imputed to his or her employer.[163] [164]] [**Hytera's Proposal:** Exemplary damages may be awarded against Hytera

---

[159] **Joint Authority:** Jury Instructions, *Miller UK Ltd.et al. v. Caterpillar, Inc.*, No. 10-cv-3770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

[160] **Joint Authority:** *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 946 (7th Cir. 1996) ("Although we have found no Illinois case interpreting that phrase, it surely must include an intentional misappropriation as well as a misappropriation resulting from the conscious disregard of the rights of another."); *see also Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 188 (1978) ("Because of their penal nature, punitive damages are not favored in the law, and the courts must take caution to see that punitive damages are not improperly or unwisely awarded.").

[161] **Hytera's Authority:** Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285. This proposed instruction offers clarity regarding what constitutes "willful and malicious" conduct, since these terms are unclear without further explanation.

[162] **Motorola's Response:** Hytera's proposed addition of the phrase "particularly shocking, outrageous, and offensive" is not helpful as those terms are vague and thus, do not add clarity to the instruction.

[163] **Hytera's Authority:** Illinois Instruction No. 50.11, Notes on Use (an instruction on simple vicarious liability "may not be given . . . when its effect would be to permit vicarious liability for punitive damages, since it would impute liability for *any* act done by an employee, rather than only those specifically ordered, participated in or ratified by a superior officer"); *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 934 (C.D. Ill. 2017); *Pendowski v. Patent Scaffolding Co.*, 89 Ill.App.3d 484, 488-489; (1st Dist. 1980) ("punitive damages for willful and wanton conduct will be available only if a superior officer of the corporation ordered, participated in, or ratified the 'outrageous misconduct' of the employee" and so an instruction on vicarious liability alone is inappropriate).

[164] **Motorola's Response:** Hytera's own authority contradicts it. *See* Illinois Instruction No. 50.11 (where defendant is a corporation, it "can act only through [its] [their] officers and employees. Any act or omission of an officer or employee within the scope of his employment is the action or omission of the [plaintiff] [defendant]

only if you find that a superior officer of Hytera, while acting in his managerial capacity, ordered, participated in, or ratified the willful and malicious conduct of the employee.[165] [166]]

**[Motorola's Proposal**:  Punitive damages can properly be awarded against an employer because of an act by its employee if, but only if:

- the employee was employed in a managerial capacity and was acting in the scope of employment;  "scope of employment" has the same meaning given earlier in these instructions] or

- the employer or a managerial employee of the employer ratified or approved the act, or

- the employer authorized the doing and the manner of the act, or

- the employee was unfit and the employer was reckless in employing him.[167] ]

---

corporation]"); *see also United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 934 (C.D. Ill. 2017) ("principal is vicariously liable for punitive damages awarded for the actions of its agents if the principal or a manager of a corporate principal knew of the actions or later ratified the actions").

[165] **Hytera's Authority:** *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 399 (7th Cir. 1988) ("A corporation can be liable for punitive damages only when the responsible employee was acting in a managerial capacity or when the acts were authorized or ratified by the corporation."); *Pendowski v. Patent Scaffolding Co.*, 89 Ill.App.3d 484, 488-489 (1st Dist. 1980).  *Pendowski* makes clear that a jury instruction on general vicarious liability is inappropriate in the context of punitive damages.  Particularly in light of the numerous imputation issues, each with its own nuances, it is appropriate, if not required, to offer an instruction to this effect.

[166] **Motorola's Response:** Hytera fails to identify a single jury instruction that incorporates its proposal.    Further, Hytera's proposal misstates its authority, which holds that "[a] corporation can be liable for punitive damages only when the responsible employee was acting in a managerial capacity *or when the acts were authorized or ratified by the corporation.*"—regardless of whether they were authorized by a "superior officer" of the employee in question.  *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 399 (7th Cir. 1988) (emphasis added).  Further, Hytera's proposal introduces the vague and undefined term "superior officer."

[167] **Motorola's Authority:** *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 515 (7th Cir. 1997) ("The tendered instruction, derived from the Restatement (Second) Agency § 217C (1958), accurately captures the corporate complicity rule employed by the Illinois courts.") (finding error in not giving instruction); *Ingram v. Hall, Roach, Johnston, Fisher & Bollman*, No. 95 C 550, 1996 WL 54206, at *2–3 (N.D. Ill. Feb. 7, 1996) (punitive damages could be awarded against employer where employee was employed in a managerial position and was acting within the scope of his employment) (citing Restatement (Second) of Agency § 217 C).

[**Hytera's Proposal:** In order to warrant exemplary damages, the conduct must be more than mere misappropriation. Misappropriation motivated only by competitive motives, including corporate greed in a competitive business, and not malice, is not "willful and malicious."[168] [169]]

If you find that Hytera acted willfully and maliciously, you may award Motorola an amount of exemplary damages up to two times the amount of the compensatory damages you award Motorola[170] for the time during which it acted willfully and maliciously.

---

[168] **Hytera's Authority:** *Roton Barrier v. Stanley Works*, 79 F.3d 1112, 1120 (Fed. Cir. 1996) (citing *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.*, 155 Ill.App.3d 427, 430–31 (1987) (appeal denied)). Motorola's citation of *RKI v. Grimes* is not to the contrary. That decision rested on, inter alia, a "cover-up," which distinguishes those facts from pure competitive conduct.

[169] **Motorola's Response:** The Seventh Circuit has not addressed whether "misappropriation motivated only by competitive motives" can constitute "willful and malicious" misappropriation. *cf. Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 730 (7th Cir. 2003) ("There are no Illinois cases construing the phrase 'willful and malicious misappropriation' under the Act.") (distinguishing Hytera's case *Roton Barrier, Inc. v. Stanley Works* as requiring something more than Seventh Circuit's requirement of "an intentional misappropriation as well as a misappropriation resulting from the conscious disregard of the rights of another"). Courts in the Seventh Circuit have held that acts are "willful and malicious" without making a finding that they are "motivated by more than competitive motives." *See RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 928 (N.D. Ill. 2002) (where defendant assigned competitor's former employee to the same territory he had developed for competitor, misappropriated competitor's trade secrets, and attempted a cover-up, finding "This type of activity meets the test for willful and malicious misappropriation, as it is both an intentional misappropriation and a conscious disregard of the rights of another.").

