**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD. | ) ) ) | |
| | ) | Civil Action No.: 1:17-cv-01973 |
| Plaintiffs, | ) ) | |
| | ) | Honorable Charles R. Norgle Sr. |
| v. | ) ) | |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC. | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

**MOTOROLA'S OPPOSITION TO DEFENDANTS' "MOTION TO
ENFORCE THE COURT'S JANUARY 31, 2020 RULING"**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. HYTERA'S MOTION TO RECONSIDER THE COURT'S RULING ON THE
EXTRATERRITORIAL APPLICATION OF THE DTSA SHOULD BE DENIED .........2

    A. The Court Properly Held the DTSA Permits Extraterritorial Damages Here..........2

    B. Hytera's Avoided R&D Costs Are Recoverable under the DTSA .........................3

III. HYTERA'S MOTION TO RECONSIDER THE COURT'S RULING ON THE
COPYRIGHT ACT SHOULD BE DENIED ......................................................................5

IV. HYTERA'S HALF-PAGE, END-OF-TRIAL REQUEST FOR SUMMARY
JUDGMENT ON MOTOROLA'S ITSA CLAIM SHOULD BE DENIED .....................10

V. CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*
69 F.3d 381 (9th Cir. 1995) ...................................................................7

*Andreas v. Volkswagen of Am., Inc.,*
336 F.3d 789 (8th Cir. 2003) ..............................................................8, 9

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801 (Ill. 2005) ..................................................................11

*Bascunan v. Elsaca,*
927 F.3d 108 (2d Cir. 2019)................................................................14

*Butler v. Wittland,*
153 N.E.2d 106 (Ill. App. Ct. 1958) ...................................................14

*Cooley v. Penguin Grp. (USA) Inc.,*
31 F. Supp. 3d 599 (S.D.N.Y. 2014).....................................................7

*Flavorchem Corp. v. Mission Flavors & Fragrances, Inc.,*
939 F. Supp. 593 (N.D. Ill. 1996) .......................................................14

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
443 F.2d 1159 (2d Cir. 1971)................................................................9

*Graham v. Gen. U.S. Grant Post No. 2665, V. F. W.,*
248 N.E.2d 657 (Ill. 1969) ..................................................................14

*Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. P'ship,*
807 F. Supp. 470 (N.D. Ill. 1992) .......................................................12

*IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.,*
304 F. Supp. 3d 746 (N.D. Ill. 2018) ..................................................11

*Jefferson v. Sec. Pac. Fin. Servs., Inc.,*
162 F.R.D. 123 (N.D. Ill. 1995).............................................................1

*McCarty v. Menards,*
327 F.R.D. 177 (N.D. Ill. 2018).............................................................2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
545 U.S. 913 (2005)...............................................................................9

*Microsoft v. AT&T*,
    550 U.S. 437 (2007) ............................................................................................................15

*Negonsott v. Samuels*,
    507 U.S. 99 (1993) ..............................................................................................................3

*NFL v. PrimeTime 24 Joint Venture*,
    211 F.3d 10 (2d Cir. 2000) .................................................................................................8

*Oto v. Metro. Life Ins. Co.*,
    224 F.3d 601 (7th Cir. 2000) ..............................................................................................2

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
    719 F. Supp. 2d 766 (S.D. Tex. 2010) ................................................................................9

*Riddell, Inc. v. Monica*,
    No. 03 C 3309, 2003 WL 21799935 (N.D. Ill. July 25, 2003) .........................................13

*Specht v. Google, Inc.*,
    660 F. Supp. 2d 858 (N.D. Ill. 2009) ...........................................................................12, 14

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    No. 17-CV-00561, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) .....................................7

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) ...........................................................................................8, 9

*Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*,
    No. 15-cv-01541, 2017 WL 3425140 (D. Colo. Aug. 9, 2017) ...........................11, 14, 15

*WesternGeco LLC v. ION Geophysical Corp.*,
    138 S. Ct. 2129 (2018) ............................................................................................. *passim*

*WGN Cont'l Broad. Co. v. United Video, Inc.*
    693 F.2d 622 (7th Cir 1982) ............................................................................................7, 8

*Wiegel v. Stork Craft Mfg., Inc.*,
    891 F. Supp. 2d 941 (N.D. Ill. 2012) .................................................................................1

**Statutes**

765 ILCS 1065/4(a) ...........................................................................................................14

17 U.S.C. § 504(a) ..............................................................................................................8

18 U.S.C. § 1836 ..........................................................................................................3, 11

18 U.S.C. § 1839 ...............................................................................................................12

Pub. L. 114-153 § 5 ............................................................................................................3

