**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MOTOROLA SOLUTIONS, INC., and
MOTOROLA SOLUTIONS MALAYSIA
SDN. BHD.

              Plaintiffs,

    v.

HYTERA COMMUNICATIONS
CORPORATION LTD.,
HYTERA AMERICA, INC., and
HYTERA COMMUNICATIONS
AMERICA (WEST), INC.
              Defendants.

Case No. 1:17-CV-01973

Honorable Charles R. Norgle Sr.

## HYTERA'S AMENDED PROPOSED JURY INSTRUCTIONS

**Table of Contents**

Instruction No. 1 — Summary of the Parties' Claims (Disputed).................................................. 1

Instruction No. 2 — Functions of the Court and Jury (Agreed) (Unchanged) .............................. 2

Instruction No. 3 — No Inference from Judge's Questions (Agreed)............................................ 3

Instruction No. 4 — What is Evidence (Disputed) ........................................................................ 4

Instruction No. 5 — Deposition Testimony (Agreed) ................................................................... 6

Instruction No. 6 — What is Not Evidence (Agreed) (Unchanged)............................................... 7

Instruction No. 7 — Consideration of All Evidence Regardless of Who Produced It (Agreed) (Unchanged)................................................................................................................................ 8

Instruction No. 8 — Weighing the Evidence (Agreed) (Unchanged) ........................................... 9

Instruction No. 9 — Direct vs. Circumstantial Evidence (Agreed) (Unchanged) ...................... 10

Instruction No. 10 — Testimony of Witnesses (Agreed) (Unchanged) ...................................... 11

Instruction No. 11 — Prior Inconsistent Statements (Agreed) ................................................... 12

Instruction No. 12 — Absence of Evidence (Disputed) (Unchanged) ........................................ 13

Instruction No. 13 — Expert Witnesses (Agreed) (Unchanged) ................................................. 14

Instruction No. 14 — Translated Language (Agreed) ................................................................. 15

Instruction No. 15 — Demonstrative Exhibits (Disputed) .......................................................... 16

Instruction No. 16 — No Adverse Inference From Loss or Destruction of Materials ................. 17

Instruction No. 17 — Fifth Amendment (Disputed).................................................................... 18

Instruction No. 18 — Burden of Proof (Agreed) ........................................................................ 19

Instruction No. 19 — Motorola's Claims for Misappropriation of Trade Secrets (Disputed) ..... 20

Instruction No. 20 — Corporate Liability for Trade Secret Misappropriation (Disputed)........... 22

Instruction No. 21 — Trade Secret Definition Generally (Agreed) (Unchanged) ....................... 23

Instruction No. 22 — Trade Secret Concreteness (Disputed)...................................................... 24

Instruction No. 23 — Independent Economic Value (Disputed)................................................... 25

Instruction No. 24 — Reasonable Efforts (Disputed).................................................................. 26

Instruction No. 25 — Definition of Misappropriation (Disputed)................................................ 27

Instruction No. 26 — Improper Means (Agreed) ........................................................................ 28

Instruction No. 27 — Modifications or Improvements (Disputed) .............................................. 29

Instruction No. 28 — Trade Secret / Statute of Limitations (Disputed)....................................... 30

Instruction No. 29 — Trade Secret / Damages Generally (Disputed) .......................................... 32

Instruction No. 30 — Trade Secret / Compensatory Damages (Disputed).................................... 33

Instruction No. 31 — Trade Secret / Actual Loss (Disputed) .......................................................... 34

Instruction No. 32 — Trade Secret / Unjust Enrichment (Disputed) (Contingent) ..................... 36

Instruction No. 33 — Trade Secret / Head Start Period (Disputed) ............................................... 38

Instruction No. 34 — Trade Secret / Exemplary Damages (Disputed) .......................................... 39

Instruction No. 35 — Copyright Allegation Generally (Disputed) ................................................ 42

Instruction No. 36 — Copyright Infringement (Disputed) ............................................................. 43

Instruction No. 37 — Copyright Ownership (Agreed) (Unchanged) .............................................. 44

Instruction No. 38 — Copying (Disputed) ..................................................................................... 45

Instruction No. 39 — Protected and Non-Protected Expression (Disputed) ............................... 46

Instruction No. 40 — Copyright Damages Generally (Disputed) .................................................. 47

Instruction No. 41 — Copyright / Defendants' Profits (Disputed) ............................................... 48

Instruction No. 42 — No Double Recovery (Disputed) (Unchanged) ......................................... 49

Instruction No. 43 — Selection of Presiding Juror; General Verdict (Agreed) (Unchanged) ...... 50

Instruction No. 44 — Communication with the Court (Agreed) (Unchanged) ........................... 51

Instruction No. 45 — Disagreement among Jurors (Agreed) (Unchanged) ................................ 52

**Instruction No. 1 — Summary of the Parties' Claims (Disputed)**[1]

Plaintiffs Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD. (collectively, "Motorola") allege that Defendants Hytera Communications Corporation Ltd., Hytera America, Inc. and Hytera Communications America (West), Inc. (collectively, "Hytera") misappropriated Motorola's trade secrets and infringed Motorola's copyrights relating to two-way Digital Mobile Radio ("DMR") technology. Hytera generally denies the claims as alleged by Motorola. Hytera also asserts that statutes of limitations recited in the Defend Trade Secrets and Illinois Trade Secrets Act bar Motorola's trade secret claims, and that the equitable doctrine of laches bars recovery on all claims.

