PK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

**Before the Honorable Judge Charles R. Norgle, Sr.**

MOTOROLA SOLUTIONS, INC., ET
AL.,

     **Plaintiffs,**

     v.

HYTERA COMMUNICATIONS
CORPORATION LTD., ET AL.,

     **Defendants.**

Case No. 1:17-cv-01973

# JURY INSTRUCTIONS

**FILED**

FEB 14 2020

JUDGE CHARLES R. NORGLE
U.S. District Court Judge

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD. | |
| Plaintiffs, | Case No. 1:17-CV-01973 |
| v. | Honorable Charles R. Norgle Sr. |
| HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., and HYTERA COMMUNICATIONS AMERICA (WEST), INC. Defendants. | |

## FINAL JURY INSTRUCTIONS

**Instruction No. 1 - Functions of the Court and Jury**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part, about what the facts are or about what your verdict should be.

**Instruction No. 2 - No Inference from Judge's Questions**

During this trial, I have asked witnesses questions myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

**Instruction No. 3 - What is Evidence**

The evidence consists of the testimony of the witnesses, the

exhibits admitted in evidence, and stipulations. A stipulation is an

agreement between both sides that certain facts are true. The following

are stipulated facts:

1. Motorola Solutions, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois. Motorola Solutions, Inc. provides radio equipment and infrastructure technologies to thousands of customers in manufacturing, education, utility, transport and logistics, oil and gas, hospitality, and retail throughout the United States and around the world.

2. Motorola Solutions Malaysia SDN. BHD. is a subsidiary of Motorola Solutions, Inc. It was founded in 1974, and its principal place of business is in Kuala Lumpur, Malaysia. It offers communication devices and systems including analog and digital radios, accessories, and communication infrastructure.

3. Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD. (collectively, "Motorola") provides two-way digital radio communications for business and government customers.

4. Motorola's digital two-way radio technology and solutions are sold and used throughout the United States.

5. Hytera Communications Corporation Ltd. (previously known as HYT) was founded in Shenzhen, China, in 1993. The company started as a dealer/distributor for two-way radios

3

and began manufacturing its own two-way radio products in 1995.

6. Hytera America, Inc. is a Florida company with its principal place of business in Miramar, Florida. Hytera America, Inc. sells two-way radio products and provides customer service for those products.

7. Hytera Communications America (West), Inc. is a California company with its principal place of business in Irvine, California. Hytera Communications America (West), Inc. sells two-way radio products and provides customer service for those products.

8. Motorola launched its MotoTRBO professional digital radios in 2006 and first sold them in early 2007.

9. The U.S. Copyright Office issued registration certificates relating to certain software associated with Motorola's DMR radio products at issue in this case.

10. Hytera launched its DMR professional radios in early 2010.

11. Motorola Malaysia hired G.S. Kok in February 1987 as a hardware engineer. When G.S. Kok left Motorola Malaysia in 2008, he was a Senior Engineering Manager.

12. Motorola Malaysia hired Y.T. Kok in May 1997 as a software engineer. When Y.T. Kok left Motorola Malaysia in 2008, he was a Senior Software Engineer.

13. Motorola Malaysia hired Samuel Chia in August 1999 as a software engineer. When he left Motorola Malaysia in 2008, he was an Engineering Section Manager for Motorola.

14. G.S. Kok joined Hytera on February 18, 2008 as a Director, Shenzhen R&D Center, Government and Industry Terminal Product Department. When G.S. Kok left Hytera in

November 2018, he was a Deputy General Manager, Hytera UK.

15. Y.T. Kok joined Hytera on June 10, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department. When Y.T. Kok left Hytera in October 2018, he was a Senior Sales Manager in the Overseas Sales Department Headquarters.

16. Samuel Chia joined Hytera on June 16, 2008 as a Section Head, Shenzhen R&D Center, Government and Industry Terminal Product Department. When Samuel Chia left Hytera in October 2018, he was Senior Technical Consultant, Terminal Platform Center Line.

17. Motorola filed this lawsuit on March 14, 2017.

**Instruction No. 4 - Deposition Testimony**

During the trial, certain testimony was presented to you by the reading of the depositions and video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

**Instruction No. 5 - What is Not Evidence**

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the

7

evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

**Instruction No. 6 - Consideration of All Evidence Regardless of Who Produced It**

In determining whether any fact has been proved, you should

consider all of the evidence bearing on the question regardless of who

introduced it.

