5500

```
1                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3    MOTOROLA SOLUTIONS, INC., and MOTOROLA    ) No. 17 CV 1973
     SOLUTIONS MALAYSIA SDN. BHD,              )
4                                              )
                Plaintiffs,                    )
5    vs.                                       ) Chicago, Illinois
                                               )
6    HYTERA COMMUNICATIONS CORPORATION, LTD.,  ) February 11, 2020
     HYTERA AMERICA, INC., and HYTERA          )
7    COMMUNICATIONS AMERICA (WEST), INC.,      )
                                               )
8               Defendants.                    ) 1:00 p.m.

9                          TRIAL - VOLUME 36
                       TRANSCRIPT OF PROCEEDINGS
10
             BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
11                            and a jury

12   APPEARANCES:

13   For the Plaintiffs:     KIRKLAND & ELLIS, LLP
                             BY:  MR. ADAM R. ALPER
14                                MR. AKSHAY DEORAS
                                  MR. BRANDON HUGH BROWN
15                           555 California Street
                             Suite 2700
16                           San Francisco, California 94104
                             (415) 439-1400
17
                             KIRKLAND & ELLIS, LLP
18                           BY:  MR. MICHAEL W. DE VRIES
                                  MR. CHRISTOPHER M. LAWLESS
19                           333 South Hope Street
                             Suite 2900
20                           Los Angeles, California 90071
                             (213) 680-8400
21

22
     Court Reporter:         JENNIFER COSTALES, CRR, RMR
23                           Official Court Reporter
                             219 South Dearborn Street, Room 2342
24                           Chicago, Illinois 60604
                             (312) 435-5895
25                           jenny.uscra@yahoo.com
```

5501

```
 1   APPEARANCES:   (Continued)

 2   For the Plaintiffs:     KIRKLAND & ELLIS, LLP
                             BY:  MS. MEGAN MARGARET NEW
 3                           300 North LaSalle Street
                             Chicago, Illinois 60654
 4                           (312) 862-7439

 5                           KIRKLAND & ELLIS, LLP
                             BY:  MS. LESLIE M. SCHMIDT
 6                           601 Lexington Avenue
                             New York, New York 10022
 7                           (212) 446-4763

 8   For the Defendants:     STEPTOE & JOHNSON, LLP
                             BY:   MR. BOYD T. CLOERN
 9                                 MR. SCOTT M. RICHEY
                                   MR. MICHAEL J. ALLAN
10                                 MS. JESSICA ILANA ROTHSCHILD
                                   MS. ALICE LOUGHRAN
11                                 MR. BILL TOTH
                                   MR. CHRISTOPHER SUAREZ
12                           1330 Connecticut Avenue NW
                             Washington, DC 20036
13                           (202) 429-6230

14                           STEPTOE & JOHNSON, LLP
                             BY:  MR. DANIEL S. STRINGFIELD
15                           227 West Monroe Street
                             Suite 4700
16                           Chicago, Illinois 60606
                             (312) 577-1300
17

18
     ALSO PRESENT:           MR. RUSS LUND and
19                           MS. MICHELE NING

20

21

22

23

24

25
```

5502

1          (Proceedings in open court.  Jury out)

2               THE CLERK:  17 C 1973, Motorola versus Hytera.

3               THE COURT:  Are you ready to proceed?

4               MR. DE VRIES:  Yes, we are, Your Honor.

01:02:17    5               THE COURT:  Okay.  Well, what I'd like to see are

6     those instructions that remain controversial and where there

7     are objections to them.

8               MR. DE VRIES:  Yes, Your Honor.

9               THE COURT:  And how many of them are there?

01:02:29   10               MR. DE VRIES:  So the parties following the trial

11     yesterday met and conferred late into the night last night and

12     again this morning, and where we've landed is the following:

13     We have agreed on 33 instructions, fully agreed.

14               There remain 13 instructions that are disputed.  Of

01:02:49   15     those 13, there are 6 where we have proposed compromises,

16     Motorola has, that we believe will resolve the disputes, and I

17     understand Hytera is still considering those.

18               We think that there are seven where the parties will

19     be unable to reach agreement and we'll need a ruling from the

01:03:09   20     Court in order to proceed.

21               And we are prepared to address our positions on those

22     instructions and to hand up to Your Honor our proposal.  And

23     Hytera will have its proposal for those as well.

24               And once Your Honor rules, we are prepared to, as

01:03:27   25     Your Honor instructed yesterday, prepare a set of those

1    instructions that can be read to and also distributed to the

2    jury members.

3            THE COURT:  All right.  Are you in agreement?

4            MR. TOTH:  So I think actually the 13 that my friend

01:03:40    5    represented, I think in the last 20 minutes we've on both

6    sides have come to agreements on two of them.

7            But I think we are in agreement that there are

8    several --

9            THE COURT:  You're in agreement on two?

01:03:51    10    MR. TOTH:  On 2 of the 13 that my friend just

11    mentioned of the remaining --

12            THE COURT:  You're not in agreement on six?

13            MR. TOTH:  I believe we're -- there is I think around

14    eight that are still disputed, some of which we are very close

01:04:06    15    on and with some more time I think we would be able to arrive

16    at an agreement.  There are others that as my friend

17    represented that we're not --

18            THE COURT:  Your numbers are off a little bit here.

19    You're not in agreement on the numbers.  So one way to at

01:04:20    20    least get this matter going is take some time to see if you

21    can reduce those that remain in controversy now that you are

22    all here together and we'll call the case again in a little

23    while.

24            MR. DE VRIES:  Yes, Your Honor, we'll do that.

01:04:35    25    MR. TOTH:  Yes, Your Honor.  Thank you.

5504

1      (Recess at 1:05 p.m. to 3:35 p.m.)

2          THE CLERK:  Motorola versus Hytera.

3          THE COURT:  Good afternoon, counsel.

4          MR. DE VRIES:  Good afternoon, Your Honor.

03:35:06    5          MR. CLOERN:  Good afternoon, Your Honor.

6          THE COURT:  So where does the matter stand?

7          MR. DE VRIES:  So I'm pleased to report that the meet

8  and confer between the parties has been very productive.  We

9  have gone from 33 agreed instructions to 40 agreed

03:35:19   10  instructions.  That's one more than I thought when I was

11  talking to Your Honor earlier that we would get to.  So we

12  have 40 agreed instructions.

13          There are seven that the parties were not able to

14  agree on, and those relate to six issues.

03:35:33   15          The parties are prepared to hand up their competing

16  instructions and to briefly explain their position on those

17  six disputed issues.  Our positions are also included in our

18  proposed instructions.

19          THE COURT:  All right.  You may hand them up, if you

03:35:48   20  will.

21          MR. DE VRIES:  Okay.  And shall we do that one by one

22  for the six or shall we do it all at once, Your Honor?

23          THE COURT:  One at a time.

24          MR. DE VRIES:  Okay.  So the first issue, Your Honor,

03:35:59   25  has to --

5505

1          THE COURT:  May I have a copy?

2          MR. DE VRIES:  Yes.  I'm sorry.  And I do have a copy

3     of Hytera's, but they may prefer to hand up their own.

4          MR. CLOERN:  Which number?

03:36:14    5          MR. DE VRIES:  Number 16, the Destruction of

6     Evidence.  And I do have a copy of yours if you'd like it, but

7     whatever you prefer.

8          MR. CLOERN:  Your Honor, from the Hytera side, we'd

9     like to give an opportunity to make some of these arguments to

03:36:34   10     some of the folks on our team that you haven't met yet.

11          THE COURT:  Well, it would be my pleasure to meet

12     them.

13          MR. CLOERN:  Thank you, Your Honor.

14          I'll introduce Mr. Christopher Suarez.

03:36:44   15          THE COURT:  All right.  Good afternoon, counsel.

16          MR. SUAREZ:  Good afternoon, Your Honor.

17          THE COURT:  Looking at instruction 15, No Adverse

18     Inference, do you have another copy of that?

19          MR. DE VRIES:  Yes, Your Honor.  So it should be

03:36:57   20     number 16, I believe.

21          THE COURT:  Well, that's 15.

22          MR. DE VRIES:  Okay.  And it should be --

23          THE COURT:  Do you want to start with 16 and work

24     backward?

03:37:05   25          MR. SUAREZ:  So, Your Honor, if I can sort of explain

5506

what you have in front of you.  So we have given you an
instruction that's labeled 15.  And so the dispute between the
parties is Hytera believes there should be an instruction that
there should be no adverse inferences based on spoliation in
03:37:20  this case.

Motorola's position is that there should be an
instruction on adverse inferences relating to spoliation in
this case.

But Hytera has also provided you a contingent
03:37:30  instruction in the event you rule that an adverse instruction
is required on this issue.

THE COURT:  All right.

MR. SUAREZ:  So that's why there are two in Hytera's
submission.

03:37:37  THE COURT:  All right.  So I'm missing -- and the
proposed instruction is unnumbered?

