**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and<br>MOTOROLA SOLUTIONS MALAYSIA<br>SDN. BHD. | ) ) ) ) | Civil Action No.: 1:17-cv-01973 |
| Plaintiffs, | ) ) | Honorable Charles R. Norgle Sr. |
| v. | ) ) | |
| HYTERA COMMUNICATIONS<br>CORPORATION LTD.,<br>HYTERA AMERICA, INC., AND<br>HYTERA COMMUNICATIONS<br>AMERICA (WEST), INC. | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MOTOROLA'S OPPOSITION TO HYTERA'S RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW AND RULE 59 MOTION FOR A NEW TRIAL AND/OR REMITTITUR

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. THE DAMAGES VERDICT IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND CANNOT BE DISREGARDED AS ADVISORY .................................................. 1

    A. The Jury Properly Decided Damages .................................................... 1

    B. Substantial Evidence Supports the Jury's Damages Award ................................ 3

        1. The Jury's Award Is Not Double Recovery ................................ 4

        2. Substantial Evidence Supports the Jury's Award of Hytera Profits .......... 6

        3. Hytera's Mobile Products Were Properly Included in the Verdict ............ 8

    C. Hytera's Extraterritoriality Argument Should Be Stricken and Is Wrong as a Matter of Law .................................................................................. 9

III. MOTOROLA'S TRADE SECRET CLAIMS (COUNTS I AND II) ARE SUPPORTED BY SUBSTANTIAL EVIDENCE ............................................................. 10

    A. Motorola Satisfied The Elements of a Trade Secret Claim ................................ 10

        1. Motorola Has Protectable & Concrete Trade Secrets ............................ 11

        2. Motorola's Trade Secrets Meet The Statutory Requirements.................. 14

        3. Hytera Knew Of Its Misappropriation ...................................... 16

    B. Motorola's Trade Secret Claims Are Not Barred by the Statute of Limitations ............................................................................... 17

IV. MOTOROLA'S COPYRIGHT CLAIM (COUNT III) IS SUPPORTED BY SUBSTANTIAL EVIDENCE .................................................................................. 17

V. PUNITIVE DAMAGES WERE PROPERLY AWARDED ............................................ 19

    A. Punitive Damages Are Supported by Substantial Evidence ................................ 19

    B. Due Process Does Not Bar Punitive Damages .................................... 21

VI. HYTERA WAS NOT DENIED A FAIR TRIAL............................................................ 23

    A. The Court's Treatment of Expert Testimony Was Proper ................................ 23

        1. The Court Did Not Err In Allowing Both Parties' Experts To Testify ................................................................................ 23

        2. The Court Did Not Err In Its Treatment of Motorola Fact Witnesses ............................................................................ 25

3.     The Court Properly Excluded Testimony About Motorola's Purported Public Disclosures ....................................................................... 26

4.     The Court Properly Limited Mr. Grimmett's Testimony ......................... 27

5.     The Court Did Allow Testimony Comparing Motorola's Technology To Other Companies' Implementations................................ 27

6.     The Court Properly Denied Hytera's Request for a Sur-Rebuttal ........... 28

7.     The Court Treated The Parties' Witnesses Fairly.................................... 29

B.     The Court Did Not Make Evidentiary Errors Warranting a New Trial ............... 30

1.     The Court Property Admitted Fifth Amendment Testimony.................... 30

2.     Hytera's Foundation Objections Are Meritless. ...................................... 32

3.     The Court Properly Admitted Hytera's Extensive History of Lying........ 33

4.     Motorola's Closing Argument Was Proper. ............................................. 33

5.     The Jurors Were Properly Vetted for Bias During *Voir Dire*.................. 34

C.     The Alleged Errors Do Not Warrant a New Trial.................................................. 34

VII.     THE JURY INSTRUCTIONS WERE PROPER ............................................................. 35

A.     The Court Properly Instructed the Jury on Fraudulent Concealment .................. 35

B.     The Court Properly Instructed the Jury on Spoliation of Evidence ..................... 36

C.     The Court's Instructions on Extraterritoriality Were Correct.............................. 37

D.     The Court's Instruction on Statute of Limitations Was Correct ......................... 37

E.     The Court's Instruction on *Respondeat Superior* Was Correct ........................... 38

F.     There Were No Additional Instruction Errors ..................................................... 38

VIII.     A NEW TRIAL ON DAMAGES IS NOT WARRANTED AND THE JURY'S AWARD SHOULD NOT BE REDUCED ...................................................................... 39

IX.     CONCLUSION................................................................................................................ 40

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adkins v. Wolever*,
554 F.3d 650 (6th Cir. 2009) ....................................................35

*Alverio v. Sam's Warehouse Club, Inc.*,
253 F.3d 933 (7th Cir. 2001) ....................................................35

*Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*,
2015 WL 4426861 (S.D. Ind. July 20, 2015)..............................19

*Angelopoulos v. Keystone Orthopedic Specialists*,
S.C., 2017 WL 2215038 (N.D. Ill. May 19, 2017) ....................2

*Apple, Inc. v. Samsung Elecs. Co.*,
2014 WL 549324 (N.D. Cal. Feb. 7, 2014) ..............................34

*Bennett v. Smith*,
2000 WL 1849029 (N.D. Ill. Dec. 18, 2000).............................40

*Bishop v. Wick*,
1988 WL 166652 (N.D. Ill. Dec. 29, 1988)...............................40

*Black & Decker Corp. v. Positec USA Inc.*,
118 F. Supp. 3d 1056 (N.D. Ill. 2015) .....................................2

*Blackwell v. Kalinowski*,
2011 WL 3046320 (N.D. Ill. July 25, 2011)..............................3

*Blue Book Servs., Inc. v. Farm Journal, Inc.*,
2020 WL 419405 (N.D. Ill. Jan. 27, 2020)...............................19

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996).................................................................22

*Boerner v. Brown & Williamson Tobacco Co.*,
394 F.3d 594 (8th Cir. 2005) ..................................................22

*Bohnsack v. Varco, L.P.*,
668 F.3d 262 (5th Cir. 2012) ..................................................4

*Bonilla v. Jaronczyk*,
354 F. App'x 579 (2d Cir. 2009) ..............................................33

*BP Amoco Chem. Co. v. Flint Hills Res., LLC*,
   697 F. Supp. 2d 1001 (N.D. Ill. 2010) ...................................................................25

*Buonaura v. City of Berwyn*,
   2011 WL 3754820 (N.D. Ill. Aug. 25, 2011) .......................................................36

*Cathedral of Joy Baptist Church v. Vill, of Hazel Crest*,
   22 F.3d 713 (7th Cir. 1994) ..................................................................................38

*Charles Schwab & Co. v. Carter*,
   2005 WL 2369815 (N.D. Ill. Sept. 27, 2005) .......................................................14

*CMBB LLC v. Lockwood Mfg., Inc*,
   628 F. Supp. 2d 881 (N.D. Ill. 2009) ...................................................................16

*Computer Assocs. Int'l v. Quest Software, Inc.*,
   333 F. Supp. 2d 688 (N.D. Ill. 2004) ...................................................................16

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...........................................................................23, 26, 27, 30

*DeRance, Inc. v. PaineWebber Inc.*,
   872 F.2d 1312 (7th Cir. 1989) .............................................................................22

*DeSilva v. DiLeonardi*,
   181 F.3d 865 (7th Cir. 1999) ..................................................................................9

*Digital Mentor, Inc. v. Ovivo USA, LLC*,
   2020 WL 550746 (W.D. Wash. Feb. 4, 2020)......................................................19

*Doe By & Through G.S. v. Johnson*,
   52 F.3d 1448 (7th Cir. 1995) ...............................................................................32

*Dyson, Inc., v. SharkNinja Operating, LLC*,
   2019 WL 1454509 (N.D. Ill. Mar. 31, 2019)....................................................8, 41

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
   2012 WL 1202485 (E.D. Va. Apr. 10, 2012) .......................................................40

*Eaton Corp. v. Appliance Valves Corp.*,
   526 F. Supp. 1172 (N.D. Ind. 1981) .....................................................................15

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)................................................................................................4

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   2017 WL 3034655 (E.D. Tex. July 18, 2017) ........................................................6

*Moore ex rel. Estate of Grady v. Tuelja*,
  546 F.3d 423 (2008).................................................................................28

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)................................................................................22

*Flick-Reedy Corp. v. Hydro-Line Mfg. Co.*,
  351 F.2d 546 (7th Cir. 1965) ...................................................................18

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)....................................................................18, 19, 24

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
  2013 WL 268607 (N.D. Ill. Jan. 24, 2013) ...............................................5

*Gavenda v. Orleans Cty.*,
  2000 WL 1375590 (W.D.N.Y. Sept. 21, 2000) ........................................29

*Geraci v. Macey*,
  2016 WL 3671400 (N.D. Ill. July 11, 2016).......................................12, 13

*Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*,
  2012 WL 5383271 (N.D. Ill. Nov. 1, 2012) .............................................21

*Gold Medal Prod. Co. v. Bell Flavors & Fragrance Inc.*,
  2018 WL 1135629 (N.D. Ill. Mar. 2, 2018)..............................................14

*Golden v. World Sec. Bureau, Inc.*,
  988 F. Supp. 2d 850 (2013) .......................................................................3

*Gracia v. SigmaTron Int'l, Inc.*,
  842 F.3d 1010 (7th Cir. 2016) ..................................................................39

*Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc.*,
  772 F. Supp. 2d 1029 (E.D. Wis. 2011)....................................................18

*Hawkins v. Flambeau, Inc.*,
  2007 WL 2710947 (S.D. Ind. June 5, 2007) .............................................15

*Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*,
  46 N.E. 3d 706 (2015).............................................................................36

*Hilderman v. Enea TekSci, Inc.*,
  551 F. Supp. 2d 1183 (S.D. Cal. 2008) ....................................................15

*Horn v. A.O. Smith Corp.*,
  50 F.3d 1365 (7th Cir. 1995) ...................................................................36

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) ...............................................................................13, 14, 26

*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,
   356 F.3d 731 (7th Cir. 2004) ...........................................................................................2

*Island Intell. Prop. LLC v. Deutsche Bank AG*,
   2012 WL 526722 (S.D.N.Y. Feb. 14, 2012).....................................................................32

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 2359228 (N.D. Cal. June 4, 2019) ....................................................................19

*Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*,
   2012 WL 638731 (N.D. Ill. Feb. 23, 2012) (Norgle, J.), *aff'd*, 733 F.3d 722
   (7th Cir. 2013).........................................................................................................23, 31

*Jones v. Lincoln Electric Co.*,
   188 F.3d 709 (7th Cir. 1999) ...........................................................................................8

*Jones v. United Parcel Serv., Inc.*,
   674 F.3d 1187 (10th Cir. 2012) .......................................................................................22

*LaManna v. G.D. Searle & Co.*,
   561 N.E.2d 1170 (1990)...................................................................................................36

*Lang Van, Inc. v. VNG Corp.*,
   Dkt. 163, No. 8:14-CV-00100 (C.D. Cal. July 12, 2019) ...............................................19

*Licciardi v. TIG Insurance Group*,
   140 F.3d 357 (1st Cir. 1998)............................................................................................8

*Limestone Dev. Corp. v. Vill. of Lemont*,
   520 F.3d 797 (7th Cir. 2008) ...........................................................................................18

*Liteky v. U.S.*,
   510 U.S. 540 (1994).........................................................................................................29

*Lompe v. Sunridge Partners, LLC*,
   818 F.3d 1041 (10th Cir. 2016) .......................................................................................22

*Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*,
   87 F.3d 937 (7th Cir. 1996) .............................................................................................23

*Martin v. SGT, Inc.*,
   2020 WL 1930109 (D. Utah Apr. 21, 2020).....................................................................19

*McRoberts Software, Inc. v. Media 100, Inc.*,
   329 F.3d 557 (7th Cir. 2003) .......................................................................................3, 40

*Medmarc Cas. Ins. Co. v. Avent Am., Inc.*,
    612 F.3d 607 (7th Cir. 2010) ........................................................................3

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) ......................................................................25

*Miksis v. Howard*,
    106 F.3d 754 (7th Cir. 1997) ......................................................................34

*Miller UK Ltd. v. Caterpillar Inc.*,
    2017 WL 1196963 (N.D. Ill. Mar. 31, 2017) ...................................... 3, 22

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
    288 F. Supp. 3d 872 (E.D. Wis. 2017) ................................................... 6, 7

*Minasian v. Standard Chartered Bank, PLC*,
    109 F.3d 1212 (7th Cir. 1997) ....................................................................30

*Minnesota Mining & Mfg. Co.*,
    259 F.3d at 595–96 ......................................................................................12

*Minnesota Mining & Mfg. Co. v. Pribyl*,
    259 F.3d 587 (7th Cir. 2001) ............................................................ *passim*

*Mitchell v. Belchor*,
    2014 WL 3805771 (N.D. Ill. July 31, 2014) .............................................34

*Morgan v. New York Life Ins. Co.*,
    559 F.3d 425 (6th Cir. 2009) ......................................................................22

*Motorola, Inc. v. Lemko Corp.*,
    2012 WL 74319 (N.D. Ill. Jan. 10, 2012) ................................. 11, 14, 28

*Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*,
    174 F.3d 801 (6th Cir. 1999) ......................................................................35

*OCI Wyoming, L.P. v. PacifiCorp*,
    479 F.3d 1199 (10th Cir. 2007) ...................................................................2

*Owners Ins. Co. v. Cruz Accessories*,
    2018 WL 902290 (D.S.C. Feb. 15, 2018) .................................................40

*Panoramic Stock Images, Ltd. v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    2015 WL 393381 (N.D. Ill. Jan. 27, 2015) ...............................................18

*Partington v. Broyhill Furniture Indus., Inc.*,
    999 F.2d 269 (7th Cir. 1993) ......................................................................37

*Paycom Payroll, LLC v. Richison*,
    758 F.3d 1198 (10th Cir. 2014) ...........................................................................19

*Peals v. Terre Haute Police Dep't*,
    535 F.3d 621 (7th Cir. 2008) ...............................................................................9

*Peerless Indus., Inc. v. Crimson AV LLC*,
    2015 WL 1275908 (N.D. Ill. Mar. 17, 2015).................................................11, 14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014).........................................................................................18, 38

*U.S. ex rel. Porter v. Warden Pontiac Correctional Ctr.*,
    1996 WL 167340 (N.D. Ill. Apr. 4, 1996) (Norgle, J.), *aff'd sub nom. Porter v.
    Gramley*, 112 F.3d 1308 (7th Cir. 1997) ............................................................34

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*,
    808 F.2d 271 (3d Cir. 1986)................................................................................32

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010)............................................................................................19

*Renard v. Ameriprise Fin. Servs., Inc.*,
    778 F.3d 563 (7th Cir. 2015) ..............................................................................33

