IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOROLA SOLUTIONS, INC., et al.,          )
                                            )
          Plaintiffs,                       )
                                            )          Civil Action No. 1:17-cv-1973
          v.                                )
                                            )
HYTERA COMMUNICATIONS CORP.                 )
LTD., et al.,                               )          Hon. Charles R. Norgle
                                            )
          Defendants.                       )

## ORDER

Defendants' Rule 50(b) motion for judgment as a matter of law and Rule 59 motion for a new trial and/or remittitur [953] is denied. The Court agrees with Defendants that the Copyright Act disgorgement and the DTSA unjust enrichment awards were equitable in nature, and the Court's findings of fact and conclusions of law on those issues will be set out in a separate Order consistent with the below. On those issues, the Court agrees with the jury's advisory verdict.

## STATEMENT

On November 6, 2019, a jury was selected for trial in this matter. Over the course of the next three-and-a-half months, the trial dealt with complex technological, factual, and legal issues. On February 14, 2020, the jury returned a verdict in favor of the Plaintiffs, Motorola Solutions Inc. and Motorola Solutions Malaysia SDN. BHD. (hereinafter "Motorola"), against the Defendants, Hytera America, Inc., Hytera Communications America (West), Inc., Hytera Communications Corporation Ltd. (hereinafter "Hytera"). The jury awarded to Motorola the full amount for which it had been permitted to argue—$345,761,156 in compensatory damages and $418,800,000 in punitive damages, for a total of $764,561,156. The jury deliberated for roughly two hours.

Both parties have filed numerous post-trial motions. The scheduling and ability for the parties to appear in court on these motions was and has been complicated by the COVID-19 pandemic. Hytera's motion pursuant to Fed. R. Civ. P. 50(b) and Rule 59 is the subject of this

Opinion. In its motion, Hytera argues that the Court made numerous errors related to the trial, ranging from actions taken at jury selection (which allowed the empanelment of an allegedly biased jury), substantive evidentiary decisions, administrative and procedural rulings, and others. Simply put, the Court disagrees, and Hytera has not met the high standard for judgment as a matter of law, or for a new trial, or for reconsideration of previous orders or remittitur under Rule 59(e). The jury and the Court were not biased, the procedures in this case were proper, the legal decisions were correct, the legal elements of Motorola's claims were met, and the jury returned a verdict and award that are proper under the law and supported by overwhelming evidence that was submitted at trial—evidence, the Court notes, which was robustly and meticulously challenged by skilled counsel for Hytera at each and every turn.

## I. BACKGROUND

Before engaging the substantive issues, a brief, high level background based on the evidence presented is provided. By no means does this background capture, or even attempt to capture, the full scope of the evidence presented at trial. Rather, the context is helpful in evaluating the more specific facts discussed in the analysis section of this Opinion.

For decades, dating back to the late 1980's and into the 2000's, Motorola developed technology to create certain specific digital radios. In 2006, internal Hytera documents submitted by Motorola showed that Hytera was having difficulty in creating comparable radios. In June 2007, the president of Hytera Chen Qingzhou reached out to Motorola engineer G.S. Kok, who worked for Motorola in Malaysia. Chen told Kok that he was looking to set up a potential research and development center for Hytera in Malaysia. In those discussions, Chen made clear to Kok that he was hoping to make Hytera a public company and have it listed on a stock exchange—referencing the NASDAQ in an early email. Shortly thereafter, Chen and Kok negotiated Kok's

departure from Motorola for Hytera. In one email, Chen offered Kok 600,000 shares in Hytera, which Chen referred to as "really a great amount of money."[1]

Shortly after Kok joined Hytera, Kok expressed in an email that he was surprised that even after Hytera had been working on the relevant digital radio project for three years, Hytera did "not even have a prototype." Kok then stated in an email that Hytera needed an "injection of subject matter experts" in order to leapfrog Motorola in that market. Shortly thereafter, Hytera hired two additional Motorola Malaysia engineers—Y.T. Kok and Sam Chia. The evidence at trial showed that Y.T. Kok and Sam Chia, between them, downloaded more than 10,000 technical documents from Motorola's secure database and brought them to Hytera. At the time of trial, Motorola argued that more than 1,600 of those documents were still within Hytera's databases. When Y.T. Kok was hired by Hytera, he initially maintained his employment with Motorola[2] while surreptitiously also working for Hytera.

In June 2008, shortly after the addition of Y.T. Kok and Sam Chia, several emails circulated within Hytera which the entire digital mobile radio ("DMR radio") group was copied on, including one with a list of questions about issues that needed to be resolved in order for Hytera to create a DMR radio. Chia forwarded one of those emails to Y.T. Kok and stated that he should focus on some of the specific questions. The same day, Y.T. Kok downloaded 50 technical documents from Motorola's database; the next day, he downloaded an additional 83; the third day, he downloaded 40 more. Again, in all, more than 10,000 technical documents were downloaded and brought to Hytera from Motorola.

---

[1] One Motorola expert witness quantified that amount as $2.5 million USD at the time Hytera eventually did go public.
[2] Y.T. Kok submitted a resignation letter to Motorola on September 4, 2008 with a resignation date of October 3, 2008.

Broadly, among the files taken were Motorola's source code for the DMR radio project. Segments of Motorola's source code were later directly inserted into Hytera's product. One exhibit at trial illustrated that in some cases misspelled words (which had no impact on the functionality of the code) appeared in both the Motorola code and the Hytera code. Additional evidence showed that at times Hytera re-wrote Motorola's code to conceal that it had been used. Motorola presented testimony and exhibits showing the code and Motorola technical documents being circulated among Hytera engineers, at times with the Motorola logo removed and replaced with a Hytera logo, and at times still labeled with Motorola's logo.

Eventually, Hytera developed a radio that was, as described at trial, functionally indistinguishable from the DMR radio developed by Motorola. Hytera sold that radio for years and, according to Motorola, continues selling the misappropriated trade secrets and infringing products to this day.

During trial, Hytera raised several factual defenses. First, Hytera argued that Motorola had not brought suit within the statute of limitations. Second, Hytera argued that G.S. Kok, Chia, and Y.T. Kok had essentially acted as rogue agents within Hytera and, instead of building off of the work Hytera had independently done, scrapped that work and used Motorola's technical information without wider knowledge of its use within the company. Throughout the trial, both Hytera and Motorola were very well represented by thorough and competent counsel, with dozens of lawyers present in court for both companies and specific lawyers handling specific witnesses or aspects of the case.

