IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 1:17-cv-1973 |
| v. ) | |
| ) | |
| HYTERA COMMUNICATIONS CORP. ) | |
| LTD., et al., ) | Hon. Charles R. Norgle |
| ) | |
| Defendants. ) | |

## ORDER

Motorola's motion for permanent injunction [961] is denied. Motorola's alternative request for a reasonable royalty [961] is granted, in an amount to be determined. Hytera's motion for findings on equitable issues and for an amended judgment [961] is granted to the extent that the Court will issue findings, but denied as to the substantive relief sought.

For case control purposes, the pending motions to seal [1035] [1082] and to appear pro hac vice [1039] [1052] [1090] are granted. Hytera's motion for a staggered briefing schedule [1091] has previously been granted. Hytera's motion to file a surreply re attorneys' fees [1055] is granted.

Motorola's motion to alter judgment [957], the various motions to quash citations [1020] [1022] [1069], Motorola's motion for disbursement of funds [1062], and Motorola's motion for attorneys' fees [977] remain under advisement.

## STATEMENT

Several post-trial motions remain pending before the Court. This Order deals with two: Motorola's motion for permanent injunctive relief[1] and Hytera's motion for findings on equitable issues and for an amended judgment. Motorola's motion for a permanent injunction is denied. Hytera's motion for findings on equitable issues and an amended judgment is granted insofar as the Court will issue findings but is denied as to the substantive relief sought.

Consistent with the parties' briefing and 18 U.S.C. § 1836(b)(3)(A)(iii), Hytera shall be ordered to pay a reasonable royalty to Motorola for the future use of Motorola's trade secrets. Per

---

[1] To the extent the Court has not formally denied Motorola's earlier motions for injunctive relief (motion for temporary restraining order and for a preliminary injunction (following trial)) those motions are also now denied.

1

Hytera's request in its supplemental memorandum, Dkt. 1085, the amount of the reasonable royalty will remain to be determined, as discussed below.

This Order will be organized into three sections: A. Injunctive Relief; B. Reasonable Royalty; C. Hytera's Motion for Findings and To Alter Judgment. The Court assumes the reader's familiarity of the facts and procedural posture of this case. See Dkt. 1088. Briefly, Motorola prevailed in a lengthy and well-litigated jury trial in this case. The jury awarded Motorola the full amount of damages for which it was permitted to argue. This resulted in a $764.6 million verdict, which encompassed $345,761,165 in compensatory damages ($136.3 million under the Copyright Act, $ 135.8 million under the DTSA for actual losses, and $73.6 million for savings on avoided research and development costs) and $418,800,000 in punitive damages. Following Hytera's Rule 50(b) motion, the Court determined that the Copyright Act disgorgement and the avoided research and development costs were equitable in nature. See Dkt. 1088. The Court will enter Findings of Fact and Conclusions of Law on the remaining equitable issues shortly after this Order.

Turning first, then, to the important issue of injunctive relief.

**A. Injunctive Relief**

Plaintiffs Motorola Solutions, Inc., and Motorola Solutions Malaysia SDN. BHD. have moved this Court to enter a permanent injunction enjoining Defendants Hytera Communications Corporation Ltd., Hytera America, Inc., and Hytera Communications America (West), Inc. and all those acting together with any of them from continuing to misappropriate Motorola's trade secrets and infringe Motorola's copyrights, including any further sales of the portable, mobile, and repeater Digital Mobile Radio ("DMR") products at issue in this case, anywhere in the world. Following trial, Motorola immediately moved for a temporary restraining order, followed by a preliminary injunction. No preliminary injunction motion was filed prior to the jury verdict in this case.

With respect to injunctive relief, the Defend Trade Secrets Act states that a Court "may grant an injunction . . . to prevent any actual or threatened misappropriation[.]" 18 U.S.C. 1836(b)(3)(A)(i). Generally, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165-66 (2010). An injunction is not a punitive tool, but rather a vehicle for preventing injury. 3M v. Pribyl, 259 F.3d 587, 609 (7th Cir. 2001).

