# Exhibit 1

Michael De Vries (State Bar No. 211001)
Christopher Lawless (State Bar No. 268952)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680 8500
Email: michael.devries@kirkland.com
        clawless@kirkland.com

Mark McKane, P.C. (State Bar No. 230552)         Chad J. Husnick (*pro hac vice*)
Adam R. Alper (State Bar No. 196834)             KIRKLAND & ELLIS LLP
Brandon H. Brown (State Bar No. 266347)          300 North LaSalle
KIRKLAND & ELLIS LLP                             Chicago, IL  60654
555 California Street                            Telephone: (312) 862-2000
San Francisco, CA  94104                         Facsimile: (312) 862-2200
Telephone: (415) 439-1400                        Email: CHusnick@kirkland.com
Facsimile: (415) 439-1500
Email: MMcKane@kirkland.com
        aalper@kirkland.com
        bhbrown@kirkland.com

Attorneys for MOTOROLA SOLUTIONS, INC.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>HYTERA COMMUNICATIONS AMERICA (WEST), INC., *et al.*,<br><br>     Debtors. | CASE NO. 8:20-11507-ES<br><br>Chapter 11<br><br>Jointly Administered with Case Nos.: 11508-ES and 11509-ES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTOROLA SOLUTIONS, INC.'S MOTION TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112 OR ALTERNATIVELY TO SUSPEND CASE PENDING RESOLUTION OF DISTRICT COURT MATTERS PURSUANT TO 11 U.S.C. § 305**<br><br>Date:  August 20, 2020<br>Time:  2:00 PM<br>Place: 411 West Fourth Street, Courtroom 5A, Santa Ana, CA 92701 |

# **TABLE OF CONTENTS**

**Page**

I.  Introduction ............................................................................................................1

II.  Jurisdiction ...........................................................................................................3

III.  Factual Background ...............................................................................................3
  A.  Creditor Motorola Solutions, Inc. .............................................................3
  B.  Relevant Hytera Entities ...........................................................................3
  C.  Hytera's Adjudged And Continued Malicious Theft And Infringement Of Motorola's Intellectual Property, Creation Of Post-Petition Liabilities, And Pending Injunctive Relief ....................................................4
    1.  The Illinois Trade Secret Case ......................................................4
    2.  Debtor Defendants' Refusal To Post A Supersedeas Bond To Stay Enforcement Of The N.D. Illinois Judgment ...........................6
    3.  The Illinois Patent Case And U.S. International Trade Commission: Limited Exclusion Order and Cease and Desist Orders and Expected Post-Petition Damages and Injunction ...............................................7

IV.  Legal Standards .....................................................................................................8

V.  Multiple Independent Bases Show Hytera's Lack Of Good Faith, Constituting "Cause" *Per Se* and Justifying Dismissal Or Suspension ......................................10
  A.  Hytera's Bankruptcy is a litigation tactic to avoid posting a bond pending appeal in parallel litigation (Factors 4 and 5) .........................................11
  B.  The Debtors' business is not a viable ongoing concern because it is based on continued infringement of Motorola's intellectual property (Factor 1) ......13
  C.  The Debtors cannot propose a meaningful reorganization plan until the litigation concludes (Factor 6) ..............................................................15
  D.  Motorola is by far the most significant creditor and sole impetus for the Debtors' bankruptcy filings (Factors 2, 3, and 7) ...................................16

VI.  Conclusion ...........................................................................................................17

# TABLE OF AUTHORITIES

**Pagparklete(s)**

**Cases**

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
    683 F.Supp. 899 (E.D.N.Y. 1988) ............................................................14

*In re Am. Spectrum Realty*,
    540 B.R. 730 (C.D. Cal. 2015) ...............................................................21

*In re Boynton*,
    184 B.R. 580 (Bankr. S.D. Cal. 1995) ...........................................11, 13

*In re Byrd*,
    172 B.R. 970 (Bankr. D. Wash. 1994) ...................................................11

*In re Curtis*,
    40 B.R. 795 (Bankr. D. Utah 1984) ..........................................10, 18, 21

*In re Duratech Indus., Inc.*,
    241 B.R. 291 (Bankr. E.D.N.Y. 1999) ...................................................16

*In re Erkins*,
    253 B.R. 470 (Bankr. D. Id. 2000)..............................................11, 13, 17

*In re Greenberg*,
    No. 3:15-BK-06578-MM, 2017 WL 3816042 (B.A.P. 9th Cir. Aug. 31, 2017) .............................9

*In re Harvey*,
    101 B.R. 250 (Bankr. D. Nev. 1989) ......................................................11

*In re Integrated Telecom Express, Inc.*,
    384 F.3d 108 (3d. Cir. 2004)............................................................7, 11

*In re Karum Group, Inc.*,
    66 B.R. 436 (Bankr. W.D. Wash. 1986) ................................................11

*In re Kronemyer*,
    405 B.R. 915 (9th Cir. BAP 2009).........................................................10

*In re Liberate Tech.*,
    314 B.R. 206 (Bankr. N.D. Cal. 2004) ...............................................8, 16

*In re Liptak*,
    304 B.R. 820 (Bankr. N.D. Ill. 2004) ....................................................11

*In re Mense*,
    509 B.R. 269 (Bankr. C.D. Cal. 2014)...........................................*passim*

*In re Prometheus Health Imaging, Inc.*,
  No. BAP CC-14-1576-FKIKU, 2015 WL 6719804 (B.A.P. 9th Cir. Nov. 2, 2015) ....................9

*In re Quintrall*,
  No. 06-1418-MoHB, 2007 WL 7540996 (9th Cir. BAP July 5, 2007) ................................10, 21

*In re Roger*,
  539 B.R. 837 (C.D. Cal. 2015) ......................................................................9, 10, 11, 21

*In re Sparklet Devices, Inc.*,
  154 B.R. 544 (E.D. Mo. 1993) .......................................................................................17

*In re St. Paul Self Storage Ltd. P'ship*,
  185 B.R. 580 (B.A.P. 9th Cir. 1995) ................................................................................8

*In re Wally Findlay Galleries (New York), Inc.*,
  36 B.R. 849 (Bankr. S.D.N.Y. 1984) ..............................................................................11

