IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

|  |  |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD., <br><br> Plaintiffs, <br><br> v. <br><br> HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., and HYTERA COMMUNICATIONS AMERICA (WEST), INC., <br><br> Defendants. | Case No. 1:17-cv-01973 <br><br> Judge Charles R. Norgle |

## ORDER

The Court grants Plaintiffs' amended bill of costs [1044-8] in full. Plaintiffs' original bill of costs [1000] is denied as moot. The Court taxes Hytera Communications Corporation Ltd. for costs in the amount of $2,674,631.36. This order is without prejudice as to Plaintiffs seeking costs or other relief from Hytera America, Inc. and Hytera Communications America (West), Inc. at a later date.

## MEMORANDUM OPINION

After a nearly four-month trial, a jury found for Plaintiffs Motorola Solutions, Inc. and

Motorola Solutions Malaysia Sdn. Bhd. ("Motorola") on every issue and awarded the full amount

of damages Motorola requested, approximately $345 million in compensatory damages and $418

million in punitive damages.[1] The Court entered judgment on the verdict. Dkt. 947; 948. As the

prevailing party, Motorola filed a bill of costs, and a supporting memorandum, arguing that the

Court should tax Defendant Hytera Communications Corporation Ltd.[2] ("Hytera") in the amount

---

[1] Damages were later reduced to $543.7 million. Dkt. 1099.

[2] The other Defendants have filed for Chapter 11 bankruptcy, so Motorola seeks costs only from the non-debtor defendant at this time. Motorola's motion is without prejudice to seeking costs or any other relief from Hytera America, Inc. and Hytera Communications America (West), Inc. at a later date.

of $2,674,631.36. Hytera argues that Motorola is entitled to just $168,792.92. For the following reasons, the Court grants Motorola's amended bill of costs in full and awards Motorola taxable costs from Hytera in the amount of $2,674,631.36.

The Court first notes that Motorola changed the amount it requested when it submitted its Reply. Dkt. 1044. In its original bill of costs, Motorola requested a total of $2,683,973.68. Dkt. 1000. Then, with its Reply Brief, Motorola attached an amended bill of costs which reduced the amount of requested costs for trial transcripts and increased the amount requested for interpreter costs. Dkt. 1044-8 (Bill of Cost (Amended)). Motorola attached a declaration from its counsel explaining the discrepancy between the two bills of costs. Dkt. 1044-9. Counsel stated that in Motorola's original bill of costs, Motorola inadvertently used a higher, actually-billed, per-page rate for transcript printing rather than the lower, statutory one for certain invoices. Id. at 1. Next, counsel stated that Motorola made two mistakes regarding interpreter costs in its original bill of costs. First, it included some entries for written document translation that should not have been included. Second, it inadvertently and improperly under-calculated the total of the original interpreter entries. Id. at 2. Accounting for these changes, Motorola's amended bill of costs reduced the total amount requested by $9,342.32, to $2,674,631.36. The Court accepts and awards the resulting reduced total amount.

The Court may tax costs pursuant to 28 U.S.C. § 1920, which provides that:

> A judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; (6) and compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the

2

judgment or decree. 28 U.S.C. § 1920; see L.R. 54.1; Fed. R. Civ.
P. (54)(d).

To award a cost, the Court must determine "(1) whether the cost imposed on the losing

party is [statutorily] recoverable and (2) if so, whether the amount assessed for that item was

reasonable." Hillmann v. City of Chicago, No. 04 C 6671, 2017 WL 3521098, at *2 (N.D. Ill. Aug.

16, 2017) (citing Majeske v. City of Chi., 218 F.3d 816, 824 (7th Cir. 2000)). "In order to recover

costs, the prevailing party bears the burden to show that the requested costs were necessarily

incurred and reasonable." Gecker as Tr. for Collins v. Menard, Inc., No. 16 C 50153, 2020 WL

1077695, at *1 (N.D. Ill. Mar. 6, 2020) (quoting Trs. of the Chi. Plastering Inst. Pension Trust v.

Cork Plastering Co., 570 F.3d 890, 906 (7th Cir. 2009)). "[T]here is a presumption that the

prevailing party will recover costs, and the losing party bears the burden of an affirmative showing

that taxed costs are not appropriate." Hillman, 2017 WL 3521098 at *2 (quoting Beamon v.

Marshall & Ilsley Tr. Co., 411 F.3d 854, 864 (7th Cir. 2005)); see also Massuda v. Panda Express,

Inc., No. 12 CV 9683, 2014 WL 148723, at *2 (N.D. Ill. Jan. 15, 2014) (Prevailing parties "bear

the burden of demonstrating that the costs were necessary and reasonable. . . . If this burden is

satisfied, [the losing party] must then show that the costs are inappropriate."). "Under Rule 54(d),

'district courts enjoy wide discretion in determining and awarding reasonable costs.'" Hillman,

2017 WL 3521098 at *2 (quoting Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.,

924 F.2d 633, 642 (7th Cir. 1991)).

The Court will address each pertinent section in 28 U.S.C. § 1920 in turn. Because

Plaintiffs do not request any docket fees under 28 U.S.C. § 1923, the Court will not consider 28

U.S.C. § 1920(5).

<u>I. Fees of the Clerk and Marshal</u>

Plaintiffs request $1,600 in fees of the clerk pursuant to 28 U.S.C. § 1920(1) stemming

3

from sixteen *pro hac vice* admission fees paid by Motorola. Dkts. 9, 13, 14, 15, 16, 63, 72, 75, 138, 168, 327, 441, 660, 663, 716 and 727. Dkt. 1000-4 (Appendix A). Those fees are recoverable. Eagle F. v. Phyllis Schlafly's Am. Eagles, 498 F. Supp. 3d 1024, 1036 (S.D. Ill. 2020) (citing United States v. Emergency Med. Assocs. of Illinois, Inc., 436 F.3d 726, 730 (7th Cir. 2006)). Hytera argues that "[t]he weight of authority in this Circuit . . . indicates that courts normally decline to award *pro hac vice* costs." Oleksy v. Gen. Elec. Co., No. 06-CV-1245, 2016 WL 7217725, at *2 (N.D. Ill. Dec. 12, 2016). But there is also "some authority to support both sides of the split," id., and this lengthy and complex case was not normal. Hytera argues that Motorola's counsel—Kirkland & Ellis—is a Chicago-based firm, and Motorola could have hired Chicago-based Kirkland attorneys rather than out-of-state attorneys. However, this ignores the realities of international law firm practice in litigation like this, and the $1,600 in *pro hac vice* fees is reasonable. Thus, the costs here are recoverable.

Motorola also asserts that it should be paid $1,235 in fees of the marshal under 28 U.S.C. § 1920(1) for service of (1) the summons and complaint on Hytera and (2) document and deposition subpoenas to seventeen of Hytera's dealers and one accounting firm Hytera used. Dkt. 1000-5 (Appendix B). Hytera does not oppose that request, and the Court would grant those costs regardless as they are recoverable and the requested rate is reasonable. Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc., 106 F. Supp. 3d 927, 946 (N.D. Ill. 2015); Serwatka v. City of Chicago, No. 08 C 5616, 2011 WL 2038725, at *3 (N.D. Ill. May 24, 2011); see 28 C.F.R. § 0.114; Schultz v. iGPS Co. LLC, No. 10-cv-00071, Dkt. No. 403, at *4 (N.D. Ill. May 8, 2013).

## II. Fees for Necessary Transcripts

Motorola requests $274,052.50 for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). That includes $215,703.70 for costs

related to deposition transcript production[4] and $58,348.80 for costs related to hearing and trial transcript production.[5] The Court discusses both in turn below.

