IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.,<br><br>Plaintiffs,<br><br>v.<br><br>HYTERA COMMUNICATIONS CORPORATION LTD.,<br><br>Defendant. | Civil Action No.: 1:17-cv-01973<br><br>Honorable Charles R. Norgle Sr. |

## **MOTOROLA'S SUBMISSION REGARDING TERMS OF ONGOING ROYALTY**

Motorola provides the following support for its proposals that Hytera continues to dispute. Motorola has tracked the numbering of the proposed license to facilitate the Court's review.

Motorola continues to object to the imposition of a Court-ordered royalty. As explained in Motorola's concurrent filing regarding the injunction, the Seventh Circuit recently dismissed Hytera's appeal No. 21-2635 for "lack of jurisdiction" due to ongoing proceedings before this Court; (ii) in connection with the parties' recent negotiations concerning the form of the royalty ordered by the Court, Hytera stated it was not going to pay into escrow the currently-owed royalties ordered by this Court (and indeed, Hytera now seeks reconsideration of the Court's order on that point, Dkt. 1314 at 2); and (iii) on February 7, the Department of Justice unsealed a criminal indictment charging Hytera with conspiracy to commit theft. Under these circumstances, an injunction is the only appropriate relief.

Nonetheless, Motorola complied with the Court's order to submit a joint proposal regarding the license. Adopting Hytera's proposals in that submission, instead of Motorola's, would cause further harm to Motorola and leave it with little ability to protect the confidential information Hytera stole and will not pay for. While Hytera attempts to defend its positions with recourse to the parties' DMR license, Hytera has refused to pay royalties under that license for years. And while the Court's order stated that certain aspects of this court-ordered license should "be consistent" with the DMR license, that does not trump the requirements of the DTSA, as explained below. Dkt. 1289 at 1. Indeed, Hytera's recourse to the DMR license is only when it is convenient for Hytera. As explained below, Hytera seeks to include provisions that will limit its need to comply with the license based on some unspecified other law, which is not in any way part of the DMR license. Accordingly, should a Court-ordered license be entered, Motorola respectfully requests that its proposals, and not Hytera's be adopted.[1]

1. **Definitions**

   1.1 **"Affiliate"**

The parties dispute whether "Affiliates," and thus, licensed entities, should exclude Hytera's bankrupted entities or entities controlled by any government authority. These entities should be excluded from the license. *First*, the license should not extend to the entities that Hytera bankrupted so they could avoid paying the judgment in this case. *Second*, it would be inappropriate to force Motorola to license its technology to any entity that is controlled by the Chinese government (or any other government), which is a real risk with respect to entities in communist countries with a history of governmental takeover.

---

[1] In support of its positions, Hytera submitted a brief that is double the page limits in the Local Rules. Should the Court consider that non-compliant submission, Motorola reserves the right to respond to Hytera's arguments, including its apparent (and untimely) request for reconsideration.

### 1.2 "Covered Products"

The parties dispute whether "Covered Products" includes all of the products identified in Motorola's royalty submission. Specifically, Hytera seeks to limit its royalty obligations to the radio and repeater models listed in Dkt. 1118-3. This is nothing more than an attempt to reargue an issue the Court already decided against Hytera. Motorola specified that the "Accused Products" were defined in Exhibit 4, Dkt. 1118-3, to its brief (*see* Dkt. 1118 at 11 ("Hytera's first payment under the license should include Accused Products (as defined in Ex. 4)")). The Court ordered Hytera to pay a royalty on any product in that exhibit, stating that the "ongoing royalty applies to the Hytera products that Motorola' specifically identifies in its submission. *See* Dkt. 1118-3 (Motorola's list of "Accused Products.")). Hytera's attempt to eliminate software that undisputedly uses Motorola's trade secrets and copyrights, and its use of the trade secrets and copyrights, from its royalty obligations should be rejected. Indeed, under Hytera's interpretation, it could simply relabel or renumber the very same radios that were adjudicated at trial, and it would owe nothing. Hytera should not be permitted to continue flouting the Court's orders. In addition, Hytera's H-Series products, which were recently released, should be included in this order. Hytera has produced no evidence that those products do not use Motorola's trade secrets and copyrights, and there is no reason to believe it did. Indeed, Hytera repeatedly claimed at trial that it took corrective action with respect to its rampant theft, yet its recent indictment reveals Hytera was untruthful even about who it employed in an attempt to cover up its theft. *See United States v. Hytera Communications Corp.*, No. 20-cr-688 (N.D. Ill.), Indictment ¶ z.

