## ORDER

WHEREAS, this Court denied Plaintiff Motorola Solutions, Inc. ("Motorola Solutions") and Motorola Solutions Malaysia SDN.BHD's (collectively with Motorola Solutions, "Motorola") motion for a permanent injunction prohibiting the continued sale of certain products by Hytera Communications Corporation Ltd. ("Hytera") (collectively with Motorola, the "Parties"); and

WHEREAS, on December 14, 2021, this Court's Order (Dkt. 1289) found that "an ongoing royalty of $80.32 per [terminal] radio and $378.16 per repeater is reasonable and appropriate under the circumstances," Dkt. 1289 (the "Royalty Order") at 41, and ordered the Parties to provide a joint submission on the license; and

WHEREAS, on February 24, 2022, the Parties submitted a proposed Royalty Agreement with disputed terms (Dkt. 1309), along with supplemental briefing in support of their respective positions (including Hytera's Motion for Reconsideration in Part) (Dkt. 1308-1318);

WHEREAS, on March 14, 2022, Motorola filed a Response to Hytera's Submission Regarding Terms of Ongoing Royalty (Dkt. 1330-1332); and

WHEREAS, on April 12, 2022, this Court denied Hytera's Motion for Reconsideration in Part, ruled on the various terms disputed by the Parties, and ordered the Parties to "submit to the Court an order with the terms of Hytera's royalty obligations in the form as proposed by the parties [1309] and including terms consistent with this order as to the disputed issues by April 19, 2022 for the Court's review, approval and entry;" and

WHEREAS, pursuant to the Court's April 12 Order, the Parties submitted a proposed Royalty Order on April 19, 2022 for the Court's review, approval and entry.

IT IS HEREBY ORDERED as follows:

1. **Definitions**

    1.1. **"Affiliate"** of a party means any legal entity, more than fifty percent (50%) of whose outstanding shares or securities representing the right to vote for the election of directors or other managing authority are, or more than fifty percent (50%) if whose equity interest is, now or hereafter, owned or controlled, directly or indirectly by that party (but only so long as such ownership or control or equity interest exists).

    1.2. **"Covered Products"** means the Hytera products that Motorola specifically identified in its submission. *See* Dkt. 1118-3 (Motorola's list of "Accused Products").

    1.3. **"Covered Knock-Down Kit"** means a collection of substantially all of the parts required to assemble a Covered Product, whether such parts are completely disassembled or partially assembled, provided such collection includes the firmware for such Covered Product.

    1.4. **"Court"** means the court assigned to the above-captioned matter or otherwise having jurisdiction to enforce or modify the terms of this order.

    1.5. **"Covered Equipment Transaction"** shall mean the (i) manufacture of the Covered Products, (ii) use for purposes of evaluation, testing, and development in connection with the foregoing sub-section (i), or (iii) sale, lease, distribution or delivery (each item in this subsection (iii), a "Sale"), in each case with respect to (i) - (iii), of a Covered Product or a Covered Knock-Down Kit and further, in each case of (i) - (iii), not out of compliance with any U.S. law, including, for the avoidance of doubt, U.S. laws and regulations relating to economic sanctions and export controls (any of the foregoing instances of non-compliance, "U.S. Law Non-Compliance").

2. **Scope of License**

    2.1. Subject to the terms and conditions of this Order, beginning on July 1, 2019, Hytera and its Affiliates shall have a limited, non-transferable, non-exclusive, non-sublicensable, royalty-bearing, license solely under Motorola's trade secrets and copyrights at issue in the above-captioned action, solely for Hytera and its Affiliates for Covered Equipment Transactions anywhere in the world, and conditioned on payment in accordance with the provisions contained herein.

    2.2. None of Hytera's or its Affiliates' licensed activity hereunder will confer or otherwise result in Hytera or any of its Affiliates (i) obtaining any title, ownership right, or ownership interest in any Motorola intellectual property, (ii) a license to any Motorola intellectual property other than the Motorola trade secrets and copyrights at issue in the above-captioned action, or (iii) any activity occurring prior to July 1, 2019.

