UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.<br><br>      Plaintiffs,<br><br>    v.<br><br>HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., and HYTERA COMMUNICATIONS AMERICA (WEST), INC.<br><br>      Defendants. | Case No. 1:17-CV-01973<br><br>Honorable Martha M. Pacold<br><br>**REDACTED VERSION** |

**DEFENDANT HYTERA COMMUNICATIONS CORPORATION LTD.'S
RENEWED OPPOSED MOTION TO MODIFY OR STAY ROYALTY ORDER**

On July 5, 2022, the Court directed defendant Hytera Communications Corporation, Ltd. HCC to pay into escrow cash covering royalties on historical sales of the accused products from July 2019 through August 1, 2022. *See* Dkt. 1349 (the "royalty order"). The total amount owed into escrow was about ▮▮▮▮. HCC now asks this Court to modify the royalty order to permit that ▮▮▮▮ be placed into escrow in lieu of cash for this payment. The current value of the ▮▮▮▮ exceeds the amount of money currently due into escrow. Alternatively, HCC respectfully seeks a stay pending appeal of the Court's royalty order requiring a lump-sum cash payment into escrow.[1]

I. **PROCEDURAL HISTORY**

HCC and Motorola are global competitors in the market for two-way radios based on an international communications standard called Digital Mobile Radio ("DMR"). Motorola sued HCC and its U.S. subsidiaries for trade-secret misappropriation and copyright infringement in connection with HCC's professional-tier DMR products. Dkts. 1, 265. A jury rendered a verdict in Motorola's favor. Dkt. 894. It awarded Motorola all of the damages it had requested—$345.8 million in disgorgement damages and $418.8 million in punitive damages, for a total of $764 million. Dkt. 894, 947. The U.S. subsidiaries filed for bankruptcy and were later dismissed with prejudice, leaving HCC as the only remaining defendant. Dkts. 974, 975, 1350.

A. **HCC suffers a** ▮▮▮▮ **following the jury verdict**

Following the jury verdict, HCC suffered 

Dkt. 1267 at p. 5 ¶ 9. Some

---

[1] HCC filed this motion to modify or stay the royalty order on August 1, 2022. Dkts. 1351, 1352. HCC now renews this motion pursuant to this Court's October 21, 2022 order, Dkt. 1378.

1

of HCC's ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *Id.* As is generally the case with ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. This ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. *Id*. HCC has reported net losses in its financial reports. *Id*. at 6. The details of HCC's ▅▅▅▅▅▅▅ are established in sworn statements of its CFO, as well as reports from two reputable accounting firms, namely Grant Thornton and AlixPartners.

HCC's ▅▅▅▅▅▅▅ should not be surprising. While HCC presented evidence at trial that it was a "financially successful, profitable company," Dkt. 1172 at 26, HCC also advised this Court and the jury that the damages sought by Motorola—over $764 million dollars—were "bankrupting amounts" of money, Tr. 5738:3. Motorola has accused the U.S. entities of nefarious motives for declaring bankruptcy following the verdict, Dkt. 1245 at 3, but the federal bankruptcy court rejected the same arguments and approved the sale of the assets to a new entity under the court's supervision.[2] Given the size of the verdict and its ▅▅▅▅▅▅▅, HCC could not raise sufficient cash collateral for a surety to post a supersedeas bond covering such a large judgment. Nevertheless, as the Honorable Judge Norgle recognized, HCC has a "significant" appeal pending in the Seventh Circuit. Dkt. 1348 at 3.

HCC's ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅, with HCC ▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *See* Ex. A, Kang Decl. ¶ 4. HCC started the year with ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. In March

---

[2] *See* Jan. 22, 2021 court minute order, *In re Hytera Communications Am. (West) Inc., et al.*, Case No. 8:20-bk-11507-ES, Dkt. 111.

2022, HCC had over ▮▮▮▮▮. *See id.* ¶ 10. HCC has been ▮▮▮▮▮.[3] Also in March 2022, HCC announced estimated losses of RMB 390–580 million in its 2021 performance forecast report.[4] In response, ▮▮▮▮▮.[5] Then in April 2022, HCC released its annual report showing a net loss of RMB 661.7 million in 2021, among other challenges.[6] In response, ▮▮▮▮▮[7] Some ▮▮▮▮▮.[8] Other ▮▮▮▮▮.[9] HCC had been able to ▮▮▮▮▮.[10]

---

[3] *See* Ex. F, 9/6/2022 Grant Thornton Report at 5–6 (showing ▮▮▮▮▮). The Grant Thornton Report submitted as Exhibit F was prepared in connection with HCC's reply on its original filing of this motion. *See* Dkt. 1372-2. The Kang Declaration (Ex. A) was prepared at the time of the original motion, along with an earlier Grant Thornton Report. *See* Dkts. 1352-1, 1352-2. For completeness, the earlier Grant Thornton report is also submitted as Ex. B to this motion.

