**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD., <br><br> Plaintiffs, <br><br> v. <br><br> HYTERA COMMUNICATIONS CORPORATION LTD., HYTERA AMERICA, INC., AND HYTERA COMMUNICATIONS AMERICA (WEST), INC., <br><br> Defendants. | Civil Action No.: 1:17-cv-01973 <br><br> Honorable Martha M. Pacold <br><br> **PUBLIC VERSION - REDACTED** |

**PLAINTIFFS' OPPOSITION TO HYTERA'S MOTION TO
CONTINUE CONTEMPT HEARING**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...................................................................................................................2

    A. Hytera Provides No Assurances That It Will Pay If Given More Time ..................2

    B. Hytera's Request for More Time to Prepare and Present a Contempt Defense Is Unnecessary ...........................................................................................5

        1. Due Process Requirements Have Been More Than Satisfied and An Evidentiary Hearing Is Not Required.......................................................5

        2. Hytera's Assertions Concerning the Time It Needs to Prepare for the Hearing Are Incorrect ..........................................................................8

    C. The Status of Hytera's Lead Counsel Does Not Justify a 60-Day Extension..........9

    D. Hytera's Requested Continuance Will Be Highly Prejudicial to Motorola ...........10

III. CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fletcher Mortg. Co. v. Bass*,
    688 F.2d 513 (7th Cir. 1982) ...................................................................................4, 5

*Commodity Futures Trading Comm'n v. Premex, Inc.*,
    655 F.2d 779 (7th Cir. 1981) ...................................................................................5, 6

*D. Patrick, Inc. v. Ford Motor Co.*,
    8 F.3d 455 (7th Cir. 1993) .......................................................................................7, 8

*Feldman v. Allegheny Intern., Inc.*,
    850 F.2d 1217 (7th Cir. 1988) ....................................................................................4

*Ferrell v. Pierce*,
    785 F.2d 1372 (7th Cir. 1986) ....................................................................................6

*In re Grand Jury Proceedings Empanelled May 1988*,
    894 F.2d 881 (7th Cir. 1989) ...................................................................................7, 8

*Jewel Tea Co. v. Kraus*,
    204 F.2d 549 (7th Cir. 1953) ......................................................................................6

*Kapco Mfg. Co. v. C & O Enter., Inc.*,
    886 F.2d 1485 (7th Cir. 1989) ....................................................................................7

*N. Cent. Distrib., Inc. v. Bogenschutz*,
    No. 117CV01351AWIEPG, 2018 WL 4027048 (E.D. Cal. Aug. 21, 2018) ................5

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112 (9th Cir. 2000) .................................................................................5, 6

*Shakman v. Democratic Org. of Cook Cnty*,
    533 F.2d 344 (7th Cir. 1976) ......................................................................................4

*United States v. United Mine Workers*,
    330 U.S. 258 (1947) ....................................................................................................4

*White v. Gen. Motors Corp.*,
    908 F.2d 675 (10th Cir. 1990) .................................................................................5, 6

Plaintiffs Motorola Solutions, Inc. and Motorola Solutions Malaysia Sdn. Bhd. ("Plaintiffs" or "Motorola") respectfully oppose Hytera's request to continue the contempt hearing scheduled for August 8, 2023 (Dkt. 1430).

## I. INTRODUCTION

Hytera's request to further put off resolution of its clear violation of the Court's Royalty Order after years of litigation—including briefing on this issue that commenced a year ago—is the latest example of Hytera's disregard for the U.S. justice system. During that time, Hytera has profited handsomely without consequence, making hundreds of millions of dollars from its theft of Motorola's technology, all the while dissipating assets that could be used to satisfy its Court-ordered obligations in violation of this Court's asset transfer restrictions, and without so much as posting an appeal bond. This is not a new story: Hytera's continuance request reflects its playbook in the post-trial proceedings—*i.e.,* repeatedly seeking delays, filing unnecessary briefs, and attempting to overcomplicate straightforward matters—simply to avoid the consequences of its non-compliance with this Court's orders. The present motion is another such delay tactic, plain and simple, by the perpetrator of one of the largest intellectual property thefts in U.S. history.

