**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC, et al, | |
| Plaintiffs, | |
| v. | Case No. 17-cv-01973 |
| HYTERA COMMUNICATIONS CORPORATION LTD., | Judge Martha M. Pacold |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Motorola Solutions, Inc., and Motorola Solutions Malaysia Sdn. Bhd. (collectively "Motorola") move to open contempt proceedings and enter an antisuit injunction to protect this court's jurisdiction. [1482]. The motion is granted. Contempt proceedings are opened regarding whether Hytera is in contempt for not paying royalties on the H-Series products under the royalty order. Until those contempt proceedings in this case have concluded, Hytera is enjoined from continuing to pursue the litigation Hytera filed in China seeking a declaratory judgment that Hytera's H-Series products do not infringe Motorola's trade secrets or copyrights. A separate antisuit injunction order will be entered simultaneously. The temporary restraining order entered on March 12, 2024, [1494], is lifted, as it was issued to maintain the status quo pending this ruling on Motorola's motion for an antisuit injunction, and it has been superseded by the antisuit injunction being entered concurrently.

I

A

The parties extensively litigated—in a three-and-a-half month trial and lengthy post-trial proceedings before Judge Norgle—whether Hytera[1] misappropriated Motorola's trade secrets and infringed Motorola's copyrights in developing and selling various Hytera digital mobile radio (DMR) products. The trial, which ran from November 6, 2019 to February 14, 2020, resulted in a verdict of trade secret misappropriation and copyright infringement and an award of nearly

---

[1] The only defendant currently before the court is Hytera Communications Corporation Ltd., and not any other member of the Hytera corporate family. The court refers to the defendant as "Hytera" for ease.

$765 million against Hytera, later reduced to $543.7 million. The post-trial proceedings resulted in a July 5, 2022 royalty order requiring Hytera to pay royalties on ongoing sales of infringing products—products adjudicated at trial to use Motorola's trade secrets and infringe its copyrights.

Motorola's current motion involves Hytera's H-Series products. The H-Series is a line of products that Hytera released in late 2021, after the trial, during post-trial proceedings. Hytera claims it redesigned the H-Series to avoid the use of Motorola's trade secrets and copyrights.

Because Hytera had not yet released the H-Series at the time of trial, the H-Series was not among the products adjudicated at trial. In the current motion, Motorola claims that there is compelling evidence that in fact the H-Series products are not more than colorably different from the products adjudicated at trial—and that therefore Hytera should be paying royalties on the H-Series under the royalty order. Hytera has not paid royalties on sales of the H-Series. Motorola requests that the court open contempt proceedings to adjudicate whether Hytera is in contempt by not paying royalties on sales of H-Series products under the royalty order.

Hytera responds that contempt proceedings should not be opened. Hytera contends that the royalty order does not cover the H-Series and that Judge Norgle rejected Motorola's attempts to include the H-Series in the royalty order. Further, Hytera argues, the H-Series is a complete redesign that does not use Motorola's trade secrets or copyrights, and Motorola has not made a showing of trade secret or copyright infringement sufficient to warrant opening contempt proceedings. In Hytera's view, if Motorola seeks to assert trade secret and copyright claims regarding the H-Series, Motorola should be required to file a new case and try it to a new jury, not pursue contempt proceedings in this case.

Motorola contends that, in addition to opening contempt proceedings, the court should issue an anti-suit injunction enjoining Hytera from pursuing an action that Hytera filed in Shenzhen, China. Hytera filed that case in the Shenzhen Intermediate People's Court in June 2022, during post-trial proceedings in this case, before the royalty order was entered. In the Shenzhen case, Hytera seeks a declaratory judgment that the H-Series products do not infringe Motorola's trade secrets or copyrights. The Shenzhen court accepted Hytera's claim on February 28, 2023. The court served Motorola, i.e. gave Motorola notice of the case, in November 2023. The court held a hearing on January 25-26, 2024, and requested that Motorola provide its rebuttal evidence by April 1, 2024, including by producing Motorola's source code and trade secrets.

Motorola then (on February 20, 2024) filed the current motion in this court, requesting that this court open contempt proceedings and issue an antisuit injunction. As discussed above, Motorola contends that opening contempt

proceedings in this court is the appropriate process to resolve whether the H-Series relies on trade secret misappropriation or copyright infringement. Motorola argues that Hytera's H-Series action in China is an attempt to avoid this court's jurisdiction. Motorola thus requests that, if this court opens contempt proceedings regarding the H-Series, the court also issue an antisuit injunction enjoining Hytera from pursing its action in China. Motorola requests that the court issue the antisuit injunction by April 1, 2024, the deadline for Motorola to produce in China Motorola's source code and trade secrets.

Hytera, on the other hand, contends that opening contempt proceedings in this case is not warranted for the reasons discussed above. Hytera further contends that even if the court opens contempt proceedings here (which Hytera contests), the court should refrain from issuing an antisuit injunction. In that scenario, contempt proceedings here and Hytera's action in China would proceed in parallel.

Thus, the current motion involves two issues: first, whether the court should open contempt proceedings regarding whether Hytera is in contempt for not paying royalties on the H-Series products under the royalty order; and second, whether the court should issue an antisuit injunction to enjoin Hytera from litigating the case Hytera filed in China seeking a declaratory judgment that Hytera's H-Series products do not infringe Motorola's trade secrets or copyrights.

Several orders in this case, including the royalty order, are on appeal. *Motorola Sols., Inc. v. Hytera Comms. Corp.*, Nos. 21-02635; 21-02721; 21-03054; 22-01114; 22-01839; 22-01919; 22-02370; 22-02413 (7th Cir.); Notice of Appeal, [1356] at 2 (Hytera appealing the royalty order); Notice of Cross-Appeal, [1364] at 2 (Motorola appealing the same).[2] "A notice of appeal deprives the district court of jurisdiction over the issues presented on the appeal." *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006). However, Motorola's current motion seeks enforcement rather than modification of the royalty order, and the court always retains jurisdiction to enforce its own orders, including through civil contempt proceedings, even when those orders are on appeal. *See id.* at 638; *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. CV 15-7025 (RMB/SAK), 2021 WL 4206291, at *2 (D.N.J. Sept. 16, 2021).

