# EXHIBIT G

**Behind Hytera's heavy punishment, the case is far more complicated than what we saw (I)**

Original Xiaoying Huang Enterprise Patent Observation 2024-04-07 23:59 Beijing



On April 2, 2024, Hytera was issued a global ban on sales by the US District Court, and it had to be announced in official website according to the requirements of the US court, which became the focus of hot discussion.

What happened behind this, so that the American courts, which almost stopped issuing injunctions after 2006, could rarely break the routine and, on the main reason of "contempt of court", issued an extremely strict ban on Hytera from selling any products containing walkie-talkie technology anywhere in the world; And asked Hytera not to rely on the orders and judgments of China courts; Otherwise, you will face a daily fine of up to $1 million.

It is worth noting that how to grasp the scale between the reason of "contempt of court" that the court mainly relied on in the trial of this case and the determination of patent infringement after evading design has also become a focus worthy of attention in jurisprudence.

To sum up, this case fully embodies the confrontation and contest at three levels: first, the enterprise-level competition, that is, the battle between Hytera and Motorola for their respective source codes and trade secrets. The second is the court-level contest, that is, the secret contest between Chinese and American courts on jurisdiction and adjudication rules. The third is the national competition, and the

respective positions of China and the United States on key intellectual property issues. In this case, the three issues can be said to be intertwined, resulting in the current situation.

01

Sudden judgment

Hytera's last public announcement on the series of intellectual property disputes between it and Motorola was on October 28th, 2023. In its report for the third quarter of 2023, Hytera recorded the following:



1、美国商密版权案

一审法院于 2023 年 7 月 11 日就许可费的支付方式作出判决，未同意公司提出的以其他非现金方式向法院监管的共管账户支付第一笔许可费的动议，并在听证会后于 2023 年 8 月 26 日要求公司支付第一笔许可费和滞纳金至法院监管的共管账户。公司不认可前述判决结果，已提起上诉。2023 年 9 月 1 日，公司按一审法院要求支付第一笔许可费至法院监管的共管账户。一审法院不再受理双方任何请求，目前本案已进入上诉阶段。公司将遵循企业会计准则及公司会计政策的相关规定，按照公司处理诉讼事项的一致性原则进行会计处理，具体结果尚待进一步确认。

That is to say, at least in October 2023, Hytera paid Motorola the first license fee to the account supervised by the court, although they had different opinions on the issue of the judgment patent fee of the court of first instance in the United States, indicating that they had filed an appeal.

It seems that the dispute between the two parties has come to an end, but this state quickly reversed within one month after the release of the three quarterly reports.

According to March 25th, 2024, Judge Martha M Pacold of the Northern District Court of Illinois in the United States disclosed in an order on Motorola's contempt of court motion against Hytera.

In November 2023, the Intermediate People's Court of Shenzhen City, China (hereinafter referred to as "Shenzhen Intermediate People's Court") served a case on Motorola, which was a declaratory judgment filed by Hytera to Shenzhen Intermediate People's Court in June 2022, requesting the court to rule that its H

series did not infringe Motorola's trade secrets and copyrights.

However, Judge Pacold disclosed in the order that Hytera did not inform Judge Norgle (now retired) or Motorola that it had filed a lawsuit in Shenzhen.

In June, 2022, Hytera filed a lawsuit in China court, which was between the order of Judge Norgle of the United States court on April 12, 2022 on whether Hytera's H series products were covered and the effective date of the patent license fee on July 5, 2022.

From this point, it can be seen that Hytera has been at a disadvantage since the lawsuit in 2017 and under the trial of American courts. In March, 2020, the jury of first instance fined 765 million US dollars in huge compensation, and then after fighting, the compensation amount was reduced to 543 million US dollars. Even if Hytera tried to avoid infringing Motorola's trade secrets through the redesigned H series, it was still considered by the court to be impossible.

In this case, it was a normal judicial means for Hytera to declare its redesigned H-series to the China court not to infringe. However, judging from the current definition of this incident by Judge Pacold of the US court, the core point is that after many controversial trials have been completed in the US court (for example, the trial and post-trial procedures of this case have ended, and Hytera has appealed to the Seventh Circuit Court), Hytera will seek a verdict from the China court again, which means that parallel litigation will lead to conflicts in court judgments.

Here, Judge Pacold also cited the precedent in the Allendale case, in which the Seventh Circuit Court confirmed a counterclaim injunction against the defendant's lawsuit in the French court, in part because the district court (a court in the northern district of Illinois) had conducted extremely intensive pre-trial investigation.

Therefore, it is considered that in this case, allowing two lawsuits to proceed simultaneously in parallel proceedings will be "gratuitously repetitive" or "vexatious and oppressive" in the sense of relevant case law.

In this case, Hytera was severely punished by the American court on April 2, 2024, which may be one of the very important reasons.

Another reason for the sudden judgment of the US court is that according to the

trial progress of the China Shenzhen Intermediate People's Court, the Shenzhen Intermediate People's Court held a trial on January 25-26, 2024, which rejected the objection that Motorola was improperly delivered according to The Hague Convention and the court had no right to hear the case, and allowed Hytera to submit evidence to support its claim, and asked Motorola to provide rebuttal evidence on April 1, 2024, including the source code and trade secrets of Motorola.

Therefore, this is the fundamental reason why the U.S. court suddenly issued a heavy penalty order to Hytera on April 2, hoping to prevent Motorola from submitting source code and trade secrets to the China court through the order of the U.S. court in accordance with the motion put forward by Motorola.

The dispute between source code and trade secrets has also become another main line of controversy in this case.

02

The dispute between source code and trade secrets

Trade secrets can be said to be the core content of this dispute between China and the United States.

This intellectual property case, which originated in 2017, coincided with the beginning of a tough policy toward China during the Trump administration. This coincides with the time when the United States began to impose sanctions on Huawei and ZTE (27.590,-0.60 and-2.13%). In fact, before and after this, the case of Chinese-American trade secrets involving well-known American companies showed a small climax, which also coincided with the "China Initiative" proposed by the US government to combat China's theft of American trade secrets.

During this period, a number of well-known American enterprises, such as Apple, Coca-Cola, GlaxoSmithKline, Monsanto, General Electric, ADI and so on, exposed trade secret cases involving Chinese.

For example, in 2019, Apple expressed deep concern that former employees Zhang Xiaolang and Chen Jizhong took the documents and fled to China. In 2015, a company in Jiangsu was accused of stealing the trade secrets of American PPG industrial glass, and was awarded triple compensation, totaling $26 million. In

January this year, a former Chinese engineer of General Electric was sentenced to two years' imprisonment for conspiracy to engage in economic espionage.

Therefore, the trade secrets and other intellectual property issues involved between Hytera and Motorola are not simple common disputes between the two companies, but also a typical case under the current technological competition environment between China and the United States, and the political factors behind it have to be considered.Therefore, the trade secrets and other intellectual property issues involved between Hytera and Motorola are not simple common disputes between the two companies, but also a typical case under the current technological competition environment between China and the United States, and the political factors behind it have to be considered.

Just like in this case, on February 7, 2022, the U.S. Department of Justice issued an announcement accusing the Motorola V Hytera case of representing the U.S. government. According to the indictment, from 2007 to 2020, Hytera and its employees used Motorola's proprietary and trade secret information to accelerate the development of Hytera's digital mobile radio (DMR) products, train Hytera employees, and market and sell Hytera's DMR products all over the world. If convicted, Hytera may face a criminal fine equivalent to three times the value of the stolen trade secrets, including research, design and other expenses. Matthew G.Olsen, Assistant Attorney General of the National Security Department of the Ministry of Justice, John C.Kocoras, First US Attorney for the Northern District of Illinois, and Emmerson Buie Jr．, Special Agent of the Chicago Field Office of the Federal Bureau of Investigation, announced the news.

This is a typical American government's attempt to achieve a certain goal by manufacturing China enterprises to steal American intellectual property rights.

Therefore, the dispute between trade secrets and source code has always revolved around this case.

At this point, because American courts have a Discovery system when trying intellectual property cases, compared with China courts. Therefore, in recent years, many high-tech enterprises in China (4.320, -0.19, -4.21%) have been sued by American enterprises, and they have to submit related source codes and trade secrets in court. DJI, for example, was asked to provide source code in a patent dispute with an American company.

