1

1       IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    MOTOROLA SOLUTIONS, INC., et    ) Case No. 17 C 1973
     al.,                            )
4                                    )
                     Plaintiffs,     )
5            v.                      )
                                     )
6    HYTERA COMMUNICATIONS           )
     CORPORATION, LTD., et al.,      ) Chicago, Illinois
7                                    ) June 17, 2024
                     Defendants.     ) 2:38 p.m.
8
             TRANSCRIPT OF TELEPHONIC PROCEEDINGS - STATUS
9              BEFORE THE HONORABLE MARTHA M. PACOLD

10   APPEARANCES:

11   For the Plaintiffs:    KIRKLAND & ELLIS LLP
                            BY:  MR. ADAM R. ALPER
12                               MR. AKSHAY DEORAS
                            555 California Street, 27th Floor
13                          San Francisco, California 94104

14                          KIRKLAND & ELLIS LLP
                            BY:  MS. LESLIE M. SCHMIDT
15                          601 Lexington Avenue
                            New York, New York 10022
16
                            KIRKLAND & ELLIS LLP
17                          BY:  MR. MICHAEL W. DE VRIES
                                 MR. JUSTIN SINGH
18                               MS. N. YVONNE BEELER
                            555 Flower Street
19                          Los Angeles, California 90071

20
     Court Reporter:        KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
21                          Official Court Reporter
                            219 South Dearborn Street, Suite 2328A
22                          Chicago, Illinois  60604
                            (312) 435-5569
23                          Kathleen_Fennell@ilnd.uscourts.gov

24              * * * * * * * * * * * * * * * * * *

25              PROCEEDINGS REPORTED BY STENOTYPE
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

```
 1
     APPEARANCES:   (Continued)
 2
     For the Defendants:     STEPTOE & JOHNSON LLP
 3                           BY:  MS. LEAH M. QUADRINO
                                  MR. SCOTT RICHEY
 4                                MS. KIRSTEN BICKELMAN
                                  1330 Connecticut Avenue NW
 5                                Washington, DC 20036

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings heard telephonically:)

2           THE CLERK:  The United States District Court for the

3      Northern District of Illinois is now in session, the Honorable

4      Martha M. Pacold presiding.

02:38:26    5           17 C 1973, Motorola Solutions vs. Hytera

6      Communications.  If you can state your name for the record,

7      we'll start with plaintiffs' counsel.

8           MR. ALPER:  Yes, good afternoon, Your Honor.  This is

9      Adam Alper from Kirkland & Ellis for Motorola Solutions, and

02:38:52   10      on the line is Mike De Vries, Leslie Schmidt, Akshay Deoras,

11      Justin Singh and Yvonne Beeler.

12           THE COURT:  Good afternoon.

13           For the defense?

14           MS. QUADRINO:  Good afternoon, Your Honor.  This is

02:39:06   15      Leah Quadrino from Steptoe for Hytera, and with me is Scott

16      Richey and Kirsten Bickelman.

17           THE COURT:  Good afternoon.  We're here for a status

18      hearing.  Who would like to start with the report on the

19      status?

02:39:26   20           MS. QUADRINO:  I'd be happy to begin, Your Honor, if

21      that works for you.

22           THE COURT:  Okay.  That sounds good.  Thank you.

23           MS. QUADRINO:  Sure.

24           So we had a very productive, Hytera believes,

02:39:37   25      meet-and-confer with Motorola's counsel on Friday.  We covered

a thorough discussion of their 30(b)(6) topics and the

witnesses who we would propose to respond to them, as well as

our objections, including the topics where Hytera had objected

to producing a witness subject to wanting further discussion

with Motorola about how to perhaps narrow that topic, and I

think the parties reached some good agreements on their

understanding as to the scope of the topics that the witnesses

who are now scheduled will cover, and as well as some

follow-up answers in writing that Hytera is putting together.

I don't believe that there are any issues to present

the Court with at this time. I think we worked out the open

disputes, and we've had a good exchange over email listing

those resolutions, so I don't think there's something for the

Court to resolve right now.

I will flag that we have changed a couple of the

witnesses who will be testifying as corporate representatives

for the company just in further doing our due diligence, and I

have a new schedule overall for the next week and a half of

depositions that I can provide the Court.

We have -- first we moved -- well, first I'll say the

three that were initially scheduled for last week, the three

fact witnesses, those were Wu Xunfeng, Zuo Yinli and Yang

Jianwu. Those went forward on June 10th, June 12th and

June 14th, respectively. Yang Jianwu was no longer designated

as a corporate representative but just testified in a personal

1    capacity.

2          And then going forward, we had initially proposed

3    Yang Yang for this evening.  Motorola requested that we delay

4    that deposition until Yang Yang's documents could be produced,

02:41:26    5    the non-privileged documents, that is, and because it looks

6    like Ankura was on the cusp of being able to do that, we

7    agreed to push back that deposition, and we were able to

8    accommodate that request.

9          My understanding is that there should be documents

02:41:39    10    from Yang Yang's files produced as early as tomorrow, I

11    believe, and the deposition is now going to take place on

12    June 20th.

13          The remainder of the depositions, we have scheduled

14    now Li Weiding will take place on June 26th.  Li Jun has

02:41:57    15    agreed to testify now, and he will be testifying as a

16    corporate representative on certain topics.  His deposition

17    will go ahead on June 24th.  Li Hiahua will go ahead and

18    June 28th.  Cameron McDonald is set for June 27th, and Andy

19    Grimmett is set for July 3rd.

02:42:18    20          Motorola had asked that Hytera agree, if we're going

21    to produce him after the opening expert reports, if we would

22    agree that he would not review any of their expert reports

23    before his deposition, and we've agreed to that.  And so I

24    believe his deposition will now take place on July 3rd.

02:42:34    25          So those should be the only -- I'm sorry, there's one

1  remaining deposition that they've asked for, which is in

2  response to Topic 12, which deals with financial data.  We've

3  agreed to put up a witness for one to two hours on that topic

4  that we understand now from our discussions with them it's

02:42:52  5  fairly narrow in scope.

6  We suggested, because the calendar is now so crowded

7  for next week, that perhaps this deposition could be scheduled

8  for sometime in July.  I don't think it's a topic that impacts

9  their expert reports, so I'm hoping that it could be scheduled

02:43:06  10  for sometime in July whenever it's convenient for everyone,

11  but that's an open question to Motorola.  I don't think

12  there's a dispute on this at this time.