[170] **Joint Authority:** Jury Instructions, *Miller UK Ltd.et al. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020; *see also IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 759 (N.D. Ill. 2018) ("Punitive damages under the ITSA are appropriate if the plaintiff may show 'willful and malicious' misappropriation. A plaintiff can satisfy this standard by showing 'intentional misappropriation' or 'a misappropriation resulting from the conscious disregard of the rights of another.'") (citation omitted).

**Instruction No. 36 (Disputed) – Trade Secret/Statute of Limitations**[171]

[**Motorola's Proposal:** Hytera contends that Motorola's trade secret misappropriation claims are barred by the statute of limitations. The statute of limitations is called an "affirmative defense." That means that, unlike the claims Motorola brings, on this affirmative defense, it is Hytera that bears the burden of proof by a preponderance of the evidence.] [172] [173]

Motorola filed suit on its trade secret claims on March 14, 2017. [**Motorola's Proposal**: The Illinois Trade Secret Act requires Motorola to bring its trade secret claims within five years after Motorola knew about the misappropriation or by the exercise of reasonable diligence should have known about the misappropriation. The Defense of Trade Secrets Act requires Motorola to bring its trade secret claim within three years after Motorola knew about the misappropriation or by the exercise of reasonable diligence should have known about the misappropriation.] [174] [**Hytera's Proposal**: Motorola was required to bring its claim for the misappropriation of its trade secrets within five years after the alleged misappropriation was discovered, or within five years after it should have been discovered by the exercise of

---

[171] Hytera contends that this instruction should immediately follow the instruction introducing the trade secret claims generally, given the threshold nature of the issue.

[172] **Motorola's Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.,* No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1. There is nothing prejudicial about explaining to the jury whose burden it is to prove statute of limitations.

[173] **Hytera's Response**: As with Motorola's proposed instruction on reasonable royalty, this proposal employs an inappropriate and casual tone that personifies the law and is likely to confuse the jury. It is unnecessary to discuss the concept of an "affirmative defense" given that Hytera's burden is already explained.

[174] **Motorola's Authority:** Motorola contends that the statute of limitations defense is inapplicable to Motorola's DTSA claim, but to the extent the jury is instructed on statute of limitations under the DTSA, Motorola proposes this instruction. Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.,* No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; 765 ILCS 1065/7; 18 U.S.C. § 1836(d).

reasonable diligence.][175][176] **[Hytera's Proposal:** One purpose of this rule is to bring cases to the legal system before memories fade and evidence disappears. The law does not allow parties to sit on their rights, and cases must be brought in a timely manner.[177] [178]]

[**Motorola's Proposal**: If a party is suspicious that its injury was wrongfully caused, that does not not mean the party knows or reasonably should know the injury was wrongfully caused. Suspicion is not the same a reasonably knowing. Therefore, the statute of limitations is not triggered during the period that a party is attempting to discover whether its injury is wrongfully caused, but rather, it is triggered at the point when the party reasonably should have known that her injury was wrongfully caused.][179] **[Hytera's Proposal:** A person knows or reasonably should know of an injury when he or she has suspicions that an injury has occurred and means to discover evidence to support a claim based on that injury. Knowledge of the particular legal

---

[175] **Joint Authority:** 765 ILCS 1065/7; 18 U.S.C. § 1836(d).

[176] **Motorola's Response**: Hytera's proposal is improper limited to the ITSA.

[177] **Hytera's Authority:** *Bd. of Regents of University of State of New York v. Tomanio*, 446 U.S. 478, 487 (1980). An explanation of the policy rationale for the statute of limitations is appropriate and consistent with the joint aspects of the parties' proposed instructions on damages.

[178] **Motorola's Response:** It is improper to explain the policy rationale for the law to the jury. The jury must decide the case based on the law, not based on the reasons for the law. Hytera has not proposed that the policy rationale for any other claims be read to the jury.

[179] **Motorola's Authority**: *LaManna v. G.D. Searle & Co.*, 561 N.E.2d 1170, 1174–75 (Ill. Ct. App. 1990)

theory is not required to trigger the statute of limitation.[180] [181]]

[**Motorola's Proposal**: You must consider all of the evidence to determine whether Hytera proved that Motorola knew, or reasonably should have known, of Hytera's misappropriation before March 14, 2012 for the Illinois claim or March 14, 2014 for the federal claim.][182] [**Hytera's Proposal**: Accordingly, if you find that Motorola knew or should have known of its alleged injury through the exercise of reasonable diligence on or before March 14, 2012, your verdict must be for Hytera on Motorola's trade secret claims.][183]

---

[180] **Hytera's Authority:** *Nicpon v. v. Goehausen*, No. 89 C 5674, 1991 WL 5866, at *2 (N.D. Ill. Jan. 15, 1991); *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997); *Renz v. Beeman*, 589 F.2d 735, 751–52 (2d Cir. 1978); *Phllip M. Adams & Assocs., LLC v. Winbond Electronics Corp.*, No. 1:05-CV-64, 2010 WL 3447251, at *1–*3 (D. Utah Aug. 31, 2010); *Hoffman v. Orthopedic Sys., Inc.*, 327 Ill. App. 3d 1004, 1011 (2002) ("Although her suspicion of wrongful causation was limited to an investigation as to whether medical malpractice was committed, rather than whether a product liability action existed . . . 'wrongfully caused' does not mean knowledge . . . of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is 'wrongfully caused' when he or she possesses 'sufficient information concerning [an] injury and tis cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, the burden is upon the plaintiff to inquire further as to the existence of a cause of action." (citations omitted)).