UTSA 7-74-101 *et seq.* .....................................................................................................15

**Rules**

Fed. R. Civ. P. 59 ..............................................................................................................2

**Other Authorities**

Restatement (Second) of Torts § 877 (1979) ...................................................................13

S. Rep. 114-220 (Mar. 7, 2016) .........................................................................................3

## I. INTRODUCTION

On January 31, 2020, the Court issued an order on Hytera's mid-trial motion that sought to preclude Motorola from seeking extraterritorial damages under its DTSA, ITSA, and copyright claims. Dkt. 834 ("Order"). In that Order, the Court held that:

- "the DTSA may apply extraterritorially in this case because the requirement of Section 1837(b)(2) has been met. Plaintiffs thus may argue for extraterritorial damages resulting from the misappropriation, but only those damages that occurred after the effective date of the statute—May 11, 2016." *Id.* at 23.

- "[u]njust enrichment may be recovered after the [DTSA] came into effect if [Motorola] can show such unjust enrichment." *Id.*

- Motorola was "entitled to recover damages flowing from exploitation abroad of the domestic acts of [copyright] infringement committed by Defendants." *Id.* at 26.

- "the ITSA does not have extraterritorial reach." *Id.* at 30.

In response to the Court's Order, Hytera filed yet another motion. Dkt. 836. Although Hytera styles its motion as one to "enforce" that Order, Hytera in fact moves for reconsideration of the Court's Order and also effectively seeks summary judgment on Motorola's ITSA claim. Specifically, Hytera asks that:

- "the jury be instructed that Motorola is not entitled to recover Hytera's extraterritorial sales" under the DTSA. Dkt. 836 at 3;

- "the jury should be instructed that the Court has determined as a matter of law that Motorola is not entitled to any damages based on foreign conduct or sales that occurred before May 11, 2016," which "includes any research and development," *id.* at 5-6;

- "[t]he Court should … instruct the jury that Motorola is not entitled to any extraterritorial copyright damages as a matter of law," *Id.* at 11; and

- "[t]he Court should … instruct the jury that Motorola may not recover any nationwide or foreign damages under the ITSA." *Id.*

Hytera's end-of-trial motion should be denied in its entirety. Hytera identifies no reason for the Court to reconsider its Order, let alone for the Court to abandon the analyses and conclusions underpinning its rulings. *See Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012) ("Reconsideration … serve[s] the limited function of correcting manifest errors of law or fact, or to consider newly discovered evidence."); *Jefferson v. Sec. Pac. Fin. Servs., Inc.*, 162

1

F.R.D. 123, 124 (N.D. Ill. 1995) (same under Rule 59(e)).  Instead, Hytera "merely [takes] umbrage with the court's ruling and rehashe[s] old arguments." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).  But "[a] 'manifest error' is not demonstrated by the disappointment of the losing party," and Hytera's motion to reconsider should be denied.  *See id.*  Moreover, nothing in the Court's Order supports Hytera's belated request for summary judgment on Motorola's ITSA claim, or its equally improper suggestion that Motorola cannot recover all damages that flow from Hytera's domestic breaches of the ITSA prior to May 11, 2016.  Simply put, the rulings that Hytera seeks are contrary to the Court's Order and the law.

## II.    HYTERA'S MOTION TO RECONSIDER THE COURT'S RULING ON THE EXTRATERRITORIAL APPLICATION OF THE DTSA SHOULD BE DENIED

### A.    The Court Properly Held the DTSA Permits Extraterritorial Damages Here

In its Order, the Court held that "the DTSA may apply extraterritorially in this case because the requirement of Section 1837(b)(2) has been met" and, as a result, Motorola "may argue for extraterritorial damages resulting from the misappropriation, but only those damages that occurred after the effective date of the statute—May 11, 2016." [1]  Dkt. 834 at 23.  Hytera now asks the Court to abandon that ruling and find that Motorola is not, in fact, permitted to argue for extraterritorial damages under the DTSA.  Dkt 836 at 3.  Hytera identifies no reason for the Court to depart from its reasoned opinion and instead repeats arguments the Court already rejected.  That is no reason for reconsideration. *See McCarty v. Menards*, 327 F.R.D. 177, 179 (N.D. Ill. 2018) (denying motion for reconsideration that was "nothing more than an improper cry for a 'do-over'").