You will be instructed as to each element of each claim and defense. You must give separate consideration to each claim and defense in this case and each party in this case.

Although there are three defendants, it does not follow that if one is liable that any of the others is also liable. Unless otherwise stated, when I refer to "Hytera" in an instruction, that instruction applies to all three defendants, but you must apply the instruction separately as to each defendant.

---

[1] Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

**Instruction No. 2 — Functions of the Court and Jury (Agreed) (Unchanged)**[2]

 Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

 You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

 Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

 Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

 Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part, about what the facts are or about what your verdict should be.

---

[2] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.01.

**Instruction No. 3 — No Inference from Judge's Questions (Agreed)**[3]

During this trial, I have asked witnesses questions myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

---

[3] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.02.

**Instruction No. 4 — What is Evidence (Disputed)[4]**

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations. A stipulation is an agreement between both sides that certain facts are true.

1. Motorola Solutions, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois. Motorola Solutions, Inc. provides radio equipment and infrastructure technologies to thousands of customers in manufacturing, education, utility, transport and logistics, oil and gas, hospitality, and retail throughout the United States and around the world.

2. Motorola Solutions Malaysia SDN. BHD. is a subsidiary of Motorola Solutions, Inc. It was founded in 1974, and its principal place of business in Kuala Lumpur, Malaysia. It offers communication devices and systems including analog and digital radios, accessories, and communication infrastructure.

3. Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD. (collectively, "Motorola") provides two-way digital radio communications for business and government customers.

4. Motorola's digital two-way radio technology and solutions are sold and used throughout the United States.

5. Hytera Communications Corporation Ltd. (previously known as HYT) was founded in Shenzhen, China, in 1993. The company started as a dealer/distributor for two-way radios and began manufacturing its own two-way radio products in 1995.

6. Hytera America, Inc. is a Florida company with its principal place of business in Miramar, Florida. Hytera America, Inc. sells two-way radio products and provides customer service for those products.

7. Hytera Communications America (West), Inc. is a California company with its principal place of business in Irvine, California. Hytera Communications America (West), Inc. sells two-way radio products and provides customer service for those products.

8. Motorola launched its MotoTRBO professional digital radios in 2006 and first sold them in early 2007.

---

[4] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.04.

9.      The U.S. Copyright Office issued registration certificates relating to certain software associated with Motorola's DMR radio products at issue in this case.

10.     Hytera launched its DMR professional radios in early 2010.

11.     Motorola Malaysia hired G.S. Kok in February 1987 as a hardware engineer. When G.S. Kok left Motorola Malaysia in 2008, he was a Senior Engineering Manager.

12.     Motorola Malaysia hired Y.T. Kok in May 1997 as a software engineer. When Y.T. Kok left Motorola Malaysia in 2008, he was a Senior Software Engineer.

13.     Motorola Malaysia hired Samuel Chia in August 1999 as a software engineer. When he left Motorola Malaysia in 2008, he was an Engineering Section Manager for Motorola.

14.     G.S. Kok joined Hytera on February 18, 2008 as a Director, Shenzhen R&D Center, Government and Industry Terminal Product Department. When G.S. Kok left Hytera in November 2018, he was a Deputy General Manager, Hytera UK.

15.     Y.T. Kok joined Hytera on June 10, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department. When Y.T. Kok left Hytera in October 2018, he was a Senior Sales Manager in the Overseas Sales Department Headquarters.

16.     Samuel Chia joined Hytera on June 16, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department. When Samuel Chia left Hytera in October 2018, he was Senior Technical Consultant, Terminal Platform Center Line.

17.     Motorola filed this lawsuit on March 14, 2017.[5]

---

[5] Dkt. 690-1.

**Instruction No. 5 — Deposition Testimony (Agreed)**[6]

During the trial, certain testimony was presented to you by the reading of the depositions and video.  You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

---

[6] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.05.

6

**Instruction No. 6 — What is Not Evidence (Agreed) (Unchanged)**[7]

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

---

[7] Federal Civil Jury Instructions of the Seventh Circuit, Instruction Nos. 1.06.

**Instruction No. 7 — Consideration of All Evidence Regardless of Who Produced It (Agreed) (Unchanged)[8]**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

---

[8] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.08.

**Instruction No. 8 — Weighing the Evidence (Agreed) (Unchanged)**[9]

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

---

[9] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.11.

**Instruction No. 9 — Direct vs. Circumstantial Evidence (Agreed) (Unchanged)**[10]

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

---

[10] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.12.

**Instruction No. 10 — Testimony of Witnesses (Agreed) (Unchanged)[11]**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all.  You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

---

[11] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.13.

**Instruction No. 11 — Prior Inconsistent Statements (Agreed)**[12]

You may consider statements given by one of the parties or a witness under oath before trial as evidence of the truth of what he or she said in the earlier statements, as well as in deciding what weight to give his or her testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his or her testimony here in court, you may consider the earlier statement or conduct only in deciding whether his or her testimony here in court was true and what weight to give to his or her testimony here in court.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

---

[12] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.14

**Instruction No. 12 — Absence of Evidence (Disputed) (Unchanged)**[13]

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

---

[13] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.18

**Instruction No. 13 — Expert Witnesses (Agreed) (Unchanged)**[14]

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

---

[14] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.21.