**Instruction No. 7 - Weighing the Evidence**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Instruction No. 8 - Direct vs. Circumstantial Evidence**

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Instruction No. 9 - Testimony of Witnesses**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

**Instruction No. 10 - Prior Inconsistent Statements**

You may consider statements given by one of the parties or a witness under oath before trial as evidence of the truth of what he or she said in the earlier statements, as well as in deciding what weight to give his or her testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his or her testimony here in court, you may consider the earlier statement or conduct only in deciding whether his or her testimony here in court was true and what weight to give to his or her testimony here in court.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

**Instruction No. 11 - Absence of Evidence**

  The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**Instruction No. 12 - Expert Witnesses**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

**Instruction No. 13 - Translated Language**

You have heard testimony of witnesses who testified in the Chinese language, and seen documents written in Chinese. Witnesses who do not speak English, or are more proficient in another language, testify through an official Court certified interpreter. In addition to the witnesses' interpreter, a check interpreter was also present. Although some of you may know Chinese, it is important that all jurors consider the same evidence. You should consider only the evidence provided through the official interpreter. Therefore, you must base your decision on the evidence presented in the English translation. Therefore, you must accept the interpreter's translation of the witnesses' testimony, or of Chinese text in documents.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or a party.

**Instruction No. 14 - Demonstrative Exhibits**

Certain slides, diagrams, and illustrations prepared by attorneys have been shown to you. Generally, those demonstratives are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts. Certain demonstratives, however, have been admitted as evidence in the case and will be provided as exhibits.

**Instruction No. 15 - Destruction of Evidence**

You have heard evidence that certain computers and files may have been lost, destroyed, and/or altered, and that those computers and files may have contained information that is relevant to this case. You may assume that such information would have been unfavorable to Hytera only if you find by a preponderance of the evidence that:

1. The information should have been preserved by Hytera in anticipation of or during the conduct of litigation;

2. Hytera destroyed the information with the intent to deprive Motorola of the information's use in this litigation; and

3. Hytera destroyed the information or caused the evidence to be destroyed in bad faith.

"Bad faith" in this context means destruction for the purpose of hiding adverse information, and requires a showing of more than negligence or even gross negligence on Hytera's part. You cannot infer that Hytera engaged in intentional, bad faith destruction of evidence simply because a subordinate employee acted in violation of Hytera's document retention policies and procedures, or simply because a party was unable to locate or produce certain documents.

**Instruction No. 16 - Fifth Amendment**

During the depositions of G.S. Kok, Y.T. Kok, and Samuel Chia, which were presented at our trial, they invoked their right not to incriminate themselves under the Fifth Amendment in our Bill of Rights. This was their right to do so. You may, but you need not, infer by such refusal that the answers would have been adverse to those individuals or Hytera. However, you can only draw reasonable inferences to the extent they are justified by independent corroborating evidence in this case, and you cannot speculate based on the witnesses' invocation of the Fifth Amendment alone.

To the extent that you draw any inferences adverse to G.S. Kok's, Y.T. Kok's, or Samuel Chia's respective positions from their decisions to invoke the Fifth Amendment right, those inferences would not necessarily be the same as an inference that is adverse to the position of Hytera. You are not required to find that any answer to a particular question by one of those witnesses would have been adverse to that witness or to any party in this case.

**Instruction No. 17 - Burden of Proof**

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.

**Instruction No. 18 - Multiple Claims; Multiple Defendants**

You will be instructed as to each element of each claim and defense. You must give separate consideration to each claim and defense in this case and each party in this case. Although there are three defendants—Hytera Communications Corporation Ltd., Hytera America, Inc. and Hytera Communications America (West), Inc.—it does not follow that if one is liable that any of the others is also liable. Unless otherwise stated, when I refer to "Hytera" in an instruction, that instruction applies to all three defendants, but you must apply the instruction separately as to each defendant.

**Instruction No. 19 - Motorola's Claims for Misappropriation of Trade Secrets**

Now I will instruct you on the elements of Motorola's claims for trade secret misappropriation under the Illinois Trade Secrets Act and the federal Defend Trade Secrets Act.