MR. DE VRIES:  Our proposed instruction, Your Honor,
the only one is number 16.  It's Destruction of Evidence.

I actually think that 15 is a number that we can
03:37:53  resolve later, but I agree that it relates to this.

So our proposal is number 16, Motorola, Destruction
of Evidence.

And what that says, Your Honor, is it tells the jury
that they may assume that certain --

03:38:08  THE COURT:  Well, just a minute.  You are objecting

5507

1    to Motorola's 16, right?

2                MR. SUAREZ:  That is correct, yes.

3                THE COURT:  All right.  Just to keep this straight.

4         All right.  So what is your objection?

03:38:18    5          MR. SUAREZ:  Yes.  So our objection, Your Honor, is

6    that under Rule 37(e), which as Your Honor knows was amended

7    in December 2015, any adverse inference instruction related to

8    spoliation has to occur after a finding of intentional bad

9    faith by the Court.

03:38:32    10              In this particular case, Hytera has acted in good

11   faith throughout the litigation to ensure that it has produced

12   documents and source code.  It has made sure that it

13   immediately retained counsel upon the litigation starting.  It

14   conducted interviews, collected laptops and documents from

03:38:51    15   custodians as soon as it learned of the case.

16              There is actually no evidence in this case whatsoever

17   of destruction of documents in anticipation of litigation.

18              THE COURT:  Well, there is no evidence of actual

19   destruction, but there is evidence of the absence of certain

03:39:05    20   evidence and documentation.  You were here for the trial?

21              MR. SUAREZ:  I have been here for the trial, Your

22   Honor.

23              THE COURT:  Did you not hear that certain information

24   was not available?

03:39:17    25          MR. SUAREZ:  There is some, there is some evidence

5508

1       that information is not available.  But the standard under

2       Rule 37(e) is relating to the party and whether there is

3       evidence that the party intentionally acted in bad faith to

4       destroy evidence or information after the conduct of

03:39:33    5   litigation.  And there is no evidence of that.  That is our

6       point.

7               There is case law in the Seventh Circuit --

8               THE COURT:  You didn't hear any evidence from various

9       witnesses about the absence of information?

03:39:40    10  MR. SUAREZ:  There has been evidence, Your Honor,

11      about the absence of information, but all of that information

12      is prior to the 2017 complaint.  So like, for example, there

13      is evidence about Peiyi Huang's laptop and that certain

14      information was deleted from that.  That all occurred in 2013.

03:39:56    15  That's undisputed.

16              THE COURT:  Is there a missing laptop?

17              MR. SUAREZ:  So there is evidence of a potentially

18      lost laptop.  But that was Sam Chia's laptop lost in 2013,

19      before the litigation.  And so the point is, Your Honor, there

03:40:11    20  is nothing --

21              THE COURT:  Did he take it with when he went to

22      Hytera?

23              MR. SUAREZ:  So the bottom line is there is no

24      evidence in this case about that laptop post-litigation or any

03:40:18    25  evidence about Hytera 's conduct post the litigation.

5509

1          THE COURT:  Okay.  So you say there is no evidence to

2     support Motorola's destruction of evidence instruction?

3          MR. SUAREZ:  So our position is that there is no

4     evidence that Hytera engaged in conduct during the litigation

03:40:35   5     that demonstrates intentional bad faith.  And I want to be

6     clear, Your Honor, that --

7          THE COURT:  Well, Hytera acts by way of its

8     employees, especially those who are in a higher managerial

9     position.

03:40:47  10          MR. SUAREZ:  Well, to the extent that information has

11     been lost in this case, Your Honor, it has been lost in the

12     ordinary course of business.  And there is no evidence that

13     there was any destruction, any orders on the part of Hytera.

14     There has been 20 million pages of documents produced in this

03:41:00  15     case, a wealth of source code produced in this case.

16          And the standard in Rule 37(e) says that you can

17     only -- and you can provide an instruction on this type of

18     issue if there is something more than gross negligence.

19          THE COURT:  It's called flooding a party or

03:41:13  20     inundating an opponent with evidence, an excess of production

21     can be viewed negatively.

22          MR. SUAREZ:  So, Your Honor, the bottom line is we

23     that don't view that as relevant because the bottom line is

24     that --

03:41:27  25          THE COURT:  Well, you mentioned millions of documents

5510

1    have been turned over.

2         MR. SUAREZ:  Well, it shows the good faith.  And to

3    the extent there has been any allegation of destruction or

4    anything like that, Motorola -- or Hytera has acted in good

03:41:38    5    faith throughout the case, even restored evidence from a

6    laptop.

7         THE COURT:  All right.  Motorola may respond to the

8    argument of counsel.

9         MR. DE VRIES:  Yes, Your Honor.  Two things.  The

03:41:47    10   first is that the rule that counsel is referring to is not the

11   right one to look at in this respect.  We are not asking Your

12   Honor to instruct the jury that there was spoliation, that the

13   jury must find an adverse inference.

14        Rather, this rule explains to the jury the

03:42:05    15   circumstances in which they may find an adverse inference.  In

16   fact, it specifically says, "You may assume that such evidence

17   may have been unfavorable to Hytera only if you find by a

18   preponderance of the evidence that..." and then it explains

19   what to do.

03:42:20    20        And then second, as Your Honor noted, there is

21   significant evidence of destruction of evidence both before

22   and after the lawsuit was filed.

23        THE COURT:  Was it a destruction or loss or

24   unavailable?

03:42:31    25        MR. DE VRIES:  It was both, Your Honor.  So there is

proof that Peiyi Huang, a senior manager in the company, deleted numerous admittedly relevant materials from her laptop.

There is evidence that there was entire other SVN server that has somehow disappeared before this lawsuit was filed.

After the lawsuit was filed, we don't agree that this was lost before the lawsuit was filed. Sam Chia's key laptop went missing.

Fourth, Peiyi Huang, her laptop in the middle of the litigation was reformatted as part of an attempt on her part after the lawsuit was filed to destroy evidence relating to the theft.

And then there is additional evidence here that we've listed on our instruction that came out at trial. And so all of this is both fully sufficient to support this instruction.

And this instruction is necessary, Your Honor, because the final thing I'll say is time after time, counsel for Hytera has suggested to the jury arguments like "You've only seen this one piece of evidence."

They have relied on the absence of evidence to their advantage in the case. And it is critical that the jury understand that when you have evidence like we have here of intentional destruction by senior managers in the company, both before and after the lawsuit was filed, they may, but

5512

1   you're not instructing them that they have to, but they may

2   find an adverse inference if they find these things that the

3   law requires.

4              THE COURT:  All right.

03:44:02   5   MR. SUAREZ:  May I respond, Your Honor?

6              THE COURT:  Now, so Hytera has also then submitted an

7   alternative or some variation of the instruction?

8              MR. SUAREZ:  Yes, we have, Your Honor.

9              THE COURT:  Is that the one that says Bad Faith?

03:44:12   10  MR. SUAREZ:  That is the one that says Bad Faith and

11  it comports with the mandates of Rule 37(e).

12             THE COURT:  Okay.  Would that be added to the

13  instruction proposed by Motorola or be a substitute for it?

14             MR. SUAREZ:  So are you referring to the No Adverse

03:44:29   15  Inference instruction from Hytera or the other?  Because there

16  is two.

17             THE COURT:  Motorola's Destruction of Evidence,

18  number 16.  And you have submitted number 15, right?

19             MR. SUAREZ:  Yeah.  So we have --

03:44:42   20  THE COURT:  Have you also submitted the instruction

21  that says Bad Faith?

22             MR. SUAREZ:  So, Your Honor, that is two pages.  So

23  that's not a separate instruction.

24             THE COURT:  Okay.

03:44:48   25  MR. SUAREZ:  There is two instructions that are on

5513

1        the two pages I've handed you.

2                THE COURT:  Okay.

3                MR. SUAREZ:  The first one is only three lines.  It

4        is a curative instruction.

03:44:56  5                THE COURT:  All right.  And just for clarity, what

6        we're talking about is page 17 and page 18?

7                MR. SUAREZ:  Correct, that is correct.

8                THE COURT:  All right.

9                MR. SUAREZ:  Yeah.  And so, Your Honor, just to

03:45:04  10       respond to counsel's point, first of all, he's actually just

11       misstated the law.

12                So Rule 37(e) actually specifically says you must

13       find that intentional bad faith to provide an instruction,

14       this is 37(e)(2)(B), to instruct the jury that it may or must,

03:45:22  15       so may or must presume the information was unfavorable to the

16       parties.

17                So Mr. De Vries is incorrect on the law.

18                But then turning it to the facts, Your Honor, nothing

19       he has stated has shown intentional bad faith on the part of

03:45:36  20       Hytera.  There is all the evidence, to the extent it's been

21       lost, it was lost in the ordinarily course.

22                There is no evidence regarding these Peiyi laptops

23       that anything occurred after the course of litigation.

24                The laptop he mentioned that was deleted was deleted

03:45:52  25       in 2013.  Again, Hytera forensically restored that, produced

1    all the evidence.