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
    925 F.2d 174 (7th Cir.1991) ...............................................................................16

*Romano v. U-Haul Int'l*,
    233 F.3d 655 (1st Cir. 2000)...............................................................................22

*RRK Holding Co. v. Sears, Roebuck & Co.*,
    563 F. Supp. 2d 832 (N.D. Ill. 2008) ...................................................................2

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
    137 S. Ct. 954 (2017)..........................................................................................38

*Schandelmeier-Bartels v. Chicago Park Dist.*,
    634 F.3d 372 (7th Cir. 2011) ..............................................................................34

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    106 F.2d 45 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940) ......................................10

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*,
    2018 WL 636769 (N.D. Ill. Jan. 31, 2018) .........................................................12

*Silverman v. Bd. of Educ.*,
2010 WL 3000187 (N.D. Ill. July 26, 2010), *aff'd*, 637 F.3d 729 (7th Cir. 2011) ................................................................................................................9, 17

*Sloan Valve Co. v. Zurn Indus., Inc.*,
2013 WL 5645353 (N.D. Ill. Oct. 15, 2013) .......................................................24

*Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*,
15 F.3d 1427 (7th Cir. 1994) ...........................................................................17, 38

*Soltys v. Costello*,
520 F.3d 737 (7th Cir. 2008) ................................................................................34

*State Farm Mut. Auto. Ins. Co. v. Abrams*,
2000 WL 574466 (N.D. Ill. May 11, 2000) ..........................................................31

*Stegall v. Berryhill*,
2018 WL 2332460 (N.D. Ill. May 23, 2018) .........................................................33

*Syntex Ophthalmics, Inc. v. Tsuetaki*,
701 F.2d 677 (7th Cir. 1983) ...........................................................................12, 27

*TAOS v. Renesas Electronics America, Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) ..........................................................................2, 4

*Tax Track Sys. Corp. v. New Investor World Inc.*,
478 F.3d 783 (7th Cir. 2007) ................................................................................16

*Taylor v. Meirick*,
712 F.2d 1112 (7th Cir. 1983) ..............................................................................18

*Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*,
2005 WL 2405797 (N.D. Ill. Sept. 28, 2005) .........................................................2

*Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*,
223 F.3d 585 (7th Cir. 2000) ................................................................................25

*Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*,
2019 WL 6034116 (N.D. Ill. Nov. 14, 2019) .......................................................19

*United States v. Brack*,
188 F.3d 748 (7th Cir. 1999) ..................................................................................9

*United States v. DiSantis*,
565 F.3d 354 (7th Cir. 2009) ...........................................................................36, 38

*United States v. Fulford*,
980 F.2d 1110 (7th Cir. 1992) ..............................................................................21

*United States v. Hall*,
    165 F.3d 1095 (7th Cir. 1999) ...............................................................................9

*United States v. Hill*,
    552 F.3d 541 (7th Cir. 2008) ...............................................................................34

*United States v. Jett*,
    908 F.3d 252 (7th Cir. 2018) ...............................................................................26

*United States v. Johnson*,
    26 F.3d 669 (7th Cir. 1994) ...................................................................................4

*United States v. Jones*,
    188 F.3d 773 (7th Cir. 1999) ...............................................................................34

*United States v. Miller*,
    276 F.3d 370 (7th Cir. 2002) .................................................................................5

*United States v. Pansier*,
    576 F.3d 726 (7th Cir. 2009) ...............................................................................23

*United States. v. Serola*,
    767 F.2d 364 (7th Cir. 1985) ...............................................................................29

*United States v. Vallone*,
    2008 WL 516715 (N.D. Ill. Feb. 21, 2008) ........................................................24

*United States v. Washington*,
    417 F.3d 780 (7th Cir. 2005) ...............................................................................30

*United States v. Young*,
    470 U.S. 1, 105 S.Ct. 1038 (1985)........................................................................30

*UnitedStates. v. Betts-Gaston*,
    142 F.Supp.3d 716 (N.D. Ill. 2015) .....................................................................29

*US v. Hanjuan Jin*,
    833 F. Supp. 2d 977 (N.D. Ill. 2012), aff'd, 733 F.3d 718 (7th Cir. 2013) ...........15

*US v. Mitan*,
    966 F.2d 1165 (7th Cir. 1992) .............................................................................29

*Walker v. Groot*,
    867 F.3d 799 (7th Cir. 2017) ...............................................................................32

*Web Commc'ns Grp., Inc. v. Gateway 2000, Inc.*,
    1995 WL 23535 (N.D. Ill. Jan. 17, 1995) ..............................................................4

*WesternGeco LLC v. ION Geophysical Corp.*,
    138 S. Ct. 2129 (2018) ..............................................................................10

*Williams v. Veolia Transp. Servs., Inc.*,
    2012 WL 12960640 (C.D. Cal. June 28, 2012) .......................................19

*Zelinski v. Columbia 300, Inc.*,
    335 F.3d 633 (7th Cir. 2003) ......................................................................3

*Zirvi v. Flatley*,
    2020 WL 208820 (S.D.N.Y. Jan. 14, 2020) .............................................36

**Statutes**

735 ILCS 5/13-215 ............................................................................................36

765 ILCS 1065/2(d) ...........................................................................................11

765 ILCS 1065/4 ...........................................................................................2, 19

17 U.S.C. § 410(c) .............................................................................................18

18 U.S.C. §§ 1836(b)(3)(B) .................................................................................2

18 U.S.C. § 1836(b)(3)(C) .................................................................................19

18 U.S.C. § 1837(2) .............................................................................................9

42 U.S.C. § 1983 ................................................................................................38

18 USC 1839(3) ..................................................................................................11

**Rules**

Fed. R. Civ. P. 26 ...............................................................................................25

Fed. R. Civ. P. 61 ...............................................................................................23

Fed. R. Civ. P. 608 .............................................................................................33

Fed. R. Evid. 103 ...............................................................................................23

Fed. R. Evid. 403 .........................................................................................29, 30

Fed. R. Evid. 602 ...............................................................................................32

Fed. R. Evid. 614 .........................................................................................29, 30

Fed. R. Evid. 702 .........................................................................................23, 30

Fed. R. Evid. 804 ...................................................................................................................32

Fed. R. Evid. 1006 ..........................................................................................................24, 25

Federal Rules of Civil Procedure 32 ......................................................................................32

## I.    INTRODUCTION

After three-and-a-half months, with over 40 witnesses and hundreds of exhibits, the jury returned a resounding verdict for Motorola, holding Hytera accountable for its decade-long theft of Motorola's trade secrets and corresponding fraudulent concealment and document destruction. The jury's verdict is well-supported by the many weeks of trial testimony and hundreds of documents admitted into evidence. Hytera had (and took) a fulsome opportunity to present its case, calling over a dozen live fact and expert witnesses and conducting days of cross-examination to dispute essentially every element of Motorola's claims and present a myriad of its own defenses. Despite Hytera's egregious theft, Hytera repeatedly blamed Motorola for its malfeasance, while raking in hundreds of thousands of dollar per day for every day this case, and trial, went on. Hytera's post-trial motions are no different. Once again, Hytera blames everyone but itself—including even this Court, which it accuses of providing "deferential treatment" to Motorola (at p. 28) and committing numerous "errors" (passim), and the jurors who spent nearly four months of their lives listening to the evidence of Hytera's illegal activities, who Hytera explicitly suggests were likely "biased" (p.33)—for having to face the consequences of its unlawful actions.  To do so, Hytera takes an unapologetically kitchen-sink approach, making arguments that it has never made before, and are waived; the Court already decided against it; and are wrong on the law and the facts. Simply put, Hytera cannot meet its "heavy burden" to show a new trial is necessary or that the jury's verdict should be otherwise disturbed. The time has come for Hytera to finally take responsibility for its blatantly illegal conduct.

## II.    THE DAMAGES VERDICT IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND CANNOT BE DISREGARDED AS ADVISORY

### A.    The Jury Properly Decided Damages

Unhappy with the jury's award, Hytera asks this Court to disregard the jury's damages

verdict and to instead exercise its "[i]ndependent [j]udgment" and "decide for itself what (if any) disgorgement is appropriate." Dkt. 954 ("Br.") at 1. Hytera contends that disgorgement here is an "equitable remedy not triable of right by a jury" and seeks a do-over of a three-month long trial. Hytera's argument is foreclosed by the plain language of the DTSA and ITSA, which expressly define unjust enrichment as "damages." 18 U.S.C. §§ 1836(b)(3)(B)(I, II); 765 ILCS 1065/4. Damages are legal in nature. *Angelopoulos v. Keystone Orthopedic Specialists*, S.C., 2017 WL 2215038, at *1 (N.D. Ill. May 19, 2017) ("[L]egal remedies traditionally involve money damages. . . .") (citing *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004)). At trial, Motorola sought money to compensate for the harm caused by Hytera's misappropriation and copyright infringement, which are private rights of action.[1] And Hytera admits that the jury's award of $345.8 million, based on that evidence, is "compensatory damages." Br. at 1. Indeed, the damages award comprises lost profits, at least in part, and Hytera makes no argument that lost profits are equitable in nature. 18 U.S.C. §§ 1836(b)(3)(B)(I, II); 765 ILCS 1065/4. Thus, the jury's damages award is undeniably legal in nature. *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) ("disgorg[ing] profits" defendant "made from the sale of [plaintiff's] programming" legal relief); *see also Black & Decker Corp. v. Positec USA Inc.*, 118 F. Supp. 3d 1056, 1068 (N.D. Ill. 2015) (seeking profits was legal relief where it was "proxy for damages").

Hytera's argument to the contrary is premised on *TAOS v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018).[2] But in *TAOS*, the Federal Circuit interpreted Texas common law, not the DTSA, ITSA, or Copyright Act. *Id.* at 1311–12. And Hytera has no answer

---

[1] Tr. 870:14–876:9, 1154:5–11, 1269:4–1273:23, 1405:11–1410:5, 1432:3–1437:12, 2154:17–22, 2155:15–2156:24, 2161:3–2168:20, 2170:22–2171:5, 2172:23–2173:3, 2179:14–24, 2182:13–2183:1, 2192:8–18, 2215:5–2217:5, 2217:10–2218:22.
[2] Hytera also cites *OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d 1199 (10th Cir. 2007), but in that case, "both parties waived their right to a jury trial." *Id.* at 1201.

for the many cases in this district allowing juries to decide unjust enrichment damages, including in trade secret and copyright cases. *See, e.g., RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 836 (N.D. Ill. 2008) (jury decided unjust enrichment damages in ITSA case ); *Miller UK Ltd. v. Caterpillar Inc.*, 2017 WL 1196963, at *11 (N.D. Ill. Mar. 31, 2017) (denying JMOL on jury award of unjust enrichment under ITSA); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 558 (7th Cir. 2003) (affirming jury award of unjust enrichment in copyright case). Motorola's trade secret and copyright damages claims were thus properly tried to the jury.

### B.   Substantial Evidence Supports the Jury's Damages Award

Because damages were properly submitted to the jury, Hytera's arguments that the Court should usurp the jury's role and exercise its independent judgment to alter certain aspects of the jury's award are irrelevant. *See* § II.A, *supra*. Any attempt by Hytera to reframe these arguments (*e.g.*, §§ I.C, I.D.1–3, and I.D of Hytera's Brief) as grounds for JMOL would likewise be futile because Hytera did not raise these arguments in its 50(a) motion. "It is black letter law that a post-trial motion for judgment as a matter of law under Rule 50(b) can be granted only on the grounds advanced in a pre-trial motion under Rule 50(a)." *Blackwell v. Kalinowski*, 2011 WL 3046320, at *6 (N.D. Ill. July 25, 2011). The Court can thus make "short work" of these grounds because they are waived. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003).

Nonetheless, if the Court considers Hytera's arguments, neither the facts nor law warrant disturbing the jury's verdict, whether that award is characterized as equitable or legal. Although Hytera asks the Court to sit in equity and decide damages anew, it did not provide its desired findings of fact and conclusions of law, and instead asks the Court to guess at certain deductions Hytera wants. Br. at 1. At bottom, Hytera's arguments amount to nothing more than a disagreement with the jury's analysis of the facts. *See Golden v. World Sec. Bureau, Inc.,* 988 F. Supp. 2d 850, 853 (2013).

### 1. The Jury's Award Is Not Double Recovery

"[T]he measure of unjust enrichment damages is the benefit conferred to the defendant." *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 611 (7th Cir. 2010). That is what the jury awarded damages for: the benefit Hytera's theft conferred through avoided R&D and profits through product sales. Tr. 2200:5-11; *see Web Commc'ns Grp., Inc. v. Gateway 2000, Inc.*, 1995 WL 23535, at *2 (N.D. Ill. Jan. 17, 1995) (explaining unjust enrichment includes defendant's profits and savings). Despite profiting from its theft for more than 10 years, Hytera now wants to choose which of its ill-gotten gains it can keep. Specifically, Hytera argues that awarding R&D savings and ill-gotten profits amounts to "double recovery" because "[o]nce Hytera disgorges the money it would have spent to develop the products independently . . . it should not also be required to disgorge profits." Br. at 5. According to Hytera, damages should therefore be limited to Hytera's avoided R&D calculated at Hytera's labor rates.[3] *Id*. at 5–6.

The jury did not award double recovery. Hytera's own damages model asked the jury to award Hytera's avoided R&D ***in addition to*** Hytera's ill-gotten profits, and cannot now complain that the jury did what it said in that regard.[4] Ex. 1 (DDX-22.36–.37); Tr. 4905:13–4908:3 (Aron adding "saved R&D expenditure" and "unjust enrichment" to arrive at her damages number); *see United States v. Johnson*, 26 F.3d 669, 677 (7th Cir. 1994) ("A party may not 'invite' error and then argue on appeal that the error for which he was responsible entitles him to relief.").

Moreover, the jury's award of avoided R&D in addition to Hytera's profits for the products built with Motorola's trade secrets, ensures that Hytera does not improperly retain benefits from its theft. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012). Motorola

---

[3] If Hytera were correct about double recovery (which it is not), then the proper award would be Hytera's profits, not avoided R&D.