In the end, as noted above, the jury returned a verdict in favor of Motorola in all respects and awarded the maximum amount that Motorola had been allowed to argue for (a number dealt

with in greater detail below). The jury's verdict followed testimony by more than 40 witnesses, a handful of expert witnesses, and hundreds of exhibits admitted into evidence .

With the above high-level background in mind, the Court now turns to the arguments raised by Hytera in its motion.

## II. STANDARD OF REVIEW

Based on the Court's reading of Hytera's motion, Hytera raises three types of challenges to the trial: (1) matters it argues should result in judgment as a matter of law in its favor pursuant to Fed. R. Civ. P. 50(b); (2) matters it argues rendered the trial unfair and should result in a new trial pursuant to Fed. R. Civ. P. 59(a); and (3) challenges to previous legal rulings which it argues were incorrect and should result in a reduction of damages or other relief pursuant to Rule 59(e). Hytera also argues that the damages award should be reduced or reconsidered for several reasons.

Fed. R. Civ P. 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Pursuant to Rule 50(b), the Court took Hytera's previous Rule 50(a) motions under advisement and now addresses the legal issues raised in the renewed, joint motion together with its Rule 59 motion. Hytera's renewed motion was thus brought under Fed. R. Civ. P. 50(b).

With respect to the Rule 50 motion, the Court must "determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." Clarett v. Roberts, 657 F.3d 664, 674 (7th Cir. 2011). The Court will overturn a jury

5

verdict "only if no reasonable juror could have found in the [prevailing party's] favor." Id. (citing Erickson v. Wis. Dep't of Corr., 469 F.3d 600, 601 (7th Cir. 2006).

Fed. R. Civ. P. 59(a)(1) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"

As to Rule 59(a), "[a] new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Clarett, 657 F.3d at 674.

Fed. R. Civ. P. 59(e) states simply that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 59(e) motions "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." LB Credit Corp. v. Resolution Tr. Corp., 49 F.3d 1263, 1267 (7th Cir. 1995) (citing FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).

**III. ANALYSIS**

The analysis of Hytera's claims will proceed first with the Rule 50 arguments, second with the Rule 59(a) arguments, and third with the Rule 59(e) arguments. At times, arguments blend together or are presented as a ground for judgment as a matter of law or new trial, but the Court notes that even under the most deferential standard available to Hytera, its arguments would still be denied for the reasons stated below.

**A. Hytera's Rule 50 Motion for Judgment as a Matter of Law**

Hytera raises three distinct arguments claiming it is entitled to judgment as a matter of law: 1. Motorola has failed to satisfy the elements of a trade secret claim; 2. Motorola's trade secret claims are barred by the statute of limitations; and 3. Motorola has failed to state a copyright claim

for several reasons.  Hytera cannot overcome its high burden on any of these arguments, as the evidence presented supports the verdict.  The Court will not overturn the jury verdict unless no reasonable juror could have found in favor of Motorola, and Hytera cannot meet this burden given the evidence presented in this case.

### 1. Motorola has satisfied the elements of a trade secrets claim.

Hytera first argues that Motorola has failed to satisfy the elements of a trade secret claim. Hytera argues that Motorola has not proven the existence of protectable trade secrets because Motorola has not identified the trade secrets with sufficient specificity and because Motorola has failed to show that the materials were "sufficiently secret."  Dkt. 954 at 11-12 (citing IDX Systems Corp. v. Epic Sys. Corp., 285 F.3d 581 (7th Cir. 2002) and Mangren Research and Dev. Corp. v. Nat'l Chem. Co., 87 F.3d 937, 942 (7th Cir. 1996)).

The Court disagrees.  Motorola proceeded on a theory of a theft of 21 distinct trade secrets at trial.  For each alleged trade secret, Motorola tied certain documents to that specific trade secret and explained those documents through five fact witnesses and numerous experts across more than 25 hours of testimony.  Motorola's witnesses explained that these documents constituted the "playbook" by which the engineers built its two-way radio devices.  E.g. Tr. 723:16-724:5.  The fact witnesses and experts went into detail when explaining what was contained in each document and how the processes contained therein combined into a coherent whole to create the digital radio functionalities at issue in the trial.  E.g., Tr. 615:8-621:25, 625:7-626:19, 630:14-631:14, 706:6-707:2, 709:1-715:12, 716:10-717:2, 718:13-719:3, 739:9-740:15, 741:15-747:4.

In its presentation, Motorola has complied with and exceeded the standard set out in 3M v. Pribyl, 259 F.3d 587, 595-96 (7th Cir. 2001), which explains:

> In order to be considered a trade secret, a pattern, technique, or process need not reach the level of invention necessary to warrant

patent protection. A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret. See Syntex Ophthalmics Inc. v. Tsuetaki, 701 F.2d 677, 683 (7th Cir. 1983).

3M further instructs:

> [T]he [plaintiff] is seeking to prevent [defendant] from using and disclosing a process which it took the company six years and considerable income to perfect. These manuals and processes, even if comprised solely of materials available in the public domain, have been created by combining those materials into a unified system which is not readily ascertainable by other means. Thus, viewing the evidence in the light most favorable to [plaintiff], we believe there was sufficient evidence to support the jury's finding that [plaintiff] has a trade secret in the operating procedures, quality manuals, trade manuals, process standards and operator notes for using [plaintiff's] equipment that makes resin sheeting.

Id.

Moreover, IDX does not compel a contrary finding. The documents at issue in this case no doubt contained some public information, but the issue is not whether there "are a host of materials which would fall within the public domain[,]" but rather, when the documents are "collected and set out as a unified process, that compilation, if it meets the other qualifications, may be considered a trade secret[.]" Id.

Motorola illustrated at trial that the stolen confidential materials were the compilation of decades of engineering work that laid out the specific specifications as to how Motorola implemented types of functions within its radios. For example, as Motorola argues, the confidential testing specifications include excerpts from public radio standards before setting out in confidential detail the steps that Motorola takes to exceed those standards. PTX-127; Tr. 5119:14-5121:5. As Motorola points out, that document was one that was circulated within Hytera rebranded as a Hytera document.