Although the DTSA does not lay out what standard should apply when considering injunctive relief, well-established principles of equity dictate that a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

2

The parties make substantial arguments as to each factor outlined above. The Court will address each in turn after briefly addressing Hytera's argument that Motorola has not shown success on the merits.

(1) Success on the merits

The jury found liability and awarded the maximum available damages to Motorola. Hytera first argues that because the jury was given a general verdict form, Motorola has not shown that it has succeeded on the merits of showing that each of the asserted 21 trade secrets has been misappropriated.

On this point, the Court agrees with Motorola that it has shown success on the merits in this case. The jury was given the option to apportion damages if it found fewer than all 21 trade secrets misappropriated; yet the jury awarded the full damages amount Motorola requested. See Dkt. 947. Part of that award was $73 million for avoided research and development for all asserted trade secrets. See Trial Tr. 2184:17-2185:10, 2189:6-15. Based on the entirety of the jury's verdict, it is therefore clear that the jury in fact found all trade secrets misappropriated and all copyrights infringed. This is consistent with the presumption discussed by the Eighth Circuit in Span–Deck, Inc. v. Fab–Con, Inc., 677 F.2d 1237, 1241 n. 5 (8th Cir. 1982) (general verdict "give[s] rise to the presumption that material fact issues have been resolved in favor of the prevailing party").

Thus, Motorola succeeded on the merits.

2) Irreparable Harm and Adequate Remedy at Law

The parties, consistent with much case law, have folded the first two eBay factors into one analysis, and the Court will do the same. Motorola first argues that its success on the merits in this case entitles it to a presumption of irreparable harm. Dkt. 962 at 3 (citing Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115, 1143 (N.D. Ill. 2019); Intertek USA, Inc. v. AmSpec, LLC, No. 14-CV-6160, 2014 WL 4477933, at *6 (N.D. Ill. Sept. 11, 2014)).

Hytera counters this initial argument by pointing to eBay and various circuit court opinions which analyze whether such a presumption should operate in similar circumstances. Dkt. 986 at 5-6 (citing eBay, 547 U.S. at 391; Flava Works, Inc. v. Gunter, 689 F.3d 754, 755 (7th Cir. 2012) ("the Supreme Court's subsequent opinion in [eBay] made clear that there is no such presumption"); Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)). The Court agrees with Hytera that no presumption of irreparable harm should be given.

Motorola next raises three substantive arguments as to irreparable harm: (1) that Hytera is eroding Motorola's market share; (2) that Hytera's lower prices are causing price erosion for Motorola; and (3) that Hytera's use of Motorola's trade secrets cause Motorola reputational harm. Hytera responds by arguing that the first two categories of harm can be quantified with damages and that the third is speculative. Hytera also argues that Motorola has not shown a causal nexus between the harm and the intellectual property at issue in this case, citing Apple, Inc. v. Samsung Electronics Co., 678 F.3d 1314, 1324 (Fed. Cir. 2012).

3

The Court agrees with Hytera that the market share and pricing injuries suffered by Motorola can be compensated by monetary damages and that any reputational harm is speculative. Generally, actual damages can include lost sales as a result of the competitor's entry into a market, as well as price erosion. Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1119-20 (Fed. Cir. 1996). Motorola has, throughout the trial, shown that it can quantify the market share that it has lost, and the measure of damages which were awarded specifically contemplated which of Hytera's sales Motorola would have made if Hytera had not misappropriated its trade secrets. Motorola's damages were then based on the profit Motorola would have made on those sales, which the jury awarded. Economic experts skillfully laid out how these damages were quantified in this case over days of disputed testimony.

While the damages in this case are backward-looking only, and the injunction would prevent future harm, the nature of the harms suffered, and potentially to be suffered, by Motorola are compensable with damages. In this respect, the words of another district court are persuasive, "[T]his case is about money. No historic building is going to be destroyed. No toxins are going to be released into the environment. No ship is going to leave port, never to return." Wells Fargo Ins. Servs. USA, Inc. v. King, No. 15-cv-4378 (PJS/JJK), 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016).