*In re Windscheffel*,
  No. 2:15-BK-19933-SK, 2017 1371294 (B.A.P. 9th Cir. Apr. 3, 2017) ...............................12, 17

*Larami Ltd. v. YES! Entertainment Corp.*,
  244 B.R. 56 (D.N.J. Feb. 3, 2000) ..............................................................................14, 15

*Mahmood v. Khatib*,
  No. 2:15-BK-25281-DS, 2017 WL 1032569 (B.A.P. 9th Cir. Mar. 17, 2017) ............................9

**Statutes**

11 U.S.C. § 305(a)(1) ....................................................................................................9

11 U.S.C. § 341 .......................................................................................................4, 14

11 U.S.C. § 362 .................................................................................................... *passim*

11 U.S.C. § 362(a) .........................................................................................................9

11 U.S.C. § 362(d)(1) ..............................................................................................8, 18, 21

11 U.S.C. § 507(a)(2) ...................................................................................................15

11 U.S.C. § 522(f) ........................................................................................................10

11 U.S.C. § 1112(b) ...................................................................................................1, 7

11 U.S.C. § 1112(b)(1) ...................................................................................................8

11 U.S.C. § 1112(b)(4)(A)–(B)..........................................................................................8

28 U.S.C. § 157..............................................................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28 U.S.C. § 157(b) .................................................................................................3

28 U.S.C. § 1334 ...................................................................................................3

28 U.S.C. § 1408 ...................................................................................................3

28 U.S.C. § 1409 ...................................................................................................3

**Rules**

Fed. R. Civ. P. 62 ..........................................................................................6, 11, 12

Motorola Solutions, Inc. ("Motorola") respectfully submits this memorandum of points and authorities, together with the concurrently filed Declaration of Christopher Lawless (including all exhibits thereto), in support of its Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) or, in the alternative, to Suspend Case Pending Resolution of District Court Matters Pursuant to 11 U.S.C. § 305.

## I.    INTRODUCTION

Chapter 11 bankruptcy is intended to protect companies attempting to preserve a lawful business in good faith. This bankruptcy is the opposite of that, and should be dismissed, or in the alternative, suspended pending resolution of a trade secret action currently pending—and nearly completed—before Judge Norgle in the United States District Court for the Northern District of Illinois. In that case, a jury found the Debtor Defendants and their publicly-traded corporate parent to be liable for willfully and maliciously stealing Motorola's trade secrets and copyrighted source code, awarding approximately $765M in damages to Motorola, in February of this year. Judge Norgle is currently considering a request to permanently enjoin the Debtors' corporate parent from continuing to sell and use Motorola's stolen technology throughout the world.

The Debtors brought the pending proceedings before this Court in circumstances that multiple other cases recognize to be *per se* bad faith, requiring dismissal: that is, to avoid posting supersedeas bonds and the entry of a permanent injunction in pending litigation, so that they may continue to make illegal sales of products containing Motorola's stolen intellectual property. As confirmed by the judgment entered against the Debtors by the Northern District of Illinois, the Debtors and their parent company committed one of the largest and most egregious technology thefts in history. The sheer volume of materials they stole is staggering—amounting to thousands of confidential documents and millions of lines of source code—as is their calculated attempts to conceal that theft for over a decade while reaping billions in revenues. And yet, the Debtors continue to this day to sell the products their own senior executives admit contain Motorola's confidential source code and other trade secrets.

This bankruptcy is another tactic in the Debtors' illegal campaign, this time to avoid responsibility and evade judgment, all the while continuing to make illegal sales of Hytera products throughout the United States (and around the world). This is not in dispute: the Debtors made clear

in their First Day Declaration that the sole basis for this bankruptcy was the judgment entered against them and that they will "vigorously appeal the Motorola Judgment," (which accounts for 97.5% of their liabilities), yet they have failed to post an appeal bond, and instead filed for bankruptcy. But the Federal Rules of Civil Procedure provide a different mechanism for that—posting a supersedeas bond—which stays enforcement of the judgment while at the same time ensuring that the judgment will be collectable, and that pending post-trial motions (including for post-trial injunctive relief) can be adjudicated. The Debtors chose not to seek *that* stay, or even attempt to post the bond required for such a stay, and instead filed their petitions here—impermissibly using Chapter 11 to evade the supersedeas bond requirement while unabashedly continuing their illegal sales of stolen technology. This is precisely what numerous courts have deemed to present a "classic" bad faith petition: that is, one attempting to avoid being on the hook for any amount of money, and to stop a court from enjoining them from their ongoing illegal acts.

While that alone is enough under the well-established case law to dismiss, or alternatively suspend, these proceedings and lift the automatic stay, other substantial reasons exist as well. No meaningful progress can be made in these Chapter 11 proceedings until Motorola's fully-briefed motion for a permanent injunction is resolved. The Debtors state that they are seeking a buyer for their businesses, and commenced these chapter 11 cases as a "free fall" bankruptcy while the Debtors embark on a sale process. Yet, the Debtors' business is overshadowed by the cloud of Motorola's pending injunction motion—which could permanently shut down nearly all of Debtors' illegal business operations. Prospective purchasers will massively discount Debtors' business, its assets, and even its stock of products (at least large portions of which have been found to incorporate stolen Motorola technology) until the scope of injunctive relief is determined by Judge Norgle.

Yet, Hytera seeks to use the bankruptcy and automatic stay as a means to continue its illegal activities. While the bankruptcy stay is in force, the Debtors continue their illegal use of Motorola's intellectual property, going so far as to suggest that it could somehow use Chapter 11 to sell accused assets to the very entity (its parent entity, or an affiliate) that they conspired with to orchestrate the misappropriation and infringement in the first place. Even the non-Debtor parent is attempting to utilize the stay to continue *its own* illegal actions, filing a motion to stay in the Northern District of

Illinois seeking in effect to extend the automatic stay for the benefit of a non-Debtor entity facing patent infringement claims until this Court can conclude the sale process.  Simply put, this Court should not countenance Hytera's bad faith use of Chapter 11 to avoid posting an appellate bond, shelter its ongoing illegal infringement, and launder the Debtors' assets.