### A. Deposition-Related Transcript Costs

Deposition costs like printed or electronic transcripts are recoverable if they were "'reasonably necessary' to the case at the time they were obtained." Smith v. Chicago Transit Auth., No. 12 C 8716, 2015 WL 2149552, at *5 (N.D. Ill. May 6, 2015) (citing Cengr v. Fusibond Piping Sys., Inc., 135 F.3d 445, 455 (7th Cir. 1998)). "The introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition." Id. "[I]n law the word 'necessary' often does not live up to the impression it conveys to lay readers . . . We have understood § 1920 as requiring no more than that the transcripts or copies be reasonably and prudently obtained—which depends on how things seemed when the expenditures were made, without the benefit of hindsight." Nat'l Org. for Women, Inc. v. Scheidler, 750 F.3d 696, 698–99 (7th Cir. 2014) (rejecting need for document-specific inquiry). While "courts may not tax the costs of transcripts . . . provided merely for the convenience of the requesting attorney, a transcript need not be absolutely indispensable in order to provide the basis of an award of costs." Majeske v. City of Chicago, 218 F.3d 816, 825 (7th Cir. 2000).

Motorola's requested deposition costs can be classified into five categories: (1) $43,800.20 in transcript costs; (2) $76,013.75 in videotaping costs; (3) $67,757.40 in real-time transcription costs; (4) $20,452.35 in exhibit scanning costs; and (5) $7,680.00 in cancellation fees. Dkt. 1044-7 (Appendix J) (listing costs in a chart). The Court will address each.

---

[4] Dkt. 1000-6 (Appendix C).
[5] Dkt. 1044-9 at 5-35 (corrected Appendix D).

### 1. Transcripts

Motorola's deposition transcript costs of $43,800.20 were reasonably necessary to demonstrate the merits of its claims against Hytera. Motorola describes how it deposed over 50 people regarding issues like company history, sales, trade secrets, financial information, knowledge of material theft, attempts at developing products, document storage, and refutation of defenses. Motorola supports its claim through documentation in the form of a chart and voluminous invoices. Dkt. 1000-6.

Hytera argues that deposition-related transcript costs should be reduced to $36,179.45. Dkt. 1036 at 11. It argues that many of the depositions themselves were not reasonably necessary. Specifically, it points to three depositions "and others" that had to be rescheduled because Motorola failed to adequately prepare the witnesses regarding trade secret testimony. Dkt. 1036 at 7. But Hytera cites only to its own motion to compel, Dkt. 506, and that motion was withdrawn. Dkt. 523. Hytera next argues that certain Motorola depositions used in this case were actually taken in other matters—a U.S. International Trade Commission matter and a patent case in the Northern District of Ohio—and therefore those costs should not be recoverable here. However, the parties stipulated that those depositions taken in other matters could be used in this case. Dkt. 681-1; Dkt. 681-2. The argument is therefore rejected.

Motorola seeks the prescribed ordinary transcript rate of $3.65 per page for original transcripts and $0.90 per page for copies established by the Judicial Conferences of the United States, which is proper.[6] Hacker v. United Airlines, Inc., No. 16 C 9708, 2019 WL 2287807, at *3 (N.D. Ill. May 29, 2019). The transcripts were reasonably necessary and the transcript rates and costs were reasonable.

---

[6] UNITED STATES DISTRICT COURT - NORTHERN DISTRICT OF ILLINOIS, "Maximum Transcript Rates – All Parties," August 4, 2021, available at https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo.

2. Videotaping

Motorola asks for the cost of videotaping the depositions, $76,013.75. Hytera agrees that videotaping costs may be taxed. Little v. Mitsubishi Motors N. Am., Inc., 514 F.3d 699, 702 (7th Cir. 2008). But Hytera denies that it should be taxed for those costs because Motorola does not explain why Motorola's video deposition costs were both reasonable and necessary. The Court disagrees and finds that the costs were reasonable and necessary. First, Motorola does not seek videotaping costs for depositions of its own witnesses or Hytera's experts. Motorola only requests videotaping costs for individuals who resided outside of this Court's subpoena power for trial, reasoning that videotaping was necessary in those instances due to the uncertainty regarding whether those individuals would appear at trial. Hytera is correct when it argues that videotaping costs are not automatically taxable simply because the witnesses are located outside a Court's subpoena power. Trading Techs. Int'l, Inc. v. eSpeed, Inc., 750 F. Supp. 2d 962, 976-77 (N.D. Ill. 2010). But Hytera also included all the relevant witnesses on its list for trial, making those costs recoverable. Dkt. 690-4; Trading Techs., 750 F. Supp. 2d at 976-77 (allowing videotaping costs for those living abroad who were disclosed as potential witnesses for trial). And while videotaping costs sometimes "are not recoverable . . . because they are regarded as costs incurred for counsel's convenience," here, given the uncertainty surrounding whether those individuals—many of whom reside in China[7]—could or would testify at trial, videotaping the depositions was reasonably necessary. Engate, Inc. v. Esquire Deposition Servs. LLC, No. 01 C 6204, 2006 WL 695650, at *2 (N.D. Ill. Mar. 13, 2006) (awarding costs for both transcripts and videotapes of depositions of two witnesses "[b]ecause [they] appear to reside in England and were therefore outside the court's subpoena power" but rejecting other videotaped deposition costs).

---

[7] Motorola identifies at least twenty witnesses who lived in China. Dkt. 1000 at 5.

7

Hytera also argues that most of the video depositions were not actually played at trial, and many were merely read at trial. But it was unclear to Motorola what witnesses would be available or whether video would be necessary at trial, and "[n]ecessity is determined in light of the facts known at the time of the deposition." Trading Techs. Int'l Inc. v. eSpeed, Inc., 750 F. Supp. 2d 962, 975 (N.D. Ill. 2010). Finally, the complex nature of the case also makes the videotape costs reasonably necessary, as evidenced by the fact that Hytera itself videotaped all the depositions it took. The videotaping costs are therefore recoverable, and the costs documented by Motorola were reasonable given the number of depositions needed in this case. Dkt. 1000-6 (Appendix C).

### 3. Real-Time Transcription

Motorola requests $67,757.40 in real-time transcription costs.[8] These costs are recoverable when necessary and reasonable. Trading Techs. Int'l, Inc. v. eSpeed, Inc., 750 F. Supp. 2d 962, 975 (N.D. Ill. 2010) (discussing page rates "for real time transcripts"); Id. (Local Rule 54.1(b) limits recovery of costs like real-time transcription to copy rate established by the Judicial Conference of the United States at the time the deposition was taken); Kinzenbaw v. Case LLC, No. 05-1483, 2006 WL 1096683, at *6 (Fed. Cir. Apr. 26, 2006) (affirming award of "realtime services" when district court concluded them necessary, but not when the district court did not specifically find them necessary). Motorola argues that the technical complexity of witness testimony required real-time transcription, especially for those witnesses that testified in Mandarin Chinese with an interpreter. Abt Sys., LLC v. Emerson Elec. Co., No. 4:11CV00374 AGF, 2016 WL 5470198, at *3 (E.D. Mo. Sept. 29, 2016) ("Given the complicated and technical nature of this lawsuit, the Court finds that the costs for the RealTime transcripts at issue are recoverable.").

---

[8] "Real-time transcription is the electronic data flow from the court reporter to the computer of each person or party ordering and receiving the real-time transcription as the proceeding occurs." Press Ganey Assocs., Inc. v. Dye, No. 3:12-CV-437-CAN, 2014 WL 1874897, at *4 (N.D. Ind. May 8, 2014). It allows an attorney to review the deponent's testimony as it unfolds and to analyze testimony during breaks in order to identify issues.

The Court agrees that under these circumstances, where long gaps could have existed between questions and answers involving complex issues, real-time services were necessary. See BDT Prod., Inc. v. Lexmark Int'l, Inc., 405 F.3d 415, 419-20 (6th Cir. 2005) (affirming award of costs, including "interactive realtime," in "lengthy" trade secrets case with a "voluminous record"), abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012).