### 1.5 "Covered Equipment Transactions"

The parties dispute whether the license should specify that Hytera's manufacture and use of, and sale of products made with, Motorola's trade secrets and copyrights is not licensed or permissible if it violates U.S. law.

3

Motorola's proposal specifies that this license exists only so long as it complies with U.S. law, and Hytera's desire to have the license be silent on this issue must be rejected. To the extent Hytera claims that its phrasing of the license as not being granted by "Motorola" in § 2.1 moots the compliance of laws issue, that is incorrect. The use of passive voice does not change the fact that Hytera and Motorola are the parties to this Court-ordered license, and Motorola should not be required to continue permitting Hytera to use its trade secrets, or engage in business dealings with Hytera, if doing so is in conflict with US laws. The U.S. government already considers Hytera to pose a risk to U.S. national security, and the recent indictment charging Hytera with stealing Motorola's trade secrets likely aggravates that concern. These factors significantly increase the risk of the U.S. government designating Hytera on a restricted party list, which could restrict or prohibit Motorola's performance under the license agreement because designation on a restricted party list, as a matter of U.S. law, would prohibit or restrict U.S. persons such as Motorola from continuing to participate in the Compulsory License. For example, if the U.S. government were to designate Hytera, or an entity owning them 50% or greater, as a "Specially Designated National," Motorola would be prohibited from all transactions and dealings with Hytera. Similarly, if Hytera were placed on the "Entity List," Motorola would be prohibited from providing it with U.S., goods, software, or technology. It should be clear that this Court-ordered license is in effect only so long as it is compliant with U.S. law.

2. **Scope of License**

   **2.1: License Terms**

The parties dispute whether (i) passive voice should be used in the license grant; (ii) the trade secrets and copyrights should be defined as in Motorola's Appendix A; and (iii) Hytera's license should be conditioned upon some unspecified payment (Hytera's proposal) or actual compliance with the payment provisions (Motorola's proposal).

4

*First*, Hytera's use of passive voice creates ambiguity surrounding whose rights are at issue in the license, and it should be clear that Motorola is the entity whose trade secrets and copyrights is subject to this agreement. To the extent Hytera argues that its use of passive voice avoids the need for a "compliance with laws" provision, that argument fails as explained in § 1.5.

*Second*, Motorola's trade secrets and copyrights should be defined consistently with how they have been defined in this case, which is what Motorola's definitions in Appendix A do. Hytera's attempt to inject ambiguity into the license should be rejected.

*Third*, under Hytera's proposal allowing some "payment," it could continue using Motorola's trade secrets and copyrights so long as it made a single payment under the license. This is simply another attempt to circumvent the requirement under the DTSA, and the Court's order, that Hytera pay a royalty for its continuing use of Motorola's trade secrets and copyrights. Motorola's proposal makes clear that Hytera's ability to continue use Motorola's trade secrets and copyrights is conditioned on its full payment for that use.

**2.2: Limitation of License**

The parties dispute whether the trade secrets and copyrights should be defined as in Motorola's Appendix A. Motorola refers to its position in § 2.1, *supra*.

**2.3: No Immunity from Criminal Liability**

The parties dispute whether Hytera should be permitted to use this license to shield itself from criminal liability.