2.3. Notwithstanding anything to the contrary herein, for the avoidance of doubt, no license right is granted hereunder to any government entity or agency.

3. **Confidentiality Obligations**

3.1. Hytera must keep Motorola's trade secrets and copyrights at issue in the above-captioned action confidential and not publish, disseminate, or compromise the confidential nature of or disclose any portion of same. Hytera must require that its Affiliates who engage in any Covered Equipment Transaction execute an undertaking substantially identical to the template in Appendix A confirming their agreement to comply with these terms.

3.2. If Hytera becomes aware of any breach of Section 3.1, Hytera shall notify Motorola within three (3) days and immediately take steps to retrieve and protect the information that was published or disclosed, to the extent permitted by applicable laws. Hytera shall assist Motorola with reasonable action requested by Motorola in connection with the foregoing, including but not limited to cooperation with respect to investigations and undertaking any actions required by or with respect to Court orders, or orders of another court or administrative tribunal, to the extent allowed under applicable law.

4. **Royalties**

4.1. Hytera shall make payments to Motorola Solutions in the amount of $80.32 USD per terminal (portable or mobile) and $378.16 per repeater (subject to any revised rates ruled otherwise after the exhaustion of all pending appellate proceedings) on a particular unit's first Sale to an unaffiliated third party.

5. **Payment and Reporting**

5.1. Subject to Section 5.4, on January 21, April 20, July 21, and October 21 of every year, a responsible and duly authorized official of Hytera shall certify, for the preceding three-month period (e.g., on April 20, for the three-month period covering the preceding January, February, and March), in a written report by e-mail or fax to Motorola at the addresses below:

> Motorola Solutions, Inc.
> 500 West Monroe Street
> Chicago, IL 60661
> Attention: General Counsel, for Hytera License
> Email: bryan.potratz@motorolasolutions.com

reporting on:

5.1.1. The number of first Sales by Hytera and its Affiliate(s) to unaffiliated third parties anywhere in the world, including separate line items for terminal units and repeater units, or

3

- 5.1.2. That no Covered Products have been sold.

5.2. Reports pursuant to Section 5.1 shall follow the format of Appendix B.

5.3. Payments shall be due for the amounts reflected in these quarterly reports on each subsequent January 31, April 30, July 31, and October 31, and made into the Parties' agreed escrow account, pending exhaustion of all appellate proceedings, unless and until the Court orders otherwise.

5.4. On July 21, 2022, Hytera shall submit its first report pursuant to Section 5.1 and shall include all sales of Covered Products from July 1, 2019 through June 30, 2022.

5.5. On July 31, 2022, Hytera's first royalty payment for the amounts reflected in the July 21, 2022 report shall be paid into the escrow account.

5.6. Payments under Section 4.1 by Hytera made prior to entry of a final, non-appealable judgment in the above-captioned case, or prior to a mandate affirming the instant judgment issuing from an appeal in the above-captioned case, shall be made according to the payment terms herein and remitted by wire transfer to the following escrow account[2]:

> Account Name:
> Currency: US Dollars
> Bank:
> Bank Swift Code:
> Bank ABA Routing Number:
> Account to Credit:

Referencing "Hytera Court-Ordered Ongoing Royalty."

- 5.6.1. Amounts held in escrow shall be transferred only upon order of this Court.

5.7. Payments made under this license on or after entry of a final, non-appealable judgment in the above-captioned case shall be remitted by wire transfer in U.S. Dollars to [●].

5.8. Any payment hereunder which shall be delayed beyond the date required hereunder shall be subject to an interest charge of one percent (1%) per month on the unpaid balance, payable in United States currency, until paid.

6. **Records and Audit Rights**

   6.1. Hytera shall keep clear and accurate inventory records (including electronic information) with respect to Covered Products sold. Such records shall be the

---

[2] Motorola will provide the account information in 5.6 and 5.7 Hytera after entry of the Order.

sales documentation Hytera creates and keeps in its ordinary course of business. These records shall be retained by Hytera for a period of at least seven (7) years from date of reporting and payment, notwithstanding the expiration or other termination of this Order. Hytera shall require its Affiliates who engage in any Covered Equipment Transaction to execute an undertaking substantially identical to the template in Appendix A agreeing to maintain records consistent with the requirements of this Section 6.