[4] Ex. A, Kang Decl. ¶ 7; *see also* Exhibit 1 to the Kang Decl. (in March 7, 2022 letter, ▮▮▮▮▮).

[5] *See, e.g.,* Ex. A, Kang Decl. ¶ 8 (identifying e▮▮▮▮▮).

[6] Ex. A, Kang Decl. ¶ 7.

[7] *See* Ex. A, Kang Decl. ¶ 8; *see also id.* at Exhibit 1 to the Kang Decl. (exemplar from ▮▮▮▮▮).

[8] *See* Ex. A, Kang Decl. ¶¶ 9, 14. On May 30, 2022, ▮▮▮▮▮. *See* Ex. C.

[9] *See* Ex. A, Kang Decl. ¶¶ 9, 14.

[10] *Id.* at ¶ 12.

3

### B. Relevant orders leading to the present motion

In December 2020, the Court denied Motorola's motion for a permanent injunction, citing, among other things, Motorola's ability to quantify any prospective injury and "the potential scope, impact, and difficulties a worldwide injunction could cause, particularly during an ongoing pandemic . . . ." Dkt. 1097 at 6. In the same order, the Court granted Motorola's alternative request for an ongoing royalty but noted that arguments regarding the appropriate rate to apply were undeveloped at that time. *Id.* The ensuing briefing revealed disputes over the rates and non-monetary terms governing the scope and procedure for the royalty. *See* Dkt. 1118, 1130, 1140. Both sides agreed, however, that HCC's royalty payments should be made into an escrow account pending appeal. *See* Dkt. 1118 at 10, Dkt. 1130 at 13.

In December 2021, the Court ordered a royalty rate equivalent to 100% of HCC's profits on sales of the accused products, starting on July 1, 2019 and going forward. Dkt. 1289. The HCC asked for reconsideration, explaining to the Court that it lacked sufficient cash to cover such a large payment in cash. Dkt. 1315 at 27–28. In April 2022, the Court acknowledged HCC's concerns about its ability to pay the ordered sum but indicated that the Court would "cross that bridge only if and when" that issue ripens. Dkt. 1338 at 5. The Court also clarified that the ongoing royalty would apply to HCC only and not to any of HCC's affiliates. *Id.* at 20. On April 8, 2022, the parties submitted an agreed proposed order consistent with the Court's rulings on the royalty rates and terms. Dkt. 1339.

In the meantime, the Court ruled on motions filed by Motorola. Specifically, Motorola had sought reconsideration of the order denying the permanent injunction. Dkt. 1239. Motorola also had moved to compel HCC to turnover certain cash and cash equivalent assets in satisfaction of the judgment. Dkt. 1243. In that same motion, Motorola also asked the Court to hold HCC in contempt with regard to judgment-enforcement discovery obligations. Dkt. 1243. On July 5, 2022,

the Court denied those motions. Dkt. 1348. As for reconsideration of the injunction order, the Court found it lacked jurisdiction to grant the requested relief because Motorola had appealed the order to the Seventh Circuit. *Id*. at 2. As to the turnover motion, the Court acknowledged that it had the discretion to order turnover of funds but declined to exercise that discretion in view of the significant issues to be resolved on appeal. *Id.* at 3. Finally, the Court denied Motorola's request for contempt, "tak[ing HCC] at its word that it has not stopped and will not stop producing relevant documents" regarding the amount and location of its assets, consistent with its judgment-enforcement discovery obligations. *Id.*

Having resolved Motorola's motions, the Court then entered the parties' proposed order regarding the operations of the ongoing royalty on July 5, 2022 (the "royalty order"). Dkt. 1349. HCC's first escrow payment, which was to cover sales of accused products dating back to July 1, 2019, was due on July 31, 2022. *Id.* ¶¶ 5.4–5.5. Further payments are to be made on a quarterly basis. *Id.* ¶ 5.1.