There is no need or justification for further delay here. Hytera's half-hearted and unsupported suggestion that it is attempting to secure payment is illusory, particularly in view of its repeated assertions that it will ***not*** pay, including in this very motion.[1] Indeed, as the Court noted in its July 11, 2023 Order, Hytera has threatened noncompliance with the Royalty Order all

---

[1] Hytera's assertion that it has satisfied subsequently due ongoing royalty payments is irrelevant. Mot. at 7. Those have totaled a mere ▮▮▮▮▮▮ thus far, and are insignificant relative to the initial $49 million royalty payment it was ordered to pay by July 31, 2022 but did not, let alone the over $631 million judgment it is appealing without posting an appeal bond or satisfying Motorola's efforts to collect on that judgment.

along. Dkt. 1429 at 6. Similarly, Hytera's alternate request for delay to allow it to prepare for a suggested three-day evidentiary hearing, and for time to collect additional financial information and expert analysis, is wholly unjustified. Over the course of the 12 months since Hytera failed to make the $49 million Court-ordered royalty payment, Hytera has submitted six briefs totaling over 46 pages that cited nearly 700 pages of evidence, including three fact declarations from a Hytera fact witness and expert declarations from five different experts—all on the issue of Hytera's purported inability to pay. Due process has been more than satisfied, and consistent with Seventh Circuit precedent, there is no requirement, or need, for an evidentiary hearing in these circumstances. As to Hytera's counsel's availability, while Motorola wishes Mr. Cloern a speedy recovery from his surgery, and respects Hytera's desire that he be present for the hearing, his expected recovery time does not justify a substantial delay either; regardless, Hytera has many other lead lawyers at Mr. Cloern's firm at its disposal (including, for example, the Steptoe partner who gave Hytera's opening statement at, and co-led, the trial).

Lastly, contrary to Hytera's assertions, the ongoing prejudice to Motorola is substantial. Hytera's ongoing campaign to violate the Court's orders is irreparably harming Motorola, as Hytera continues to take Motorola customers away by selling products containing stolen Motorola technology without making good on its royalty obligations, and blatantly violating citation transfer restrictions by dissipating hundreds of millions of dollars for its own corporate benefit while ignoring its obligations to Motorola. The time has come to put a stop to Hytera's illegal acts and disregard of this Court's clear orders attempting to curb its unlawful conduct.

## II. ARGUMENT

### A. Hytera Provides No Assurances That It Will Pay If Given More Time

Hytera's first argument—that it needs more time to secure funds to pay the $49 million in past-due royalties (Mot. at 2)—is wholly inconsistent with its repeated past (and current) assertions

that it will ***not*** pay, and insufficient to justify a continuance. In fact, in this same brief, Hytera asserts it intends to present a "substantial defense" that it is ***unable to pay***. Mot. at 3. Hytera's current position is also inconsistent with its repeated past assertions that it does not intend to pay—a fact the Court appropriately noted in its July 11, 2023 Order. Dkt. 1429 at 6 ("Hytera has not deposited what it owes in the last twelve months, and its briefing provides no assurances that it will make this deposit any time soon. ***In fact, Hytera's reply brief threatens noncompliance with the royalty order if the court declines to modify it***.") (emphasis added); Dkt. 1405 at 17 (Hytera arguing that "[t]o the extent the Court is inclined to deny [Hytera's] instant motion to modify the royalty order, then, the result would effectively be to stay [Hytera's] royalty obligations").