B

Some additional relevant aspects of the procedural history:

Motorola filed this case on March 14, 2017, just over seven years ago, alleging trade secret misappropriation and copyright infringement by Hytera America, Inc., Hytera Communications Corporation Ltd., and Hytera Communications America

---

[2] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the ECF page number.

(West), Inc.[3]  The case was tried to a jury between November 6, 2019 and February 14, 2020.  After deliberating for around two hours, the jury returned a nearly $765 million verdict in favor of Motorola against the defendants, the full amount for which Motorola had been permitted to argue.  [898]; [948] (judgment); [1088] at 1.  The award was later reduced to $543.7 million.  [1099].

Among numerous issues litigated during post-trial motions was whether Hytera should be permanently enjoined from, or instead required to pay royalties on, sales of infringing products.  Motorola sought a permanent injunction.  Judge Norgle determined that royalties were appropriate rather than an injunction, based in part on the adequacy of legal remedies, since damages were quantifiable—and indeed had been quantified at trial, although at significant time and expense to the parties and the court.  [1097] at 4.

The parties further litigated the terms of the royalty order.  Among other issues:

Motorola argued that Hytera had previously misrepresented prior attempts to redesign its products, and therefore the royalty order (which was analogous to a license agreement) should require Hytera to give Motorola 180 days' notice before selling any allegedly redesigned product, and to disclose a working copy, source code, and other materials, to allow Motorola to inspect the new product and determine whether the new product was subject to the royalty order.  [1119] at 18-19.  In response, Hytera argued that this proposal and others by Motorola for preemptive restraints "are designed to circumvent the proper procedures for addressing noncompliance—contempt."  [1131] at 16.  Hytera described either contempt or another suit as remedies available to Motorola.  [1131] at 17.  Judge Norgle rejected Motorola's proposed requirement that Hytera give Motorola notice of alleged redesigns, concluding that (1) the notice requirement would "transform the reasonable royalty into an injunction," and (2) Motorola would have a remedy, as "Hytera acknowledges Motorola's ability to initiate contempt proceedings against Hytera for willful violations of court orders, including this one, provide[s] Motorola an adequate remedy."  [1289] at 40.

The parties litigated which products were subject to the royalty order.  Judge Norgle ruled that the royalties applied to all products adjudicated at trial to incorporate Motorola's intellectual property (identified by Motorola in a list / appendix of accused products); Judge Norgle rejected Hytera's argument that Motorola's appendix included products that were not adjudicated at trial.  [1289] at 6-7; *see also* [1118-3] (list / appendix).  (The list does not include the H-Series,

---

[3] Again, the only defendant currently before the court is Hytera Communications Corporation Ltd., and not any other member of the Hytera corporate family; and the court refers to the defendant as "Hytera" for ease.

which, as discussed above, was not on the market during the trial and was released during post-trial proceedings.)

During further briefing over the terms of the royalty order, the parties disputed the definition of "Covered Products" in the royalty order. [1308]; [1309] at 3.

Hytera sought to define "Covered Products" as "the Hytera products that Motorola had specifically identified in its earlier appendix. *See* Dkt. 1118-3 (Motorola's list of 'Accused Products')." [1309] at 3. That is, Hytera sought to define "Covered Products" as the products that were listed in the appendix Motorola had previously filed and that Judge Norgle had held had been adjudicated at trial. (Again, that list did not include the H-Series, which was not on the market during trial and was released during post-trial proceedings.)

Motorola sought to include in the definition of "Covered Products" both the products listed in the appendix (adjudicated at trial) and additional language. Specifically, Motorola proposed that "Covered Products" be defined as "the Hytera products that Motorola specifically identified in its submission. See Dkt. 1118-3 (Motorola's list of 'Accused Products'), appended hereto as Appendix A, *which includes for the avoidance of doubt, any product based in whole or in part, on or from or incorporating any of the Motorola Trade Secret Information or Motorola Copyrighted Works (or any portion thereof) in any manner whatsoever, as defined in Appendix A to this Agreement*." [1309] at 3 (emphasis added). Motorola also argued that "Hytera's H-Series products, which were recently released, should be included in this order. Hytera has produced no evidence that those products do not use Motorola's trade secrets and copyrights . . . ." [1318] at 3.

Hytera argued that the H-Series products were "entirely new products, with substantially different hardware and software designs from the products that were presented to the jury at trial. They did not exist at the time of the trial." [1315] at 8. Hytera argued that including the H-Series in the "Covered Products" definition in the royalty order would "prejudge new Hytera products in circumvention of Hytera's right to due process, including a jury trial, in adjudicating such products." [1315] at 8. Hytera cited the court's previous acknowledgment that "omitting unadjudicated products from the purview of the remedy ordered here 'would not leave Motorola without recourse.'" [1315] at 9 (quoting [1289] at 40). And Hytera argued that the additional language Motorola had proposed ("any product based in whole or in part, on or from or incorporating any of the Motorola Trade Secret Information or Motorola Copyrighted Works (or

5

any portion thereof) in any manner whatsoever, as defined in Appendix A") covered unspecified products and was too vague to provide Hytera the notice and clarity required by Fed. R. Civ. P. 65(d) and due process, "forcing [Hytera] to test its good-faith beliefs surrounding any new products against the pain of contempt." [1315] at 9-11 (Hytera citing cases, including citing *Am. Can. Co. v. Mansukhani*, 742 F.2d 314 (7th Cir. 1989), for the principle that "the defendants can not be required to test their legal opinions on such difficult trade secret issues through contempt proceedings," *id.* at 333).