This is also the core contest between Motorola and Hytera in this case. For this, we have specially written a report article "American court:" China enterprises, hand over the source code "to introduce the principles that the judge asked Hytera to follow in this case, and rejected Hytera's motion.

In view of this problem caused by more and more intellectual property disputes originating in the United States, the China government has actually made corresponding regulations and made strict requirements for the exit of data (source code).

But it is still the focus of contention in this case.

For example, Hytera's lawsuit filed in Shenzhen Intermediate People's Court included "requesting to declare that the source code of the newly designed DMR industry radio series products and their software by Hytera did not infringe the commercial secrets and copyrights of the two defendants".

Because according to Motorola's argument to the American court, it is believed that Hytera made false statements about the redesigned products (H series), the patent licensing fee order of the court should require Hytera to notify Motorola 180 days in advance before selling any allegedly redesigned products, and disclose working copies, source codes and other materials, so that Motorola can inspect new products and determine whether the new products are bound by the patent licensing fee order.

This means that even after Hytera claimed to redesign it to avoid infringing Motorola's trade secrets and copyrights, Motorola still asked Hytera to provide the source code and pass its inspection.

From this perspective, hegemonism really needs no more reason.

However, Motorola is highly alert to the China court's request for source code for infringement determination, and does not hesitate to evade the design infringement determination with the crime of "contempt of court", instead of re-filing a case to try whether it is infringement, which is a very marginal legal issue to achieve its goal of "sanctioning" Hytera quickly and efficiently.

Summary of the previous article

The above is just the basic context of this case and the combing of some core issues. The judicial environment and national political factors that China enterprises face in the competition with American enterprises exposed in this case, as well as how the American legal system makes a favorable explanation for their own country, provide a very realistic typical case.

Because according to the ruling made by the U.S. District Court, whether it is an injunction or a daily fine, the EU is actually complaining to the WTO about the practice of the China court. According to this logic, China can actually take this case as a typical case and initiate a dispute settlement mechanism against the US judicial system to the WTO.

**Hytera, or Motorola, who is being vexatious? (Part II)**

Original Xiaoying Huang Enterprise Patent Observation 2024-04-08 23:59 Beijing.



In the case that Hytera was severely punished by the American court, the word "vexatious" became the reason why it and Motorola accused each other, and it was

also one of the main reasons why Judge Pacold, the presiding judge of this case, made a global ban on Hytera.

So why did the intellectual property dispute between the two companies finally have the effect of "unreasonable troubles"? Where do the two companies accuse each other of being "unreasonable"? Why did the judge make such a strict order based on this? So why did the intellectual property dispute between the two companies finally have the effect of "unreasonable troubles"? Where do the two companies accuse each other of being "unreasonable"? Why did the judge make such a strict order based on this?

All kinds of questions, in this content, combined with the statements submitted by the two parties to the US court in March 2024 and the orders made by Judge Pacold, on the basis of the previous article, will restore the details of the dispute in this case in detail.

Just a few hours after the last article was published yesterday, Hytera announced the progress of major litigation, which announced an important news that Hytera had withdrawn the prosecution of the Shenzhen case. This will be an important turning point for Hytera to cancel its global sales ban and daily fines.



海能达通信股份有限公司

关于重大诉讼的进展公告

> 本公司及董事会全体成员保证信息披露的内容真实、准确、完整、没有虚假记载、
> 误导性陈述或重大遗漏。

海能达通信股份有限公司（简称"公司"）于 2022 年 6 月向深圳市中级人民法院（简称"深圳中院"）诉请公司全新设计开发的 H 系列产品不侵犯 MOTOROLA SOLUTIONS INC. 及 MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.（前述两家公司统称"摩托罗拉"）商业秘密和版权（简称"深圳案件"）。该案件进入庭审环节后，摩托罗拉向美国伊利诺伊州联邦地区法院（"美国法院"）提交了禁诉令动议，要求公司撤回深圳案件的起诉，美国法院于 2024 年 3 月 25 日批准了该动议。近日，公司收到美国法院的判令，判令认定公司未能完全遵守其禁诉令，临时禁止公司在全球范围内销售双向无线电技术的产品，并处以每天 100 万美元的罚款，直至公司完全遵守禁诉令之时止。

目前，公司已撤销深圳案件的起诉，同时按要求将暂停销售双向无线电技术产品，

In fact, it can be seen from the announcement of Hytera that the reason why the US court imposed such a heavy penalty this time is that the US court approved Motorola's injunction motion on March 25, 2024. The so-called "injunction" is to prohibit Hytera from filing a lawsuit with the China court. However, it was not until the Shenzhen court in China gave Motorola rebuttal evidence. When the deadline for presenting Motorola's source code and trade secrets came on April 1, 2024, Hytera still failed to withdraw the lawsuit in Shenzhen, which was a violation of the injunction of the American court, which led to the rare heavy punishment of the American court.

The reason why Hytera failed to withdraw the lawsuit in Shenzhen court was reported in a report by the American intellectual property media Law360 on April 5, 2024, which mentioned that Hytera had indeed requested to withdraw the lawsuit three times. （Hytera has indeed submitted three withdrawal requests to date, two of which were made subsequent to the imposition of fines and sanctions.），But I don't know why it didn't succeed, and I mentioned that Hytera had been asked to file a fourth withdrawal request with the China court.But I don't know why it didn't succeed, and I mentioned that Hytera had been asked to file a fourth withdrawal

request with the China court. （Hytera Communications has been mandated to initiate a more substantial fourth request within the Chinese legal system to halt proceedings against Motorola Solutions）。

However, with the announcement this morning that Hytera has withdrawn the Shenzhen case, the core issue of the dispute between the two sides has changed qualitatively. I believe that the fines and additional sanctions imposed by the US court on Hytera's global sales ban and violation of the "prohibition order" will be lifted soon.

01

Issues to be clarified in this case

Because the intellectual property dispute between the two companies in this case has gone through seven years, involving litigation in many places around the world, the process is quite tortuous. In order to clearly understand the whole case, and to better understand what issues are involved in the heavy penalty decision made by the American court, it is necessary to have a simple review of the cases of both parties. Only in this way can we better understand the real reason why the two companies accuse each other of "unreasonable troubles".

Generally speaking, the process of intellectual property disputes between the two companies can be divided into two stages.

The first stage is from 2017 to 2020, mainly to hear whether Hytera is infringing.

Motorola sued Hytera on March 14, 2017, and the jury trial began on November 6, 2019 and ended on February 14, 2020.

According to Motorola, during the four-month trial, the jury heard the testimony of more than 40 witnesses. In the end, the jury found that Motorola's trade secrets were stolen and its copyright was infringed. Therefore, Judge Naugle made a final judgment on March 5, 2020, confirming that Hytera had committed intentional and malicious infringement.

However, according to Hytera's statement, after four months of trial, the jury was not asked to determine whether there were specific trade secrets, whether

Hytera had stolen specific trade secrets, or how Hytera's products benefited from specific trade secrets. On the contrary, in the jury's verdict on embezzlement, the only question is whether the jury thinks that Hytera has embezzled Motorola's "one or more" trade secrets, as shown below.



At this stage, the jury of the first instance first fined a huge compensation of 765 million dollars, and then Hytera fought for it and reduced the compensation to 543 million dollars.

Hytera objected to the judgment and appealed.

For this part, there is not much difference between the two parties and the court except that Hytera has objections to the verdict.

The real disagreement mainly lies in whether the H series products redesigned by Hytera after being convicted of infringement are still infringing as Motorola thinks, or not.

The second stage is from 2021 to the present, which is mainly due to whether the H series replaced by Hytera is infringing or not, and the procedural legitimacy of contempt of court initiated by Motorola.

With the end of the first phase, Hytera said that by modifying, redesigning or completely replacing every code component that Motorola identified as benefiting from Motorola's trade secrets in the trial, even more. Hytera also formed a new team with engineers from other departments, hired new engineers, licensed new third-party solutions, and incurred millions of dollars in research and development expenses in other aspects. Hytera believes that H series products are the result of great sincere efforts to launch products that do not originate from Motorola's trade secrets.

However, Motorola has always believed that the H-series products, which are alternatives to Hytera, still continue to use the trade secrets and copyrights stolen from Motorola, even though Motorola has not obtained the basic source code of

Hytera.

Therefore, it can be seen that the US court's order to impose heavy penalties on Hytera is mainly aimed at the disputed part of the two parties in the second stage, which is not related to the infringement facts that have been determined by the court in the first stage.