13  So we've made good progress on all of that.  We've

14  also made good progress on our document production and review.

02:43:24  15  I believe that there are files from Yang Yang and Li Weiding

16  that should be produced to them tomorrow.  Those are the

17  non-privileged materials I think from both emails and device

18  material and non-encrypted data.  The data that was initially

19  encrypted needs to be decrypted, and that is still ongoing for

02:43:43  20  their devices.

21  Steptoe has finished the review of the emails from

22  the first eight identified custodians.  There have been quite

23  a few emails initially tagged as privileged that required a

24  careful review, and we have completed that review and will be

02:44:00  25  rolling out the results of -- the non-privileged results of

1   that very soon if not already today.

2          I think that is -- so I believe we have addressed all

3   of the open discovery issues that Motorola has presented to

4   us.  The open issues from our perspective are the discovery

02:44:22   5   that we have served on Motorola.

6          Your Honor I think already is aware that we served

7   interrogatories and requests for documents to Motorola back on

8   May 23rd.  They've given us some limited responses to

9   Interrogatories No. 5 through 8, but they have never responded

02:44:40   10   to Interrogatories No. 1 through 4, nor have they produced any

11   documents, and those interrogatories generally dealt with

12   asking what their -- what they believe the legal standard

13   would be at issue in this dispute, really the shape of this

14   case from their perspective, and we've been promised a

02:45:00   15   response to that many times at this point.

16          We had hoped we'd be getting it last week by

17   June 10th, but that didn't happen, and Your Honor asked at the

18   last hearing that they would provide responses by today.

19          As of now, they still have not done so, so we ask

02:45:14   20   again that Motorola be ordered to respond to those

21   interrogatories.  We've also noticed depositions, a 30(b)(6)

22   deposition of Motorola, as well as four separate fact witness

23   depositions.

24          Those depositions that we named are people who served

02:45:31   25   as their -- their 30(b)(6) witnesses.  They're engineers at

1    Motorola.  They served as 30(b)(6) witnesses in the underlying

2    case, and they testified at trial.  We assume they would name

3    them for the same purpose again.

4         But the purpose of that discovery is really focused

02:45:50    5    on their understanding of what the trade secrets are that

6    they're alleging right now in this current proceeding, and

7    our -- our view, as we said many times now, is that this

8    contempt proceeding should be limited to focusing on the

9    H-Series products against the adjudicated products that are

02:46:10    10   the subject of the royalty order.

11        But based on Mr. Alper's comments during the last

12   hearing and the discussions that have been going on in the

13   very recent weeks in this hearing, it sounds very much like

14   Motorola plans to put on a full misappropriation case, in

02:46:25    15   which case we believe we need discovery covering what their

16   view of the trade secrets are, what are they?  What are the

17   elements of those trade secrets today as the technology stands

18   today?

19        So we have served deposition notices to that effect,

02:46:41    20   and we have also served document requests that mirror the same

21   topics in that deposition notice.

22        Just before this hearing, Motorola responded and let

23   us know that they object to producing this discovery.  We

24   don't yet really have full clarity as to what the scope of

02:46:57    25   those objections are.  I imagine we will hear them today, and

1  I will be prepared to respond after we hear the scope of their

2  objections.

3       Just so the record is clear, the four Motorola

4  engineers who we noticed for depositions are Jesus Corretjer,

02:47:12  5  Mark Boerger, Sanjay Karpoor and Dan Zetzl.  And, again, those

6  are engineers who testified in the underlying case.

7       I believe that concludes my update for the Court.

8  I'd be happy to answer any questions that you may have.

9       THE COURT:  Thank you.  I don't think I have any

02:47:33  10  questions, so let's please turn to Motorola.

11       MR. ALPER:  Thank you, Your Honor.  This is Adam

12  Alper.

13       And I will -- I'll proceed in the order that counsel

14  went in, and I think most of it will be pretty -- pretty

02:47:50  15  quick.

16       So in terms of the status update, we did -- we did

17  confer over of the -- kind of the follow-on issues that we had

18  coming out of the last hearing, and we agree.  Essentially all

19  of those are resolved.  There's a couple of open things, but

02:48:10  20  we don't have any reason to believe those are going to lead to

21  disputes.

22       So that is in good shape with respect to those items

23  and the document production, so forth.

24       So I think then that would allow me to shift focus to

02:48:27  25  Hytera's requests for discovery to Motorola, and I think those

1   fall into two categories.  One is the ones that were

2   outstanding as of the last hearing that we had, and then,

3   secondly, the ones that are new from Friday and Saturday after

4   the last hearing we had.

02:48:49   5   And the ones that counsel just talked about were

6   those Interrogatories Nos. 1 through 4 that Hytera served on

7   Motorola that you had -- that we had talked about last week

8   and Your Honor had picked today for a date based on our

9   proposal, and we're going to provide those today, and so they

02:49:13   10   will get those today for sure.  And that should resolve that

11   issue.

12   In terms of the documents that were -- or at least

13   the documents that were requested prior to or leading up to

14   the last hearing or through the last hearing, Hytera had sent

02:49:32   15   one request for production over our way, and it basically said

16   produce any documents you're relying on in connection with

17   your responses to the interrogatories, and I think most of the

18   interrogatories up to that point were focusing on our

19   positions on Hytera's redesign, which is largely about

02:49:56   20   Hytera's documents, but we'll, of course, be sure to produce

21   any documents that we're relying on to the extent that we

22   haven't already.  We may have, but I think, like, that's going

23   to be a complete non-issue regardless.

24   So that's really where things stand on the discovery

02:50:16   25   that had been served up to the point of the last hearing.  So

that's going well basically.  We're still on track.  No issues there.

Then that now allows us to turn to these new discovery requests.  So on Friday -- and they fall into -- I think they fall into two categories:  Deposition requests and new requests for production from Hytera.  The deposition requests, so counsel outlined them, but let me -- I just want to say a few things because I think it's important to figuring out resolution.

By the way, let me just say this.  We're happy -- given the time-sensitive nature of all of this discovery, we thought it would be good to raise this.  We did confer with Hytera over these requests, and it seems like a good thing for us to raise and then take your guidance on how you'd like to move forward in terms of resolving these issues.

So that's, I think, a mutual feeling for both parties, but let me do a little bit more outlining of what the specific issue is because I think it's pretty focused and narrow.