[181] **Motorola's Response:** Much of Hytera's authority is out of Circuit or inapposite. In one case, the plaintiff had actual knowledge. *Phillip M. Adams & Assocs., LLC v. Winbond Electronics Corp.*, No. 05-CV-64, 2010 WL 3447251, at *1–*3 (D. Utah Aug. 31, 2010) (finding plaintiff had actual knowledge that ASUS had developed a utility that was a "potential theft" of what Plaintiff claims to be trade secrets). Several other cases relate to SEC claims. *See, e.g. Nicpon v. v. Goehausen*, No. 89 C 5674, 1991 WL 5866, at *2 (N.D. Ill. Jan. 15, 1991) (SEC case). In any event, Hytera's own authority confirms that a plaintiff need not have discovered its cause of action unless suspicious circumstances are coupled with "***ease of discovering***, without the use of legal process, whether the suspicion is well grounded." *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997); *see also Renz v. Beeman*, 589 F.2d 735, 751–52 (2d Cir.1978) (plaintiff should have discovered claim where mere "inquiry . . . would have elicited the [relevant] facts" as "[t]here is no indication that a request to see the shareholders' list would have been refused.") The fact that it would theoretically have been ***possible*** to discover the relevant facts is not sufficient. Finally, Hytera's proposal leaves out the fact that, for the statute of limitations to start running, the plaintiff must have "sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Hoffman v. Orthopedic Sys., Inc.*, 327 Ill. App. 3d 1004, 1011, 765 N.E.2d 116, 122 (2002).

[182] **Motorola's Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.,* No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; 765 ILCS 1065/7; 18 U.S.C. § 1836(d).

[183] **Motorola's Response**: Hytera's proposal is incorrectly limited to the ITSA, whereas Motorola's clearly explains the differences between the two. In addition, Hytera's proposal is incorrect because it suggests fraudulent concealment is irrelevant and could result in the jury finding Motorola's claims barred even if the jury believes Hytera fraudulently concealed its theft.

[**Hytera's Proposal:** Motorola is a corporation that acts and possesses knowledge through its employees. You may find that Motorola had knowledge of a fact, if an employee knew about that fact and the fact was within the scope of the employee's duties and responsibilities.[184]] [**Motorola's Proposal**: The fact that former Motorola employees stole trade secrets from Motorola does not mean Motorola had knowledge of the theft. You should not consider their knowledge of the theft in deciding whether Motorola knew or should have known of the misappropriation][185]

---

[184] **Hytera's Authority:** Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1. As discussed above, the nuances of imputation of the various knowledge to be imputed to a corporation warrant explanation at each turn, rather than one generic (and incomplete) imputation instruction.

[185] **Motorola's Response:** Motorola objects to the inclusion of these instructions to the extent they address an employer's liability for its employees' actions, as that issue is addressed in the respondeat superior instruction. Motorola further objects to this instructions as misleading. Motorola alleges that its ***former*** employees used its trade secrets and concealed evidence while at Hytera. Yet, Hytera's proposal may mislead the jury into thinking that its former employees' knowledge may be imputed to it. Nonetheless, to avoid confusion, the jury should be instructed that the thieves' knowledge of their misappropriation while employed at Motorola cannot be imputed to Motorola .

**Instruction No. \*\* (Disputed) - Fraudulent Concealment**

[**Motorola Proposal**: The statute of limitations can be tolled if Hytera fraudulently concealed its misappropriation. In order to prove fraudulent concealment, Motorola must prove by clear and convincing evidence that

    1. Hytera knowingly concealed its misappropriation from Motorola;

    2. Hytera concealed its misappropriation with the intent to deceive Motorola and induce Motorola to believe no misappropriation had occurred;

    3. Motorola acted in justifiable reliance on the facts as were known to Motorola.

    4. Motorola's delay in filing suit resulted from the concealment of material facts by Hytera. When I use the word "material," I mean that if Motorola had been aware of the concealment, Motorola would have acted differently.

    Concealment may consist of some trick or contrivance or other affirmative action intended to exclude suspicion, prevent inquiry or induce Motorola to delay filing the claim. If you find that the Motorola has proven by clear and convincing evidence that Hytera fraudulently concealed the alleged misappropriation, then Motorola's claim is not barred by the statute of limitations if Motorola brought its claim five years from the date it discovered Hytera's fraudulent concealment under the Illinois Trade Secrets Act and three years from the date it discovered Hytera's fraudulent concealment under the Defend Trade Secrets Act.][186][187]

---

[186] **Motorola's Authority**: *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 394 (5th Cir. 2012); *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004) ("A statute of limitations may be tolled if the person liable for the claim fraudulently concealed the existence of the cause of action from the plaintiff."); 735 Ill. Comp. Stat. 5/13-215; *Bailey v. Glover*, 88 U.S. 342, 349-50 (1874); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); *Zirvi v. Flatley*, No. 18-cv-7003, 2020 WL 208820, at \*6 (S.D.N.Y. Jan. 14, 2020); *C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008); Ill. Pattern Jury Instr.-Civ. 800.09B, Ill. Pattern Jury Instr.-Civ. 800.09B; Ill. Pattern Jury Instr.-Civ. 800.04, Ill. Pattern Jury Instr.-Civ. 800.04; *Mack v. Plaza Dewitt Ltd. Patnership*, 484 N.E.2d 900, 906 ("A misrepresentation is material and therefore actionable if it is such that had the other party been aware of it, he would have acted differently. In other words, the misrepresented element must be an essential element to the transaction between the parties."); 18 U.S.C. § 1836(d).

[187] **Hytera's Response**: Hytera objects to the inclusion of an instruction on fraudulent concealment. The evidence at

trial will not support a reasonable jury's finding that *Hytera* fraudulently concealed any information. Moreover, at all relevant times, Motorola possessed all the information it needed to conduct the investigation that led to this lawsuit, which information is not the subject of Motorola's fraudulent concealment theory. Hytera has also moved in limine concerning fraudulent concealment. To the extent that motion is denied or the Court determines to offer an instruction on fraudulent concealment, Hytera reserves the right to offer an alternative instruction. Notably, Motorola'zs proposed instruction misstates the law by, inter alia, implying that Motorola had no duty of reasonable diligence whatsoever.

**Instruction No. 37 (Agreed) – References to Other Trade Secrets**

  You may have heard references to other trade secrets that have been asserted in this case.

You should not infer anything about this case from those references, except to the extent

supported by actual evidence in this case.