Hytera claims the DTSA requires that Motorola prove "Hytera's extraterritorial sales 'result[ed] from' any 'act in furtherance … committed in the United States.'"  Dkt. 836 at 3.  But

---

[1] The fact that Hytera's misappropriation began before the DTSA was enacted and continued thereafter is no bar to Motorola's recovery.  Dkt. 834 at 22 ("Nothing suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was acquired or used before the DTSA's enactment.").

that is not what the Court held and not what the DTSA provides. The Court held that Motorola "may argue for extraterritorial damages *resulting from the misappropriation*" under the DTSA. Dkt. 834 at 23 (emphasis added). This is precisely what the DTSA permits: recovery of damages "caused by the misappropriation." 18 U.S.C. § 1836(b)(3)(B) ("a court may … award … damages for actual loss caused by the misappropriation of the trade secret; and damages for any unjust enrichment caused by the misappropriation of the trade secret"). The DTSA does not limit damages to those caused by "an act in furtherance," as Hytera claims. Dkt. 836 at 3. Rather, so long as an "act in furtherance" is committed in the United States, the DTSA "also applies to acts occurring outside the United States."[2] Dkt. 834 at 21. And, although the Court remarked that (in the event the DTSA did *not* apply extraterritorially) "what damages would be proper under a use-based theory" could be a "tricky issue," there is no need to reach that hypothetical issue "[b]ecause the Court has found that the statute applies extraterritorially[.]" Dkt. 834 at 25. Hytera identifies no reason for the Court to jettison its conclusion that the DTSA applies extraterritorially or to graft onto the statute requirements contrary to its plain terms. *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (where Congress's "will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive"). Hytera's motion for reconsideration should be denied.

### B. Hytera's Avoided R&D Costs Are Recoverable under the DTSA

The extent of Hytera's argument as to why Motorola allegedly could not recover avoided R&D in its motion to preclude was that "[t]his alleged savings is not an injury to Motorola and, in

---

[2] Hytera's attempt to rewrite the requirements of the DTSA is also contrary to Congress's purpose in enacting the DTSA to provide sufficient remedies to address the increasingly global nature of trade-secret theft. Pub. L. 114-153 § 5 ("It is the sense of Congress that trade secret theft occurs in the United States and around the world," and "wherever it occurs, harms the companies that own the trade secrets and the employees of the companies"); S. Rep. 114-220 at 15 (Mar. 7, 2016) ("As trade secret owners increasingly face threats from both at home and abroad, the bill equips them with the tools they need to effectively protect their intellectual property and ensures continued growth and innovation in the American economy.").

any event, all of Hytera's R&D took place outside the United States."  Dkt. 758 at 5.  The Court addressed R&D savings under the DTSA—but not the ITSA—in its Order, stating that while Motorola could not obtain R&D "costs stretching back into the past prior to the effective date of the DTSA … unjust enrichment may be recovered after the [DTSA] came into effect if [Motorola] can show such unjust enrichment."  Dkt. 834 at 23.  Without identifying an error or changed circumstance, Hytera asks the Court to reconsider (1) its rejection of Hytera's argument that R&D savings are not recoverable because Hytera conducts R&D outside the U.S.; and (2) its ruling that Motorola can pursue unjust enrichment after enactment of the DTSA.  Dkt. 836 at 4–6.  Hytera presents no basis for the Court to reconsider these rulings.

*First*, Hytera claims that Motorola cannot recover unjust enrichment under the DTSA "because the supposed research and development savings … would have occurred abroad and no act in furtherance of them was committed in the United States."  Dkt. 836 at 5.  But the Court found that the DTSA applies extraterritorially, so even if the hypothetical location of Hytera's avoided R&D were relevant, R&D conducted "abroad" still falls within the scope of the DTSA.  Dkt. 834 at 23.  Hytera, nonetheless, attempts to sidestep avoided R&D by imposing another illusory requirement: that Motorola attribute Hytera's avoided R&D to any "act in furtherance … committed in the United States."  Dkt. 836 at 5.  As explained in § II.A., *supra*, neither the DTSA nor the Court's Order includes such a requirement where, as here, the it applies extraterritorially.

*Second*, Hytera claims that its avoided R&D savings "would have occurred, if at all, well before the DTSA went into effect," and that Motorola "offered no evidence from which the jury could make a reasonable quantification of Hytera's savings from research and development that supposedly would have occurred *after* versus *before* the DTSA's effective date."  Dkt. 836 at 5.  Hytera is wrong on both counts.  Hytera released five new products *after* the DTSA's enactment,