14

**Instruction No. 14 — Translated Language (Agreed)**[15]

You have heard testimony of witnesses who testified in the Chinese language, and seen documents written in Chinese.  Witnesses who do not speak English, or are more proficient in another language, testify through an official Court certified interpreter.  In addition to the witnesses' interpreter, a check interpreter was also present.  Although some of you may know Chinese, it is important that all jurors consider the same evidence.  You should consider only the evidence provided through the official interpreter.  Therefore, you must base your decision on the evidence presented in the English translation. Therefore, you must accept the interpreter's translation of the witnesses' testimony, or of Chinese text in documents.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or a party.[16]

---

[15] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.22.

[16] Jury Instructions, *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, No. 14-01351 (W.D. Wash. May 16, 2017) ECF No. 476.

15

**Instruction No. 15 — Demonstrative Exhibits (Disputed)**[17]

Certain slides, diagrams, and illustrations prepared by attorneys have been shown to you. Generally, those demonstratives are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts. Certain demonstratives, however, have been admitted as evidence in the case and will be provided as exhibits.

---

[17] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.24. This instruction is modified to account for the fact that the Court admitted several demonstratives as evidence in the case.

**Instruction No. 16 — No Adverse Inference From Loss or Destruction of Materials[18]**

You have heard evidence concerning the loss or destruction of materials. Under the law, that evidence does not give rise to any liability or adverse inference.

---

[18] As stated in Hytera's brief, Motorola's spoliation arguments are entirely contrary to the law, and have prejudiced Hytera. A curative instruction is therefore appropriate.

**Instruction No. 17 — Fifth Amendment (Disputed)[19]**

During the depositions of G.S. Kok, Y.T. Kok, and Samuel Chia which were presented at our trial, they invoked their right not to incriminate themselves under the Fifth Amendment in our Bill of Rights. This was their right to do so. You may, but you need not, infer by such refusal that the answers would have been adverse to those individuals. However, you can only draw reasonable inferences to the extent they are justified by independent corroborating evidence in this case, and you cannot speculate based on the witnesses' invocation of the Fifth Amendment alone.[20]

To the extent that you draw any inferences adverse to G.S. Kok, Y.T. Kok, or Samuel Chia's respective positions from their decisions to invoke the Fifth Amendment right, those inferences would not necessarily be the same as an inference that is adverse to the position of Hytera. You are not required to find that any answer to a particular question by one of those witnesses would have been adverse to that witness or to any party in this case.[21]

---

[19] Hytera objects to the inclusion of an instruction on Fifth Amendment adverse inferences. As discussed in Hytera's brief, such an instruction is inappropriate as a matter of law. The following is proposed only if such an instruction is to be offered at all.

[20] *Sebastian v. City of Chicago*, 05 C 2077, 2008 WL 2875255, at *34 (N.D. Ill. July 24, 2008) ("Before an adverse inference may be drawn from a party's refusal to testify . . . , there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege," and a party "cannot rely solely on the adverse inference associated with the invocation of the Fifth Amendment right," or "on speculation as evidence").

[21] Penultimate Jury Instructions on Trade Secret Misappropriation, *Waymo LLC v. Uber Tech. Inc.*, No. 17-00939 (N.D. Cal. Jan. 3, 2018) ECF No. 2449-1.

**Instruction No. 18 — Burden of Proof (Agreed)**[22]

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

---

[22] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.27, 1.28.

**Instruction No. 19 — Motorola's Claims for Misappropriation of Trade Secrets (Disputed)**[23]

Now I will instruct you on the elements of Motorola's claims for trade secret

misappropriation under the Illinois Trade Secrets Act and the federal Defend Trade Secrets Act.

Under the Illinois Trade Secrets Act, in order to establish a claim for misappropriation of

trade secrets, Motorola has the burden of proving the following propositions by a preponderance

of the evidence:

1. That Motorola owned the information at issue;

2. That the information at issue is a trade secret;

3. That the information at issue was misappropriated by Hytera in Illinois; and

4. That the information was used by Hytera in its business.

The Illinois Trade Secrets Act applies only to acts committed by Hytera in the State of

Illinois, if any.

Under the federal Defend Trade Secrets Act, in order to establish a claim for

misappropriation of a trade secret, Motorola has the burden of proving the following propositions

by a preponderance of the evidence:

1. That Motorola owned the information at issue;

2. That the information at issue is a trade secret;

3. That the information at issue was misappropriated by Hytera; and

4. That the information was used by Hytera in its business.

The federal Defend Trade Secrets Act applies only to acts committed by Hytera in the

---

[23] Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020; Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp., et. al,*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1; *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) ("To prevail on a claim for misappropriation of a trade secret under the Act, the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business.").

United States or resulting from acts in furtherance of misappropriation committed by Hytera in the United States, if any. Additionally, the federal Defend Trade Secrets Act applies only to acts committed by Hytera on or after May 11, 2016, if any.

**Instruction No. 20 — Corporate Liability for Trade Secret Misappropriation (Disputed)**

You may not find that Hytera is liable for trade secret misappropriation merely because you find that one of its employees committed trade secret misappropriation.  Rather, to find for Motorola on its trade secret claims, you must find that Motorola proved every element of its trade secret claims as to each Hytera defendant.[24]

Hytera is a corporation that acts and possesses knowledge through its employees.  You may find that Hytera had knowledge of a fact, if an employee knew about that fact and the fact was within the scope of the employee's duties and responsibilities.[25]  You may not, however, impute the knowledge of an individual to Hytera merely because that individual went to work for Hytera.[26]  Rather, an employee's knowledge can only be imputed to his employer if the employee gained that knowledge during his employment and if the knowledge was acquired in the scope of his duties.[27]

---

[24] *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 870 (N.D. Ind. 2007); *Infinity Prod., Inc. v. Quandt*, 810 N.E.2d 1028, 1034 (Ind. 2004); 765 ILCS 1065/8(a) (Subject to exceptions not relevant here, "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.").