Under the Illinois Trade Secrets Act, in order to establish a claim for misappropriation of trade secrets, Motorola has the burden of proving the following propositions by a preponderance of the evidence:

1. That Motorola owned the information at issue;

2. That the information at issue is a trade secret;

3. That the information at issue was misappropriated by Hytera in Illinois; and

4. That the information was used by Hytera in its business.

Under the federal Defend Trade Secrets Act, in order to establish a claim for misappropriation of a trade secret, Motorola has the burden of proving the following propositions by a preponderance of the evidence:

1. That Motorola owned the information at issue;

2. That the information at issue is a trade secret;

3. That the information at issue was misappropriated by Hytera; and

22

4.  That the trade secret is related to a product used in, or intended for use in, interstate or foreign commerce.

**Instruction No. 20 - Respondeat Superior**

You have heard testimony about whether certain individuals were employed by Motorola or Hytera throughout the course of this trial. Hytera can be held liable for harm resulting to Motorola from the conduct of another if Hytera knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other.

In addition, a corporation can be liable, that is, responsible, for its employees' conduct whenever the employee is acting within the scope of his or her employment. An employee is acting within the scope of his or her employment if:

- The employee's conduct is of a kind he or she is employed to perform or reasonably could be said to have been contemplated as part of his or her employment; and

- The employee's conduct occurs substantially within the authorized time and space limits of his or her employment; and

- The employee's conduct is motivated, at least in part, by a purpose to serve the employer.

Conduct is within the scope of employment when actuated, at least in part, by a purpose to serve the employer. A corporation knows what its

employees know about subjects that are within the scope of the employees' duties and responsibilities.

An illegal act may still be within the scope of employment, so as to impose liability on the corporation.

A different rule applies with regard to punitive damages.

**Instruction No. 21 - Trade Secret Definition Generally**

A trade secret is information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that (l) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

I will explain what these terms mean.

**Instruction No. 22 - Trade Secret Concreteness**

In articulating a trade secret, it is not enough for Motorola to point to broad areas of technology. Instead, it is Motorola's burden to identify concrete information that it contends to constitute its trade secrets.

**Instruction No. 23 - Independent Economic Value**

To derive independent economic value from not being generally known means that the information gives a business a competitive advantage over other businesses that do not know the information. Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret. But information that requires considerable time, effort, and expense to duplicate, even if it is derived from public sources, can still qualify as a trade secret. Absolute secrecy, in the sense that no one else in the world possesses the information, is not required.

**Instruction No. 24 - Definition of Misappropriation**

If you find that Motorola has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether that trade secret information was misappropriated by Hytera.

To prove that a misappropriation occurred, Motorola must prove by a preponderance of the evidence that:

1. Hytera acquired Motorola's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or

2. Hytera disclosed or used Motorola's trade secret without Motorola's express or implied consent, and Hytera:

   a) Used improper means to acquire knowledge of the trade secret; or

   b) At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:

      (i) Derived from or through a person who used improper means to acquire it; or

      (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

      (iii) Derived from or through a person who owed a duty to Motorola to maintain its secrecy or limit its use.

**Instruction No. 25 - Improper Means**

The phrase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

On the other hand, the phrase "improper means" does not include acquiring information through reverse engineering or independent development.

**Instruction No. 26 - Modifications or Improvements**

You may find that a person used another's trade secret even if he uses it with modifications or improvements, so long as the substance of the resulting product is substantially derived from the other's trade secret.

**Instruction No. 27 - Trade Secret / Statute of Limitations**

Hytera contends that Motorola's trade secret misappropriation claims are barred by the statute of limitations. The statute of limitations is called an "affirmative defense." That means Hytera bears the burden of proof by a preponderance of the evidence.

The Defend Trade Secrets Act requires Motorola to bring its trade secret claim within three years after the alleged misappropriation was discovered or should have been discovered by the exercise of reasonable diligence. The Illinois Trade Secrets Act requires Motorola to bring its trade secret claim within five years after the alleged misappropriation was discovered or should have been discovered by the exercise of reasonable diligence. Concerns and suspicions do not start the clock of the statute of limitations.

Motorola filed suit on its federal and state law trade secret claims on March 14, 2017.

**Instruction No. 28 - Fraudulent Concealment**

The statute of limitations can be tolled if Motorola can prove by

clear and convincing evidence that:

1. Hytera intentionally took affirmative acts or made affirmative representations designed to prevent Motorola from discovering its trade secret misappropriation claims; and

2. Hytera's affirmative acts or representations prevented Motorola from discovering its claims.

Mere silence by Hytera and failure by Motorola to learn of its

cause of action do not amount to fraudulent concealment. If you find

that Motorola learned of information that would have led to the

discovery of its trade secret claims through diligence, you must find that

the statute of limitations began to run at that time, regardless of

concealment.