2            And the reason that there is a log of deleted

3    evidence from 2013 again is because Hytera during the

4    litigation undertook those efforts to restore it.

03:46:01    5            THE COURT:  All right.  Don't talk me out of what I

6    am about to do.  I agree ultimately with your position and

7    will give Hytera's instruction 15 consisting of two pages and

8    reject Motorola's Destruction of Evidence instruction.

9            And, of course, all of this can be covered in the

03:46:25    10   closing argument where there is a disagreement in terms of

11   whether there was bad faith or no bad faith or whether there

12   was disruption or loss.  All of that can be discussed in a

13   closing argument.

14           But I think Hytera's two-page instruction, page 17

03:46:42    15   and 18, which is instruction number 15, does adequately advise

16   the jury of the law that appertains.

17           MR. DE VRIES:  And, Your Honor, may I just make sure,

18   because we were not handed what you are looking at, so we'd

19   like to just make sure, is that the one that begins --

03:46:56    20           THE COURT:  That's why I'm trying to describe

21   everything.

22           MR. DE VRIES:  I know, Your Honor.  We just -- but I

23   think that what you are referring to, that should say, "You

24   have heard evidence that certain computers and files may have

03:47:06    25   been lost, destroyed and/or altered."

1          Okay.  So I see, so it is, "You have heard evidence

2    that certain computers and files may have been lost, destroyed

3    and/or altered and that those computers and files may have

4    contained information that is relevant to this case.  You may

03:47:27    5    assume that such information would have been unfavorable to

6    Hytera only if you find by a preponderance of the evidence

7    that:

8          "One, the information should have been preserved by

9    Hytera in anticipation of or during the conduct of litigation.

03:47:41    10         "Two, Hytera destroyed the information with the

11    intent to deprive Motorola of the information's use in this

12    litigation; and

13         "Three, Hytera destroyed the information or caused

14    the evidence to be destroyed in bad faith."

03:47:54    15         And then finally, there is a description of what bad

16    faith requires.  Is that right, Your Honor?

17         THE COURT:  All right.  There is not much difference

18    between the two proffered instructions.

19         MR. SUAREZ:  So, Your Honor, may I have a point of

03:48:07    20    clarification?  Sorry to interrupt.

21         THE COURT:  Go ahead.

22         MR. SUAREZ:  Yes, Your Honor.  So on our list there,

23    there are two different instructions.  So the first one is a

24    curative instruction.  So Hytera's position is that --

03:48:17    25         THE COURT:  What do you mean there are two?  You have

5516

| | | |
|---|---|---|
| | 1 | given me a two-page instruction, right? |
| | 2 | MR. SUAREZ:  So it has -- so the first -- |
| | 3 | THE COURT:  Have you given me a two-page instruction? |
| | 4 | MR. SUAREZ:  Yes.  It has two instructions within it. |
| 03:48:26 | 5 | The first three lines are one instruction that's meant to be |
| | 6 | curative and the second one is in the alternative in the event |
| | 7 | you agree that an instruction should be awarded. |
| | 8 | THE COURT:  I don't know what you are talking about. |
| | 9 | You have given me a two-page instruction, have you not? |
| 03:48:39 | 10 | MR. SUAREZ:  Yes, so -- |
| | 11 | THE COURT:  This is page 1 of your instruction?  This |
| | 12 | is page 2 of your instruction? |
| | 13 | MR. SUAREZ:  Yes, so -- |
| | 14 | THE COURT:  So what more do you want to give me? |
| 03:48:49 | 15 | MR. SUAREZ:  So my point, Your Honor, is -- |
| | 16 | THE COURT:  What more do you want to give me? |
| | 17 | MR. SUAREZ:  I don't want to give you more.  I just |
| | 18 | want to clarify -- |
| | 19 | THE COURT:  If you don't want to give me more, then |
| 03:48:57 | 20 | you have given me everything you want me to consider, right? |
| | 21 | MR. SUAREZ:  I have, yes. |
| | 22 | THE COURT:  And I have agreed with what you have |
| | 23 | given me in this two-page instruction, page 17 and page 18. |
| | 24 | You may be able to reduce it to one page when you |
| 03:49:15 | 25 | ultimately give me the final product that I will read to the |

5517

1    jury and give to the jury.  But I am giving instruction number

2    15.  And as I hold it in my hand, it is two pages, which can

3    be reduced to one page.

4          MR. SUAREZ:  All right.

03:49:34  5          THE COURT:  Over the objection of Motorola.  And

6    Motorola had offered instruction number 16.

7          All right.  Let's move on here.

8          MR. SUAREZ:  Okay.  Thank you, Your Honor.

9          THE COURT:  What is the next instruction at issue?

03:49:48 10          MR. DE VRIES:  So, Your Honor, the second of the six

11   disputes --

12          THE COURT:  May I have a copy?

13          MR. DE VRIES:  Yes, Your Honor.  We'll hand it up

14   right now.  My colleague, Ms. Schmidt, is going to address

03:49:57 15   this.  This is respondeat superior is the issue.

16          MR. CLOERN:  Alice Loughran, Your Honor.

17          MS. LOUGHRAN:  Hi.  Alice Loughran, Your Honor.

18   Thank you.

19          THE COURT:  Thank you.  Good afternoon.

03:50:08 20          MS. LOUGHRAN:  We are coming up with our proposed

21   instruction on this.

22          THE COURT:  There is an objection to Motorola's

23   instruction number 20, respondeat superior?

24          MR. LOUGHRAN:  Yes, there is, Your Honor.

03:50:34 25          THE COURT:  On what theory do you object?

5518

1        MR. LOUGHRAN:  Well, we object on the theory that

2   under the case law, including case law in the Central District

3   of Illinois, it's a --

4        THE COURT:  District Court?

03:50:46    5        MR. LOUGHRAN:  It's a Federal District Court in this,

6   applying the ITSA, where it was a similar situation where you

7   had employees coming over from one company to the other, and

8   the employee allegedly stole it and it was misappropriated at

9   the second instruction.

03:50:59    10       The Court in this case said that it was a jury

11  question.  And the question for the jury in that issue was

12  whether the new employer knew or should have known.  That's

13  the test and that's what we argued in our proposed

14  instruction, Your Honor.

03:51:16    15       THE COURT:  Can it be added to the instruction

16  offered by Motorola?

17       MR. LOUGHRAN:  I'm not sure.  We tried that, Your

18  Honor.  We can give it another try, but --

19       THE COURT:  Well, I'm looking at the instruction

03:51:26    20  submitted by Motorola, and that adequately states the law.

21       MS. SCHMIDT:  It does, Your Honor.  We have used --

22       THE COURT:  Do you agree with the Court?

23       MS. SCHMIDT:  I do agree with the Court, Your Honor.

24  We used a model instruction from another case.  We think it

03:51:39    25  applies to the ITSA and DTSA.

5519

1        THE COURT:  It is a fundamental principle of law.

2        MS. SCHMIDT:  Agreed.

3        THE COURT:  And in this case, these are not the

4   people who clean up after-hours.  These are substantial

03:51:52   5   employees of the corporate defendant.  And so the concept of

6   respondeat superior would apply.

7        So to the extent that Hytera objects to Motorola's

8   number 20, it is overruled.

9        The question then becomes whether the Court should

03:52:13  10   add to that instruction what Hytera offers.  And Hytera

11   offers, "A third party can be liable for the misrepresentation

12   of a trade secret when it knows or has reason to know that the

13   trade secret was acquired by improper means or obtained in

14   violation of a duty of confidence owed to the trade secret

03:52:42  15   owner."

16        That is an adequate representation of law as well, is

17   it not?

18        MS. SCHMIDT:  No.  We disagree, Your Honor.

19        THE COURT:  What's wrong with it?

03:52:50  20        MS. SCHMIDT:  Respondeat superior simply says that an

21   employer can be liable for the torts of his employee when

22   those torts are committed within the scope of the employment.

23   It does not further impose an additional knowledge requirement

24   on the employer.