[4] Neither of the cases Hytera cites is relevant. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (finding no double recovery); *TAOS*, 895 F.3d at 1328 (addressing double recovery for separate trade secret misappropriation and patent infringement claims).

presented significant evidence that without Motorola's trade secrets, Hytera could not develop a comparable DMR radio in any commercially reasonable time; indeed, to this day, Hytera *still* has not been able to develop a "comparable" DMR radio on its own.[5] And even if Hytera could develop a comparable DMR radio in a certain period of time, that would be years from now, and its sales would lag behind the level of sales it has today, a proposition even Dr. Aron agreed with.[6] Mr. Malackowski thus opined that if the jury finds all of the trade secrets misappropriated, it should award the full amount of Hytera's profits in addition to Hytera's avoided R&D. Tr. 2205:25–2206-5. While Hytera presented conflicting testimony through its experts, who testified Hytera's theft provided only a six-month head start, the jury found that was not credible.[7] The jury is presumed to follow its instructions, and it was specifically instructed not to award double recovery. Dkt. 895 at 50; *United States v. Miller*, 276 F.3d 370, 375 (7th Cir. 2002). "[D]eciding what weight to give [this evidence] is a task for the jury," and substantial evidence supports the jury's conclusion that Hytera's unjust enrichment includes both R&D savings and profits from its theft. *See Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2013 WL 268607, at *5 (N.D. Ill. Jan. 24, 2013).

Although Hytera claims the jury's award of R&D savings is a perpetual license in the form of a reasonable royalty, Br. at 6, this argument is both unsupported and waived. Motorola

---

[5] Dkt. 935-3 (Ex. 36) (Dr. Rangan slide: "Hytera Could Not Conceive Of Or Develop The Trade Secrets In A Commercially Reasonable Time"); Tr. 1823:10–13 (testimony re same), 1950:21–1951:7 (Dr. Rangan: Hytera is still using Motorola's trade secrets "almost ten years" after Hytera's first DMR product release so "it would take at least ten years of time for them to develop these asserted trade secrets.").

[6] Tr. 2016:22–2017:3 (Dr. Rangan: DSP source code trade secret and repeater took 23.5 years to develop), 5375:2–5377:9 (Malackowski: in DMR market, "you build sales over time because you work with your customers to ramp up their need across their entire business. So you can't come in years later and pick up where you otherwise would have been."), 5375:2–5377:9 (Malackowski: had Hytera "entered the market in 2014, [i]t would make no sense they could have obtained all the sales they actually did with the benefit of having started several years earlier."), 4880:19–4881:9 (Dr. Aron: a late market entrant "may lose more sales if the late or delayed entry would have affected its ability to build its demand up.").

[7] Ex. 2 (DDX-21.34); Ex. 1 (DDX-22.7); Tr. 1822:25–1823:23, 1926:3–1951:7, 4282:14–22, 4829:16–4830:3.

did not seek and the jury did not award a license, fully-paid up or otherwise. The parties agreed not to instruct the jury on a reasonable royalty, and Hytera consented to instructions and a verdict form specifying damages were to be awarded only through June 30, 2019. Dkt. No. 895 at Instruction Nos. 29, 32, 40; *see also* Dkt. 872-1 at Instruction Nos. 29, 40. With no evidence and no instruction, the jury could not have awarded a fully-paid up license. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 3034655, at *2–3 (E.D. Tex. July 18, 2017) (rejecting argument verdict was fully paid-up license where "parties did not argue to the jury (or the Court) that the damages award would constitute compensation for a paid-up license").

Hytera's challenge to the factual basis for Mr. Malackowski's calculation of Hytera's avoided R&D costs likewise lacks merit. The jury heard testimony from both Mr. Malackowski and Dr. Aron, including through cross examination, regarding the differing manner in which they calculated R&D cost savings. Tr. 2184:25–2189:20, 2302:7–2307:10, 4827:9–4828:18, 4847:8–4851:17. The jury weighed that testimony and the related evidence and agreed with Mr. Malackowski's calculation. Hytera's disappointment with that conclusion is no reason to disturb the verdict. *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F. Supp. 3d 872, 882 (E.D. Wis. 2017) ("[Defendant] seems to think it can succeed if it shows merely that it could have convinced the jury to go its way, but this is no reason to disturb the jury's determinations.").

### 2.  Substantial Evidence Supports the Jury's Award of Hytera Profits

Hytera raises three disagreements with the amount of its profits the jury awarded. Hytera, however, agreed that it bore the burden of establishing the appropriate amount of its profits, Dkt. 895 at 37, 48, and its disagreement with the jury's factual assessment provides no basis to disturb the jury's verdict. *First*, Hytera contends that its profits must be limited to a head-start period because it believes all but three of Motorola's trade secrets could have been developed in four years or less. Br. at 6–7. Hytera's argument is premised on DMR source code, DSP source code,

and repeater not qualifying as trade secrets.[8] *Id.* That argument is without merit, as explained in § III.A. Moreover, even if the Court disagrees that those three qualify as trade secrets, the jury heard extensive evidence that Motorola's actual development times for the remaining trade secrets were far longer than four year, Tr. 1929:19–1946:14, and, as explained in § II.B.1, *supra*, that Hytera was incapable of developing Motorola's the trade secrets on its own in a commercially reasonable time. Based on that evidence, the jury declined to limit damages to an alleged head-start period. *See Milwaukee Elec.*, 288 F. Supp. 3d at 882.

*Second*, Hytera argues that the damages award should be reduced by some unspecified amount to account for Hytera's "[l]egitimate [c]ontributions" to the accused products. Br. at 7–8. Although Hytera undisputedly bore the burden to establish this amount, Hytera presented no quantification of it at trial. Dkt. 895 at 37, 48. While Hytera claims that it was the first to introduce certain features, Br. at 8, its damages expert never asserted profits should be reduced on this basis and Motorola presented significant evidence that Hytera's theft was the only reason it was able to "leapfrog" Motorola and offer these features. Tr. 723:16–724:5, 2157:8–2159:5, 2170:22–2171:3, 5348:25–5349:24, 5379:1–12; PTX-421. Hytera's supposed contributions to its DMR radios thus are neither legitimate nor relevant, as they only came about as a result of Hytera's theft. The jury also heard evidence that the trade secrets Hytera misappropriated were fundamental to the operation of the accused products, while Hytera offered no similar evidence for its supposed contributions.[9] As such, substantial evidence supports the jury's verdict awarding Hytera's full profits for its sales of the accused products.

---

[8] This argument is also irrelevant to the jury's copyright infringement verdict, which forms an independent basis for the jury's award of Hytera's profits that Hytera does not contest.

[9] Tr. 634:6–15 (Boerger: Motorola's trade secret related to the virtual radio interface standard are "the lifeline of our products"); 1185:11–20 (Dr. Wicker testifying that the DSP framework causes "some very fundamental behaviors in the radio"); 1306:1–13 (Dr. Wicker: stolen source code is fundamental to the framework); 5370:7-12 ("[C]onsumers are sophisticated in this market and they are paying significant premiums for the features that are represented by the trade secrets. So if Hytera came out with a product that didn't have those benefits, they wouldn't have the success in the marketplace.").

*Third*, Hytera argues that the jury should have deducted Hytera's "legitimate" R&D expenses. Br. at 7–8. Motorola presented substantial evidence at trial that Hytera's R&D expenditures were far from legitimate. Tr. 2196:5–2198:8. Hytera **altered** the data stored in its company database to make its data look more reasonable, and produced various incarnations of that data during trial. *Id.* at 5354:8–5363:18. As a result, substantial evidence supports the jury's conclusion that Hytera did not meet its burden of deducting its purported R&D spending. *See Dyson, Inc., v. SharkNinja Operating, LLC*, 2019 WL 1454509, at *9 (N.D. Ill. Mar. 31, 2019).

### 3. Hytera's Mobile Products Were Properly Included in the Verdict

Hytera asks for a free pass on its mobile-radio misappropriation because "Motorola expressly disclaimed recovery for mobiles." Br. at 9. Not so. During Motorola's case-in-chief, Motorola's technical expert, Dr. Wicker, testified that mobiles use the same code as the accused devices and repeaters, and Mr. Malackowski presented evidence of Hytera's revenues and profit margin for mobile radios and made clear that those amounts were in addition to those for portable radios, repeaters, and accessories.[10] Hytera did not object to any of this evidence, and its argument that the jury could not consider it is waived. *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 727 (7th Cir. 1999). Moreover, after Hytera attempted to suggest to the jury through its fact and expert witnesses that its mobile devices were not accused,[11] Motorola was entitled to contradict that testimony, which it did on rebuttal through Mr. Malackowski's summation of the unobjected-to-numbers he previously presented. Tr. at 5395:11–24. Mr. Malackowski also testified it was up to the jury to decide what amount of damages to award, and whether mobile

---

[10] Tr. 1434:5–10, 1428:5–1431:215; 2191:24–2192:4, 2198:9–17; PTX-2071; PTX-2226; DTX-4057. Hytera's own expert, Barbara Frederiksen-Cross, knew mobile radios were at issue, testifying that Hytera's accused mobile devices include the same code as Hytera's accused devices and repeaters. Tr. 3795:4–14.

[11] Tr. 2581:3–7, 3278:7–9, 3408:22–24, 3426:21–25, 5395:11–24. Hytera's reliance on *Licciardi v. TIG Insurance Group*, is thus inapposite because in that case, defendant presented an entirely new and undisclosed theory on liability. 140 F.3d 357, 363–64 (1st Cir. 1998).

radios should be included. *Id.* at 5410:6–11. Hytera itself acknowledges "contradict[ing] the impact of the evidence offered by an adverse party" is "[t]he proper function of rebuttal evidence[.]" *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). The verdict thus properly includes mobile radios. *See United States v. Hall*, 165 F.3d 1095, 1117 (7th Cir. 1999) ("[A]dmission of rebuttal evidence lies within the sound discretion of the trial court[.]").

### C. Hytera's Extraterritoriality Argument Should Be Stricken and Is Wrong as a Matter of Law

Hytera's extraterritoriality argument should therefore be stricken. Instead of articulating the arguments in its brief, Hytera admittedly incorporated by reference over 50 pages of prior briefing to circumvent the Court-ordered 40-page limit. *See* Br. at 10 ("Hytera incorporates by reference its prior briefing.") (citing Dkts. 758, 806, 836, 866, 908). "Skirting these limits through 'incorporation by reference' is impermissible," and Hytera's extraterritoriality JMOL ground should be stricken. *Silverman v. Bd. of Educ.*, 2010 WL 3000187, at \*1 (N.D. Ill. July 26, 2010), *aff'd*, 637 F.3d 729 (7th Cir. 2011).[12]

Hytera's arguments also fail on the merits. *See* Dkts. 774, 834, 856, 884. *First*, as to the DTSA, the Court's January 31 Order held it was "undisputed" that Defendants "have advertised, promoted, and marketed products embodying the allegedly stolen trade secrets domestically at numerous trade shows," meaning the DTSA applied extraterritorially under 18 U.S.C. § 1837(2). Dkt. 834 at 21–23. Hytera raises no arguments the Court has not already considered and rejected, much less that go to whether the jury lacked substantial evidence.

*Second*, although the Court disagreed, Motorola's damages claim under the DTSA and ITSA was premised on a domestic application of both statutes, which provides an alternative basis for affirming the jury's damages award. The relevant conduct, *i.e.*, Hytera's theft and

---

[12] *See also United States v. Brack*, 188 F.3d 748, 759 (7th Cir. 1999) (declining to address arguments incorporated by reference); *DeSilva v. DiLeonardi*, 181 F.3d 865, 866-67 (7th Cir. 1999) (same).

copying, occurred in the United States, and specifically this district.[13] The theft occurred here when Hytera employees stole Motorola's trade secrets from the Compass and Clearcase systems, including because those systems are accessible at Motorola's Schaumburg Office.[14] *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018).

*Third*, the jury's award of worldwide profits for Hytera's copyright infringement was proper because "an infringing act occurred within the United States," and the jury was entitled to find on the facts before it that Hytera's domestic copying of Motorola's copyrighted source code and Hytera's profits from selling DMR radios that included those copyrighted works, whether inside or outside the U.S.[15] Dkt. 834 at 26; *see Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940). Hytera's final bid to limit copyright damages is to argue Motorola did not present evidence of the amount of Hytera's worldwide profits from copyright infringement. Br. at 10-11. That is not correct, as Mr. Malackowski specifically identified that amount. Tr. 5389:18–22.

## III. MOTOROLA'S TRADE SECRET CLAIMS (COUNTS I AND II) ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

### A. Motorola Satisfied The Elements of a Trade Secret Claim

After finally being caught and brought to justice for its unprecedented theft of Motorola's trade secrets, Hytera now contends that the material it took painstaking efforts to steal and implement were not trade secrets at all. Nonsense. The trade secrets in this case stem from the massive, unprecedented theft of tens of thousands of confidential documents and millions of lines of source code by Hytera's senior-most engineers and executives. Those secrets constitute Motorola's "playbook" for its pioneering digital two-way radio devices. *E.g.*, Tr. 723:16-724:5.

---

[13] Tr. 140:20–22, 141:6–12, 146:2–5, 200:1–2.
[14] *Id.* at 209:22–210:11, 211:2–14, 373:21–24, 379:21–380:1, 396:20–25, 443:16–17, 521:18–20, 989:17–19, 997:10–998:2, 1001:2–20, 1009:15–1010:21.
[15] Tr. 209:22–210:11, 211:2–14, 373:21–24, 379:21–380:1, 380:18–21, 396:20–25, 443:16–21, 521:18–20, 989:17–19, 997:10–998:2, 1001:2–20, 1009:15–1010:21, 5150:5–12.

### 1. Motorola Has Protectable & Concrete Trade Secrets

At trial, Motorola presented the jury with 21 trade secrets, each identified by a compilation of highly confidential technical and engineering materials that were all stolen by Hytera, including *inter alia*, technical specifications, circuit diagrams, testing plans, and product source code, all of which undoubtedly meet the definitions of a trade secret under both the Defend Trade Secret Act (DTSA) and Illinois Trade Secret Act (ITSA). 18 USC 1839(3); 765 ILCS 1065/2(d). All were identified at trial by document number, bates number, and/or source code filename, and accompanied by over twenty-five hours of testimony from five Motorola engineers and Motorola's expert witness which explained the specifics of the trade secret materials, and confirmed that they were all kept confidential and not publicly disclosed.[16]

Motorola's method of identifying the voluminous set of information that Hytera stole mirrors the methods the 7th Circuit and this district have previously approved.[17] *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001) (identification of internal operating procedures and manuals sufficient); *Motorola, Inc. v. Lemko Corp.*, 2012 WL 74319, at *19 (N.D. Ill. Jan. 10, 2012) (identification of large volumes of documents and source code "by Bates number, file type, and/or location" sufficient); *Peerless Indus., Inc. v. Crimson AV LLC*, 2015 WL 1275908, at *12 (N.D. Ill. Mar. 17, 2015) (identification of "30,000 pages of 'spec packages' and lists of tools" sufficient). The jury was also specifically instructed on the requirements necessary for a trade secret, including Motorola's burden to identify concrete trade

---

[16] *See, e.g.,* Tr. 589:15-597:1, 615:17-621:25, 631:15-638:1, 709:25-724:5, 734:15-754:4, 836:14-837:4, 867:4-894:20, 976:21-977:3, 1001:2-1015:9; *see also* PTX-126, 127, 268, 328, 459, 468, 531, 532, 666, 667, 672, 674, 675, 681, 686, 690, 691, 709, 711, 720, 722, 725-731, 734, 738, 742, 750, 754, 762, 766, 768, 770, 772, 776, 784, 785, 789, 791-793, 798, 802, 839, 861, 1250, 1255, 1258, 1259, 1260, 1264, 1270, 1309-1310, 1313-1317, 1330-1332, 1340-1342, 1345, 1346, 1350, 1381, 1701, 1865, 1866.