8

These details are not akin to those the Seventh Circuit was concerned with in IDX, where the court noted that the claimed trade secrets included clearly observable features such as the appearance of data entry screens that "ordinary users of the software could observe without reverse engineering." IDX, 285 F.3d at 584. Rather, the documents at issue in this case dealt with highly complex and technical specifications, circuit diagrams, testing plans, and product source code. Essentially, the bundle of documents stolen and used by Hytera showed a step-by-step method to build Motorola's digital radios. This is akin to the theft alleged in 3M and is removed from the concerns raised in IDX. At trial, Motorola additionally discussed how those secrets combined to create a state-of-the-art digital radio that surpassed those of competitors.

Hytera argues that statements made about the superiority of Motorola's radios were puffery, citing to various statements by Motorola engineers. Those puffing statements, however, were made in the context of a specific discussion about the aspect of the technology being identified and often accompanied by a description of what specifically made Motorola's implementation of the technology better than the competitors. And in light of Motorola's market share, the jury could reasonably have drawn the inference that the implementation of these highly technical specifications—specifications which were stolen and circulated within Hytera—made the radios better.

Returning, then, to the standard under which a Rule 50 motion must be reviewed, Hytera cannot meet its high burden, and Motorola has provided a legally sufficient evidentiary basis to support the jury verdict on its trade secret claims.

Hytera next argues that Motorola failed to use reasonable security measures to protect its secrets. Hytera argues that Motorola allowed the stolen documents to be available to "everyone." Dkt. 954 at 14 (citing Tr. 521:18-524:14). This assertion is belied by the record at trial. Motorola's

Chief Information Officer testified, and was subject to rigorous cross examination, on this point, and his testimony was sufficient to support a finding by the jury that Motorola took sufficient steps to safeguard its technical documents. Motorola employees were subject to a confidentiality agreement. The database that contained the technical documents and source code was accessible only to certain Motorola employees. That certain internal documents did not contain the specific words "trade secret" on them was repeatedly raised at trial, and the jury was entitled to give appropriate weight to that argument and the others raised by Hytera. As such, the Court will not overturn the jury verdict on this point.

Next, Hytera argues that no reasonable jury could find that Hytera (beyond the former Motorolans) knew or should have known that it was selling misappropriated trade secrets in its DMR products. Hytera further argues that no evidence was presented that the two U.S. entities had any knowledge of the misappropriation. Evidence in the record, however, supports the jury's verdict on this point. First, the former Motorolans were senior management in the DMR development for Hytera. Moreover, emails suggested that Hytera's CEO and Vice President of Research and Development knew of the theft. See, e.g., Tr. 1848:5-1866:1, 1866:24-1868:15, 1869:21-25, 1870:12-1872:1, 1875:4-1876:21; PTX- 233, PTX-404, PTX-416, PTX-426, PTX-429; see also VP of R&D Pengfei Sun (Tr. 2480:8-2481:25); Jue Liang (PTX-100; Dkt 766, Ex. D (Liang Dep. Desig.) at 68:3-11); Yang (PTX-654; Tr. 5089:19- 5095:20); Qin Jun (PTX-573); Huang Ni (PTX-806); and others (PTX-47; PTX-530; Tr. 1359:13- 1363:22; id. 4153:9-22).

With respect to the American entities, Motorola presented evidence to suggest that after it became known that Hytera's DMR radios used stolen Motorola source code, Hytera's U.S. president stated that Hytera was not going to leave the DMR marketplace until it was "number one

in the DMR market." Tr. 3539:5-17, 3541:18-23. Hytera has not met its burden to be entitled to judgment as a matter of law on this point and the jury verdict will not be disturbed in the regard.

Finally, Hytera argues that it is entitled to judgment as a matter of law on its statute of limitations defense. Hytera incorporates by reference its previous arguments on this point and argues "Motorola had numerous reasons to suspect before March 2012 that its former employees had taken confidential materials with them to Hytera, and Motorola could have confirmed the existence of its claims before March 2014 by pulling Compass logs." Dkt. 954 at 23. Hytera argues that Motorola's fraudulent concealment argument fails as a matter of law.

Motorola argues, citing Sokol Crystal Prod., Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1430 (7th Cir. 1994) that "concerns and suspicions . . . do not start the clock on the statute of limitations." The Court agrees. Moreover, Motorola presented evidence related to the investigation it conducted, after which it concluded that no issue existed. Motorola provided sufficient facts to allow this question to go to the jury, and the jury was well informed of both party's arguments and found that it believed Hytera had concealed the theft. The legal instruction on this issue was correct, and Hytera has failed to show that no reasonable jury could find for Motorola on this point.

### 2. Motorola's copyright claim is supported by substantial evidence.

Hytera contends that it is entitled to judgment as a matter of law on Motorola's copyright claim for several reasons. First, Hytera argues that Motorola has failed to prove substantial similarities between the accused work and the copyrighted work. Specifically, Hytera argues that Motorola did not make any attempt to distinguish between protected and unprotected similar elements. Moreover, according to Hytera, Motorola offered no evidence "mapping the alleged

copying to a particular asserted work, leaving the jury with no basis to assess substantiality of similarities to any asserted copyright work." Dkt. 954 at 16.

Hytera's argument on this point is contradicted by the record. Motorola identified the code that Hytera copied from each version of Motorola's DMR and mapped the copying to the asserted work. As Motorola points out in its response, Hytera solely points to its expert's testimony related to several lines of code that are allegedly similar to third party code. This ignores other code that was shown to the jury—including, notably, code which contained identical misspellings at points.[3] From the exhibits and testimony presented to the jury, the Court cannot overturn the verdict.

Next, Hytera argues that Motorola is barred by the statute of limitations from recovering any damages allegedly suffered more than three years before adding its copyright claim in its Amended Complaint on August 2, 2018. However, Taylor v. Meirick, 712 F.2d 1112, 1119 (7th Cir. 1983) guides the analysis in this case. As Judge Posner wrote, "When the final act of an unlawful course of conduct occurs within the statutory period, these purposes are adequately served, in balance with the plaintiff's interest in not having to bring successive suits, by requiring the plaintiff to sue within the statutory period but letting him reach back and get damages for the entire duration of the alleged violation." Id. In light of the similar circumstances with Taylor, the Court stands by its decision to allow copyright damages to extend more than three years prior to the addition of the claim. Moreover, Motorola provided to the jury evidence by which the jury determined damages for the particular time period. PTX-2071. Thus, Hytera has not met its burden either for a new trial or for judgment as a matter of law on this point.