While in some instances the theft of trade secrets no doubt could constitute irreparable harm, this is not the case, and given the testimony the Court has heard about how the damages to Motorola can specifically be quantified and analyzed, the Court cannot say that there is no adequate remedy at law for any market share or price erosion.

With respect to reputational harm, the Court agrees with Hytera that such harm is speculative and based on attorney argument that the Court does not agree with. Although Hytera has positioned itself in a certain way, including with respect to this lawsuit, the ultimate vindication of Motorola's rights tends to cut against a finding that Motorola has suffered reputational harm in this case.

Finally, although the Court finds that Motorola likely could quantify the harm through extensive expert analysis during a lengthy litigation process, this would likely require repeat lawsuits covering different time periods. This matter has been a lengthy, expensive process for both sides, and although the damages likely could be quantified, the Court recognizes that the task of doing it is not an easy or inexpensive one.

In sum, the Court finds that Motorola could quantify its future losses and remedy them in a future suit, thus rendering a permanent injunction inequitable in this scenario.

### 3) Balance of the Hardships

Although an adequate remedy at law does exist—and thus renders an injunction inequitable in this case—the Court will briefly address several arguments as to the remaining factors. First, with respect to the balance of the hardships between the parties, this factor favors Motorola. Hytera argues that an injunction would render years of its work, including on features not at issue in this litigation, worthless and could effectively push Hytera out of the DMR market altogether.

4

Motorola has a strong interest, however, in protecting its intellectual property and the years of research and development that it has put into its products. Motorola argues that it is essentially being forced to compete against its own technology, and that because of the past savings that Hytera benefited from by stealing Motorola's technology, it has also been able to undercut Motorola's prices and gain market share around the world. Motorola has a strong interest in competing on a balanced playing field in which intellectual property rights are respected. Indeed, the Court agrees that where "the injunctive relief sought primarily focuses on prohibiting a defendant from using information he should not have taken in the first place, the balance of harms weighs heavily in favor of granting an injunction." Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115 (N.D. Ill. 2019); see also Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

Thus, this factor strongly favors injunctive relief.

### 4) The Public Interest

Finally, Hytera makes a substantial argument that the public interest weighs against permanent injunctive relief. Hytera argues that a permanent injunction would result in great costs and have direct impact on innocent third parties. Hytera argues that its DMR radios and its associated infrastructure are used by foreign governmental entities, militaries, first responders, hospitals, airlines, utilities, sports teams, security firms, schools, security firms and other entities around the world.

Certainly the Court would hesitate to put first responders and others in a position where their lives would be at risk if a permanent injunction would be granted, but that does not realistically seem to be the case here, as those third parties could simply continue using the radios already in their possession and buy new replacements from another DMR radio provider—one which is not built around misappropriated trade secrets. As was presented in great detail at trial, DMR radios adhere to a specific standard such that different brands are interoperable. Moreover, Motorola has credibly argued that it has the production capacity to pick up the slack around the world should Hytera be enjoined from selling its misappropriating products.

Hytera's argument to the contrary builds around a principle which this Court rejects. Hytera in essence argues that because their sale of the misappropriating products has become so widespread—to governments, first responders, airlines, and others around the world—that it would be inequitable to stop them from continuing to sell the products which are built from the work of Motorola. The Court rejects this principle. Rather, the public interest is better served when intellectual property rights are protected and when infringers are held to account, no matter how widespread the stolen products become.

As Motorola argues, "cheap copies" of trade secrets and copyrights "have the effect of inhibiting innovation and incentive. This detrimental effect, coupled with the public's general interest in the judicial protection of property rights in inventive technology, outweighs any interest the public has in purchasing cheaper infringing products." Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336 (Fed. Cir. 2013).

5

Thus, this factor also strongly favors an injunction. Regardless, the Court finds that an injunction in this case would be inequitable and thus continues on to the alternative relief—a reasonable royalty.