If anything, continuing these proceedings at this juncture does nothing more than deplete the bankruptcy estate, while Debtors incur increasing and post-petition liability to their largest creditor—Motorola—as a result of their ongoing illegal sales.  For these reasons, the Court should dismiss these proceedings, or, in the alternative, suspend the proceedings to, at a minimum, allow Judge Norgle to complete his adjudication of the pending motion for permanent injunction.  As additional alternative relief to dismissal, Motorola is concurrently filing a separate Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 pursuant to Local Bankruptcy Rule 4001-1.

## II.    JURISDICTION

The United States Bankruptcy Court for the Central District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    FACTUAL BACKGROUND

### A.    Creditor Motorola Solutions, Inc.

Motorola Solutions, Inc. is an American data communications and telecommunications equipment provider that was founded in 1928.[1]  Around the world, Motorola Solutions leads the industry in two-way digital radio products, technologies, and supporting infrastructure.  Motorola employs thousands of engineers in the United States, and around the world, and spends hundreds of millions of dollars annually to research new technologies and develop digital mobile radio ("DMR") products for many industries and mission-critical applications.

### B.    Relevant Hytera Entities

Non-debtor Hytera Communications Corp. Ltd. ("Hytera China"), a publicly-traded company headquartered in Shenzhen, China, is the ultimate parent of all of the Debtors.  Hytera China

---

[1] In 2011, Motorola, Inc. changed its name to Motorola Solutions, Inc.

manufactures, and *inter alia* imports into the United States, radio equipment, software, and accessories that are sold and supported by the Debtors.  Dkt. 17 (First Day Decl. of Ni Huang) at ¶¶ 9–10.  Debtor Hytera Communications America (West), Inc. ("Hytera West") and debtor Hytera America, Inc. ("Hytera East") are all wholly owned by Hytera China and assist with U.S.-based sales and support for the radio equipment imported into the U.S.  *Id.* ¶¶ 9–10.  Debtor Hytera North America, Inc. is a holding company for stock of Hytera West and Hytera East.  *Id.* ¶¶ 6, 9.

**C.      Hytera's Adjudged And Continued Malicious Theft And Infringement Of Motorola's Intellectual Property, Creation Of Post-Petition Liabilities, And Pending Injunctive Relief**

Debtors Hytera West and Hytera East (collectively, the "Debtor Defendants") along with Hytera China and other of its various local subsidiaries have been found in multiple jurisdictions to have stolen highly confidential trade secrets about Motorola's DMR technology and products, and to have infringed Motorola's copyrighted source code and patents.  Despite these determinations, the Debtor Defendants continue to sell the accused products to this day (as confirmed during the July 7, 2020 Meeting of Creditors pursuant to 11 U.S.C. § 341), creating significant post-petition liabilities and multiplying the already-significant harm to Motorola that the pending request for injunctive relief before Judge Norgle in Chicago is designed to address.  *See* Ex. 16 (July 7, 2020 Section 341(a) Meeting of Creditors Tr.) 54:2–22, 61:11–14.

**1.      The Illinois Trade Secret Case**

**a.      $764.5 Million Jury Verdict And Pending Requests For Worldwide Permanent Injunction**

More than a decade ago, the Debtor Defendants and Hytera China began a scheme of industrial espionage, where senior Hytera engineers and executives stole thousands of highly confidential technical documents from Motorola regarding every critical aspect of a DMR radio in order to bring a Hytera DMR product to market.  Based on those facts, on March 14, 2017, Motorola filed trade secret misappropriation claims against the Debtor Defendants and Hytera China in the United States District Court for the Northern District of Illinois under the Federal Defend Trade Secrets Act and the Illinois Trade Secrets Act (the "Illinois Trade Secret Case").  After taking fact discovery and learning that Hytera also stole Motorola's DMR source code, and copied Motorola's code into Hytera's

1  products, Motorola added claims for copyright infringement under the U.S. Copyright Act.  Dkt. 17 at

2  ¶¶ 32–33.

3        On February 14, 2020, after a four-month trial, with over 40 witnesses and hundreds of

4  exhibits, a Chicago jury returned one of the largest trade secret verdicts of all time.  The jury heard all

5  of Hytera's "defenses," but held Hytera accountable for its decade-long theft of Motorola trade secrets,

6  copyright infringement based on copying stolen source code, corresponding fraudulent concealment,

7  document destruction, and other malicious conduct.  The jury awarded the maximum amount of

8  compensatory ($345.7 million) and punitive ($418.8 million) damages sought by Motorola, after

9  hearing months of evidence of Hytera's willful and malicious conduct.  Ex. 1; Dkt. 17 at ¶¶ 30–35.[2]

10        But that lawsuit is not only about those findings and damages awards—central to Motorola's

11  requested relief in that lawsuit is obtaining an injunction against Hytera's continued sales and use of

12  Motorola's stolen DMR trade secrets and copyrighted code to halt the irreparable harm those illegal

13  acts have and continue to cause on a daily basis.  Accordingly, four days after the jury's verdict, on

14  February 18, 2020 Motorola applied for a Temporary Restraining Order enjoining the Debtor

15  Defendants, Hytera China, and all those acting together with any of them from further

16  misappropriation of Motorola's trade secrets or infringement of Motorola's copyrights, including any

17  further sales of the portable, mobile, and repeater DMR products at issue in that case, anywhere in the

18  world.  Ex. 2 at 1.  In addition to Motorola's request for entry of the TRO/preliminary injunction,

19  Motorola also moved for a permanent injunction on April 2, 2020, seeking a similar scope of injunctive

20  relief.  Ex. 3 at 1–2.

21        Absent the global pandemic, Motorola's immediate post-verdict request for a temporary

22  restraining order and preliminary injunction would likely have already been ruled on.  However, the

23  Northern District of Illinois temporarily delayed most hearings and rulings as a matter of public safety

24  and health due to the global pandemic.  Accordingly, on May 18, 2020, the Debtor Defendants, Hytera

25  China, and Motorola filed a Joint Written Status Report, acknowledging that briefing on Motorola's

26  Application for a TRO was complete, and agreeing to a schedule to complete briefing on Motorola's

27  Motion for a Permanent Injunction by June 23, 2020.  Ex. 4 at 1, 3.  At no point in negotiating these

28
_____

[2] All exhibits are submitted contemporaneously with the Declaration of Christopher Lawless.