Hytera counters that real-time services in this case were a mere convenience and should not be awarded. DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l., Inc., No. 96 C 50113, 2002 WL 1969666, at *3 (N.D. Ill. Aug. 26, 2002) (deducting all charges for real-time services as not necessarily obtained, while rejecting Pioneer's argument that the services were "necessary to avoid duplicate questions"). Hytera argues that this Court has rejected the argument that the complex nature of a case justifies awarding real-time costs, citing Cascades Computer Innovation, LLC v. Samsung Elecs. Co., No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) ("the mere fact that the subject matter at issue was complicated is not sufficient to justify" awarding real-time costs). However, unlike in DeKalb, the asserted necessity here does not derive from the need to avoid duplicate questions, but from the complicated nature of the case coupled with the need for frequent, lengthy interpretation services. Neither did Cascades deal with such a combination. Hytera responds that Motorola did not need real-time services to operate perfectly well with interpretation services, as the interpretation was rendered in English. The Court disagrees, and finds the real-time costs here reasonably necessary.

In addition, the real-time costs documented by Motorola were reasonable, especially because Motorola did not use real-time transcription for every deposition. Dkt. 1000-6 (Appendix C); Press Ganey Assocs.., Inc. v. Dye, No. 3:12-CV-437-CAN, 2014 WL 1874897, at *4 (N.D. Ind. May 8, 2014) ([C]ounsel notably did not use real-time transcription for all of the depositions.

9

From that, the Court infers that strategy decisions were made about the value of particular deponents to their case, which implies that real-time transcription was a necessity with the deponents for which it was used."); Endotach LLC v. Cook Med. LLC, No. 113CV01135LJMDKL, 2016 WL 912681, at *3 (S.D. Ind. Mar. 10, 2016).

### 4. Exhibit Scanning

Motorola requests $20,452.35 in deposition exhibit scanning costs. Hytera admits that these costs are recoverable. GC2 Inc. v. Int'l Game Tech., No. 16 C 8794, 2019 WL 3410223, at *5 (N.D. Ill. July 29, 2019) (exhibit-stamping is necessary because "litigants need to use the exhibit-stamped version of a document in order to benefit from a witness's deposition testimony about the document"). Hytera argues, though, that the scanning costs here were "not helpful or necessary" and so should be denied. Crabtree v. Experian Info. Sols., Inc., No. 16 CV 10706, 2018 WL 10127090, at *2 (N.D. Ill. Oct. 15, 2018).[9] Hytera argues that through the course of discovery, Motorola continually reduced the number of trade secrets it was asserting, so that "hundreds of deposition exhibits relating to more than one hundred previously asserted trade secrets became irrelevant in the lead-up to trial." Dkt. 1036 at 10. Because those exhibits were abandoned before trial, says Hytera, those exhibits were not helpful or necessary. Therefore, Hytera reasons that Motorola should recover at most one-fourth of their exhibit costs—$5,113.09.

The Court disagrees. Hytera cites no case for the proposition that an exhibit's use at trial is the proper metric for recoverability. Motorola states it used the exhibits—most of which did not relate to trade secrets—in filings before trial. See e.g., Dkt. 217 ¶ 11. As such, the Court finds that the exhibits were helpful and necessary. Having reviewed the documented exhibit scanning costs,

---

[9] While Hytera cites Crabtree to argue that the exhibit scanning was not helpful or necessary, the Crabtree court awarded exhibit costs because Plaintiff failed "to show that the exhibits were not helpful or necessary" and stated that "exhibits can be essential to understanding the content of a deposition[.]" 2018 WL 10127090 at *2.

the Court finds that they were reasonable and will not reduce the requested amount. Dkt. 1000-6.

### 5. Cancellation Fees

Finally, regarding deposition costs, Motorola requests $7,680 in cancellation fees relating to depositions that Hytera unilaterally cancelled. "A litigant may recover a court reporter's cancellation fee." Herrera v. Grand Sports Arena, LLC, No. 17-CV-0452, 2018 WL 6511155, at *6 (N.D. Ill. Dec. 11, 2018) (denying cancellation fees because plaintiff provided no documentation to support them); Chapman v. Wagener Equities, Inc., No. 09-CV-07299, 2017 WL 2973420, at *3 (N.D. Ill. July 12, 2017) ("the party responsible for a last-minute cancellation should be the one to pay the cost of any cancellation fee" and finding that the cancellation was plaintiff's fault). Motorola lists four depositions that Hytera cancelled within either 24 or 48 hours of their occurrence in Hong Kong and provides emails and invoices that document the cancellations. Dkt. 1000-2; Dkt. 1000-3; Dkt. 1000-6.

Hytera argues that Motorola should recover none of those costs. With regard to three[10] of the four pertinent depositions, Hytera emphasizes that the magistrate judge already denied Motorola's previous motion to recover those cancellation costs. Dkt. 467. But Motorola correctly states that the previous order denying costs, which included no explanation for the denial, has no bearing now that Motorola has prevailed in the case. That denial might have been relevant if the magistrate judge had found that the cancellations were in fact Motorola's fault. But the order was silent on that point. The magistrate judge might have denied the motion for any of several reasons other than any fault of Motorola.[11] Importantly, Hytera offers no rebuttal to Motorola's assertion and documentation that those three cancellations were Hytera's fault.

---

[10] Xiaohua Zheng, Jianwu Yang, and Junping Luo. See Dkt. 1000-3.

[11] Motorola offers one such explanation: that just before the judge denied the request for costs, Motorola's counsel had emphasized that Motorola was more concerned about getting the witness deposed than about receiving costs. Dkt. 1044 at 6 n.3.

Regarding the fourth deposition,[12] Hytera seems to argue that the cancellation was not Hytera's fault. Hytera argues that the witness had visa issues, that Motorola was offered an alternative witness to depose at that time, and that Motorola was eventually able to take the deposition. But this does not rebut Hytera's responsibility for cancelling the deposition unliterally with less than 24 hours notice. No fault at all lies with Motorola. See Cascades Computer Innovation, LLC v. Samsung Elecs. Co., No. 11 C 4574, 2016 WL 612792, at *8 (N.D. Ill. Feb. 16, 2016) ("There is [] no reason Samsung should be required to shoulder any portion of the cancellation fee one interpreter charged when Cascades rescheduled the Kim deposition."). Ultimately, these four cancellations were the fault of Hytera, as documented by Motorola. The cancellation costs were necessary and reasonable, and are awarded to Motorola in full.

### B. Court-Related Transcript Costs

In its amended bill of costs, Motorola requests $50,108.40 in hearing and trial transcripts, including $41,868 for final transcripts and $8,240.40 for daily, expedited rough transcripts. Dkt. 1044-9 at 6 (amended Appendix D); Dkt. 1044-7. Hytera argues that these fees should be reduced to just $41,868. Dkt. 1066 at 11.[13] The Court will therefore discuss only the expedited transcript costs, concluding that they should be awarded.

Court transcripts are recoverable under 28 U.S.C. § 1920(2), including "trial transcripts and transcripts from other court proceedings necessarily obtained for use in the case." Majeske v. City of Chicago, 218 F.3d 816, 825 (7th Cir. 2000) (whether a party obtained a transcript out of convenience or necessity for use in the case is a question of fact). Daily trial transcripts may not

---

[12] Huang Ni. See Dkt. 1000-2.

[13] In its Response, Hytera actually asserts that there were $8,240.40 for "real-time expenses during trial." Dkt. 1036 at 11. Motorola counters that "these are not real-time expenses . . . real time services were not provided during trial. Rather, one of the court reporters referred to rough daily transcripts as 'Real Time.' Barath Decl. ¶ 5; Corrected Appendix D (removing reference to Real Time)." Dkt. 1044 at 6 n.5. The Court has no reason to doubt Motorola's correction. The Court will therefore focus only on the issue of daily rough transcripts, which Hytera briefed.

be awarded "unless [the prevailing party] can show that it was reasonable and necessary to order transcripts on an expedited basis." Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc., 873 F. Supp. 2d 939, 945 (N.D. Ill. 2012). The Court agrees with Motorola that daily transcripts were necessary and reasonable in this case, and therefore Motorola is entitled to the full hearing and trial transcript costs it seeks—$50,108.40.