Although Motorola maintains that Hytera should be enjoined and that Hytera's continued use of Motorola's trade secrets and copyrights has caused irreparable harm, Motorola understands that it must comply with the Court's order on the license. That, however, should in no way impact Hytera's criminal liability for this theft or be deemed to protect Hytera from criminal liability for continuing to profit from its past criminal conduct. Hytera has been indicted by a grand jury for

5

conspiracy to steal, possess and use Motorola's trade secrets beginning not later than on or about June 8, 2007 and continuing until at least on or about June 22, 2020, and for twenty counts of illegally possessing Motorola's trade secrets, including during the period covered by the compulsory license. The indictment also includes a forfeiture allegation, requiring Hytera to "forfeit to the United States … any property, real or personal, constituting or derived from, the proceeds they obtained directly or indirectly as a result of the offenses in the Indictment; any property traceable to such property …; and any property used, or intended to be used, … to facilitate the commission of said violation; and any article, the making or trafficking of which is, prohibited under 18 U.S.C. § 1832." It should therefore be clear that Hytera's continued use of Motorola's trade secrets is not with Motorola's permission or agreement—or that of the Executive Branch of the United States in which the Constitution vests the prosecutorial power—but only by order of this Court, which may not exempt Hytera from its duty to comply with Title 18, limit the Justice Department's exercise of its prosecutorial responsibilities, or compel a crime victim to waive its rights in favor of a criminal defendant.

3. **Confidentiality Obligations**

    **3.1: Scope of Confidentiality Obligations**

The parties dispute whether Hytera's affiliates are bound by the confidentiality obligations of this license, or whether they are only bound if they execute a separate confidentiality agreement.

If Hytera's affiliates are licensed under this agreement, then they must be obligated to comply with the Court's order that Motorola's trade secrets and copyrights remain confidential–full stop. Hytera's position, i.e., that the affiliates are only subject to the confidentiality obligations if they sign a separate agreement, is contrary to the Court's order and leaves Motorola's trade secrets and copyrights vulnerable to disclosure. Indeed, Hytera has made clear this is a serious risk, because Hytera claims that these affiliates are not subject to this Court's jurisdiction, which

means Motorola would have to engage in a worldwide campaign to protect its trade secrets. That is not an appropriate burden to impose on the party whose property was stolen. If Hytera's Affiliates will not keep Motorola's trade secrets and copyrights confidential, they cannot possess or use them.

### 3.2: Actions in the Event of a Breach

The parties dispute whether Hytera (i) must take "any action requested by Motorola" to cure a breach of confidentiality, (ii) has to notify Motorola of a breach by its Affiliates; and (ii) can limit its cure obligations to the extent permitted by applicable laws. *First*, Hytera seeks to limit its obligations to take whatever it deems to be "reasonable actions" in the event Motorola's confidential information is disclosed. That is insufficient and will only lead to more disputes and risk disclosure of Motorola's confidential information. The trade secrets and copyrights are Motorola's property, which Hytera stole and that Motorola wants it to stop using and possessing. Hytera does not now get to decide what actions it will or will not take to protect that information.

*Second*, Hytera must be required to notify Motorola if its Affiliates disclose Motorola's trade secrets. Under Hytera's proposal, Hytera is not required to notify Motorola of a breach by its Affiliates, which is insufficient and puts Motorola's confidential information at risk, particularly given Hytera's claims that its Affiliates are not subject to the jurisdiction of this Court.

*Third*, Hytera's attempt to avoid or limit its obligations to protect Motorola's confidential information with reference to some unspecified other laws should be rejected. If Hytera is unwilling to abide by the laws of this country and the Court's order to protect Motorola's confidential information, it should not be permitted to continue using Motorola's confidential information.

4. **Royalties**

No disputes

5. **Payment and Reporting**

    **5.1: Payment for Past-due Royalty**

The parties dispute whether Hytera has to pay the full amount of the past-due royalty by a date certain.