6.2. During the term of this Order, subject to the protocol outlined in Dkt. 1223,[3] Motorola shall have the right through an internationally recognized accounting firm and at its expense, to examine and audit at the location of the records kept pursuant to Section 6.1 or other agreed location, not more than once a year upon not less than ten (10) days prior written notice, and during normal business hours, all such records and such other records (including electronic information) and accounts (including electronic information) as may under common accounting practices contain information bearing upon the amount of royalty payable to Motorola Solutions under this Order.

6.2.1. Such internationally recognized accounting firm shall be bound in writing to maintain the confidentiality of and not disclose the contents of such records to any third party, except to the extent required by law or legal process.

6.2.2. Motorola shall be entitled to the results of the audit in a manner that informs Motorola of the accuracy of Hytera's reporting but does not disclose Hytera's or its Affiliates' confidential information, except to individuals authorized to view such information under the Protective Order in the above-captioned litigation.

6.3. Prompt adjustment shall be made by Hytera to compensate for any underpayments disclosed by such examination or audit, including the interest as set forth in Section 5.8. If the amount of such underpayment exceeds two percent (2%) of the due amount, then Hytera shall bear all external costs and expenses incurred in conducting such audit (including, but not limited to, the costs and expenses of the accounting firm). Further, if the amount of the underpayment:

6.3.1. exceeds five percent (5%) but is less than or equal to ten percent (10%) of the due amount, then Hytera shall pay Motorola Solutions an additional surcharge of ten percent (10%) of the underpayment;

---

[3] In its April 12, 2022 Order, the Court inadvertently overlooked the more recent Chinese law review protocol, agreed and entered by the Court in the context of the citation proceedings at Dkt. 1223, and instead identified the protocol adopted during discovery in the underlying case. *See* Dkt. 1338 at 19. The Court hereby clarifies that the more recent Chinese law protocol (Dkt. 1223) should be followed in connection with the audits described herein.

5

      6.3.2. exceeds 10 percent (10%) but is less than or equal to twenty-five percent (25%) of the due amount, then Hytera shall pay Motorola Solutions an additional surcharge of twenty-five percent (25%) of the underpayment;

      6.3.3. exceeds twenty-five percent (25%) but is less than or equal to fifty percent (50%) of the due amount, then Hytera shall pay Motorola Solutions an additional surcharge of fifty-percent (50%) of the underpayment;

      6.3.4. exceeds fifty percent (50%) of the due amount, then Hytera shall pay Motorola Solutions an additional surcharge of one-hundred percent (100%) of the underpayment.

For the avoidance of doubt, the surcharge percentages set forth above shall apply to the entire amount of the audited underpayment, and not just the amount above the threshold. Total payment to Motorola Solutions will be computed by summing up the underpayments and any additional surcharges, and then applying the interest as set forth in Section 5.8. In the event that any overpayment during the audit period is identified and proven to the satisfaction of the auditor during the course of the audit, such overpayment may be credited against underpayments during the same period, but only up to the total amount of any such underpayments. Independent of any audit, a credit shall be available against future royalties for overpayments only if: (i) such overpayments are identified and fully explained in writing by Hytera within twelve (12) months after the due date of the payment that included such overpayment; and, (ii) Motorola is able to verify to its own satisfaction the existence and extent of such overpayment.

7. **Taxes**

    7.1. Motorola Solutions shall bear all taxes imposed on it with respect to the payments made hereunder provided, however, that if so required by applicable law, Hytera shall withhold the amount of taxes levied on payments to be made by Hytera pursuant to this Order, and shall promptly make payment of the withheld amount to the appropriate tax authorities and shall transmit to Motorola Solutions official tax receipts or other evidence issued by those tax authorities sufficient to enable Motorola Solutions to support a claim for a corresponding tax credit.