On July 21, 2022, pursuant to Sections 5.1 and 5.4 of the royalty order, HCC submitted a report to Motorola's counsel identifying all sales of the covered products from July 1, 2019 through June 30, 2022. Applying the Court's royalty rate, the total payment for that period amounted to approximately ▮▮▮▮▮.[11] According to the royalty order, HCC was to pay that sum into an escrow account on July 31, 2022. Dkt. 1349 at 4.

---

[11] The subsequent quarterly payments, including the payment already made for Q3 2022, are expected to be significantly smaller, because HCC has launched a new radio using substantially different hardware and software design from the accused devices subject to the royalty.

5

### C. HCC's efforts to comply with the royalty order

HCC made significant efforts to ▮▮▮▮▮ to cover the ▮▮▮▮▮ in cash. For four weeks prior to the payment's due date, HCC had communications with ▮▮▮▮▮ ▮▮▮▮▮.[12] Consistent with HCC's long-standing practice, ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ to cover the lump-sum escrow amount. In each case, however, ▮▮▮▮▮ ▮▮▮▮▮ In one instance, ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. *See id.* at ¶ 14. HCC then followed up those meetings with a written communication ▮▮▮▮▮ ▮▮▮▮▮ While some ▮▮▮▮▮ ▮▮▮▮▮. HCC has attached those ▮▮▮▮▮ to this motion, along with a declaration from HCC's Finance Director as well as English translations. *See* Ex. A (Kang Decl.) and Exhibits 2–9 attached to the Kang Declaration.

When it was apparent that ▮▮▮▮▮ was not a viable option, HCC looked for alternative security. *See* Dkt. 1352 at 8. One of HCC's indirect subsidiaries, ▮▮▮▮▮ ▮▮▮▮▮ to cover the escrow amount. *See* Dkt. 1352-1 (Kang Declaration) at ¶¶ 23–26. ▮▮▮▮▮ ▮▮▮▮▮. *See id.* at ¶¶ 24–25. ▮▮▮▮▮ ▮▮▮▮▮

---

[12] *Id.* at ¶ 13.

6

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at ¶ 23. An independent appraiser valued the ▇▇▇▇▇▇▇ at approximately ▇▇▇▇▇▇. *See* ▇▇▇ Valuation Report (attached as Exhibit 10 to the Kang Declaration). Thus, the current valuation of the ▇▇▇▇▇▇▇▇▇ *exceeds* the ▇▇▇▇▇ amount currently owed into escrow for the first royalty payment.

HCC proposed this modification to Motorola in advance of the due date for the royalty payment. The parties met and conferred regarding the proposal, and during that process, HCC offered additional protections to Motorola. HCC advised Motorola that HCC would put additional cash or security into escrow if the ▇▇▇▇▇▇▇▇▇▇▇ drops below ▇▇▇▇▇ during the appeal of this case. HCC further advised Motorola that ▇▇▇▇▇▇ are not encumbered and that they would not be encumbered or disposed of while in the escrow account. HCC would have the ▇▇▇▇▇ moved into an escrow account in New York, thereby protecting Motorola's rights to access those assets should Motorola prevail on appeal (and the Court order the escrowed assets delivered to Motorola). As HCC further explained, selling ▇▇▇▇▇▇▇▇ (as would have been necessary to liquidate the asset to meet the first royalty payment) while HCC's appeal is pending is completely unwarranted given the current market and the serious questions of law at issue in the appeal. HCC agreed to cover the administrative fees (about US$10,000 per year) for maintaining an escrow account with ▇▇▇▇▇, as well as to pay cash into escrow for future royalty payments starting third quarter 2022. (Indeed, HCC timely made the second payment required, with certain taxes withheld in accord with Section 7.1 of the royalty order. *See* Dkt. 1349 § 7.1.) The parties' meet-and-confer efforts were unsuccessful.

Accordingly, HCC respectfully moves this Court to modify the royalty order to permit that ▇▇▇▇▇▇ be placed into escrow in lieu of cash. The ▇▇▇▇▇▇▇—with ▇▇ value

7

exceeding [REDACTED]—are appropriate and adequate security for Motorola. HCC alternatively seeks a stay of the Court's order requiring that cash be placed into escrow pending appeal. Staying the order will allow the Seventh Circuit the requisite breathing space to resolve the difficult and novel questions of federal law that are presented here.[13]

II. **ARGUMENT**

    A. **The Court should modify the royalty order to permit escrow of the [REDACTED] in lieu of cash**

In view of its [REDACTED] to cover the initial escrow payment, HCC asks this Court to permit that [REDACTED]—be placed into escrow in lieu of cash for the historical royalty payments. Using an income method of valuation, an independent appraiser valued the equity of the [REDACTED][14] This *exceeds* the owed escrow amount by more than [REDACTED]. HCC would have the [REDACTED], thereby protecting Motorola's rights to access those assets should Motorola prevail on appeal.