Hytera's contention that it is "working diligently" (Mot. at 2) to comply is mere lip service. Nowhere does Hytera describe actual steps it is taking to secure funding that are likely to succeed in any reasonable time frame, including, for example, utilizing the nearly $1 billion in net assets that it publicly reports.[2] Hytera's strategy is clear and confirms it presents the quintessential case for contempt sanctions: Hytera does not want to pay any of the $49 million into escrow, because that would mean after appeals it would be forced to relinquish that money, something it has made clear it does not intend to do. Dkt. 1405 at 17; *see also* Dkt. 1429 at 6. Although Hytera makes an unsubstantiated claim that it has "renewed its request to banks for consent to use HCC's credit facilities or accounts receivable" or alternatively to "sell assets" (Mot. at 2), it surrounds that statement with its oft-repeated mantra that it is in a "liquidity crunch" and a reminder that its

---

[2] It is telling that Hytera argues that "[a]lthough, following the jury verdict, [Hytera] advocated for a royalty payment as opposed to an injunction, it ***did not expect that the Court would order a historical royalty payment*** of $49 million." Mot. at 4 (emphasis added). In other words, Hytera thought it would get off scot-free, even though the royalty rate that Hytera advocated for 17 months prior to the first royalty payment becoming due would have amounted to tens of millions of dollars. *See* Dkt. 1131 at 6.

lenders "refused HCC's request last year" (*id.*)³—confirming Hytera's belief that neither Motorola nor the Court should expect those purported approaches to bear fruit. *See* Dkt. 1398 at 12.

That Hytera has already had well ***over a year*** to comply with the Court's July 5, 2022 Royalty Order (Dkt. 1349) but has failed to do so, and suggests only now taking additional supposed efforts to satisfy that order, belies any notion that an additional extension will lead to anything other than continued nonpayment, delay, and harm to Motorola. *See Am. Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982) ("The district court may find a defendant in civil contempt if he has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'"). Hytera essentially concedes as much, stating that it intends to use the contempt hearing to argue its inability to pay. Mot. at 2. As such, the proper course of action is to move forward with the contempt hearing. To the extent Hytera does not pay what it owes into escrow, contempt sanctions can be levied against it—*e.g.,* through an injunction and otherwise—until it decides to pay. To allow Hytera to continue undeterred would undermine a fundamental purpose of contempt: "to coerce the defendant into compliance with the court's order." *Shakman v. Democratic Org. of Cook Cnty*, 533 F.2d 344, 348-49 (7th Cir. 1976) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-304 (1947)); *see also* Mot. at 7 ("Civil contempt is meant to coerce compliance . . . .").⁴

---

3   Hytera used this very same excuse a year ago, days before its July 31, **2022** deadline to pay the $49 million, asserting that it had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to pay the royalties due to an escrow account. Dkt. 1352 at 2-3. According to Hytera, that did not work then either. *Id.*

4   Hytera's argument that it needs additional time to "avoid a 'fire sale'" (Mot. at 3) rings hollow because this purported problem, to the extent it even exists, is of Hytera's own making by failing to act over the past year. Regardless, Hytera's reliance on *Feldman v. Allegheny Intern., Inc.* for that proposition is unavailing, as that case does not discuss the concept of a "fire sale" at all and has no relevance here, as it addressed whether a letter of intent was a binding contract within the context of "[a] complex business transaction such as the purchase of five companies" and why letters of intent can be useful given the legwork associated with such transactions. 850 F.2d 1217, 1221 (7th Cir. 1988). Whatever assets