Judge Norgle adopted Hytera's proposed definition of "Covered Products," holding on April 12, 2022 that Hytera could not avoid its royalty obligations merely by renumbering the identical products, and that the H-Series products would not be included in the royalty order because it was undisputed that those products had not been adjudicated at trial. [1338] at 7-8. The royalty order was entered on July 5, 2022. [1349]. Consistent with the April 12, 2022 ruling, the definition of "Covered Products" in the royalty order reads: "1.2. 'Covered Products' means the Hytera products that Motorola specifically identified in its submission. *See* Dkt. 1118-3 (Motorola's list of 'Accused Products')." [1349] ¶ 1.2.

Meanwhile, between the April 12, 2022 order and the July 5, 2022 royalty order, in June 2022, Hytera filed its case in Shenzhen regarding the H-Series (described further below). Hytera did not inform Judge Norgle or Motorola that it had filed the case in Shenzhen. More than a year after Hytera filed the case, in November 2023, the Shenzhen court served Motorola with the case.

Turning back to the litigation in this district: Besides this trade secret and copyright case, the parties are also litigating a patent case in this district, which Motorola filed against Hytera the same day it filed this case. Case No. 1:17-cv-1972 (N.D. Ill.) (filed March 14, 2017). The parties are litigating discovery issues regarding the H-Series source code in the patent case. The judges in the patent case have issued several relevant orders, including an order denying Hytera's motion for extension of time to produce H-Series source code and directing Hytera to make the H-Series source code available for Motorola's review in the United States for a six-week period beginning on September 26, 2023. *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-cv-01972, 2023 WL 5956992 (N.D. Ill. Sept. 12, 2023). Motorola has moved for contempt in the patent case, arguing that Hytera has violated multiple court orders to produce the entire H-Series source code. No. 1:17-cv-01972, Dkt. 352-1.

C

As to Hytera's action in China:

6

In June 2022, during post-trial proceedings—after Judge Norgle ruled (on April 12, 2022) that the H-series should not be included in the royalty order's definition of "Covered Products," [1338], and before Judge Norgle entered the royalty order on July 5, 2022, [1349]—Hytera filed its declaratory judgment action in Shenzhen seeking a declaration that the H-Series products do not infringe Motorola's trade secrets or copyrights. [1482-6] (Statement of Claim); [1486-8] ¶ 4.

Hytera did not notify Motorola or Judge Norgle of the case when Hytera filed it in June 2022. More than a year later, in November 2023, the Shenzhen court served Motorola with the case. Hytera explains that Hytera did not "lie in wait to serve Motorola a year and a half after filing the Chinese Action." [1486] at 28-29. Under Chinese law, the court "must first accept the case and then effect service of process," [1486] at 29; [1486-8] ¶ 8—unlike in the American system, where plaintiff is responsible for service. But Hytera does not argue that Hytera was prohibited from notifying Judge Norgle or Motorola of the filing, separately from any formal service. In any event, by November 2023, when Motorola was served with Hytera's case, not only had the trial and post-trial proceedings in this case concluded, but Hytera had long since appealed to the Seventh Circuit, *see, e.g.*, [1356] (August 3, 2022 notice of appeal), this case had been reassigned to this judge on Judge Norgle's retirement, *see* [1375] (October 6, 2022 reassignment), and this court had already conducted a hearing on, and resolved, extensive contempt proceedings regarding a different aspect of the royalty order, *see* [1474] (September 25, 2023 minute entry summarizing contempt-related filings, proceedings, and orders in July, August, and September 2023).

On January 25-26, 2024, the Shenzhen court held a hearing in which the court rejected Motorola's objections that Motorola had been improperly served under the Hague Convention and that the court lacked jurisdiction to hear the case, and allowed Hytera to begin presenting evidence in support of Hytera's claims. The Shenzhen court requested that by April 1, 2024, Motorola provide its rebuttal evidence, including by producing Motorola's source code and trade secrets.

## II

### A

Motorola requests that the court open contempt proceedings regarding the H-Series. Motorola essentially requests an opportunity to take discovery regarding its allegations that compelling evidence suggests that the H-Series is not a legitimate redesign, but rather, like the Hytera products adjudicated at trial, infringes Motorola's trade secrets and copyrights and is subject to royalties under the royalty order.

Hytera responds that contempt proceedings in this case are not the appropriate process for Motorola's trade secret and copyright claims against the

H-Series. Under Hytera's theory, Motorola's H-Series claims instead belong in a new lawsuit proved to a new jury. Or potentially, depending on the applicable law, Motorola could assert its H-Series claims as counterclaims in Hytera's H-Series declaratory judgment action in China, or at least Motorola could present its arguments in defense in that action.

To address this dispute, it is helpful to first review what a contempt proceeding involves. "Civil contempt sanctions are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions." *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005); *see also Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996) ("Civil contempt proceedings are part of the action from which they stem, and their purpose, of course, is to secure compliance with a prior court order. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)."). A party seeking to hold its opponent in civil contempt must make four showings by clear and convincing evidence: (1) A court order that sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning that the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor did not make a reasonable and diligent effort to comply. *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

Contempt is an extreme remedy. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881–82 (Fed. Cir. 2011) ("The Supreme Court has cautioned that contempt is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.") (citation and internal quotation marks omitted).

Again, civil contempt proceedings concern whether there has been a violation of an existing court order. Thus, civil contempt proceedings do not involve a new jury trial. They are tailored to the circumstances, consistent with due process. *See D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) ("Due process may entitle the parties to discovery and an evidentiary hearing to the extent necessary to resolve relevant factual disputes. . . . However, because the contempt proceeding is concerned solely with whether or not the respondent's conduct violates a prior court order, the parties cannot reasonably expect to litigate to the same extent that they might in a new and independent civil action.") (citations omitted).[4] As the Seventh Circuit has explained in a trade secret misappropriation case:

---

[4] "Due process requires a district court to resolve relevant factual disputes—allowing discovery and holding an evidentiary hearing if necessary—in a civil contempt proceeding." *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) (citations omitted). "The due process rights belong to both the alleged contemnor and the complainant . . . ." *Id.* (going on to quote *Rockwell*, 91 F.3d at 920). "[C]ivil contempt is an equitable action, . . . , and litigants have never been entitled to a jury trial for suits in

A district court has considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding. *Id.* [*D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993).] However, it is beyond question that in a civil contempt proceeding, a party against whom contempt is sought is entitled to have the district court resolve relevant factual disputes. *Id.*; *In re Grand Jury Proceedings*, 894 F.2d 881, 882–83 (7th Cir. 1989). There is no reason to suppose that this due process protection accrues only to the benefit of those alleged to be in contempt. A party who seeks enforcement of an injunction through the medium of civil contempt is likewise entitled to the resolution of genuine issues of material fact that bear upon the allegations by which it seeks to support a finding of contempt.