But even so, we should be aware of the fact that up to now, neither the American court nor the China court has made a ruling on whether the alternative H series products launched by Hytera infringe Motorola's trade secrets and copyrights. At present, heavy penalties are mainly based on procedural "contempt of court" rather than substantive infringement.

Therefore, when understanding this case, many people will mistakenly think that Hytera "copied" Motorola. In fact, for the first stage, the US court made a relatively clear judgment, although Hytera continued to appeal to overturn this ruling. However, in the second stage, whether the modified products of Hytera really infringe Motorola's intellectual property rights is still inconclusive, so it cannot be directly considered that Hytera "copied" Motorola in the second stage.

02

A war of words between the two sides

After understanding the above clarification, we will better understand what the two sides are fighting for in the post-trial procedure.

Motorola was the first to attack Hytera, because it has always questioned that it is impossible for Hytera's H series not to copy Motorola's trade secrets and copyrights, and cited many reasons.

However, in order to cover this question more conveniently in the first-stage cases that have been clearly tried, Motorola took the lead in launching the "contempt of court" procedure.

Because in the case of patent infringement, the law provides two ways to question redesign. Contempt of court may be an appropriate remedy for products that are basically the same as those that have been judged. However, for products

that have undergone meaningful redesign, the difference is not only superficial, and contempt of court is "not an appropriate remedy". On the contrary, in this case, the redesigned product can only be questioned in the new lawsuit.

In short, if there is no significant difference (on the surface) between the redesigned H-series of Hytera and the previous scheme of determining infringement in the first stage, the contempt of court procedure provides a remedy for Motorola, which is equivalent to continuing the trial of Hytera H-series on the basis of the previous stage.

This obviously saves the time for Motorola to re-initiate the lawsuit against the Hytera H series and improves the efficiency, which is beneficial to Motorola.

However, it is not good for Hytera, because Hytera thinks that every module of Motorola that was found to be infringed in the previous stage has been redesigned, which is obviously different from the previous one. Therefore, if Motorola questions it, it should file a lawsuit again.

This is also the reason why Hytera will file a new lawsuit with the China court after the first-stage trial, and after more than a year of "contempt of court" with Motorola, because in Hytera's view, whether the H series infringes Motorola's trade secrets and copyrights has nothing to do with the first-stage trial, and it is a new case.

Hytera's reason is also very simple, because H series products did not exist at the first stage of the trial in the United States, and the products explicitly covered by the judge in the first stage of the judgment of the American court did not include H series.

Therefore, Hytera thinks that the problems between the two lawsuits are not the same, and the American lawsuit is not decisive for the lawsuit in China. Hytera said, "In fact, the China lawsuit is the first lawsuit involving whether the H series uses Motorola's trade secrets or copyrights".

This is also a key point in whether the American courts are "unreasonable" for parallel litigation when hearing the lawsuit filed by Hytera in the China court.

Because if they are two completely different lawsuits, there will be no conflict of

laws in parallel lawsuits.

Moreover, Hytera believes that Motorola did not advocate that H series products should be included in the patent license fee in the court proceedings for more than one year after it launched the H series in 2021, but later it demanded that it was obviously "unreasonable".

Motorola, on the other hand, thinks that Hytera does not provide the basic source code, but only provides some code files, and that Hytera filed a lawsuit in China court with the intention of depriving the American court of jurisdiction over this case, which is "contempt of court" and requested the court to issue an injunction.

The core is that Motorola doesn't want to submit source code and trade secrets in court proceedings in China.

This concern has been mentioned in Motorola's statement, arguing that there are no safeguards in China courts to prevent Motorola's trade secrets and source codes from being improperly disclosed, thus protecting Motorola.

讼的情况下，发现在外国诉讼中对相同索赔进行抗辩存在不公平的困难）。在中国，法院要求摩托罗拉重新进行证据披露，包括提供伊利诺伊州陪审团认定包含商业秘密的摩托罗拉源代码。Ex. 8 § 16。而目前没有任何保障措施来防止不适当地披露摩托罗拉的商业秘密和源代码，也没有任何保证深圳法院会对获取这些材料施加限制以充分保护摩托罗拉。

*同上。*¶¶ 17-18.Hytera 在中国的重复诉讼

摩托罗拉的陈述

But in fact, Hytera also stated in the statement that the Shenzhen court has issued a protection order for this case in accordance with the practice of handling trade secrets in China, just to protect the confidential information of the parties. Its essence is roughly equivalent to the confidentiality procedure in the evidence discovery system in the United States.

在本案中，深圳法院已经按照中国处理商业秘密纠纷的惯例发出了保护令，该保护令在很大程度上反映了本法院为当事人提供的保护类型。Chen Decl.第 9-11 段和 Ex.例如，保密信息将提供给法院（而不是直接提供给另一方当事人）并密封保存，只有律师和技术专家（而不是当事人）可以查看。Chen Decl.第 17 段和 Ex.所谓证据开示工具的差异同样是形式大于内容。在中国，证据开示由法院而非当事人申请和保留。Chen Decl.¶¶ 16-18.

摩托罗拉完全有能力获得口头、书面和文件证据来支持其主张（或反驳 Hytera 的主张）。

海能达的陈述

But it can be seen that Motorola does not trust this.

And for the problem that Motorola has been questioning that Hytera did not provide the basic source code to the US court, but only provided part of the code, Hytera said that on January 25, 2024, it provided the Shenzhen court with the evidence of H series redesign, including the source code. Therefore, as long as Motorola submits evidence before April 1, 2024, the Shenzhen court can determine whether it is infringing.

中。Chen Decl.¶¶ 9-10.2024 年 1 月 25 日，Hytera 向深圳法院提交了有关其 H 系列重新设计的证据，包括基础源代码。Chen Decl.¶ 20[5].摩托罗拉被责令在 2024 年 4 月 1 日之前提

8

交证据，证明其指控 H 系列无线电使用了其商业秘密。Chen Decl.¶ 21.

海能达的陈述

Obviously, however, Motorola still doesn't trust China's legal procedures, which led the US court to force Hytera to abandon China's lawsuit by issuing a global ban on sales at this key node.

In fact, as Hytera stated in his statement, even in the past seven years, Motorola won 90% of all kinds of cases in China, including patent invalidation cases, patent administrative litigation and infringement cases, which means that the courts or patent offices in China have not been biased in favor of Hytera, but they are very fair.

In fact, this leads to a series of more interesting questions for both sides.

.Obviously, however, Motorola still doesn't trust China's legal procedures, which led the US court to force Hytera to abandon China's lawsuit by issuing a global ban on sales at this key node.

In fact, as Hytera stated in his statement, even in the past seven years, Motorola won 90% of all kinds of cases in China, including patent invalidation cases, patent administrative litigation and infringement cases, which means that the courts or patent offices in China have not been biased in favor of Hytera, but they are very fair.

In fact, this leads to a series of more interesting questions for both sides.

**The ban on Hytera has not yet been lifted. Why did the U.S. court issue a global ban on Hytera? (Part III)**

Original Huang Xiaoying Enterprise Patent Observation 2024-04-11 23:59 Beijing

**Author: Huang Ying**



Previous article: Behind the heavy fine imposed on Hytera, the case is far more complicated than meets the eye

Part 2: Hytera, Motorola, who is making "unreasonable trouble"?
As of Wednesday, Hytera's global sales ban crisis has not yet been lifted.

On Monday this week (April 8, 2024), Hytera issued an announcement on the progress of major litigation, mentioning that it had withdrawn the prosecution in the Shenzhen case , suspended the sale of two-way radio products as required, and applied to the U.S. court to revoke the order. He also said that hearings are continuing in U.S. courts in recent days . Hytera stated that it will take various countermeasures and strive to revoke the order as soon as possible .

According to previous analysis , the U.S. court issued the most severe injunction against Hytera this time because Hytera was trying to seek a declaration that the Chinese court ruled that its modified H series products did not infringe Motorola's trade secrets and copyrights.

Therefore, with Hytera announcing that it had withdrawn its Shenzhen lawsuit, the outside world once thought that the ban crisis would end soon.

However, the progress of things is not as simple as imagined.

On April 11, 2024, according to the latest disclosure of this case by overseas media infoma , as of Wednesday (April 10), the U.S. court's ban on Hytera's global sales of two-way radio technology is still in effect.