So counsel described this, but I'll do it just with a little bit more detail.  There are four -- they asked for the depositions of four witnesses.  Counsel gave their names.  And then they had a 30(b)(6) notice as well.  And the four witnesses are witnesses who were deposed quite extensively actually in the underlying proceeding, and all four of them

1    testified at trial.  And their -- I would say one of their

2    main focuses, because they're on the Motorola side, they're

3    all Motorola engineers, they were testifying about the nature

4    and scope of the trade secrets and their -- the fact that they

02:52:20    5    were kept confidential and so on and so forth in the

6    underlying proceeding.

7           Hytera on Friday asked for their depositions.  They

8    also had a 30(b)(6) notice that asked for a similar set of

9    things and then served on Saturday requests for production,

02:52:45    10    all of which essentially were focused -- there's a couple of

11    extra ones in the requests for production, but they're focused

12    on essentially, like, the basic elements of proving

13    misappropriation that were at issue in the underlying

14    proceeding, so the nature and scope of the trade secrets,

02:53:01    15    whether they had been publicly disclosed, whether they were

16    generally -- they are generally known, how they are used,

17    whether and how they are used in Motorola's products, and

18    things like that.  And all of that was the subject of

19    extensive discovery in the underlying proceedings.

02:53:21    20           It was the subject of key aspects of the underlying

21    trial.  I mean, they're part of our proof to make our case.

22    The jury came out our way on all of that over Hytera's

23    defenses.  They argued that the trade secrets were publicly

24    known and, you know, were generally known and were publicly

02:53:39    25    disclosed and so forth.

1    And the jury rejected that, Judge Norgle rejected

2 that, and then Hytera opted to not appeal any of those issues

3 which go to the underlying liability of -- or Hytera's

4 underlying liability in its appeal.  So those are fully

02:54:00    5 adjudicated in a final judgment on the merits.

6    So Hytera is now seeking in this contempt proceeding

7 a pretty extensive discovery on those same issues that have

8 already been fully litigated, and there's a couple of

9 reasons -- and we object to them.  We don't agree that those

02:54:21   10 should be part of this proceeding.

11    We are working hard on things that are part of this

12 proceeding, like the -- why there's contempt and putting a

13 bunch of detail together in response to Hytera's

14 interrogatories on those issues, but this is not part of this

02:54:39   15 proceeding, and there's a number of reasons for it.

16    One is those issues were decided already.  To the

17 extent that Hytera is -- well, Hytera is clearly attempting to

18 re-raise those issues here.  But Hytera, in a contempt

19 proceeding, cannot collaterally attack the order that is

02:55:03   20 leading to the contempt.

21    In other words, there's a royalty order that is based

22 on a liability finding in a verdict and a judgment, and Hytera

23 can't say, well, the royalty -- in a contempt proceeding --

24 this is just black letter law -- can't say that the order

02:55:24   25 itself is infirm because the trade secrets underlying the

order are now public. That's a classic collateral attack on an order in a contempt proceeding, and it's just not allowed by all authorities.

And you can even see it when you think about the contempt -- the elements, basic elements for contempt, like, is there an order, did they violate it, et cetera. There's nowhere in the test for contempt a question about whether the underlying order was right. That's not part of the contempt process.

And then, secondly, that's one kind of very clear reason why this discovery is directed at impermissible subject matter.

Second, they're collaterally estopped. So those issues were fully litigated to a final judgment on the merits that is not the subject of any appeal, and they can't challenge them at this point, and that also is quite clear.

Hytera told us on one of the meet-and-confers that they said, well, they think that since the trial happened, that the trade secrets have become public. And I have a couple of things to say about that.

No. 1, it's inaccurate, and Hytera hasn't provided any basis to make that suggestion. So they haven't said in any way that they have any basis that the trade secrets have become public. Of course, they haven't. Motorola has kept this stuff under lock and key for years. There hasn't been a

1    policy change.  Motorola hasn't suddenly dedicated any of

2    these trade secrets to the public.  It's all been the subject

3    of the same measures that the jury found were in place when it

4    reached its verdict of liability for Hytera.

02:57:29    5        But putting that aside, that's -- that's still not a

6    basis, a legal basis procedurally, to raise in a contempt

7    proceeding.  The contempt proceeding is whether they are

8    violating the order.  It's not whether the order itself needs

9    to be amended or modified or changed.  There are procedural

02:57:53    10   mechanisms that may be available to Hytera to challenge an

11   underlying order under the Federal Rules and, in this case,

12   challenge the royalty order, assuming that the Court would

13   have jurisdiction over those types of challenges at this

14   particular point in the procedural posture of the case.

02:58:18    15   But -- but that -- it's not something that comes up in the

16   context of this contempt proceeding.  It's just simply not,

17   and that's, you know, by all of the authorities, that's the

18   case.

19        I guess I would say a couple of things.  What counsel

02:58:36    20   just said to justify it is they said -- they kind of went back

21   to a go-to message that I think we've heard many times that

22   now we've just turned this into a full-blown misappropriation

23   proceeding, but that's incorrect.  This is a contempt

24   proceeding.  Your Honor has confirmed that time after time

02:59:01    25   after time in response to Hytera raising that argument

1    multiple times, and Your Honor has been very careful to, in

2    these many, many status hearings through a tremendous amount

3    of effort, to ensure that the proceedings have stayed focused

4    on contempt.

5        And that is the current state of play.  That is

6    absolutely where we're at.  And so Hytera, once again, saying

7    they believe that this has turned into a full-blown

8    misappropriation case is just inconsistent with where we're at

9    and the scope of discovery that Your Honor has very carefully

10   tailored to the proceedings here.

11       And I guess the last thing I'll say is this:  These

12   same four witnesses that they want to take testimony from and

13   the issues that they now want to take I guess additional

14   discovery on are -- these witnesses are intending, as we

15   understand it, are potential or will be trial witnesses in the

16   criminal proceeding that is about -- that's going to move

17   forward in October, and in those proceedings, the -- you know,

18   the issues relating to some of the things that Hytera is

19   raising here, you know, may actually be in things that are the

20   subject matter of the criminal trial.  For instance, the

21   nature and scope of the trade secrets and whether they're

22   publicly available and so forth.