**Instruction No. 38 (Disputed) – Copyright Allegation Generally**

    **Motorola's Proposal:**

    Motorola claims that Hytera has infringed Motorola's copyright in its Digital Mobile Radio computer program that exists in Motorola's MotoTRBO product (the "DMR program") by copying original elements of Motorola's DMR program into Hytera's own DMR program, which it distributed to customers. [188]

    Copyright protection in Motorola's DMR Program extends to its source code and object code, as well as its sequence, structure, and organization. [189]

    **Hytera's Response to Motorola's Proposal**:

    Motorola's definition of its "DMR program" has been a moving target throughout this litigation. Although its complaint identified only two registered works purportedly constituting that "DMR program" Motorola revealed its intent to assert copyright claims based on four works near the end of fact discovery. And its four works, which are used on distinct products and which include versions released at different times, do not constitute a single "program." Referring to those four works as a cohesive unit is likely to confuse the jury, which must consider infringement on a work-by-work basis. This is especially so because Motorola and its experts overstate the extent of any copying by pointing to multiple works as the source of a single instance of copying. Plainly, a single portion of code was not copied from multiple works. The jury should be instructed on the precise nature of Motorola's claims, and Motorola should be required to concretely identify each of the four works at issue. Otherwise, the jury will likely be

---

[188]  **Motorola's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.1.1.

[189]  **Motorola's Authority:** *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355 (Fed. Cir. 2014); *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 978 (7th Cir. 1997).

mislead regarding the nature and extent of any copying.

Hytera objects to the inclusion of a description of what copyright protection extends to. The model instruction that Motorola cites does not include such an instruction, and it is inappropriate as part of a preliminary instruction. Moreover, Motorola has not identified a structure, sequence, and organization at issue in the case. Indeed, below, it argues that there is no non-literal copying at issue in the case, so an instruction related to non-literal copying is inappropriate.

<u>**Hytera's Proposal:**</u>

Motorola claims that Hytera has infringed Motorola's copyright in four works, respectively titled, MOTOTRBO Mobile Subscriber FW Package R01.00.01, MOTOTRBO Portable Subscriber FW Package R01.00.01, MOTOTRBO CYPHER R01.00.01, and MOTOTRBO Portable R01.03 by copying original elements of those works into Hytera's own DMR program. [190]

**Motorola's Response to Hytera's Proposal**:

Hytera's instruction will complicate the issues for the jury. Motorola has consistently approached this case by referring to its DMR Program. It would be unusual to require the jury to consider each version of that program that was registered, and Hytera's proposal purports to define and limit the scope of Motorola's copyrights, which themselves are issues for the jury. Motorola's proposal is more streamlined and clear.

Contrary to Hytera's argument that "Motorola's definition of its 'DMR program' has been a moving target throughout this litigation," the work at issue was and always has been Motorola's DMR Program—defined as Motorola's Digital Mobile Radio ("DMR") computer

---

[190]  **Hytera's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.1.1.

program in Motorola's MotoTrbo product lines. Dkt. 265 (Am. Compl.) ¶ 48. The Copyright Office issued four certificates of registration covering the DMR Program. While Hytera argues that Motorola's "copyright claims[are] based on four works," the alleged infringement is of the DMR Program, not the four certificates of registration issued by the Copyright Office. Even where multiple certificates of registration are issued for different versions of a work or even multiple works in a television or literary series, it is common practice in copyright cases for numerous works to be aggregated when analyzing a copyright claim. *See Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 138 (2d Cir. 1998) (treating 82 separate episodes of Seinfeld television series "as a single work"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372–73, 1381 (2d Cir. 1993) (comparing infringing book to 8 episodes of Twin Peaks that were treated as a whole); *Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (addressing abstracts of research reports cumulatively); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 396 (D.N.J. 2012) (discussing different versions of Tetris electronic game in the aggregate as Tetris); *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (discussing infringement of seven Harry Potter novels and two companion books in the aggregate).

**Instruction No. 39 (Disputed) – Copyright Infringement**

      <u>**Joint Proposal:**</u>

To succeed on its claim as to each of the four asserted works, Motorola must prove the following

things by a preponderance of the evidence:

     1.   Motorola owns a valid copyright in the asserted work; and

     2.     Hytera copied protected expression from the work [**Motorola's proposal**: in or

from the United States.][191]

     I will explain what these terms mean. [192]

     If you find that Motorola has proved each of these things, then you must find for

Motorola.  However, if you find that Motorola did not prove each of these things, then you must

find for Hytera.

      <u>**Motorola's Proposal:**</u>

     The evidence in this case includes Exhibits PTX-1527, PTX-1528, PTX-1645, and PTX-

1659, which are the certificates of copyright registration from the Copyright Office for

Motorola's DMR Program. You are instructed that the certificates are sufficient to establish that

there is a valid copyright in the DMR Program, including that it is original and copyrightable and

that Motorola owns the copyright in it.[193]

---

[191]  **Motorola's Authority**: *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 843 F.3d 987, 992 (9th Cir. 1998).

[192]  **Joint Authority:** *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.2.1; Amended Complaint.

[193]  **Motorola's Authority:** Manual of Model Civil Jury Instructions of the Ninth Circuit, Instruction No. 17.7; 17 U.S.C. § 410(c).

**Instruction No. 40 (Agreed) – Copyright Ownership**

       <u>**Joint Proposal:**</u>

       Motorola owns a copyright in an asserted work if it was prepared by Motorola employees within the scope of their employment; or specially commissioned as a contribution to a collective work and there was a prior agreement, signed by Motorola and if those that prepared it agreed that the work would be a work made for hire.[194] [195]

---

[194]   **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.4.2.

[195]   This instruction is unnecessary if Motorola's proposal in Instruction No. 39 is adopted.

**Instruction No. 41 (Disputed) – Copying**

> ### Joint Proposal:

As I stated, Motorola must prove that Hytera copied protected expression in its work. You may infer that Hytera copied Motorola's work if Hytera had the opportunity to view or read the original before creating its own work and the two works are so similar that a reasonable person would conclude Hytera took protected expression from Motorola's work.[196]  You may also infer that Hytera copied Motorola's work if the similarities between the two works can be explained only by copying, rather than by coincidence.[197]

> ### Motorola's Proposal:

In making that determination, the focus is on similarities between the works.  Hytera cannot excuse its infringement by pointing to portions of its work that it did not copy from Motorola.[198]

> ### Hytera's Proposal:

In determining whether Motorola has proved copying, you must consider whether the alleged similarities constitute protected expression or only unprotectable elements.[199] [200]

---

[196]  **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.1.