which Hytera developed using Motorola's stolen trade secrets and source code. Ex. 1 at 28–29 &
Ex. 2 at 55 (PD530, PD590, PD600 released in 2019; PD880 and PDC760 released in 2017); Trial
Tr. 1431:5-21 (expert testimony identifying versions 1 through 9 of Hytera's software releases as
using Motorola's trade secrets and source code); Ex. 2 at 52-55). Motorola also established that
these R&D costs are attributable to the new products because "to this day" Hytera could not have
developed any DMR radios comparable to Motorola's without Motorola's stolen trade secrets.
Trial Tr. 2021:5–10; *see also id.* at 1950:21–1951:7 (it would take Hytera at least ten years to
develop the stolen trade secrets); *id.* at 1945:1–1946:14 (Motorola trade secret development times
account for advancements in engineering from 2008 to 2018). Thus, even though Hytera stole
Motorola's trade secrets in 2008, Hytera still could not have released its post-DTSA products
without those trade secrets. *See id.* That means Hytera avoided spending R&D for all the Motorola
trade secrets it stole on these five post-DTSA DMR radios. Ex. 3 at 2–4. Motorola should be
permitted to seek avoided R&D damages for violation of the DTSA. Dkt. 834 at 23. Moreover,
Motorola also is independently permitted to recover avoided R&D for Hytera's violation of the
ITSA, which was enacted long before Hytera launched DMR products in 2010. 765 ILSC 1065/9.

## III. HYTERA'S MOTION TO RECONSIDER THE COURT'S RULING ON THE COPYRIGHT ACT SHOULD BE DENIED

The Court's Order denied Hytera's request to preclude Motorola from seeking damages
based on extraterritorial sales for Hytera's copyright infringement (Dkt. 758 at 2), holding that
Motorola is "entitled to recover damages flowing from exploitation ***abroad*** of the domestic acts of
[copyright] infringement committed by Defendants." Dkt. 834 at 26. Dissatisfied with this result,
Hytera asks the Court to reconsider this ruling as well. Dkt. 836 at 6. Hytera identifies no manifest
errors of law or fact, or any other basis that would warrant reconsideration of the Court's ruling.

In re-arguing that Motorola should not be permitted to seek full compensation for Hytera's

copyright infringement, Hytera claims there is no evidence Motorola's U.S.-based ClearCase servers "had anything to do with [its] copying." Dkt. 836 at 7. The Court already rejected this precise argument: in denying this aspect of Hytera's motion to preclude, the Court explained that it "will not throw itself into the bramblebush and analyze whether Defendants have shown that no such act has occurred," finding that Defendants failed to meet their burden. Dkt. 834 at 26-27. And there is no basis for reconsidering the Court's ruling on that point—substantial evidence presented at trial refutes Hytera's claim that Motorola's Illinois servers had nothing to do with the (admitted) copying. Motorola's copyrighted source code is stored on Motorola's ClearCase system. Trial Tr. 209:22–210:11, 211:2–14; 443:16–17, 521:18–20, 989:17–19, 997:10–998:2. ClearCase is a database system based in Illinois that can be accessed remotely. *Id.* at 5087:9–11. ClearCase has servers in Illinois, which are mirrored elsewhere, meaning that "anything that happens on one of those other [servers] goes to Illinois." *Id.* at. 5148:10–16, 5150:5–15; *see also id.* at 5293:24-5295:1 (ClearCase is "still centrally in Illinois in the sense that [the other servers are] simply mirroring what's in Illinois.").

Critically, the source code that Hytera stole "was on the server in Illinois." *Id.* at 5330:11–22; *see also id.* 5327:8–16 (the source code Huang Peiyi stole "would have come from Schaumberg"). This is further supported by the fact that the code Hytera stole was developed through engineering in Illinois. *Id.* at 157:11-24, 189:1-190:12, 5149:19–23. Indeed, Y.T. Kok, whose computer at Hytera had Motorola source code files on it, edited stolen source code files that were in Illinois before leaving Motorola. *See* Ex. 4 at 36–37, 40, 63, 100–102, 113 (files with "IL23" identifier); Ex. 5 (identifying IL23 as Motorola facility in Schaumburg, IL); *see also* Trial Tr. 1270:21-1271:16 (discussing Motorola source code with comments from Y.T. Kok found on Hytera laptop), *id.* at 1272:6-1273:7 (Motorola source code found on Hytera laptop with comment

from Y.T. Kok noting that code is to be "port[ed]" from Motorola's software architecture to Hytera's); *see also id.* at 1324:18-1325:7, 1365:5-1366:1, 1327:17-1328:2 (describing how PTX-147 (Ex. 6) shows Motorola's entire software release 1.3 was stored on Sam Chia's Hytera laptop). And there is no evidence that the stolen source code was developed or originally obtained in Malaysia. Trial Tr. at 227:24-228:3, 5149:19–23, 5087:3-11. Thus, Hytera copied Motorola's source code in the U.S. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-CV-00561, 2017 WL 3485881, at *27 (N.D. Cal. Aug. 15, 2017) (denying motion to dismiss copyright infringement claims where defendant "accessed through fraud Synopsys' software stored on servers in the United States (or through a virtual host located in California"); *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 610 n.66 (S.D.N.Y. 2014), *as corrected* (July 14, 2014) (finding predicate act where photos were displayed online, which "permitted reproduction of the photographs abroad).