[25] Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1 at 34.

[26] *Forest Labs., Inc. v. Pillsbury Co.*, 452 F.2d 621, 626 (7th Cir. 1971).

[27] *Bryant v. Livigni*, 250 Ill. App. 3d 303, 308 (1993).

**Instruction No. 21 — Trade Secret Definition Generally (Agreed) (Unchanged)**

A trade secret is information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that (l) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.[28]

I will explain what these terms mean.[29]

---

[28] Jury Instructions, *Miller UK Ltd. et al. v. Caterpillar, Inc.*, No. 10-cv-3770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020; 18 U.S.C. § 1839(3).

[29] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.2.1.

**Instruction No. 22 — Trade Secret Concreteness (Disputed)**

In articulating a trade secret, it is not enough for Motorola to point to broad areas of technology.[30]  Instead, it is Motorola's burden to identify concrete information that it contends to constitute its trade secrets.[31]

---

[30] *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("Likewise, IDX's tender of the complete documentation for the software leaves mysterious exactly which pieces of information are the trade secrets.").

[31] *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 710 (7th Cir. 2006); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992); *Maxtech Consumer Prod., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 853 (N.D. Ill. 2017).

**Instruction No. 23 — Independent Economic Value (Disputed)**[32]

  To derive independent economic value from not being generally known means that the information gives a business a competitive advantage over other businesses that do not know the information. Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret. But information that requires considerable time, effort, and expense to duplicate, even if it is derived from public sources, can still qualify as a trade secret. Absolute secrecy, in the sense that no one else in the world possesses the information, is not required.

---

[32] Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

**Instruction No. 24 — Reasonable Efforts (Disputed)**

To qualify as a trade secret, a certain piece of information must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. There are no absolute requirements that define what measures are "reasonable" in a given situation.[33] In evaluating the reasonableness of Motorola's efforts to protect information, the question is whether the additional benefit in security from an available measure would have exceeded the cost of that measure.[34]

---

[33] Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

[34] *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 180 (7th Cir. 1991) ("the question is whether the additional benefit in security would have exceeded that cost.").

**Instruction No. 25 — Definition of Misappropriation (Disputed)**

If you find that Motorola has proven by a preponderance of the evidence that it possesses valid trade secrets, you must determine whether Hytera misappropriated any of them. "Misappropriation" means use of a trade secret of a person without express or implied consent by another person who at the time of the use knew or had reason to know that knowledge of the trade secret was acquired using improper means.[35]

When the term "know" or "knowledge" is used in these instructions, it means that a person realized what he or she was doing and was aware of the conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by a person's conduct, and by all the facts and circumstances surrounding the case. Hytera can only be liable for misappropriation if it knew or had reason to know that information it was using had originated with Motorola in breach of some confidence.[36]

---

[35] Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020 at 35.

[36] Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

**Instruction No. 26 — Improper Means (Agreed)**

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

On the other hand, the phrase "improper means" does not include acquiring information through reverse engineering or independent development.[37]

---

[37] 765 ILCS 1065/2; 18 U.S.C. § 1839(6); Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261 ("reverse engineering or independent development shall not be considered improper means.").

**Instruction No. 27 — Modifications or Improvements (Disputed)**

You may find that a person used another's trade secret even if he uses it with modifications or improvements, so long as the substance of the resulting product is substantially derived from the other's trade secret.[38] You may find that the substance of Hytera's products are substantially derived from Motorola's trade secrets if you find Hytera could not have created a DMR product without Motorola's trade secrets.[39]

---

[38] Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196 Jury Instructions ("The user of another's trade secret is liable even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the substance of the process used by the actor is substantially derived from the other's secret.") (emphasis added); *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 326 (7th Cir. 1984) ("The first is that a party may not use another's trade secret, even with independent improvements or modifications, so long as the product or process is substantially derived from the trade secret.") (emphasis added).

[39] *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996) (quoting and affirming jury instruction that read, "You may find that defendants misappropriated Mangren's trade secrets even if defendants created a new product if defendants could not have done so without use of Mangren's trade secret.").

**Instruction No. 28 — Trade Secret / Statute of Limitations (Disputed)**

The Defend Trade Secrets Act requires Motorola to bring its trade secret claim within three years after the alleged misappropriation was discovered, or within three years after it should have been discovered by the exercise of reasonable diligence.[40]  The Illinois Trade Secrets Act requires Motorola to bring its trade secret claim within five years after the alleged misappropriation was discovered, or within five years after it should have been discovered by the exercise of reasonable diligence.[41]

A person knows or reasonably should know of an injury when he or she has suspicions that an injury has occurred and means to discover evidence to support a claim based on that injury.[42]  The statute of limitations period commences once a plaintiff is on notice of a potential claim, prior to having full knowledge of the existence of a claim.[43]  Knowledge of the particular legal theory is not required to trigger the statute of limitations.[44]

Once a person is on notice, he or she has an affirmative duty to seek out facts.[45] Motorola bears the burden of proving that, even if it had exercised reasonable diligence, it could not have known of its purported injury.[46]

Motorola is a corporation that acts and possesses knowledge through its employees.  You

---

[40] 18 U.S.C. § 1836(d).

[41] 765 ILCS 1065/7.

[42] *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997).