**Instruction No. 29 - Trade Secret / Damages Generally**

I will now instruct you on the law you must follow in determining compensatory damages. The purpose of compensatory damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendant's violation of a plaintiff's rights. Compensatory damages are not intended to punish the defendant. Motorola is also seeking exemplary damages. I will instruct you on that later.

You should not interpret the fact that I am giving instructions about Motorola's potential damages as an indication in any way that I believe that Motorola should, or should not, prevail on any claim. It is your task to decide first whether Hytera is liable. I am instructing you on damages only so that you will have guidance in the event that you decide that Hytera is liable and that Motorola is entitled to recover money from Hytera. You will be asked to determine Motorola's damages through June 30, 2019, if any.

If you find that Motorola proved that Hytera misappropriated Motorola's trade secrets and that Hytera has not proved its statute of

limitations defense, then you must decide whether Motorola is entitled to damages on its claim for misappropriation of trade secrets.

Motorola has the burden of proving whether Hytera caused the damage that Motorola is claiming by a preponderance of the evidence. Motorola must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Motorola is not entitled to damages that are remote or speculative.

**Instruction No. 30 - Trade Secret / Actual Loss**

In determining Motorola's actual loss, you should determine what profits Motorola proves that it would have made, if any, had Hytera not misappropriated Motorola's trade secret. To recover its actual loss, Motorola must prove:

1. A reasonable probability that, if Hytera had not misappropriated trade secrets, Motorola would have made additional sales of DMR products that Hytera made; and

2. The amount of profit Motorola would have made on those sales.

**Instruction No. 31 - Trade Secret / Unjust Enrichment**

Unjust enrichment is the amount Hytera benefited as a result of any misappropriation to the extent it exceeds Motorola's actual loss.

If you find that Motorola has proven by a preponderance of the evidence the amount that it is entitled to unjust enrichment damages in excess of its actual loss, you must deduct the costs and expenses that Hytera proves by a preponderance of the evidence that it incurred related to that benefit.

**Instruction No. 32 - Geographic and Temporal Scope of Trade Secret Damages**

You will be asked to determine Motorola's damages under the ITSA and the DTSA, if any. Under the ITSA, Motorola is seeking damages from 2010 through June 30, 2019. For Motorola's ITSA claim, if you find that Hytera misappropriated Motorola's trade secrets in or from Illinois, Motorola is entitled to recover all damages that occurred in Illinois that are a proximate and foreseeable result of that misappropriation.

Under the DTSA, Motorola is seeking damages from May 11, 2016 through June 30, 2019. For Motorola's DTSA claim, if you find that Hytera misappropriated Motorola's trade secrets anywhere in the world and an act in furtherance of the misappropriation was committed in the United States, Motorola is entitled to recover all damages that Motorola proved are a proximate and foreseeable result of that misappropriation, including any unjust enrichment that Hytera received anywhere in the world or profits Motorola lost anywhere in the world as a result of misappropriation on or after May 11, 2016.

38

**Instruction No. 33 - Trade Secret / Exemplary Damages**

If you find for Motorola on its trade secret claims, you may, but are not required to, assess exemplary damages against Hytera. The purposes of exemplary damages are to punish Hytera for its conduct and to deter Hytera and others from engaging in similar conduct in the future.

In order for Motorola to recover exemplary damages, you must find that Motorola has proved by a preponderance of the evidence that Hytera's acts were willful and malicious. That is, you may assess exemplary damages only if you find Hytera's conduct was malicious or in reckless disregard of Motorola's rights. Conduct is malicious if it is accompanied by ill will or spite, or it is done for the purpose of injuring Motorola. Conduct is in reckless disregard of Motorola's rights if, under the circumstances, it reflects complete indifference to Motorola's rights, and not simply that Hytera was aware that the information was a trade secret.

Exemplary damages may be awarded against an employer because of an act by its employee if, but only if you find:

39

1.  The employer authorized the doing and the manner of the act; or

2.  The employee was unfit and the employer was reckless in employing him or her; or

3.  The employee was employed in a managerial capacity and was acting in the scope of his or her employment; or

4.  The employer or a manager of the employer ratified or approved the act.

In determining whether an employee is acting in a managerial capacity, you should consider the employee's authority and discretion to make decisions and not only the employee's title.