03:53:02  25        What we have in our instruction is the law.  Hytera

5520

```
 1  is now attempting to include additional requirements that are

 2  unsupported.

 3          THE COURT:  Well, you would argue and all along the

 4  way it has been an issue about what Hytera knew or had reason

 5  to know.  Several witnesses have testified in that regard.

 6          So you object to third-party liability for trade

 7  secret misrepresentation as offered by Hytera?

 8          MS. SCHMIDT:  We do, Your Honor.

 9          THE COURT:  Okay.  So you may argue why I should give

10  this.

11          MR. LOUGHRAN:  Sure, Your Honor.  That is directly

12  out of the Illinois Trade Secrets statute.  And it is an exact

13  quote of the language.  It's consistent with the case law.

14          As the Court is aware, there is a lot of evidence --

15          THE COURT:  Well, the case law you talk about --

16          MR. LOUGHRAN:  Sure.

17          THE COURT:  -- is a District Court, a District Court

18  in the Central District.  And the Seventh Circuit has said

19  District Courts should not be spending too much time reviewing

20  the rulings of other District Courts.

21          MR. LOUGHRAN:  I understand, Your Honor, absent

22  Seventh Circuit guidance.

23          THE COURT:  Do you have a Seventh --

24          MS. LOUGHRAN:  They don't have a Seventh Circuit case

25  on --
```

03:53:20

03:53:36

03:53:50

03:54:01

03:54:10

5521

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
|         | 1  | THE COURT: Well, what does that tell you if there is                 |
|         | 2  | no Seventh Circuit case on the point?                                 |
|         | 3  | MR. LOUGHRAN: That the Court should give both                        |
|         | 4  | instructions.                                                        |
| 03:54:17 | 5  | THE COURT: And what is your reply?                                   |
|         | 6  | MS. SCHMIDT: No, Your Honor, the Court should not                   |
|         | 7  | give this instruction because it's wrong as matter of law.           |
|         | 8  | The ITSA does not say what is in their instruction.                  |
|         | 9  | The ITSA --                                                          |
| 03:54:28 | 10 | THE COURT: Well, counsel has just said she took it                  |
|         | 11 | right out of the statute.                                            |

03:54:17   5   THE COURT: And what is your reply?

6   MS. SCHMIDT: No, Your Honor, the Court should not

7   give this instruction because it's wrong as matter of law.

8   The ITSA does not say what is in their instruction.

9   The ITSA --

03:54:28  10   THE COURT: Well, counsel has just said she took it

11   right out of the statute.

12   MS. SCHMIDT: She certainly took certain language out

13   of it. But the ITSA --

14   THE COURT: Did you take it right out of the statute

03:54:34  15   or was that a misrepresentation?

16   MR. LOUGHRAN: No. I think it was directly out of

17   the statute.

18   Which language was misstated?

19   MS. SCHMIDT: I'm not aware of the statute stating a

03:54:41  20   third party can be liable for misappropriation of a trade

21   secret.

22   THE COURT: Well, that's what counsel just told me.

23   She took it out of the statute.

24   MS. SCHMIDT: Certain language in this is in the

03:54:50  25   statute, but the statute does not say a third party can be

5522

1  liable when it knows or has reason to know.  The statute

2  simply incorporates --

3           THE COURT:  Well, first of all, is Hytera a third

4  party?

03:55:00   5           MS. SCHMIDT:  No, Your Honor.

6           THE COURT:  It is the only party.

7           MS. SCHMIDT:  It is.

8           THE COURT:  Because the Motorolans, so to speak, are

9  not parties.

03:55:11  10           MS. SCHMIDT:  That's right.

11           THE COURT:  All right.  So I will then say that it

12  might confuse the jury for them to be thinking about a third

13  party when the only party, except for the subsidiaries, would

14  be Hytera.

03:55:29  15           So the Court rejects Hytera's third-party liability

16  for trade secret representation.

17           The instruction number 20 offered by Motorola

18  adequately states the law with respect to respondeat superior

19  and it fits directly and reasonably into this case based upon

03:55:54  20  all of the testimony that we have heard.

21           And so the Court rejects Hytera's third-party

22  liability of trade secret misrepresentation.

23           And the next issue?

24           MR. DE VRIES:  Yes, Your Honor.  The third of the six

03:56:12  25  issues is statute of limitations and fraudulent concealment.

5523

1          My colleague, it's obviously a very important issue,

2     my colleague Mr. Deoras --

3          THE COURT:  Yes, it is.  But I have denied the motion

4     for summary judgment saying that it was an issue for the jury

03:56:30    5     to determine.  There were factual issues regarding the statute

6     of limitations.

7          And so does your proffered instruction, is it

8     consistent with that ruling by the Court?  What does -- do you

9     have a copy of the instruction?

03:56:47   10          MR. DEORAS:  Yes, Your Honor.

11          MR. DE VRIES:  The answer is absolutely, Your Honor.

12          MR. DEORAS:  So, Your Honor, I handed up two

13     instructions.  One instruction is on statute of limitations

14     and one is on fraudulent concealment.

03:57:10   15          And to answer your question, yes, I think the

16     instruction that we proposed for statute of limitations is

17     fully consistent with Your Honor's piror orders.

18          THE COURT:  Well, how does it differ with the one

19     offered by Hytera?

03:57:20   20          MR. DEORAS:  Well, there is actually a number of

21     differences.  Hytera does not state whose burden it is to

22     prove statute of limitations.  It is Hytera's burden.  Our

23     instruction comes straight from --

24          THE COURT:  Well, is that not enough to admit yours

03:57:32   25     and reject Hytera's?

5524

|   |   |
|---|---|
|  | 1 |
|  | 2 |
|  | 3 |
|  | 4 |
| 03:57:41 | 5 |

               1          MR. DEORAS:  Yes, Your Honor.

               2          MS. ROTHSCHILD:  Your Honor, we completely disagree

               3   as I'm sure you can imagine.

               4          THE COURT:  Whose burden is it?

03:57:41       5          MS. ROTHSCHILD:  Hytera does not disagree that it is

               6   Hytera's burden.  There are other --

               7          THE COURT:  You do not have that in your instruction.

               8          MS. ROTHSCHILD:  We can add that to our instructions,

               9   but --

03:57:47      10          THE COURT:  Well, why should you add it when it's

              11   already in Motorola's instruction?

              12          MS. ROTHSCHILD:  Because Motorola's misstates the law

              13   that's applicable for the jury to determine whether --

              14          THE COURT:  Okay.  Where does Motorola misstate the

03:57:57      15   law in terms of its offered instruction number 28, trade

              16   secret statute of limitations?

              17          MS. ROTHSCHILD:  In several respects, Your Honor.

              18   First of all, they misstate the statute of limitations

              19   instruction in the sense that they suggest that Motorola had

03:58:11      20   to note the precise claim that it's bringing.  Under the law,

              21   that is not correct under Hoffman versus Orthopedic.  It's an

              22   Illinois Court of Appeals case.

              23          In addition, they state that the statute of

              24   limitations does not begin to run until the conclusion of an

03:58:25      25   investigation.  That's not correct under Seventh Circuit and

5525

1       Northern District of Illinois law.

2              THE COURT:  What does the Seventh Circuit say?

3              MS. ROTHSCHILD:  The Seventh Circuit says that there

4       is a two-prong test.  If you have suspicions and the ability

5       to discover your cause of action, then that's when the statute

6       begins to run.

7              THE COURT:  Is that what you put in your proffered

8       instruction?

9              MS. ROTHSCHILD:  Yes, Your Honor.  That's Law v.

10      Medco, Seventh Circuit.

11             THE COURT:  Okay.  But suspicion alone is not enough.

12             MS. ROTHSCHILD:  Correct.  Suspicion plus the ability

13      to do something about it.

14             MR. DEORAS:  So, Your Honor, although they cite Law

15      v. Medco, they don't actually quote Law v. Medco correctly.

16      What that case actually found, there was no statute of

17      limitations issue because the way that the court set out the

18      standard was to say that there were suspicions, plus they were

19      able to discover that there was an actual claim that they

20      could bring, and then they didn't have any other legal --

21      absent legal process, they had no other recourse.

22             And so that is irrelevant to what we put in.

23             THE COURT:  Well, it seems to me that both proffered

24      instructions have defects.  And so we'll put them off to the

25      side with the hope that you will be able to resolve this

5526

1    overnight.  You are close to an agreement on the issues here,

2    but I think both have problems.

3           All right.  So we'll put --

4           MS. ROTHSCHILD:  Your Honor, if I may?  Also,

03:59:45    5    Motorola's instruction does not reflect the burden that

6    Motorola itself had to exercise due diligence to investigate

7    its claims.  And we believe that's another fault of their

8    instruction.  And they're seeking to --

9           THE COURT:  So I should not put them off to the side?

04:00:00    10          MS. ROTHSCHILD:  You can.  But I'd like to also take

11   a moment to address fraudulent concealment.  We think that's a

12   separate issue.

13          THE COURT:  Well, do you want me to put them off to

14   the side so you can work this out?

04:00:13    15          MS. ROTHSCHILD:  You can put them off to the side.

16          THE COURT:  Thank you.  All right.  We'll put them

17   off to the side to give you an opportunity to see if you reach

18   some form of agreement.  And if you are unable to do so, then

19   I will rule.

04:00:21    20          Now let's move on here.  Give me the next set.

21          MR. DE VRIES:  Your Honor --

22          MR. CLOERN:  Your Honor, if we could just get a quick

23   clarification?

24          THE COURT:  No more clarification on that one.  Give

04:00:36    25   me the next set of instructions.

5527

1           MR. DE VRIES:  Yes, Your Honor.

2           MR. CLOERN:  It has nothing to do with that, Your

3    Honor.

4           THE COURT:  I'll conduct the hearing.

04:00:42    5           MR. CLOERN:  Okay.  Sorry.