[17] This Court has already considered and denied Hytera's present argument, finding that Motorola's trade secrets were "more than identified." Dkt. 478 (3/20/19 Hr'g Tr.) at 141:17-143:1. This was followed by substantial additional agreed-upon discovery, including Hytera deposing Motorola's engineers for multiple days on the trade secrets at issue. Dkt. 520; Dkt. 570 at 1-2, 4.

secrets, Tr. 5939:14-17, and returned a complete verdict for Motorola, concluding that all trade secrets were sufficiently identified and protectable. *Id*. 5980:17-5982:3.

Hytera seeks to overturn that sound verdict. *First,* Hytera contends that Motorola "has made no effort to separate out the supposed secrets from public or generally known materials." Br. at 4. Not so. Motorola provided extensive evidence of specifically what was and was not generally known.[18] The trial record is undisputed that ***not a single one*** of Motorola's confidential materials were ever made public: Hytera's own expert admitted that Motorola's trade secrets were "kept under lock and key" and "not ma[de] [ ] available to the general public." *See* Tr. 4601:18-4602:6. Hytera contends that these confidential materials are not protectable because some include small excerpts of "publicly disclosed info[sic]," "third-party code," or "include[] generally known information in the industry." Br. at 12-13. This is irrelevant, as black letter law confirms that "a trade secret can be comprised of ***both public and novel information***." *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 684 (7th Cir. 1983) (emphasis added); *see also Minnesota Mining & Mfg. Co.*, 259 F.3d at 595–96 (trade secrets may include "a host of materials which would fall within the public domain").[19]

Hytera argues that because Motorola did not identify "page by page what is a secret and what is not," it has not identified a trade secret. Br. at 2-3. This is incorrect, and Hytera's argument has been rejected by the 7th Circuit: "[D]efendants seem to suggest that if 3M cannot point to specific items within its manuals that are not known by the industry, then 3M cannot claim a trade secret in the combined product. ***We disagree***." *Minnesota Mining & Mfg. Co.,* 259

---

[18] *E.g.*, Tr. 615:8-621:25, 625:7-626:19, 630:14-631:14, 706:6-707:2, 709:1-715:12, 716:10-717:2, 718:13-719:3, 739:9-740:15, 741:15-747:4.

[19] *See also Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, 2018 WL 636769, at *4 (N.D. Ill. Jan. 31, 2018) (single slide presentation containing both public and confidential information can be a trade secret); *Geraci v. Macey*, 2016 WL 3671400, at *6 (N.D. Ill. July 11, 2016) (sufficient evidence for jury to find that asserted "GapC" source code was a trade secret "[e]ven if the GapC code was largely assembled from" third-party code).

F.3d at 595-96 (emphasis added). Instead, rejecting Hytera's argument, the 7th Circuit held that the "unified process" captured by the plaintiff's compilation of internal, confidential material "took the company six years and considerable income to perfect" and "is not readily ascertainable by other means," ultimately finding ""sufficient evidence to support the jury's finding that 3M has a trade secret." *Id*. Here, as in *Minnesota Mining & Mfg. Co.*, Motorola's stolen confidential materials represent a compilation of decades of engineering work that Hytera stole and benefited from wholesale. For example, a highly valuable Motorola confidential testing specification at issue includes excerpts from public radio standards and then sets out in great confidential detail where and how Motorola will ***exceed*** those standards to perform better than competitors. PTX-127; Tr. 5119:14-5121:5. This document was wholesale stolen from Motorola, and relabeled at Hytera as a "Hytera-branded" testing document; there can be no doubt that under *Minnesota Mining & Mfg. Co.* and 7th Circuit precedent, the document is valuable as a whole and entitled to trade secret protection. *Id.* Likewise, although Hytera complains about the presence of third party code in Motorola's source code trade secrets, it fails to address the undisputed testimony about how Motorola alters, interacts, and interfaces with that third party code—and uses it in the context of all of Motorola's other code—is highly confidential and valuable; indeed, it was so valuable that all of it was all stolen and used by Hytera.[20]

Hytera does not cite or address any of this law. Instead, it relies on a mischaracterization of *IDX Sys. Corp. v. Epic Sys. Corp*. *IDX* identified user-facing software as a trade secret, claiming protection for "the appearance of data-entry screens" and "input and output formats" "that any user or passer-by sees at a glance." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002). The court found that the purported "trade secret" was merely composed of

---

[20] Tr. 625:13-626:9, 681:25-683:4, 714:22-715:12, 726:14-727:5, 805:25-806:7; *see also Geraci v. Macey*, 2016 WL 3671400, at *6 (holding that a jury could find that the claimed source code was a protectable trade secret, even where it was "largely assembled from" third-party code).

"details that ordinary users of the software could observe without reverse engineering," and thus could not amount to a specific trade secret disclosure. *Id*. The *IDX* court **explicitly** distinguished itself from cases like *Minnesota Mining & Mfg. Co.*, noting that the hundreds of pages of stolen confidential materials in *Minnesota Mining & Mfg. Co.* "did not involve such self-revealing information" as the material *IDX* tried to claim as a trade secret. *See IDX*, 285 F.3d at 584.[21] In stark contrast to *IDX*, Motorola's trade secrets are not user-facing software, but rather the undisputedly confidential technical documents and source code that work behind-the-scenes to power Motorola's technology. *See*, *e.g.,* Tr. 657:20-661:11. And unlike the defendant in *IDX*, Hytera stole far more than "details that ordinary users of the software could observe": it stole literally every line of Motorola's DMR radio source code and tens of thousands of confidential documents that Motorola spent decades creating. There can be no doubt that that highly valuable, confidential information is exactly what trade secret law is designed to protect.

*Second*, Hytera contends that the pure volume of confidential and proprietary materials stolen at issue in this case prevents a proper identification. This argument, too, has no basis in the law, as evidenced by Hytera's lack of any legal support. "Although voluminous ... 'the fact that a [trade secret owner] compiled a lot of information does not make it less protectable.'" *Peerless*, 2015 WL 1275908, at *12. Hytera's application of the law would permit an undisputed misappropriator to avoid liability merely by stealing large volumes of confidential material; as Judge Cole rightly explained when rejecting Hytera's argument earlier in this case: "it is not a defense to say, gee, that's a lot of code." Dkt. 478 (3/20/19 Hr'g Tr.) at 108:20-109:3; 111:11-19.

### 2. Motorola's Trade Secrets Meet The Statutory Requirements

---

[21] Courts in this District have routinely made this same distinction between *IDX's* public-facing software and actual confidential material, such as what Hytera stole from Motorola. *See, e.g.*, *Charles Schwab & Co. v. Carter*, 2005 WL 2369815, at *12 (N.D. Ill. Sept. 27, 2005); *Motorola*, 2012 WL 74319, at *17-20 (N.D. Ill. Jan. 10, 2012); *see also* G*old Medal Prod. Co. v. Bell Flavors & Fragrance Inc.*, 2018 WL 1135629, at *3 (N.D. Ill. Mar. 2, 2018).

Hytera reargues facts resolved against it by the jury. Despite Hytera's arguments (Br. at 13), multiple Motorola trial witnesses explained that the secrets are not generally known,[22] the impact Hytera's theft would and did have on Motorola,[23] and Hytera's own expert conceded that Motorola's trade secrets "give [Motorola] competitive advantages in the marketplace." Tr. 4771:3-13. This is far more than sufficient under the law. *See, e.g.*, *US v. Hanjuan Jin*, 833 F. Supp. 2d 977, 1009-1010 (N.D. Ill. 2012), aff'd, 733 F.3d 718 (7th Cir. 2013).[24]

Hytera next argues that Motorola did not keep its secrets a secret. Br. at 14. But numerous Motorola witnesses, including Motorola's Chief Information Security Officer, testified to Motorola's rigorous and best-in-industry security efforts to keep the trade secrets confidential, and how Motorola's policies covering those materials (regardless of the internal label or "registration") all meet the standards for trade secret protection.[25] Hytera also claims Motorola code was widely accessible, Br. at 14, but that is contradicted by the record. Tr. 443:16-447:7.[26]

Hytera next argues that Motorola did not address "significant spikes in the access to documents." (Br at 14). This is also incorrect: Hytera's own expert admitted that Motorola spent "months" investigating a variety of potential security incidents, (Tr. 4792:10-25, 4768:9-13), and Hytera's brief ignores Motorola's efforts to protect its trade secrets. *See infra* § III.B; *see also* Tr.

---

[22] Tr. 589:15-22, 592:18-593:19, 595:11-597:1, 615:17-621:25, 631:15-632:9, 637:11-638:1, 709:25-724:5, 734:15-735:18, 741:18-746:16, 753:7-754:4, 836:14-837:4, 867:4-872:6, 877:6-8, 878:1-879:4, 879:24-882:12, 884:3-886:2, 887:12-890:16, 892:11-894:20, 976:21-977:3, 1001:2-1015:9.

[23] *See, e.g.*, Tr. 723:16-724:5 ("[I]f a competitor were to get our source code and technical documents, that's like getting our playbook…"), *see also* 609:6-14; 1164:23-1166:15; 5075:2-5076:12; 2156:15-2157:19; 2200:12-2205:24.

[24] Hytera's cases are inapposite, involving non-confidential materials unlike the stolen Motorola materials. *See Eaton Corp. v. Appliance Valves Corp*., 526 F. Supp. 1172, 1180 (N.D. Ind. 1981) (design "can be learned by anyone" purchasing the product); *Hawkins v. Flambeau, Inc.*, 2007 WL 2710947, at *65 (S.D. Ind. June 5, 2007) (secret "generally known and readily ascertainable"); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1199 (S.D. Cal. 2008) (secret no more than "publicly available checklists").

[25] *See, e.g.*, Tr. 432:20-443:3, 401:16-407:21, 548:13-23, 602:9-22, 610:13-21, 710:9-15, 720:7-722:3, 724:14-725:3, 835:17-837:15, 839:23-840:9; *see also* PTX-2046.10-19; PTX-1392.3; PTX-1643.12-13, 16; PTX-1183; Tr. 401:16-424:14, 553:17-556:17.

[26] Mr. Shepard noted that as the head of information security for Motorola, even he did not even have access to Motorola's source code. Tr. 522:9-13.

441:19-443:3, 544:23-548:12; *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.,* 925 F.2d 174, 177 (7th Cir.1991) (trade secret holder need not establish it took every available precaution "to maintain secrecy"); *see also Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 696 (N.D. Ill. 2004) (only reasonable measures required, "not perfection").[27]

### 3. Hytera Knew Of Its Misappropriation

Hytera does not challenge the jury's finding that it misappropriated Motorola's trade secrets; instead, Hytera merely contends it did not know of the misappropriation. The jury was well within the law to disagree, particularly as it was ***undisputed that the senior-most leaders of Hytera's DMR development, Messrs. G.S. Kok, Y.T. Kok, and Chia all knew*** they were "using Motorola source code and looking at Motorola confidential documents . . . in connection with developing Hytera's DMR products." Tr. 4606:15-21, 4622:2-4629:16; PTX-412. Substantial additional evidence at trial also showed that many other Hytera employees—including both Hytera's CEO and Vice President of R&D—knew of the theft.[28] Likewise, Hytera's wholly-owned American subsidiaries also knew that the products sold in the US were developed using Motorola's trade secrets.[29] And after learning that Hytera's DMR radios used stolen Motorola source code, all Hytera defendants continued selling the radios, with Hytera's U.S. President agreeing that "Hytera is not going to leave the DMR marketplace," and is "going to grow" until

---

[27] Hytera's case law is inapposite. *Tax Track Sys. Corp. v. New Investor World Inc.,* involved "widespread nonconfidential disclosure" of alleged secret material "to hundreds of outsiders." 478 F.3d 783, 788 (7th Cir. 2007). And in *CMBB LLC v. Lockwood Mfg., Inc,* the plaintiff "did nothing to communicate to its employees that" the supposed secret information "should be kept confidential or secret." 628 F. Supp. 2d 881, 887 (N.D. Ill. 2009). Here, Motorola consistently trained its workforce on its information protection policies. Tr. 401:16-407:21, 416:1-5, 433:5-443:3.

[28] *See, e.g.,* Tr. 1848:5-1866:1, 1866:24-1868:15, 1869:21-25, 1870:12-1872:1, 1875:4-1876:21; PTX-233, PTX-404, PTX-416, PTX-426, PTX-429; *see also* VP of R&D Pengfei Sun (Tr. 2480:8-2481:25); Jue Liang (PTX-100; Dkt 766, Ex. D (Liang Dep. Desig.) at 68:3-11); Yang (PTX-654; Tr. 5089:19-5095:20); Qin Jun (PTX-573); Huang Ni (PTX-806); and others (PTX-47; PTX-530; Tr. 1359:13-1363:22; *id.* 4153:9-22).

[29] *See, e.g.,* Tr. 3387:8-25, 3493:7-10, 3510:17-3518:13; PTX-2270 (Hytera America's participation in DMR work); Tr. 1863:1-1865:1 (Hytera CEO encouraging Hytera America employee to reveal confidential information about Motorola); PTX-404 (same).

it is "number one in the DMR market." Tr. 3539:5-17, 3541:18-23.

### B. Motorola's Trade Secret Claims Are Not Barred by the Statute of Limitations

The jury explicitly rejected Hytera's statute of limitations defense—as did the Court in multiple orders—but Hytera argues that the statute of limitations still bars Motorola's claims. Br. at 15; *see* Dkt. 885; Dkt. 435; Tr. 2346:9-12.[30] Hytera wrongly asserts that "Motorola had numerous reasons to suspect before March 2012" that confidential materials were taken by Hytera. Br. at 15. First, even if true, "concerns and suspicions...do not start the clock of the statute of limitations." *Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1430 (7th Cir. 1994); *see also infra* § VII.A, VII.D. Second, none of the so-called "suspicions" prior to the limitations period concerned theft of the trade secrets at issue here. Third, substantial evidence—including from Hytera's own expert—shows that Motorola vigorously investigated Hytera and reasonably concluded based on those investigations that no issue existed.[31] Ultimately, any chance of discerning the theft was thwarted by Hytera's fraudulent concealment—facts that were undisputed by Hytera at trial. Hytera's hindsight-based argument that Motorola could have pulled the Compass logs to determine the theft ignores these substantial investigations and further ignores uncontroverted testimony that this automatic analysis was not technically feasible during the relevant time period. Tr. 383:23-384:13, 440:17-443:3.