Finally with respect to the copyright claim, Hytera argues that it was improper for the copyright claim related to Copyright Reg. Nos. TXu 1-572-947 and TX 8-654-512 to proceed.

_____

[3] PTX-2090, PTX-2091; Tr. 1433:1-1436:8.

The Court stands by the previous orders issued on this point, Dkts. 597, 885, and agrees with Motorola that Hytera has waived any argument arising from Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881 (2019) by first raising this non-jurisdictional argument through a summary judgment reply brief filed late during trial. The Court will not overturn the jury verdict based on a waived and already decided issue.

### B. Hytera's Rule 59 Issues

Next, Hytera argues that it is entitled to a new trial because of various legal rulings made during trial. Hytera argues that prejudicial evidence was admitted and relevant evidence was excluded. Hytera also argues that the Court made remarks during trial that prejudiced it, that the jury was biased, and that Motorola was permitted to attempt to stir up alleged anti-China sentiment during closing argument by stating that Hytera had "blatant disregard [of] the laws of this country."

A party seeking a new trial based on alleged errors in evidentiary rulings bears a heavy burden to show that the result reached was inconsistent with substantial justice. Johnson v. Gen Bd. of Pension & Health Benefits of United Methodist Church, 2012 WL 638731, at 84 (N.D. Ill. Feb 23, 2012), aff'd 733 F.3d 722 (7th Cir. 2013). With this burden in mind, Hytera's arguments will be addressed in turn.

### 1. Motorola's expert testimony was proper.

Hytera argues that Motorola experts Dr. Rangan and Dr. Wicker were permitted to testify about the mental impressions of Hytera employees. Specifically, Hytera argues that these experts were allowed to testify about the meaning of certain parts of emails that Motorola could have asked the percipient witnesses about. Hytera's characterization of this expert testimony is incorrect, however. In each instance cited by Hytera, the Motorola experts were simply using their scientific and technical expertise to explain technical meanings within otherwise difficult (for a lay person)

to understand contexts. E.g. United States v. Vallone, 2008 WL 516715, at *4 (N.D. Ill. Feb 21, 2008). No prejudice accrued from these explanations, as the testimony was proper and Hytera's experts were given the opportunity to rebut these points.

Second, Hytera argues that the two above-mentioned experts gave overlapping testimony. No prejudice accrued from any alleged brief overlap.

Third, Hytera argues that two exhibits prepared by Dr. Wicker which showed where admitted Hytera code was identical to admitted Motorola code were improperly admitted. Those exhibits were proper under Fed. R. Evid. 1006, as Dr. Wicker described his methodology and identified the exhibits as summaries. Tr. 599:25-601:8. These exhibits were proper.

Fourth, Hytera argues that Dr. Wicker was allowed to give improper rebuttal testimony. The Court disagrees. The testimony related to testimony proffered by Hytera's experts and involved accused products.

None of the above alleged errors, alone or in concert, resulted in an outcome that was inconsistent with substantial justice.

2. Hytera was not prejudiced by the treatment of certain fact witnesses.

Hytera next argues that the Court improperly sua sponte qualified three Motorola fact witnesses—Scott Shepherd, Mark Boerger, and Jesus Corretjer—as expert witnesses on certain limited issues. Given the totality of the testimony and the cross examination of each witness, no prejudice accrued to Hytera with respect to any potential improper speculation. The witnesses each testified using their specialized knowledge to give context to the factual questions that they were answering throughout their lengthy testimony.

3. Testimony by Hytera's experts as to the information contained in patents was properly excluded.

14

Hytera next argues that the Court improperly limited its expert Ms. Frederickson-Cross from testifying about Motorola's copyright registrations and publicly disclosed materials in a Motorola patent. Matters related to the interpretation of copyrights and patents were outside the scope of Ms. Frederickson-Cross's expertise and this decision was well within the Court's gatekeeping function under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-97 (1993). Copyrights and patents are complex and distinct disclosures that should have been dealt with by specific experts qualified to testify about those issues, which Ms. Frederickson-Cross was not.

Even if these limitations were improper, Hytera still submitted the copyrights and patents as exhibits and other testimony was given relating to these materials. Moreover, no prejudice accrued because, as the Court discussed above, including publicly available information within documents that reflect a "playbook," does not invalidate a trade secret claim. 3M v. Pribyl, 259 F.3d 587, 596 (7th Cir. 2001). The jury was also instructed as to Hytera's public disclosures. Jury Instruction 23.

> 4. The Court properly excluded Mr. Grimmett's legal conclusion related to the statute of limitations.

Next, Hytera argues that the Court improperly instructed the jury to disregard testimony including legal conclusions by a non-lawyer expert related to when the statute of limitations began to run in this case. The Court only limited the expert, Mr. Grimmett, from testifying that Motorola should have filed this lawsuit before 2017. This was a proper exclusion. Mr. Grimmett's other testimony related to the measures Motorola took to investigate the theft and protect its data were heard and considered by the jury (and argued about during closing argument). No error was made in this regard.

> 5. Any exclusion of comparisons to non-party products was proper.

15

Hytera next argues that the Court improperly excluded testimony from Hytera's expert Dr. Wicker related to the comparisons between the sound suppression technology implemented by Motorola and the technology used by other, non-Hytera manufacturers. The Court disagrees that this limitation, which came after Mr. Grimmett was given the opportunity to testify about other reasons he believed that Motorola's technology was "nothing special." The Court disagrees with Hytera that comparisons between Motorola's products with products not at issue in this case was relevant. First, as Motorola argues, whether Motorola's technology was actually the best on the market or whether other companies implemented similar technologies was not relevant to whether Hytera stole and implemented Motorola's secret processes. Moreover, even if this testimony should have been allowed, this omission does not warrant a new trial, as Hytera was given ample opportunity to rebut Motorola's claims that the implementations of the technology at issue did not involve trade secrets. Given the totality of the evidence presented at trial, an error related to this omission would be harmless.

> 6. The Court's discretionary ruling to disallow sur-rebuttal after nearly four months of trial was not improper.

Hytera next argues that the Court erred by not allowing Hytera to present a sur-rebuttal case. The Court disagrees with Hytera's assessment of this discretionary ruling. Moreover, Hytera had ample opportunity to challenge Motorola's damages expert on cross examination during the rebuttal case. Motorola also points out that Hytera made no proffer as to what different testimony its expert would give during a sur-rebuttal. In light of the length of the trial and the fact that it was unclear what changes Hytera would make with respect to its damages argument (which itself was well developed during the earlier days of the trial), the Court sees no error in its discretionary ruling to move the trial forward and disallow sur-rebuttal.