B. Reasonable Royalty

Where exceptional circumstances render an injunction inequitable, the DTSA provides that a court may "condition[] future use of the trade secret upon payment of a reasonable royalty for no longer than the period of time for which such use could have been prohibited[.]" 18 U.S.C. § 1836(b)(3)(A)(iii).

Here, exceptional circumstances certainly do exist. The potential scope, impact, and difficulties a worldwide injunction could cause, particularly during an ongoing pandemic, pose a large potential problem. And although Motorola has been able to quantify its losses in this case, and likely could again, the process of doing so has been extremely expensive, time-consuming, and difficult. Thus, as Hytera perceptively states in its supplemental submission, "[t]he path forward" in this case is for the award of a reasonable royalty. Dkt. 1084 at 12.

Because the arguments in the pending briefing are undeveloped as to what a reasonable royalty in this case would be, the Court will allow the highly competent counsel in this case to confer and propose a process as to determining this royalty. Hytera points out that the parties are currently mediating this issue, and the Court does not want to discourage an agreement among the parties. Thus, the parties shall submit a proposed plan no later than January 14, 2021. If no agreed plan can be reached, each party shall submit its own proposal. See Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1314-15 (Fed. Cir. 2007).

C. Hytera's Motion for Findings on its Equitable Defenses and for an Amended Judgment

Separately, Hytera filed a motion following trial asserting that the Court should reduce the unjust enrichment award because the equitable doctrine of laches should trigger. Hytera additionally argues that "Motorola clearly, unequivocally, and decisively, waived its right to claim trade secret protection over the information Motorola claimed constituted a trade secret misappropriated by Hytera." Dkt. 966 at 10.

In this case, the Court agrees with Motorola that Hytera's laches defense fails because it is based entirely on fact issues already resolved against Hytera by the jury's verdict on Hytera's statute of limitations defense. The jury's findings on common factual issues govern and are binding on the Court. Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1231 (7th Cir. 1995); Snider v. Consolidation Coal Co., 973 F.2d 555, 559 (7th Cir. 1992) ("when common issues are simultaneously tried to both a judge and a jury, the jury's findings with respect to those common issues are binding upon the judge").

Here, the laches analysis "essentially collapses into the statute of limitations analysis[,]" which the jury considered, was instructed on, and determined did not apply. Sokol Crystal Prods. Inc. v. DSC Commc'ns. Corp., 15 F.3d 1427, 1430 (7th Cir. 1994). Hytera's laches and waiver equitable defenses are premised on factual issues already resolved against Hytera by the jury in

6

connection with its statute of limitations defense, and depend on identical fact issues (e.g., concerning whether Motorola exercised "reasonable diligence" in bringing suit; whether Hytera engaged in fraudulent concealment; and whether the materials Motorola claimed as trade secrets were, in fact, secret and adequately protected), and the very same evidence underlying those issues.

As such, the Court agrees with Motorola's argument and rejects Hytera's laches defense and will submit findings consistent with that position.

Next, Hytera argues that Motorola "clearly, unequivocally, and decisively, waived its right to claim trade secret protection over the information Motorola claimed constituted a trade secret misappropriated by Hytera." This argument is similarly foreclosed by the jury's finding on the parallel issue of the existence of Motorola's trade secrets.

Specifically, Hytera argued to the jury that Motorola was not entitled to trade secret protection based on (1) Motorola's registering of source code with the Copyright Office, (2) Motorola's internal policies regarding document labeling, internal trade secret registration, and invention awards, and (3) Motorola's obtaining patents and lodging deposit copies with the Copyright Office. The jury rejected each of these arguments, finding for Motorola on liability. Accordingly, Hytera's requested fact findings that Motorola "clearly, unequivocally, and decisively, waived its right to claim trade secret protection" are incompatible with, and precluded by, the jury's fact findings.

In sum, the Court has closely reviewed the respective arguments of the parties and agrees with Motorola on the substance of the equitable issues of waiver and laches.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 17, 2020