1  dates with Motorola did the Debtor Defendants disclose any anticipated bankruptcy filing.

2         On June 9, Hytera China filed its Opposition to Motorola's motion for a permanent injunction,

3  noting that the Debtor Defendants filed for Chapter 11 bankruptcy "and thus are subject to the

4  automatic stay." Ex. 5 at 1, n.1.  Motorola filed its reply brief on June 23, 2020 supporting injunctive

5  relief against Hytera China, and briefing is now complete.  The Northern District of Illinois is expected

6  to rule on Motorola's motions for injunctive relief shortly.

7         The Debtor Defendants confirmed during the July 7, 2020 341 Meeting that they continue to

8  sell DMR products, misappropriating Motorola's stolen trade secrets and infringing Motorola's stolen

9  copyrighted source code, despite the verdict, the irreparable harm it continues to cause Motorola, and

10  creation of significant post-petition liabilities:

11         Q.  So just to make sure I have that right, the majority of the products that Hytera East sells

12         are DMR?

13         A:  In the U.S., yes. But outside of the -- the U.S., no.

14         Q:  Got it. And then for Hytera West, is it also true that the majority of the products that they

15  sell in the United States are DMR?

16         A:  Yes.

17         * * *

18         Q:  Hytera East and West are selling, servicing, and supporting DMR products right now?

19         A:  Yes.

20         * * *

21         Q:  Are there any DMR products that the debtors decided to stop selling in response to the jury

22  verdict?

23         A: We -- at current moment, we don't have any injunction. So we are selling all the products.

24  *See* Ex. 16, 54:2–22, 58:6-23, and 61:11–14.

25         **2.      Debtor Defendants' Refusal To Post A Supersedeas Bond To Stay
              Enforcement Of The N.D. Illinois Judgment**

26  The Northern District of Illinois entered Final Judgment on March 5, 2020.  Ex. 9.  Neither the

27  Debtor Defendants nor Hytera China posted an appeal bond, and accordingly, after 30 days, Motorola

28

1   could enforce the judgment.  Fed. R. Civ. P. 62.  As a result of four district-wide orders relating to

2   COVID-19, Debtor Defendants asserted that Fed. R. Civ. P. 62's 30-day automatic stay on

3   enforcement of that judgment was extended from April 4, 2020 to June 23, 2020.[3]  Although that day

4   has come and gone, the Debtor Defendants never posted a bond, nor indicated any intent to do so.

5   Instead, on May 26, 2020, the very same day that the Northern District of Illinois entered a General

6   Order indicating that it would no longer continue to extend civil deadlines in view of COVID-19,

7   Debtor Defendants filed these bankruptcy proceedings stating that they "intend to vigorously appeal

8   the Motorola Judgment" (Dkt. 17 ¶ 30), and immediately filed a "Notice of Commencement of

9   Bankruptcy Case" in the Illinois Trade Secret Case, invoking the automatic stay provision of 11 U.S.C.

10  § 362 as to the Debtor Defendants.  Ex. 11.[4]

11          **3.      The Illinois Patent Case And U.S. International Trade Commission:
                     Limited Exclusion Order and Cease and Desist Orders and Expected Post-
12                   Petition Damages and Injunction**

13          In the second case filed by Motorola in the Northern District of Illinois in 2017 (the "Illinois

14  Patent Case"), Motorola seeks additional damages and an injunction against one of the Debtors,

15  (Hytera West) and Hytera China based on their infringement of seven Motorola patents based on sale

16  of products that are subject to Motorola's motions for injunctive relief in the Illinois Trade Secret

17  Case.  Four of the seven patents at issue in that case were already found to be infringed in a co-pending

18  U.S. International Trade Commission ("ITC") investigation also initiated by Motorola in 2017.  In that

19  ITC investigation, the ITC found that Hytera infringed four Motorola patents and entered an Exclusion

20  Order barring Hytera from continuing to import, sell, market, advertise, or distribute products that

21  infringed three of those patents.  Hytera did not appeal that unfavorable ruling.[5]

---

[3]   On March 12, 2020, the Northern District of Illinois issued its General Order 20-0012 in re:
Coronavirus COVID-19 PUBLIC EMERGENCY.  That Order was amended three times (on March
16, March 30, and April 24, 2020), and Hytera contended that such amendments extended the
automatic stay of Fed. R. Civ. P. 62, preventing Motorola from enforcing its judgment until June 23,
2020.  See Ex. 4 at 2 ("Hytera . . . maintains the position that General Order 20-0012 extended the stay
of enforcement until June 23, 2020.").  On May 26, 2020, the Northern District of Illinois issued its
Fourth Amended General Order 20-0012, declining to further extend civil deadlines further at that
time.  Ex. 10 at 1 ("This Fourth Amended General Order does not extend any deadlines in civil
cases.").
[4]   Hytera's Notice did not correctly identify the true debtors, which Motorola corrected for the
Northern District of Illinois the following day, and making clear that the automatic stay did not apply
to Hytera China.  See Ex. 12.
[5]   Regional Courts in Germany also found that Hytera infringed two of Motorola's European patents.

1    Hytera West's ongoing infringement of the patents asserted in the Illinois Patent Case creates

2    additional post-petition liability.  Although Hytera China moved on June 17, 2020 to stay that case—

3    seeking to obtain bankruptcy protections based on the proceedings before this Court despite not filing

4    for bankruptcy (Ex. 6)—Motorola opposed that Motion (Ex. 7) and expects trial will occur in 2021

5    (*see* Ex. 17 at 3: October 16, 2020 last day to complete fact discovery).