Courts consider several factors when determining whether to award costs for daily trial transcripts. Shanklin Corp. v. Am. Packaging Mach. Inc., No. 95 C 1617, 2006 WL 2054382, at *1 (N.D. Ill. July 18, 2006). These factors include: "(1) the length of the trial and the complexity of the issues, (2) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (3) whether proposed findings of fact were required, (4) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (5) the size of the claim, ([6]) and the importance of witness credibility." Id. at *2 (quoting Ernst v. Anderson, 2006 WL 163024, at *2 (N.D. Ill. Jan. 18, 2006)). As Motorola argues, all factors weigh in Motorola's favor. The trial was nearly four months long, and involved complex technical issues as well as 5,200 trial exhibits and 30 witnesses. Hytera's four expert witnesses were cross examined, which was central to demonstrating the scope and extent of Hytera's theft, and Hytera cross examined three Motorola expert witnesses at length. See, eg., Trial Tr. 2474:24-2476:15 (Sun being impeached by prior deposition). Exact wording of testimony and witness credibility were therefore central issues. Hytera submitted findings of fact and Motorola responded. Dkt. 965; Dkt. 969. And the size of the claim was abnormally large, at $765 million. See Poulter v. Cottrell, Inc., No. 12-CV-1071, 2017 WL 2445129, at *6 (N.D. Ill. June 6, 2017) ("[D]aily transcripts are more likely to be considered reasonable in a longer, more complex trial."). Applying the factors, the Court awards Motorola its requested costs for final and expedited trial and hearing transcripts.

Hytera ignores the factors discussed by Motorola, instead asserting only that costs for daily transcripts should not be awarded because they were an unnecessary convenience. Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc., 873 F. Supp. 2d 939, 945 (N.D. Ill. 2012) (denying increased transcript rate because Defendants gave no explanation why they obtained a daily transcript). But even if the Court were to ignore the above factors, Hytera's own cited cases are distinguishable from the present one. Hytera focuses on two cases which declined to award daily transcript costs: Lewis v. City of Chicago, No. 04 C 6050, 2012 WL 6720411, at *8 (N.D. Ill. Dec. 21, 2012), and Perry v. U.S. Dep't of Energy, No. 05 C 3634, 2008 WL 161679, at *3 (N.D. Ill. Jan. 14, 2008). In Lewis, the Court noted that "[t]he trial in this case was straightforward and was neither complex nor relatively long," reasoning that notes, rather than daily transcripts, would have allowed counsel to prepare "just as well" as daily transcripts. 2012 WL 6720411 at *8. In Perry, the Court reasoned that the daily transcript was purely for convenience in part because "the trial time of this case was less than three full days" and "counsel for both sides could have relied on their notetaking and memories" for closing arguments. 2008 WL 161679 at *3. The present case was vastly different, involving complex, technical testimony over the course of nearly four months. Motorola's witness examinations involved repeated impeachments, questions about specific source code, and dozens of documents per day. Notes, therefore, would not suffice for those examinations. The Court finds that daily trial transcripts were necessary and the costs reasonable.[14]

---

[14] The other cases cited by Hytera are out of this Court's circuit and are not persuasive. They held, without detailed reasoning, that daily transcripts were not necessary. AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC, No. 01 CIV 11448 JGK, 2011 WL 102715, at *2 (S.D.N.Y. Jan. 6, 2011) (rejecting realtime transcripts because certain plaintiffs failed to establish that the costs were necessary); Sun Studs, Inc. v. ATA Equip. Leasing, Inc., No. CIV. 78-714-RE, 1990 WL 293887, at *1 (D. Or. Dec. 12, 1990) (concluding that daily transcript was provided for the lawyer's convenience, after parties agreed to split the cost of the daily transcript).

### III. Fees for Witnesses

Next, Motorola requests $10,367.00 in witness fees and reasonable expenses for its witnesses who testified at depositions, trial, or both. Dkt. 1000-8 (Appendix E). These reimbursement costs, including reasonable travel and lodging expenses, are authorized by 28 U.S.C. §§ 1821 and 1920(3). Majeske v. City of Chicago, 218 F.3d 816, 825 (7th Cir. 2000) (affirming taxation of reasonable witness travel and lodging expenses); Shanklin Corp. v. Am. Packaging Mach., Inc., No. 95 C 1617, 2006 WL 2054382, at *5 (N.D. Ill. July 18, 2006) ("Lodging fees are generally recoverable[.]").

Specifically, Motorola's requested costs include a $40 daily fee for each witness for days that the witnesses were deposed or attended trial. See 28 U.S.C. § 1821(a)(1) ("[A] witness in attendance at any court of the United States . . . shall be paid the fees and allowances provided by this section."); 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance."). Motorola does not ask for witness costs for days that witnesses spent preparing for deposition or trial or were merely waiting to testify. Dkt. 1000-1 at 8; Dkt. 1000-8. Motorola also requests subsistence—lodging and meals—for witnesses for the days they attended trial. Dkt. 1000-8; see 28 U.S.C. § 1821(d)(1) ("A subsistence allowance shall be paid to a witness when an overnight stay is required" and the witness cannot return home each day). Motorola calculates these costs using the rates "prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5," as permitted by Section 1821(d)(1).[15]

Hytera makes two arguments why witness costs should be denied. First, Hytera argues that Motorola should not be able to recover witness costs for its own employees, which comprise

---

[15] Per the General Services Administration, Motorola seeks $79 for meals and expenses, as well as $299 per night for lodging in November 2019 and $125 per night for lodging in December 2019 to February 2020 for days witnesses attended trial. U.S. GENERAL SERVICES ADMINISTRATION, "Per Diem Rates," available at https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=IL&fiscal_year=2020&zip=60654-8888&city=Chicago.

15

$6,432 of the roughly $10,000 requested. True, the "district court may not tax witness fees for party witnesses under 28 U.S.C. § 1920(3)." Haroco, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago, 38 F.3d 1429, 1442 (7th Cir. 1994) (noting that witness was a party to the suit when he appeared at his own deposition); Fait v. Hummel, No. 01 C 2771, 2002 WL 31433424, at *3 (N.D. Ill. Oct. 30, 2002) ("as parties to the case, [certain witnesses] may not collect witness fees or travel and subsistence expenses"). However, as Motorola points out, none of its employee witnesses here were parties. "The expenses of a director or officer of a corporation who is not personally involved in the litigation may be taxable, however, even if that individual is testifying on behalf of the organization and the latter is a party to the suit." Envirocorp Well Servs., Inc. v. Camp Dresses & McKee, Inc., No. IP 99-1575-C-T/G, 2001 WL 1112114, at *4 (S.D. Ind. Aug. 6, 2001); Id. at *4 n.9 (noting that Haroco does not apply); WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc., 25 F.3d 422, 429 (7th Cir. 1994).

Second, Hytera argues that Motorola has not provided sufficient documentation of its witness costs to recover them. Without invoices or documentation for lodging and meals, says Hytera, those costs are not recoverable. Fox v. Will Cty., No. 04 C 7309, 2009 WL 723385, at *4 (N.D. Ill. Mar. 11, 2009) ("Plaintiff has not submitted documentation for . . . airfare, meals or incidentals and, thus, those costs will not be taxed."). Motorola responds that the Court in Fox granted costs for the lodging rate set by the Administrator of General Services even without receipts. In addition, Hytera submits that Motorola's claimed hotel expenses are duplicative of a daily subsistence allowance, Reed-Union Corp. v. Turtle Wax, Inc., No. 91 C 5625, 1995 WL 138986, at *3 (N.D. Ill. Mar. 24, 1995), but that is irrelevant here because Motorola seeks the separate, statutory per diem lodging and meal allowances. Dkt. 1000-8. Ultimately, having reviewed the record, the Court finds that Motorola's witness costs are recoverable, necessary, and reasonable under the statutory per diem rates.

16

## IV. Fees for Exemplification and Necessary Copies of Materials

Motorola requests a total of $2,244,372.48 in "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). It categorizes these costs as demonstrative creation ($436,146.80);[16] demonstrative printing ($6,845.99);[17] trial exhibit printing, or photocopying ($12,672.45);[18] certified copies of copyright registrations ($2,493.00);[19] and converting and processing electronic files for production ($1,786,214.24).[20] Dkt. 1044-7 (Appendix J). The process of converting and processing electronic files can be further divided into (1) TIFFing[21] ($893,107.12); branding[22] ($446,553.56); and (2) OCRing[23] ($446,553.56). The Court will address each in turn.