As stated in Dkt. 1312, Hytera acknowledges that it owes significant past royalties from July 1, 2019 to December 31, 2021. Hytera should therefore be required to promptly pay that royalty for its continued unauthorized use of Motorola's trade secrets and copyrighted works. Hytera, however, wants the Court to condone its refusal to pay, and provide some unspecified alternative for the royalty Hytera owes. After being found to be a willful and malicious misappropriator, Hytera got what it wanted: a royalty. Now, Hytera will not even agree to abide by the relief it sought, providing further confirmation that Hytera has no intention of respecting the verdict or this Court's orders. Moreover, allowing Hytera not to pay the royalty it insisted on would be contrary to the DTSA (which requires payment for continued use). Hytera must either pay what it owes or stop profiting from its theft.

In addition, Hytera should be required to report its sales consistent with Motorola's Appendix B. Although Hytera seeks a reporting schedule similar to the DMR license, Hytera has not complied with, or paid royalties under, that license for years. Hytera also plainly intends to use Chinese law to shield it from complying with the audit provisions (*See* Dkt. 1310 §6.2 ). As a result, Hytera must be required to provide transparency into its sales in the required quarterly reporting.

    **5.4: Motorola Invoice**

The parties dispute whether Motorola is required to provide an invoice to Hytera prior to Hytera's payment of its court-ordered royalty.

Hytera's proposal to require Motorola to submit an invoice is inconsistent with the DTSA, which requires that Hytera actually pay a royalty for its continued use. Hytera is under court order to pay these royalties, and including a requirement that Motorola submit an invoice, is simply another way Hytera will seek to blame Motorola for its non-compliance with the license. Motorola should not be further burdened by having to provide an invoice to trigger that payment.

### 5.5: Go-forward Royalty Payments

The parties dispute whether Motorola is required to provide an invoice to Hytera prior to Hytera's payment of its court-ordered royalty. *See* 5.4 for Motorola's position.

### 5.6.1: Transfer of Escrow Payments

The parties dispute whether Hytera should automatically transfer escrow payments upon entry of final judgment or whether a separate Court order must issue.

The timing and circumstances of the transfer Hytera's escrow payments to Motorola should be specified in this order, which is what Motorola proposes. Hytera's proposal would require additional Court intervention, which is unnecessarily burdensome on the Court, and is yet another attempt by Hytera to delay compensating Motorola for any of the harm it has caused through its willful and malicious conduct.

### 5.9: No Set Off

The parties dispute whether Hytera should be allowed to force Motorola to waive its rights as a victim of a crime Hytera perpetrated and to forego royalties Hytera owes on the parties' DMR license.

As explained in Section 2.3, this court-ordered license should not shield Hytera from criminal liability—yet that is exactly what Hytera seeks to do. Not only would doing so work a perverse outcome, i.e., that a criminal could evade liability due to a court-ordered royalty that the

9

crime victim is forced to provide, it would infringe upon the Executive Branch's ability to prosecute crimes.

In addition, Hytera has paid no royalties under the parties' DMR license for years, and it should be clear that this agreement does not absolve Hytera from its obligations to pay those royalties, which relate to different technology than Motorola's trade secrets and copyrighted works.

### 5.10: DMR License Royalties

The parties dispute whether Hytera is still obligated to pay royalties under the parties' DMR license. *See* § 5.9, *supra* for Motorola's position.

6. **Records and Audit Rights**

### 6.1: Maintenance of Records

The Parties dispute whether Hytera's Affiliates are subject to the requirement that accurate books and records be kept or whether they must execute a separate agreement on this issue.

Hytera's attempt to exclude its affiliates from the requirement that accurate records be maintained and audited is improper. Many of Hytera's sales occur through its affiliates, meaning those are the entities whose records are critical to ensuring that Hytera is paying the appropriate royalty amounts. There is no reason to include a separate agreement between Hytera and its Affiliates in connection with this license. To the extent Hytera needs to impose other obligations on its Affiliates so Hytera can comply with this provision, Hytera is free to do that. But adding administrative complexity for entities Hytera asserts are not subject to this Court's jurisdiction is simply gives Hytera another dispute to raise when it fails to comply with the terms of this license.