8. **Term and Termination**

    8.1. This license, including all rights and obligations provided herein, shall remain in effect unless and until terminated or modified by the Court.

9. **Dispute Resolution**

    9.1. Motorola and Hytera shall meet and confer in good faith in an attempt to resolve any disputes that may arise hereunder. Motorola or Hytera may move the Court for resolution of any such disputes only after satisfaction of this meet-and-confer requirement.

10. **Change of Control**

   10.1. Subject to Section 10.2, the rights or privileges provided for hereunder may be assigned or transferred by either party only with the prior written consent of the other party, or with approval by the Court, and in all cases subject to the approval of any governmental authority as then may be required.

   10.2. Absent consent or approval under Section 10.1, in the event that Hytera subsequently comes under the ownership or control of another entity active in a material way in the field of land-mobile radio communications, all licenses granted herein shall thereafter be exercisable only in a manner that does not extend to the operations of the new controlling entity.

11. **Form of Notices**

   11.1. Except as otherwise specifically provided herein, all notices required or permitted hereunder shall be delivered to counsel of record in the above-captioned matter.

   11.2. The date of receipt of such a notice shall be the date for the commencement of the running of the period provided for in such notice, or the date at which such notice takes effect, as the case may be.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 5, 2022

## Appendix A

# Affiliate Undertaking Regarding Confidentiality and Record-Keeping[4]

WHEREAS the district court in *Motorola Solutions, Inc., v. Hytera Communications Corporation Ltd.*, Case No. 1:17-cv-01973 (N.D. Ill.), has ordered Hytera to pay an ongoing royalty for the sales of Covered Products, subject to certain conditions, including certain confidentiality obligations detailed in Section __ of that order (the "Confidentiality Obligations") and certain Records and Audit Rights in Section __ of that Order; and

WHEREAS Hytera desires to share information with _____ ("Receiving Affiliate") that may reflect Motorola trade secrets or copyrights subject to the Confidentiality Obligations or to engage in a Covered Equipment Transaction with Receiving Affiliate (the "Exchange");

In consideration for and as a condition of the Exchange, Hytera and Receiving Affiliate hereby agree as follows:

1. Receiving Affiliate agrees to comply with the Confidentiality Obligations applicable to Hytera, as if they applied to Affiliate. Affiliate further agrees to use any information subject to the Confidentiality Obligations in conjunction with the Covered Products.

2. Receiving Affiliate agrees to comply with the Records and Audit Rights obligations applicable to Hytera, as if they applied to Affiliate.

3. Nothing in this Affiliate Undertaking Regarding Confidentiality and Record-Keeping shall be construed as obligating Hytera to provide any Motorola trade secrets or copyrights nor as an admission that any information provided hereunder constitutes or reflects Motorola trade secrets or copyrights.

| **Hytera Communications Co. Ltd.** | **Receiving Affiliate** _____ |
|---|---|
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Signature: _____ | Signature: _____ |
| Date: _____ | Date: _____ |

---

[4] Unless expressly defined herein, capitalized terms in this Affiliate Undertaking Regarding Confidentiality and Record-Keeping shall have the definitions for those terms provided in the royalty order of the district court in *Motorola Solutions, Inc., v. Hytera Communications Corporation Ltd.*, Case No. 1:17-cv-01973 (N.D. Ill.), a copy of which is appended hereto.

## Appendix B
### Form Table for Covered Products Report

**Country:**

| Hytera Selling Entity (e.g. Hytera or identity of Affiliate) | Product Model Number | Type Product (Portable, Mobile, or Repeater) | Number of Units Sold | Per Unit Royalty (or none, if applicable) | Identity of 3rd Party customer if as an OEM | Product Brand (e.g. of Hytera, Affiliate, or 3rd party) | Royalty Amount Total |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Royalty Amount Total for Country: _____

(The above information to be separately tabulated for each country around the world).

---------------------------------------------------------------------------------------------------------
------------------------------------------

**Total Number of units of Portable and mobile radios sold Worldwide:** _____

**Total Number of units of Repeaters sold Worldwide:** _____

**Worldwide Royalty Amount Total:** _____

9