Courts routinely approve deposits of [REDACTED] as security for judicial debts in lieu of cash or cash equivalents, particularly where the defendant's "precarious financial situation" prevents it from acquiring the required cash. *Dillon v. City of Chicago*, 866 F.2d 902, 905 (7th Cir. 1988) (citing *Olympia Equip. Leasing Co.*, 786 F.2d at 796). In *Bowers v. Baystate Technologies, Inc.*, for example, the court allowed a pledge of stock as alternative security after the defendant submitted evidence that it had tried unsuccessfully to obtain a bond, its primarily refused to issue

---

[13] HCC recognizes its original motion was filed shortly after the royalty payment was due into escrow. HCC had sought to exhaust available resources before seeking any relief from the Court. And as part of these efforts, [REDACTED]

[14] *See* [REDACTED] Valuation Report (attached as Exhibit 10 to the Kang Declaration).

8

exceeding ▬▬▬▬—are appropriate and adequate security for Motorola. HCC alternatively seeks a stay of the Court's order requiring that cash be placed into escrow pending appeal. Staying the order will allow the Seventh Circuit the requisite breathing space to resolve the difficult and novel questions of federal law that are presented here.[13]

II. **ARGUMENT**

    A. **The Court should modify the royalty order to permit escrow of the ▬▬▬ ▬▬▬ in lieu of cash**

In view of its ▬▬▬▬▬▬▬ to cover the initial escrow payment, HCC asks this Court to permit that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬—be placed into escrow in lieu of cash for the historical royalty payments. Using an income method of valuation, an independent appraiser valued the equity of the ▬▬▬  ▬▬▬▬▬▬▬[14] This *exceeds* the owed escrow amount by more than ▬▬▬. HCC would have the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, thereby protecting Motorola's rights to access those assets should Motorola prevail on appeal.

Courts routinely approve deposits of ▬▬▬▬ as security for judicial debts in lieu of cash or cash equivalents, particularly where the defendant's "precarious financial situation" prevents it from acquiring the required cash. *Dillon v. City of Chicago*, 866 F.2d 902, 905 (7th Cir. 1988) (citing *Olympia Equip. Leasing Co.*, 786 F.2d at 796). In *Bowers v. Baystate Technologies, Inc.*, for example, the court allowed a pledge of stock as alternative security after the defendant submitted evidence that it had tried unsuccessfully to obtain a bond, its primarily refused to issue

---

[13] HCC recognizes its original motion was filed shortly after the royalty payment was due into escrow. HCC had sought to exhaust available resources before seeking any relief from the Court. And as part of these efforts, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[14] *See* ▬▬▬ Valuation Report (attached as Exhibit 10 to the Kang Declaration).

8

a letter of credit, and its financial records otherwise indicated that the cost of a supersedeas bond "could well lead to [the defendant's] demise." *Bowers v. Baystate Techs., Inc.*, No. CIV. A. 91-40079-NMG, 2001 WL 640876, at *1 (D. Mass. June 5, 2001); *see also C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F. Supp. 501, 520 (E.D. Pa. 1973) (permitting defendant to pledge stock as alternative security where the defendant's financial statements demonstrated they were "without sufficient assets to satisfy the judgment and are unable to obtain a bond in the amount" required).

In evaluating a proposal to deposit property in lieu of cash owed on a judicial debt, the key question is whether the asset provides "adequate security" for the debt. *Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v. Cornish*, 759 F. App'x 503, 509 (7th Cir. 2019); *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.* ("*PDVS*"), No. 19 CIV. 10023 (KPF), 2020 WL 7711522, at *2 (S.D.N.Y. Dec. 29, 2020) ("Here, the Pledged Shares similarly provide the Defendants with adequate security."); *Kuhns Bros., Inc. v. Fushi Int'l, Inc.*, No. 3:06CV1917 (PCD), 2009 WL 10714624 (D. Conn. Mar. 3, 2009) (permitting defendant to deposit 100,000 shares of its own common stock, valued at $451,000, in lieu of a supersedeas bond to cover precisely that portion of a judgment).