**B. Hytera's Request for More Time to Prepare and Present a Contempt Defense Is Unnecessary**

**1. Due Process Requirements Have Been More Than Satisfied and An Evidentiary Hearing Is Not Required**

Contrary to Hytera's assertion, there is no question that due process has been satisfied here and no evidentiary hearing is required in these circumstances. Courts in the Seventh Circuit regularly deny requests for lengthy evidentiary hearings in ordering contempt sanctions, particularly where, as here, the contemnor already presented substantial evidence in its defense concerning efforts to comply. *See Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 783 n.2 (7th Cir. 1981) ("[T]he refusal to grant a full evidentiary hearing did not constitute a due process denial where the documentary evidence presented by the CFTC was more than sufficient to establish the contemptuous conduct" and "defendants received the CFTC's motion and supporting papers in ample time to prepare for a show cause hearing."); *Am. Fletcher*, 688 F.2d at 520 (not an abuse of discretion to hold a contempt hearing on a single day's notice when the contemnor "had, over the proceeding eight months, presented all of his evidence relating to . . . his efforts to comply with the [Court's] order"); *see also Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118, 1120 (9th Cir. 2000) (affirming attorney sanctions issued *sua sponte* when appellants "were given the opportunity to fully brief the issue" because "an opportunity to be heard does not require an oral or evidentiary hearing on the issue"); *White v. Gen. Motors Corp.*, 908 F.2d 675, 686 (10th Cir. 1990) ("The opportunity to fully brief the issue is sufficient to satisfy due process requirements."); *N. Cent. Distrib., Inc. v. Bogenschutz*, No. 117CV01351AWIEPG, 2018 WL 4027048, at *13 (E.D. Cal. Aug. 21, 2018) (noting that

---

Hytera may need to liquidate do not present analogous complexity as the sale of five companies.

5

memoranda, declarations, and exhibits in opposition to contempt motion "constituted an opportunity for [contemnor] to be heard" and noting that finding party in contempt without an evidentiary hearing "does not deny due process," particularly where the contempt involves a readily ascertainable act such as payment of a judgment).[5]

These principles clearly apply here. Hytera has already provided the Court with a full record in support of its alleged inability to pay defense, more than satisfying due process, and further evidence in the form of live proceedings is unnecessary. *See Commodity*, 655 F.2d at 782 n.2; *Pac. Harbor*, 210 F.3d at 1118; *White*, 908 F.2d at 686. The briefing on Hytera's inability to pay has been voluminous: between its Motion to Modify the Royalty Order, and Motorola's Motion for Contempt, Hytera has submitted *six* briefs totaling over *46* pages, which cite to *nearly 700 pages of alleged evidence*.[6] This Hytera evidence includes testimonial declarations from *6 different witnesses*—including multiple declarations from the one fact witness and submissions from *5 experts*—all directed to the very same supposed "inability to pay" defense. Hytera does not dispute this, conceding that it has already "provided extensive details regarding its financial circumstances, which were supported by the declarations of knowledgeable fact witnesses and experts, including [Hytera's] Financial Director, Jilang Kang, as well as accountants from Grant

---

[5] Indeed, "the action of the trial court upon a charge of contempt is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous." *Jewel Tea Co. v. Kraus*, 204 F.2d 549, 551 (7th Cir. 1953). "A trial court has a great deal [of] latitude in enforcing its own decrees in a contempt proceeding." *Ferrell v. Pierce*, 785 F.2d 1372, 1383 (7th Cir. 1986) (only finding it was an abuse of discretion for the trial court to find "a party in contempt without giving the party an opportunity to contest the issue").

[6] After Hytera failed to pay the $49 million into escrow on July 31, 2022, both parties filed an initial round of cross-motions on that issue in August 2022. *See* Dkts. 1352, 1359. Then, after this case was reassigned to Your Honor after the retirement of Judge Norgle in October 2022, the parties re-briefed those cross-motions to provide additional information to the Court over the course of November and December 2022. As a result, Hytera has now submitted 6 different briefs to the Court (Dkts. 1351, 1373, 1381, 1395, 1403, 1413), including a January 2023 Sur-Reply to Motorola's motion.

Thornton, and forensic accounting expert Richie Collura of Alix Partners." Mot. at 5. Hytera was even permitted a sur-reply brief in opposition to Motorola's contempt motion—further briefing that the Court noted is not typically permitted. Dkt. 1418 ("As a general matter, the court is not inclined to permit sur-replies–***particularly where, as here, the parties have already filed two parallel briefs***.") (emphasis added). Unsurprisingly, these voluminous declarations and documents already address the issues that Hytera claims it will address at the contempt hearing, including its alleged "liquidity crisis," "significant tightening in [its] credit facilities," "agreements with the lenders," and the relationship with its subsidiaries. Mot. at 4. Tellingly, Hytera does not identify ***any*** new evidence not covered by its prior submissions, or that could not be supplied in documentary form to the Court prior to the August 8 hearing.