*Rockwell*, 91 F.3d at 920.

Here, Motorola has moved to open contempt proceedings. An initial question is whether a motion to *open* contempt proceedings is required, as opposed to a motion for a finding of contempt (i.e., a motion going to the merits of the contempt issue). Parties sometimes simply file motions for contempt without first requesting that a contempt proceeding be opened. However, in the patent context—perhaps due to the complexity of the underlying proceedings and court order, as well as the potential complexity of the contempt proceedings—parties have sometimes filed, and courts have decided, requests to open contempt proceedings, separate and apart from the merits. (This is not a patent case—it is a trade secret and copyright case—but patent cases can be helpful by analogy.)

In any event, whether or not a motion to open contempt proceedings is or was required, the court concludes that the court has discretion whether to open contempt proceedings based on all the circumstances. That conclusion follows from the cases discussed below and from the fact that a contempt proceeding is a proceeding to enforce a court order. And here, the circumstances warrant holding contempt proceedings.

Regarding contempt proceedings in patent cases involving alleged redesigns, a patent law treatise explains:

> Quite often a party who has previously been found to have infringed a patent and enjoined from committing acts of future infringement will redesign its accused product. If the patentee complains to a district court that the redesigned product remains an infringement, and therefore the accused infringer's acts with that redesigned product violates the

---

equity . . ." *F.T.C. v. Trudeau*, 579 F.3d 754, 775 (7th Cir. 2009) (citations omitted); *see also id.* at 776 ("we share the Tenth Circuit's skepticism of the feasibility and fairness of varying the process due in civil contempt cases on the 'complexity' of the injunction at issue").

permanent injunction, the district court faces an initial procedural issue—can the infringement question be resolved in a contempt proceeding or is a new law suit with a separate infringement trial required?

Robert A. Matthews, Jr., 4 ANNOTATED PATENT DIGEST § 32:191 (Propriety of contempt proceeding when product redesigned) (collecting cases).

As the Matthews treatise then proceeds to explain, the Federal Circuit addressed this issue in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011). Although this quotation is long, it bears quoting in full the relevant *TiVo* analysis since the parties here rely heavily on it:

> In recent times, we have required district courts to make a two-part inquiry in finding a defendant in contempt of an injunction in patent infringement cases. *KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1530–32 (Fed. Cir. 1985). First, the court must determine whether a contempt hearing is an appropriate setting in which to adjudge infringement by the redesigned product. *Id.* at 1532. The court may do this by comparing the accused product with the adjudged infringing product to determine if there is "more than a colorable difference" between the accused product and the adjudged infringing product such that "substantial open issues with respect to infringement" exist. *Id.* Where the court finds that to be the case, a new trial is necessary to determine further infringement and the court may not proceed with a contempt finding. *Id.* Only in cases where the court is satisfied on the threshold inquiry of the appropriateness of a contempt proceeding can a court inquire whether the redesigned product continues to infringe the claims as previously construed. *Id.*
>
> We conclude that *KSM*'s two-step inquiry has been unworkable and now overrule that holding of *KSM*. *KSM* crafted a special rule for patent infringement cases, in that it required a threshold inquiry on the propriety of initiating a contempt proceeding. We recognize now that inquiry confuses the merits of the contempt with the propriety of initiating contempt proceedings. Moreover, as a practical matter, district courts do not separately determine the propriety of a contempt proceeding before proceeding to the merits of the contempt itself. As a result, we will telescope the current two-fold *KSM* inquiry into one, **eliminating the separate determination whether contempt proceedings were properly initiated. That question, we hold, is left to the broad discretion of the trial court to be answered based on the facts presented**. *Additive Controls*, 154 F.3d at 1349 (The district court "has broad discretion to determine how best to enforce its injunctive decrees."). **What is required for a district court to**

**hold a contempt proceeding is a detailed accusation from the injured party setting forth the alleged facts constituting the contempt.** As with appeals from findings of civil contempt in other areas of law, we will only review whether the injunction at issue is both enforceable and violated, and whether the sanctions imposed were proper. Allegations that contempt proceedings were improper in the first instance do not state a defense to contempt. As to the question whether an injunction against patent infringement has been violated, courts should continue to employ a "more than colorable differences" standard as discussed below.

Thus, we decline to address EchoStar's argument that the district court, applying the old *KSM* standard, improperly held contempt proceedings in this case, although we note that there may be circumstances in which the initiation of contempt proceedings would constitute an abuse of discretion by the district court. Under our holding today, we find no abuse of discretion by the district court in proceeding to contempt. TiVo moved the district court to find EchoStar in contempt. Having reviewed the computer source code of the modifications to the infringing software, TiVo asserted to the district court that the modified EchoStar receiver software was not more than colorably different from the original one, and thus that EchoStar was in violation of the infringement provision of the permanent injunction. **Given its familiarity with the parties, the patent at issue, and the infringing products, we do not find an abuse of discretion in the district court's decision to hold contempt proceedings.**

*TiVo*, 646 F.3d at 880–81 (emphases added).

Thus, after *TiVo*, in order to open a contempt proceeding in a patent case, the district court does not need to find as a threshold matter that there are more than colorable differences between the allegedly redesigned product and the infringing product; that question goes to the merits. Rather, the allegedly injured party must submit "a detailed accusation from the injured party setting forth the alleged facts constituting the contempt." In determining whether to open contempt proceedings, the district court has broad discretion based on the facts and circumstances, including the nature and quality of the allegations in the context of the court's familiarity with the parties, the patent at issue, and the infringing products.