Judge Pacold, who is presiding over the case in the United States , held a two-hour conference call with lawyers representing Hytera and Motorola on Wednesday and reiterated her decision.

Because since Hytera's announcement on Monday, Hytera provided information from the Shenzhen court's instant messaging system to show that China's Series H case claimed that the recent oral ruling of the three-judge panel was legally binding, but it has not since received any information. Relevant communications to the Chinese courts could clarify the matter. Judge Pacold believed the letter came from a clerk or associate judge in the Shenzhen court, not one of the three judges hearing the case. (⋯ when Hytera Communications provided information from the Shenzhen court's instant-message system indicating that the H-Series case in China claiming that a recent oral ruling by the three-judge panel was legally effective. However, this communication came from a clerk or Assistant judge with the Shenzhen court, not one of the three judges hearing the case. )

Therefore, Judge Pacold reiterated her concern that the Chinese court may issue a written ruling that undermines the U.S. court where she sits in the case. jurisdiction. Judge Pacold called on Hytera to ask the Shenzhen court whether it would issue a formal written order on the matter.

According to reports, a hearing on the case will also be held on Thursday morning, and similar hearings on the matter will be held every day, including Sunday.

This means that although the ban has not been lifted as of Wednesday, it is not ruled out that there will be a turning point in the relevant cases in the following days this week.

The report also mentioned that Judge Pacold said she did not want the sanctions to last longer than necessary, so she repeatedly pointed out the seriousness of the injunction. The judge also noted that Hytera Communications often has not complied with court orders ; at this stage of the litigation, it simply cannot Believe Hytera's word ( at this stage of the litigation, it simply cannot take Hytera at its word. )

In addition, in the case of the U.S. Seventh Circuit Court of Appeals where Hytera appealed, the Court of Appeal also stated that injunctive sanctions are The appeals court said the injunction sanctions are the result of "self-inflicted wounds"

created by Hytera Communications .

"Given Hytera's track record of conduct, ranging from potential trade secret theft and copyright infringement to pre-trial sanctionable conduct, post-judgment litigation in this case, failure to pay royalties as ordered (resulting in an earlier contempt ruling), was filed In the long-secret Shenzhen case, and in response to the controversial injunction here, Hytera has shown that its unverified statements to the court cannot be trusted."

"Hytera now faces painful mandatory sanctions, lying on the bed it has carefully crafted for itself over the past seven years and especially the past two weeks. Self-inflicted harm is not irreparable harm and does not require much from the Court of Chancery. Indulge."

It is not difficult to find that there may be some reasons behind the most severe injunction sanction imposed by the U.S. court on Hytera this time.

However, the authenticity of the above reports has yet to be confirmed.

However, the judge's decision to issue the most severe global ban in this case also stirred up waves and triggered huge social controversy. Many people don't understand why a local court in the United States can issue a global sales ban order to Hytera, and Hytera quickly complied with the ban and even removed all products from flagship stores such as JD.com and Taobao in China.

The question many people have is, what about judicial sovereignty?

Regarding this, even many foreign people have raised questions about this, " How can the United States believe that they have such power to stop 'anywhere in the world'... " Steven said, even doubting the "political" factors behind it. Dave, the commenter, was even more critical, especially " How on earth is this situation enforceable in China or Russia? "



Some foreign netizens, Jaeden, thought, "Isn't it crazy that the U.S. government can order a Chinese company to stop selling its products globally?" and mentioned, "If the situation is reversed, the Chinese government would ban a U.S. company from selling its products globally. product?", what will happen? Probably

unimaginable.



Hytera Ordered to Stop Selling
Two-Way Radio Technology Wo…
ipvm.com · 1 分钟阅读时间

 8                              2 条评论 · 1 次转发

👍                🗨              🔁              ✈
赞               评论             转发             发送

评论                                      最相关 ↕

Jaeden ▪▪▪▪▪ · ▪ ▪▪                    ⋮
Security Consulting & Problem Solving ▪▪▪▪▪▪▪▪ ▪
1 天 (已编辑)

美国政府可以命令一家中国公司停止在全球范围
内销售他们的产品，这不是很疯狂吗？有点反乌
托邦，他们有多大的力量——如果我在海能达工
作，我会很生气的。

想象一下，如果情况逆转了？中国政府禁止一家
美国公司在全球销售其产品？我无法想象这会顺
利结束。

查看原文  ·  🌐

Even the title of an article in the South China Morning Post on April 8 clearly stated that " the sanctions are seen as 'harsh' than the action against Huawei ."



技术 / 技术趋势

中国对讲机制造商海能达将对美国的全球销售禁令提出上诉，该制裁被视为比针对华为的行动更"严厉"

· 这家总部位于深圳的公司在提交给交易所的文件中表示，其目标是"尽快"解除禁令

· 4月2日，伊利诺伊北区地方法院下令海能达停止在全球任何地方销售和分销任何包含双向无线电技术的产品

What's even more bizarre is that even the lawyer for Motorola, the beneficiary party in this case, did not expect that the court would make such a ruling.

At the end of infoma 's report on the latest developments in this case, it was written:

"Lawyers for Motorola and Hytera have argued for opposing positions on injunctive and contempt sanctions, and it appears they have largely agreed on a timetable for filing legal proceedings against Pacold to determine whether Hytera's H-Series DMR products are subject to Royalties. Lawyers for both companies said they hope to complete the lawsuit before Hytera must focus on the criminal case brought by the U.S. Department of Justice in a trial scheduled to begin on October 1."

"Attorneys for Motorola Solutions and Hytera Communications have advocated for opposing positions regarding the injunction and contempt sanctions, it appears

they have agreed largely on a schedule for a legal proceeding before Pacold to determine whether Hytera 's H-Series DMR products should be subject to royalty fees. Lawyers for both companies indicated that they would like to complete the proceeding before Hytera Communications has to focus on the criminal case being brought by the US Department of Justice in a trial that is scheduled to begin on Oct. 1." Brief introduction

In short, Motorola is still a business-oriented company. As long as the court can rule that Hytera has to pay licensing fees for its H series, that is actually fine. Both parties are willing to reach a settlement of their civil lawsuits before the U.S. Department of Justice launches criminal proceedings against Hytera on October 1 this year.

Therefore, it can be seen from this case that the three types of entities in the United States, the enterprise (Motorola) , the court and the government (Ministry of Justice), have different demands in the Hytera case.

From a commercial perspective, Motorola should be able to determine that Hytera's modified H series also needs to pay licensing fees to Hytera. In this way, Motorola can also indirectly control Hytera's development through the licensing contract.

The U.S. court was strongly opposed to the Chinese court's intervention in the case, believing that the Chinese court was competing for jurisdiction and showed an unconventional reaction. Regardless of the reason, issuing bans on other sovereign countries beyond their jurisdiction has once again made the world see clearly that U.S. hegemony is almost everywhere and is unpopular.

Finally, the U.S. Department of Justice's criminal prosecution against Hytera may be the "climax" of the entire incident. If someone is naive and thinks that the intellectual property dispute between Motorola and Hytera is just a legal battle and does not involve politics, it can only be said that they have not understood the real reasons behind the case. In fact, behind this is a combination of tactics carefully prepared by the US government to deal with China's technology sanctions.

However, the Hytera case is regarded as a typical case in which the chain of evidence is enough to support the US government to win back face. As Motorola quoted Judge Hamilton's comments in the documents submitted, "This is the most

shameless trade secret I have ever seen." One of the theft cases". In fact, among the many prosecutions initiated by the U.S. government against Chinese and Chinese companies for stealing trade secrets from U.S. high-tech companies, most of the cases were either dropped or the penalties were reduced due to insufficient evidence.

Therefore, the criminal prosecution by the U.S. government that Hytera will face in October this year is the final roadshow for the U.S. to once again raise its butcher knife to "kill the chicken to scare the monkey."

This case may once again remind Chinese companies that the most powerful counterattack to break Western hegemony is to strengthen themselves, truly own their own technology, stop being accused of being "thieves" by Western countries, and participate in global competition openly.