23       And so it is possible that testimony that Hytera

24   takes here on those issues could be relevant to things that

25   are happening in the criminal proceeding.  That, of course,

02:59:24

02:59:45

03:00:09

03:00:35

03:00:56

1  doesn't make this discovery proper here because it's

2  irrelevant to the issues before Your Honor, and the fact that

3  Hytera may find a use for additional testimony from these

4  witnesses as they head towards trial in the criminal case

03:01:18    5  isn't a reason to allow the discovery to happen here.

6      So I think that's where we're at, Your Honor.  And

7  like I said, we're raising it at this point.  Given the

8  expedited nature of the discovery, we didn't want it to

9  linger, but we're also happy to address it further in any way

03:01:36   10  that would be helpful for you in terms of making a decision.

11      THE COURT:  Okay.  Anything to add from Hytera, I

12  guess, either on the merits of this issue or whether you -- I

13  mean, are you both requesting a ruling right now in the

14  hearing?  If so, I'm happy to give you my thoughts, but if

03:02:10   15  you -- you know, is it something where you would prefer to try

16  to put together some briefs on it, I guess, is just one

17  question up front.

18      MR. ALPER:  Your Honor, this is --

19      MS. QUADRINO:  But --

03:02:20   20      MR. ALPER:  -- Adam Alper.  We would request a

21  ruling, just given the timing of all of this, or guidance, you

22  know.  But that's I think what we're suggesting by raising it

23  here.  It seems like a pretty straightforward issue to us.

24      MS. QUADRINO:  Your Honor, if I could briefly respond

03:02:43   25  to the points Mr. Alper raised, and then we defer to the Court

1       as to whether you'd like briefs on it.  We, too, would like

2       the Court to rule on the issue and defer to the Court as to

3       whether you would find briefing to be helpful or not.

4              But I can -- I can provide some responses to the

03:02:58    5   arguments he just raised.

6              THE COURT:  Okay.

7              MS. QUADRINO:  So I'll take the reverse point first.

8              Mr. Alper noted that whether something might be

9       relevant to the criminal trial has nothing to do with whether

03:03:11   10   it's relevant here.  We very much agree.  This requested

11      discovery has nothing to do with the criminal case, not from

12      our perspective, it doesn't.  It has very much to do with the

13      current proceedings, as we believe it has changed over the

14      last few weeks.

03:03:26   15          Mr. Alper noted that the elements of misappropriation

16      were really the subject matter of these discovery requests,

17      and we agree with that.  We are getting at the elements of

18      misappropriation:  What are the trade secrets?  Are they

19      generally known?  Can they prove the elements of

03:03:42   20   misappropriation today?

21              They were fully litigated at the trial, but that

22      resolved in the jury verdict February 14th of 2020.  These

23      products were not launched until October of 2021, and now

24      we're in a contempt proceeding in the summer of 2024, and we

03:04:01   25   believe it remains Motorola's burden to establish that

1    information that was allegedly stolen in 2008 and 2009 remains

2    a trade secret today.

3        It's not relevant that it was a trade secret back in

4    2020 for purposes of looking at these newly redesigned

03:04:18    5    products that were launched after that trial ended.  Right now

6    we need to understand what trade secrets Motorola contends are

7    at stake, and can it meet that burden.

8        And Mr. Alper seems to think that the only relevant

9    question is whether Motorola has maintained the same

03:04:35    10    protections over its trade secrets that it contended it had at

11    trial.  You know, first, we shouldn't have to take his word

12    for it.  We should take discovery on that.

13        But the unique part of what makes a trade secret a

14    trade secret is that other third parties can reach their own

03:04:52    15    scientific developments and publicize that information and

16    it's no longer a trade secret.

17        So even if Motorola kept these alleged secrets under

18    lock and key for the last several years, that would have

19    nothing to do with their current status as trade secrets today

03:05:07    20    as some third party has invented the same thing.

21        And given that part of the discovery in this redesign

22    process is showing that Hytera was able to rely on information

23    from open-source sources and other third-party sources in

24    order to accomplish the redesign, that shows that this same

03:05:27    25    information is no longer necessarily a trade secret, and based

1    on his comments at the last hearing, it sounds like they

2    planned to set forth information in their expert reports and

3    possibly in their merits briefing that tries to establish on a

4    trade-secret-by-trade-secret basis how these products are

03:05:47    5    currently misappropriating Motorola's trade secrets.

6         That means we need testimony and documents and full

7    discovery on what those trade secrets are today, not things

8    that are outdated from a trial that ended four years ago.

9         And so that's what this discovery is aimed at.  Many

03:06:02    10    of the requests we limited the time frame to be February 14,

11    2020 to the present for that reason, believing that even

12    though the discovery ended probably in 2019 in that case, they

13    had an ongoing obligation, as one always does in discovery, to

14    update their discovery throughout the trial.  So we gave them

03:06:19    15    the benefit of the doubt that they did that, and we timed a

16    lot of these requests to be February 2020 to the present.

17         Some of them go back farther in time certainly.  We

18    can discuss with Motorola if there are reasonable time limits

19    that we can put on this, but we do think a thorough

03:06:36    20    understanding of what they're alleging as a trade secret in

21    this contempt proceeding now as to this newly redesigned

22    product is very important.

23         This is not an issue of us trying to collaterally

24    attack Judge Norgle's royalty order.  This is trying to

03:06:50    25    understand whether newly redesigned products that aren't

1    subject to that order can actually be found to be

2    misappropriating currently today Motorola's trade secrets.

3            And I'll note that Mr. Alper didn't provide any legal

4    authority despite saying the case law was uniformly clear on

03:07:06    5    this.  In fact, the statute, the Defense Trade Secrets Act,

6    1836 Section (b) subpart (3) notes that in exceptional

7    circumstances that renders an injunction inequitable that

8    conditions future use of the trade secret upon payment of a

9    reasonable royalty for no longer than the period of time for

03:07:31    10   which such use could have been prohibited.

11           So if it's no longer a trade secret, the use of it

12   can't be prohibited, and it can't be subject to the royalty

13   anymore.

14           So I don't think it's a foregone conclusion that we

03:07:44    15   can't question that at all.  I think it's Motorola's

16   unequivocal burden to establish that these trade secrets are

17   trade secrets today if they want to throw in products that are

18   not part of the royalty order and claim that they should be

19   covered by it in a contempt proceeding.