[197]  **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.1.

[198]  **Motorola's Authority:** "The focus in a copyright infringement action, however, is on the similarities in protectible expression. . . . '(I)t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'"  *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 619 (7th Cir. 1982) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)).

[199]  **Hytera's Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.1 (bracketed language explaining appropriate considerations for the jury, which is appropriate here where Motorola has alleged fragmented literal and non-literal copying, which often encompasses discrete allegations that are similar only insofar as they both utilize unprotectable concepts).

[200]  **Motorola's Response:**  Hytera's proposal is unsupported and confusing.  In particular, the language does not appear in Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.1.  Further, the model instruction already indicates that Hytera must have taken Motorola's protected expression, making the additional language unnecessary.

In assessing the similarity between two computer programs, you should apply a three-step abstraction-filtration-comparison test. First, you should consider Motorola's works at decreasing levels of abstraction or generality, beginning with its overall structure, and focusing down to the actual code. At each level of abstraction, you should identify any unprotectable aspects of the program, which I will guide you on in a moment, and remove them from your consideration of the program. Finally, you should compare what remains to Hytera's work. Ultimately, you must determine whether Motorola has proved that Hytera copied protectable portions of each of Motorola's works that constitute a substantial part of the original work.[201] [202]

I will now give you some examples of what constitutes protected expression and what does not, in order to aid you in this process.

---

[201] **Hytera's Authority:** *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992); *Oracle Am. Inc. v. Google Inc.*, 750 F.3d 1339, 1357–59 (2014); 4 Nimmer on Copyright §§ 13.03[D][2] (fragmented literal similarity), 13.03[E]; *see also Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 839 (10th Cir. 1993). Notwithstanding the fact that the Seventh Circuit has not expressly adopted the abstraction-filtration-comparison test, that test remains widely in use in software copyright cases, and it has been applied in cases that involve literal and non-literal copying alike. Here, where the alleged similarity is fragmented and at times fails to identify any literal elements in common, this test is particularly appropriate.

[202] **Motorola's Response:** The Seventh Circuit has not adopted the abstraction-filtration-comparison test to determine substantial similarity. *Datacarrier S.A. v. WOCCU Servs. Grp.,Inc.*, No. 16-CV-122-JDP, 2018 WL 1514456, at *6 (W.D. Wis. Mar. 27, 2018) ("The abstraction-filtration-comparison approach has not been endorsed by the Seventh Circuit Court of Appeals."). Nor has Hytera identified any jury instructions that have adopted its proposal or cases in the Seventh Circuit that support its proposal. Moreover, the out-of-Circuit decision of *Computer Assocs. International, Inc. v. Altai, Inc.*, involved a situation where only the non-literal elements of a computer program were alleged to have been copied. 982 F.2d 693, 706 (2d Cir. 1992); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1357 (Fed. Cir. 2014) ("When assessing whether the *non-literal* elements of a computer program constitute protectable expression, the Ninth Circuit has endorsed an 'abstraction-filtration-comparison' test . . . ." (emphasis added)). Here, Hytera has copied literal elements of Motorola's computer program (*i.e.*, its source code), making the abstraction-filtration-comparison test unnecessary in any event.

Further, Hytera, relying on the additional out-of-Circuit case of *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 839 (10th Cir. 1993), proposes introducing the vague and undefined term "substantial part," without providing guidance to the jury as to whether this term refers to volume or significance. Motorola does not think that the model instruction requires revision in this case.

**Instruction No. 42 (Disputed) – Protected Expression**

    <u>**Joint Proposal:**</u>

"Protected expression" means expression in Motorola's work that was created independently, involving some creativity.

Copyright law protects only original expression in the work.  This includes the way that facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices are expressed in the work.  It does not include the facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices themselves.[203]

    <u>**Hytera's Proposal:**</u>

Protected expression does not include a method of operation, regardless of the form in which it is described, explained, or embodied in a work.[204] [205]  Even if there are multiple methods by which an operation can be performed, the selection of a particular method of

---

[203]  **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.2.

[204]  **Hytera's Authority:** 17 U.S.C. § 102(b).

[205]  **Motorola's Response:**  The joint proposal addresses these same principles but is based on the Seventh Circuit Model Instruction.  Hytera's proposal is repetitive and confusing.

operation is not eligible for protection.[206] [207]

---

[206] **Hytera's Authority:** *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005) ("Even if there are multiple methods by which an operation can be performed, a plaintiff's choice of a particular method of operation is not eligible for protection."). Although *Incredible Techs* reached that conclusion by reference to a First Circuit decision, the quoted language is presented as the applicable rule of law, not merely a statement of the law as applied by the First Circuit (i.e., in *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995). And, indeed, the Seventh Circuit applied that rule as part of its holding in *Incredible Techs.* (e.g., affirming the decision that "the instructions on the control panel were not creative expressions" because they are "utilitarian explanations of that system and are not sufficiently original or creative to merit copyright protection"). Contrary to Motorola, this proposed instruction is precisely in line with 7th Circuit authority. Motorola's cited authority, *Oracle*, which was decided by the Federal Circuit, applying Ninth Circuit copyright law, is inapposite and does not warrant dislodging the Seventh Circuit's holding. To the extent *Oracle* conflicts with the holding of *Incredible Techs.*, the latter controls. Second, *Oracle*'s consideration of the fact that *Lotus* did not involve copying of source code is irrelevant. Here, the constrained elements are methods of operation *within* source code, while *Lotus* involved a method of operation independent of the source code that implemented it. Moreover, since the issue here is a jury's consideration of infringement, not a question of noninfringement as a matter of law, the jury must be instructed concerning the functional and unprotectable aspects that rest beneath any protectable expression to be compared—a concern absent from *Oracle*. Neither *American Dental* nor *Oracle*'s discussion of it is to the contrary (and the former pre-dates *Incredible Techs.*, leaving *Incredible Techs.* to control, again). Indeed, *American Dental* states the same rule as that stated in *Incredible Techs*. *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 981 (7th Cir. 1997) ("Protecting *variations* [i.e., not just direct copies] on the forms could have permitted the author of an influential accounting treatise to monopolize the practice of double-entry bookkeeping." (citing *Baker v. Selden*, 101 U.S. 99 (1879) (emphasis added)). *Oracle* discusses that decision only insofar as it rejects the notion that any "system" is an unprotectable method of operation. *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1366 (Fed. Cir. 2014). That is not the issue here.