Hytera next argues that, even if source code was copied from Motorola's U.S. servers, then the "copying or downloading would occur in Malaysia," not in the U.S. Dkt. 836 at 8–9. But Motorola's code is stored on its ClearCase system in Illinois, and even if that code were accessed remotely, the copied code is based in Illinois and then mirrored to other locations. Trial Tr. 443:20-21, 5087:9-11, 5150:25–5151:3. Hytera's sole cited authority, *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, underscores why Hytera's argument is incorrect. As an initial matter, *Allarcom* is inapposite as it involved infringement of the public performance right, not the reproduction right at issue here. 69 F.3d 381, 387 (9th Cir. 1995). Nevertheless, Hytera asserts that a reproduction only occurs at a transmission's destination based on its reading of *Allarcom*. Dkt. 836 at 8–9. *Allarcom* is not the law in this Circuit, however, and Hytera's reading of that case is at odds with Seventh Circuit authority. In *WGN Cont'l Broad. Co. v. United Video, Inc.*, the Seventh Circuit held that public performance infringement does not occur just at a

transmission's destination, but at each intermediate step along the way. 693 F.2d 622, 625 (7th Cir. 1982). In other words, the *source* of the transmission constitutes an act of domestic infringement even if it arrives in a foreign locations. *NFL v. PrimeTime 24 Joint Venture*, 211 F.3d 10, 13 (2d Cir. 2000). Accordingly, even under Hytera's public performance theory, because the copying of Motorola's source code originated at Motorola's servers in the U.S., it constitutes a predicate act of domestic infringement.

Hytera also claims Motorola cannot establish damages because "[t]here were several additional steps that must occur after the alleged 'predicate act' … before Hytera could possibly obtain any foreign profits." Dkt. 836 at 10. Hytera misapprehends Motorola's burden to prove copyright damages. While Motorola must prove some connection between Hytera's revenues and the infringement, Hytera bears the burden of proving its profits are attributable to factors other than the infringement. 17 U.S.C. § 504(a). Motorola has easily satisfied its burden, offering significant evidence that Hytera's revenues for its accused DMR radios are causally related to (and directly flow from) its copying of Motorola's source code in the first instance (the U.S.-based predicated act). Trial Tr. 2156:15-24; 2157:8-2159:5; 2162:10-2167:5; 2167:9-2168:10; 2168:23-2171:5; *see Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 308 (4th Cir. 2012) (finding predicate act supported damages where defendants "used the converted blueprints to produce mining tires" and "sold these tires to former customers of Alpha, causing Alpha substantial damage"). If Hytera contends that those revenues are related to some factors other than its U.S.-based infringement, Hytera must be put to its proof. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797 (8th Cir. 2003) ("Once a nexus was shown …, Andreas was required under the statute only to establish Audi's gross revenue[.]").

Additionally, Hytera claims that it cannot be liable for any domestic predicate act because

Motorola employees were purportedly "authorized" to copy the source code from the ClearCase server, and were not Hytera employees.[3]  Dkt. 836 at 9.  Hytera cites nothing establishing that any employee, let alone any former Motorola employee, was authorized to steal Motorola's source code.  *Id.*; *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 774 (S.D. Tex. 2010) (denying motion to dismiss where employees reproduced employer's copyrighted computer code without authorization).  Hytera also ignores that it is vicariously liable for the former Motorola's employees' copying, at least one of whom was a Hytera employee at the time of the copying (Y.T. Kok) and all of whom were acting as Hytera's agents at the time.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, (2005) ("One … infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]"); *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (vicarious liability applies "even in the absence of an employer-employee relationship").  There is substantial evidence from which a reasonable jury could conclude that Hytera encouraged and profited from the theft without trying to stop it.  Trial Tr. at 2191:23-2192:4; 2481:18-2482:4; 3222:23-3223:11; *see also* n.5, *infra*.