[43] *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990); *MGA Entertainment, Inc. v. Mattel, Inc.*, 254 Cal. Rptr. 3d 314, 321 (Cal. App. Ct. 2019).

[44] *Nicpon v. v. Goehausen*, No. 89 C 5674, 1991 WL 5866, at *2 (N.D. Ill. Jan. 15, 1991); *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997); *Renz v. Beeman*, 589 F.2d 735, 751–52 (2d Cir. 1978); *Phillip M. Adams & Assocs., LLC v. Winbond Electronics Corp.*, No. 1:05-CV-64, 2010 WL 3447251, at *1–*3 (D. Utah Aug. 31, 2010); *Hoffman v. Orthopedic Sys., Inc.*, 327 Ill. App. 3d 1004, 1011 (2002).

[45] *MGA Entertainment, Inc. v. Mattel, Inc.*, 254 Cal. Rptr. 3d 314, 319 (Cal. App. Ct. 2019).

[46] *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994).

may find that Motorola had knowledge of a fact, if an employee knew about that fact and the fact was within the scope of the employee's duties and responsibilities.[47]

Motorola filed suit on its federal and state law trade secret claims on March 14, 2017.

---

[47] Jury Instructions, *Plas-Tool Co. v. A-1 Tool Corp.*, No. 04-cv-4123 (N.D. Ill. Jan. 31, 2014), ECF No. 1076-1.

**Instruction No. 29 — Trade Secret / Damages Generally (Disputed)**

I will now instruct you on the law you must follow in determining damages.

You should not interpret the fact that I am giving instructions about Motorola's potential damages as an indication in any way that I believe that Motorola should, or should not, prevail on any claim. It is your task to decide first whether Hytera is liable. I am instructing you on damages only so that you will have guidance in the event that you decide that Hytera is liable and that Motorola is entitled to recover money from Hytera.[48]  You will be asked to determine Motorola's damages through June 30, 2019, if any, subject to certain geographic and temporal limitations that apply to the Illinois Trade Secrets Act and the federal Defend Trade Secrets Act.

If you find that Motorola proved that Hytera misappropriated Motorola's trade secrets and that Hytera has not proved its statute of limitations defense, then you must decide whether Motorola is entitled to damages on its claim for misappropriation of trade secrets.

Motorola has the burden of proving whether Hytera caused the damage that Motorola is claiming by a preponderance of the evidence.

Motorola is seeking both compensatory damages and exemplary damages.

---

[48] Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

**Instruction No. 30 — Trade Secret / Compensatory Damages (Disputed)**[49]

I will now instruct you on Motorola's claim for compensatory damages. The purpose of compensatory damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendant's violation of a plaintiff's rights. Compensatory damages seek to make a plaintiff whole—that is, to compensate the plaintiff for any damage suffered. Compensatory damages are not intended to punish the defendant.

Motorola has the burden of proving whether Hytera caused the damage that Motorola is claiming by a preponderance of the evidence.

Motorola's compensatory damages can include both (1) the actual loss caused by Hytera's misappropriation and (2) the unjust enrichment to Hytera caused by its misappropriation but only to the extent the unjust enrichment is not taken into account in calculating Motorola's actual loss.

I will explain each of these measures of damages, that is, actual loss and unjust enrichment.

---

[49] Jury Instructions, *Miller UK Ltd. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020 at 36.

33

**Instruction No. 31 — Trade Secret / Actual Loss (Disputed)**

In determining Motorola's actual loss, you should determine what profits Motorola

proves that it would have made, if any, had Hytera not misappropriated Motorola's trade secret.[50]

To recover its actual loss, Motorola must prove:

1. A reasonable probability that, if Hytera had not misappropriated trade secrets, Motorola would have made additional sales of DMR products that Hytera made.

2. The amount of profit Motorola would have made on those sales. Motorola does not need to prove this amount with precision.[51] But You are not to guess or speculate as to the amount.[52]

The Illinois Trade Secrets Act applies only to actual losses caused by misappropriation or

an act in furtherance of misappropriation by Hytera that occurred in Illinois, if any. In this case,

that is limited to sales that Motorola proved it lost, if any, in Illinois.

If you are unable to determine from the evidence which sales, if any, took place in Illinois

and which took place in other parts of the United States, you should not award any damages

under the ITSA.[53]

The federal Defend Trade Secrets Act applies only to actual losses caused by

misappropriation or an act in furtherance of misappropriation conduct by Hytera that occurred in

the United States, if any. In this case, that is limited to sales that Motorola proved it lost, if any,

---

[50] Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285.

[51] Federal Civil Jury Instructions of the Seventh Circuit. Instruction No. 11.4.3. No trade secret instructions exist in the Seventh Circuit's Pattern Civil Jury Instructions. The patent instructions are a close analog, and offer a helpful explanation of how a jury should evaluate a lost profits claim.

[52] Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261 ("mathematical precision need not be shown"); Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285 ("Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.").

[53] January 31, 2020 Order (Dkt. 834).

in the United States.[54]

---

[54] January 31, 2020 Order (Dkt. 834).

**Instruction No. 32 — Trade Secret / Unjust Enrichment (Disputed) (Contingent)[55]**

Unjust enrichment is the amount Hytera benefited as a result of any misappropriation to the extent it exceeds Motorola's actual loss.[56] The amount of unjust enrichment need not be shown with mathematical precision but Motorola must establish the amount with reasonable certainty on evidence presented. You are not to guess or speculate as to the amount.[57]

If you find that Motorola has proven by a preponderance of the evidence the amount that it is entitled to unjust enrichment damages in excess of its actual loss, you must deduct the costs and expenses that Hytera proves by a preponderance of the evidence that it incurred related to that benefit.[58]

The Illinois Trade Secrets Act applies only to benefits gained resulting from misappropriation or an act in furtherance of misappropriation by Hytera that occurred in Illinois, if any. In this case, that is limited to the amount of Hytera's sales, if any, that Motorola proved occurred in Illinois.