If you find that exemplary damages are appropriate, then you must use sound reason in setting the amount of those damages. Exemplary damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either party. In determining the amount of any exemplary damages, you should consider the following factors:

1.  The reprehensibility of the conduct;

2.  The impact of the conduct on Motorola;

3.  The relationship between Motorola and Hytera;

4.  Hytera's financial condition;

40

5.    The likelihood that such conduct would be repeated by Hytera or others if an award of exemplary damages is not made; and

6.    The relationship of any award of exemplary damages to the amount of actual harm Motorola suffered.

If you find that Hytera acted willfully and maliciously, you may award Motorola an amount of exemplary damages up to two times the amount of the compensatory damages you award Motorola for trade secret misappropriation for the time during which it acted willfully and maliciously.

**Instruction No. 34 - Copyright Allegation Generally**

Motorola claims that Hytera has infringed Motorola's copyright in four works, respectively titled, MOTOTRBO Mobile Subscriber FW Package R01.00.01, MOTOTRBO Portable Subscriber FW Package R01.00.01, MOTOTRBO CYPHER R01.00.01, and MOTOTRBO Portable R01.03 by copying original elements of those works into Hytera's own DMR program.

**Instruction No. 35 - Copyright Infringement**

To succeed on its claim as to each of the asserted works, Motorola must prove the following things by a preponderance of the evidence:

1. Motorola owns a valid copyright in the asserted work; and

2. Hytera copied protected expression from the work in the United States.

I will explain what these words mean.

If you find that Motorola has proved each of these things, then you must find for Motorola. However, if you find that Motorola did not prove each of these things, then you must find for Hytera.

**Instruction No. 36 - Copyright Ownership**

Motorola owns a copyright in an asserted work if it was prepared by Motorola employees within the scope of their employment; or specially commissioned as a contribution to a collective work and there was a prior agreement, signed by Motorola, and if those that prepared it agreed that the work would be a work made for hire.

**Instruction No. 37 - Copying**

As I stated, Motorola must prove that Hytera copied protected expression in its work. You may infer that Hytera copied Motorola's work if Hytera had the opportunity to view or read the original before creating its own work and the two works are so similar that a reasonable person would conclude Hytera took protected expression from Motorola's work. You may also infer that Hytera copied Motorola's work if the similarities between the two works can be explained only by copying, rather than by coincidence.

In making that determination, the focus is on similarities between the works. Hytera cannot excuse its infringement by pointing to portions of its work that it did not copy from Motorola. The test is whether Hytera's work is so similar to Motorola's work that an ordinary reasonable person would conclude that Hytera unlawfully appropriated Motorola's protectible expression by taking material of substance and value.

**Instruction No. 38 - Protected and Non-Protected Expression**

I will now give you some examples of what constitutes protected expression and what does not, in order to aid you in this process.

"Protected expression" means expression in Motorola's work that was created independently, involving some creativity.

Copyright law protects only original expression in the work. This includes the way that facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices are expressed in the work. It does not include the facts; ideas; procedures; processes; systems; methods of operation; concepts; principles; discoveries; devices themselves.

**Instruction No. 39 - Copyright Damages Generally**

If you find that Motorola has proved that Hytera has infringed Motorola's copyright by a preponderance of the evidence, then you must determine the amount of damages, if any, Motorola is entitled to recover. You will be asked to determine Motorola's damages resulting from copyright infringement, if any. If you find that Motorola has failed to prove the claim, then you will not consider the question of damages.

Motorola must prove damages by a preponderance of evidence.

**Instruction No. 40 - Copyright / Defendants' Profits**

Motorola is entitled to recover the profits that Hytera made through June 30, 2019, because of Hytera's copyright infringement. Hytera's profits are revenues that Hytera made because of the infringement, minus Hytera's expenses in producing and selling the infringing DMR radios. Motorola must prove Hytera's revenues and a causal relationship between the infringement and those revenues. Hytera must prove its own expenses and any portion of its profits that resulted from factors other than infringement of Motorola's copyright.

**Instruction No. 41 - Limitations of Copyright**

You may award Motorola damages under the Copyright Act for infringement by Hytera that occurred in the United States. You may also award copyright damages for infringing acts outside the United States that were a consequence or a result of an initial infringing act by Hytera that occurred inside the United States.

**Instruction No. 42 - No Double Recovery**

If you award Motorola damages for both its trade secret misappropriation claims and its copyright claims, you must not award damages in a manner that results in double recovery for the same injury.

**Instruction No. 43 - Selection of Presiding Juror; General Verdict**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

**Instruction No. 44 - Communication with the Court**

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

## Instruction No. 45 - Disagreement among Jurors

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

53