6           THE COURT:  Give me the next set of instructions.

7           MR. CLOERN:  What is the next one on your list?

8           MR. DE VRIES:  The fourth out of the six issues is

9    the scope of the ITSA and the DTSA in light of His Honor's

04:00:57   10    ruling on the extraterritorial motion and the motion to

11    enforce.

12           THE COURT:  All right.  You have called this

13    instruction 46, Geographic and Temporal Scope of the Trade

14    Secret Damages.

04:01:11   15           MR. DE VRIES:  Yes, Your Honor.

16           THE COURT:  Yes, the Court did rule with respect to

17    the state claim and also the Federal claims.  The Court has

18    made a ruling and denied the motion in part and granted the

19    motion in part in its ruling.

04:01:29   20           MR. DE VRIES:  Yes.

21           THE COURT:  So you're offering 46 consistent with the

22    Court's last ruling on the issue.

23           MR. DE VRIES:  Yes.  And just to make sure I said

24    this for the record, we object, we disagree on the

04:01:39   25    interpretation of the ITSA.  But that's something that Your

5528

1    Honor has already ruled on.

2            THE COURT:  Yes.

3            MR. DE VRIES:  And so this --

4            THE COURT:  In short, no extraterritorial damages on

04:01:48   5    the state claim.

6            MR. DE VRIES:  Yes, Your Honor.  And that's how we

7    understood Your Honor's ruling from last night.  And so,

8    again, while preserving our objections to that ruling but now

9    moving on, this instruction is, we believe, fully consistent

04:02:02   10   with Your Honor's ruling on the motion for extraterritorial

11   damages.

12           And so to be clear, it states in the first instance

13   for the ITSA, Motorola is entitled to recover all damages that

14   occurred in Illinois that are a proximate and foreseeable

04:02:22   15   result of that misappropriation.

16           And so we understood Your Honor's ruling rejecting

17   our argument was that the damages for misappropriation in

18   Illinois can only be damages that occurred in Illinois and do

19   not include damages that occurred outside of Illinois caused

04:02:38   20   by misappropriation in Illinois.

21           And so we have attempted to --

22           THE COURT:  That in a nutshell is what the Court

23   ruled.

24           MR. DE VRIES:  Yes, Your Honor.  And we have tried

04:02:46   25   our best to, understanding that we lost that issue, we tried

5529

1    to faithfully reflect that in the top.

2         In the bottom, we have also tried to faithfully

3    reflect Your Honor's ruling on the DTSA, which is that it

4    applies extraterritorially and provides for extraterritorial

04:03:03    5    damages, albeit Your Honor was very clear it is from May 11,

6    2016 on.

7         And so we have again attempted to faithfully reflect

8    Your Honor's ruling in this.  And I understand there is a

9    contrary --

04:03:17    10        THE COURT:  That date was important, 2016.

11        MR. DE VRIES:  It was the enactment of the DTSA, yes,

12   Your Honor.

13        THE COURT:  Yes.  All right.  So is instruction

14   number 34 an alternative to Motorola's 46?

04:03:29    15        MR. LOUGHRAN:  Correct, Your Honor.

16        THE COURT:  Okay.  Where does it differ?

17        MR. LOUGHRAN:  Well, we differ, we try to be specific

18   and follow the Court's language.

19        I think what they've done is they've used extra

04:03:41    20   language.  We'd prefer to follow the actual language of the

21   Court's decision.  And so when the Court says --

22        THE COURT:  Well, yours is a lot longer than theirs.

23        MR. LOUGHRAN:  Well, Your Honor, it's because ours

24   includes the DTSA.

04:03:53    25        And given the amount that the jury has heard on

5530

1  foreign damages, we think it's important that the Court be

2  specific in its instruction as it was in the Court's order on

3  the ITSA.

4          So, for example, the Court made clear that they

04:04:08  5  cannot get sales in the United States that are not from

6  Illinois, and they cannot get them outside.  And that's not

7  instructed, that's not in their proposal to the Court.

8          Furthermore, Your Honor, again, given the amount of

9  evidence that the jury has already heard, we think it's

04:04:27  10  important that we be specific.  And what they have here is

11  Motorola is entitled to recover as damages profits that Hytera

12  made from sales.

13          The Court's order doesn't say that.  The Court says

14  Hytera -- that what they are entitled to recover is sales of

04:04:43  15  Hytera from Illinois.  That's it.  And we'd prefer not adding

16  all this extra language that we don't believe is consistent

17  with the Court's order.

18          THE COURT:  Where do you see the word "sales"?

19          MR. DE VRIES:  Yeah, I don't see that either, Your

04:04:56  20  Honor.

21          THE COURT:  Where do you see the word "sales" in

22  Motorola's 46?

23          MR. DE VRIES:  I don't see it.

24          MR. LOUGHRAN:  Okay.  Sure.

04:05:02  25          MR. DE VRIES:  Here is what we handed up.

5531

1          THE COURT:  Wait just a minute.

2          Where do you see the word "sales"?

3          MR. LOUGHRAN:  Okay.  I was looking at what they had

4   sent us today.  And so, again, they say "recover all damages

04:05:12   5   that occurred in Illinois that are a proximate" --

6          THE COURT:  Damages, damages are different from

7   sales.

8          MR. LOUGHRAN:  Yes.  That's what we're trying to say.

9   That's what I'm trying to say, Your Honor.  We prefer --

04:05:21  10          THE COURT:  They say, they say "damages."  You said

11   "sales."

12          MR. LOUGHRAN:  The Court's order says "sales."  And

13   we're asking that -- "U.S. sales," the Court's order said

14   "sales" and not sales --

04:05:35  15          THE COURT:  Let's double check.

16          MR. LOUGHRAN:  Okay.

17          MR. DE VRIES:  I'm very confused because we are

18   talking -- let's -- if we can break them down.  One is the

19   ITSA.  I think that what Hytera is talking about is U.S.

04:05:49  20   sales.  I don't think that's what Your Honor ruled.  I think

21   you were more narrow than that.

22          Your Honor told us it is only for recovery was the

23   word Your Honor used in Illinois.

24          And again while we disagree with that, we are trying

04:06:00  25   to reflect that damages that occurred in Illinois, we could

5532

1    put "recovery," that's exactly what Your Honor said, but we

2    understand and we do not intend to tell the jury any

3    different --

4            THE COURT:  Well, it would be damages.

04:06:11   5            MR. DE VRIES:  Yes, Your Honor.

6            THE COURT:  But not sales.

7            MR. DE VRIES:  Correct.

8            THE COURT:  That's clear.

9            MR. DE VRIES:  Correct.

04:06:16  10            THE COURT:  Okay.  Let's get back to instruction 34

11   offered by Hytera.

12           So continue with your argument.  Convince me that I

13   should give your 34.

14           MR. LOUGHRAN:  Okay.  Your Honor, we start, we

04:06:33  15  start -- let me just make sure I have the same instruction.  I

16   apologize, Your Honor.

17           THE COURT:  It says page 42 on the bottom.

18           MR. LOUGHRAN:  We've given the instructions to

19   everybody else except us.

04:06:45  20           MR. DE VRIES:  We can look on them together if you

21   want.

22           MR. LOUGHRAN:  I apologize.  So in terms of the ITSA,

23   it applies only to sales made in the state of Illinois.

24           THE COURT:  Right.

04:06:55  25           MR. LOUGHRAN:  In the Court's order that was issued

5533

1    yesterday said this, as I recall, and then it --

2              THE COURT:  Did I say "sales"?

3              MR. LOUGHRAN:  Yes, Your Honor, you said "sales."

4              THE COURT:  I did?

04:07:04    5              MR. LOUGHRAN:  In the Court's order yesterday.

6              MR. DE VRIES:  You said "recovery."  If I could get

7    the Elmo, I can just show it to you.  But I can read it.  "The

8    Illinois statute limits recovery only to within Illinois."

9              THE COURT:  That's what the Court said?

04:07:16   10              MR. DE VRIES:  Yes, Your Honor.  That's yesterday's

11   order.

12              MR. LOUGHRAN:  Okay.  I think that then he says "not

13   outside the United States."  Okay, Your Honor.

14              MR. DE VRIES:  It just says if the --

04:07:27   15              THE COURT:  Can you concede that you misspoke --

16              MR. LOUGHRAN:  Yes, Your Honor.

17              THE COURT:  -- when you used the word "sales"?

18              MR. LOUGHRAN:  In referring to your order, yes, I

19   concede that.

04:07:35   20              THE COURT:  All right.  Very well.

21              All right.  But go on with your argument that I

22   should give Hytera's 34.

23              MR. LOUGHRAN:  Okay.  Hytera's 34.  And given the

24   amount of evidence that has come in about the foreign sales,

04:07:50   25   we think it's important that the Court be specific as it was

5534

1   as I understand in the order yesterday that it's only recovery

2   in the United -- I'm sorry.  It's only recovery in Illinois,

3   not the United States and not foreign.  And we want to be

4   specific about that.