## IV. MOTOROLA'S COPYRIGHT CLAIM (COUNT III) IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Hytera's arguments against the jury's verdict of copyright infringement are equally meritless. ***First***, Motorola established substantial similarity: the jury heard testimony that

---

[30] Hytera incorporates by reference nearly 15 pages of briefing in another attempt to end-run around the Court's page limits set for post-trial briefing. As explained above in § II.C, this is impermissible, *Silverman*, 2010 WL 3000187, at *1, but to the extent the Court entertains such incorporations, Motorola directs the Court to its own briefing on this issue. *See* Dkt. 879 at 12-15; Dkts. 216-219, 245-247.

[31] Tr. 241:6-243:19, 896:11-903:14, 1196:11-1197:22, 1207:23-1209:25, 4743:2-18, 4792:10-25, 4768:9-13; PTX-18, PTX-19, PTX-1191; DTX-4398.

Motorola's code was original and creative (*i.e.*, copyrightable). Tr. 182:20-183:2, 183:23-184:6, 862:15-864:9, 873:6-7, 874:19-875:4. Motorola identified the code Hytera copied from each version of Motorola's DMR Program, mapping the copying to the asserted work, contrary to Hytera's argument. *See* Br. at 24, PTX-2090, PTX-2091; Tr. 1433:1-1436:8. Since Motorola holds copyright registration certificates for its DMR Program,[32] it was *Hytera's* burden to demonstrate a lack of protectability. *See* 17 U.S.C. § 410(c);[33] *Flick-Reedy Corp. v. Hydro-Line Mfg. Co.*, 351 F.2d 546, 549 (7th Cir. 1965). Hytera solely points to its expert's conclusory testimony that a few lines of code in two files are allegedly similar to other parties' code; even if true, the massive amount of other code Hytera indisputably copied supports the verdict.

**Second**, Hytera incorrectly argues that the statute of limitations bars Motorola's damages prior to three years before the complaint was filed. As this Court correctly concluded, "the law does not support [Hytera's] position." Tr. 2381:21–2382:22; Dkt. 762 at 10, 829 at 1-4.[34] *See Taylor v. Meirick*, 712 F.2d 1112, 1118-19 (7th Cir. 1983); *Panoramic Stock Images, Ltd. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2015 WL 393381, at *2 (N.D. Ill. Jan. 27, 2015). And, contrary to Hytera's claim, Motorola presented evidence from which the jury determined damages for a particular time period. *See, e.g.*, PTX-2071 (Hytera's profits by year).

**Third**, Hytera incorrectly argues that Motorola should not have been permitted to assert infringement of the versions of the DMR Program registered as Copyright Reg. Nos. TXu 1-572-947 and TX 8-654-512. This argument has been rejected. Dkts. 597, 885; *see also* Dkt. 829 at 5; Dkt. 591 at 13-14. As to Hytera's new argument that *Fourth Estate Public Benefit Corp. v. Wall-*

---

[32] *See* PTX-1527, PTX-1528, PTX-1645, and PTX-1659.

[33] Matrix 1.3 is entitled to a presumption as Hytera did not challenge its evidentiary weight at trial, and all of the certificates were treated the same. Tr. 203:11–16 (admitting certificates); *Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc.*, 772 F. Supp. 2d 1029, 1032–33 (E.D. Wis. 2011).

[34] Hytera's cases are inapposite. *Petrella v. Metro-Goldwyn-Mayer, Inc.* did not address the continuing violation doctrine. 572 U.S. 663, 671 (2014); *see* Dkt. 829 at 7. And *Limestone Dev. Corp. v. Vill. of Lemont*, Ill. did not involve a copyright claim. 520 F.3d 797, 801 (7th Cir. 2008).

*Street.com, LLC*, 139 S. Ct. 881 (2019), bars a claim based on TX 8-654-512, Hytera waived that argument by first raising it at the end of trial through a late summary judgment reply brief, Dkt. 848 at 2–3, after both sides' witnesses had testified and without objecting to Motorola's certificate or testimony on this new ground. Tr. 874:17-875:4; 202:6-204:2. *See Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 2015 WL 4426861 at *1 (S.D. Ind. July 20, 2015); *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014). Indeed, as the registration requirement is "nonjurisdictional," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010), Hytera waived the issue. *See Williams v. Veolia Transp. Servs., Inc.*, 2012 WL 12960640, at *4 (C.D. Cal. June 28, 2012). Moreover, Motorola complied with *Fourth Estate* as it held registrations for the DMR Program when its Amended Complaint was filed. *See, e.g.,* PTX-1528. Motorola's identification of *additional* registrations for the program does not institute a new claim. Dkt. 829 at 4-5. Finally, Hytera's argument that Motorola should have filed a separate lawsuit has been rejected by courts applying *Fourth Estate*. *See Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019) (permitted claim over work not in original complaint); Ex. 3, *Lang Van, Inc. v. VNG Corp.*, Dkt. 163 at 3, No. 8:14-CV-00100 (C.D. Cal. July 12, 2019).[35] Thus, Motorola's copyright claims properly proceeded.

## V.     PUNITIVE DAMAGES WERE PROPERLY AWARDED

### A.     Punitive Damages Are Supported by Substantial Evidence

The DTSA allows the jury to award punitive damages when the trade secrets have been "willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(C); *see also* 765 ILCS

---

[35]   *See also Martin v. SGT, Inc*., 2020 WL 1930109, at *11 n. 136 (D. Utah Apr. 21, 2020); *Digital Mentor, Inc. v. Ovivo USA, LLC*, 2020 WL 550746, at *3 (W.D. Wash. Feb. 4, 2020). Hytera's cases are inapposite. *See Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (post-complaint registration early in the litigation, not end of trial); *Blue Book Servs., Inc. v. Farm Journal, Inc.*, 2020 WL 419405, at *6 (N.D. Ill. Jan. 27, 2020) (does not address post-registration amendment).

1065/4. The jury was presented with overwhelming evidence of Hytera's intentional bad acts and appropriately concluded punitive damages were warranted. Hytera recruited G.S. Kok, Y.T. Kok and Sam Chia to steal Motorola's trade secrets.[36] Motorola's trade secrets were widely disseminated at Hytera, and Hytera knew it needed to conceal its theft.[37] Hytera continued to promote G.S. Kok, Y.T. Kok, and Sam Chia within the company; by the time of Hytera's 2011 IPO, G.S. Kok was one of the seven most senior people at Hytera.[38] The litigation had been pending for a year and a half before G.S. Kok, Y.T. Kok, and Sam Chia were "fired" with generous severance packages and an agreement not to participate in the trade-secret case.[39] Even after Chia told Hytera's CEO in 2017 that he feared going to "jail," Hytera kept denying it possessed even a single line of Motorola source code.[40] While Hytera's vice president of R&D "would have stopped" selling those products immediately upon learning of the theft, Hytera chose to keep selling and conducted an "investigation" that involved turning a blind eye to Hytera's rampant theft, destroying documents, and firing the attorneys (their prior counsel in this case) who told Hytera that it needed to redesign its products.[41] Hytera's "redesign" one year later amounted to *de minimis* changes to verbatim-copied source code.[42] Even after the verdict, Hytera ***still*** blames Motorola for Hytera's theft, arguing that Motorola should have discovered Hytera's theft earlier or defined its trade secrets earlier in the litigation. Br. at 21. This is precisely the

---

[36] Tr. 1162:10-1164:22, 1178:22–1180:11, 1851:8–25, 2164:15–2167:5, 5379:22–5381:16, 5593:16–5594:6; PTX-1085.

[37] PTX-18; PTX-19; PTX-1191; DTX-4398; Tr. 241:6–243:19, 903:11–14, 1196:11–1197:22, 1207:23–1209:25, 1234:1–1237:19, 1273:1–13, 1438:12–1440:2.

[38] PTX-2380.619–620.

[39] Tr. 1880:18–1882:5; PTX-487.1-.7; PTX-489.1–.3; PTX-491.1–.3.

[40] PTX-233; Tr. 3173:13–3175:9.

[41] PTX-233; Tr. 2830:15–17 (Mr. Yang confirming that "Hytera's products have Motorola source code in them"), 4162:1–11 (Ms. Frederiksen-Cross confirming that "there's still a bunch of Hytera products that still are using Motorola source code being sold even today"); Tr. 3186:14–3187:5, 5286:2–5287:10, 1880:18–1881:3, 2481:18–25, 3247:8–3248:12, 3150:16–3151:20, 3177:4–21, 3184:18–3204:23; DTX-5037; PTX-489; PTX-491.

[42] Tr. 1437:16–1440:13.

type of willful and malicious behavior punitive damages are intended to "punish the defendant and deter future wrongdoing." *See Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, 2012 WL 5383271, at *4 (N.D. Ill. Nov. 1, 2012).

Neither of Hytera's arguments demonstrates punitive damages were improperly awarded. Hytera's argument that its management did not authorize the conduct (Br. at 17-18) is wrong and irrelevant: the jury was also instructed that it may award punitive damages against an employer if his "employee was employed in a managerial capacity and was acting in the scope of his or her employment. Dkt. 895 at Instruction No. 33. The record is replete with supporting evidence supporting at least both of those bases for awarding punitive damages, both before and after the DTSA's enactment.[43] Hytera also points to its post-DTSA investigation, but as explained above, that investigation was meaningless. Substantial evidence thus supports punitive damages.

### B. Due Process Does Not Bar Punitive Damages

Hytera contends the jury's punitive damages award violates due process due to the DTSA's enactment date (Br. at 18), but Hytera waived this argument. Indeed, it specifically consented to instructing the jury on punitive damages as well as the very instruction that was given. Tr.5562:1-4. "It is well-settled that where error is invited, not even plain error permits reversal." *United States v. Fulford*, 980 F.2d 1110, 1116 (7th Cir. 1992). Hytera *admits* its bad conduct continued after the DTSA was enacted and after this case was filed (Br. at 18 (admitting Motorola "relied upon Hytera's conduct after the filing of the lawsuit")), which confirms that punitive damages are necessary to deter Hytera's continued acts. *See* § V.A.

In addition, the due process "guideposts" Hytera cites to lower punitive damages are

---

[43] Dkt. 766, Ex. A at 49:25–50:3 (Sam Chia was "DSP software director" when he joined Hytera); Dkt. 766, Ex. B at 56:23-57:3 (G.S. Kok's first position was "director of two-way radios"); Dkt. 766, Ex. C at 24:21-23 (Y.T. Kok was "software manager" when he joined Hytera); Tr. 2833:8-11, 4625:23–4626:1, 4631:16–4633:4; PTX-77; PTX-412, PTX-2380.792 (G.S. Kok was one of the seven senior officers of Hytera that signed Hytera's Initial Public Offering).

inapplicable here because there is a statutory cap on punitive damages, and those guideposts in any event confirm the jury's punitive damages award was proper.[44] For example, Hytera claims its conduct was not "reprehensible" and that "economic harm" is "less deserving" of punitive damages than physical harm. Br. at 19. Congress enacted the DTSA to specifically address conduct like Hytera's and made punitive damages available. S. Rept. 114-220, at 1–3 (2016). Hytera's conduct caused harm not just to Motorola, by diminishing the value of Motorola's R&D investments, but by diminishing the incentive to innovate through its theft. *See* Tr. 3170:14–3171:15, 5342:15–20. Hytera's continued attempts to downplay its intentional theft, its continued sale of products that contain Motorola trade secrets, its continued possession of Motorola's trade secrets and source code, and its multiple attempts to conceal this theft from Motorola and the Court only confirm the propriety and necessity of the jury's punitive damages award.[45]

Hytera also claims that punitive damages should not be awarded because the jury's $345 million in compensatory damages is a "windfall" and a perpetual license. Br. at 19–20. Those arguments are wrong, as explained in § II.B.1. Moreover, "a statutory cap on [punitive] damages suggests that an award of damages at the capped maximum is not outlandish."[46] *Miller*, 2017 WL

---

[44] *Romano v. U-Haul Int'l*, 233 F.3d 655, 673 (1st Cir. 2000) ("A congressionally-mandated, statutory scheme identifying the prohibited conduct as well as the potential range of financial penalties goes far in assuring that appellants' due process rights have not been violated."); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583 (1996) ("reviewing court … should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for conduct at issue.'").

[45] Tr. 241:6–243:19, 903:11–14, 1196:11–1197:22, 1207:23–1209:25, 1234:1–1237:19, 1273:1–13, 1438:12–1440:2, 2830:15–17 (Mr. Yang: "Hytera's products have Motorola source code in them"), 4162:1–11 (Ms. Frederiksen-Cross: "there's still a bunch of Hytera products that still are using Motorola source code being sold even today"); PTX-18; PTX-19; PTX-1191; DTX-4398.

[46] None of Hytera's cases say otherwise. *DeRance, Inc. v. PaineWebber Inc.*, 872 F.2d 1312, 1328 (7th Cir. 1989) (no statutory cap; punitive damages awarded under Wisconsin common law); *Exxon Shipping v. Baker*, 554 U.S. 471, 501 (2008) (limiting its decision to maritime common law); *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1069-73 (10th Cir. 2016) (noting that courts deviate upwards from a 1:1 ratio when "the defendant has either intended to cause the substantial compensatory damages or engaged in particularly egregious behavior"); *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207-08 (10th Cir. 2012) (employment discrimination case with no statutory cap) (citations omitted); *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 443 (6th Cir. 2009) (same); *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 603 (8th Cir. 2005) (design defect case under Arkansas law with no statutory cap).

1196963, at *11; *see also Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 945 (7th Cir. 1996) (affirming punitive damages equaling two times jury's compensatory award).

## VI.  HYTERA WAS NOT DENIED A FAIR TRIAL

Hytera's demand for a new trial is based exclusively on the Court's admission of a limited set of evidence. A party seeking a new trial based on alleged erroneous evidentiary rulings bears a "heavy burden" to show that "the result reached was inconsistent with substantial justice." *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 2012 WL 638731, at *4 (N.D. Ill. Feb. 23, 2012) (Norgle, J.), *aff'd*, 733 F.3d 722 (7th Cir. 2013). "To obtain a new trial based on an erroneous evidentiary ruling, the movant must show that the ruling affected 'a substantial right of the party.'" *Id.* (quoting Fed. R. Evid. 103(a)); *see also* Fed. R. Civ. P. 61. The movant must also either (1) timely object; or (2) if evidence was excluded, make an offer of proof. Fed. R. Evid. 103(a). Hytera has not come close to meeting those standards.