7. The Court's administration of the trial and demand for formality did not prevent Hytera from presenting its defense.

Next, Hytera argues that the Court made a litany of errors in its treatment of witnesses, and Hytera specifically argues that the Court treated Motorola's witnesses with deference while challenging Hytera's experts. See Dkt. 954 at 28-29. The Court will not list every instance that Hytera has included in its briefing, but, having reviewed these alleged improper statements, disagrees that any of these statements made in the administration of this lengthy trial were improper or prejudicial. The Court was evenhanded in the administration of this three month trial, and the Court uniformly required the parties to conduct the case with the requisite formality demanded in federal court. As such, the Court will not disturb the jury's verdict on account of these alleged errors, as the jury was given a fair, thorough presentation by both sides in this matter and reached a result that is supported by the evidence presented, even after rigorous challenges by Hytera.

8. The Court did not make evidentiary errors warranting a new trial.

Hytera additionally makes several arguments related to evidentiary rulings that it claims warrant a new trial. Specifically, Hytera argues: (a) the Court improperly admitted Fifth Amendment testimony in violation of Fed. R. Evid. 403; (b) the Court admitted evidence without proper foundation; (c) the Court erred by admitting evidence related to visa applications; (d) the Court allowed Motorola to give an inflammatory closing argument; and (e) the Court did not allow Hytera to properly vet jurors during voir dire. Either alone, or in conjunction, these arguments fail to show that the result of the trial resulted in an outcome inconsistent with substantial justice. Johnson, 2012 WL 638371, at *4.

(a) The Court properly admitted Fifth Amendment testimony.

17

Hytera argues that the more than 100 invocations[4] of the Fifth Amendment by G.S. Kok, Y.T. Kok, and Sam Chia, which were presented in the form of videotaped depositions to the jury, should not have been allowed at trial (and the adverse inference jury instruction should not have been given) because the prejudicial effect far exceeded the probative value of these statements. "[T]he party urging the use of the inference must show that the circumstances of the particular case justify the imputation of the negative inference." State Farm Mut. Auto. Ins. Co. v. Abrams, No. 96-cv-6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Motorola met this burden, as those three individuals were central to the litigation and their invocations advanced their interest and Hytera's by shielding facts from discovery. Moreover, the jury was instructed that it could draw inferences if justified by independent corroborating evidence" and that it "may, but need not" draw adverse inferences based on the Fifth Amendment invocations.

In light of the highly relevant nature of these witnesses' knowledge and the other evidence that was presented and admitted during trial, this testimony was properly admitted. Hytera cannot show that the result reached was inconsistent with substantial justice.

(b) Hytera's foundation-related objections are meritless.

Hytera argues that the Court erred by admitting documents without foundation through witnesses that lacked personal knowledge in violation of Fed. R. Evid. 602. Specifically, Hytera argues that various exhibits were admitted over objection. See Dkt. 954 at 31. These internal Hytera documents should have been admitted through Hytera fact witnesses, Hytera argues, rather than through Motorola's expert witnesses. Rule 602 states that it "does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602. Rule 703 states that "[a]n expert may base

---

[4] See Dkt 968 at 31 n. 58. Certain invocations dealt with whether the former Motorolans stole Motorola's files, whether they used Motorola's confidential files to create Hytera's DMR products, whether they deleted stolen files to conceal their theft, and whether Hytera's chairman and other management knew of the theft. Motorola presented independent corroborating evidence on each of these points.

18

an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. The Court is satisfied that the admission of these documents through Motorola's expert witness was proper. Hytera has not otherwise challenged the authenticity or admissibility of the documents admitted during expert testimony—documents that helped to form the basis of the expert's opinions.

With respect to DTX-5145, the Court agrees with Motorola that Hytera has waived this objection, and in any event, the document was properly admitted through Mr. Luo based on his knowledge of the contents of the document.

Hytera also argues that the Court improperly admitted deposition testimony and documents from other litigation between the parties. The Court agrees with Motorola that the parties agreed that evidence from the related Ohio case could be presented in this case. Moreover, the Court disagrees with Hytera's argument that Motorola violated the joint trial stipulation, as cross exhibits were excluded from disclosure requirements. Dkt. 729 at 5. Moreover, given the totality of the evidence in this case, Hytera was not prejudiced even if any of these documents was admitted in error.

(c) The probative value of the visa application was not substantially<br>outweighed by unfair prejudice.

Hytera argues that the Court erred under Rule 403 by allowing testimony relating to Hytera advising its employees to act in a dishonest manner with U.S. agents. The Court allowed the admission of PTX-1075 and certain very limited testimony related to the issue of dishonesty with U.S. officials by Hytera employees. Even if this evidence was admitted in error, the admission was harmless given the totality of the evidence in the case.

(d) Motorola's closing argument was not improper.

19

Hytera argues that Motorola, during closing, argued for an amount of copyright damages that contradicted Motorola's expert's previous statement as to what the proper copyright damages in this case were. The Court disagrees. Evidence in the record supported the closing argument figure and Hytera had every opportunity to draw the jury's attention to any potential inconsistency by Motorola's witnesses.

Hytera also argues that Motorola's reference to the laws of the United States was improper, writing that the statement that Hytera has "blatantly disregarded the laws of this country" incited the jury to take up an anti-China sentiment. This argument is meritless and a mere passing reference to the laws of the United States was not inflammatory. No common theme of nationalistic pride ever arose during the trial, and this brief, un-objected-to reference did not rise to the level of being inflammatory or improper.

(e) Voir dire was properly conducted.

Hytera next attacks the jurors in this case, who patiently and diligently observed this lengthy trial. Hytera argues that it was not able to adequately vet whether any jurors harbored anti-China sentiment. This assertion is false. The parties were allowed to conduct the voir dire. When asked general questions about this topic, one juror stated that he felt that Chinese companies tended to steal from United States companies. That juror was then dismissed. Shortly thereafter, a second juror stated that he held a similar opinion, and he was also dismissed. No other jurors responded to that line of inquiry, and each empaneled juror stated that they had no belief which would render them unable to fairly evaluate the case before them.

At no point before this brief has Hytera stated that it believed this action by the Court was improper. Hytera now argues that the brief deliberations by the jurors is evidence of bias on the part of the jury. The brief deliberations, however, are better explained by the voluminous evidence

presented by Motorola in proving its claims and a trial with a pride of competent counsel performing at commendable levels.