6    **IV.    LEGAL STANDARDS**

7    Bankruptcy petitions shall be dismissed "for cause," which is evidenced by a lack of good

8    faith. 11 U.S.C. § 1112(b)(1). One "classic" form of bad faith constituting *per se* "cause" for dismissal

9    is using the automatic stay of bankruptcy to avoid posting an appeal bond, and "[t]he majority of

10   bankruptcy courts tackling this issue have held that the filing of a chapter 11 petition as a litigation

11   tactic to circumvent the requirement of an appeal bond in state court litigation is in bad faith." *In re*

12   *Mense*, 509 B.R. 269, 279 (Bankr. C.D. Cal. 2014) (collecting cases); *see also In re Integrated Telecom*

13   *Express, Inc.*, 384 F.3d 108, 128 (3d. Cir. 2004) ("[I]f there is a 'classic' bad faith petition, it may be

14   one in which the petitioner's only goal is to use the automatic stay provision to avoid posting an appeal

15   bond in another court.").  More specifically, Section 1112(b)(1) of the Bankruptcy Code provides:

16   [O]n request of a party in interest, and after notice and a hearing, the court
     shall convert a case under this chapter to a case under chapter 7 or dismiss
17   a case under this chapter, whichever is in the best interests of creditors and
     the estate, ***for cause*** unless the court determines that the appointment under
18   section 1104(a) of a trustee or an examiner is in the best interests of creditors
     and the estate
19
20   11 U.S.C. § 1112(b)(1) (emphasis added).  The statute includes a non-exhaustive list of certain types

21   of "cause," including "substantial or continuing loss or diminution of the estate and the absence of

22   a reasonable likelihood of rehabilitation," and "gross mismanagement of the estate."  *Id.* §

     1112(b)(4)(A)–(B).
23
24   Furthermore, "[g]ood faith is required in the commencement and prosecution of a chapter 11

25   case, and the lack thereof constitutes 'cause' for dismissal under § 1112(b)(1) and relief from the

26   automatic stay under § 362(d)(1)." *In re Mense*, 509 B.R. at 276.[6]  The "good faith" requirement for

27   ───────────────

     [6]    When the asserted "cause" is that the debtor's Chapter 11 case is an improper use of the
     bankruptcy process, the analysis is the same under § 1112(b)(1) and § 362(d)(1).  *In re Mense*,
28   509 B.R. at 276 (applying the same standard to creditor's alternative motions to dismiss or for
     relief from stay).

filing a petition for Chapter 11 relief is not about a debtor's subjective intent, but rather, "is intended to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Liberate Tech.*, 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004). "Bankruptcy courts must divine the existence of good faith [based upon] an amalgam of factors and not upon a specific fact." *In re Mense* at 277 (internal quotations omitted). Pertinent factors include "the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives," "intent to abuse the judicial process and the purposes of the reorganization provisions . . . particularly where there is not realistic possibility of an effective reorganization" (*id.*) and whether the case is "essentially a two party dispute capable of prompt adjudication in state court." *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995).

"When a debtor files chapter 11 to dodge the requirement for an appeal bond, a court's determination of good faith typically hinges on the following factors:"

1. Whether the debtor is a viable business which would suffer severe disruption if enforcement of the judgment was not stayed; and the chapter 11 petition was filed to preserve its status as an ongoing concern and to protect its employees and creditors;

2. Whether the debtor had financial problems on the petition date, other than the adverse judgment;

3. Whether the debtor has relatively few unsecured creditors, other than the holder of the adverse judgment;

4. Whether the debtor has sufficient assets to post a bond to stay the judgment pending appeal;

5. Whether the debtor acted in good faith to exhaust all efforts to obtain a bond to stay the judgment pending appeal;

6. Whether the debtor intends to pursue an effective reorganization within a reasonable period of time, or whether the debtor is unwilling or unable to propose a meaningful plan until the conclusion of the litigation; and

7. Whether assets of the estate are being diminished by the combined ongoing expenses of the debtor, the chapter 11 proceedings, and prosecution of the appeal.

*In re Mense* 509 B.R. at 279–281. The Court, however, "is not required to find that each factor is satisfied or even to weigh each factor equally. Rather, the . . . factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *In re Prometheus Health Imaging, Inc.*, No. BAP CC-14-1576-FKIKU, 2015 WL 6719804, at *4 (B.A.P. 9th Cir. Nov. 2, 2015) (citations and internal quotations omitted). "A bankruptcy court may find one factor dispositive or may find bad faith even if none of the factors are present." *In re Greenberg*, No. 3:15-BK-06578-MM, 2017 WL 3816042, at *5 (B.A.P. 9th Cir. Aug. 31, 2017) (citing *Mahmood v. Khatib*, No. 2:15-BK-25281-DS, 2017 WL 1032569, at *4 (B.A.P. 9th Cir. Mar. 17, 2017)).

Finally, "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if— the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

## V.   MULTIPLE INDEPENDENT BASES SHOW HYTERA'S LACK OF GOOD FAITH, CONSTITUTING "CAUSE" *PER SE* AND JUSTIFYING DISMISSAL OR SUSPENSION

There is no legitimate question the Debtors lacked good faith and a legitimate bankruptcy purpose in filing for Chapter 11 relief. The Debtors here lack a legitimate bankruptcy purpose and filed this case in bad faith, establishing "cause" compelling that the case be dismissed for multiple, independent reasons. Instead, as detailed below, this bankruptcy is part of Hytera's plan to frustrate and evade judgment enforcement, refusing to take responsibility, and attempting to misuse Chapter 11—in concert with its parent Hytera China and other Hytera affiliates—to escape liability and continue to profit from their malicious theft of Motorola's intellectual property. While the Court can find "cause" to dismiss based on any one of a number of factors relevant to this case, the simple fact is that the Debtor Defendants filed these bankruptcy proceedings to avoid the judgment pending against them, and more specifically "to dodge the requirement for an appeal bond." Many courts have found that fact alone merits dismissal. *In re Mense*, 539 B.R. at 279–80; *In re Integrated Telecom Express, Inc.*, 384 F.3d at 128; *In re Liptak*, 304 B.R. 820 (Bankr. N.D. Ill. 2004); *In re Erkins*, 253 B.R. 470 (Bankr. D. Idaho 2000); *In re Boynton*, 184 B.R. 580 (Bankr. S.D. Cal. 1995); *In re Byrd*, 172 B.R. 970 (Bankr. W.D. Wash. 1994); *In re Harvey*, 101 B.R. 250 (Bankr. D. Nev. 1989); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr. S.D.N.Y. 1984); *In re Karum Group,*

*Inc.*, 66 B.R. 436 (Bankr. W.D. Wash. 1986). As discussed below, the other facts and circumstances are highly supportive of that conclusion, and further, at a minimum, merit suspending the case for the benefit of all creditors and the debtors until the scope of injunctive relief is determined.