### A. Creating and Printing Demonstratives

The Seventh Circuit construes "exemplification" broadly.

> In the narrowest legal sense, "exemplification" refers to "[a]n official transcript of a public record, authenticated as a true copy for use as evidence." BLACK'S LAW DICTIONARY 593 (7th ed.1999). More commonly, it signifies the act of illustration by example, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 406 (10th ed.1993), a connotation broad enough to include a wide variety of exhibits and demonstrative aids. Our own cases embrace the more expansive definition of "exemplification."

---

[16] See Dkt. 1000-13 (Wozniak Declaration).
[17] See Dkt. 1000-9 (Appendix F).
[18] See Dkt. 1000-10 (Appendix G).
[19] See Dkt. 1000-11 (Appendix H).
[20] See Dkt. 1000-14 (Bayer Declaration).
[21] TIFF stands for "Tagged Image File Format," and is a file format used to store scanned images. TIFFs or TIFF files are standardized, and can be opened on any computer. "TIFFing" refers to the process of converting files into TIFF format.
[22] Branding refers to labeling documents, including applying Bates numbers and confidentiality stamps. Dkt. 1044 at 11.
[23] "OCR" stands for "optical character recognition." "OCR is a technology process that translates and converts printed matter on an image into a format that a computer can manipulate and therefore renders that matter text searchable." Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 162 n.6 (3d Cir. 2012); Windy City Innovations, LLC v. Am. Online, Inc., No. 04 C 4240, 2006 WL 2224057, at *3 (N.D. Ill. July 31, 2006).

Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 427 (7th Cir. 2000) (noting that the Seventh Circuit ordinarily construes the term to permit an award of the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials and, "more recently" . . . "the expense of graphics services employed in preparing exhibits"). The Cefalu court found exemplification costs potentially recoverable "[s]o long as the means of presentation furthers the illustrative purpose of an exhibit[.]" Id. at 428 (discussing how the cost of enlarging an exhibit, or renting a projector to display a transparency, could be necessary and recoverable despite being only involved in the presentation, rather than the production, of an exhibit). The Cefalu court also found "no limits inherent in the term 'exemplification' that would permit a court to award costs for the more familiar means of illustration—models, charts, graphs, and the like—but preclude it from compensating a party for an animated reconstruction of an accident, for example, or other types of computer-based, multimedia displays." Id. at 428; see Nilssen v. Osram Sylvania, Inc., No. 01 C 3585, 2007 WL 257711, at *5 (N.D. Ill. Jan. 23, 2007).

Courts in the Seventh Circuit have since applied that view of exemplification. See Springer v. Ethicon, Inc., No. 17 C 3930, 2018 WL 1453553, at *17 (N.D. Ill. Mar. 23, 2018) (awarding costs for computerized exhibit production and multimedia presentation); Bell v. Keating, No. 09-CV-754, 2011 WL 2182117, at *4 (N.D. Ill. June 2, 2011) ("The Seventh Circuit adopts an expansive view of exemplification, defining such expenses as encompassing not only graphs and charts, but also sophisticated multi-media presentations."); LG Elecs. U.S.A., Inc. v. Whirlpool Corp., No. 08 C 0242, 2011 WL 5008425, at *7 (N.D. Ill. Oct. 20, 2011) (awarding costs for digital presentations and computer graphics); Vardon Golf Co. v. Karsten Mfg. Corp., No. 99 C 2785, 2003 WL 1720066, at *11 (N.D. Ill. Mar. 31, 2003) (taxing costs of enlarged demonstrative exhibits which aided the jury's understanding of the central issues, made the issue clearer to the jury, and were of assistance to the Court).

18

Still, exemplification costs must be "necessarily obtained for use in the case." 28 U.S.C. §

1920(4); Cefalu v. Vill. Of Elk Grove, 211 F.3d 416, 428 (7th Cir. 2000). The statute does not

"obligate the losing party to pay for the victor's 'glitz'" or the prevailing party's "effort to wow

[the judge or jury]." Id. The question is whether "the nature and context of the information being

presented genuinely called for the means of illustration that the party employed. In other words,

was the exemplification vital to the presentation of the information, or was it merely a convenience

or, worse, an extravagance?" Id. at 248-49.

Against this background, Motorola seeks $442,992.79 for its use of demonstratives at trial,

including creation and printing. Motorola argues that the complex nature of the technology in this

case and the facts of the case required the use of graphics that assisted the jury in understanding

the nature of Motorola's trade secrets, the evidence of Hytera's copying and distribution of

Motorola's confidential documents, the damages that Motorola was seeking, and the admissions

made by Hytera's fact and expert witnesses.

In support of its request for demonstrative costs, Motorola provides two documents: (1)

Appendix F, Dkt. 1000-9, which details, with invoices, $6,845.99 in trial printing costs from

graphics vendor Precision Core Graphics, and (2) the Declaration of Wesley Wozniak, Dkt. 1000-

13, who is a Senior Producer and Media Artist at Fulcrum Legal Graphics, Inc. ("Fulcrum"). In

his declaration, Wozniak includes numerous, detailed invoices from Fulcrum listing $436,146.80

in visual aids charges. Wozniak attests that in his 12 years at Fulcrum he has worked on more than

20 trials, and in this matter worked with Motorola's counsel to prepare approximately 1,000 slides

to present to the jury. He states that these slides included graphics or animations visually

illustrating the concepts to be elicited or explaining the technology in the dispute.

Hytera argues that these demonstrative exhibit costs were neither necessary nor reasonable.

Hytera alleges that these costs are largely consulting fees from Fulcrum and a far cry from the

"relatively minor, incidental expenses" contemplated by 28 U.S.C. § 1920. Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573, 132 S. Ct. 1997, 2006, 182 L. Ed. 2d 903 (2012) ("Taxable costs are limited to relatively minor, incidental expenses[.]"). Hytera characterizes Motorola's exhibits and multi-media services as the kind of "glitz" that is not recoverable, alleging that the vast majority of Motorola's slides were blow-ups of pre-existing exhibits and therefore not vital to the presentation of information but mere convenience and extravagance. Cefalu, 211 F.3d at 428; see Glenayre Elecs., Inc. v. Jackson, No. 02 C 0256, 2003 WL 21947112, at *5 (N.D. Ill. Aug. 11, 2003) (awarding costs for an animation but denying costs for (1) a tutorial that did not require such an expensive means of illustration and (2) a design consultation and computer design which were "undefined and unexplained"). Hytera argues that taxing Fulcrum's significant hourly rates for strategy conference calls and hundreds of hours of on-site trial support is inappropriate. See Dkt. 1000-13 at 8, 11-14, 32-39. In addition, Hytera argues that Motorola's own extensive use of a document camera, paper notes, and a highlighter evince that the demonstratives were not necessary. See Jo Ann Howard & Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1087 (E.D. Mo. 2015) (denying costs for third-party litigation support specialist who manipulated, highlighted, and enlarged exhibits throughout the course of the trial because a "cheaper, feasible alternative" existed and the specialist assistance was "glitz").