### 6.2: Audit Procedure

The parties dispute whether (i) Hytera should be prohibited from asserting any law or regulation prohibits the required audits; and (ii) whether Hytera should be obligated to produce books and records in the United States for an audit.

*First*, Hytera should not be permitted to argue that some other law precludes its compliance with this order, including the audit provision. Nonetheless, Hytera wants to include a with Chinese-law exception here (there is no such carve-out in the DMR license) without identifying any specific Chinese law that would prevent it from complying with the audit requirements. Hytera committed trade secret misappropriation in violation of U.S. law, and it should not be permitted to hide behind vague assertions about Chinese law to impede Motorola's ability to obtain basic information about Hytera's sales of products that use Motorola's trade secrets and copyrights.

*Second*, given Hytera's attempt to use Chinese law to shield it from providing basic information about its sales of products that use Motorola's trade secrets and copyrights, Hytera should be required to provide audit information in the United States. Hytera should also agree that it will not seek to use Chinese law to avoid compliance with the audit provisions.

7. **Taxes**

    No disputes

8. **Term and Termination**

    The parties dispute whether the license should terminate based on Hytera's non-compliance with the license or U.S. laws.

    The court-ordered license should also be clear about the circumstances that will result in termination of the license without the need for Court intervention. Those circumstances include Hytera's failure to comply with its payment obligations (as required by the DTSA), the Court's order that it maintain Motorola's trade secrets as confidential, and its failure to comply with the

11

audit requirements. In addition, to the extent a Hytera Affiliate no longer qualifies as an Affiliate, that entity should no longer be granted a license. Should Hytera obtain relief for a particular trade secret or copyrighted work, the license will terminate with respect to that trade secret or copyrighted work, but none of the others. Finally, as explained in Section 1.5, Motorola has included economic sanctions provisions due to Hytera's recent indictment and the fact that the U.S. government considers Hytera to pose a risk to U.S. national security. This significantly increases the risk of the U.S. government designating Hytera on a restricted party list, which could restrict or prohibit Motorola's performance under the license agreement.

9. **Dispute Resolution**

    **9.2: Choice of Law and Jurisdiction**

The parties dispute whether Delaware law should govern the interpretation of the court-ordered license and whether this Court retains jurisdiction over its enforcement.

This Court should maintain jurisdiction over enforcement of this order, and the laws of Delaware should govern the interpretation of this agreement. Hytera's refusal to agree to this provision is troubling, given its repeatedly rejected attempts to evade this Court's jurisdiction, which makes this provision all the more necessary. Delaware is a common international standard to govern commercial contracts, and forecloses Hytera from arguing that this agreement is subject to some other law and potentially argue that law allows Hytera to fail to comply with the license.

10. **Representations and Warranties**

The parties dispute whether they should represent and warrant that they will comply with the agreement.

The representations and warranties that Motorola requests are typical license provisions that attempt to ensure Hytera abides by its obligations under the license, which it has already indicated it will not honor either by refusing to pay the royalty it owes or claiming Chinese law

prevents it from doing so. Such provisions are appropriate for the extensive scope and value of technology licensed under this Agreement. In addition, because Motorola's technology is subject to U.S. export control laws, both parties are obligated to handle it in accordance with such laws.

11. **Change in Control**

The parties dispute whether the license should terminate in the event of a change in control at Hytera.

Motorola expects Hytera to be the recipient of the license and in particular does not believe that an acquirer should get the benefit of Hytera's misappropriation of Motorola's trade secrets. Hytera, by contrast, intends to authorize a third party—including another competitor of Motorola's—to have the ability to use Motorola's trade secrets and copyrights. It should be clear that Hytera' use of Motorola's trade secrets and copyrights ends in a change of control. Any other outcome would permit Hytera to use Motorola's trade secrets and copyrights as an incentive for another entity to acquire it, which would be another perverse result where Hytera once again obtains a substantial benefit from its theft.