Here, the ▬▬▬ are clearly adequate security. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* ▬▬ Valuation Report at 7, 10 (attached as Exhibit 10 to the Kang Declaration). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* In fact, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). The current value of ▬▬▬▬▬▬▬ exceeds ▬▬▬▬▬—the

9

amount currently owed in royalties. *Id.* at 17. Indeed, in prior pleadings, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

To the extent that Motorola is concerned that the ███ value may change during the appeal process, that concern can be addressed through an additional condition that is fairly common with escrows and other security for a judicial debt involving ████████. HCC has offered to have an appraiser value the ████████ in early 2023 and again early 2024, each after ████████ ████████████████████. If the appraiser determines that the ████████ values have dropped below ████████, HCC will contribute additional cash or other security into the escrow account to make up the difference. As HCC has explained, it is not in the interest of either party to sell the ████████████████ prices before the Seventh Circuit has decided the important issues in this case. Moreover, this replenishment obligation also ensures that HCC is incentivized to ensure the ████████ retain their value (and thus incentivized against taking any action that would diminish their value).

In short, Motorola is adequately protected by putting the ████████ into escrow. Accordingly, HCC respectfully requests that the Court modify the Royalty Order, Dkt. 1349, to permit that the ████████████ be placed in escrow in lieu of cash as security for HCC's first royalty payment. The Norsat shares provide adequate security pending appeal. No additional security is warranted—█████████████████████████████████████████████████—to protect the status quo.

HCC alternatively seeks a stay of the Court's order requiring that cash be placed into escrow pending appeal. As Judge Norgle noted, the parties' appeals raise "significant" issues for the appellate court to resolve. As relevant here, the Court ordered HCC to pay a royalty equivalent

10

of 100% of HCC's expected profits. (Dkt. 1289 at 1, 20.) These rates left HCC with no prospect of making any profit. HCC thus does the work and takes the risk but gains nothing from it. As Judge (later Justice) Stevens explained, a licensee would not be willing to pay 100% of his profits in exchange for a license. *Zegers v. Zegers*, 458 F.2d 726, 728 n.8 (7th Cir. 1972). It is thus a "basic error" to set a royalty that would not allow the defendant to make any reasonable profit. *See id*. Staying the order will allow the Seventh Circuit the requisite breathing space to resolve this and other important issues. HCC's opening brief is due on November 14, 2022.

> **B.     The Court has the authority to order the requested relief notwithstanding the pending appeal.**

The Court directed the parties to address "the court's authority to award any of the requested relief given the appeals before the Seventh Circuit." Dkt. 1378. "Whenever an injunction is issued, the court that issued it retains jurisdiction, explicitly or implicitly, to enforce, modify, or dissolve it." *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 717 (7th Cir. 1987), *amended,* (7th Cir. May 27, 1987); *see also Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) ("[A] sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.").

Here, although both sides have appealed orders relating to the Royalty Order, the District Court retains authority and jurisdiction to modify that order, as HCC requests. The parties have previously agreed that the Court retains jurisdiction to modify the royalty order. Indeed, Motorola proposed that the Court adopt language confirming that authority in the royalty order. Dkt. 1309 § 9.2. HCC did not dispute that the Court retained that authority but opposed the inclusion of that language as unnecessary; the Court agreed with HCC on that point. Dkt. 1338 at 21. Thus, this Court has the authority to grant HCC's requested relief.

11

### III. CONCLUSION

HCC respectfully submits that the Court modify or stay the Court's royalty order (Dkt. 1349) to permit that ███████ be placed into escrow in lieu of cash for HCC's first royalty payment thereunder.

Date: November 9, 2022

Respectfully submitted,

/s/ *Boyd Cloern*
Boyd Cloern (*pro hac vice*)
bcloern@steptoe.com
Michael Allan (*pro hac vice*)
mallan@steptoe.com
Scott Richey (*pro hac vice)*
srichey@steptoe.com
Christopher Suarez
csuarez@steptoe.com
John William Toth (*pro hac vice*)
btoth@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

Daniel Stringfield
dstringfield@steptoe.com
Tron Fu
tfu@steptoe.com
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

**CERTIFICATE OF SERVICE**

  I, Boyd Cloern, an attorney, hereby certify that on November 9, 2022, I caused a true and correct copy of the foregoing submission to be served via the Court's ECF system upon all counsel of record.

                  */s/ Boyd Cloern*
                  Boyd Cloern