Hytera's assertion that "material facts are disputed" with respect to its inability to pay defense (Mot. at 3-4) does not change the conclusion that due process has already been more than satisfied. *Id*. If anything, Hytera's failure to request an evidentiary hearing ***in any of its six briefs on this issue*** waived its right to one now. *Kapco Mfg. Co. v. C & O Enter., Inc.*, 886 F.2d 1485, 1495 (7th Cir. 1989) ("conclud[ing] that [hearing] request came too late" after contemnor "filed three briefs in response to the [] request for sanctions"). The cases on which Hytera relies for the proposition that an evidentiary hearing is required where "material facts are disputed" (Mot. at 3-4)—*In re Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 882–83 (7th Cir. 1989) and *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)—are inapplicable. *In re Grand Jury Proceedings* dealt with a situation in which the contemnor was "given no opportunity to amplify or substantiate his fear of retaliation if he testified, or to address the question of the proper sanction for his contempt, if contempt it was." 894 F.2d at 882. By contrast, here, Hytera not only had multiple opportunities to submit its evidence (and did), but also submitted extensive

7

argument in its briefs. In *D. Patrick*, the court denied a contempt motion without allowing the parties to conduct discovery because the issue was resolved as a matter of law based on contractual interpretation. 8 F.3d at 459 (finding that the "district court therefore acted reasonably in cutting to the chase" "[o]nce it becomes clear that additional proceedings are pointless"). The court did not address the situation presented here—*i.e.,* where Hytera has already presented substantial evidence on its inability to pay defense over an extended briefing period. *Id.* (noting at best that due process "***may*** entitle the parties discovery and an evidentiary hearing") (emphasis added).

### 2. Hytera's Assertions Concerning the Time It Needs to Prepare for the Hearing Are Incorrect

Hytera's logistical justifications are likewise far from sufficient to justify its requested continuance. While Hytera contends that it needs additional time to finish "preparing updated financial information" (Mot. at 5-6), it does not explain why such information is necessary, or why it cannot provide it prior to the August 8 Hearing. It is simply not credible that Hytera would need over a month to provide its own financial data. In any event, to the extent Hytera wishes to supplement its financial data to address the narrow time period since its last submission to the Court in January 2023, the four weeks' notice the Court provided Hytera leading up to the August 8 Hearing is more than enough time, and easily satisfies due process. Likewise, Hytera's purported need for expert analysis to demonstrate its inability to pay (Mot. at 5-6) is unnecessary, considering the 172 pages of expert testimony from five different experts it has already submitted in connection with its prior briefing on its inability to pay. Dkts. 1267-16 (Liu Decl.), 1267-18 (Collura Decl.), 1302-20 (Feinerman Decl.), 1382 at Ex. A-10 (Valuation Report on Value of Norsat), 1382 at Ex. B (Grant Thornton Report), 1382 at Ex. F (Grant Thornton Report). Tellingly, Hytera's motion concedes that it has already submitted substantial evidence in the form of expert analysis and fact declarations addressing why it purportedly could not pay the $49 million "when it came due"

8

nearly a year ago on July 31, 2022 (Mot. at 5-6), and does not explain what additional information was missing from its six prior filings or why that information was not provided months ago.

Furthermore, Hytera's contentions concerning witness availability are similarly deeply flawed. Mot. at 6. As discussed above, given the voluminous record amassed over these extended proceedings, Hytera's request for an evidentiary hearing should be denied outright. But even if considered, Hytera's arguments—that it needs time to obtain visas for and prepare some unidentified set of witnesses living abroad—do not justify its requested substantial delay. And, from a purely logistical perspective, Hytera does not explain why those witnesses could not attend the hearing via remote means such as Zoom from, *e.g.,* Hong Kong, where the parties held numerous depositions of Hytera's witnesses in the parties' patent infringement case that is pending in this district. *E.g.*, Ex. 1 (4/12/2021 Fan Depo. Notice).