For example, *California Expanded Metal Prod. Co. v. Klein*, No. C18-0659JLR, 2020 WL 9182723 (W.D. Wash. Oct. 19, 2020), granted a motion to reopen a case to initiate contempt proceedings for violation of an injunction in the patent context, finding that the plaintiffs had satisfied the *TiVo* standard and made a "detailed accusation . . . setting forth the alleged facts constituting the contempt"; the court relied on plaintiffs' diligence in quickly moving to reopen the case and

11

initiate contempt proceedings approximately three months after defendants allegedly formed a new company to make allegedly infringing sales, and evidence including a declaration from a research and development product manager "offer[ing] a side-by-side comparison of Safti-Seal's products and Seal4Safti's products that appears to show substantial similarities between the old and new products." *Id.* at \*3, \*4-\*5; *see also Ronaldo Designer Jewelry, Inc. v. RDJ Internet & Soc. Media, Inc.*, No. 3:20-CV-00496-DJH, 2021 WL 10269401, at \*3 (W.D. Ky. Nov. 30, 2021) (noting, in case involving trademark, copyright, and other claims, that "Ronaldo has set forth a detailed accusation regarding Defendants' alleged contempt. Ronaldo submits a Declaration from Michael Scheser, its Chief Executive Officer, setting out the infringement allegations.").

On the other hand, *i4i Ltd. P'ship v. Microsoft Corp.*, 398 F. Supp. 3d 90 (E.D. Tex. 2019), rejected a plaintiff's attempt to reopen a nearly ten-year-old patent case and institute contempt proceedings; but the court emphasized the plaintiff's "significant delay in seeking relief," along with the speculative nature of the plaintiff's allegations of violations of the injunction (which had already expired, along with the patent, by the time the plaintiff sought to initiate contempt proceedings). *Id.* at 97 ("In exercising its discretion, the Court notes i4i's significant delay in seeking relief—a delay that casts doubt on i4i's alleged concern about Injunction violations and calls into question the fairness of any contempt proceeding.").

The circumstances here warrant the exercise of the court's discretion to open contempt proceedings. This is so considering the nature and quality of Motorola's allegations in the context of the court's familiarity with the parties and the issues.

Motorola filed the declaration of Dr. Stephen B. Wicker, Professor of Electrical and Computer Engineering at Cornell University. [1483-3]. In a separate patent case that Motorola filed against Hytera in this district the same day it filed this trade secret and copyright case, Motorola produced some H-Series "binary files" to Motorola, but not the full H-Series source code. Dr. Wicker performed an extensive, detailed, 57-page comparison of the binary files that Hytera produced to the source code for the products adjudicated at trial. Dr. Wicker concluded, based on that analysis of the H-Series binary files, that the H-Series products are using Motorola's trade secrets and copyrights in the same and/or similar ways that the products that were adjudicated at trial used Motorola's trade secrets and copyrights. However, Dr. Wicker noted that only small portions of the binary files are human-readable (versus computer-readable), and the vast majority of the underlying H-Series source code has never been produced; he noted that his current findings were limited by that circumstance, and he reserved the right to supplement his opinion if the underlying source code were made available. Motorola is seeking discovery of the underlying source code as the first step in the contempt process. Thus, Motorola is not alleging that the H-Series definitively uses

its trade secrets and copyrights, but that there is meaningful reason to believe that is the case.

Hytera responded with the declaration of Cameron McDonald, a research engineer at Threatmetrix Lexis Nexis Risk Solutions, and the declaration of Zhou Da, a Hytera project manager. Dr. McDonald concluded that the limited human-readable portions of the binary files are generic names (filenames) that do not demonstrate anything meaningful about the operation of the H-Series radios, let alone that they use Motorola's trade secrets, and even further that they use Motorola's trade secrets in the same way as the products that were adjudicated at trial. Dr. McDonald also reviewed the source code for the H-Series radios (i.e., the underlying source code that Hytera has not produced) and "confirmed that the implementations underlying the modules that Professor Wicker discussed are indeed significantly different from that of the products adjudicate[d] at trial." [1487] at 5. Mr. Da's declaration states that after the verdict in this case Hytera undertook a significant redesign effort so that future products would not use Motorola's intellectual property, that Hytera was "informed of what modules Motorola presented evidence on during the trial in the US trade secrets case," and that Hytera "modified, redesigned, replaced, or removed every such module [ ] along with other significant modifications." [1486-7] at 2.

The competing declarations raise fact disputes that cannot be resolved on the face of the declarations. For example, Dr. McDonald's declaration relies on a unilateral review of unproduced source code. Regardless, at this stage, the court does not need to decide which party has the better argument. It is not necessary, nor would it be appropriate, to decide any issue going to the *merits* of the contempt (i.e., whether Motorola has ultimately shown that Hytera is in contempt), in order to decide whether *opening* contempt proceedings is appropriate. Deciding the merits would collapse those two questions in the exact way that the Federal Circuit rejected in *TiVo*. Rather, the court considers whether to exercise its broad discretion to open contempt proceedings, considering the nature and quality of Motorola's allegations, and drawing on the court's familiarity with the parties and the proceedings. Dr. Wicker's declaration is sufficiently detailed to warrant opening contempt proceedings to evaluate the parties' arguments. *See Ronaldo*, 2021 WL 10269401, at *3 ("Ronaldo has set forth a detailed accusation regarding Defendants' alleged contempt. Ronaldo submits a Declaration from Michael Scheser, its Chief Executive Officer, setting out the infringement allegations.").