**Scan the QR code to join the intellectual property elite community**

# 海能达遭重罚的背后，案情远比看到的要复杂（上）

原创 黄小莺 企业专利观察 2024-04-07 23:59 北京



作者：黄莺

题图：海能达官网

2024年4月2日，海能达遭美国地方法院颁发的全球禁售令，并不得不遵照美国法院要求在其官网上予以告示，成为各界热议的焦点。

这背后到底发生了什么事情，才让在2006年之后几乎已经不再颁发禁令的美国法院能够罕见的打破常规，以"蔑视法庭"为主要理由，对海能达下达了不能在世界任何地方销售任何含有对讲机技术的产品，这样极为严苛的禁令；并且要求海能达不能依赖中国法院的命令和判决；否则将面临高达100万美元的日罚金。

值得注意的是，本案审理中法庭主要依据的"**蔑视法庭**"的理由和**规避设计之后的专利侵权认定**之间到底应该如何掌握尺度，也成为本案在法理上值得关注的一个重点。

总结来看，本案充分体现了三个层面的对抗和较量：**一是企业级的竞争，**也就是海能达与摩托罗拉之间为各自源代码和商业秘密的保卫之战。**二是法院级的较量，**也就是中、美两国法院对于管辖权和裁判规则的暗中较量。**三是国家级的比拼，**中、美两国在涉及关键知识产权问题上表现出的各自立场。

三个问题在本案中，可以说相互交织，共同造成了目前的结果。

**突发的判决**

海能达关于其与摩托罗拉之间的知识产权系列纠纷案的最后一次对外公告是在2023年10月28日，在其发布的2023年三季度报告中，有如下的记载：

> 1、美国商密版权案
>
> 一审法院于 2023 年 7 月 11 日就许可费的支付方式作出判决，未同意公司提出的以其他非现金方式向法院监管的共管账户支付第一笔许可费的动议，并在听证会后于 2023 年 8 月 26 日要求公司支付第一笔许可费和滞纳金至法院监管的共管账户。公司不认可前述判决结果，已提起上诉。2023 年 9 月 1 日，公司按一审法院要求支付第一笔许可费至法院监管的共管账户。一审法院不再受理双方任何请求，目前本案已进入上诉阶段。公司将遵循企业会计准则及公司会计政策的相关规定，按照公司处理诉讼事项的一致性原则进行会计处理，具体结果尚待进一步确认。

**来源：海能达2023年三季报**

也就是说，至少在**2023年10月**，海能达和摩托罗拉之间在有关美国一审法院的判决专利费问题上，虽然有不同意见，表示已提出上诉，但都已按要求支付了第一笔许可费至法院监管的账户。

看似双方之间的纠纷已经走向的尾声，然而这种状态迅速在该三季报发布后的一个月内发生了逆转。

据2024年3月25日，美国伊利诺伊北部地区法院**Martha M. Pacold**法官就摩托罗拉对海能达发起的蔑视法庭动议的命令中披露。

**2023年11月**，中国深圳市中级人民法院（简称"深圳中院"）向摩托罗拉送达了一个案件，该案是海能达在**2022年6月**向深圳中院提出的宣告性判决，请求法院裁定其**H系列**不侵犯摩托罗拉的商业秘密和版权。

但是Pacold法官在命令中披露，海能达并未告知之前审理本案的**诺格尔**（Norgle）法官（现已退休）或摩托罗拉其已在深圳提起诉讼。

而2022年6月海能达向中国法院提出诉讼的这是时间点，正处于美国法院**诺格尔法官**在2022年4月12日做出的有关海能达的H系列产品是否涵盖在内的命令，以及2022年7月5日的专利许可费生效日期之间。

从这一点能够看出，海能达自2017年诉讼开始，在美国法院的审理下，基本上都处于劣势。2020年3月，先是被一审陪审团判罚了7.65亿美元的巨额赔偿，随后经过争取，将赔偿额降到了5.43亿元美元。即使海能达试图通过重新设计的H系列，以避免侵犯摩托罗拉的商业秘密等，依然被法院认为不可以。

在这种情况下，海能达向中国法院对其重新设计的H系列希望宣告不侵权，本来是一个正常的司法手段。但是从目前美国法院Pacold法官对这一事件的定义来看，核心是认为在美国法院已经

完成了诸多争议的审理之后（如本案的审判和审判后程序已经结束，而且海能达已向第七巡回法院提起上诉），海能达再向中国法院寻求宣告判决，意味着平行诉讼将会引发法院判决的冲突。

在此，**Pacold**法官还援引了在*Allendale*案的判例，该案中第七巡回法院确认了一项针对被告在法国法院诉讼的反诉讼禁令，部分原因是地区法院（伊利诺伊州北区的一家法院）已经进行了极其密集的审前调查。

因此认为在这种情况下，允许两起诉讼同时进行的平行诉讼将是相关判例法意义上的"**无端重复（gratuitously duplicative）**"或"**无理取闹和压迫（vexatious and oppressive）**"。

而本案海能达之所以在**2024年4月2日**遭遇美国法院的重罚，这或许就是其中非常重要的一个原因。

另一个导致美国法院突发判决原因就是，按照中国深圳中院对本案的审理进度，**2024年1月25-26日**，深圳中院举行了庭审，庭审中驳回了摩托罗拉根据《海牙公约》摩托罗拉被不当送达以及法院无权审理此案的异议，并允许海能达提交证据以支持其主张，并要求摩托罗拉在**2024年4月1日**提供反驳的证据，**其中包括出示摩托罗拉的源代码和商业秘密**。

因此，这才是美国法院为何突然在4月2日向海能达发布重罚命令的根本原因，目的就是希望按照摩托罗拉提出的动议，通过美国法院的命令来阻止其向中国法院提交源代码和商业秘密。

而源代码和商业秘密之争，也成为本案的另一个争议的主线。

## *02*
### 源代码和商业秘密之争

商业秘密，可以说是本次中、美两家公司之争的核心内容。

这起源于2017年的知识产权案件，正值特朗普政府时期对华采取强硬政策的开始。这与美国对华为、中兴通讯开始制裁的时间不谋而合。实际上，在这前后，涉及到美国知名公司的华裔商业秘密案呈现出一波小高潮，这也与美国政府提出的旨在打击中国对美国商业秘密窃取的**"中国倡议"行动**相吻合。

在此期间，一批美国知名企业，苹果、可口可乐、葛兰素史克、孟山都、通用电气、ADI等公司都暴露出涉及华裔的商业秘密案件。

像**2019年苹果公司对前员工张小浪（音译）和陈继忠（音译）拿走文件并逃往中国表示深切关注**。2015年，<u>江苏某企业被控窃取美国PPG工业玻璃商业机密</u>，被处三倍赔偿，总计2600万美元。今年1月，<u>前通用电气华裔工程师因串谋从事经济间谍罪被判2年监禁</u>等。

因此，海能达与摩托罗拉之间涉及的商业秘密等知识产权问题，并不是简单的两家企业之间的普通纠纷，更是当前中、美科技竞争环境下的一个典型案例，其背后的政治因素不得不考虑。

就像在本案中，2022年2月7日，美国司法部发布一则公告，对**摩托罗拉 v 海能达**案代表美国政府做出指控。根据起诉书称，从2007年到2020年，海能达及其招聘的员工利用摩托罗拉的专有和商业秘密信息，加速海能达数字移动无线电（DMR）产品的开发，培训海能达员工，并在世界各地营销和销售海能达的DMR产品。如果罪名成立，海能达可能面临相当于被盗商业秘密价值三倍的刑事罚款，包括研究、设计费用和其他费用。司法部国家安全司助理司法部长Matthew G.Olsen、伊利诺伊州北区第一美国检察官John C.Kocoras和联邦调查局芝加哥外勤办公室特别代理Emmerson Buie Jr.宣布了这一消息。

这就是典型的美国政府试图通过制造中国企业窃取美国知识产权，来达到某种目的经典手法。

因此，商业秘密和源代码的争议一直围绕着本案。

在这一点上，因为美国法院在审理知识产权案件时，相比于中国法院，有证据开示（Discovery）的制度。因此，近年来已经有多家中国高科技企业因为被美国企业起诉，而不得不面临要在法庭上提交涉案相关的源代码和商业秘密等问题。例如**大疆就在与美国公司的专利纠纷中被要求提供源代码。**

对于本案摩托罗拉与海能达之间的核心的较量，也是在此，对此我们曾专门撰写了一篇报道文章《**美国法院："中国企业，交出源代码"**》来介绍该案中法官要求海能达遵循的原则，并驳回了海能达的动议。