03:08:00    20           Again, Your Honor, we would be happy to provide a

21   brief.  I don't know that that's necessary.  If it would be

22   helpful to Your Honor, I can further describe the topics that

23   we have put forward in these requests, but I agree with

24   Mr. Alper's general summary as to what they -- what their

03:08:17    25   purpose is and what they're going towards.  They're going

towards the elements of misappropriation and understanding

exactly what trade secrets Motorola contends are at issue in

this dispute, in this contempt proceeding, and we would ask

that Your Honor rule on this issue because we agree that time

is of the essence.

MR. ALPER:  Your Honor, just -- may I just say a

couple things very briefly?  I'll keep them short.

THE COURT:  Yes.  Thanks.

MR. ALPER:  So, of course, we're happy to -- I didn't

mean to suggest otherwise, we're happy to provide any briefing

or material that Your Honor would like, but this -- I think

the issue is actually -- I think we'd agree that the issue is

pretty straightforward.

I think that Hytera's asking for a tremendous amount

of discovery here.  They want four years' worth of information

about, you know, the use of the trade secrets since the last

discovery or something along those lines.

There's a huge burden, of course, associated with

that.  There is certainly, you know, a timing element that is

going to come into play there in order to provide them what

they're asking for, and -- and, you know, so what I guess I'm

trying to say is the discovery that they're asking for could

have a material impact on how we go about the next period

here.

Putting that all aside, it doesn't matter because

1   everything that Hytera is saying is an attack -- and I think

2   they agree with this -- it's an attack on the underlying

3   order, and that is not permitted in this contempt proceeding.

4   It just simply isn't for multiple reasons that I gave.

03:10:04   5        There are mechanisms under the Federal Rules,

6   regardless of what the DTSA says, and we don't agree with that

7   reading of it, but regardless of what the DTSA says, there's

8   an order in this case, and the Federal Rules govern those

9   orders, and there are mechanisms, for instance, under Rule 60,

03:10:22   10   to seek modification of an underlying order.

11        And Hytera has not -- putting aside whether Hytera

12   has not done that or has, they haven't, it's not appropriate

13   in contempt proceedings to do that, and there's -- that's the

14   authority in the Seventh Circuit, it's the authority

03:10:42   15   everywhere else, and I'm happy to provide Your Honor citation

16   to a case on that.  It's, you know, easy enough for me to do

17   here on this hearing, but it's also a pretty basic, you know,

18   concept in the law.

19        And so I think -- and Hytera, I think there's a

03:11:01   20   couple of things that are very important here that make the

21   issues pretty straightforward.

22        One, Hytera is not -- they don't disagree.  It's not

23   like they've come to the table and said, no, we do get to

24   challenge the underlying order, we do get to challenge whether

03:11:16   25   the trade secrets are no longer secret in a case of contempt,

1    or provided for that matter any evidence that the trade

2    secrets have become public.

3            This is a massive fishing expedition to boot, in

4    addition to one that is outside the scope of this proceeding

03:11:39    5    and one which they are collaterally estopped from challenging.

6            And so at the end of the day, from our perspective,

7    although, you know, we hear from Hytera theories, we don't see

8    any legal basis or facts, and that leaves us with baseless

9    discovery requests.

03:12:00    10            So I think that's what I would say on those.

11            The one other thing I will say is in our -- counsel

12    said we don't know what trade secrets we're dealing with here,

13    and I want to put that one to bed because I think that's a

14    slightly separate issue from challenging the identification of

03:12:18    15    the trade secrets, challenging the things that were already

16    extensively challenged and vetted in the underlying

17    proceeding, like public disclosure and generally known and so

18    forth like that.

19            The trade secrets are very well known.  They were

03:12:33    20    provided in great -- they were defined in great detail in the

21    underlying proceeding.  It was the subject of a tremendous

22    amount of work before both Judge Norgle and Judge Cole, and

23    then they were presented over lengthy testimony at the trial,

24    and all of that was sustained.

03:12:57    25            So that is there.  In our interrogatory response that

we are providing today, for the avoidance of doubt, we are

going to provide the same identification of the trade secrets

that we provided previously by way of background so there's no

mistaking it, and that is not intended to change anything from

what was in -- what was happening in the underlying

proceedings.  But that will resolve any question in Hytera's

mind about which of the trade secrets we're talking about.

So I think that that one is a special thing that I

just wanted to speak to specifically in addition to the

problems with the discovery going to issues that were already

decided.

Thank you, Your Honor.

MS. QUADRINO:  Your Honor, if I might just briefly

respond?

THE COURT:  Sure.

MS. QUADRINO:  Thank you.

So I'll note that this sounds a lot like what

Motorola argued many years before, back in 2022, when it first

sought to add the H-Series to the royalty order, and Judge

Norgle has noted that it was inappropriate for Motorola to

attempt to shift the burden to Hytera to disprove whether its

H-Series products were, in fact, subject to -- were, in fact,

misappropriating Motorola's trade secrets.

It's Motorola's burden here, and that was in docket

1338.  It's Motorola's burden here to establish the trade

1    secrets that are at issue and how they are allegedly being

2    misappropriated in the adjudicated -- in the H-Series products

3    if that's a legal issue that Motorola is teeing up for the

4    Court to decide.

03:14:49    5    They still haven't told us whether it is, and I'll

6    note that it's nice to hear on June 16th or June 17th from

7    Mr. Alper that they are at last going to respond to our

8    interrogatories and let us know which trade secrets are at

9    issue, but he still hasn't said what the legal standard is

03:15:05   10    that he plans to apply, and that legal standard would clarify

11    right now whether or not the discovery we're asking for is

12    relevant to this proceeding.

13    And if part of the questions that the Court is going

14    to evaluate when it looks at the merits of this includes

03:15:19   15    misappropriation, current misappropriation, misappropriation

16    by products that weren't launched until October 2021, then the

17    existence of the trade secrets that are allegedly being

18    misappropriated today must be proven as of today.

19    And I'm sure Your Honor understands that our

03:15:38   20    sympathies as to the discovery burdens that Mr. Alper just

21    referenced are pretty slim in light of what Hytera has

22    accomplished over the last few weeks and the amount of work

23    that all of us have done to try and make that happen.

24    So I know it's a lot.  I know that these issues are a

03:15:54   25    lot.  It's been an enormous amount of work for our firm and

1   for Hytera.  But we are entitled to understand what is at

2   stake here, and it is Motorola's burden to prove that those

3   trade secrets are, in fact, trade secrets now, or there can't

4   be any misappropriation if they're no longer trade secrets.