It is of no moment that the statutory prohibition on protection for methods of operation (among others) is a codification of the rule of idea-expression merger. Hytera's proposed instruction and the case law on point *explains* what an unprotectable method of operation is. And considerable portions of Motorola's accusations of copying address basic and discrete data structures and functions that are similar only insofar as they employ similar methods of operation with syntax and verbiage constrained by the programming platform. That is an issue for the merits, but an instruction that correctly states the law of merger is appropriate. Moreover, Motorola equivocates about whether its copyright allegations concern only literal copying or non-literal copying such as copying related to some unspecified structure, sequence, and organization.

[207] **Motorola's Response:** Hytera's instruction that "[e]ven if there are multiple methods by which an operation can be performed, the selection of a particular method of operation is not eligible for protection," is inconsistent with Seventh Circuit law, and Hytera fails to point to any instructions adopted by this District that include that proposal. Hytera claims that its instruction is based on 17 U.S.C. § 102(b), which states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Yet, the Seventh Circuit explained in *American Dental Association v. Delta Dental Plans Association* that "Section 102(b) codifies the fact-expression dichotomy." 126 F.3d 977, 981 (7th Cir. 1997). Thus, although an idea or fact (or synonymous terms like "methods of operation" or "systems") cannot be protected on their own, the expression of those ideas, methods, or systems are protected by copyright. That is why, a book about performing a surgical method would have copyright protection for its text, but the copyright would not extend to performance of the surgical method itself. Likewise, although the specific functionality performed by a computer program could be unprotectable, as long as there are multiple ways to achieve the same functionality from which the author chooses one way, the way that the functionality is expressed in the computer program's source code is protectable. This concept was discussed in detail in *Oracle America, Inc. v. Google Inc.*, on which Hytera relies for other proposed instructions. As the Federal Circuit explained, a work is "entitled to copyright protection as long as the author had multiple ways to express the underlying idea." 750 F.3d 1339, 1365 (Fed. Cir. 2014). Hytera's proposed instruction is directly contradicted by its own authority, and by the

95

Protected expression also does not include elements of a work that are indispensable or at

least standard in the treatment of a particular subject.[208] [209]

Seventh Circuit's approach to Section 102(b).

The sole case on which Hytera relies, *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, is not to the contrary. *First*, the decision turned not on whether the element at issue was a method of operation or could have been written in different ways, but whether it was "original or creative" enough "to merit copyright protection." 400 F.3d at 1013. That is consistent with the holdings in *American Dental* and *Oracle*. In any case, a court "cannot assume that a subsequent panel of the Seventh Circuit can overrule another prior panel implicitly." *Caine v. Burge*, 897 F. Supp. 2d 714, 719 (N.D. Ill. 2012) ("To overrule precedent of the Seventh Circuit requires a recognition by the panel of the previous decision or decisions to be overruled and circulation of the overruling decision to the full court pursuant to Circuit Rule 40(e)."). Thus, *Incredible Technologies* must be read consistently with *American Dental*; it could not have implicitly overruled *American Dental* as Hytera suggests (which in any case is unnecessary as both decisions are consistent with each other and with Motorola's position). *Second*, the portion of the opinion relevant to Hytera's proposed instruction describes how the *First Circuit* approached Section 102(b) in *Lotus v. Borland*. 400 F.3d 1007, 1012 (7th Cir. 2005). As discussed above, the Seventh Circuit's decision did not turn on that question and, thus, at best the recitation of First Circuit law is dicta. Moreover, as discussed in *Oracle*, the First Circuit's approach is inconsistent with the Seventh Circuit interpretation in *American Dental* and other courts that have considered Section 102(b). 750 F.3d at 1365–66. And, in any case, even the First Circuit now acknowledges that Section 102(b) is merely a "statutory codification" of the idea/expression dichotomy. *See Situation Mgmt. Sys., Inc. v. Asp. Consulting LLC*, 560 F.3d 53, 55 (1st Cir. 2009) ("[T]he statutory restriction in § 102(b) is a codification of '[t]he most fundamental axiom of copyright law ... that `[n]o author may copyright his ideas or the facts he narrates.'"). *Third*, *Lotus* rejected the abstraction-filtration-comparison test that Hytera advocates for above. *Compare supra* (Hytera arguing that the AFC test "remains widely in use in software copyright cases") *with* 49 F.3d at 815 (the First Circuit concluding that the AFC test is "of little help in assessing whether the literal copying of a menu command hierarchy constitutes copyright infringement"). As the *Oracle* court noted, "the hard and fast rule set down in *Lotus* and employed by the district court here . . . is at odds with . . . the abstraction-filtration-comparison analysis." 750 F.3d at 1366. Likewise, the Tenth Circuit rejected *Lotus*, holding that "although an element of a work may be characterized as a method of operation, that element may nevertheless contain expression that is eligible for copyright protection" because Section 102(b) "does not extinguish the protection accorded a particular expression of an idea merely because that expression is embodied in a method of operation at a higher level of abstraction." *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997). *Finally*, Hytera has never identified in this case or in its jury instruction submission a method of operation to which the First Circuit *Lotus* test would be applied in this case. This is a case about copying of source code, which makes it factually (as well as legally) distinct from *Lotus*. *See Oracle*, 750 F.3d at 1365 (distinguishing First Circuit approach as inapplicable to (a) source code copying, (b) copying of creative elements, and (c) copying of elements that are not essential to operate a system). For these reasons, Motorola respectfully requests that this Court not adopt Hytera's incorrect and confusing instruction.

[208] **Hytera's Authority:** *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011–12 (7th Cir. 2005) (explaining that scenes a faire excludes from protection elements "which are as a practical matter indispensable, or at least standard, in the treatment of a given topic").