Finally, Hytera claims that Motorola "waived" the scope of copyright damages provided by the Court's Order.  Dkt. 836 at 6.  To the contrary, Motorola presented substantial evidence of the domestic infringement—as described above—and damages flowing from Hytera's exploitation of that infringement abroad.  Dkt. 774 at 11–12; Ex. 1 at 1 (Hytera's incremental profits from

---

[3] In a footnote, Hytera argues Motorola's copyright claim is barred by the statute of limitations. Although Hytera admits that its argument is contrary to *Tire Eng'g & Distrib.*, 682 F.3d at 309, it claims that *WesternGeco* is "controlling" on statute of limitations.  (Dkt. 836 at 10 n.2). *WesternGeco*, however, says nothing about the statute of limitations at all.  In any event, Hytera's attempt to copyright-based statute of limitations claims fails as Motorola previously explained. Dkt. 812 at 11–12; Dkt. 829 at 4–5.

worldwide sales of accused devices). Indeed, if Motorola had waived such damages, the issue would not have arisen in the Court's Order in the first instance. At bottom, Hytera identifies no manifest error of law or fact in the Court's ruling that Motorola is "entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by Defendants." Dkt. 834 at 26. Hytera's motion for reconsideration should be denied.

## IV. HYTERA'S HALF-PAGE, END-OF-TRIAL REQUEST FOR SUMMARY JUDGMENT ON MOTOROLA'S ITSA CLAIM SHOULD BE DENIED

The Court's Order held "that the ITSA does not have extraterritorial reach." Dkt. 834 at 30. But nothing in the Court's Order concludes that Motorola's ITSA claim involves an impermissible *domestic* application of that statute, and Hytera did not request such a ruling. To the contrary, the Court's ruling that "this case would still present a proper domestic application of the [DTSA]" if the DTSA were not extraterritorial (Dkt. 834 at 23) confirms—as does substantial additional evidence described below—that this case involves a proper domestic application of the ITSA. Moreover, nothing in the Court's Order concludes that Motorola is not entitled to recover all damages (including foreign damages) flowing from Hytera's domestic violation of the ITSA, and the law—as well as the Court's Order—makes clear that Motorola can do so.

In six sentences, Hytera argues it is entitled to judgment as a matter of law "on the issue of monetary recovery under the ITSA" because, according to Hytera, Motorola "has offered no evidence from which the jury could make a reasonable quantification of Hytera's profits from sales in Illinois." Dkt. 836 at 11. This argument misreads the Court's Order and is legally wrong. For starters, Hytera's argument ignores that "misappropriation" includes more than just use; it also includes acquiring trade secrets, which substantial evidence confirms occurred in Illinois, as described below. 765 ILSC 1065/2(b)(1). Moreover, the law is clear that Motorola may recover all proximate and foreseeable damages from the misappropriation that occurred in Illinois, whether

10

by acquisition or use, including from sales of DMR radios Hytera has made and/or sold outside of Illinois (including abroad) using trade secrets stolen from Illinois. *See WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136, 2139 & n.3 (2018); *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541, 2017 WL 3425140, at *8 (D. Colo. Aug. 9, 2017).[4]

Because the Court held that the ITSA does not rebut the presumption against extraterritoriality, the extent to which Motorola can seek damages for Hytera's misappropriation depends on whether "this case involves a domestic," *i.e.*, in Illinois, "application of the statute." *See WesternGeco*, 138 S. Ct. at 2136; *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005) ("[T]he next step in our analysis is to determine whether the transactions at issue in this case took place outside Illinois."). For example, in *IPOX*, the court concluded that "even if the ITSA cannot be applied to extraterritorial conduct, there is evidence supporting a contention that [the foreign defendant] obtained a trade secret from an entity based in Illinois." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 758-59 (N.D. Ill. 2018) (denying summary judgment as to misappropriation of non-public information under ITSA and rejecting defendant's argument that it did not "receive a trade secret from Illinois" because defendant used "a conduit to request and receive information from [Illinois-based] IPOX"). Like the DTSA, the focus of the ITSA is on the misappropriation because it provides a private right of action around misappropriation and provides a civil remedy for that misappropriation. *See* Dkt. 834 at 24 (analyzing DTSA); *compare* 18 U.S.C. § 1836(b)(3) (providing remedies of damages and injunctive relief to owner of trade secrets for claim of misappropriation), *with* 765 ILSC 1065/3–

---

[4] Hytera suggests that *WesternGeco* is inapposite because it is limited to a "unique provision in patent law." Dkt. 806 at 13. In deciding that WesternGeco was applying § 271(f) domestically, the Court relied on general principles developed in non-patent cases that apply equally here, as the Court's Order recognized. *WesternGeco*, 138 S. Ct. at 2137–38; Dkt 834 at 24–25 (citing to *WesternGeco* in holding domestic application of DTSA can reach foreign damages).

4 (same); *compare* 18 U.S.C. § 1839 (defining misappropriation), *with* 765 ILSC 1065/2 (same).