The federal Defend Trade Secrets Act applies only to benefits gained resulting from by misappropriation or an act in furtherance of misappropriation by Hytera that occurred in the

---

[55] As stated in the parties' pretrial submission, Dkt. 690-8 and in the brief accompanying this submission, Hytera contends that this instruction is inappropriate, inasmuch as disgorgement of profits is an equitable remedy for the Court to decide. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 686 (2014) (identifying "disgorgement of unjust gains" from infringement as "equitable relief"); *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1326 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 2741 (2019) ("We conclude, therefore, that TAOS has no right to a jury decision on its request for disgorgement of Intersil's profits as a remedy for trade secret misappropriation.").

[56] Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285. ("In determining unjust enrichment you should determine the amount of money Sears benefited as a result of the misappropriation to the extent it exceeds RRK's actual loss.").

[57] Jury Instructions, *Geraci v. Macey*, No. 14-cv-6876 (N.D. Ill. Dec. 13, 2017), ECF No. 261 ("mathematical precision need not be shown"); Jury Instructions, *RRK Holding Co. v. Sears, Roebuck and Co.*, No. 04-cv-3944 (N.D. Ill. Nov. 16, 2007), ECF No. 285 ("Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.").

[58] Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-6884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 196.

36

United States on or after May 11, 2016, if any. In this case, that is limited to the amount of Hytera's sales in the United States.

If you find that Motorola unreasonably delayed in filing suit and that Hytera was prejudiced by that delay, you may reduce any award of unjust enrichment damages to the extent you find equitable.[59]

Your award for unjust enrichment must not be duplicative of your award for actual loss. As an example, if you find that Motorola proved that Hytera made 100 sales as a result of any misappropriation, but that Motorola only could have made 40 of those sales, your award of damages due to actual loss may not exceed Motorola's profits on the 40 sales Motorola could have made. You may award unjust enrichment only with regard to Hytera's enrichment from remaining 60 sales attributable to any misappropriation and accounting for costs and expenses. Otherwise, you would be double-counting the damages relating to the first 40 sales.

---

[59] This instruction is proposed only if the Court determines that the equitable issues of unjust enrichment and disgorgement are for the jury to decide. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 688 (2014) (noting "adjustments may be in order in awarding injunctive relief, and in accounting for MGM's gains and profits"); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) ("Laches is a question of degree.") (quoting *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985)); *Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2018 WL 6590558, at *3 (N.D. Ill. Dec. 14, 2018) (applying damages to reduce damages).

**Instruction No. 33 — Trade Secret / Head Start Period (Disputed)**[60]

If you find that Hytera has misappropriated a trade secret, then in determining the amount of damages, you must consider whether or not to award damages only for the head start period. The "head start" period is the time it would have taken Hytera to develop a competing product with equivalent features. If you find that Hytera would never have developed a competing DMR product, you are not restricted to a head start period. If you find that Hytera would have developed a competing DMR product, you must determine how long that time—the head start period—would have been. You may not find any unjust enrichment for any period after the time it would have taken Hytera to develop a competing DMR product. You may not award damages for any amounts under any theory after that period.

---

[60] Jury Instructions, *Playwood Toys, v. Learning Curve Toys*, No. 94-cv-06884, 2000 WL 36740990 (N.D. Ill. Aug. 15, 2000), ECF No. 19 ("If you find that Learning Curve has misappropriated a trade secret, then in determining the amount of damages, you must consider whether or not to award damages only for the head start period."); *Schulenburg v. Signatrol, Inc.*, 33 Ill. 2d 379, 388 (1965) (focusing on the "period of time . . . required to duplicate the *product* by lawful means" (emphasis added)); *Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1433 (7th Cir. 1994) (evaluating a head start in terms of whether the defendant "would never have developed a workable VCXO had it not misappropriated Sokol's trade secret."); *BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 708 (7th Cir. 2006) (describing head start in injunction context as lasting "until the advantage over competitors conferred by this wrongfully acquired lead time has dissipated."); *Brunswick Corp. v. Outboard Marine Corp.*, 79 Ill. 2d 475, 479 (1980) (discussing an injunction for "the approximate length of time it would require a legitimate competitor to develop a competitive product following a lawful disclosure of the information"); David Almeling, Walter Bratic, Monte Cooper, Alan Cox and P. Anthony Sammi, "Disputed Issues in Awarding Unjust Enrichment Damages in Trade Secret Cases", The Sedona Conference Journal, Vol. 19, No. 2, 2018, which states the "general rule is that the accounting of unjust enrichment damages commences at the moment that use of the misappropriated trade secret confers a benefit on the defendant. Damages then accrue until such time, if ever, that the defendant would have acquired knowledge of the trade secret through legitimate means, such as public disclosure, reverse engineering, or independent development." *Id.* at 680 (emphasis added).

**Instruction No. 34 — Trade Secret / Exemplary Damages (Disputed)**[61]

If you find for Motorola on its trade secret claims, you may, but are not required to, assess exemplary damages against Hytera. The purposes of exemplary damages are to punish Hytera for its conduct and to serve as an example or warning to Hytera and others not to engage in similar conduct in the future.