04:08:06   5   THE COURT:  Yes, you are being specific in terms of

6   your first paragraph --

7   MR. LOUGHRAN:  Correct.

8   THE COURT:  -- because you say, "Otherwise, you must

9   disregard any testimony regarding sales outside the United

04:08:16   10   States and must not award damages based on that testimony."

11   So if you take the "sales outside the United States

12   and must not award damages based on the testimony," it would

13   be consistent with what the Court said and would not in any

14   way really disagree with what Motorola has given me in 46.

04:08:40   15   MR. DE VRIES:  Except, Your Honor, that their

16   instruction number 34 on the DTSA, which is the first

17   paragraph, is 100 percent inconsistent with Your Honor's

18   ruling and inconsistent with the law for the reasons explained

19   in Your Honor's ruling, and in particular, although Your Honor

04:08:56   20   ruled that the DTSA in this case applies extraterritorially,

21   so to misappropriation outside of the United States, they are

22   introducing in their statement that the damages are limited --

23   may I borrow that for a second?

24   MR. LOUGHRAN:  Sure.

04:09:16   25   MR. DE VRIES:  It says that, this is the third line

5535

1    of their order, "But the Federal Defend Trade Secrets Act only

2    applies to sales outside of the United States if they resulted

3    from an act committed within the United States on or after May

4    11, 2016."

04:09:34    5         That is inconsistent with what Your Honor ruled.

6    This is something that they argued when Your Honor in last

7    night's ruling said that the Court agrees with plaintiffs, in

8    other words Motorola, as to the proper application of the

9    Court's ruling as to the Federal Trade Secret claim.

04:09:47    10         THE COURT:  All right.  I've heard enough to make a

11    ruling on that.  I will give Motorola's instruction number 46

12    and reject Hytera's number 34.

13         MR. DE VRIES:  Thank you, Your Honor.

14         MR. LOUGHRAN:  Your Honor, there is language issues

04:10:05    15    that we have with our instruction.

16         THE COURT:  I've made the ruling.

17         MR. LOUGHRAN:  Thank you, Your Honor.

18         THE COURT:  And you've had a sufficient opportunity

19    to argue your position.

04:10:12    20         MR. DE VRIES:  Your Honor, then there is the fifth of

21    six, if we may, is laches, so this is the fifth of six issues.

22    And laches is going to be addressed by my colleague,

23    Ms. Schmidt, who also addressed one of the earlier ones.

24         THE COURT:  All right.  May I have the next

04:10:27    25    instruction at issue?

5536

1          MR. DE VRIES:  Yes.

2          MR. CLOERN:  Your Honor, we were informed last night

3     by Motorola that they do not, given the Court's ruling under

4     the Illinois statute, that Motorola does not plan to give the

04:10:40  5     jury a number.

6          And so we think, we were wondering, we were hoping to

7     address the threshold issue of why the instruction is being

8     given in the first place if Motorola doesn't plan to give the

9     jury a number because --

04:10:55  10         MR. DE VRIES:  That's not correct.

11         THE COURT:  Well, it's not unusual in litigation for

12     attorneys in a closing argument to tell the jury "We will give

13     you no number.  We rely on your review of the facts.  And

14     consistent with the law, you, the jury, can come up with your

04:11:09  15     own number."

16         So there is no requirement that any litigant fill in

17     a blank in terms of a number.  I mean, sometimes it happens,

18     and sometimes it doesn't.

19         So I expect that when I hear the closing arguments

04:11:26  20     there may be some numbers and there may not be some numbers

21     here.  So if that's the objection, it is overruled.

22         MR. DE VRIES:  Your Honor, just to be clear, that's

23     inaccurate, what Mr. Cloern just said.  We never said we

24     weren't going to give a number to the jury.  That's just

04:11:40  25     actually blatantly just inaccurate.

5537

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 04:11:54 | 5 |

1       But regardless, we intend to of course abide by Your

2  Honor's ruling in court, including the part that we

3  acknowledge that we lost.  And so I don't think there is any

4  dispute, especially with Your Honor's ruling on the jury

5  instruction.

6       THE COURT:  Well, sometimes even attorneys will

7  argue:  We're asking for a million, but, members of the jury,

8  we have no objection to your giving two.

9       MR. DE VRIES:  Yes, Your Honor.

10      THE COURT:  But let us proceed.  Give me a copy of

11  the instruction.

12      MR. DE VRIES:  Next is laches.

13      THE COURT:  All right.  This is instruction 44.  Is

14  this offered by Hytera?

15      MR. TOTH:  Yes, Your Honor.

16      THE COURT:  Okay.  Your name again, counsel?

17      MR. TOTH:  My name is Bill Toth, Your Honor.

18      THE COURT:  All right.  Is there an objection to

19  Hytera's 44?

20      MS. SCHMIDT:  Yes, Your Honor.  We think this

21  instruction is improper as a matter of law.

22      THE COURT:  All right.  You may argue the

23  appropriateness on behalf of Hytera of 44.

24      MR. TOTH:  Your Honor, the appropriateness of 44

25  actually rests on the appropriateness of submitting the issues

04:12:03 (line 10)
04:12:18 (line 15)
04:12:25 (line 20)
04:12:35 (line 25)

1    of unjust enrichment and disgorgement of profits under either

2    trade secret or copyright damages to the jury.

3           Those are both equitable remedies.  They've been

4    described as equitable remedies in numerous decisions.

04:12:51    5    They've been held to be equitable remedies that are proper for

6    the Court to decide rather than the jury.

7           Our position is if the issue of unjust enrichment or

8    disgorgement is to be submitted to the jury, which we oppose,

9    that a laches instruction should be given as well as an

04:13:06    10   equitable defense in response to it.

11          THE COURT:  So your instruction would say "if you

12   find that Motorola unreasonably delayed in filing the suit."

13          So what is your argument in terms of the facts that

14   would support an argument unreasonably delayed?

04:13:21    15          MR. TOTH:  The same facts, Your Honor, that we have

16   put in on the statute of limitations issue, which Your Honor

17   submitted to the jury, as well as continued delay even past

18   the statute of limitations dates that in that period of delay

19   has enabled -- has led Hytera to continue operating the

04:13:39    20   business without any knowledge of what was going on and any of

21   the copying or misappropriations that may have occurred.

22          The result was Hytera continued to build a business

23   and develop customers who rely on these products and rely on

24   service for these products; and had Motorola not delayed in

04:13:56    25   bringing this case, which is based on events that occurred in

5539

1    2008, many of the profits that Motorola seeks to disgorge

2    would not have been earned in the first place, and they

3    wouldn't have been intermingled with any other set of profits.

4            THE COURT:  All right.  What is your response,

04:14:14   5    counsel?

6            MS. SCHMIDT:  First, Your Honor, I'd like to separate

7    this from the issue of unjust enrichment and profits, because

8    this issue standing on its own --

9            THE COURT:  I'm looking at instruction number 44.

04:14:22   10           MS. SCHMIDT:  Certainly.  And so, Your Honor, so the

11   laches, the case that Hytera cites in support of this

12   instruction is directly contrary to it.  Petrella said --

13           THE COURT:  Is that right?

14           MS. SCHMIDT:  It is.

04:14:33   15           THE COURT:  Is it that bad?

16           MS. SCHMIDT:  Petrella says --

17           THE COURT:  Just a minute.  Is that right?

18           MR. TOTH:  Your Honor, again, the purpose of this

19   instruction is to submit disgorgement and unjust enrichments

04:14:42   20   to the Court rather than to the jury.

21           Petrella describes it as an equitable remedy.  And a

22   decision from the Federal Circuit goes through the entire

23   history of disgorgement as a remedy finding it to be an

24   equitable remedy and submitting it and denying the right to a

04:15:00   25   jury trial on it.

5540

```
             1        Laches --
             2        THE COURT:  Where did you get the language from this
             3   instruction?
             4        MR. TOTH:  We've reviewed, I believe it came from the
04:15:07     5   District Court decision at the end.  So some of the oddity
             6   here --
             7        THE COURT:  From a District Court?
             8        MR. TOTH:  Yes, Your Honor.
             9        THE COURT:  So the parties and the judge in that case
04:15:14    10   created it?
            11        MR. TOTH:  No, Your Honor.  This did not come from a
            12   District Court instruction.  Some of --
            13        THE COURT:  Where --
            14        MR. TOTH:  -- the oddity here is that this is an
04:15:23    15   equitable issue --
            16        THE COURT:  Where, where did this proffered
            17   instruction come from?
            18        MR. TOTH:  It is our parsing of the law on laches as
            19   reflected among places in the District Court decision.
04:15:36    20        THE COURT:  So Hytera created the instruction?
            21        MR. TOTH:  Yes, Your Honor.
            22        THE COURT:  All right.  What is your response?
            23        MS. SCHMIDT:  Your Honor, Petrella, which was a
            24   Supreme Court case dealing with the statute of limitations and
04:15:44    25   copyright and whether or not laches was a defense, stated
```

5541

1   "Tellingly the dissent has come up with no case in which this

2   Court has approved the application of laches to bar a claim

3   for damages brought within the time allowed by a Federal

4   statute of limitations.  There is nothing at all different

04:16:01   5   about the copyright cases in this regard."