### A.  The Court's Treatment of Expert Testimony Was Proper

#### 1.  The Court Did Not Err In Allowing Both Parties' Experts To Testify

This Court has already considered and rejected Hytera's arguments regarding Drs. Wicker and Rangan, and Mr. Malackowski, which rehashes Hytera's denied *Daubert* motions. *See* Dkt. 637 (denied at Tr. 1810:7-9, 2207:5-22), Dkt. 640 (denied at Tr. 2194:2-11). No legal authority supports Hytera's argument to exclude expert testimony for "invad[ing] the province of the jury," (Dkt. 954 at 22); the sole legal authority cited by Hytera explains that "an expert *may* testify about an ultimate issue to be decided by a jury." *United States v. Pansier*, 576 F.3d 726, 737-38 (7th Cir. 2009) (emphasis added); *see also* Fed. R. Evid. 702.

*First*, Drs. Rangan and Wicker did not offer opinions on the mental states of Hytera engineers. Drs. Rangan and Wicker used their specialized scientific and technical knowledge[47] to

---

[47] The extensive credentials of Drs. Rangan and Wicker were unchallenged at trial. *See* Tr. 1132:17-

explain technical materials and industry practices to the jury to assist in understanding FPGAs, industry terms and standards, and exercising stock options.[48] *United States v. Vallone*, 2008 WL 516715, at *4 (N.D. Ill. Feb. 21, 2008). Moreover, Hytera's experts provided rebuttal testimony to these points, and so there can be no prejudice.[49]

*Second*, Drs. Rangan and Wicker did not give overlapping testimony. Dr. Wicker testified about the copying of trade secrets and Dr. Rangan testified about the dissemination of the trade secrets through Hytera. *Compare* Tr. 1180:17-1452:1 *with* 1823:5-1882:5. And Hytera cites no legal authority prohibiting overlap or that it requires a new trial, and there can be no prejudice where Hytera itself presented significant overlapping testimony with its own technical experts.[50]

*Third*, Hytera's argument that Dr. Wicker admitted two trial exhibits inappropriately is incorrect: Dr. Wicker described his methodology, identifying the exhibits as summaries he created that show where admitted Hytera's code was identical to the admitted Motorola's code. Tr. 1433:6-1434:17. The exhibits were properly admitted under Fed. R. Evid. 1006. Tr. 599:25-601:8, 1370:2-3. Hytera had the opportunity to cross examine Dr. Wicker on these exhibits, and its arguments at best "go to the persuasiveness of the expert testimony, not its admissibility." *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 5645353, at *7 (N.D. Ill. Oct. 15, 2013).

*Fourth*, Dr. Wicker's rebuttal testimony was proper and in response to testimony Hytera proffered during its case. Tr. 5088:14-23 (responding to Ms. Frederiksen-Cross); 5123:17-25 (responding to Dr. Aron). Hytera, not Motorola, kept Dr. Wicker on the stand for testimony it now claims is repetitive: Dr. Wicker's rebuttal examination lasted 1.25 hours, while Hytera's cross-examination lasted 5 hours. *Compare* Tr. 5072:6-5138:5, *with* 5138:7-5273:24.

---

[48] *See, e.g.*, Tr. 1721:10-17, 1724:2-8, 1865:9-1874:9, 2100:8-20.
[49] *See, e.g.*, Tr. 4415:6-12, 4422:9-14, 4433:6-12, 4436:25-4438:11, 4642:14-20, 4654:5-13.
[50] For example, Messrs. Peck and Grimmett both testified at length about Hytera's same alleged DMR prototype development. *Compare, e.g.*, Tr. 2669:17-19 *with* Tr. 4281:7-12, 4282:3-7, 4299:22-4307:3.

1140:12 (Dr. Wicker), 1810:21-1821:15 (Dr. Rangan).

24

Finally, Hytera is wrong regarding Mr. Malackowski's testimony. Dkt. 954 at 23. The alleged "non-accused products" were accused. *See supra* § II.B.3. Mr. Malackowski did not give a legal opinion, but responded to Dr. Aron's testimony regarding how to apply a "head start" period, one of the issues that the jury had to decide during the case. Tr. 5374:11-5375:1. Hytera did not state an evidentiary basis for excluding PTX-2070, PTX-2071 or PTX-2072, which were all properly admitted under Rule 1006.[51] Tr. 2185:11-2186:17; 2193:17-2195:6; 2215:23-2216:17. Finally, Hytera's complaints about "errors and unsupported assumptions" do not establish any errors that were not harmless, and go to the weight of the evidence, not its admissibility. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010).

### 2. The Court Did Not Err In Its Treatment of Motorola Fact Witnesses

Hytera contends that the Court improperly qualified three Motorola employees as experts, Br. at 23, but it waived this argument by failing to object. *See BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1022–23 (N.D. Ill. 2010) (objection waived). The Court properly permitted these witnesses to utilize their specialized knowledge to provide context to their fact testimony regarding DMR radios and security procedures.[52] *See Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (qualifications appropriate with relevant expertise). Further, Hytera's criticisms lack merit. *First*, Motorola withdrew its question to Scott Shepard about industrial espionage, established foundation, and re-asked the question without objection. *Id.* at 538:12–21, 538:12–539:17. *Second*, Mr. Boerger's testimony was well within his personal knowledge, *id.* at 608:15–609:2; 576:12-21, 580:21-581:23, 585:24-608:14,

---

[51] Hytera itself admitted numerous substantive evidence as voluminous records. *See, e.g.*, Tr. 2397:18-2398:12, 3797:10-22, 4530:6-19, 4844:16-24.

[52] *See* Tr. 538:12-539:17 (Shepard), 608:15-609:14 (Boerger), 748:5-16 (Corretjer). Hytera was well aware of their knowledge, having deposed each witness for multiple days. And Motorola's pre-trial disclosures set out their expected testimony. *See* Ex. 4 (4/3/2019 Initial Disclosures) at 2-4, 9. Also, the witnesses were not "retained or specially employed to provide expert testimony," and were thus not required to submit a report. Fed. R. Civ. P. 26(a)(2)(B).

and confirmed by other witnesses without objection.[53] *Third*, Mr. Corretjer's testimony that engineers at different companies are unlikely to make the same code error was based on his significant experience and confirmed by Dr. Wicker. *Id.* at 748:5-16, 1351:3-16. Thus, not only was there no error, any error would have been harmless. *See United States v. Jett*, 908 F.3d 252, 270 (7th Cir. 2018) (limited testimony harmless error in light of other evidence).

### 3. The Court Properly Excluded Testimony About Motorola's Purported Public Disclosures

The lone case that Hytera cites to support its argument that "a trade-secret claim based on readily observable material is a bust," Dkt. 954 at 24 (citing *IDX*, 285 F.3d at 584), is irrelevant for the reasons described in § III.A above. Motorola established that the asserted trade secrets were kept secret and were not publicly disclosed. *See, e.g.*, § III.A. As an initial matter, the documents Hytera identified in its motion ***were*** admitted by Hytera and testified to, thus mooting this argument. *See, e.g.*, Tr. 310:14-314:19 (PTX-1525, DTX-4940 and DTX-4941), 1638:17-1645:4 (DTX-3703), 1687:23-1688:21 (DTX-3650), 1694:18-24. The Court only excluded Hytera's examination when it strayed into testimony that far exceeded the expertise of both Ms. Frederiksen-Cross and Mr. Grimmett, who are not experts in patents or copyrights, and Hytera failed to bring any experts with the proper experience to give this testimony. Tr. 3862:2-16, 3878:11-14, 4458:1-16; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993).

The testimony is also irrelevant: the patents and copyright deposits for Motorola's source code are not disclosures of the underlying trade secrets (*see, e.g.*, Tr. 1733:19-1735:5); at best, Hytera only argues they disclose only a miniscule fraction of the details contained in the stolen materials (Tr. 369:12-19, 1793:3-21), while the rest of Motorola's substantial source code and other material has remained confidential. The testimony is thus irrelevant, as "a trade secret can

---

[53] Tr. 3684:21-3687:6 (Rublaitus), 1249:3-10 (Wicker), 2156:21-24 (Malackowski).

be comprised of **both public and novel information**," *Syntex Ophthalmics*, 701 F.2d at 684 (emphasis added); *see supra*, § III.A. The jury was properly instructed regarding Hytera's allegations of public disclosures, (Dkt. 895 at 28 (Instruction No. 23)), and its complete verdict for Motorola confirms that the jury found all trade secrets were valid and misappropriated.

### 4. The Court Properly Limited Mr. Grimmett's Testimony

The Court allowed substantial testimony from Mr. Grimmett regarding Hytera's statute of limitations defense, including testimony about post-departure diligence (*e.g.*, Tr. 4524:10-23), when Motorola should have pulled the COMPASS logs (*e.g.*, Tr. 4528:1-4529:17), security measures that Motorola should have used (*e.g.*, Tr. 4527:3-25), and that Motorola would have taken "legal action" had it checked the COMPASS logs earlier (*e.g.*, Tr. 4594:7-20). The Court precluded Mr. Grimmett only from testifying that Motorola "should have filed this lawsuit before 2017," which requires a legal, not technical, understanding of the requirements for filing a lawsuit. Tr. 4767:19-4769:10. As Mr. Grimmett admitted, he has no legal training and knows nothing of the requirements to file a lawsuit. Tr. 4766:16-4767:6. Accordingly, under Mr. Grimmett's own admissions, the Court properly narrowly excluded Mr. Grimmett's legal conclusions regarding the statute of limitations, but left in place his technical and industry-based analysis regarding investigations into the theft conducted by Hytera's engineers. *Daubert*, 509 U.S. at 589-91. Once Hytera's counsel clarified that he was not asking about Motorola's decision to file a lawsuit, but only "about what information was technically available to Motorola" in relation to Hytera's statute of limitations defense, the Court permitted continued testimony on the statute of limitations. Tr. 4792:2-25. Accordingly, the jury heard and evaluated Mr. Grimmett's proper statute of limitations testimony, yet still found for Motorola. Verdict Form at 1. Hytera's motion on this ground should be denied. *Moore v. Tuelja*, 546 F.3d 423, 427 (2008).

### 5. The Court Did Allow Testimony Comparing Motorola's Technology

**To Other Companies' Implementations**

Although Hytera raises subsection V.A.5 in connection with Motorola's "trade secrets" (plural), Hytera in actuality only addresses a single piece of evidence relating to a single trade secret. Specifically, Hytera argues that Mr. Grimmett was precluded from testifying that "Motorola's noise suppression was not special," and that "it is actually worse than that offered by other manufacturers." Br. at 27. Hytera is incorrect: Mr. Grimmett *did* provide that testimony, without objection from the Court or Motorola. Mr. Grimmett testified at length using a prerecorded audio-visual presentation, where Mr. Grimmett described an undisclosed "test" comparing Motorola's high-end DMR noise suppression technology with that of Simoco's low-end products. Tr. 4452:25-4454:9. Mr. Grimmett testified that he believed the test showed Motorola's noise suppression technology was "very similar" to the low-end technology produced by Simoco, and that Motorola's technology was "just nowhere near as good as what we heard" on another radio. *Id.* at 4453:18-21; 4454:5-7; *see also id.* at 4446:2-5 (same). The Court only interjected when Mr. Grimmett strayed too far into how noise suppression works at *other companies* not at issue in this litigation. That issue is irrelevant here, as a trade secret need not be the best on the market nor "reach the level of invention necessary to warrant patent protection." *See, e.g.*, *Minnesota Mining & Mfg. Co.*, 259 F.3d at 595. Mr. Grimmett was given ample opportunity to testify to his opinion that Motorola's noise suppression technology was "nothing special"; that the jury did not credit that testimony is not a basis for a new trial.[54]

### 6. The Court Properly Denied Hytera's Request for a Sur-Rebuttal

The Court properly denied Hytera's request to present additional testimony from its damages expert Debra Aron in surrebuttal "[i]n view of the totality of the evidence[,] the length

---

[54] Indeed, the jury did not credit this testimony because Mr. Grimmett later contradicted himself on cross-examination, conceding that "it took Motorola *a lot of effort* to create" the trade secret materials, that "[a] lot of that material is stuff that is *secret to Motorola*," and that "*those secret technologies . . . give [Motorola] competitive advantages in the marketplace.*" Tr. 4771:3-13 (emphasis added).

of the trial and the nature of the issues that would be raised on surrebuttal, the motion to present a surrebuttal witness is denied." *Id.* at 5339:12–17. Hytera identifies no reason to revisit that discretionary ruling. *US v. Mitan*, 966 F.2d 1165, 1177 (7th Cir. 1992) (affirming denial of surrebuttal where "[t]he trial court carefully reviewed the circumstances surrounding the proffer"). Although Hytera claimed Dr. Aron needed to address Mr. Malackowski's summation of his damages calculations to include mobile-radio profits, Hytera never explained "how [the] proposed testimony was going to be materially different from that previously admitted." Tr. 5339:8–11; *Gavenda v. Orleans Cty.*, 2000 WL 1375590, at *7 (W.D.N.Y. Sept. 21, 2000). Accordingly, after a three-plus-month trial, the Court appropriately denied Hytera's request.

### 7. The Court Treated The Parties' Witnesses Fairly

Hytera did not object to the Court's questions or comments to Hytera's witnesses. Br. at 28-29. Accordingly, these after-the-fact objections are waived. *See* Fed. R. Evid. 614(c); *United States. v. Serola*, 767 F.2d 364, 372 (7th Cir. 1985). In any event, "[a] new trial is warranted only when the Court exhibits 'a high degree of favoritism or antagonism'", *UnitedStates. v. Betts-Gaston*, 142 F.Supp.3d 716, 744 (N.D. Ill. 2015) (citation omitted), and even "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). The Court was consistently even-handed in its treatment of witnesses, frequently accommodating Hytera's witnesses *sua sponte* in ways that exceeded even the even-handed care shown to Motorola's witnesses.[55] In response to Hytera's bullet-pointed summary:

- The Court's limitations on both parties' experts were appropriate, *supra* §§ VI.A.1, 3-5, consistent with the Court's gatekeeping duties under *Daubert* and Fed. R. Evid. 403. There was no error or prejudice with regard to Motorola's fact witnesses under Fed. R. Evid. 702, *supra* § VI.A.2. Hytera never sought to qualify its own fact witnesses under Fed. R. Evid.

---

[55] *See, e.g.*, Tr. 2499:1-5 (offering Hytera witness opportunities to add to answers during cross-examination); *see also id.* 3196:17-18, 3320:22-25, 3327:23-24, 3328:6-10, 3540:14-16, 3542:19-3544:19; 2765:4-18, 3002:13-3003:4, 3100:20-21, 3364:12-3365:8.

702, nor did Motorola object to the scope of those witnesses' testimony, and so Hytera cannot identify any instances where it suffered prejudice or preclusion of testimony.