(f) No new trial is warranted.

Hytera argues that the cumulative effect of these errors justifies a new trial. For the reasons set out above, the Court disagrees because the legal rulings made were justified. Even if certain errors were made, Hytera has not met its burden to show that the result in this case was inconsistent with substantial justice.

9. The jury was properly instructed.

Hytera next argues that several jury instructions were erroneous: first, as to fraudulent concealment; second, as to spoliation; third as to extraterritoriality; fourth as to the statute of limitations; fifth as to respondeat superior; and sixth as to equitable issues.

(a) The fraudulent concealment instruction was proper.

The Court stands by its previous rulings on the issue of fraudulent concealment, which the jury was properly instructed on.

(b) The spoliation instruction was proper.

Hytera argues that the jury should not have been instructed on spoliation of evidence because the Court did not make a finding that Hytera acted intentionally in bad faith in destroying evidence. Evidence in the record supports such a bad faith finding, however. In June 2008, for example, G.S. Kok wrote to Sam Chia that they "needed to re-write softwares to look different from Motorola" in order to "protect the company from impending lawsuits." PTX-19. Huang and Chia deleted evidence of misappropriation to conceal their theft. E.g. Tr. 1365:7-19.

This is sufficient to justify providing the jury with a spoliation instruction.

(c) The extraterritorial instructions were proper.

21

Hytera again challenges the Court's ruling with respect to the extraterritoriality of the relevant statutes. See Motorola Sols., Inc. v. Hytera Commc'ns Corp., 436 F. Supp. 3d 1150, 1154 (N.D. Ill. 2020). The Court stands by its previous reasoning on this issue along with the propriety of the instructions given in relation to this ruling. Other courts have reviewed and agreed with this Court's reasoning or come to similar conclusions as to the reach of the DTSA and the ITSA. E.g. Inventus Power, Inc. v. Shenzhen Ace Battery Co., No. 20-CV-3375, 2020 WL 3960451, at *7 (N.D. Ill. July 13, 2020) (J. Dow); vPersonalize Inc. v. Magnetize Consultants Ltd., 437 F. Supp. 3d 860, 878 (W.D. Wash. 2020).

(d) The statute of limitations instruction accurately stated the law.

Hytera next argues that the statute of limitations argument misstated the law because, although properly quoting Seventh Circuit precedent, it should have included language from a subsequent Seventh Circuit case and clarified the burdens. The Court disagrees. The language contained in the instruction was an accurate representation of the law. Hytera argued strenuously to the jury that the information available within Motorola created more than "concerns and suspicions" within the company. The jury was entitled to weigh the evidence within this proper legal framework and reasonably concluded that Motorola brought its claims within the statute of limitations. With respect to the burden on the parties, Hytera objected to the inclusion only of the Sokel language, but the parties otherwise agreed to the form of the instruction. As such, the Court will not disturb the jury verdict on this issue.

Hytera repeatedly returns to the idea that Motorola should have checked the logs of who downloaded what documents throughout the time that Motorola became concerned about potential theft by Hytera. Hytera argues that Motorola should have used this "easy" means to determine that improper downloading had occurred. This became a key aspect of the case and it was within

22

the province of the jury to determine, having been fully informed of both party's arguments and properly instructed, whether Hytera's argument about the ease of such a search was correct. This was a decision for the jury, and the jury's verdict on that issue was supported by adequate evidence in the record. The jury instruction correctly advised the jury of the law and allowed them to weigh the competing theories of the parties.

(e) The instructions on respondeat superior were correct.

Hytera argues that the Court erred by using Motorola's instruction on the issue of respondeat superior. Motorola responds by arguing that its proposed instruction actually imposed a higher standard on itself than Hytera's proposed instruction. The Court agrees and as such will not disturb the verdict on this theory.

(f) The additional alleged jury instruction errors are meritless.

Hytera additionally argues that various instructions were incorrect because they flowed from earlier incorrect rulings throughout the case. By force of the other portions of this opinion addressing those issues, the Court also rejects these additional arguments. Specifically, these relate to: the equitable issues (to be addressed below); the Fifth Amendment issue; and the copyright amendment issue. See Dkt. 954 at 38.

### C. Damages

Finally, Hytera raises several challenges related to the ultimate damages figure awarded by the jury. Hytera argues: (1) that disgorgement is an equitable remedy to which the Court must exercise its independent judgment; (2) the verdict awarded a double recovery by allowing disgorgement along with avoided research and development costs; (3) the disgorgement figure itself was too high (for various reasons); and (4) the verdict was "monstrously excessive" and must be reduced in accordance with case law.

(1) In this case, Motorola's actual lost profits award under the DTSA was a legal determination for the jury, but the unjust enrichment award for avoided research and development costs and the copyright award were equitable in nature.

With respect to damages, Hytera first argues that disgorgement in this case is an equitable remedy to which Motorola has no Seventh Amendment right to a jury trial. Hytera argues that determining the correct amount of disgorgement then becomes a question on which the Court must exercise its independent judgment. Hytera relies on Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc., 895 F.3d 1304, 1326 (Fed. Cir. 2018), cert. denied, 139 S. Ct. 2741, 204 L. Ed. 2d 1132 (2019) ("TAOS"). In TAOS, the Federal Circuit provides a detailed discussion of the nature of the remedies available under Texas trade secret law and concluded that the prevailing plaintiff in that case had "no right to a jury decision on its request for disgorgement of [the defendant's] profits as a remedy for trade secret misappropriation." Id.

Hytera specifically argues that the jury's award of $136.3 million under the Copyright Act, $135.8 million under the DTSA for actual losses, and $73.6 million for savings on avoided research and development costs (also under the DTSA) are advisory to the Court because that relief is equitable in nature in each instance. On the jury form, these categories of damages were combined into one question, with the jury awarding $345,761,165 among these three categories.[5]

TAOS does not categorically hold that awards in a trade secret case are equitable relief. Rather, consistent with other courts that have analyzed the fine line between equitable and legal relief, it analyzed the nature of the remedy being awarded in that case. See Reich v. Cont'l Cas. Co., 33 F.3d 754, 756 (7th Cir. 1994) ("restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case.")

---

[5] The specific amounts attributed to each category can be inferred from Motorola's closing argument (and the evidence presented throughout the case), as the award corresponded with the highest amount Motorola had been permitted to argue for after various legal rulings on the issue.