### A.    Hytera's Bankruptcy is a litigation tactic to avoid posting a bond pending appeal in parallel litigation (Factors 4 and 5)

The Debtor Defendants filed for bankruptcy to end-run the supersedeas bond required by Rule 62 of the Federal Rules of Civil Procedure to stay enforcement of judgment in the Illinois Trade Secret Case pending appeal. This is a "classic" example of bad faith and ground for dismissal. *In re Integrated Telecom Express, Inc.*, 384 F.3d at 128.

It is undisputed that the Debtor Defendants consciously chose not to post an appeal bond, but instead filed these bankruptcy petitions, and immediately claimed shelter against enforcement in the Illinois Trade Secret Case. Ex. 11. Specifically, Debtors do not dispute that the automatic stay under Fed. R. Civ. P. 62 expired, at the latest, on June 23, 2020. Ex. 4 at 2. And yet, Debtors did not post a bond, or seek any extension of the deadline to do so. *See supra*, Section III.C.2. Instead, Debtors filed these proceedings on the very day that the Northern District of Illinois indicated it would no longer extend civil deadlines (including, according to the Debtor Defendants, the stay of execution of the Court's judgment against them) in view of COVID-19, and immediately claimed protection under 11. U.S.C. § 362. Ex. 11; Ex. 12. There is no question that the purpose of these bankruptcy proceedings was to stay the Illinois Trade Secret Litigation and avoid posting a bond. Debtors identified the judgment in their First Day Declaration as the sole reason for their petitions here. Dkt. 17 ¶¶ 31–42 ("Events Leading To The Bankruptcy"). Moreover, the judgment in the Illinois Trade Secret Case makes up 97.5% of all of Debtors' liabilities, and it undisputed that the Debtors are not in need of Chapter 11 protections for the remaining 2.5%. *See* Section V.A.4 below (showing how Debtors' assets and accounts receivable vastly exceed their liabilities, excluding Motorola's judgment against them). This conduct constitutes "bad faith" (i.e., "cause") warranting dismissal. *In re Mense*, 509 B.R. at 279 ("filing of a chapter 11 petition as a litigation tactic to circumvent the requirement of an appeal bond in state court litigation *is in bad faith*.") (emphasis added).

Indeed, there is no evidence of *any* attempts by the Debtor Defendants to obtain an appeal

bond, let alone reasonable attempts to "exhaust all efforts" to do so, including via its parent and co-defendant in the Illinois Trade Secret Case, Hytera China.[7] *In re Mense* at 280 (factors 4 and 5). While the Debtors may claim that they are individually unable to obtain a bond for the entirety of Motorola's judgment, there is no question that a bond could be obtained by Hytera China; regardless, numerous courts have dismissed bankruptcies on similar facts, even where the debtor claimed an inability to obtain a bond but the totality of circumstances evidenced an intent to evade the bond requirement. *See In re Windscheffel*, No. 2:15-BK-19933-SK, 2017 1371294 at *1 (B.A.P. 9th Cir. Apr. 3, 2017) (totality of circumstances warranted dismissal where debtor "claimed that he was unable to post the required supersedeas bond to stay enforcement of the judgment" but had few creditors and proposed a plan that was "a thinly veiled attempt to avoid the state court's award of punitive damages"); *In re Erkins*, 253 B.R. at 475–77 (granting motion to dismiss where Debtors argued inability to obtain a bond, but "Debtors can obtain a prompt adjudication of what is basically a two-party dispute in the nonbankruptcy court," debtors intended to continue litigating against creditor, and debtors' "sole objective is to simply stay Creditor's collection efforts while they continue their fight on appeal without the financial burden associated with posting a proper appeal bond"); *In re Boynton*, 184 B.R. at 581, 584 (granting motion to dismiss where "bankruptcy process being used to coerce a settlement of a judgment" "while preventing [creditor] from attaching any assets to satisfy its judgment").

Debtors' filing of these proceedings in lieu of posting a bond is not by coincidence—to the contrary, Debtors have explicitly expressed their intent to make the judgment uncollectable, by avoiding any obligation to pay using any means possible—legal or illegal. As confirmed by a court in the United Kingdom in co-pending proceedings, top-level executives of Hytera China —on behalf of the Debtor Defendants—told top-level Motorola executives that, no matter how Motorola's many claims against Hytera turn out, Hytera had taken, and would continue to take, significant (and illegal) measures to frustrate Motorola's enforcement of any forthcoming "unacceptable" judgment. *See* Ex. 14 ¶ 38 (Hytera's CFO explained to Motorola, in the presence of Hytera's CEO, its "retreat to China"

---

[7] Motorola has asked Hytera multiples times if it would post a bond, and Hytera has refused to answer. And during the July 7, 2020 Meeting of Creditors, the Debtors claimed privilege over whether they will ever post a bond, and whether they have made any attempt to obtain an appeal bond. Ex. 16 at 62:23–63:11.

plan whereby Hytera would undercapitalize subsidiaries operating outside of China to minimize cash

holdings, shorten its payment terms to be faster than collection processes, move assets out of

enforcement-friendly jurisdictions, and other actions backing up the statement, "good luck

collecting").[8]

**B.    The Debtors' business is not a viable ongoing concern because it is based on continued infringement of Motorola's intellectual property (Factor 1)**

Although the Court need not look further than Debtors' use of the bankruptcy to avoid a posting

a bond, equally dispositive—and troubling—is Debtors' use of the bankruptcy to shield its ongoing

illegal sales of products that are based on, and use, technologies they stole from Motorola despite a

jury's verdict resoundingly confirming that theft had occurred.  It is well-established that such

conduct—where a debtor uses its bankruptcy to shield its illegal use of another's intellectual

property—independently warrants dismissal.  As explained by one court, Chapter 11 is not a tool to

continue intellectual property infringement with impunity:

> The Bankruptcy Act was intended to protect and rehabilitate debtors. It should not be used as a shield behind which a debtor may sustain the misappropriation of [intellectual property] to which he is not rightfully entitled. Nor will this Court permit it to be used as an instrument by which the damages to an innocent party may be increased unnecessarily.