After reviewing these documents and presiding over the trial where Motorola introduced the exhibits, the Court concludes that this is not the case where a party's demonstratives and multi-media presentation were merely "glitz," as Hytera argues. The declaration of Mr. Wozniak and the included invoices "give the Court readily identifiable information to determine whether these costs are reasonable, recoverable, and if the exemplification costs were necessarily obtained for use in the case." LG Elecs. U.S.A., Inc. v. Whirlpool Corp., No. 08 C 0242, 2011 WL 5008425, at *7 (N.D. Ill. Oct. 20, 2011). As in LG Elecs., the demonstratives here were "an efficient, time-saving

method of presenting complex evidence under the circumstances[.]" Id. Wozniak asserts under penalty of perjury that Motorola requests costs only for "time spent preparing the demonstratives, exhibits, or other visual aids—as opposed to time spent meeting with Motorola's counsel or traveling." Dkt. 1000-13, ¶ 9. This case is therefore not like Jo Ann Howard, where the third-party support specialist assisted in presenting the materials at trial. 146 F. Supp. 3d at 1087. Mr. Wozniak also explained, and the Court observed, that Motorola's demonstrative slides "were not simply enlarged copies of exhibits already entered into evidence" but "included graphics or animations visually illustrating the concepts to be elicited during the witnesses' testimony or explaining the technology in dispute." Dkt. 1000-13, ¶ 7; see Vardon, 2003 WL 1720066 at *11 (awarding such costs); Springer v. Ethicon, Inc., No. 17 C 3930, 2018 WL 1453553, at *17 (N.D. Ill. Mar. 23, 2018) (awarding costs for computerized exhibit production and multimedia presentation "given the complex nature of the case" and rejecting argument that these materials were not essential to understanding the issues in the case). The demonstratives enhanced the jury and Court's understanding of the evidence, were vital to the presentation of the information, and reasonable under the circumstances. Intercontinental Great Brands LLC v. Kellogg N. Am. Co., No. 13 C 321, 2016 WL 316865, at *5 (N.D. Ill. Jan. 26, 2016).

The Court rejects Hytera's argument regarding Motorola's use of other presentation techniques. The marking-up of exhibits with a document camera and highlighter does not undermine the need or reasonableness of Motorola's technical demonstratives; recreating those demonstratives by hand would have significantly prolonged this nearly four-month trial. Hytera presents no cheaper, feasible alternative method of presenting the complicated material in this case. The Court finds that Motorola's demonstratives were necessary, and that the costs were reasonable given the complexity and length of this trial. Dkt. 1000-13.

Hytera also argues that Motorola should not recover demonstrative printing costs, Dkt.

1000-9, because while Motorola seeks costs for the printing of approximately twenty boards, it used only a handful of boards at trial. And after all, says Hytera, the jury had individual screens in front of them and did not need to consult additional printed boards. For Hytera, then, such boards were mere convenience. Motorola points out that Hytera cites no authority for the proposition that the boards need have been used for the costs to be recoverable. The proper inquiry, rather, is whether the evidence was reasonably necessary to the case "at the time it was [obtained], not whether it was used … in court." Brown v. City of Chicago, No. 16 C 4229, 2019 WL 1923386, at *3 (N.D. Ill. Apr. 30, 2019) (quoting Cengr v. Fusibond Piping Sys., Inc., 135 F.3d 445, 455 (7th Cir. 1998)).

The Court finds that the boards were reasonably necessary at the time they were obtained. Given the nature and progression of this case, Motorola could not have perfectly predicted the strategy it would use or the decisions it would make come trial regarding which boards would be effective and which boards would be unnecessary. And while Hytera is correct that jurors had individual screens to consult, "costs may be taxed for enlarging a crucial document to avoid 'the jurors and the judge poring over individual, unenlarged copies of the document[.]'" Clearlamp, LLC v. LKQ Corp., No. 12 C 2533, 2016 WL 7013478, at *6 (N.D. Ill. Nov. 30, 2016). Hytera itself even used similar boards. Trial Tr. 4292:17-22. These costs were therefore reasonable.

### B. Photocopying Costs

Motorola requests costs for photocopying a single set of the parties' trial exhibits for use at trial, amounting to $12,672.45. Dkt. 1000-10 (including vendor invoice). Hytera asserts that these costs should be denied because the set of printed trial exhibits was made for Motorola's own convenience and not even used in court. Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc., 106 F. Supp. 3d 927, 944 (N.D. Ill. 2015) ("A prevailing party may recover photocopying costs for documents provided to the court or the other parties, but not for those made for its own

convenience."). However, the Court finds that having a single set of trial exhibits printed was reasonable and necessary under the circumstances, where there was a "lack of wireless internet" and the attorneys at Motorola's table could not "view documents on their laptops without the jury sitting directly behind them" being able to see the exhibits. Dkt. 1044 at 12.

### C. Certified Copies of Copyright Registrations

Hytera does not oppose Motorola's request for recovery of $2,493.00 for obtaining copies of two registered copyright certificates and certified deposit materials. Dkt. 1000-11. Those costs are awarded to Motorola.

### D. Converting and Processing Electronic Files for Production

Motorola seeks $1,786,213.24 in costs relating to converting documents into TIFF image format, branding documents, and making documents readable and searchable through optical character recognition ("OCR") for production. The Court will address the recoverability of each of these costs before turning to the sufficiency of Motorola's costs documentation and the reasonableness of the costs requests.

The Seventh Circuit has not comprehensively addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under 28 U.S.C. § 1920(4). Intercontinental Great Brands LLC v. Kellogg N. Am. Co., No. 13 C 321, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016) (citing cases). The Seventh Circuit has said, however, that the costs of "converting computer data into a readable format in response to [the non-prevailing party's] discovery requests" are recoverable under the statute. Hecker v. Deere & Co., 556 F.3d 575, 591 (7th Cir. 2009). TIFF conversion, therefore, is recoverable in this Circuit. See, eg., Ariel Invs., LLC v. Ariel Cap. Advisors LLC, No. 15 C 3717, 2017 WL 3023746, at *3 (N.D. Ill. July 17, 2017) (costs of conversion to readable format is recoverable); Intercontinental Great Brands, 2016 WL 316865 at *6 (awarding TIFF and PDF conversion costs); Massuda v. Panda Express, Inc., No. 12 CV 9683,

23

2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) ("converting native files to TIFF (if agreed upon by the parties to be the production format), [is] compensable under § 1920(4).").

In addressing other e-discovery costs besides file conversion to readable formats, some courts in this circuit have followed the Third Circuit's reasoning in Race Tires of America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012). In Race Tires, the Third Circuit concluded that "only scanning and file format conversion can be considered to be 'making copies'" [under 28 U.S.C. § 1920(4)] and that "gathering, preserving, processing, searching, culling, and extracting ESI[24] simply do not amount to 'making copies.'" 674 F.3d at 160, 171. The Third Circuit therefore taxed only the costs for scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD. Id.

Some courts in this Circuit have applied the Race Tires logic to limit recovery of e-discovery costs like OCR. For example, in Intercontinental, IGB did not contest the costs for TIFF conversion but did contest OCR costs. 2016 WL 316865 at *6. Kellogg, the prevailing party, argued that OCR was "necessary to make files fully readable and searchable." Id. The Court held that "what matters is the extent to which these processes were fundamental to ensuring that the documents were readable." Id. at *6. The Court then awarded TIFF and PDF conversion as fundamental to the readability of the documents, but denied OCR costs.[25]

However, as the Intercontinental Court noted, some "courts in this district have permitted prevailing parties to recover costs associated with processes other than TIFF conversion." 2016

---

[24] "ESI" means "Electronically Stored Information." See Fed. R. Civ. P. 34.

[25] See also Ariel Invs., LLC v. Ariel Cap. Advisors LLC, No. 15 C 3717, 2017 WL 3023746, at *3 (N.D. Ill. July 17, 2017) (while conversion to readable format is recoverable, "processing costs" are not recoverable "because services leading up to the actual production do not constitute 'making copies'"); Massuda v. Panda Express, Inc., No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) ("ESI discovery costs associated with the conversion of ESI into a readable format . . . are compensable under § 1920(4). But costs related to the gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies'" and thus are non-taxable.") (internal quotations omitted).