12. **Disclaimer**

The parties dispute whether the license should include a disclaimer of any warranties related to the subject matter of the agreement.

The disclaimer that Motorola requests is a typical license provision that attempts to ensure Hytera abides by its obligations under the license, and does not assert that it can fail to comply with the license based on communications with Motorola.

13. **Form of Notices**

**13.2: Notice trigger date**

The parties dispute whether the license should specify that the trigger date for notice

13

This provision should be non-controversial, and simply specifies how and to whom notice should be provided under this license, e.g., under Section 8.2.2.

**Motorola's Appendix A - Definition of Accused Products**

The parties dispute whether the products subject to the court-ordered royalty should be the same as the products Motorola identified in its briefing on this issue.

Motorola's position is in § 1.2, *supra*.

**Hytera's Appendix A - Affiliate Confidentiality Agreement**

The parties dispute whether Hytera's Affiliates are only obligated to keep Motorola's trade secrets and copyrights confidential if they execute a separate agreement with Hytera.

As explained above, Hytera intends to provide Motorola's trade secrets and copyrights to its Affiliates, but claims it has no ability to control what those affiliates do with those materials absent a separate agreement with the Affiliates. Hytera also claims that its Affiliates are not subject to this Court's jurisdiction, and has provided no explanation as to how its proposed agreement would be enforceable or provide Motorola any protection. Indeed, under Hytera's proposal, Motorola would apparently have to bring a breach of contract action against Hytera's Affiliates wherever they are, once again imposing significant burdens on the aggrieved party and imposing none on Hytera, which has been indicted for the theft in this case. The Court ordered Hytera to keep Motorola's trade secrets and copyrights confidential. If Hytera cannot ensure that its Affiliates will do that, then its Affiliates cannot be permitted access to or use of Motorola's trade secrets and copyrights.

**Appendix B - Royalty Reporting Form**

The parties dispute the manner in which Hytera should be required to report its sales.

Although Hytera seeks a reporting schedule similar to the DMR license, Hytera has not complied with, or paid royalties under, that license for years. Hytera also plainly intends to use

14

Chinese law to shield it from complying with the audit provisions (*See* Hytera's position in Section 6.2, which states that it will comply with an audit so long as it comports with Chinese law). As a result, Hytera must be required to provide transparency into its sales in the required quarterly reporting on a country-by-country basis, including the entity making the sale, the product number, the type of product, the number of units, whether Hytera believes it owes a royalty for that product, the identity of the customer, the product brand, and the total royalty. Motorola's Appendix B will reduce the disputes between the parties and protect Motorola against Hytera's non-compliance, whereas Hytera's form will not. In addition, technology subject to this compulsory license is much more extensive and significant in scope as compared to the DMR patent license.

February 24, 2022   **KIRKLAND & ELLIS LLP**

*/s/      Justin Singh*
Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Akshay S. Deoras (*admitted pro hac vice)*
akshay.deoras@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
Barbara Barath (*admitted pro hac vice*)
barbara.barath@kirkland.com
Reza Dokhanchy (*admitted pro hac vice*)
reza.dokhanchy@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
Ali-Reza Boloori (*admitted pro hac vice)*
ali-reza.boloori@kirkland.com
Benjamin A. Herbert *(admitted pro hac vice)*
benjamin.herbert@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071

15

Telephone: (213) 680-8400
Facsimile: (213) 680-8500

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Leslie M. Schmidt (*admitted pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for Plaintiffs
*Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD..*

**CERTIFICATE OF SERVICE**

      I, Justin Singh, an attorney, hereby certify that on February 24th, 2022, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  February 24, 2022                */s/ Justin Singh*
                                                                         Justin Singh