### C. The Status of Hytera's Lead Counsel Does Not Justify a 60-Day Extension

Hytera argues that its lead counsel Mr. Cloern is unavailable on August 8, 2023, due to a "medically necessary surgery on July 25, 2023, to be followed by a recovery period in the hospital of at least one week and recovery at home for several weeks thereafter." Mot. at 6. To be clear, Motorola wishes Mr. Cloern a speedy recovery from his surgery, and respects Hytera's desire that he be present for the hearing. That said, Mr. Cloern's recovery does not justify Hytera's requested 60-day continuance. First, Hytera has a massive legal team—over 17 lawyers over the course of the case—and throughout this matter, has had multiple "lead" lawyers at Mr. Cloern's firm, including Steptoe partner Michael Allan (who delivered Hytera's opening statement at trial), Leah Quadrino (who is Deputy Chair of Steptoe's Commercial Litigation Group and has led Hytera's opposition to Motorola's post-trial motions to enforce the judgment), and Alice Loughran (who is one of Hytera's lead appellate attorneys), to name a few. Ex. 2 (List of Counsel). Moreover, as Mr. Cloern stated in email correspondence with Motorola's counsel just prior to filing this motion,

9

he will be back in the office after two weeks of home recovery, *i.e.,* by August 15—far sooner than the 60-day extension Hytera seeks. Ex. 3 (Cloern Email).

### D. Hytera's Requested Continuance Will Be Highly Prejudicial to Motorola

Finally, Hytera argues that its request for a 60-day continuance is a "modest delay" that "will not prejudice Motorola" because the $49 million is to be paid into escrow instead of directly to Motorola. Not so. As explained in Motorola's contempt motion, Hytera's ongoing campaign to violate the Court's orders is irreparably harming Motorola, as Hytera continues to take Motorola customers away by selling products containing stolen Motorola technology without making good on its royalty obligations, and blatantly violating citation transfer restrictions by dissipating hundreds of millions of dollars for its own corporate benefit, while ignoring its obligations to Motorola imposed by this Court. Dkt. 1386 at 1-2. The facts are indisputable: despite Motorola having initiated Citation proceedings over three years ago in June 2020, to date, Hytera has not paid a single cent of the substantial judgment on appeal against it, obtained a bond to secure the judgment, or paid any of the $49 million it owed into escrow, and to this day, nevertheless continues to sell DMR radios that incorporate technology stolen from Motorola. There is no question further delay is harmful, and inconsistent with the U.S. laws protecting victims and the citizens of the U.S. from illegal acts of theft like those perpetrated here.

### III. CONCLUSION

For the reasons stated above, Motorola respectfully requests that Hytera's motion be denied. Alternatively, if the Court is inclined to continue the hearing, Motorola requests that only a modest one-week continuance be granted for the actual hearing to be held, but requests that the August 8, 2023, deadline for Hytera to comply with the Royalty Order in order to avoid a contempt hearing be preserved.

10

DATED: July 27, 2023 Respectfully submitted,

*/s/ Adam Alper*
Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Akshay S. Deoras (*admitted pro hac vice*)
akshay.deoras@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
Reza Dokhanchy (*admitted pro hac vice*)
reza.dokhanchy@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Ali-Reza Boloori (*admitted pro hac vice*)
ali-reza.boloori@kirkland.com
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Leslie M. Schmidt (*admitted pro hac vice*)
leslie.schmidt@kirkland.com
Joshua L. Simmons (*admitted pro hac vice*)
Joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Attorneys for Plaintiffs
*Motorola Solutions, Inc. and Motorola Solutions Malaysia SDN. BHD.*

## CERTIFICATE OF SERVICE

      I, Adam Alper, an attorney, hereby certify that on July 27, 2023, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  July 27, 2023            */s/ Adam Alper*
                                                       Adam Alper