As to the merits of any contempt inquiry (were one to be instituted), the parties agree that the *TiVo* test for contempt would apply. That test requires a two-step showing: "the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *TiVo*, 646 F.3d at 882. It is not clear whether the parties are correct that the *TiVo* test applies to the merits of the contempt inquiry, since this is not a patent case. *TiVo* explained

that the "colorable differences" inquiry in patent cases is the Federal Circuit's interpretation of the Supreme Court's "caution[ ] that contempt is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *TiVo*, 646 F.3d at 881–82 (citation and internal quotation marks omitted). The parties may be correct that the *TiVo* test is at least persuasive here. The court expresses no view one way or the other on that issue at this stage. But the parties should also research trade secret cases (as well as any other areas they see fit). *See, e.g.*, *Mangren Rsch. & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937 (7th Cir. 1996); *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149 (7th Cir. 1984); *Am. Can Co. v. Mansukhani*, 814 F.2d 421 (7th Cir. 1987); *Am. Can Co. v. Mansukhani*, 742 F.2d 314 (7th Cir. 1984); *Am. Can Co. v. Mansukhani*, 728 F.2d 818 (7th Cir. 1982); *Rockwell*, 91 F.3d 914.[5]

In any event, the court does not need to resolve this issue at this point. Whether or not the merits test for contempt in this case includes a "not more than colorably different" component, the question in a civil contempt proceeding is whether Hytera's sales of the H-Series violate an existing court order (here, the royalty order). Motorola has made a sufficiently detailed showing to warrant more fulsome review of that question through civil contempt proceedings. The totality of the circumstances reinforces that conclusion. There was no excessive delay by Motorola, as in *i4i*. At the time of trial, Hytera had not yet launched the H-Series, so there was no reason to raise it at trial. Motorola attempted to raise the H-Series during post-judgment proceedings; but at that point, any attempt to address the H-Series could entirely reasonably have appeared premature, especially since Hytera did not notify Judge Norgle or Motorola that it had filed its H-Series case in Shenzhen during post-judgment proceedings in this case, before the royalty order was entered. Finally, given the very substantial procedural history of this case (the lengthy trial and substantial post-judgment proceedings before Judge Norgle and the substantial prior contempt proceedings before this judge), the court has experience with the parties and the underlying issues. Evaluating Motorola's allegations (including the qualifications in Dr. Wicker's declaration) in light of its experience with this case, the court's assessment is that contempt proceedings are warranted. *See TiVo*, 646 F.3d at 881.

---

[5] *Cf. Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 937 (E.D. Tex. 2014) ("The Fifth Circuit has noted that it is generally accepted that the proper measure of damages in cases of trade secret misappropriation is determined by reference to the analogous line of cases involving patent infringement. *Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir.1974). Nonetheless, the Court recognizes that there are differences between Texas trade secret law and patent law that require distinctions to be drawn between the method to be used in calculating an ongoing royalty in patent cases and the method to be used in trade secret cases.").

14

B

Relatedly, Hytera focuses on the fact that Motorola is seeking discovery as the first step in the contempt process, rather than definitively alleging infringement, and contends that Motorola's allegations are insufficient to warrant (1) opening a contempt proceeding at all or (2) allowing discovery. As already discussed, the court has broad discretion to open contempt proceedings, but must consider the nature of the allegations, including whether they are so tentative as to amount to a fishing expedition. Relevant cases, both in the analogous patent context and outside that context (given that this case involves trademark and copyright issues), reinforce that the court has considerable discretion on whether to open contempt proceedings. They also reflect that the court's discretion extends to whether to allow discovery as part of the contempt proceedings. Those principles are consistent with the broader principle that a contempt proceeding is a proceeding to enforce a court order and the precise process is tailored to the circumstances, consistent with due process.

Some courts, in and outside the patent context, have found contempt-related discovery warranted on a "prima facie" showing of a violation of a court order. *See, e.g., Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. CV 15-7025 (RMB/SAK), 2021 WL 4206291, at *2 (D.N.J. Sept. 16, 2021) ("To obtain discovery based on allegations of civil contempt, a moving party need only make a prima facie showing that a court-ordered injunction has been violated.") (citing cases); *Shure Inc. v. ClearOne, Inc.*, No. 17-CV-03078, 2020 WL 5214647, at *13–14 (N.D. Ill. Sept. 1, 2020); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09 Civ. 6148 (VM) (MHD), 2012 WL 12932049, at *57–58 (S.D.N.Y. July 17, 2012) (collecting cases), *report and recommendation adopted sub nom. Cardell Fin. Corp. v. Suchodolksi Assocs., Inc.*, 896 F. Supp. 2d 320 (S.D.N.Y. 2012); *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 235 (D. Del. 2003). Requiring a prima facie showing (or something similar) accounts for the principle that "[f]iling a motion for sanctions should not lead to free rein for a fishing expedition. A party should first be required to make a prima facie showing that a violation has occurred." *Cardell*, 2012 WL 12932049, at *58; *see also Ronaldo*, 2021 WL 10269401, at *3 (quoting *i4i*, 398 F. Supp. 3d at 97, for the principle that "an allegedly injured party must 'offer more than conjecture—especially where the conjecture is itself built only on speculation'"); *i4i*, 398 F. Supp. 3d at 99 ("If mere speculation could satisfy the *TiVo* standard, then every successful plaintiff in a patent case could reopen the proceeding years—even decades—after judgment, assert that the defendant 'likely' violated the now-expired injunction, and obtain wide-ranging discovery regarding stale conduct and old sales.").

Other courts have applied a similar standard—a showing of "significant questions" as to the violation of a court order. *See California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008) ("in the context of a motion to enforce a judgment," "[w]hen considering whether to permit discovery prior to resolution of

15

such a motion, the kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance. If significant questions regarding noncompliance have been raised, appropriate discovery should be granted."); *Blackberry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 4136586, at *2 (N.D. Cal. Aug. 21, 2014) ("Typo's position notwithstanding, for the reasons stated below, the sales and replacements raise significant question of whether Typo has violated the preliminary injunction. Additional discovery is necessary to determine whether that is in fact the case and, if so, the extent of the violation.").