针对越来越多的源自美国知识产权纠纷引发的这一问题，中国政府其实也做出了相应的规定，对于数据（源代码）的出境做了严格要求。

但是在本案中依然成为争夺的焦点。

例如，海能达在深圳中院提交的诉讼请求就包括"要求宣布'原告海能达新设计的 DMR行业无线电系列产品及其软件的**源代码没有侵犯两被告的商业秘密和版权'。**"

因为根据摩托罗拉向美国法院的辩称，认为海能达曾对重新设计的产品（H系列）进行过虚假陈述，因此法院的专利许可费命令应要求**海能达在销售任何据称是重新设计的产品之前提前180天通知摩托罗拉，并披露工作拷贝、源代码和其它材料，以便摩托罗拉检查新产品并确定新产品是否受专利许可费命令的约束。**

这也就意味着，即使海能达自己声称重新设计以避免侵犯摩托罗拉的商业秘密和版权之后，摩托罗拉依然要海能达提供源代码，经过其检查。

从这个角度来看，霸权主义确实是无需多讲道理。

但是摩托罗拉却对中国法院要求其提供源代码，从而进行侵权认定的做法表现出高度的警觉性，而且不惜以"蔑视法庭"罪裹挟着规避设计的侵权判定，而不是重新立案审理是否侵权，这么一个非常边缘的法律问题来实现其迅速和高效的"制裁"海能达的目的。

**上篇总结**

以上只是本案的基本脉络和部分核心问题的梳理，本案所暴露出来的中国企业在与美国企业竞争中所面临的司法环境和国家政治因素等，以及美国法律制度是如何做出对本国有利的解释方面，提供了一个非常现实的典型案例。

因为按照此次美国地方法院做出的裁决，无论是禁诉令，还是日罚金等，其实都是欧盟在向WTO投诉中国法院的做法。如果按照这个逻辑，中国其实完全可以以本案为典型案例，同样向WTO发起针对美国司法体系的争端解决机制。



**扫码加入知识产权精英社区**

---

喜欢此内容的人还喜欢

海能达，摩托罗拉，谁在"无理取闹"？（中）
企业专利观察


---

深圳又一企业在欧洲统一专利法院被控侵犯专利
企业专利观察

---

苹果成功无效中国独立发明人专利
企业专利观察


# 海能达，摩托罗拉，谁在"无理取闹"？（中）

原创 黄小莺 企业专利观察 2024-04-08 23:59 北京



作者：黄莺

## 海能达遭重罚的背后，案情远比看到的要复杂（上）

**海能达**遭美国法院重罚的案件中，"**无理取闹**"（**vexatious**）一词成为其与摩托罗拉互为指责对方的理由，也是本案主审**Pacold**法官对海能达做出全球禁售令的主要原因之一。

那么为何两家公司之间的知识产权纠纷最后打出了"无理取闹"的效果？两家公司相互指责对方"无理取闹"的地方又是什么？法官为何依此做出了如此严厉的命令？

种种疑问，将在本篇内容中，结合双方在2024年3月份各自向美国法院提交的陈述文件，以及**Pacold**法官做出的命令，在<u>上篇</u>的基础上，详细还原一下本案争议的细节。

就在昨天上篇文章发出之后几小时，海能达发布重大诉讼进展公告，该公告公布了一条重要的消息，就是**海能达已撤销深圳案件的起诉**。这将成为海能达即将被撤销全球销售禁令和日罚金的重要转折点。



证券代码：002583　　　证券简称：海能达　　　公告编号：2024-016

## 海能达通信股份有限公司
## 关于重大诉讼的进展公告

本公司及董事会全体成员保证信息披露的内容真实、准确、完整，没有虚假记载、误导性陈述或重大遗漏。

海能达通信股份有限公司（简称"公司"）于 2022 年 6 月向深圳市中级人民法院（简称"深圳中院"）诉请公司全新设计开发的 H 系列产品不侵犯 MOTOROLA SOLUTIONS INC. 及 MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.（前述两家公司统称"摩托罗拉"）商业秘密和版权（简称"深圳案件"）。该案件进入庭审环节后，摩托罗拉向美国伊利诺伊州联邦地区法院（"美国法院"）提交了禁诉令动议，要求公司撤回深圳案件的起诉，美国法院于 2024 年 3 月 25 日批准了该动议。近日，公司收到美国法院的判令，判令认定公司未能完全遵守其禁诉令，临时禁止公司在全球范围内销售双向无线电技术的产品，并处以每天 100 万美元的罚款，直至公司完全遵守禁诉令之时止。

目前，公司已撤销深圳案件的起诉，同时按要求暂停销售双向无线电技术产品，并已向美国法院申请撤销上述判令，近日正在美国法院持续进行听证。公司将进一步采取各项应对措施，争取最短时间撤销上述判令。

**来源：海能达公告**

实际上，从海能达的公告也能看出，本次之所以会引发美国法院如此重罚的原因，就是美国法院曾在2024年3月25日批准了摩托罗拉的**禁诉令动议**，所谓"禁诉令"也就是禁止海能达向中国法院提诉，但是由于直到中国深圳法院给摩托罗拉要设定的提交反驳证据，包括**出示摩托罗拉的源代码和商业秘密**的截止日2024年4月1日到来之时，海能达依然未能撤回在深圳的诉讼，也就是违反了美国法院的禁诉令，所以才导致了美国法院的罕见重罚。

之所以海能达未能撤销在深圳法院的诉讼，美国知识产权媒体**Law360**在2024年4月5日的一篇报告中曾有过报道，其中提到海能达确实曾三次要求撤诉（*Hytera has indeed submitted three withdrawal requests to date, two of which were made subsequent to the imposition of fines and sanctions.*），但是不知为何原因并未成功，同时提到已经要求海能达向中国法院提出第四次撤诉请求（*Hytera Communications has been mandated to initiate a more substantial fourth request within the Chinese legal system to halt proceedings against Motorola Solutions*）。

不过随着海能达今早公告已经撤销深圳案件起诉，这一双方争议的核心问题出现了"质"的变化，相信美国法院对海能达全球禁售令、违反"禁诉令"的罚款和额外制裁将会很快解除。

*01*

**本案中待澄清的问题**

由于本案两家公司之间的知识产权纠纷历经七年，涉及全球多地的诉讼，过程颇为曲折。为了清晰的理解整个案情，以便更好了解本次美国法院做出的重罚决定到底是涉及双方争议的哪些问题，还需要对双方的案情有一个简单的回顾。从而才能更好的理解两家公司相互指责对方"无理取闹"的真正理由。

总体来看，可以将两家公司的知识产权纠纷过程分成两个阶段。

**第一阶段是2017年-2020年，主要是审理海能达是否侵权。**

摩托罗拉起诉海能达发生于2017年3月14日，陪审团审判在2019年11月6日开始，2020年2月14日结束。

根据**摩托罗拉**的表述，在四个月的审理中，陪审团听取了40多位证人的证词。最终陪审团认定摩托罗拉的商业秘密被盗用，版权受到侵犯。于是，诺格尔法官在2020年3月5日做出最终判决，确认了海能达实施了故意和恶意的侵权行为。

但是根据**海能达**的表述，在四个月的审理后，陪审团没有被要求确定是否存在具体的商业秘密，海能达是否盗用了具体的商业秘密，或者海能达的产品如何从具体的商业秘密中获益。相反，在陪审团关于盗用的裁决表中，唯一的问题是陪审团是否认为海能达盗用了摩托罗拉的 "一项或多项 "商业秘密，如下图。



在这一阶段，先是被一审陪审团判罚了**7.65亿元美元**的巨额赔偿，随后海能达经过争取，将赔偿额降到了**5.43亿元美元**。

海能达对该判决表示反对，并提出了上诉。

对于这部分，除了海能达对判决结果有异议外，其实双方和法院之间并无太大分歧。

真正的分歧点主要发生在海能达针对被判侵权之后，通过修改设计，以试图回避侵权部分而重新设计的**H系列产品**，是否依然如摩托罗拉所认为的侵权，还是并不侵权。

**第二阶段是2021年-至今，主要是由海能达替代的H系列是否侵权而引发的摩托罗拉发起的藐视法庭的程序正当性。**

随着第一阶段的结束，海能达表示，通过修改、重新设计或彻底替换了摩托罗拉公司在庭审中认定为受益于摩托罗拉公司商业秘密的每一个代码组件，甚至更多。海能达还与其他部门的工程师组成

了新的团队，雇佣了新的工程师，许可了新的第三方解决方案，并在其他方面产生了数百万美元的研发费用。海能达认为H系列产品是为推出并非源自摩托罗拉商业秘密的产品而做出的重大真诚努力的结果。