03:16:12   5   And shifting the burden to Hytera to disprove that is entirely

6   inappropriate, and there's no authority for it.

7        I'd also note that a lot of Mr. Alper's arguments

8   just now were focused on -- on contending that we're trying to

9   collaterally attack the royalty order.  That's not at all what

03:16:34   10   we're doing.  I didn't suggest that at all in my statements.

11        What we're trying to do is hold Motorola to its

12   burden in this proceeding as we have gleaned they plan to tee

13   up this issue for the Court to decide.  We don't think it's

14   appropriate for the Court to reach this issue.  We don't think

03:16:52   15   it's appropriate in the contempt proceeding.

16        I won't belabor the Court with what we do think is

17   appropriate because we've said it a lot, but we don't think

18   that that misappropriation question is something that should

19   be at stake, but Motorola has failed to clarify that question.

03:17:06   20   He did not even clarify it just now in his comments.  It might

21   help if he would, but he hasn't, and so that's why we are

22   where we are today.

23        Thank you, Your Honor.

24        THE COURT:  Okay.  I mean, I -- there is a

03:17:24   25   distinction between a contempt proceeding, which is -- I mean,

03:17:48

1    if you go back, if you go back and look at the elements of a

2    contempt proceeding, I mean, I'm just going back to look, for

3    example, in my order from August 26, 2023.  This was in the

4    prior contempt proceeding last year, but it's quoting or it's

5    just citing the general civil contempt standard, and in this

6    order it's citing the Seventh Circuit's *SEC v. Hyatt* case, 621

7    F.3d 687, 692 (7th Cir. 2010).

8         And so it's saying, "A party seeking to hold a

9    deponent in civil contempt must make four showings by clear

03:18:07

10   and convincing evidence:  1, a court order that sets forth an

11   unambiguous command; 2, the alleged contemnor violated that

12   command; 3, the violation was significant, meaning that the

13   alleged contemnor did not substantially comply with the order;

14   and, 4, the alleged contemnor did not make a reasonable and

03:18:27

15   diligent effort to comply."

16        So, I mean, that is the general civil contempt

17   standard, and it is focused on whether parties obeyed an

18   existing court order.  It is not about seeking modification of

19   an existing court order.  It is assessing whether or not there

03:18:52

20   is compliance with that order.

21        So -- and I agree, although I think that it would

22   require more briefing, and -- I guess my initial inclination,

23   let me just put it that way, without having seen any briefing

24   on the circumstances under which a party can seek modification

03:19:26

25   of an existing order, my initial inclination is that, you

1    know, there has to be ways for a party to seek modification if

2    they -- if they want, particularly if they think there's a

3    basis for modification, particularly where the order is an

4    injunction and it's a form of equitable prospective relief.

03:19:52    5          So, I mean, there's also a distinction between

6    retrospective relief, where someone's been ordered to pay

7    damages retrospectively, so there would be, you know, a set

8    of -- there would be ways in which you could attempt to attack

9    that sort of judgment, and then there are also prospective

03:20:17    10    injunctive orders, injunctions, and that I'm sure there's

11    rules and case law on when a party can seek modification of an

12    injunction since it has prospective relief.

13          I mean, I recall seeing at different points in this

14    case, you know, cases where people are petitioning for a

03:20:43    15    modification to a consent decree, for example.  So that has to

16    be available.  I mean, there's got to be -- again, I haven't

17    spent time researching that specific issue, what are the

18    circumstances where that's permitted, but my instinct is that

19    that has to be available for a decree or an injunction that's

03:21:12    20    ordering someone to continue doing something, in this instance

21    paying royalties on -- paying royalties.  So -- or it could be

22    any other form of prospective injunctive relief.  There's got

23    to be mechanisms for addressing that.

24          But that is not what the contempt proceeding is.  The

03:21:34    25    contempt proceeding is about assessing whether there is

1    compliance with an existing court order.

2         So my -- based on just the arguments that you've

3    presented here today, I -- it sounds to me like issues -- all

4    these issues about what are the trade secrets, do they remain

03:22:03    5    trade secrets today, those sound like -- it actually doesn't

6    sound like it's disputed, that those are issues that were

7    adjudicated, they were presented to the jury, they -- and the

8    jury found in favor of Motorola, and Hytera did not challenge

9    the liability aspect.  It's just -- it's the damages and

03:22:30    10    relief that is the subject of the appeal.

11         So those issues to me just, again, hearing this on

12    the fly here in the hearing today, they sound to me like

13    issues that get at the underlying liability in the criminal

14    trial.  That liability is -- well, the royalty order is a form

03:23:01    15    of relief that was awarded for -- for that finding of

16    liability, and I understand there was a lot of process before

17    Judge Norgle, as I think is common in trade secret cases about

18    how -- how actually to award appropriate relief and what

19    should the relief look like.

03:23:24    20         And so I think that's a long way of saying it does

21    sound like these are liability issues.  They are -- they were

22    decided.  To the extent that Hytera wants to seek

23    modifications to the existing royalty order, maybe -- that may

24    very well be an available option or a process that Hytera

03:23:55    25    could seek -- could in theory seek to invoke under the rules

1    because it would -- like I said, I would be very surprised if

2    there is actually no mechanism for someone who's subject to an

3    ongoing prospective injunction for that person or entity to

4    seek relief or modifications, that sounds very implausible

03:24:16    5    that that mechanism would not exist.  It sounds like it kind

6    of has to exist.

7         But, again, this is not what the contempt proceeding

8    is.  The contempt proceeding is about, okay, we have an

9    existing court order.  Is there compliance?

03:24:33    10         So to me, it does sound like those issues are

11    different, and on the basis of what you've presented here

12    today, I would not be inclined to allow that discovery.  I --

13    you know, maybe when you have received the contention

14    interrogatory responses, if you think it changes your view,

03:24:57    15    you could raise this again.  I could take a look at it then.

16         Maybe if you want to investigate more or do further

17    research into, you know, what's the process for seeking a

18    modification to the royalty order, you could investigate that,

19    and, you know, present me with any research you might find in

03:25:19    20    that regard.  But on the basis of your arguments today, that's

21    my -- I guess that's my assessment of it, just listening to

22    your arguments in the hearing.