[209] **Motorola's Response:** Hytera's proposal introduces the vague terms "indispensable" and "standard" without definition; such instructions are likely to confuse the jury. To the extent any instruction is added regarding the

Protected expression also does not include individual words and short phrases such as names, titles, and slogans.[210] [211]

---

merger and *scenes a faire* doctrines, they are affirmative defenses that Hytera did not plead in its answer and, thus, has waived.  *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 Civ. 2523, 2003 WL 1720073, at *8 (N.D. Ill. Mar. 31, 2003); *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 753 F. Supp. 2d 753, 761 (N.D. Ind. 2010); *see also Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1358 (Fed. Cir. 2014).  Moreover, the instruction should make clear that Hytera bears the burden of presenting evidence as to those doctrines.  4 Nimmer on Copyright § 13.03 (2019) ("defendant must go forward at trial with appropriate evidence as to [merger and *scenes a faire*] doctrines).

[210] **Hytera's Authority:** 37 C.F.R. § 202.1; *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) ("the name alone cannot constitute protectable expression"). *Schroeder v. William Morrow & Co.*, 566 F.2d 3, 5 (7th Cir. 1977) ("The copyright protects not the individual names and addresses but the compilation, the product of the compiler's industry.").

[211] **Motorola's Response:** With regard to words and short phrases, the Federal Circuit also explained that "the relevant question for copyrightability purposes is not whether the work at issue contains short phrases — as literary works often do — but, rather, whether those phrases are creative."  *Oracle*, 750 F.3d at 1362.  *Peters v. West*, on which Hytera relies, is not to the contrary as the court merely found that the name "Kate Moss" was not copyrightable, which does not compare to the massive number of lines of code that Hytera copied from Motorola.  692 F.3d 629, 636 (7th Cir. 2012).

**Instruction No. 43 (Revised) – Copyright Damages Generally**[212] [213]

[**Motorola's Proposal**: Motorola contends that Hytera is liable for copyright infringement based on U.S. sales of its DMR products. Motorola also contends that Hytera is liable for copyright infringement because certain individuals infringed Motorola's copyright in or from the United States, Hytera profited from that infringed; and Hytera had the right or ability to stop or limit that infringement, but failed to do so.] [214]

If you find that Motorola has proved that Hytera has infringed Motorola's copyright by a preponderance of the evidence, then you must determine the amount of damages, if any, Motorola is entitled to recover. You will be asked to determine Motorola's damages through

---

[212] **Hytera Preface:** Hytera contends that the issues of unjust enrichment and disgorgement of profits are equitable issues for resolution by the judge in conjunction with other issues relating to equitable remedies and defenses. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 686 (2014) (identifying "disgorgement of unjust gains" from infringement as "equitable relief"); *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue."). Hytera proposes these instructions in response to Motorola's proposed instructions in case the judge determines the issues will nonetheless be directed to the jury. Hytera reserves all rights, including the right to propose instructions on other equitable issues, to the extent the judge determines that certain equitable issues should be tried to the jury. Motorola's citation of authority that predates *Petrella* do not resolve the issue it raised.

[213] **Motorola Preface:** The Seventh Circuit clearly contemplates that the jury decide disgorgement and unjust enrichment damages in a copyright case. Indeed, the Committee on Pattern Civil Jury Instructions of the Seventh Circuit included instructions relating to those issues. *See, e.g.*, Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.1 and 12.8.2. Courts have held that disgorgement and unjust enrichment are legal remedies that involve questions of fact for the jury. *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02 C 3293, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) (holding that plaintiff seeking unjust enrichment sought "legal, rather than equitable, relief"); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004) ("award of profits" is a legal remedy); *Federal Deposit Insur. Corp. v. Bank One, Waukesha*, 881 F.2d 390, 392 (7th Cir. 1989) (affirming district court's judgment entered after a jury trial on unjust enrichment claim); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004) ("award of profits" is a legal remedy); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 874 (E.D. Wis. 2010) (finding that "the remedy sought is legal in nature" where plaintiff "is seeking disgorgement of the benefit [plaintiff] allegedly provided to [defendant]" because "the court is guided by dicta in the case of *First Nat'l Bank v. Warren*, 796 F.2d 999 (7th Cir. 1986), where the Seventh Circuit described the disgorgement remedy as legal in nature when a "plaintiff seeks money for its own coffers."). *Petrella*'s comment about unjust enrichment as an equitable remedy was dicta. *See, e.g.*, Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc., 28 F. Supp. 3d 399, 411 (E.D. Pa. 2014) ("Petrella was a case about laches, and the holding is limited to that issue."). And *Int'l Fin. Servs. Corp.* does not mention or opine on whether "unjust enrichment" or "disgorgement" are legal or equitable remedies.

[214] **Motorola's Authority**: Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.6.1

June 30, 2019, if any.  If you find that Motorola has failed to prove the claim, then you will not consider the question of damages.

Motorola must prove damages by a preponderance of evidence.[215]

Motorola may recover any profits that Hytera made from the infringement **[Hytera's Proposal**: within the United States.]**[216][217]**  I will define these terms in the following instructions.

Motorola is not entitled to a double recovery for the same wrongful conduct under both its trade secret misappropriation and copyright claims.[218]

---

[215] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.1.

[216] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.1.

[217] **Motorola's Response**: *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 843 F.3d 987, 992 (9th Cir. 1998).

[218] **Joint Authority:** *Thermodyne Food Serv. Prods. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) (Alesia, J.) ("Plaintiffs are not entitled to a double recovery under both counts… for the same wrongful conduct.").

**Instruction No. 44 (Disputed) – Copyright / Defendants' Profits**

Motorola is entitled to recover the profits that Hytera made [**Motorola's Proposal**: from the time of first infringement through June 30, 2019] [**Hytera's Proposal:** in the United States from August 2, 2015 to the present[219] [220]] because of the infringement.  Hytera's profits are revenues that Hytera made because of the infringement, minus Hytera's expenses in producing and selling the infringing DMR radios.  Motorola must prove Hytera's revenues and a causal

---

[219] **Hytera's Authority:** *Leventhal v. Schenberg*, 917 F.Supp.2d 837, 846 (N.D. Ill. 2013) (noting the Court is "powerfully convinced the Seventh Circuit would" overturn *Taylor v. Meirick* and find that copyright infringement is not a continuing violation); *see also Diversey v. Schmidly*, 738 F. 3d 1196 (10th Cir. 2013) ("Accordingly, we reject as unnecessary the "continuing wrong" doctrine in the copyright infringement context and adopt the majority view."); *Carter v. Pallante*, 256 F. Supp. 3d 791, 800 n.5 (N.D. Ill. 2017) ("Insofar as Carter seeks to proceed on the basis of infringing actions that took place more than three years prior to his commencing this action, such claims could be barred because there is no continuing violation doctrine under the Copyright Act."); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs."); *Johnson v. Cypress Hill*, 619 F. Supp. 2d 537, 543 (N.D. Ill. 2008) (Norgle, J.); 17 U.S.C. § 507(b).