Substantial trial evidence confirms misappropriation took place in Illinois. To assess the domestic nature of the conduct at issue, Illinois courts apply a flexible standard and consider factors including "(1) the plaintiff's residence, (2) where the [conduct occurred], (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009); *see also WesternGeco*, 138 S. Ct. at 2138 ("[T]he object[s] of the statute's solicitude[] can turn on the conduct, parties, or interests that it regulates or protects."). This is consistent with how courts assess the location of intellectual-property torts. *See Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. P'ship*, 807 F. Supp. 470, 473 (N.D. Ill. 1992) ("Damage to intellectual property rights ... by definition takes place where the [property] *owner* suffers the damage.").

With respect to factors (1), (3), and (4), Motorola is headquartered in this District and owns the Asserted Trade Secrets and Copyrights. Trial Tr. 140:20–22, 141:6–12, 200:1–2; Exs. 7–10. Hytera also communicated with Motorola in Illinois. Exs. 11, 19, 20; Tr. 3518:17-3519:16. Motorola developed the Asserted Trade Secrets in this case over many years, generating thousands of confidential documents and millions of lines of source code. The engineers involved in developing the Asserted Trade Secrets, including those working directly on MotoTRBO, worked at various Motorola facilities, including in Schaumburg, Illinois. Trial Tr. 146:2–5, 189:14–190:12. Motorola's MotoTRBO products embody the Asserted Trade Secrets, and Motorola recognizes sales of MotoTRBO. Trial Tr. 593:24-594:19, 871:2-16, 874:19-875:4, 875:22-876:6, 2175:22-2176:10; 2271:1-5, 3633:8-9. That means every one of Hytera's sales of DMR radios made with Motorola's trade secrets, wherever sold, takes a sales away from Motorola in Illinois. Trial Tr. 2175:22–2177:13, 2325:19–24; 2335:20–2336:3; *Specht*, 660 F. Supp. 2d at 866 ("Specht

resides and runs his businesses in Illinois, and ADC and ADI are both Illinois corporations. Plaintiffs, therefore, suffered any damage from the alleged infringement in Illinois."); *see also Riddell, Inc. v. Monica*, No. 03 C 3309, 2003 WL 21799935, at *3 (N.D. Ill. July 25, 2003) ("foreseeable that defendants would be required to answer for" trade-secret misappropriation "in Illinois" because "plaintiff's principal place of business is in Illinois, and thus the injury would be felt most severely in Illinois.").

For factor (2), substantial evidence confirms that Hytera stole Motorola's trade secrets from Illinois.[5]  As explained in § III, *supra*, Motorola's ClearCase system is located in Illinois, and Hytera copied source code from that system.  In addition, the confidential documents that describe the Asserted Trade Secrets stolen by Hytera are stored on Motorola's COMPASS system.  Trial Tr. 379:21–380:1; 396:20–25 Exs. 13–14.  The Compass server is located in Illinois, and although there are also Compass servers elsewhere, "[a]nything that resides on a [Compass] server, wherever that server is, would have come from Illinois." *Id.* at 5151:9–13.  This is because the servers in locations other than Illinois are cache servers, which "reflect[] activity that's in the main server" in Illinois.  *Id.* at 5151:21–5152:11.

In fact, Huang Peiyi's forensic log, listing documents from her Hytera laptop, includes many stolen Motorola documents that contain Illinois identifiers.  Ex. 15 at 2829, 3434–35 (referring to "il23"); PTX-1316 (identifying IL23 as Motorola facility in Schaumburg, IL); Ex. 16 (author of document located in IL23); Ex. 17 (authors of document include engineers based out of Schaumberg, Illinois); *see also* Ex. 18 (confidential Motorola document on Sam Chia's Hytera

---

[5] Hytera is responsible for this theft under *respondeat superior* (because Y.T. Kok was an employee of Hytera while he was stealing documents and source code from Motorola) and because Hytera ordered or induced the theft by former Motorola employees, who were acting as its agents at the time of the thefts.  Restatement (Second) of Torts § 877 (1979); *see, e.g.*, Trial Tr. 5280:4–18; 5281:22–5282:2, 5311:7–11; Ex. 12.  The jury should be so instructed as well.  Ex. 21.

laptop authored in Schaumburg, Illinois). Because Hytera acquired Motorola's trade secrets from Illinois, that misappropriation happened here.[6]  *See Specht*, 660 F. Supp. 2d at 866 (explaining that because infringement "took place on the Internet" it "presumably occurr[ed] in Illinois"); *Flavorchem Corp. v. Mission Flavors & Fragrances, Inc.*, 939 F. Supp. 593, 596–97 (N.D. Ill. 1996) (finding that because trade secrets were copied in Illinois and injury occurred in Illinois, Illinois was the location of the tortious conduct).  And "while a defendant's location is relevant to whether the regulated conduct was domestic," the ITSA does "not give way simply because the alleged [misappropriator] was located outside the United States."  *See Bascunan v. Elsaca*, 927 F.3d 108, 122–24 (2d Cir. 2019) (RICO claim based on domestic conduct where "core component of the scheme to defraud was the use of domestic mail or wires to direct the theft or misappropriation of property located within the United States and held by a domestic bank").