In order for Motorola to recover exemplary damages, you must find that Motorola has proved by a preponderance of the evidence that Hytera's acts were "willful and malicious." That is, you may assess exemplary damages only if you find Hytera's conduct was malicious or in reckless disregard of Motorola's rights. Conduct is malicious if it is accompanied by ill will or spite, or it is done for the purpose of injuring Motorola. Conduct is in reckless disregard of Motorola's rights if, under the circumstances, it reflects complete indifference to Motorola's rights, and not simply that Hytera was aware that the information was a trade secret.

Exemplary damages may be awarded against an employer because of an act by its employee if, but only if you find:

1. The employer authorized the doing and the manner of the act; or

2. The employee was unfit and the principal was reckless in employing him or her; or

3. The employee was employed in a managerial capacity and was acting in the scope of his or her employment; or

4. The employer or a manager of the employer ratified or approved the act.[62]

In determining whether an employee is acting in a managerial capacity, you should

---

[61] Jury Instructions, *Hotsamba Inc. v. Caterpillar Inc.*, No. 1-5540 (N.D. Ill. Sept. 22, 2006), Dkt. 420 (Instruction No. 42); Jury Instructions, *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11-1767 (N.D. Ill. June 24, 2016), Dkt. 610 (Instruction No. 78).

[62] *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 514 (7th Cir. 1997); See also Restatement (Second) of Torts § 909.

consider the employee's authority and discretion to make policy decisions and not the employee's title.[63]

If you find that exemplary damages are appropriate, then you must use sound reason in setting the amount of those damages. Exemplary damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either party. In determining the amount of any exemplary damages, you should consider the following factors:

1. The reprehensibility of the conduct;

2. The impact of the conduct on Motorola;

3. The relationship between Motorola and Hytera;

4. The likelihood that such conduct would be repeated if an award of exemplary damages is not made; and

5. The relationship of any award of exemplary damages to the amount of actual harm Motorola suffered.

If you find that Hytera acted willfully and maliciously, you may award Motorola an amount of exemplary damages up to two times the amount of the compensatory damages you award Motorola[64] for trade secret misappropriation for the time during which it acted willfully and maliciously, subject to the same geographic and temporal limitations I have already

---

[63] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543 (1999) ("[D]etermining whether an employee meets this description [of a manager] requires a fact-intensive inquiry . . . ."); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 837 (7th Cir. 2013) ("Because Moore had the authority and discretion to make decisions about employees' accommodations, a rational jury could have concluded that Moore was acting in a managerial capacity . . . ."); *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 860 (7th Cir. 2001); *Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 568 and n.3 (7th Cir. 2001); *Sackett v. ITC Deltacom, Inc.*, 374 F. Supp. 2d 602, 622 (E.D. Tenn. 2005) (The Court "must look behind an employee's title to determine whether he or she was acting in a managerial capacity."); *Nittinger v. Holman*, 69 P.3d 688, 691 (Nev. 2003) ("The fact that an employee described herself as a 'manager' is not evidence of the type of managerial capacity that the law requires to charge an employer punitively with the conduct of a managerial agent.").

[64] Jury Instructions, *Miller UK Ltd.et al. v. Caterpillar, Inc.*, No. 1:10-cv-03770 (N.D. Ill. Dec. 18, 2015), ECF No. 1020.

discussed.

**Instruction No. 35 — Copyright Allegation Generally (Disputed)[65]**

Motorola claims that Hytera has infringed Motorola's copyright in four works, respectively titled, MOTOTRBO Mobile Subscriber FW Package R01.00.01, MOTOTRBO Portable Subscriber FW Package R01.00.01, and MOTOTRBO CYPHER R01.00.01, by copying original elements of those works into Hytera's own DMR program.[66]

---

[65] This proposed instruction omits reference to the fourth work, MOTOTRBO Portable R01.03, which remains subject to Hytera's pending motion for partial summary judgment. *See* Dkt. 704, 848.

[66] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.1.1.

**Instruction No. 36 — Copyright Infringement (Disputed)**

To succeed on its claim as to each of the asserted works, Motorola must prove the following things by a preponderance of the evidence:

1.      Motorola owns a valid copyright in the asserted work; and

2.      Hytera copied protected expression from the work in the United States.

I will explain what these words mean.[67]

If you find that Motorola has proved each of these things, then you must find for Motorola.  However, if you find that Motorola did not prove each of these things, then you must find for Hytera.

---

[67] *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.2.1; Amended Complaint.

**Instruction No. 37 — Copyright Ownership (Agreed) (Unchanged)**

Motorola owns a copyright in an asserted work if it was prepared by Motorola employees within the scope of their employment; or specially commissioned as a contribution to a collective work and there was a prior agreement, signed by Motorola and if those that prepared it agreed that the work would be a work made for hire.[68]

---

[68] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.4.2.

**Instruction No. 38 — Copying (Disputed)**

As I stated, Motorola must prove that Hytera copied protected expression in its work. You may infer that Hytera copied Motorola's work if Hytera had the opportunity to view or read the original before creating its own work and the two works are so similar that a reasonable person would conclude Hytera took protected expression from Motorola's work by.  You may also infer that Hytera copied Motorola's work if the similarities between the two works can be explained only by copying, rather than by coincidence.[69]

In making that determination, the focus is on similarities between the works and whether the similar elements constitute material of substance and value.[70]

---

[69] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.1.

[70] *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614, 619 (7th Cir. 1982).