6        In the SCA Hygiene case, which dealt with the Patent

7   Act, another Supreme Court case, the Supreme Court explained

8   that "When Congress enacts a statute of limitations, it speaks

9   directly to the issue of timeliness and provides a rule for

04:16:17   10   determining whether a claim is timely enough to permit relief.

11   The enactment of a statute of limitations necessarily reflects

12   a Congressional decision of the timeliness of covered claims

13   is better judged on the basis of a generally hard and fast

14   rule rather than the sort of case specific judicial

04:16:33   15   determination that occurs with the laches defense."

16        Here the DTSA, the ITSA and the Copyright Act all

17   have statute of limitations that precludes as a matter of law

18   the application of laches.

19        THE COURT:  Well, first of all, the label "laches"

04:16:48   20   just doesn't seem to fit here because we're talking about

21   unreasonable delay.  There may be an overstatement to call it

22   laches in the commonly understood definition of the term.  So

23   the label "laches" can be confusing.

24        So the real question is, is this duplication in

04:17:12   25   effect of the statute of limitation instructions that the

                1    Court will be giving?

                2         MS. SCHMIDT:  Your Honor, I think it is, it is

                3    overlapping and I think this improperly attempts to shift the

                4    burden on statute of limitations to Motorola.

04:17:26        5         THE COURT:  What would be unreasonable here?  What

                6    are the facts to support the idea of unreasonable?

                7         MR. TOTH:  Your Honor, the facts would be that Hytera

                8    -- sorry, that Motorola had considerable suspicions dating

                9    back to 2010 --

04:17:41       10         THE COURT:  That's not enough, considerable

               11    suspicions --

               12         MR. TOTH:  But not only suspicions.

               13         THE COURT:  -- for a major corporation to sue another

               14    major global corporation in terms of the Federal Rules of

04:17:54       15    Civil Procedure and due diligence required by Rule 11 that

               16    mere suspicion would be enough.

               17         MR. TOTH:  To be clear, Hytera's position is not

               18    simply that suspicions would be enough here, but it's that

               19    Motorola also had the ability to follow up on those suspicions

04:18:14       20    and chose not to, in part because Hytera was developing

               21    business in China on the DMR standard when had Motorola

               22    stopped Hytera from continuing down that path, Hytera might

               23    have gone on a different standard.

               24         So the background facts of this suggest and enable

04:18:34       25    the jury to find that Motorola had ulterior motives for

5543

1  allowing Hytera to continue its progress in this direction

2  despite all of these suspicions and that a delay in bringing

3  this lawsuit --

4           THE COURT:  What was the ulterior motive based upon

04:18:51  5  the evidence?

6           MR. TOTH:  Based upon the evidence, Your Honor,

7  Hytera was electing between two different radio standards,

8  dPMR and DMR.

9           THE COURT:  You mean the ulterior motive of Motorola?

04:19:02  10          MR. TOTH:  Yes, Your Honor.

11          THE COURT:  What was their ulterior motive?

12          MR. TOTH:  To allow Hytera or to facilitate Hytera's

13  entry into or pushing DMR into the market in China as opposed

14  to electing dPMR, a totally different standard that Motorola

04:19:17  15  had not developed.

16          The result of this was the standard DMR that Motorola

17  had been involved with spread throughout China and a different

18  standard would have spread instead.

19          THE COURT:  So you would be making that argument to

04:19:29  20  the jury and then asking them to implement this proffered

21  instruction?

22          MR. TOTH:  Yes, Your Honor.

23          MS. SCHMIDT:  Your Honor, we think that's completely

24  unsupported.  That is not supported by the cases that are

04:19:42  25  cited.  I've already explained Petrella does not support their

5544

1   instruction.  Hot Wax, which they cite, the statute being

2   applied in that case didn't have a statute of limitations,

3   which is why laches applied.  It is simply inapplicable here.

4          THE COURT:  All right.  I agree with Motorola and the

04:19:57   5   Court rejects the proffered instruction 44 labeled Laches.

6          The instruction with respect to the statute of

7   limitations will state the law, and the jury can take that

8   instruction into account ultimately to decide these issues.  I

9   think it would just confuse the jury to add this additional

04:20:27   10   instruction, and it is rejected.  44 is rejected.

11          MS. SCHMIDT:  Thank you, Your Honor.

12          MR. TOTH:  Your Honor, just on the issue of jury

13   confusion, the whole reason Hytera had offered this in the

14   first place was it's Hytera's position that the issue of

04:20:42   15   unjust enrichment and disgorgement is improper for the jury.

16          THE COURT:  It's an oversimplification.

17          MR. TOTH:  We understand that the Court has rejected

18   this instruction.  We just want to raise the objection to

19   submitting the damages issues of unjust enrichment and

04:20:56   20   disgorgement to the jury.  This was simply intended to try to

21   correct that issue.

22          THE COURT:  That's why it was submitted?

23          MR. TOTH:  In part.  We of course stand by the

24   position.  But we also don't think that the equitable damages

04:21:09   25   issues should go to the jury in the first place and that,

5545

1    therefore, we should be able to raise our equitable defenses.

2         THE COURT:  All right.  Your motion to reconsider the

3    ruling is denied.

4         MR. DE VRIES:  Your Honor.  I'm sorry.

04:21:19  5         THE COURT:  What is the next issue?

6         MR. DE VRIES:  The sixth and final issue is there was

7    one sentence in an otherwise agreed instruction about

8    copyright damages.

9         THE COURT:  Well, that must be dynamite.  I'd like to

04:21:31  10   see that.

11        MR. DE VRIES:  And I'm going to turn it over to Ms.

12   Schmidt.  The sole issue is whether or not the jury should be

13   instructed on the law of vicarious --

14        THE COURT:  Give me the instruction.

04:21:39  15        MR. DE VRIES:  Yes, Your Honor.

16        THE COURT:  Maybe I can find that sentence.

17        MR. DE VRIES:  So, Your Honor, Ms. Schmidt is going

18   to hand up to Your Honor this instruction.

19        And the question is whether or not it should include

04:22:06  20   the highlighted sentence, which is an accurate statement of

21   the law of vicarious liability or whether the jury ought not

22   to be instructed on that issue.

23        THE COURT:  Okay.  Who is offering instruction number

24   40?  Is that Hytera or Motorola?

04:22:20  25        MR. ALLAN:  There are two, Your Honor.  Everything is

5546

1  agreed, I believe, other than the language that's highlighted

2  in one of those orders.

3          THE COURT:  Okay.

4          MR. ALLAN:  So the proposed --

04:22:29  5          THE COURT:  Who is the proponent of the highlighted

6  material?

7          MS. SCHMIDT:  Motorola, Your Honor.

8          THE COURT:  All right.  You may proceed.

9          MS. SCHMIDT:  Your Honor, the reason we have proposed

04:22:37  10  including this language is so that the instructions are clear

11  with respect to liability for direct copyright infringement

12  and vicarious copyright infringement, which is simply the

13  Copyright Act's version of respondeat superior.

14          And, basically, this is from the Supreme Court case

04:22:59  15  Grokster, "One can infringe a copyright vicariously by

16  profiting from direct infringement while declining to exercise

17  a right to limit or stop it."

18          We have taken -- our proposal is consistent with that

19  and it is also taken from, it is adapted from the Seventh

04:23:14  20  Circuit model rules.

21          THE COURT:  What is your argument against giving that

22  sentence?

23          MR. ALLAN:  Your Honor, vicarious liability is a

24  separate cause of action.  There are separate elements.  It's

04:23:23  25  a secondary liability claim.  It was not asserted in the case.

1    It's not in the complaint.  There was no discovery.

2              THE COURT:  Well, let me stop.

3              What is vicarious here from Motorola's standpoint?

4              MS. SCHMIDT:  From our standpoint, Your Honor, for

04:23:39    5    the copyright claim based on the copying that was done from

6    Motorola's servers in the United States, that is, our position

7    is that Hytera is vicariously liable for that action and --

8              THE COURT:  Vicarious as opposed to what, directly?

9              MS. SCHMIDT:  Correct, Your Honor.

04:23:56   10              THE COURT:  What is the distinction?

11              MR. DE VRIES:  They're both.

12              MS. SCHMIDT:  I'm sorry, Your Honor.  Actually, so I

13    did misspeak there.  Thank you.

14              So we do assert that Hytera is both directly liable

04:24:07   15    for copyright infringement but also vicariously liable based

16    on the copying that was done by the individuals from the

17    server.  And so there are two bases for our copyright

18    infringement claim.

19              And we disagree that vicarious liability is separate,

04:24:21   20    similar to what we discussed with respect to the Trade Secret

21    Act, vicarious liability is simply the methodology or the

22    method through which an employer is responsible for its

23    employees' actions, and that's what the cases say.