- The Court's questions about Mr. Grimmett's methodologies were appropriate and permissible aspects of the Court's gatekeeping responsibilities under Fed. R. Evid. 403, 614(b), and 702. Unlike Dr. Rangan, who presented his methodology *before* presenting his conclusions about development times, Tr. 1926:3-20, Mr. Grimmett merely alluded to using "standard metric methodologies" used by some unidentified "contemporaries" including unnamed "CTOs of businesses, project managers, technical experts," which can be found reduced to writing in some unidentified "papers and books" *after* expressing his opinion and only in response to the Court's warranted questions. Tr. 4557:3-4559:8; *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997).[56]

- The Court's reference to "a little irritation" had nothing to do with Hytera's expert Ms. Fredericksen-Cross, but with lax questioning from attorneys. The Court explained he showed "a little irritation" towards the use of casual language in attorneys' questions,  such as starting questions with "We talked about. . . .," which the Court explained "works against the formality of the proceedings." Tr. 3986:13-24. The Court likewise asked that Motorola's attorneys maintain formality and refrain from, *inter alia*, using the words like "I," "possible," and other terms.[57] Maintaining the decorum of the courtroom, particularly as applied equally against both parties as here, is well within the Court's duties and caused no prejudice to Hytera. *United States v. Young*, 470 U.S. 1, 10–11, 105 S.Ct. 1038 (1985). The Court's other interjections were either to give Ms. Frederiksen-Cross an opportunity to change her testimony where she requested a change (Tr. 3890:11-21), repeat an answer that the Court was inaudible to the Court (Tr. 3976:24-3977:17), or explain the bases of her opinions (Tr. 3967:16-3968:18). In any event, Hytera should not blame the Court for any prejudice that Ms. Frederiksen-Cross may have caused to herself, when she admitted during cross examination that the methodology behind her entire analysis "can be viewed as ***professional malpractice***" in the very same situations at issue in the present case. Tr. 4125:6-4138:23.

- Hytera argues that the "Court limited Hytera's expert testimony but not Motorola's" by "admonish[ing]" counsel to avoid repetition. Br. at 29. But "[a] district judge is free to interject . . . to encourage an examining attorney to get to the point." *United States v. Washington*, 417 F.3d 780, 783-84 (7th Cir. 2005) (citation omitted). Periodic requests over the ***three-month trial*** for counsel to move along was not uncalled for nor one-sided—Motorola's counsel was likewise asked to move on and admonished for redundancy during its own examinations. *E.g.* Tr. 1393:3-4, 1426:14, 2224:20-21, 3348:20-21, 3536:10-3539:3, 3547:20-25. Nor was the allowance of slight overlap in exhibits used by Motorola's experts one-sided—two of Hytera's expert witnesses testified at length about the same prototype Hytera allegedly developed. *Compare, e.g.*, Tr. 2669:17-19 (Mr. Peck) *with* Tr. 4282:3-7, 4299:22-4307:3 (Mr. Grimmett). Like its other claims of prejudice, Hytera's accusations not only fall flat, but highlight the Court's even-handed, reasoned judgments at trial.

## B.     The Court Did Not Make Evidentiary Errors Warranting a New Trial

### 1.     The Court Property Admitted Fifth Amendment Testimony

Hytera does not dispute that G.S. Kok, Y.T. Kok, and Sam Chia's Fifth Amendment

invocations are relevant. And it fails to identify a single problematic invocation, which is fatal to

---

[56] *Compare* Tr. 4557:2-4561:17 (Court's inquiry) *with Daubert,* 509 U.S. at 592-94.

[57] Tr. 1221:6-7, 1251:19-22, 1283:23-25, 1368:10-13, 1708:3-4, 1824:12-25, 1923:21-22, 3316:4-5.

its argument. Instead, Hytera argues that the "inference Motorola sought lacked any basis." Br. at 30. But the Court instructed the jury, using *Hytera's* Instruction No. 16, that it could only draw inferences if "justified by independent corroborating evidence."[58] Dkt. 895 at 19. If Hytera believes an improper inference was drawn, it must show that "the result reached was inconsistent with substantial justice." *Johnson*, 2012 WL 638731, at *4. It has not. Nor can Hytera identify an element of a claim or defense for which this is the only inference, and thus cannot justify a new trial. Hytera also contends that Motorola failed to "justify the imputation of the negative inference." Br. at 30. But all factors for imputation are met. *State Farm Mut. Auto. Ins. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (citations omitted) (listing factors). Messrs. Kok, Kok, and Chia were central to this litigation. Their invocations advanced their interest and Hytera's by shielding facts. They were loyal to and controlled by Hytera; Hytera paid for their attorney.[59] Their substantial severances further evidence their close relationship. DTX-5037. Ultimately, this was a factual issue properly put to the jury, which was instructed it "may" but "need not, infer" the answers "would have been adverse to" Hytera. Dkt. 895 at 21. Further, Hytera waived any objection to Motorola's references to this testimony. *See Doe By & Through G.S. v. Johnson*, 52 F.3d 1448, 1464–65 (7th Cir. 1995).[60]

---

[58] Such evidence existed here: Y.T. Kok and Sam Chia stole Motorola's files, Dkt. 766-1 at 187:9-16, 191:15-22; Dkt. 766-3 at 253:5-14, 264:13-19, 266:4-11, 254:23-255:4, 261:24-262:4, 262:9-12, 263:6-9, 268:7-10, 268:23-269:2; *see also* Tr. 4593:14-15; 4669:21-4670:1 (Grimmett admitting they stole "a huge amount of documents" and acquired "a good portion" of Motorola's code); (2) G.S. Kok, Y.T. Kok, and Sam Chia used Motorola's confidential files to develop Hytera's DMR products, Dkt. 766-3 at 238:7-9, 248:13-16, 284:20-22, 285:15-17); *see also* Tr. 4605:3-5, 4689:9-12 (Grimmett admitting "Hytera did use part" of the trade secrets), 3970:15-21 (Frederiksen-Cross admitting Hytera used code), 2480:10-15 (Sun same), 3162:7-12, 3169:9-13 (Luo: same), 2883:19-2884:6 (Yang: same); (3) they deleted stolen files to conceal their theft, Dkt. 766-3 at 249:15-16, 249:20-21, 250:2-5, 270:23-25, 272:4-7; *see also* Tr. 3214:12-3215:9 (Sam Chia), 3217:7-15 (Peiyi Huang); and (4) Hytera management, including Chairman Chen, knew of the theft, Dkt. 766-3 at 263:14-263:18, 264:20-22, 265:2-3, 265:19-266:11; Dkt. 766-2 at 127:7-18, 132:15-21; *see also* Tr. 1470:1-18, 1159:22-1161:17, 1823:18-1841:18, 1843:24-1881:12.
[59] Dkt. 766-1 at 8:8-9, 230:18-22; Dkt. 766-2 at 65:7-10, 184:8-15, 186:12-187:3; Dkt. 766-3 at 25:19-20.
[60] Any argument that the invocations should have been excluded as cumulative of other evidence would fly in the face of the corroborating evidence requirement. *See Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986) (invocations admitted; record was "replete" with other evidence).

### 2. Hytera's Foundation Objections Are Meritless.

Hytera's hodgepodge of grievances concerning the admission of Hytera-produced documents and depositions lacks merit. *First*, while Hytera argues that "internal Hytera documents" should have been admitted "through a Hytera fact witness" instead of Motorola's expert Dr. Wicker, Br. at 31, Hytera concedes the documents were admissible. Hytera's complaint that Dr. Wicker "lacked personal knowledge" ignores that the need for personal knowledge "does not apply to a witness's expert testimony." Fed. R. Evid. 602.[61] Hytera also is wrong that Dr. Wicker left a "false impression" that Huang Peiyi's laptop was shared, Br. at 31; Hytera's own witness testified consistently with Dr. Wicker. Tr. 3219:17-24 ("'Share in the DMR software development.'"). *Second*, Hytera waived its objection to DTX-5145. *Walker v. Groot*, 867 F.3d 799, 805 (7th Cir. 2017). And Mr. Luo had the requisite knowledge; he was "in charge of trying to investigate" Hytera's theft, testified that Hytera "got a list" of accused files in "September 2018," and confirmed that DTX-5145 was that list. Tr. 3134:22–3136:15, 3191:9–3195:19. *Third*, Hytera agreed that evidence from the related Ohio case could be presented here.[62] Testimony from Hytera's President of North America Andrew Yuan and Vice President of Sales Steve Cragg also is admissible under Federal Rule of Evidence 804(b)(1) and Federal Rules of Civil Procedure 32(a)(3)-(4) because Hytera questioned them and they were Hytera officers and/or 30(b)(6) designees. Dkt. 766-8 at 22:25-23-8; Dkt. 766-9 at 23:4-6. *Finally*, Hytera's complaint that Motorola violated the parties' trial procedure stipulation is meritless. Br. at 31-32. The stipulation expressly excluded cross exhibits from disclosure requirements. Dkt. 729 at 5; Tr. 2936:8–14. Hytera did not object to "late" disclosures while the depositions played,

---

[61] In *Island Intellectual*, experts were precluded from giving "lengthy narratives," which Dr. Wicker did not do. *Island Intell. Prop. LLC v. Deutsche Bank AG,* 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012).
[62] Tr. 2134:15–2136:3. While Hytera represented the agreement was signed by "separate counsel," *id*. 2135:3-10, the stipulation is signed by Steptoe trial counsel. Ex. 5 (Ohio Dkt. 73) at 5.

and identifies no prejudice from them. Tr. 970:12–973:16.

### 3. The Court Properly Admitted Hytera's Extensive History of Lying.

Hytera challenges Jue Liang's testimony that Hytera advised its employees to "act in a dishonest manner to US [visa] agents," Dkt. 766-4 at 39:14-19; PTX-1075 at 4128-29; that there are "exceptions to the principle of always telling the truth at Hytera," Dkt. 766-4 at 31:23-32:15; and that he personally believes the truth need not be told "in every case," *id.* at 36:3-36:25. This testimony is admissible under Fed. R. Civ. P. 608 as it is relevant to his and other employees' character for untruthfulness. *See Bonilla v. Jaronczyk*, 354 F. App'x 579, 583 (2d Cir. 2009) ("use of false papers" to reenter United States admissible). While Hytera worries that this evidence suggests it is untruthful, "Rule 608 specifically contemplates the use of such evidence for precisely that purpose." *Stegall v. Berryhill,* 2018 WL 2332460, at *6 (N.D. Ill. May 23, 2018). Regardless, Hytera cannot shown that admission of this testimony was not harmless.

### 4. Motorola's Closing Argument Was Proper.

While Hytera contends Motorola "ask[ed] the jury to award damages amounts that were not presented during the trial and not supported by the evidence," Br. at 32, the Court has already found that the evidence supported the damages request. Tr. 5558:11–5560:11.[63] During closing, Motorola made proper "arguments based on reasonable inferences from evidence that was presented." *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 569 (7th Cir. 2015). After Hytera declined to criticize Motorola's calculations in its closing, it cannot do so now. Hytera's other complaint—that Motorola's reference to "the laws of this country" was "anti-China rhetoric," Br. at 33—is absurd. Hytera waived its objection by not raising it during closing. *See Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008). Further, Motorola's single reference to the

---

[63] Tr. 2191:25–2192:4, 2198:9–20, 5383:4–9, 5394:25–5395:2, 5395:11–5397:6 (Malackowski testimony re: mobile radios); DTX-4057 & PTX-2226 (Hytera's annual revenues); PTX-2071; Tr. 2195:8–2198:8 (calculations of Hytera's profits and margins), 4877:4-10 (Hytera's testimony re damages calculation), 5389:18-22 (Motorola testimony re worldwide copyright damages).

U.S. laws in a court proceeding about those laws during a four-and-a-half hour closing is not anti-anything rhetoric or "one of those rare cases" where a new trial is warranted. *See Miksis v. Howard*, 106 F.3d 754, 764 (7th Cir. 1997) (no new trial despite misconduct during closing); *see also Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 549324, at *13-14 (N.D. Cal. Feb. 7, 2014) (no new trial because "American-versus-non-American theme . . . did not permeate" trial).

### 5. The Jurors Were Properly Vetted for Bias During *Voir Dire*.

Hytera's contention that prospective jurors were not properly vetted on their anti-China bias is belied by its own admission that "potential jurors responded to the general questioning about anti-China bias." Br. at 33. Whether different questions "might have provided further insights" does not warrant a new trial. *United States v. Jones*, 188 F.3d 773, 778 (7th Cir. 1999). Hytera's claim that admonishing one prospective juror who admitted bias quelled others, Br. at 33, is directly contradicted (and shown to be wrong) by ***another prospective juror*** who later admitted bias. Thus, the *voir dire* "atmosphere" obviously was not "so oppressive" that jurors "did not feel comfortable airing unpopular views." *United States v. Hill*, 552 F.3d 541, 548 (7th Cir. 2008). Hytera's speculation that bias caused the "brief" deliberations, Br. at 33, again evidences Hytera's own refusal to take responsibility and also does not warrant a new trial. *See Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 387 (7th Cir. 2011) (speculation insufficient); *see also U.S. ex rel. Porter v. Warden Pontiac Correctional Ctr.*, 1996 WL 167340, at *6 (N.D. Ill. Apr. 4, 1996) (Norgle, J.), *aff'd sub nom. Porter v. Gramley*, 112 F.3d 1308 (7th Cir. 1997) (same); *Mitchell v. Belchor*, 2014 WL 3805771, at *3 (N.D. Ill. July 31, 2014) (same).

### C. The Alleged Errors Do Not Warrant a New Trial

None of the Court's rulings during trial were erroneous. But "even if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged." *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d

933, 942 (7th Cir. 2001). Given the overwhelming evidence against Hytera, it cannot—and does not even attempt to—show that the end result of the trial would have changed absent the alleged errors. This case is nothing like *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, where the trial was "infected with the appearance of partiality by the trial judge" who cross-examined its witnesses in a "consistently derisive" manner, including suggesting that one witness had been "coached" and stating the "Court doesn't accept" that the witness properly preserved evidence. 174 F.3d 801, 8058-06, 808 (6th Cir. 1999), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009). Here, the Court not only remained impartial but reminded the jury that they were to "determine the credibility of any and all witnesses." Tr. 3002:13-19.