24

Indeed, TAOS instructs that "[i]n some cases, a plaintiff seeking disgorgement as a remedy for trade secret misappropriation might prove that this measure of relief, though focused on the defendant's gains, is good evidence of damages in the form of the plaintiff's losses or of a reasonable royalty for use of the secret." TAOS, 895 F.3d at 1320. In determining that the disgorgement in TAOS was equitable in nature, the Federal Circuit noted that "nothing in the jury instructions required that, to award [defendant's] profits, the jury had to find that those profits were related in any way to either TAOS's lost profits or a reasonable royalty." Id. TAOS continues: "To be sure, monetary relief in the form of disgorgement, like other monetary relief, has been labeled a form of 'compensation' where awarded to a wronged plaintiff for an injury." Id. at 1321 (citing Kokesh v. S.E.C., 137 S. Ct. 1635, 1644, 198 L. Ed. 2d 86 (2017)). In TAOS, the Federal Circuit clarified, the question was "whether disgorgement of the defendant's profits, considered on its own terms, without proof that it was a sound measure of the plaintiff's harm, was available at law in 1791 for this sort of wrong." Id. The jury instruction in TAOS dealt with disgorgement "for the harm that was proximately caused by the Defendant as a result of the misappropriation of the Plaintiff's trade secrets." Id.

In the present case, the awards relating to lost profits under the DTSA were tied directly to economic losses by Motorola by virtue of the jury instructions given and the expert testimony related to those damages. See Jury Instruction 30 (Dkt. 895) ("To recover its actual loss, Motorola must prove: 1. A reasonable probability that, if Hytera had not misappropriated trade secrets, Motorola would have made additional sales of DMR products that Hytera made; and 2. The amount of profit Motorola would have made on those sales.").

25

Given this instruction and the evidence presented, the jury award for actual losses pursuant to the DTSA is properly categorized as a "case-specific proxy for . . . losses" and as such a legal remedy. TAOS, 895 F.3d at 1320-22.

With respect to the copyright award, however, Hytera is correct that the jury's award was equitable in nature and thus an advisory verdict. As to copyright, the award was measured not as a direct proxy for Motorola's damages, but rather as the benefit Hytera unjustly received. See Jury Instruction 39 ("Motorola is entitled to recover the profits that Hytera made through June 30, 2019, because of Hytera's copyright infringement. Hytera's profits are revenues that Hytera made because of the infringement, minus Hytera's expenses in producing and selling the infringing DMR radios. Motorola must prove Hytera's revenues and a causal relationship between the infringement and those revenues. Hytera must prove its own expenses and any portion of its profits that resulted from factors other than infringement of Motorola's copyright."). In this respect, the copyright award was simply disgorgement of Hytera's profits—not, like with the DTSA actual loss award, a measure of what sales Motorola would have made if Hytera had not stolen its materials.

With respect to the avoided research and development costs award under the DTSA, the Court agrees with Hytera that this award for unjust enrichment also takes on an equitable nature, as it is not tied directly to Motorola's loss. Although the jury awards as to Hytera's profits under the Copyright Act and the avoided research and development costs awarded under the DTSA were equitable in nature and thus advisory verdicts, the Court agrees with the amounts awarded and will issue a separate order with the Court's findings of fact and conclusions of law on this issue. That separate order will be consistent with the reasoning set forth below as to why the award was proper, despite Hytera's several objections raised in the motion presently before the Court.

(2) Motorola's recovery of lost profits and of Hytera's avoided research and development costs does not constitute a double recovery.

26

Hytera next argues that the award of Motorola's lost profits under the DTSA is duplicative of the award to Motorola for Hytera's avoided research and development savings for the cost avoided in creating those trade secrets. Specifically, Hytera argues that once the avoided research costs are awarded to Motorola, it puts Motorola in the position it would have been in had Hytera never stolen its trade secrets and copyrights because, hypothetically, once Hytera spent that money, it would have been able to develop and sell the trade secrets itself. Hytera cites to various non-binding cases to support this position. The Court disagrees, as the primary case cited by Hytera, Salisbury Labs., Inc. v. Merieux Labs., Inc., 908 F.2d 706 (11th Cir. 1990), dealt not with the actual losses to the plaintiff in that case, but the benefit conferred on the defendant, as discussed further below. The DTSA uses a different methodology to determine damages, and the award of both Motorola's lost profits (not measured simply as a disgorgement of Hytera's profits) and Hytera's avoided research and development costs is not duplicative.

The text of the DTSA states the Court may award: "(i)(I) damages for actual loss caused by the misappropriation of the trade secret; and (II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss[.]" 18 U.S.C.A. § 1836(3)(B). The question is whether the avoided research and development costs (roughly $73.6 million) was addressed in the computation of Motorola's actual losses (calculated by the jury as lost profits worth $136.6 million).

Hytera argues that Motorola is only entitled to the avoided research and development costs. Based on the statutory language, however, it appears that if either of the awards should be reduced, it is the unjust enrichment portion, because the jury instructions make clear that the lost profits were contemplated as the actual loss to Motorola. See Jury Instruction 30. With respect to unjust enrichment, the jury was instructed that it could also award to Motorola "the amount Hytera

27

benefited to the extent it exceeds Motorola's actual loss." Jury Instruction 31. Thus, Motorola is only entitled to recover for unjust enrichment to the extent that the enrichment is not captured in the actual losses award.

On this point, the jury and the Court heard arguments from both parties related to this exact issue. Motorola's expert explained that it was Motorola's position that Hytera could never have developed the specific technology at issue without stealing Motorola's confidential materials. The jury credited this argument, as evidenced by the full award to Motorola on the actual losses issue. The Court agrees with the jury's finding. Motorola's damages expert, Mr. Malackowski, testified that the proper figure to be awarded encompasses both Motorola's actual losses and the unjust enrichment Hytera received in the form of the avoided research and development costs. On this point, Motorola argues that Hytera continues to retain the benefit of the stolen trade secrets and continues to sell misappropriating products, thus Hytera will continue to retain an improper benefit unless required to also pay for its avoided costs.