*Larami Ltd. v. YES! Entertainment Corp.*, 244 B.R. 56, 58 (D.N.J. Feb. 3, 2000) (*citing Bambu Sales,*

*Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 917 (E.D.N.Y. 1988)).    This further, and

independently, merits dismissal.

As set forth above, the Debtors admitted at the July 7, 2020 Creditors' § 341 Meeting that they

continue to sell, service, and support the products found to incorporate the many trade secret

technologies they stole from Motorola.  Ex. 16 at 58:8–20, 61:9-14.  To be crystal clear, to this day,

the Debtor Defendants are selling, distributing, servicing, and supporting Hytera DMR products that

contain Motorola's stolen DMR source code, and that were designed using stolen Motorola technical

documents, as found by the Chicago jury in February.  E.g., *Id.*; Ex. 2 at 5–9; Ex. 3 at Dkt. 961-1 page

9 of 23.  The Debtor Defendants' theft was egregious, as confirmed not only by the sheer volume of

---

[8] Based on those statements by Hytera, the United Kingdom's High Court of Justice issued a Freezing Injunction on April 14, 2020 against Hytera China, restricting its ability to remove assets from its jurisdiction. *See* Ex. 13 (Freezing Injunction).

materials Debtors and their parent stole—amounting to thousands of confidential documents and millions of lines of source code—but also by their calculated attempts to conceal that theft for over a decade while reaping billions in revenues.  Ex. 8 at Dkt. 969 pages 10–11 of 23; Ex. 8 at Dkt. 969-1 ¶¶ 35, 46, 62–64.  And even after the Illinois Trade Secret Case was filed over three years ago, Debtors initiated an aggressive campaign to avoid responsibility: evading discovery, hiding and destroying evidence, and refusing to admit to even the most obvious of incriminating facts.  Despite all of that, Debtors continue to this day to sell the products its own witnesses admit contain Motorola's confidential source code and other trade secrets—something its Vice President of R&D admitted he would stop immediately, years ago, if he had the power to do so.  Ex. 3 at 961-1, page 4, n1; Ex. 8 at 969-1 ¶ 52 ("First of all, I am the vice-president of research and development [for Hytera]. If I was the president responsible for sales, I would have stopped the sales immediately.").  For these and many other reasons, the jury in Chicago easily found that Debtors had acted willfully and maliciously, awarding the entire amount of compensatory and punitive damages requested by Motorola after less than three hours of deliberations.  Ex. 2 at 2; Ex. 9.  This blatant misconduct continues to this day: even at the recent 341 Meeting, Debtors did not bat an eye when they reported that they are continuing to sell products that have been adjudicated to contain Motorola's trade secret technology—sales that are undeniably illegal, and yet which Debtors claim they will continue to make so long as these proceedings are allowed to continue.  *See* Ex. 16, 54:2–22, 61:9-14.

Further, despite the ITC patent infringement finding and the pending Illinois Patent Case, the Debtor Defendants continue to infringe Motorola's patents, including based on the sale and use of Motorola's stolen technologies.  The Debtor Defendants do so via their core business functions: selling, using, and servicing Hytera DMR products, all of which are subject to Motorola's fully-briefed motions for injunctive relief in the Illinois Trade Secret Case, and for which Motorola seeks injunctive relief in the Illinois Patent Case.

All of these actions by the Debtor Defendants are ongoing torts—not viable business activities—for which the Debtor Defendants incur further liability every day.  *Larami Ltd.*, 244 B.R. at 58–59.  This further, and independently, warrants dismissal, including to allow the Northern District

of Illinois to rule on Motorola's motions for injunctive relief.[9]

**C.     The Debtors cannot propose a meaningful reorganization plan until the litigation concludes (Factor 6)**

It is also highly improbable, if not impossible, for the Debtors to "pursue an effective reorganization within a reasonable period of time . . . until the conclusion of the litigation" given the uncertainty over their business until the scope of injunctive relief is determined.  *In re Mense*, 509 B.R. at 280 (factor 6).  This too provides an additional, independent basis for dismissal.

Indeed, Debtors acknowledge this, by suggesting that they may sell themselves *to their parent entity*.  From the outset of this bankruptcy case, the Debtors—after expounding on their sales and marketing efforts—acknowledged "a possibility that the Debtors' parent company, Hytera China, will submit a bid for substantially all of the Debtors' assets." Dkt. 17 at ¶ 7.  That is not surprising because Motorola's motion for a worldwide permanent injunction will impede a legitimate, value-maximizing sales process.  But any such contemplated sale of the Debtor Defendants' assets to their parent (who is also a defendant in the Illinois Trade Secret Case and Illinois Patent Case) or another Hytera affiliate would constitute a fraud, effectively using Chapter 11 to launder themselves, abusing the Bankruptcy process.  *See In re Liberate Tech.*, 314 B.R. 206, 208 (Bankr. N.D. Cal. 2004) (stating that courts "consistently" dismiss petitions without a present need to rehabilitate or reorganize, and finding that chapter 11 case was filed in "bad faith" when debtor sought to avoid pending litigation and use section 363 to sell assets "free and clear").

The Debtors also state that they embarked on a "fulsome sale process" in March 2020, with a "marketing and solicitation process" including "marketing materials" and "financial forecast." Dkt. 17 at ¶¶ 4, 41.  Despite having contacted "more than ninety potentially interested parties, including both strategic and financial buyers" as of over one month ago (Dkt. 17 at ¶ 41), the Debtors have not

---

[9]  All of the unsecured creditors are harmed by the Debtors' continued trade secret misappropriation, copyright infringement, and patent infringement, further supporting dismissal.  The Debtor Defendants incur additional liability and increased expenses based on these ongoing torts, creating post-petition liabilities that could deplete the bankruptcy estate.  *Larami Ltd.*, 244 B.R. at 58 (Section 362(a)(3) "does not bar this Court from entertaining plaintiff's suit for damages, nor would it prevent the Court from issuing an injunction which prevented [infringer] from manufacturing and selling the infringing water guns.").  Such new claims further subordinate the unsecured creditors' claims, decreasing the Debtor Defendants' ability to pay.  *See* 11 U.S.C. § 507(a)(2).  This harm should be abated by dismissing the case and allowing the Northern District of Illinois to determine the scope of injunctive relief to stop further post-petition liabilities based on intellectual property infringement.