WL 316865 at *6. For example, branding has also been awarded by courts in this Circuit, and the Court finds that branding is recoverable in this case. Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, No. 07 CV 623, 2014 WL 125937, at *9 (N.D. Ill. Jan. 14, 2014) (costs "for bates stamping are recoverable"); DSM Desotech, Inc. v. 3d Sys. Corp., No 08 C 1531, 2013 WL 3168730, at *2 (N.D. Ill. June 20, 2013) (allowing costs for Bates labelling as 'making copies' under the statute, but denying costs for confidentiality branding "because those tasks are the kind of work conventionally performed by attorneys or paralegals"); Nilssen v. Osram Sylvania, Inc., No. 01 C 3585, 2007 WL 257711, at *6 (N.D. Ill. Jan. 23, 2007) ("In light of the extensive number of documents, $0.05 per page is also awarded for bates stamping of the discovery-production documents."); but see McCraven v. City of Chicago, No. 97 C 8845, 2001 WL 62573, at *2 (N.D. Ill. Jan. 25, 2001) (costs of Bates stamping discovery materials for the party's own use is not recoverable because it is only for the convenience of the parties).

Further, as Motorola states, some courts have awarded OCR costs. See Rose v. Franciscan All. Inc., No. 116CV03212TWPMJD, 2019 WL 688720, at *2 (S.D. Ind. Feb. 19, 2019); The Medicines Co. v. Mylan Inc., No. 11-CV-1285, 2017 WL 4882379, at *10 (N.D. Ill. Oct. 30, 2017) (awarding "in full the costs of OCR" as the "process is fundamental to ensuring that the digital documents were readable and searchable"); Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, No. 07 CV 623, 2014 WL 125937, at *9 (N.D. Ill. Jan. 14, 2014) (prevailing party "may recover all of its conversion costs and associated costs" including "making files readable through optical character recognition, scanning, creating CD–Roms, and associated activities"); Johnson v. Allstate Ins. Co., No. 07-cv-0781-SCW, 2012 WL 4936598, at *4 (S.D. Ill. Oct. 16, 2012) (following "Hecker v. Deere & Co. for the proposition that the costs of converting data into readable format are compensable" and awarding OCR, but finding non-compensable costs including "collecting and preserving ESI, processing and indexing AESI, and keyword searching

of ESI for responsive and privileged documents."); Comrie v. IPSCO Inc., No. 08 CV 3060, 2010 WL 5014380, at *4 (N.D. Ill. Dec. 1, 2010) (allowing recovery of OCR costs because "[c]osts for OCRing have been allowed where the documents are OCR'd in lieu of production of hard copies.").

Other courts, though, have declined to award OCR costs. Mortera v. Target Corp, No. 17 C 3485, 2019 WL 1532960, at *3 (N.D. Ill. Apr. 9, 2019) (quoting Allen v. City of Chicago, No. 09 C 243, 2013 WL 1966363, at *5 (N.D. Ill. May 10, 2013) for the proposition that "OCR [] is not recoverable . . . because OCR goes beyond 'merely converting a paper version into an electronic document' and substitutes for work attorneys or support staff would otherwise have to perform"); Sullivan v. F.E. Moran, Inc., No. 16 CV 5660, 2018 WL 4515999, at *5 (N.D. Ill. June 25, 2018) (OCR costs are typically not recoverable because they only make a document searchable, as opposed to readable); Intercontinental Great Brands LLC v. Kellogg N. Am. Co., No. 13 C 321, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016) (reasoning that "making a document searchable is the equivalent of work counsel would perform in the absence of OCR") (internal quotations omitted); Life Plans, Inc. v. Sec. Life of Denver Ins. Co., 52 F. Supp. 3d 893, 903 (N.D. Ill. 2014) (finding that prevailing party did not show "why OCR was necessary to the production of documents in this case" and noting that because invoices in the record showed that the outside vendor billed separately for the distinct tasks of "Tiff Conversion" and "OCR" . . . "the court is able to award costs for converting ESI into a readable format, which is the equivalent of 'making copies' under § 1920(4), while denying costs for making that document searchable, which is the equivalent of work counsel would perform in the absence of OCR"); Windy City Innovations, LLC v. Am. Online, Inc., No. 04 C 4240, 2006 WL 2224057, at *3 (N.D. Ill. July 31, 2006) (denying OCR costs while reasoning that these costs were for services typically performed by attorneys or other legal personnel).

Hytera attacks Motorola's request for OCR costs, arguing that they are not recoverable as a matter of law. Hytera argues that Mortera and Sullivan—cases from 2019 and 2018, respectively—supersede the cases originally cited by Motorola, Chicago Bd. and Comrie, which were decided in 2014 and 2010, respectively. But Motorola replies by citing Rose and Mylan— cases from 2019 and 2017. Motorola also urges that this case involved voluminous document productions, and therefore the OCR "process [wa]s fundamental to ensuring that the digital documents were readable and searchable." The Medicines Co., 2017 WL 4882379 at *10.

The Court agrees with Motorola. OCR costs should be recoverable in this case, where millions of documents including complex source code had to be produced and scoured. See Johnson v. Allstate Ins. Co., No. 07-CV-0781-SCW, 2012 WL 4936598, at *6 (S.D. Ill. Oct. 16, 2012) (finding that the "rendering of ESI into a word searchable format is compensable within the ambit of Hecker and Race Tires" and reasoning that Race Tires cited with approval a district court case[26] that awarded OCR conversion costs). Readable, searchable copies of materials were necessarily obtained in this case, and OCR was a fundamental and necessary aspect of that production, so OCR costs are recoverable.

Considering all of the above, the Court finds that Motorola's TIFF conversion, branding costs, and OCR costs are recoverable. Hytera, however, attacks Motorola's documentation of these costs as inadequate and argues that the costs are unreasonable. The Court disagrees with both points.

Motorola supports its request for TIFFing, OCRing, and branding by submitting the Declaration of Andrew Bayer. Dkt. 1000-14. In his declaration, under penalty of perjury, Bayer states that he is a Certified E-Discovery Specialist and Managing Shareholder of Inventus, the

---

[26] In re Fast Memory Erase, 2010 WL 5093945, at *4 (N.D. Tex. Nov. 10, 2010).

third-party vendor used by Motorola to conduct the above e-discovery tasks. Id. at 1. Bayer declares that he is familiar with market trends relating to rates in the eDiscovery space. Id. at 2. He includes in his declaration a table listing all productions Motorola made using Inventus' services, which includes invoice numbers and image counts. Id. at 4-11.

Bayer explains in his declaration how Motorola's costs for the e-discovery tasks were calculated. First, he explains that Motorola's requested costs for the above services are "not readily apparent from Inventus' invoices for several reasons." Id. at 2. Unlike the separate billing for distinct tasks that occurred in Life Plans, 52 F. Supp. 3d at 903, Inventus here: (1) "billed Motorola for multiple [ongoing] matters [between the parties] in a single invoice" and (2) included line items in certain invoices that, while labeled "Tiff Production," included charges for multiple services including "TIFFing, OCRing, and branding" and also "work relating to other services—including slipsheeting . . . preparing native files for production, and creating loadfiles with metadata . . . for which . . . Motorola is not seeking to recover its costs." Dkt. 1000-14 at 2. Therefore, while Inventus charged Motorola on a per-gigabyte basis for all Tiff Production work, Inventus did not include specific line items for TIFFing, OCRing, and branding in its invoices to Motorola. Id.

Therefore, says Bayer, Motorola's requested costs for these services were calculated by "estimat[ing] the costs for TIFFing, OCRing, and branding by applying industry standard rates to the productions Motorola made in this litigation." Dkt. 1000-14 at 2. Inventus applied a $0.02 per page rate for TIFFing and a $0.01 per page rate for OCR and branding based on extensive market experience. Id. Bayer's attached Exhibit 1 is a table listing all the productions Motorola made using Inventus' services in this litigation, and it concludes that the total number of pages produced by Motorola was 44,655,356 pages. Id. at 2-3. Applying the above rates to that number of pages, Inventus determined—via estimation—that Motorola's costs for TIFFing, OCRing, and branding totaled $1,786,214.24. Id. at 3. Motorola states that it "conservatively" seeks these costs despite

28

that many other documents were used in this case. Dkt. 1044 at 12.