Motorola has made enough of a showing to raise significant questions as to potential violations of the royalty order. Dr. Wicker's declaration, although it acknowledges its limitations (the unavailability of the underlying source code that Hytera has not produced), is highly detailed and enough to raise concrete fact questions that go beyond a mere fishing expedition. Dr. McDonald's declaration relies on his review of the source code that, again, Hytera has not produced. Mr. Da's would require the court to accept his factual statements (that there was a complete redesign) as undisputed, when they very well could be the subject of factual disputes. Dr. Wicker's (Motorola's expert's) detailed analysis raises substantial questions as to potential violations of the royalty order, justifying discovery, particularly when the discovery requested is the underlying source code that Dr. McDonald (Hytera's expert) reviewed to support his declaration.

C

Likewise, the court does not need to decide at this stage whether the royalty order includes the H-Series. Hytera argues that the royalty order does not include the H-Series. Hytera points to the parties' disputes before Judge Norgle over the terms of the royalty order. As discussed above, during those disputes, Motorola requested that the definition of "Covered Products" in the royalty order include (1) the H-Series and (2) "any product based in whole or in part, on or from or incorporating any of the Motorola Trade Secret Information or Motorola Copyrighted Works (or any portion thereof) in any manner whatsoever, as defined in Appendix A." Hytera notes that Judge Norgle rejected both requests.

However, Motorola cites a trade secret case holding that "[a]n order basing ongoing royalty payments on future sales of those three products implicitly extends to any products that are not colorably different from those products. . . . Globus cannot avoid its royalty obligations simply by renaming its products or making some trivial and immaterial change in the products." *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 942 (E.D. Tex. 2014) (citations omitted). *Bianco* did go on to state: "In order to avoid any possible misunderstanding of the scope of the judgment in that respect, the Court will make it explicit that the royalty obligation applies to products that are not colorably different from the Caliber, Caliber-L, and Rise products that were the subjects of the jury's finding of misappropriation." *Id.* at

942–43. Here, Judge Norgle rejected Motorola's proposed broader language (in response to due process and Rule 65(d) notice and vagueness arguments by Hytera), but also made a similar point as *Bianco*: "Hytera cannot avoid its royalty obligations merely by renumbering its products: if a renumbered product is identical to a product for which Hytera owes royalties, Hytera owes royalties all the same." [1138] at 7. *See also Motorola*, 739 F.2d at 1156 ("To say that the consent decree prohibited only the sale of a display monitor series identical to the MPG in all respects or with only minimal changes would make the injunction meaningless."); *Mangren*, 87 F.3d at 944.

Once again, deciding this issue now would conflate the *merits* of contempt proceedings (i.e., whether Motorola has ultimately shown that Hytera is in contempt) with whether *opening* contempt proceedings is appropriate. At this stage, Motorola has made enough of a showing to warrant opening contempt proceedings. The parties may renew their arguments as to the scope of the royalty order in the merits briefing.

The parties also dispute whether Judge Norgle endorsed or rejected the propriety of contempt proceedings for the H-Series (versus a new case). But although the parties briefly discussed this issue (and many others) in their briefing before Judge Norgle, this issue was not before Judge Norgle, nor was there any apparent reason to reach it at the time. Again, Hytera had not yet released the H-Series at the time of trial, nor did Hytera inform Motorola or Judge Norgle of the June 2022 filing of the Shenzhen case before the royalty order was entered in July 2022. And Hytera made arguments that including (in the royalty order's definition of "Covered Products") broader language than simply listing the adjudicated products would create notice and vagueness issues, citing due process and Rule 65(d). Judge Norgle devoted an enormous amount of time to this case and resolved numerous issues. But the propriety of hypothetical future contempt proceedings was not among them. Nor was there any reason to reach the issue. Now that the issue has arisen, the court concludes that contempt proceedings are warranted.

## III

Motorola requests that if the court opens contempt proceedings (which it has, as discussed above), the court also issue an antisuit injunction enjoining Hytera from continuing to pursue its declaratory judgment action in Shenzhen while contempt proceedings are pending here.

*1st Source Bank v. Neto*, 861 F.3d 607 (7th Cir. 2017), explained the standard for antisuit injunctive relief as follows:

Other circuits to address the issue have determined that the standard for antisuit injunctive relief differs in some respects from the traditional preliminary-injunction standard, most notably in that the antisuit-

injunction test does not rely on a showing of likelihood of success on the merits. *See, e.g., E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) (a movant "need not meet our usual test of a likelihood of success on the merits of the underlying claim to obtain an anti-suit injunction"; instead, a movant "need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction"). Factors specific to the propriety of antisuit injunctive relief include, "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." *Id.* (citation omitted). If both factors are met, the district court must then ask whether "letting the two suits proceed would be gratuitously duplicative, or as the cases sometimes say 'vexatious and oppressive.'" *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) (citation omitted). It follows that "[t]he mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction." *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984). Finally, because an "antisuit injunction operates to restrict the foreign court's ability to exercise its jurisdiction as effectively as if it were addressed to the foreign court itself," *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 630 (5th Cir. 1996) (citation omitted), a district court should issue an international antisuit injunction only when the interest in avoiding vexatious litigation outweighs the international-comity concerns inherent in enjoining a party from pursuing claims in a foreign court. *See Rosenbloom v. Barclays Bank PLC*, No. 13-CV-04087, 2014 WL 2726136, at *2 (N.D. Ill. June 16, 2014).

*1st Source*, 861 F.3d at 613 (footnote omitted). The "gratuitously duplicative" or "vexatious and oppressive" standard "is 'laxer,' *Allendale*, 10 F.3d at 431, than one requiring a showing of 'irreparable miscarriage of justice.' *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984)." *1st Source*, 861 F.3d at 613 n.2. The Seventh Circuit has "inclined towards the laxer standard, *see Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 605 (7th Cir. 1993)," but has not decided which standard applies. *1st Source*, 861 F.3d at 613 n.2.

The court first considers whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined.

Here, the parties are precisely the same in both cases. In the action in China, Hytera Communication Corporation Limited (the defendant in this case) is the plaintiff and Motorola Solutions, Inc. and Motorola Solutions Malaysia Sdn. Bhd. (the plaintiffs in this case) are the defendants. [1482-6] at 2 (Statement of Claim).