但是，摩托罗拉则始终认为海能达替代方案的H系列产品，依然继续使用了从摩托罗拉盗用的商业秘密和版权，即使这是在摩托罗拉并未获得海能达基础源代码的情况下做出的判断。

因此可见，美国法院此次对海能达做出重罚的命令，主要是针对第二阶段双方争议部分做出的，与第一阶段已经由法院确定的侵权事实并不相关了。

但是即使是这样，也要清楚一个事实，就是截至到目前，无论美国法院，还是中国法院，均未对海能达推出的替代方案的H系列产品是否侵犯摩托罗拉的商业秘密和版权做出过裁决。目前的重罚主要是基于程序上的"藐视法庭"，而非实质侵权。

因此，很多人在理解本案时，会误认为海能达"抄袭"了摩托罗拉，实际上这一点对于第一阶段而言，美国法院是做出了较为明确的判决，虽然海能达还在继续上诉以图推翻这一裁决。但是第二阶段，海能达修改后的产品是否还真的侵犯摩托罗拉的知识产权，目前没有定论，因此也不能直接认为海能达在第二阶段还是"抄袭"了摩托罗拉。


## *02*
### 双方的唇枪舌战

理解了上述澄清内容后，就会更好的理解双方在审后程序中争夺的内容了。

最先对海能达发难的还是摩托罗拉，因为其一直质疑海能达的H系列不可能不抄袭摩托罗拉的商业秘密和版权，并列举了很多理由。

但是为了更便捷的将这一质疑涵盖在已经审理清楚的第一阶段的案件中，摩托罗拉率先发起了"藐视法庭"程序。

因为在专利侵权的情况下，**法律为质疑重新设计提供了两种途径**。对于与已判决产品基本相同的产品，藐视法庭可能是一种适当的补救措施。但对于已经进行了有意义的重新设计的产品而言，其差异不仅仅是表面上的，藐视法庭 "不是适当的补救措施"。相反，在这种情况下，重新设计的产品只能在新的诉讼中受到质疑。

简言之，如果海能达重新设计的H系列与之前第一阶段认定侵权的方案没有显著差别（表面上），则藐视法庭程序为摩托罗拉提供了一种救济途径，相当于对于海能达H系列的审理可以继续在上一阶段基础上继续进行。

这样显然节省了摩托罗拉再重新针对海能达H系列重新发起诉讼的时间，提高了效率，这对摩托罗拉是有利的。

但是对于海能达则是不利的,因为海能达认为已经针对上一阶段被认定侵权的摩托罗拉的每一个模块都进行了重新设计,已经与之前的存在显著差异,因此如果摩托罗拉质疑的话,应该重新提起诉讼。

这也是为何海能达会在第一阶段审理之后,且与摩托罗拉在"藐视法庭"程序折腾了一年多之后,转而向中国法院提出新的诉请的原因,因为在海能达看来,对于H系列是否侵犯摩托罗拉的商业秘密和版权,已经与第一阶段的审理没有关联了,是一个新的案件。

海能达的理由也很简单,因为在美国第一阶段审理时,H系列产品还不存在,美国法院在第一阶段的判决中,法官明确涵盖的产品中并不包括H系列。

因此海能达认为两起诉讼之间的问题并不相同,美国诉讼对中国诉讼不具有决定性意义。海能达表示,**"事实上,中国诉讼是第一起涉及H系列是否使用摩托罗拉商业秘密或版权的诉讼"**。

而这一点,也是美国法院在审理海能达在中国法院提出的诉讼,是否是对平行诉讼的"无理取闹"原因中非常关键的一点。

因为如果是两个完全不同的诉讼,就不会引发平行诉讼的法律冲突问题。

而且海能达认为,在2021年其推出H系列之后的一年多法庭程序中,摩托罗拉并未主张在专利许可费方面要将H系列产品纳入进来,但是后来却又要求,属于明显的"无理取闹"。

而摩托罗拉则认为海能达不提供基础源代码,只是提供部分代码文件,以及海能达向中国法院提出诉请,意在剥夺美国法院对本案的管辖权,才属于"藐视法庭"并请求法庭发布禁诉令。

其核心还是摩托罗拉不希望在中国的法庭程序中提交源代码和商业秘密。

这一点在摩托罗拉的陈述中已经提到这种担忧,认为在中国法院没有任何保障措施来防止摩托罗拉的商业秘密和源代码被不适当的披露,从而保护摩托罗拉。

> 讼的情况下,发现在外国诉讼中对相同索赔进行抗辩存在不公平的困难)。**在中国,法院要求摩托罗拉重新进行证据披露,包括提供伊利诺伊州陪审团认定包含商业秘密的摩托罗拉源代码。Ex. 8 § 16。而目前没有任何保障措施来防止不适当地披露摩托罗拉的商业秘密和源代码,也没有任何保证深圳法院会对获取这些材料施加限制以充分保护摩托罗拉。**
>
> *同上*。¶¶ 17-18.Hytera 在中国的重复诉讼

**摩托罗拉的陈述**

但是实际上,海能达在陈述中也表示,深圳法院已经按照中国处理商业秘密的惯例对本案发出了保护令,就是为了保护当事人的保密信息。其实质和美国的证据开示制度中的保密程序是大体相当

的。

在本案中，深圳法院已经按照中国处理商业秘密纠纷的惯例发出了保护令，该保

护令在很大程度上反映了本法院为当事人提供的保护类型。Chen Decl.第 9-11 段和 Ex.例

如，保密信息将提供给法院（而不是直接提供给另一方当事人）并密封保存，只有律师

和技术专家（而不是当事人）可以查看。Chen Decl.第 17 段和 Ex.所谓证据开示工具的差

异同样是形式大于内容。在中国，证据开示由法院而非当事人申请和保留。Chen Decl.¶¶

16-18.

摩托罗拉完全有能力获得口头、书面和文件证据来支持其主张（或反驳 Hytera 的主张）。

**海能达的陈述**

但是可以看出摩托罗拉对此并不信任。

并且对于摩托罗拉一直质疑的海能达没有向美国法院提供基础源代码而只是提供了部分代码的问
题，海能达表示，已经在2024年1月25日，向深圳法院提供了H系列重新设计的证据，包括源代
码。因此只要摩托罗拉在2024年4月1日之前提交证据，就可以由深圳法院做出是否侵权的认定。

中。Chen Decl.¶¶ 9-10.2024 年 1 月 25 日，Hytera 向深圳法院提交了有关其 H 系列重新设

计的证据，包括基础源代码。Chen Decl.¶ 20[5].摩托罗拉被责令在 2024 年 4 月 1 日之前提

交证据，证明其指控 H 系列无线电使用了其商业秘密。Chen Decl.¶ 21.

**海能达的陈述**

但是显然，摩托罗拉还是不信任中国的法律程序，因此导致了美国法院在这一关键节点通过对海能
达发出全球禁售令的方式，迫使海能达放弃中国的诉讼。

实际上，就像海能达在陈述中所表述的那样，即使过去七年中，双方在中国的各类案件，包括专利
无效案，专利行政诉讼和侵权案，摩托罗拉在中国获得的胜诉率达到90%，也就意味着中国的法

院或是专利局，并未出现偏袒海能达的情况，反而是非常公正的。

其实，这就引发了后面，双方更有意思的一系列问题。



**扫码加入知识产权精英社区**

---

喜欢此内容的人还喜欢

苹果成功无效中国独立发明人专利
企业专利观察



---

始于摩托罗拉之争，"对讲机之王"海能达被美国全球禁售
闲醉山人



---

刚刚，平安信托回应维权事件！
信托百佬汇



# 海能达禁令仍未解除，美国法院为何能对海能达发出全球禁令？（下）

原创 黄小莺 企业专利观察 2024-04-11 23:59 北京



**作者：黄莺**

**上篇：海能达遭重罚的背后，案情远比看到的要复杂**

**中篇：海能达，摩托罗拉，谁在"无理取闹"？**

截至本周三，海能达全球禁止销售的禁令危机仍未解除。

本周一（2024年4月8日），海能达发布重大诉讼进展公告，提到**已经撤销深圳案件的起诉**，并按要求暂停销售双向无线电产品，并已向美国法院申请撤销判令。并称**近日正在美国法院持续进行听证**。海能达表示将采取各项应对措施，**争取最短时间撤销判令**。