23         MS. QUADRINO:  Your Honor, if I might clarify a point

24    to make sure that we're all on the same page.

03:25:40    25         Counsel did repeatedly say that we're trying to seek

1    modification of the order.  We're not.  It is our position

2    that the H-Series products are not part of that order, so

3    we're not seeking to modify that order.  We don't think the

4    H-Series products are part of it at all.

03:25:58

5            They didn't exist at the time of the trial that led

6    to the jury's verdict that covered the adjudicated products

7    that are then listed in the royalty order, and because they

8    weren't adjudicated, Judge Norgle excluded them from the

9    royalty order, expressly excluded them.

03:26:15

10           Motorola asked that they be added.   They asked for a

11   really broad definition of covered products in the briefing

12   and expressly asked that the H-Series get added, and he

13   expressly said they were not part of it.  Full stop.  They're

14   not a part of it.  So we're not trying to modify that order at

03:26:30

15   all.

16           What we're trying to do is respond to the legal

17   issues that we think have been teed up over the course of

18   these hearings as we're understanding what Motorola is going

19   to present in its expert reports and in its merits briefing,

03:26:41

20   not that it's overtly said this, but it's hinted at it enough

21   that it appears to be leaning very strongly towards making a

22   misappropriation claim.

23           And if it plans to make a misappropriation claim, a

24   current one about products that didn't even exist at the time

03:26:57

25   of the trial, then they need to prove the existence of the

1    trade secrets today.  We can't go back in time and rely on a

2    record that's four years old about technology that was

3    allegedly stolen back in 2008, 2009.  It defies credulity a

4    little bit to assume that technology that was done in 2008,

03:27:15    5    2009 really is universally protected in 2024 in the same way

6    that they believe it was back then as a trade secret.

7         The fact is that a lot is publicly known now, and

8    it's Motorola's burden, if it's teeing up this legal issue,

9    which, again, it would be nice to know if it was.  But if it's

03:27:31    10    teeing up this issue for the Court to decide, we believe it is

11    their burden to establish the elements of a trade secret today

12    with respect to the trade secrets it thinks the H-Series are

13    allegedly misappropriating today.

14         That needs to be part of this proceeding.  And so we

03:27:47    15    don't believe that attempting to modify the order is something

16    that anyone is putting on the table here, so I don't know that

17    Your Honor needs further briefing on it.  If you would like

18    further briefing, we would be happy to do so.

19         However, at this time, I would move to compel

03:28:03    20    Motorola to answer the discovery that we have served on them.

21    It is, for clarity, our second set of requests for the

22    production of documents to Motorola, as well as our 30(b)(6)

23    notice and our individual fact witness deposition notices that

24    I identified earlier.  We would like all of that discovery

03:28:23    25    responded to, and we would move to compel at this time orally

34

1    on the record that Your Honor order them to do so.

2          THE COURT:  Okay.  I may ask for just a response as

3    to those specific items of discovery just to confirm that all

4    of those are part of the issues that you've been arguing on

03:28:49    5    the hearing today.

6          But one other thought I just -- so the statute that

7    you cited earlier, 18 U.S.C. 1836 -- is it (b)(3)?  So it's

8    (b)(3), I believe, that's -- that's the provision on remedies,

9    and I think the portion that you were citing is

03:29:22    10    (b)(3)(A)(iii).  So that part is saying, if you start off with

11    (b)(3), it says:  "Remedies.  In a civil action brought under

12    this subsection with respect to the misappropriation of a

13    trade secret, a court may:  (A) grant an injunction," and then

14    "(i) to prevent any actual or threatened misappropriation

03:29:53    15    described in paragraph 1 on such terms as the court deems

16    reasonable, provided the order does not," and then it goes

17    into some exceptions.  "(ii) if determined appropriate by the

18    court requiring affirmative actions to be taken to protect the

19    trade secret, and (iii) in exceptional circumstances that

03:30:12    20    render an injunction inequitable that conditions future use of

21    the trade secret upon payment of a reasonable royalty for no

22    longer than the period of time for which such use could have

23    been prohibited."

24          And so it's that last section, (iii), that I believe

03:30:27    25    you quoted, and it looks like what this is saying, this

1   statute -- and, again, this is just on the fly; I've not heard

2   or read about this until this hearing -- but from a quick

3   glance at it just now, it looks like this is a statute that's

4   explaining or addressing when -- this is getting at all the

03:30:54    5   issues Judge Norgle was addressing in arriving at the royalty

6   order.

7           So should you grant an injunction versus a royalty,

8   and if you are going to grant a reasonable royalty, then it

9   should be for no longer than the period of time for which such

03:31:16    10   use could have been prohibited.

11          So it's talking about how do you design the relief

12   that comes out of, that stems from the finding on the merits

13   in the underlying misappropriation case?  That's what this

14   entire (b)(3) is about, (b)(3)(A)(i) through (iii).

03:31:36    15          And so this is talking about everything that was

16   before Judge Norgle.  I do not see in this statute anything

17   about how -- how to -- you know, it doesn't govern a contempt

18   proceeding.

19          The contempt proceeding is, okay, there has been a

03:31:55    20   royalty order that came out of the underlying proceeding.  Has

21   there been compliance with that order?  And the issue that

22   that little (iii) is saying, payment of a reasonable royalty

23   for no longer than the period of time for which such use could

24   have been prohibited, again, I don't -- I don't know what kind

03:32:16    25   of case law there is interpreting that, but say that, just

1    hypothetically, if that's talking about trying to condition

2    the length of a royalty order on the length of time that a

3    trade secret might be -- might retain trade secret protection,

4    then that's the sort of thing that should have been raised

03:32:36    5    before Judge Norgle in the underlying design of the royalty

6    order.

7         That's not something -- if you're trying to seek --

8    if you're trying to now argue, well, the royalty order was,

9    like, incorrectly -- was indefinite, it should have had a time

03:32:58    10   period attached to it because the trade secrets, you know,

11   have expired at this point or they're no longer protected,

12   then that just sure looks to me, because that's in this

13   statute that's talking about how to design a royalty order,

14   that just sure looks to me like something that was -- that's

03:33:18    15   before Judge Norgle in designing the royalty order.

16        That's not something I -- that would be a

17   modification of the royalty order that Judge Norgle did after

18   extensive briefing by the parties coming out of the underlying

19   merits case.