[220] **Motorola's Response:** Motorola contends that it is entitled to copyright damages from the date of Hytera's first infringement, notwithstanding the three-year statute of limitations.  *See Taylor v. Meirick*, 712 F.2d 1112, 1119 (7th Cir. 1983) ("[w]hen the final act of an unlawful course of conduct occurs within the statutory period, these purposes are adequately served, in balance with the plaintiff's interest in not having to bring successive suits, by requiring the plaintiff to sue within the statutory period but *letting him reach back and get damages for the entire duration of the alleged violation*.")(emphasis added); *Champion Labs., Inc. v. Cent. Illinois Mfg. Co.*, 157 F. Supp. 3d 759, 765 (N.D. Ill. 2016) (noting that "three District Courts in this Circuit, all in trademark and copyright infringement cases, concluded that *Taylor* nonetheless still controls."); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2013 WL 6632741, at *4 (N.D. Ill. Dec. 16, 2013) (Lanham Act and Illinois Consumer Fraud and Deceptive Business Practices Act case following the statute of limitations holding in *Taylor*, and citing *Grove Fresh Distrib., Inc. v. Everfresh, Inc.*, Case No. 89–C–1113, 1990 WL 250416, at *2 (N.D. Ill. Dec. 17, 1990) for the proposition that "As long as the plaintiff can prove damages from the defendants' continuous course of [unfair competition], including some wrongful conduct within the statutory period, *the plaintiff can recover for the entire period*.")(emphasis added); *Persis International, Inc. v. Burgett, Inc.*, No. 09–7451, 2012 WL 4176877, at *4 & n. 5 (N.D. Ill. Sept. 18, 2012) (following *Taylor* to find trademark and unfair competition claims are not barred by statute of limitations); *Panoramic Stock Images, Ltd v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 12 C 9881, 2015 WL 393381, at *2 (N.D. Ill. Jan. 27, 2015) ("Panoramic correctly states governing Seventh Circuit law when, in its brief, it explains that '[u]nder the discovery rule, *a copyright owner is entitled to recover for infringements, regardless of when they occurred*, so long as he or she did not have actual or constructive notice of the infringements more than three years before filing.' … *The court agrees that Panoramic may pursue damages for all infringing activity that it first became aware of in October 2012, including infringements that ended in 2008*.")(citation omitted)(emphasis added); *see also Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 843 F.3d 987, 992 (9th Cir. 1998).  Finally, because the Hytera Defendants are practically partners, they are jointly and severally liable for copyright infringement.  *Belford, Clarke & Co. v. Scribner*, 144 U.S. 488, 507–508, 12 S.Ct. 734, 740, 36 L.Ed. 514 (1892) (printer held jointly liable for publisher's profits on infringing book since they were "practically partners."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985); *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2018 WL 5921315, at *3 (N.D. Ill. Nov. 12, 2018).

relationship between the infringement and those revenues.[221]  Hytera must prove its own

expenses and any portion of its profits that resulted from factors other than infringement of

Motorola's copyright.[222]  [**Hytera's Proposal:** That is, in addition to deducting Hytera's

expenses relating to the infringement, you must only award profits attributable to the infringing

aspects of Hytera's DMR products and not those profits attributable to the non-infringing aspects

of the products.  In apportioning between infringing and noninfringing contributors to Hytera's

profits, what is required is not mathematical exactness, but only a reasonable approximation. [223]

[224]]

---

[221] **Hytera's Authority:**  *Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) ("In other words, a plaintiff must show a causal nexus between the infringement and the gross revenues." (citing *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983)); Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.3

[222] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.3.

[223] **Hytera's Authority:**  *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 932 (7th Cir. 2003).  A clear statement of the law on apportionment is particularly important here, where the alleged infringement is intermingled with Hytera's significant independent contributions as well as the teachings of standard-essential patents.

[224] **Motorola's Response:** Hytera's proposal does not appear in the Seventh Circuit model instruction and is repetitive of the parties' joint instruction—which limits damages to those "suffered . . . because of the infringement."  *See* 0. Hytera also should not be permitted to argue that any uncertainty in its data should be resolved in its favor.  *RKI, Inc. v. Grimes*, 200 F. Supp. 2d 916, 927 (N.D. Ill. 2002).

**Instruction No. 45 (Disputed) – No Double Recovery**

If you award Motorola damages for both its trade secret misappropriation claims and its copyright claims, you must not award damages in a manner that results in double recovery for the same injury.

### Hytera's Proposal[225]:

For example, if you find that Hytera's trade secret misappropriation caused Motorola to lose 100 sales, and you award Motorola its actual loss for those 100 sales, you may not also award Motorola copyright damages in any form based on those lost sales.

---

[225] **Motorola's Response**: Motorola does not object to including a double recovery instruction, but the parties have already agreed on a double recovery instruction to include with the copyright damages instructions. There is no reason to include another, differently worded, double recovery instruction here. In addition, Hytera's inclusion of an example is improper because it may improperly skew the jury's view of the percentage of Hytera's sales on which the jury should award certain types of damages. This is particularly the case because Hytera's example is incomplete and incorrect, as the jury may find different trade secrets misappropriated that may impact how trade secret and copyright damages are awarded.

**Instruction No. 46 (Agreed) – Selection of Presiding Juror; General Verdict**[226]

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

---

[226] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.32.

**Instruction No. 47 (Agreed) – Communication with Court**[227]

I do not anticipate that you will need to communicate with me.  If you do need to communicate with me, the only proper way is in writing.  The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror.  The writing should be given to the marshal, who will give it to me.  I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

---

[227] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.33.

**Instruction No. 48 (Agreed) – Disagreement Among Jurors**[228]

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

---

[228] **Joint Authority:** Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.34.