Having established a domestic act of misappropriation, Motorola is thus entitled to seek "damages for the misappropriation."  765 ILCS 1065/4(a).  The language of this provision confirms the Illinois state legislature intended to provide nothing less than a full remedy when domestic misconduct causes an injury that is measured in part by foreign conduct.  *See WesternGeco*, 138 S. Ct. at 2138 ("the damages themselves are merely the means by which the statute achieves its end of remedying" the harm).  To hold otherwise would "wrongly conflate[] legal injury with the damages arising from that injury."  *Id*.  For example, in *Turnkey*, a District of Colorado decision concerning damages under the Colorado Uniform Trade Secrets Act, the court concluded that because the trade secrets were misappropriated in Colorado, "any damage award

---

[6] This analysis is in accord with *Graham* and *Butler*.  In both cases, the court concluded that the Illinois Dram Shop Act claim should be dismissed because the relevant tortious conduct, *i.e.*, the drunk-driving accident, occurred outside Illinois.  *Graham v. Gen. U.S. Grant Post No. 2665, V. F. W.*, 248 N.E.2d 657, 658–59 (Ill. 1969) (tortious occurred in Illinois); *Butler v. Wittland*, 153 N.E.2d 106, 108 (Ill. App. Ct. 1958) (tortious conduct occurred in Indiana).

flowing from [defendant's] domestic misappropriation would not run afoul of the presumption against the extraterritorial application of law." *Turnkey*, 2017 WL 3425140, at *8 (denying summary judgment on claim under Colorado's UTSA 7-74-101 *et seq.*, which like the ITSA permits recovery of "damages for misappropriation"). Thus, "the jury at trial[] would simply be assessing damages based on a domestic legal violation that would not interfere with any international laws, ***even if some of the damage award was assessed based on [defendant's] international sales*.**"[7] *See id.* The ITSA therefore permits Motorola to recover all damages that flow from the misappropriation in Illinois, including damages that flow from the extraterritorial exploitation of the misappropriation that occurred in Illinois. 765 ILSC 1065/4(a); *see also WesternGeco*, 138 S. Ct. at 2139 (damages for domestic act of infringement "can include lost foreign profits").

Hytera's motion on the ITSA should therefore be denied in its entirety, and the jury must be instructed that Motorola is entitled to recover all damages—including foreign damages—that it can prove flow from any domestic violation of the ITSA. Ex. 21 (Motorola's proposed instruction). Such an instruction is especially necessary to overcome Hytera's repeated legally-erroneous suggestion to the jury during its questioning of Dr. Aron that extraterritorial damages may be limited to post-enactment of the DTSA in May 2016. *See, e.g.*, Trial Tr. 4874:13–4874:24, 4875:16–24, 4901:3–18. Without such an instruction, there is a substantial risk of juror confusion and a verdict contrary to law.

## V. CONCLUSION

For the foregoing reasons, Hytera's motion should be denied.

---

[7] *Microsoft v. AT&T* is not to the contrary. In *Microsoft*, the question was not what damages were recoverable, as Hytera claims, Dkt. 806 at 11, but whether there was infringement in the first place. *Microsoft v. AT&T*, 550 U.S. 437, 447 (2007) ("does software qualify as a 'component' under § 271(f)" and "were 'components' … 'supplied … from the United States'").

DATED: February 6, 2020

Respectfully submitted,

/s/ Justin Singh

Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
Barbara Barath (*admitted pro hace vice*)
barbara.barath@kirkland.com
Reza Dokhanchy (*admitted pro hac vice*)
reza.dokhanchy@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
Benjamin A. Herbert (*admitted pro hac vice*)
benjamin.herbert@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
Megan M. New (IL SBN 6300422)
megan.new@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Plaintiffs*
*Motorola Solutions, Inc. and Motorola*
*Solutions Malaysia SDN. BHD.*

**CERTIFICATE OF SERVICE**

I, Justin Singh, an attorney, hereby certify that on February 6, 2020, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  February 6, 2020

*/s/ Justin Singh*
Justin Singh