45

**Instruction No. 39 — Protected and Non-Protected Expression (Disputed)**[71]

I will now give you some examples of what constitutes protected expression and what does not, in order to aid you in this process.

"Protected expression" means expression in Motorola's work that was created independently, involving some creativity.

Copyright law protects only original expression in the work. This includes the way that facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices are expressed in the work. It does not include the facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices themselves.

Protected expression does not include a method of operation, regardless of the form in which it is described, explained, or embodied in a work.[72] Even if there are multiple methods by which an operation can be performed, the selection of a particular method of operation is not eligible for protection.[73]

Protected expression also does not include elements of a work that are indispensable or at least standard in the treatment of a particular subject.[74]

Protected expression also does not include individual words and short phrases such as names, titles, and slogans.[75]

---

[71] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.5.2.

[72] 17 U.S.C. § 102(b).

[73] *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005) ("Even if there are multiple methods by which an operation can be performed, a plaintiff's choice of a particular method of operation is not eligible for protection.") (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807 (1st Cir. 1995)).

[74] *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011–12 (7th Cir. 2005) (explaining that scènes à faire excludes from protection elements "which are as a practical matter indispensable, or at least standard, in the treatment of a given topic").

[75] 37 C.F.R. § 202.1; *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) ("the name alone cannot constitute protectable expression"). *Schroeder v. William Morrow & Co.*, 566 F.2d 3, 5 (7th Cir. 1977) ("The copyright protects not the individual names and addresses but the compilation, the product of the compiler's industry.").

**Instruction No. 40 — Copyright Damages Generally (Disputed)**[76]

If you find that Motorola has proved that Hytera has infringed Motorola's copyright by a preponderance of the evidence, then you must determine the amount of damages, if any, Motorola is entitled to recover. You will be asked to determine Motorola's damages resulting from copyright infringement from August 2, 2015 through June 30, 2019, if any. If you find that Motorola has failed to prove the claim, then you will not consider the question of damages.

Motorola must prove damages by a preponderance of evidence.[77]

Motorola may recover any profits that Hytera made from the infringement within the United States from August 2, 2015 through June 30, 2019. I will define these terms in the following instructions.

Motorola is not entitled to a double recovery for the same wrongful conduct under both its trade secret misappropriation and copyright claims.[78]

---

[76] This proposed instruction includes a "three-year lookback" from the date of the amended complaint. That issue remains subject to Hytera's pending motion for partial summary judgment. *See* Dkt. 704, 848.

[77] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 12.8.1.

[78] *Thermodyne Food Serv. Prods. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) ("Plaintiffs are not entitled to a double recovery under both counts… for the same wrongful conduct.").

**Instruction No. 41 — Copyright / Defendants' Profits (Disputed)** [79]

Motorola is entitled to recover the profits that Hytera made in the United States from August 2, 2015 through June 30, 2019, because of the infringement. Hytera's profits are revenues that Hytera made because of the infringement, minus Hytera's expenses in producing and selling the infringing DMR radios. Motorola must prove Hytera's revenues and a causal relationship between the infringement and those revenues. Hytera must prove its own expenses and any portion of its profits that resulted from factors other than infringement of Motorola's copyright. That is, in addition to deducting Hytera's expenses relating to the infringement, you must only award profits attributable to the infringing aspects of Hytera's DMR products and not those profits attributable to the non-infringing aspects of the products. In apportioning between infringing and noninfringing contributors to Hytera's profits, what is required is not mathematical exactness, but only a reasonable approximation. [80]

If you find that Motorola unreasonably delayed in filing suit and that Hytera was prejudiced by that delay, you may reduce any award of unjust enrichment damages to the extent you find equitable. [81]

---

[79] As stated in the parties' pretrial submission, Dkt. 690-8 and in the brief accompanying this submission, Hytera contends that this instruction is inappropriate, inasmuch as disgorgement of profits is an equitable remedy for the Court to decide. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 686 (2014) (identifying "disgorgement of unjust gains" from infringement as "equitable relief"); *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1326 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 2741 (2019) ("We conclude, therefore, that TAOS has no right to a jury decision on its request for disgorgement of Intersil's profits as a remedy for trade secret misappropriation.").

[80] *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 932 (7th Cir. 2003).

[81] This instruction is proposed only if the Court determines that the equitable issues of unjust enrichment and disgorgement are for the jury to decide. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 688 (2014) (noting "adjustments may be in order in awarding injunctive relief, and in accounting for MGM's gains and profits"); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) ("Laches is a question of degree.") (quoting *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985)); *Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2018 WL 6590558, at *3 (N.D. Ill. Dec. 14, 2018) (applying damages to reduce damages).

**Instruction No. 42 — No Double Recovery (Disputed) (Unchanged)**

If you award Motorola damages for both its trade secret misappropriation claims and its copyright claims, you must not award damages in a manner that results in double recovery for the same injury.

For example, if you find that Hytera's trade secret misappropriation caused Motorola to lose 100 sales, and you award Motorola its actual loss for those 100 sales, you may not also award Motorola copyright damages in any form based on those lost sales.

**Instruction No. 43 — Selection of Presiding Juror; General Verdict (Agreed) (Unchanged)**[82]

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

---

[82] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.32.

**Instruction No. 44 — Communication with the Court (Agreed) (Unchanged)**[83]

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

---

[83] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.33.

**Instruction No. 45 — Disagreement among Jurors (Agreed) (Unchanged)[84]**

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

---

[84] Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.34.