24              MR. ALLAN:  Yes, Your Honor.  There are two issues.

04:24:35   25    One is their entire case has been that Hytera is directly

5548

1    liable for copyright infringement.  They have not put any

2    evidence in to support either of these two prongs of vicarious

3    liability under a secondary liability theory.  I think it's

4    going to confuse the jury.  They haven't heard anything about

04:24:52    5    this.

6        Number two, the actions Ms. Schmidt are talking about

7    with allegedly contacts to some server in Illinois, which also

8    there was testimony that there are a number of servers in

9    Penang, were committed by Motorola employees at Penang.  So

04:25:09    10    they weren't former employees -- they weren't Hytera employees

11    when these alleged access to any servers took place.

12        So I don't really even understand what the vicarious

13    liability theory here is, unless Motorola is contending that

14    they're vicariously liable for the infringing acts of their

04:25:26    15    own employees.

16        It's very confusing.  The instruction without that

17    language is entirely appropriate and will serve to provide the

18    jury with appropriate understanding of copyright damages

19    generally, which is the purpose of this instruction.

04:25:39    20        MS. SCHMIDT:  Your Honor, we disagree with that.

21    First of all, there is lots of evidence in this case about how

22    Hytera met with G.S. Kok, Y.T. Kok and Sam Chia before they

23    moved to Hytera.

24        Y.T. Kok was an employee of Hytera while he was at

04:25:56    25    Motorola.

5549

1              And so to say --

2              THE COURT:  But they were not in the United States,

3    right?

4              MS. SCHMIDT:  That's true.  They were not physically

04:26:04    5    in the United States.  However, as Your Honor ruled, if the

6    act of copying happened from the United States, Motorola can

7    in fact seek damages based on that predicate act.  And that is

8    why we are proposing this instruction.

9              There is also substantial evidence in the record and

04:26:21    10   it would not be confusing for the jury to hear an instruction

11   about whether or not Hytera profited from these acts.

12             THE COURT:  Okay.  The final world.

13             MR. ALLAN:  Yes, Your Honor.  The support, apart from

14   the evidence in the record that I just mentioned, the support

04:26:33    15   for this language, which I think is unnecessary, is a model

16   instruction from Seventh Circuit, okay.  The model

17   instruction --

18             THE COURT:  Yours is a model?

19             MR. ALLAN:  No, no, no, no.  The language that's

04:26:45    20   disputed we do not think should be included.

21             THE COURT:  What's the provenance of it?

22             MR. ALLAN:  Well, the provenance is a vicarious

23   liability theory.

24             THE COURT:  No, I mean the provenance, what is the

04:26:56    25   source or origin of this proffered instruction?  From where

5550

1    did it come?

2            MR. ALLAN:  Well, everything is agreed to with the

3    exception of --

4            THE COURT:  Is it created by Motorola or is it --

04:27:05  5    what's the source of it, the provenance?

6            MR. ALLAN:  Some of it is -- the language that we're

7    talking about is entirely created by Motorola.

8            THE COURT:  Is that right?

9            MR. ALLAN:  It is not reflected in the Seventh

04:27:17  10    Circuit --

11            THE COURT:  Let me see what Motorola has done.

12            Did Motorola create this language?

13            MS. SCHMIDT:  Your Honor, I would say we started with

14    the model rule.  The part about Hytera having to profit and

04:27:25  15    have the ability to stop the acts is directly from the rule.

16    We modified the beginning of it to make it fit the facts of

17    this case.

18            THE COURT:  So it's a modification?

19            MS. SCHMIDT:  It is.

04:27:34  20            THE COURT:  All right.

21            MR. ALLAN:  Let me explain real quick though, Your

22    Honor.  The Seventh Circuit model instruction is a secondary

23    liability instruction.  It says:  If the plaintiff claims that

24    the defendant is liable for some other person's infringement,

04:27:46  25    then you go down this route.

5551

1    That's not what they're claiming.  They're claiming

2 Hytera is directly liable.  This will confuse the jury.

3    THE COURT:  All right.  I agree with your position.

4 It would indeed confuse the jury and it is unnecessary.  And

04:28:01 5 so Hytera's objection to the highlighted language is

6 sustained.

7    MR. ALLAN:  Thank you, Your Honor.

8    THE COURT:  So does that then leave copyright damages

9 generally?  Number 40, who submits that, Hytera?

04:28:20 10    MR. DE VRIES:  That's the rest of it is agreed, Your

11 Honor.

12    THE COURT:  All right.  This is agreed.

13    MR. DE VRIES:  Your Honor, I believe, I think we

14 understand how to implement what Your Honor said.

04:28:26 15    THE COURT:  Okay.

16    MR. DE VRIES:  Mr. Allan will tell you, tell me if I

17 am wrong, but with Your Honor striking our explanation of the

18 law of vicarious liability, once we take that out, the rest is

19 agreed.

04:28:39 20    THE COURT:  Yes.

21    MR. ALLAN:  And that's been handed to Your Honor.

22 It's the shorter of the two instructions.

23    THE COURT:  Right.  And it has 47 on the bottom.

24    MR. DE VRIES:  Yes, Your Honor.

04:28:46 25    THE COURT:  Page 47 on the bottom.  All right.  That

5552

1    will be given.

2          MR. DE VRIES:  We understand.

3          So, Your Honor, that leaves the statute of

4    limitations instruction that we are going to go back and work

04:28:56    5    on tonight.

6          And with Your Honor's permission, we are available to

7    be here at whatever time Your Honor would like tomorrow

8    morning to provide Your Honor with that.

9          THE COURT:  I don't do things at 2:30 in the morning

04:29:09    10   like some of you attorneys do, let me tell you that.

11         MR. DE VRIES:  At Your Honor's convenience.

12         THE COURT:  I know you are all working hard.  And I

13   say that with a lot of respect and admiration for the work and

14   effort that you have put into this case.

04:29:20    15         So we have the jury coming in at 10:00.  We do not

16   have to start necessarily at 10:00 clock.  We want to be sure

17   that we've got this all taken care of before the closing

18   arguments.  And so if you will get here at 9:15 or 9:30 to

19   cover any last minute details, I think that would be

04:29:43    20   sufficient.

21         MR. DE VRIES:  Yes, Your Honor.  And then once we

22   have Your Honor's guidance on that, we can go ahead and print,

23   we can have our folks print those instructions packets that

24   Your Honor talked about.

04:29:53    25         THE COURT:  Yes, yes, indeed.

5553

1          MR. DE VRIES:  And then there is one other issue that

2     we don't believe we need to resolve today, but I did want to

3     alert Your Honor because it will come up quickly.

4          So the parties had two different verdict forms.

04:30:04   5     Motorola proposed a three-page verdict form that is from our

6     perspective straightforward.

7          Hytera proposed a six-page verdict form that has

8     numerous questions.  It starts with the statute of

9     limitations.  And we believe that it will be very confusing to

04:30:17  10     the jury and could cause problems in terms of concluding this

11     proceeding.

12          We have the two verdict forms that we can hand up to

13     Your Honor and perhaps be prepared to address in the

14     morning --

04:30:28  15          THE COURT:  Yes.

16          MR. DE VRIES:  -- or of course now, if you prefer.

17          THE COURT:  I would like to see them in the morning.

18          MR. ALLAN:  If I may briefly respond so you can

19     consider our position, if you'd like, Your Honor, or we can

04:30:38  20     just address it in the morning?

21          THE COURT:  Well, I think it's better to address it

22     in the morning.

23          MR. ALLAN:  Very good.

24          THE COURT:  I will read this very carefully.

04:30:45  25          MR. DE VRIES:  Thank you, Your Honor.

5554

1              THE COURT:  Okay.  So I look forward to seeing you

2      tomorrow at 9:15, 9:30 approximately.  The jury is coming in

3      at 10:00.

4              And if we get all of this done, you will then be

04:31:01   5      prepared to do your closing arguments?

6              MR. DE VRIES:  We are prepared to proceed, Your

7      Honor.

8              MR. ALLAN:  Yes, Your Honor.

9              THE COURT:  Okay.  So much the better.  Thank you,

04:31:09  10      counsel, for your cooperation.

11              MR. DE VRIES:  Thank you, Your Honor.

12              MR. ALLAN:  Thank you, Your Honor.

13              (Adjournment 4:31 p.m. until 9:15 a.m., February 12,

14              2020)

15

16

17                    C E R T I F I C A T E

18

19          I, Jennifer S. Costales, do hereby certify that the
       foregoing is a complete, true, and accurate transcript of the
       proceedings had in the above-entitled case before the
20      Honorable CHARLES R. NORGLE, one of the judges of said Court,
       at Chicago, Illinois, on February 11, 2020.

21

22                              /s/ Jennifer Costales, CRR, RMR
                                Official Court Reporter
                                United States District Court
23                              Northern District of Illinois
                                Eastern Division

24

25