## VII.    THE JURY INSTRUCTIONS WERE PROPER

### A.    The Court Properly Instructed the Jury on Fraudulent Concealment

Hytera asserts that the fraudulent concealment instruction was irrelevant because Motorola allegedly "had countless suspicions of Hytera that began in 2008," as well as the ability to "pull Compass logs." Br. at 34. Hytera's only support is its motion for directed verdict, Dkt. 842, which it improperly attempts to incorporate by reference. *Id.*; *see also* § II.C. But the Court has already rejected this argument three times. *See* Dkt. 435, Dkt. 762, Tr. 2346:9-12, Dkt. 946. As Motorola explained (Dkt. 874 at 10-13), none of the pre-2012 circumstances Hytera identified concerned theft of the trade secrets at issue here.[64] Even if Hytera were correct that Motorola "suspected" trade secret misappropriation—it did not—that is irrelevant, because mere "suspicions" are insufficient to show that a party knew or reasonably should have known of an injury. *See LaManna v. G.D. Searle & Co.*, 561 N.E.2d 1170, 1175 (1990) ("Plainly, suspicion is not the same as reasonably knowing."); *see also* Tr. 5542:17-18 (Hytera's counsel: "Hytera's

---

[64] *See* Tr. 240:8-16, 245:23-246:3, 351:23-25, 353:8-354:8, 512:10-23; *see also id*. at 354:10-355:7, 355:21-25, 356:23-357:2, 949:1-10, 1020:24-1021:13, 1025:19-1027:20, 1047:9-21, 1055:25-1056:24, 1067:21-1068:3; DTX-4565.

position is not simply that suspicions would be enough here….”). Because it is undisputed that Hytera rewrote the stolen source code to avoid detection,[65] the fraudulent concealment instruction was appropriate.[66] *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1372 (7th Cir. 1995).

### B. The Court Properly Instructed the Jury on Spoliation of Evidence

Hytera alleges that Instruction No. 15 “improperly instructed the jury on spoliation of evidence” because it “enabled the jury to draw adverse inferences against Hytera for files that went missing … before the lawsuit was filed.”[67] Br. at 35. The Court, however, gave Hytera’s “contingent instruction,” which did not limit spoliation to after the case was filed. Tr. 5505:25–5516:8. Hytera cannot now argue that its own proposed instruction was erroneous. *See United States v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009). Even if the Court considers Hytera’s protestation about its own instruction, Motorola presented substantial evidence demonstrating that Hytera’s destruction and concealment of evidence before the lawsuit was filed was done in bad faith. At the time they deleted evidence of their theft, Sam Chia and Peiyi Huang were Hytera employees and aware that a lawsuit could be filed if Motorola discovered the theft, and embarked on a scheme to destroy evidence. In June 2008, G.S. Kok wrote to Sam Chia and other Hytera employees that they needed to “re-write softwares to look different from Motorola” in order to “protect the company from ***impending law suits***.”[68] Fully aware of a potential “impending” lawsuit, Peiyi Huang and Sam Chia deleted evidence of misappropriation to conceal their theft.[69] Thus, Hytera did not “demonstrate[] good faith in its document production,”

---

[65] PTX-18; PTX-19; Tr. 1196:11-1197:22.

[66] *See* 735 ILCS 5/13-215; *Henderson Square Condo. Ass’n v. LAB Townhomes, LLC*, 46 N.E. 3d 706, 716 (2015); *Zirvi v. Flatley*, 2020 WL 208820, at *6 (S.D.N.Y. Jan. 14, 2020).

[67] Hytera does not dispute that there was *also* significant evidence of post-complaint spoliation to support an adverse inference. *See, e.g.*, Tr. 3263:20-23 (laptop reformatted); *id.* at 3259:14-3261:13 (laptop missing); *Buonaura v. City of Berwyn*, 2011 WL 3754820, at *12 (N.D. Ill. Aug. 25, 2011).

[68] PTX-19 at 2 (emphasis added); *see also* PTX-263 at row 38, Tr. 1204:8-1207:22.

[69] Tr. 1365:7-19, 1367:5-16, 1467:12-20, 1481:22-25, 1572:17-1573:7, 3213:12-3215:9 3216:8-23, 3242:4-17 (testimony related to destruction of evidence); *id.* at 1154:23-1155:25 (discussing rebranding

Br. at 35, and an adverse inference instruction was unquestionably proper. *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 272 (7th Cir. 1993) ("[I]f, being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence.").

### C.     The Court's Instructions on Extraterritoriality Were Correct

Hytera re-argues that Motorola's claims do not apply extraterritorially (Br. at 36), but its only support is the incorporation of its prior briefing on extraterritoriality, which is improper and should be stricken. *Id; see* § II.C. The Court's instruction accurately stated the law. *First*, Hytera incurred avoided R&D for products released after May 11, 2016, and thus Motorola sought the full amount of "unjust enrichment" for those products, Dkt. 834; Tr. at 5364:9-5365:15. *Second*, while Hytera now claims the jury should have been instructed that no damages were available under the ITSA, its own alternative proposal is precisely what the Court instructed. *Compare* Dkt. 860 at 5 *with* Dkt. 895 at 38. *Finally*, the jury was properly instructed that it could award worldwide damages under the DTSA if it concluded "an act in furtherance of the misappropriation was committed in the United States." Dkt. 895 at 38; Dkt. 834 at 23. Hytera does not dispute that such an act was committed. Dkt. 834 at 15–17; Dkt. 884.

### D.     The Court's Instruction on Statute of Limitations Was Correct

Hytera asserts that Instruction No. 27 led to an incorrect jury verdict. Br. at 36-37. But the Court's instruction accurately quoted 7th Circuit precedent, and Hytera does not contend otherwise. *See Sokol*, 15 F.3d at 1430 ("concerns and suspicions … do not start the clock of the statute of limitations."). Nor does Hytera assert that *Sokol* misstates the law. In any case, the instruction from *Sokol* is consistent with Hytera's assertions at trial, which were rejected by the

---

code, erasing documents, and losing laptops), 1157:2-17 (same); *id.* at 1549:7-14, 1839:9-1840:4, 4406:11-22, 4796:22-4797:4; Yuan: 3559:11-15; PTX-263; PTX-47 ("sensitive relationship" with Motorola code); PTX-46 (rebranding).

jury. Likewise, the given instruction did not misstate the burden. Br. at 37. Other than the inclusion of the quotation from *Sokol*, discussed above, the parties *agreed* on the form of the instruction (Tr. 5572:11-5575:12). *DiSantis*, 565 F.3d at 361. Hytera agreed that it had the burden to prove statute of limitations. Tr. 5524:5-6. The fraudulent concealment instruction set out that it was *Motorola's* burden by clear and convincing evidence to show that it could not have discovered its cause of action earlier due to Hytera's concealment.[70] *Id.* at 5942:5-19.

### E.    The Court's Instruction on *Respondeat Superior* Was Correct

Hytera contends the Court erred by failing to give Hytera's proffered instruction on *respondeat superior*, Br. at 37 (citing Ex. 7), but its proposed instruction is consistent with how the jury was instructed. *Compare id. with* Dkt. 895 at 24. Indeed, the given instruction imposed a higher standard than what Hytera proposed, and Hytera did not argue on JMOL or otherwise that the jury's decision on this issue was not supported by substantial evidence. The *respondeat superior* instruction is no reason to order a new trial. *Cf. DiSantis*, 565 F.3d at 361.

### F.    There Were No Additional Instruction Errors

Hytera asserts that the jury should have considered Hytera's equitable defense of laches regarding Motorola's disgorgement and unjust enrichment damages claims. Br. at 38. But laches does not apply when a claim for damages is brought in the time allowed by a statute of limitations. *See Petrella*, 572 U.S. at 663; *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017). The DTSA and ITSA each have statute of limitations provisions, thus precluding laches. Laches also fails because it is based entirely on facts the jury resolved against Hytera. *See* § III.B. The Court thus acted well in its discretion not to request an advisory verdict on laches. Hytera also repeats three additional purported errors addressed in §§

---

[70] Hytera's cited case, *Cathedral of Joy Baptist Church v. Vill, of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994) is inapposite, as it deals with the common law "discovery rule" in a case under 42 U.S.C. § 1983, and does not address the DTSA or ITSA provisions at issue here.

V.B.1 (Fifth Amendment), III (copyright issues), and I.E-F (extraterritoriality) of Hytera's brief

(Br. at 38); these issues are addressed in §§ VI.B.1., IV., and II.C. of Motorola's brief.

## VIII. A NEW TRIAL ON DAMAGES IS NOT WARRANTED AND THE JURY'S AWARD SHOULD NOT BE REDUCED

No reason exists to grant a new trial on damages.[71] The jury's award of avoided R&D

and Hytera's profits was not excessive, much less "monstrously." Hytera committed a wholesale

theft of Motorola's entire body for source code for its DMR products and thousands of

confidential DMR-related documents.[72] The jury's award of Hytera's avoided R&D was

premised on extensive testimony concerning the amount of time it took Motorola to develop the

Asserted Trade Secrets and testimony concerning Motorola's and Hytera's cost-per engineer. Tr.

2185:18–2189:20; § II.B.1, *supra*. The jury's award of Hytera's profits was likewise based on

substantial testimony concerning Hytera's revenues from the Accused Products (an amount

Hytera does not dispute) and how to arrive at the appropriate profit margin. Tr. at 2189:21–

2200:11; § II.B.1, *supra*. Hytera nonetheless objects because the damages purportedly exceeds

Hytera's total profits from 2010-2019. Br. at 39. Hytera made that argument to the jury, Tr.

4835:13–4836:15, and the jury rejected it based on the evidence presented regarding Hytera's

use of its $734 million in accused revenues "to make acquisitions to enhance its competitive

position."[73] *Id.* at 5343:18–5344:3, 5349-5351; *see also* PTX-968. Even Hytera's expert did not

deduct Hytera's expenditures in calculating Hytera's ill-gotten profits. Tr. 4837:16–4840:14.

---

[71] In deciding whether to award a new trial on damages or remittitur, courts consider whether (1) award is "monstrously excessive"; (2) no "rational connection between award" and facts exists, and (3) award "is roughly comparable to other cases". *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016).

[72] Tr. 1326:23-1328:21, 1843:24-1844:13 (Rangan: Hytera in possession of at least 1,600 Motorola confidential documents), 2480:10-15 (Sun: Hytera using Motorola code), 2830:8-17 (Yang: Hytera's products contain Motorola source code and Hytera has confidential Motorola documents; PTX-147.

[73] The cases Hytera cites do not hold a company's profits are a ceiling on damages. Rather, they relate to remittitur in emotional-distress cases, which, unlike profits calculated from a company's sales data, are attributed to "intangible harms. *See Bennett v. Smith*, 2000 WL 1849029, at *8 (N.D. Ill. Dec. 18, 2000). Indeed, courts in the context of copyright infringement have held that "[d]efendants cannot limit the amount at issue in the underlying claim to the profits they received. . . ." *Owners Ins. Co. v. Cruz Accessories*, 2018 WL 902290, at *2 (D.S.C. Feb. 15, 2018).

*Second*, the jury's award is rationally connected to the evidence presented. Hytera repeats its JMOL arguments to argue the jury's verdict "exceeds the amount needed to make Motorola whole," Br. at 39–40, but those arguments lack merit as explained in §§ II.B.

*Third*, the damages award in this case is comparable to other, similar cases. Here, Hytera indisputably sold the accused products for nearly ten years, continued to sell the accused products after they were sued, and made $734.1 million in revenue on those products. Tr. 2191:23-2192:7. Courts have upheld jury verdicts in trade secret cases with a similar breadth of theft for amounts far greater than the $345 million awarded in this case.[74] *See, e.g., E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 2012 WL 1202485, at *1 (E.D. Va. Apr. 10, 2012) ($919.9 million compensatory damages verdict in trade secret misappropriation case).

*Finally*, no portion of the jury's damages award should be remitted. Hytera contends that the disgorgement of its profits, in whole or in part, should be remitted. Br. at 40. As explained in § II.B.2, the jury's damages verdict is supported by substantial evidence, Hytera assented to the jury instructions on damages, and Hytera points to nothing indicating that the great weight of the evidence is against the jury's verdict.[75] Thus, Hytera's "disagreement with a verdict amply supported by the evidence does not rebut the presumption that the jury followed its instructions, and thus does not warrant a new trial." *See Dyson*, 2019 WL 1454509, at *11.

## IX. CONCLUSION

Motorola requests the Court deny Hytera's Rule 50(b) and Rule (59) motions.

---

[74] Hytera's cherry-picked cases are inapposite. In *Bishop v. Wick*, the plaintiff had 13 customers and its license fees were between $10,000 and $15,000. 1988 WL 166652, at *1 (N.D. Ill. Dec. 29, 1988). In *McRoberts*, the defendant only made $900,000 in profits from the accused products. 329 F.3d at 568

[75] Dkt. 895 at Instruction No. 42; *see* Dkt. 872 at 11 ("Hytera has removed the reference to profits attributable to other factors, inasmuch as it is redundant with the requirement that any unjust enrichment be as a result of any misappropriation."); *compare* Dkt. 690 ([Proposed] Final Pretrial Order (Joint)) at 77 (disputed jury instruction on a head start period) *with* Dkt. 895 (no head start instruction).

DATED: April 30, 2020                     Respectfully submitted,


                                          */s/ Justin Singh*_____
                                          Adam Alper (*admitted pro hac vice*)
                                          adam.alper@kirkland.com
                                          Akshay S. Deoras (*admitted pro hac vice*)
                                          akshay.deoras@kirkland.com
                                          Brandon H. Brown (IL Bar No. 266347 CA)
                                          brandon.brown@kirkland.com
                                          Barbara Barath (*admitted pro hac vice*)
                                          barbara.barath@kirkland.com
                                          Reza Dokhanchy (*admitted pro hac vice*)
                                          reza.dokhanchy@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          555 California Street
                                          San Francisco, CA 94104
                                          Telephone: (415) 439-1400
                                          Facsimile: (415) 439-1500


                                          Michael W. De Vries (*admitted pro hac vice*)
                                          michael.devries@kirkland.com
                                          Christopher Lawless (*admitted pro hac vice*)
                                          christopher.lawless@kirkland.com
                                          Justin Singh (*admitted pro hac vice*)
                                          justin.singh@kirkland.com
                                          Ali-Reza Boloori (*admitted pro hac vice*)
                                          ali-reza.boloori@kirkland.com
                                          Benjamin A. Herbert (*admitted pro hac vice*)
                                          benjamin.herbert@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          555 South Flower Street
                                          Los Angeles, CA 90071
                                          Telephone: (213) 680-8400
                                          Facsimile: (213) 680-8500


                                          David Rokach (IL SBN: 6279703)
                                          david.rokach@kirkland.com
                                          Megan M. New (IL SBN 6300422)
                                          megan.new@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, IL 60654
                                          Telephone: (312) 862-2000
                                          Facsimile: (312) 862-2200


                                          Leslie M. Schmidt (*admitted pro hac vice*)
                                          leslie.schmidt@kirkland.com
                                          Joshua L. Simmons (*admitted pro hac vice*)
                                          joshua.simmons@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue

New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for Plaintiffs
*Motorola Solutions, Inc. and Motorola*
*Solutions Malaysia SDN. BHD.*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin Singh, an attorney, hereby certify that on April 30, 2020, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  April 30, 2020

*/s/ Justin Singh*
Justin Singh