Hytera argues that simple accounting principles show that Motorola is recovering doubly. In support of this position, Hytera cites to Salisbury Labs., Inc. v. Merieux Labs., Inc., 908 F.2d 706 (11th Cir. 1990). In Salisbury, the Eleventh Circuit upheld the district court's reduction of a jury award where the district court held that it constituted a double recovery. Id. at 714-15. There, the courts were dealing with Texas trade secret law, and the measure of damages being discussed uniformly dealt with the benefit that had been conferred on the defendant, not on the actual losses that had been suffered by the plaintiff. Id. As such, both courts held that allowing the plaintiff to recover the avoided development costs and the *defendant's* profits constituted a double recovery, as those profits were a function of the avoided costs. Id. In other words, because the defendant's profits were inflated by the avoided costs—as profits are revenue minus costs—it was improper to

28

award both. And because the court there credited the argument that that defendant could have developed the trade secrets in the same time that the plaintiff had if it had expended the avoided research costs, the proper measurement of damages was the avoided research and development costs.

This case presents a different issue. Here, as testified to by Motorola's damages expert in testimony the Court has re-reviewed, and as required by the DTSA, the first measure of damages in this case is the actual losses to Motorola. This is reflected in the award of Motorola's lost profits of $136.6 million. This number was not simply based off of a disgorgement of Hytera's profits, but rather was a market share analysis prepared by Motorola's expert that was meant to predict what share of Hytera's sales Motorola would have captured if Hytera had never sold the trade secrets, and the profit Motorola would have made on those sales. The jury credited Motorola on this entirely.

The second measure relates to whether Hytera has been unjustly enriched to an extent not captured in Motorola's actual losses. In this respect, the Court agrees with Motorola that Hytera still possesses the trade secrets, and as such is continuing to benefit from the avoided research and development costs. This benefit to Hytera is distinct from the award of Motorola's lost profits. And unlike in Salisbury, this is not a simple calculation that because Hytera avoided development costs its profits were higher. Rather, this award measures the benefit that Hytera has received separate from the profits that Motorola lost.

As such, the Court ratifies the jury's advisory award of the avoided research and development costs as will be set out further in the Court's findings of fact and conclusions of law.

(3) The actual loss figure was supported by evidence and the Court will not reduce it.

Hytera next argues that based on Mr. Malackowski's testimony and because IDX has invalidated certain Motorola trade secrets, Motorola's actual losses should be reduced to account for only a four-year head start period, not the indefinite period that Motorola argued for and the jury credited. As discussed above, the Court has rejected Hytera's IDX argument and rejects this argument as well.

In the same vein, Hytera argues that Motorola's calculation related to its lost profits improperly excluded Hytera's legitimate research and development costs. This calculation became a question for the jury, and Mr. Malackowski explained his reasoning for excluding certain costs provided by Hytera, noting that he did not find them to be reliable. E.g. Tr. 2258 (Malackowski stating that he did not find Hytera cost estimates to be reliable because they fluctuated between years and showed a Hytera engineer labor rate, at one point in time, of less than $5 an hour). Hytera argued and had the burden to show its data was credible and reliable, and it was a duty for the jury to weigh credibility in this respect, as this went to the actual losses award. As such, the Court will not disturb the jury's verdict on this point and agrees with its conclusion.

Hytera next argues that any extraterritorial recovery was improper in this case. The Court stands by its previous orders on this issue.

Hytera also argues that it was improper to consider Hytera's mobile products in the damages awards. Motorola argues that it introduced testimony related to those products, which Hytera did not object to, and that Hytera challenged that testimony through its fact and expert witnesses, but that the jury credited Motorola's theory as to the mobile products. The Court agrees with Motorola and, to the extent it is an equitable issue, with Motorola's theory.

(4) The exemplary damages award was proper.

30

Finally, Hytera argues that the evidence presented in this case did not support an instruction related to exemplary damages, and that even if it was proper to allow the consideration of exemplary damages, that the ultimate award should be reduced because it is excessive as a matter of due process.

Section 1836(b)(3)(C) of the DTSA states that a court may, "if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B). 18 U.S.C.A. § 1836. For the reasons in the record set out in Motorola's briefing on this first issue, it was proper for the issue of exemplary damages to go to the jury. See Dkt. 968 at 20 (citing to various portions of the trial record to show intentional bad faith acts within Hytera).

With respect to the amount of the exemplary damages, this amount, as an initial matter, was legally valid under the DTSA as it was not more than 2 times the amount awarded under Subsection B of the damages provision. In light of this statutory provision and the conduct discussed at trial, the Court disagrees with Hytera that this award must be reduced as a matter of due process. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 583 (1996) (advising that a reviewing court should "accord substantial deference to legislative judgments concerning appropriate sanctions for conduct at issue") (internal quotations omitted).

The final argument that the Court addresses is Hytera's argument that the award is monstrously excessive, has no connection to the evidence in the case, and is not comparable to other awards made in similar cases. Dkt. 954 at 39 (citing Riemer v. Ill. Dep't of Transp., 148 F.3d 800, 808 (7th Cir. 1998)). This argument builds off and incorporates several other alleged errors that have been addressed throughout this Opinion. The Court has addressed these arguments (i.e. whether IDX invalidates Motorola's trade secret claims, whether Motorola is receiving a

31

double recovery, etc.) and as such will not repeat that analysis here. The damages award was supported by substantial evidence and proper under that evidence presented. Moreover, the Court disagrees that no cases have resulted in similar recovery. See, e.g., E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., No. 3:09CV58, 2012 WL 1202485, at *1 (E.D. Va. Apr. 10, 2012) ($919.9 million in compensatory damages awarded in a trade secrets case).

As such, the Court will not order a new trial on the issue of damages.

**IV. CONCLUSION**

Consistent with the above, the Court rejects each and every argument raised by Hytera in its renewed Rule 50(b), Rule 59(a), and Rule 59(e) motion and denies the motion in its entirety, except as to the issue of the advisory jury verdict on the equitable issues. The Court reiterates that Hytera has been represented by highly skilled, specialized counsel that has meticulously challenged Motorola on nearly every aspect of this case. On the jury issues, Hytera has not met its burden to succeed given the standards under which this motion is reviewed. On the equitable issues, the Court will submit its findings of fact and conclusions of law in a separate Order which will reflect its decision consistent with the above on the equitable issues.

Simply put, Hytera's motion is denied except to the extent that certain monetary awards are properly considered equitable in nature, but the substantive arguments as to the awards are denied as to be reflected in the Court's findings of fact and conclusions of law, and the ultimate figure awarded by the jury, and to be further found by the Court, will not be disturbed,

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 19, 2020