1  filed any restructuring plan or disclosed any actual or potentially-interested buyer.  During the 341

2  Meeting, the Debtors stated that three entities have made offers in response to the Debtors' marketing

3  process, however, the Debtors could not identify any specific entity that made an offer, what the offer

4  encompassed, whether the offer included DMR products subject to Motorola's motion for a permanent

5  injunction, or any other substantive information (other than that one of the entities is a Hytera affiliate).

6  *See* Ex. 16, 55:2–56:25.  That is not surprising:  no genuine strategic buyer or investor would rationally

7  purchase the Debtors' assets (absent a massive discount detrimental to all creditors) with the cloud of

8  Motorola's motion to permanently enjoin Hytera China around the world from making, selling, or

9  importing DMR products hanging overhead in the Illinois Trade Secret Case.  Indeed, until the scope

10 of injunctive relief is determined, no reasonably-reliable financial forecast of the Debtors' business

11 could be generated.  *In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr. E.D.N.Y. 1999) ("The

12 success or failure of [the] chapter 11 case wholly depends upon the outcome of the pending litigation

13 . . . .  It is, therefore, in the interest of both creditors and the debtor for this Court to suspend any further

14 proceedings in this case in order to conserve the modest resources of its estate.").

15        Simply put, dismissing this case, or suspending it until the scope of injunctive relief is resolved,

16 is a prerequisite to a legitimate marketing and sales process in order for the Debtors to obtain the

17 highest sale price, which will benefit all creditors, and the Debtors.  Indeed, the Debtors' legitimate

18 interests are better served by suspension because the Northern District of Illinois will clarify what

19 Hytera assets may be sold, and which may not.

20        **D.    Motorola is by far the most significant creditor and sole impetus for the Debtors'**
             **bankruptcy filings (Factors 2, 3, and 7)**

21        Finally, the Debtors have relatively few unsecured creditors other than Motorola (*Mense* factor

22 3).  Moreover, Motorola's claim constitutes approximately ***97.5% of all of the Debtors' liabilities.***

23 *See* Dkt. 92 at 8.  Unquestionably, this Chapter 11 case is a continuation of a two-party dispute between

24 Hytera and Motorola.  All other claims are *de minimis* relative to Motorola's judgment, and this fact

25 favors dismissal for resolution in the nearly-concluded Illinois Trade Secret Case.  *Cf. In re Mense*,

26 509 B.R. at 281 (dismissing chapter 11 case where debtors had "few unsecured creditors" other than

27 judgment creditor); *In re Windscheffel*, 2017 WL 1371294, at *5 (affirming dismissal where claims of

28

1  other unsecured creditors were "negligible" compared to judgment creditor's claim); *In re Erkins*, 253

2  B.R. at 475 ("Debtors have few debts besides that of the Creditor, and little in the way of unsecured

3  debts."); *In re Sparklet Devices, Inc.*, 154 B.R. 544, 550 (E.D. Mo. 1993) ("Debtor's schedules reveal

4  that Debtor has relatively few unsecured creditors other than the debt to [moving creditor].").

5       While the Debtor Defendants may claim that they had financial problems on the petition date,

6  other than the adverse judgment (*Mense*, 509 B.R. at 280 (factor 2)), the Debtors' just-submitted

7  Schedule of Assets and Liabilities shows otherwise.  Hytera West lists $14.9 million of assets, $9.5

8  million in accounts receivable (including amounts owed by Hytera affiliates (Ex. 16 at 23:22–24:5)),

9  and $19.6 million in liabilities (excluding Motorola's $764,561,156 judgment).  Dkt. 92 at 8, 11.

10  Hytera East lists $38.0 million of assets, $27.9 million in accounts receivable (including amounts owed

11  by Hytera affiliates (Ex. 16 at 32:12–33:4)), and $41.5 million in liabilities (excluding Motorola's

12  judgment). Dkt. 11 (508 case) at 8, 11.  And the sole basis for the bankruptcy filings as stated in

13  Hytera's First Day Declaration was Motorola's judgment, and not other liabilities, an inability to

14  secure credit or raise capital, or any other reason.  Dkt. 17 at Section III.

15       The Debtors have made it clear to Motorola that they will do whatever is possible to evade

16  paying Motorola any amount of the judgment in the Illinois Trade Secret Case, including through

17  executives of Hytera China, even by unlawfully moving assets outside the reach of United States

18  courts.  While Motorola pursues enforcement, the "assets of the [debtors'] estate are being diminished

19  by the combined ongoing expenses of the debtor, the chapter 11 proceedings, and prosecution of the

20  appeal." *In re Mense*, 509 B.R. at 280–81 (factor 7).  This is particularly wasteful where the Debtors

21  are engaged in a marketing and sales process before the scope of injunctive relief is determined in the

22  Illinois Trade Secret Case.  This further merits dismissal.

23  **VI.    CONCLUSION**

24       This case is Hytera's latest attempt to avoid the consequences of its malicious intellectual

25  property theft and to further profit from its theft of Motorola's cutting-edge technology.  The Debtors

26  should not have filed this case, and they should not be permitted to use the Bankruptcy Court as an

27  instrument to evade or delay enforcement of judgment entered in the Illinois Trade Secret Case.

28  Motorola respectfully believes that the case should be dismissed, or in the alternative, the case

suspended.  Should the Northern District of Illinois grant Motorola's motion for a preliminary or permanent injunction while this motion is pending, Motorola believes the motion should still be granted to allow Motorola to petition that court to apply its ruling to the Debtor Defendants.

DATED:  July 14, 2020

/s/ Mark McKane

Mark McKane

Michael De Vries (State Bar No. 211001)
Christopher Lawless (State Bar No. 268952)
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680 8500
Email: michael.devries@kirkland.com
        clawless@kirkland.com

Mark McKane, P.C. (State Bar No. 230552)
Adam R. Alper (State Bar No. 196834)
Brandon H. Brown (State Bar No. 266347)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: MMcKane@kirkland.com
        aalper@kirkland.com
        bhbrown@kirkland.com

Chad J. Husnick (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: chusnick@kirkland.com

Attorneys for Motorola Solutions, Inc.