Hytera argues that the conversion and file-processing costs, including TIFFing, branding, and OCRing, should be denied outright. First, Hytera implores the Court to strike the Bayer Declaration altogether. According to Hytera, the declaration is not grounded in the actual e-discovery charges incurred. Rather, it is "entirely divorced from [Motorola's] actual expenses." Dkt. 1036 at 2 n.2 (describing Bayer's "invented methodology" as flawed because Bayer used a per-page rate despite that the actual invoices applied a per-gigabyte rate). In addition, says Hytera, Motorola cites no authority supporting the method used by Bayer to estimate and determine Motorola's costs.

Hytera also argues that Motorola's documentation is inadequate because the actual invoices are not attached. Robinson v. City of Harvey, No. 99 C 3696, 2004 WL 2033714, at *9 (N.D. Ill. Aug. 13, 2004) ("many of the requests are unsupported by invoices or other documentation"); see Ariel, 2017 WL 3023746 at *3 (granting costs when vendor invoices were available). Hytera submits that because "the costs are not readily apparent from [the] invoices," as Motorola admits, Motorola has failed to corroborate its e-discovery costs request. Dkt. 1000-14 at 2. Because the Court cannot "assess whether the costs Motorola has sought are in any way legitimate," says Hytera, the costs should be denied. Dkt. 1036 at 3.

The Court rejects Hytera's arguments on those points. First, the Court accepts the Bayer Declaration, which Bayer submits under oath as an e-discovery specialist. The case Hytera cites makes clear that requested costs can be supported by invoices "or other documentation." Robinson, 2004 WL 2033714 at *9. "Other documentation" can include declarations. Lloyd v. Credit Servs. Int'l, Inc., No. 18 C 4267, 2019 WL 5311843, at *4 (N.D. Ill. Oct. 21, 2019) (noting that Defendant had not submitted "an invoice or declaration" supporting the per-page rate it paid); Stollings v. Ryobi Techs., Inc., No. 08 C 4006, 2015 WL 4100479, at *5 (N.D. Ill. July 6, 2015) (while "the

29

invoices, standing alone, do not provide sufficient detail to support an award of costs . . . [the prevailing party also] submitted an attorney declaration explaining the charges").

While the Court has found no case specifically affirming Bayer's methodology of estimating Motorola's costs, Hytera cites no legal basis for striking the Declaration and the Court finds Bayer's methodology and results to be reasonable.[27] Contrary to Hytera's argument, Motorola need only provide "the best breakdown obtainable from retained records." Sterling Nat'l Bank v. Block, No. 16 C 9009, 2019 WL 5085715, at *9 (N.D. Ill. Oct. 10, 2019) (quoting Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991)). As Bayer explained in his Declaration, the invoices, while charging per-gigabyte for various services, imperfectly captured the delineated costs of TIFFing, OCRing, and branding. That does not doom Motorola's costs request, because Motorola "cannot reasonably be expected to require their ESI vendors to provide invoices that perfectly track the language of § 1920(4)," nor is Motorola "required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover copying costs." Id. (internal quotations omitted); Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc., 106 F. Supp. 3d 927, 944 (N.D. Ill. 2015). Here, Bayer's Declaration was "the best breakdown obtainable from retained records." Sterling, 2019 WL 5085715 at *9. His estimation of costs based on applying the "industry standard rates" to the number of pages produced was reasonable; it was designed to limit Motorola's costs request to the recoverable costs associated with documents produced in this litigation. Dkt. 1000-14 at 2. Bayer's calculation reflects his best determination based on his "extensive market experience," and the Court finds that the cost breakdown is reasonable. Id.

---

[27] In fact, Motorola attached the complete set of e-discovery invoices to its Reply, which documents $11,706,317.65 in total charges. Dkt. 1045-3 (sealed Exhibit 7). The fact that Bayer's final cost determination for TIFFing, OCRing, and branding is roughly 15% of the actual billed charges from the invoices bolsters the Court's finding that the total is reasonable.

The Court awards Motorola its full request for costs for TIFFing, OCRing, and branding, which totals $1,786,213.24 in e-discovery costs.

### V. Compensation of Interpreters and Special Interpretation Services

In its amended bill of costs, Motorola requests $143,004.38 in costs for the "compensation of . . . interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920(6). Motorola documents these costs in its corrected Appendix I. Dkt. 1044-9 at 39-41. Motorola asserts that Hytera should be taxed for the oral interpretation of Mandarin Chinese required for the depositions and trial testimony of Hytera's witnesses Baolan, Chen, Chia, Huang, Jun, G.S. Kok, Y.T. Kok, Liang, Liwei, Luo, Sun, Xu, Yan, Yu, Yuan, YunHua, Minjie Zhang, Yingzhe Zhang, Zheng, and Zhu.

Motorola's interpreter costs request also includes cancellation fees, which are taxable. Cascades Computer Innovation, LLC v. Samsung Elecs. Co., No. 11 C 4574, 2016 WL 612792, at *8 (N.D. Ill. Feb. 16, 2016) ("There is [] no reason Samsung should be required to shoulder any portion of the cancellation fee one interpreter charged when Cascades rescheduled the [] deposition."). In addition to the interpretation costs associated with the cancelled depositions discussed above in section II.A.5, Motorola seeks cancellation fees for the check interpreter[28] it had scheduled for use during Hytera Chairman Chen's anticipated testimony at trial. Motorola requests this cancellation fee because Hytera, after having left open the possibility that it would call Mr. Chen at trial during the week of January 13, 2020, finally notified Motorola at the last minute—January 12, 2020—that it would not be calling Mr. Chen or any Chinese-speaking witnesses that week.

Hytera argues that Motorola's interpreter costs should be reduced to $75,113.30. Dkt. 1036

---

[28] A check interpreter is a second interpreter hired to verify that another party's interpreter is correctly interpreting the testimony of a witness.

at 15. Specifically, it argues that Motorola does not justify $61,100 in expenses for check interpretation and that costs for check interpretation are a convenience, not a necessity. See Apple Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2014 WL 4745933, at *13 (N.D. Cal. Sept. 19, 2014) (disallowing "costs for the check interpreter in their entirety" because Apple did not meet its burden of providing appropriate documentation to support that the check interpreter was necessary, rather than "purely for counsel's own benefit"); Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys Inc., No. CIV.A. 1:02CV32, 2008 WL 7384877, at *10 (N.D. W. Va. Aug. 18, 2008) ("although [check] interpreters were helpful to counsel, they were in no way necessary for litigation"); Whirlpool Corp. v. LG Elecs., Inc., No. 104-CV-100, 2007 WL 2462659, at *4 (W.D. Mich. Aug. 26, 2007) ("Defendants' desire to confirm that translations were correct does not amount to necessity.").

Motorola counters that in contrast to Hytera's out-of-circuit cases, courts in this circuit have held that check interpretation costs are recoverable. Cascades, 2016 WL 612792 at *8 (The Court was not persuaded that prevailing party "should have simply taken Cascades's word that its interpreters were translating deposition testimony correctly"); Trading Techs. Int'l, Inc. v. eSpeed, Inc., 750 F. Supp. 2d 962, 983 (N.D. Ill. 2010) (evidence that a disagreement with respect to competing interpretations occurred during trial was a sufficient explanation for procuring check interpreters, and "meets the standard for recovery set by Section 1920(6)"). Motorola argues that disagreements over the translation of witness answers were raised in depositions in this case, see, e.g., Dkt. 1045-4 at 10:11-11:23 (sealed Exhibit 8), which justified the use of check interpreters. See Trading Techs., 750 F. Supp. 2d at 983 ("any disagreement with respect to an interpretation is sufficient to alert a party to the need for hiring its own interpreter").

The Court agrees with Motorola. This case involved voluminous testimony and cross examination, both in depositions and at trial, that necessitated interpretation services. Hundreds of

millions of dollars was at stake, and the record is clear that disagreements over translation occurred. It is clear to the Court that check interpretation was necessary and reasonable under these circumstances. Motorola is awarded its costs request for compensation of interpreters and special interpretation services in full.

## VI. Conclusion

For the foregoing reasons, Motorola's amended bill of costs is awarded in full. The Court taxes Hytera Communications Corporation Ltd. for costs in the amount of $2,674,631.36.

IT IS SO ORDERED.

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 6, 2021

33