18

As to whether the issues are the same, "whether the issues are the same and the first action dispositive of the action to be enjoined are interrelated requirements; that is, to the extent the domestic action is capable of disposing of all the issues in the foreign action . . . , the issues are meaningfully 'the same.'" *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882 (9th Cir. 2012) (citation and internal quotation marks omitted). The "threshold similarity-of-issues inquiry" has a "functional character." *Id.* "We ask 'whether the issues are the same' not in a technical or formal sense, but 'in the sense that all the issues in the foreign action . . . can be resolved in the local action.'" *Id.* at 882–83 (citation omitted).

Hytera's Statement of Claim in the action in China seeks a declaration "that the source code of the DMR industry radio series products and their software newly designed by the Plaintiff, Hytera Communication Corporation Limited, does not infringe the trade secrets and copyrights of the two Defendants." [1482-6] at 2-3. The Statement of Claim goes on to describe the U.S. litigation (this case). [1482-6] at 4-9. It states that "In Order to Avoid New Infringement Claims, Hytera Redesigned a Brand-new DMR Industry Radio (see Evidence 2 for details, hereinafter referred to as "the newly designed products"), and the Newly Designed Products No Longer Involve the Trade Secrets and Copyrights Accused by the Two Defendants in the US Lawsuit." [1482-6] at 5. It describes Motorola's post-judgment arguments that the royalty order should cover the H-Series and explains that they "Constitute A New Threat of Infringement Claims and Legal Uncertainty for Hytera." [1482-6] at 6-8. It states that "Hytera Must Seek A Fair, Authoritative, and Clear Conclusive Opinion in the Face of Possible Infringement Claims and Legal Uncertainty." [1482-6] at 8-9.

Hytera's action is expressly a precise mirror image of this case, except that it seeks to cover the H-Series. Both actions involve the same U.S. trademarks and copyrights. And this case is potentially dispositive of all the issues in the declaratory judgment action in China, since it may result in a finding of contempt and a finding that the H-Series infringes the same trademarks and copyrights. Hytera is correct that if this case does not result in a finding of contempt or a finding of infringement, it will not dispose of the issues in the action in China. But it may. And that potential, along with the considerations that factually, the issues overlap substantially, and that this case is extraordinarily fact-intensive, weigh in favor of an injunction.

For related reasons, although "[t]he mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction," *1st Source*, 861 F.3d at 613 (quoting *Laker*, 731 F.2d at 927 (D.C. Cir. 1984)), in this instance, parallel proceedings allowing the two suits to proceed simultaneously would be "gratuitously duplicative" or "vexatious and oppressive" within the meaning of relevant caselaw. *E.g.*, *Allendale*, 10 F.3d at 430-31 (7th Cir. 1993) ("if Judge Marovich had refused to grant the preliminary injunction requested by Allendale, and the Commercial Court had lifted its stay,

these parallel lawsuits would be proceeding full tilt in two tribunals 4,000 miles apart at the same time, entailing an absurd duplication of effort. This is an argument in favor of the issuance of the injunction . . . ."). In *Allendale*, the Seventh Circuit affirmed an antisuit injunction against defendants' litigation in a French court in part because the district court (a court in the Northern District of Illinois) had already conducted extremely document-intensive pretrial discovery. *Allendale*, 10 F.3d at 429. *Allendale* thus took into account "practical considerations," such as "how far advanced the litigation is in one court." *Id.* at 430. Relatedly, although "a district court should issue an international antisuit injunction only when the interest in avoiding vexatious litigation outweighs the international-comity concerns inherent in enjoining a party from pursuing claims in a foreign court," *1st Source*, 861 F.3d at 613, that is the case here. "[T]he case for an anti-suit injunction is most compelling when a party seeks to both enforce a judgment and avoid duplicate litigation." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 884 (N.D. Ill. 2006); *see also id.* ("'where one court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force'") (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)). Very substantial proceedings (pretrial, trial, and posttrial) have already occurred in this court, beginning with the filing of this case in 2017 and extending through the opening of contempt proceedings.[6] The entire case has been extraordinarily fact-intensive and document-intensive, which as a practical matter substantially increases the risk of conflicting judgments. This case has already reached final judgment. And all of this was already the case before Hytera filed the action in China. These practical considerations counsel strongly in favor of the injunction. In addition, the court will tailor the injunction by setting its duration at the duration of the contempt proceedings in this case.

A separate antisuit injunction order will be entered simultaneously. *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.").

---

[6] At this point, there are over 1500 docket entries in this case, comprising more than 92,750 pages. Hytera requested in the Shenzhen court, and the Shenzhen court ordered, that Motorola submit "1. the technology and software code showing their accusation that the H-Series DMR products manufactured by the Plaintiff [Hytera] infringed on their trade secrets or copyrights; 2. the confidential exhibit (Dkt. 1309) to the Joint Submission Regarding the Proposed Royalty Agreement (Dkt. 1308)." [1486-8] at 20. It is not clear why Hytera chose to request that Motorola file these two particular docket entries from this case with the Shenzhen court, as opposed to any of the other more than 1500 docket entries. But it illustrates why duplicative proceedings are a considerable problem.

The court finds that no bond is required under Rule 65(c), because the antisuit injunction will prevent gratuitously duplicative parallel litigation.

The temporary restraining order entered on March 12, 2024, [1494], is lifted, as it was issued to maintain the status quo pending this ruling on Motorola's motion for an antisuit injunction, and it has been superseded by the antisuit injunction being entered concurrently with this opinion.

## IV

Motorola's motion to open contempt proceedings and enter an antisuit injunction to protect this court's jurisdiction [1482] is granted. Contempt proceedings are opened regarding whether Hytera is in contempt for not paying royalties on the H-Series products under the royalty order. Until those contempt proceedings in this case have concluded, Hytera is enjoined from continuing to pursue the litigation Hytera filed in China seeking a declaratory judgment that Hytera's H-Series products do not infringe Motorola's trade secrets or copyrights. A separate antisuit injunction order will be entered simultaneously.

Dated: March 25, 2024                    /s/ Martha M. Pacold