**根据之前的分析**，美国法院此次对海能达发出最严厉的禁令惩罚，原因就是海能达试图寻求宣告中国法院裁定其修改的H系列产品不侵犯摩托罗拉的商业秘密和版权。

因此，随着海能达公告已经撤回深圳诉讼，外界一度认为这场禁令危机将会很快结束。

然而，事情进展并非想象中的那么简单。

2024年4月11日，据海外媒体infoma对本案的最新披露，截至本周三（4月10日），美国法院禁止海能达在全球销售双向无线电技术的禁令仍然有效。

周三，美国审理本案的**Pacold**法官与海能达和摩托罗拉的代表律师进行了两个小时的电话会议，并重申了她的决定。

因为自周一海能达发布公告之后，海能达从深圳法院的即时消息系统中提供信息，以表明中国的H系列案件声称三名法官组成的小组最近的口头裁决具有法律效力，但此后没有收到中国法院可以澄清此事的相关通信。**Pacold**法官认为，这封信来自深圳法院的一名书记员或助理法官，而不是审理此案的三名法官之一。（......*when Hytera Communications provided information from the Shenzhen court's instant-message system indicating that the H-Series case in China claiming that a recent oral ruling by the three-judge panel was legally effective. However, this communication came from a clerk or assistant judge with the Shenzhen court, not one of the three judges hearing the case.*）

因此，**Pacold**法官重申了她的担忧，即中国法院可能会发布一份书面裁决，破坏其所在的美国法院在此案中的管辖权。**Pacold**法官呼吁海能达询问深圳法院是否会就此事发布正式书面命令。

根据报道，有关案件的听证会在本周四上午也会进行，甚至包括周日在内，每天都会就此事举行类似的听证会。

这也就意味着，虽然截至周三，禁令尚未解除，但是不排除在本周随后几天，相关案件会出现转折。

该报道还提到，**Pacold**法官表示她并不希望制裁的持续时间超过必要时间，因此她一再指出禁令制裁的严重性。而之所以会造成这一结果，法官也指出，这是因为海能达经常不遵守法院命令（*the judge also noted that Hytera Communications often has not complied with court orders*）；在诉讼的现阶段，它根本不能相信海能达的话（*at this stage of the litigation, it simply cannot take Hytera at its word.*）

此外，在海能达发起上诉的美国联邦第七巡回法院的案件中，上诉法院也表示，禁令制裁是海能达"自食其果"（*the appeals court said the injunction sanctions are the result of "self-inflicted wounds" created by Hytera Communications.*）。

> "*鉴于海能达的行为记录，从潜在的商业秘密盗窃和版权侵权到审判前的应受制裁的行为，本案的判决后诉讼，未按命令支付版税（导致早期的藐视法庭裁决），提起了长期保密的深圳案，以及对这里有争议的禁令的回应，海能达已经表明，其向法庭提交的未经核实的陈述是不可信的。*"

> "*海能达现在面临着痛苦的强制性制裁，它躺在过去七年，尤其是过去两周为自己精心打造的床上。自我造成的伤害并不是无法弥补的伤害，不需要衡平法院给予太多纵容。*"

不难发现，海能达此次受到的美国法院最严厉的禁令制裁，背后或许还是有一些原因的。

然而上述报道的真实性，还有待证实。

不过，对于审理本案的法官做出最严厉的全球禁令这一裁决，也是一石激起千层浪，引发了巨大的社会争议。很多人不明白，为何美国一个地方法院，可以向海能达发出全球禁止销售的命

令，且海能达迅速的就遵守了禁令，甚至连中国京东、淘宝等旗舰店的产品全部下架了。

很多人的疑问是，司法主权呢？

对于这一点，就连很多国外人士，都对此提出了疑问，**"美国如何相信他们有这样的力量来阻止'世界任何地方'......"**，Steven表示，甚至怀疑其背后的"政治"因素。回帖者Dave更是补刀，尤其是**"在中国或俄罗斯，这种情况到底是怎么可执行的？"**



还有国外网友Jaeden认为**"美国政府可以命令一家中国公司停止在全球范围内销售其产品，这不是很疯狂吗？"**，并提到，**"如果情况逆转，中国政府禁止一家美国公司在全球销售其产品？"**，将会怎样？可能无法想象。



Jaeden V
Security Consulting & Problem Solving
1 天 (已编辑)

美国政府可以命令一家中国公司停止在全球范围内销售他们的产品，这不是很疯狂吗？有点反乌托邦，他们有多大的力量——如果我在海能达工作，我会很生气的。

想象一下，如果情况逆转了？中国政府禁止一家美国公司在全球销售其产品？我无法想象这会顺利结束。

查看原文 · 🌐

连《南华早报》在4月8日的一篇文章中，标题也醒目的表示"**该制裁被视为比针对华为的行动更'严厉'**"。

> 技术 / 技术趋势
>
> ## 中国对讲机制造商海能达将对美国的全球销售禁令提出上诉，该制裁被视为比针对华为的行动更"严厉"
>
> · 这家总部位于深圳的公司在提交给交易所的文件中表示，其目标是"尽快"解除禁令
>
> · 4月2日，伊利诺伊北区地方法院下令海能达停止在全球任何地方销售和分销任何包含双向无线电技术的产品

而更为离奇的是，就连本案受益一方的摩托罗拉的律师都没有想到法院会做出这样的判决。

在**infoma**对本案最新进展报道的结尾，写道：

> "摩托罗拉和海能达的律师主张对禁令和藐视法庭制裁持相反立场，看来他们基本上已经就向Pacold提起法律诉讼的时间表达成一致，以确定海能达的H系列DMR产品是否应缴纳特许权使用费。两家公司的律师都表示，他们希望在海能达必须专注于美国司法部在定于10月1日开始的审判中提起的刑事案件之前完成诉讼。"

> "Attorneys for Motorola Solutions and Hytera Communications have advocated for opposing positions regarding the injunction and contempt sanctions, it appears they have agreed largely on a schedule for a legal proceeding before Pacold to determine whether Hytera's H-Series DMR

*products should be subject to royalty fees. Lawyers for both companies indicated that they would like to complete the proceeding before Hytera Communications has to focus on the criminal case being brought by the U.S. Department of Justice in a trial that is scheduled to begin on Oct. 1."*

简言之，摩托罗拉还是一个商业为主的公司，只要法院能裁决海能达的H系列也要给它缴纳许可费，其实就可以。双方都有意愿要在今年10月1日，美国司法部启动对海能达的刑事诉讼之前，达成双方民事诉讼案件的解决。

因此，这个案例可以看出，美国三类主体，**企业（摩托罗拉）**、**法院**和**政府（司法部）**在海能达案中的诉求可谓各有不同。

摩托罗拉从商业角度考量，应该是只要确定海能达修改后的H系列也需要向其缴纳许可费，就可以，这样摩托罗拉也可以通过许可合同来对海能达的发展实现间接控制。

而美国法院则是强烈的对中国法院介入此案，认为中国法院是在争夺管辖权，表现出非常规的反应。无论原因是怎样，对其它主权国家发布超出其管辖范围的禁令，也让世界再次看清了美国的霸权几乎无处不在，是不得人心的。

最后，美国司法部对海能达的刑事诉讼，或许才是整个事件的"高潮"部分。如果有人"天真"的认为摩托罗拉和海能达之间的知识产权纠纷仅仅是法律层面的较量，不涉及政治，只能说还没有理解案件背后的真正原因。其实在这背后，是一场美国政府精心编制的应对中国科技制裁的组合拳。

只不过，海能达案恰恰被视为是证据链足以支撑美国政府赢回颜面的一个典型案例，正如摩托罗拉在提交的文件中引用汉密尔顿法官的评论 "这是我见过的最无耻的商业秘密盗窃案件之一"。而事实上，美国政府发起的诸多针对华人和中国公司窃取美国高科技企业商业秘密的起诉中，大部分案件都因为证据不足，要么撤诉，要么减轻处罚。

所以说，海能达在今年10月即将要面对的美国政府的刑事诉讼，才是美国要再次举起屠刀"杀鸡儆猴"的最终路演。

这一案例或再一次让中国企业警醒，唯有自强，真正拥有自己的技术，不要再被西方国家指点为"小偷"，堂堂正正的参与全球竞争，才是打破西方霸权最有力的回击。



**扫码加入知识产权精英社区**