03:33:34    20        So, I mean, that's the kind of issue where I hesitate

21   to get into all this because -- or to allow this discovery

22   because I'm hearing about these issues for the first time on

23   the phone today, and when I look up on the fly just one cite,

24   it does not look like it is apposite to the contempt

03:34:02    25   proceeding.

37

1      But as I said, if you get contention interrogatory

2  responses from Motorola that you believe change this, then,

3  you know, you can -- you can raise that again.  I'll take

4  another look at it.  I'm happy to do so.

03:34:43    5      Okay.  So let's come back to the issue of which --

6  are you on the same page as to which requests for production

7  of documents and deposition notices are part of the dispute

8  we've been talking about today?

9      MS. QUADRINO:  My understanding, Your Honor, is that

03:35:17   10  Motorola is objecting to all of our document requests from our

11  second set of requests and all of our deposition notices, fact

12  witness and corporate representative notices, and we have no

13  idea what they plan to do in response to Interrogatories 1

14  through 4 or the first request for production of documents,

03:35:36   15  which is related to those interrogatories because they have

16  not served us with their responses and objections to them.

17      So I don't know whether those are part of Motorola's

18  current position about the scope of appropriate discovery.

19      MR. ALPER:  So, Your Honor, this is Adam Alper, just

03:35:56   20  to hit that question.

21      So, yes, that is correct.  We are objecting to -- we

22  are talking about the same scope of discovery.  So the four

23  30(b) -- Rule 30(b)(1) deposition notices, the corresponding

24  30(b)(6) notice, those came in on Friday, and then the second

03:36:19   25  set of requests for production, which came in on Saturday,

1  which are focused on the subject matter that we have been

2  talking about on this hearing.

3  THE COURT: Okay. Well, I guess at this point, I

4  don't know that I have anything further on that issue. I

5  mean, I think I've -- I've given you the reactions that I have

6  at this point.

7  If, as I said, there's further developments, and you

8  would like to tee it up again, you know, just let me know.

9  MS. QUADRINO: Your Honor, this is Leah Quadrino, as

10 just one clarification.

11 Your Honor noted that that provision of the statute

12 that I cited did not appear to relate to contempt proceedings,

13 and we would agree to the extent that we believe that the

14 contempt proceedings should be about enforcement of Judge

15 Norgle's royalty order, which includes enforcement of the

16 products that are subject to that order.

17 And I think that's where this disconnect is coming,

18 and we cited this provision of the statute because if we are

19 looking at adding these new products that were not even around

20 during the underlying civil trial, then we believe it is

21 appropriate to look at what the Court's authority is to issue

22 a reasonable royalty as a remedy. And the scope of the

23 Court's authority as outlined by the federal statute is tied

24 to whether there is, in fact, a trade secret that's worthy of

25 protection.

1        And that's why, if this contempt proceeding is going

2   to answer the question of current misappropriation in

3   addressing the issue of contempt, which to be clear we don't

4   think it necessarily should because it should just be about

03:38:14    5   contempt of the royalty order as on the face of that order,

6   but if it goes into the question of current misappropriation,

7   then it is appropriate to look at what the authority is to

8   order a remedy tied to a product that we don't believe

9   misappropriates any current trade secrets.

03:38:32   10        And that's why we pointed to this statute, just to

11   clarify where that argument was coming from.

12        As another point, Your Honor, based on Your Honor's

13   position just now, it sounds as though you are denying our

14   motion to compel, and I would just seek clarity for the record

03:38:51   15   whether Your Honor is making a ruling on that at this time.

16        THE COURT:  Yes, I am denying it.  I mean -- and I

17   guess that's why I was asking whether there are other issues

18   that are disputes between the parties, or is that -- is what

19   we've talked about and the arguments that you've made, is

03:39:16   20   that, I guess, the entire -- is that the entire dispute as to

21   these outstanding discovery requests that are the subject of

22   the motion to compel?

23        And since it sounds like there aren't any further

24   issues, there's not, for example, you know, disputes as to a

03:39:33   25   subset of those on a particular point that's different from

1  what we've already talked about, then, yes, I'm denying the

2  motion to compel for the reasons that I've discussed.

3          MS. QUADRINO:  Understood, Your Honor.  Thank you.

4          THE COURT:  Okay.

03:40:07    5          All right.  Well, is there anything further we should

6  discuss?

7          MR. ALPER:  Your Honor, this is Adam Alper for

8  Motorola.

9          I don't think so.  We'll, as I said earlier, just to

03:40:19   10  be -- to confirm it once again, we're going to provide those

11  interrogatory responses today, and -- but other than that, I

12  don't have anything else.

13          MS. QUADRINO:  Nothing further on our end either,

14  Your Honor.

03:40:35   15          THE COURT:  Okay.  Well, does anyone see a need to

16  set another hearing at this point, or do you want to reach out

17  when you need another hearing?  I guess what's your -- what

18  are your thoughts on that?

19          MR. ALPER:  This is Adam Alper.

03:40:59   20          I think actually we could at this point proceed

21  without another hearing prescheduled.  And, of course, we know

22  how to reach out, and Your Honor has made yourself so very

23  available, so it's easy enough for us to contact, you know,

24  the Court and ask for a time if the need arises.  But just

03:41:22   25  seeing where the trajectory has been going, I think that we

41

1    could probably just leave it open right now.

2            MS. QUADRINO:  Your Honor, we agree.  We do not

3    believe there's a need to pre-set another hearing at this

4    time, and we would be happy to reach out to the Court if the

03:41:39    5    need arises.

6            THE COURT:  Okay.  Well, that sounds good, and I -- I

7    am happy to take -- to set another one promptly if you see a

8    need for one, so please don't hesitate to reach out if -- if

9    you need anything.

03:42:03   10            All right.  Thanks everybody.

11            MS. QUADRINO:  Thank you, Your Honor.

12            MR. ALPER:  Thank you, Your Honor.

13            THE COURT:  All right.  Take care.  Bye.

14            MR. ALPER:  Bye-bye.

15        (Concluded at 3:42 p.m.)

16                          *   *   *   *   *

17        I certify that the foregoing is a correct transcript from

18    the record of proceedings in the above-entitled matter.

19    */s/Kathleen M. Fennell*           *June 17, 2024*

20    _____        _____
      Kathleen M. Fennell                     Date
21    Official Court Reporter

22

23

24

25