**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MOTOROLA SOLUTIONS, INC., and MOTOROLA SOLUTIONS MALAYSIA SDN. BHD., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 1:17-cv-01973 |
| v. | ) ) | Honorable Martha M. Pacold |
| HYTERA COMMUNICATIONS CORPORATION LTD., | ) ) ) | **PUBLIC VERSION - REDACTED** |
| Defendant. | ) ) ) ) ) ) | |

**PLAINTIFFS' MOTION TO HOLD HYTERA IN CONTEMPT
FOR VIOLATING THE COURT'S CITATION**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ......................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND..............................................................3

       A.     Hytera's Obligations Under The Affirmed Judgment, Royalty Order, Citation, And Court Orders Regarding The Citation ................................3

       B.     Hytera Has Previously Concealed Its Asset Sales to Avoid Paying Motorola......................................................................................................4

       C.     Hytera Sold Its Wholly-Owned Subsidiary And Used $19M In Sale Proceeds To Pay Other Creditors Without Court Notice Or Approval .................5

III.   HYTERA SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE CITATION ORDER IN MULTIPLE WAYS .......................................................8

       A.     The Citation Order Imposes Unambiguous Transfer Restrictions And Discovery Obligations .............................................................................8

       B.     Hytera Violated the Citation's Transfer Restrictions By Its Sale Of Teltronic, Use Of The Sale Proceeds, And Failure To Timely Provide Discovery ................................................................................................10

       C.     Hytera's Actions Are All Significant Citation Violations ....................................12

       D.     Hytera Was Not Reasonable or Diligent in Complying with the Citation............13

IV.   THE COURT SHOULD ORDER SEVERAL SANCTIONS .........................................13

V.    CONCLUSION.................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Clay Fin. LLC v. Mandell,*
  2020 WL 13608316 ............................................................................. *passim*

*NHC LLC v. Centaur Constr. Co.,*
  2025 WL 1547264 (N.D. Ill. May 30, 2025) ............................................. *passim*

*Radio One, Inc., v. Direct Media Power, Inc.,*
  2018 WL 4685470 (N.D. Ill. Sep. 28, 2018) ........................................... 12

*SEC v. Hyatt,*
  621 F.3d 687 (7th Cir. 2010) ...................................................................... 8

*Shales v. T. Manning Concrete, Inc.,*
  847 F. Supp. 2d 1102 (N.D. Ill. 2012) ........................................................ 9

*Voso v. Ewton,*
  2017 WL 2653143 (N.D. Ill. June 20, 2017) .............................................. 9

**Statutes**

735 ILCS 5/2–1001 ................................................................................... 9

735 ILCS 5/2-1402 ................................................................................. 9, 10

18 U.S.C. § 402 ......................................................................................... 14

**Rules**

Fed. R. Civ. P. 62(a) ................................................................................... 4

Fed. R. Civ. P. 69(a)(1) .............................................................................. 9

Illinois Supreme Court Rule 277 ............................................................... 9

**\*All emphasis added unless stated otherwise.**

## I.      INTRODUCTION

For over five years, Hytera Communications Corp. Ltd. ("Hytera") has deployed numerous tactics to avoid and delay paying Motorola the hundreds-of-millions of dollars Hytera owes Motorola on the judgement for Hytera's fully adjudicated theft. Hytera's recent sale of a subsidiary and stated transfer of $19 million of the proceeds to banks in China, without notice to or permission from the Court or Motorola, continues that trend. Hytera also continues blatantly violating this Court's orders, as has been well-documented by this Court and the Seventh Circuit. Dkt. 1461 (Royalty Order violation); Dkt. 1520 (Anti-Suit Injunction); Dkt. 1553 at 7 (7th Cir. Anti-Suit Injunction Order); Dkt. 1782 at 9 (7th Cir. Opinion: "Hytera has continued its gamesmanship and deception.").[1] Hytera's actions clearly violated the transfer restrictions and ongoing discovery obligations of the Court's citation (Dkts. 1005 and 1021-2 ("Citation")) in multiple ways.

*First*, Hytera sold off yet another wholly-owned subsidiary, Teltronic, S.A.U. ("Teltronic"), without notice to or permission from this Court or Motorola. Hytera admitted that the subsidiary was its "asset"; Hytera's board of directors and supervisory board specifically approved the sale; Hytera executed the Share Purchase Agreement governing the sale; and Hytera also admittedly received the $88 million in sale proceeds. *Second*, Hytera says it used $19 million of the sale proceeds (which it concedes were subject to the Court's transfer restrictions) to pay down other Hytera debts rather than to satisfy Motorola's outstanding judgment, again without notice or approval. And while Hytera has claimed that "we can't get the 19 million back from [its two banks]," Hytera has produced no evidence showing any attempt to do so. Further, Hytera admitted it was on the verge of paying an additional $37 million to *other* creditors until that plan was

---

[1]      Hytera also continues to sell H-Series products without paying royalties, further violating the Court's Royalty Order, which is the subject of another currently-pending Motorola motion for contempt (Dkt. 1679).

thwarted by the Court's Temporary Restraining Order (Dkt. 1878) based on Motorola's Emergency Motion (Dkt. 1869) filed shortly after Motorola became aware of the sale through public sources. ***Third***, Hytera failed to comply with its ongoing obligations under the Citation to provide Motorola with discovery that would have alerted Motorola to the Teltronic sale and Hytera's expected receipt and distribution of the sale proceeds, which would have allowed Motorola to seek the Court's assistance before Hytera paid the $19 million to other creditors.

The events revealed though these proceedings—including through discovery finally provided by Hytera last week—confirm that Hytera has not learned its lesson and continues to willfully disregard this Court's Orders. Hytera signed the sale agreement on █████████, and received all of the sale proceeds over four transactions on ███████████████. Immediately upon learning of the sale from public press releases, on July 23, Motorola asked Hytera to identify the dates and amounts of all expected payments it would receive from the sale, explained the sale violated the Court's Citation, and indicated Motorola may raise the issue with the Court depending on Hytera's responses. ***Despite having the $88 million sale proceeds in hand at the time of Motorola's email***, Hytera responded the next day that it would answer "next week." Ex. 1 at 4. Then, Hytera immediately began to dissipate the sale proceeds, paying two banks $19 million in transactions that occurred over the ████ days after Motorola raised the issue with Hytera, on ████████. Hytera's blatant violation of the Court's Citation led to Motorola losing at least $19 million that Hytera obtained and paid to other creditors, which Hytera claims without any evidentiary support it cannot recover. Those $19M in bank payments were clearly for Hytera's own benefit, at Motorola's cost, and has now been confirmed, none were necessary. Dkt. 1892 at 2 (Hytera is "confident that it will meet all upcoming loan repayments and will not default").

Hytera's acts of civil contempt merit remedial and coercive sanctions, in line with those

granted by this Court and this District for similar willful violations of court orders. Hytera should be ordered to provide discovery concerning all possible efforts to take back the $19 million paid to its banks, turn over an additional $19 million to Motorola regardless (in addition to the amounts that Hytera has repeatedly represented it plans to pay Motorola this year towards the Judgment), pay Motorola's reasonable fees and costs for Motorola's judgment collection efforts relating to the Teltronic sale, and submit monthly reports on all of Hytera's actual and expected significant financial transactions until the Judgment is completely satisfied so that this never happens again.[2]

## II.    RELEVANT FACTUAL BACKGROUND

The history of this case is detailed in Motorola's prior contempt motions (Dkts. 1361, 1386, 1869) and Renewed Motion for Turnover (Dkt. 1803). Facts directly relevant to this motion follow.

### A.    Hytera's Obligations Under The Affirmed Judgment, Royalty Order, Citation, And Court Orders Regarding The Citation

Following post-trial briefing, Hytera's total judgment debt was $631.7 million. Hytera failed to post an appeal bond (Dkt. 1461 at 16) and bankrupted its U.S. subsidiaries on May 26, 2020, the day Motorola could start enforcing the Judgment. Dkt. 974. On July 2, 2024, the Seventh Circuit affirmed approximately $489 million of the judgment debt for DTSA damages, and remanded the copyright damages, which could add another $14.6 million.  Dkts. 1782; 1820 at 25.

Motorola moved for a permanent injunction on April 2, 2020. Dkt. 961. Hytera convinced the Court (Judge Norgle) not to issue a permanent injunction by promising to pay an ongoing royalty. Dkt. 986 at 21-22; Dkt. 1240 at 11, 13. Judge Norgle ordered Hytera to pay royalties on its products that incorporate technology stolen from Motorola (Dkts. 1348, 1349), and Hytera

---

[2]    In response to the Court's question at the August 8, 2025 hearing, the issues in this Motion overlap with issues in Motorola's Renewed Motion for Turnover, including Hytera's violation of the Citation's transfer restrictions by selling subsidiaries and absorbing the proceeds for its own benefit. Dkt. 1803. Motorola respectfully submits that this Motion can be addressed in parallel with the renewed turnover motion at the October 14-15 hearing.

acknowledged that "[i]f Hytera fails to pay royalties following the Court's determination of the reasonable royalty amount, Motorola could seek relief at that point." Dkt. 1271 at 6.

On June 30, 2020, after the automatic stay of execution under Fed. R. Civ. P. 62(a) expired, Motorola served a Court-issued Citation to Discover Assets on Hytera. Dkts. 1005, 1021-2. The Citation contains transfer restrictions that expressly prohibit Hytera from "making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled . . . ." Dkt. 1021-2 at 7-8. The Citation also imposes discovery obligations that "are continuing in nature," including by requiring Hytera to produce documents relating to Hytera's assets, investments of any type, loans, credit lines, communications with banks and lenders, actual or proposed financial transactions, the sale or disposition of any asset in which Hytera has an interest, transfer of assets from Hytera to any third party, and amounts Hytera expects to be paid and the approximate date Hytera expects to receive funds. *Id.* at 13-14. Judge Norgle affirmed the transfer restrictions in a March 25, 2021 Order and noted that Hytera's violation of the Citation's transfer restrictions are "punishable as contempt of court." Dkt. 1172 at 13, 18. Judge Norgle reaffirmed the Citation's ongoing discovery obligations and transfer restrictions in his July 5, 2022 Order. Dkt. 1348 at 3 ("The Court takes Hytera at its word that it has not stopped and ***will not stop producing relevant documents***, ***and will comply with*** the Court's Orders and Motorola's citations, including ***Motorola's transfer restrictions***."). Subsequently, this Court likewise made clear that "[i]f Hytera can direct the disposition of the assets of . . . any of its other subsidiaries, that is information Hytera must disclose ***immediately*** under the citation order . . . ." Dkt. 1461 at 15.

**B.      Hytera Has Previously Concealed Its Asset Sales to Avoid Paying Motorola**

Hytera has repeatedly made surreptitious asset sales and dissipated the proceeds to creditors other than Motorola. In July 2022, Hytera sold another subsidiary, Sepura, for

approximately $180 million and used those proceeds to ████████████████ and to pay down ████████████████. Dkt. 1360 at 1. Before then, in 2020, Hytera sold its headquarters building in Houhai, China for $327 million and then later disposed of those funds to ████████ and ████████ well into 2021, after the Citation was issued. Dkt. 1281-1 ¶ 11; Dkt. 1267 ¶ 9 & n.6. Likewise, in 2021, Hytera sold over 5% of its stock to raise $134 million in cash but did not provide any information on where that money went. Dkt. 1286-1 ¶ 42. In all, Hytera has admitted that, instead of paying Motorola the judgment debt it owes, it repaid ***hundreds-of-millions of dollars***' worth of loans it allegedly owes to banks in China. Dkt. 1405 at 15; Dkt. 1454-1 at 226:11-227:25 ("HCC has paid down its debt ***$600 million in three years***."). Hytera did not give the Court or Motorola prior notice or produce pertinent documents for any of these transactions.

### C. Hytera Sold Its Wholly-Owned Subsidiary And Used $19M In Sale Proceeds To Pay Other Creditors Without Court Notice Or Approval

On July 16, 2025, Hytera executed a "Share Purchase Agreement" by which Hytera's wholly-owned subsidiary, Teltronic, was sold to Nazca Capital for €75.5 million (~$88M). Ex. 2; Ex. 3 (payment receipt). Hytera's board of directors and its "supervisory board" approved the sale. Ex. 4 at 7 ("this transaction has been considered and approved"); *see also* Ex. 5 at 3 (Hytera July 16 Board resolution approving sale); Ex. 6 at 3 (approval by Hytera's "Supervisory Board"). Hytera's board documents also state that Hytera controls the funds and would use the proceeds to "repay the bank debt . . . and . . . to repay other debts." Ex. 5 at 4; Ex. 4 at 9 (similar).

In a series of transactions over ████████, 2025, essentially all of the €75.5 million Teltronic sale proceeds (€████████) were transferred to Hytera through its subsidiaries. Exs. 7–9 (payments to Hytera ████████████); Exs. 10–13 (transfer to Hytera ████████████ ████████); Exs. 14–17 (transfer to Hytera Communications Co. Ltd.). None of this was disclosed to the Court or Motorola. On July 23, 2025, after reading press releases, Motorola

confronted Hytera, stating that the sale violates the Citation's transfers restrictions, which bar the sale and any transfer of the proceeds. Ex. 1 at 5-6. Motorola asked Hytera to "1. Confirm all consideration Hytera will receive from the sale, including cash" and "2. Identify all dates and amounts of any payments Hytera will receive from any source . . . ." *Id.*

The next day, on July 24, Hytera said it would respond "next week." *Id.* at 4. Motorola responded the same day, raising "serious concerns over Hytera's willingness to preserve the status quo with respect to consideration it plans to receive from this transaction" and asking again when Hytera would receive any payment for the transaction. *Id.* at 3-4. Rather than providing that information, Hytera transferred ███████ RMB (~$████████) that same day, on July 24, to China Everbright Bank. Ex. 18. The next day, July 25, Hytera said it "anticipate[d] being able to provide [Motorola] with more specific details as to timing and the amounts to be transferred next week." Ex. 1 at 3. Replying the same day, Motorola stressed that "Hytera continues to refuse to simply state **when** and in what amounts it will be paid" (original emphasis) and that Motorola was "preparing an emergency motion for contempt and escrow of the sale proceeds . . . ." *Id.* at 2. Motorola again asked for discovery (*id.*), but Hytera instead made **another** distribution of the sale proceeds, paying RMB ████████ (~$████) that same day to ████████████. Ex. 19.[3]

On Monday July 28, Motorola filed its Emergency Motion to hold Hytera in contempt and for escrow of the Teltronic sale proceeds. Dkt. 1869. Hytera opposed on the morning of July 30 (Dkt. 1872) and the Court held a hearing the same day. During the hearing, Hytera admitted that

---

[3] Hytera stated during the August 8 hearing that Hytera paid "Bank of China" (Ex. 20 at 13:20, 14:20, 30:17) but its documents showed no such payment. When asked, Hytera stated on August 18 that it misspoke and meant to identify ████████████. Ex. 21. However, Hytera only produced a document showing a ~$████ transfer between ████ accounts at ████. Ex. 19. Hytera's lawyers represented on August 20 that only ████████████ in Hytera's transfer account and would provide a loan settlement certificate "around September 1." Ex. 21.

it received the sale proceeds, and that those proceeds were subject to the Citation:

> [T]he **proceeds were ultimately moved** up the corporate chain **to Hytera Communications Corp., Ltd.**, which is the judgment debtor, the defendant in this case, and **_is subject to the citation_**. And so the 88 million, that cash, ultimately gets into HCC's possession and then therefore **_is something that's subject to the citation_**.

Ex. 22 (Tr. at 14:3–9, 25:10–11). Hytera also admitted at the hearing that "HCC did, however, agree with it [the Teltronic sale]. They said we [Hytera] own Teltronic right now as an asset" (*Id.* at 15:21–23) and "Hytera did agree with the sale for the reasons that . . . they'll maximize value out of this asset. . . . It was transferred into cash . . . ." *Id.* at 18:12–15. Hytera additionally admitted that during the "last week, $19 million has been paid, has left Hytera's possession, to the banks" (*id.* at 25:17–18), but never specified when. Subsequent discovery has revealed Hytera paid its banks **after** Motorola raised the Citation transfer restrictions on July 23.

The Court issued a TRO requiring Hytera to place the $69 million in sale proceeds still in its possession into escrow by August 6 (Dkt. 1878) and pursuant to the Court's Modified TRO (Dkt. 1889), Hytera paid Motorola $32 million (net Chinese income tax) and deposited $37 million into escrow on August 6. On August 6, the parties submitted a Joint Status Report, where Hytera stated that "[i]t does not intend to contest the distribution to Motorola" but wanted an opportunity for Hytera's lenders to intervene. Dkt. 1886 at 2. On August 8, the Court held a status hearing, during which Hytera identified for the first time the two banks it had already distributed money to as "Everbright Bank and Bank of China" (Ex. 20, Tr. at 13:19–20) and that "we can't get the 19 million back from [those banks]" and that "if ordered to pay that 19 million – to pay another 19 million, [Hytera] would come up with it . . . ." *Id.* at 14:19–22. Hytera again confirmed that the cash that Hytera received from the sale was covered by the Citation. *Id.* at 16:2–4. Although Motorola asked, Hytera again never said *when* it transferred money to its banks. *Id.* at 17:15–19.

The Court set an August 15, 2025 deadline for any Hytera creditor to intervene and for

Hytera to produce four categories of discovery. Dkt. 1887. No Hytera creditor intervened to claim priority to the escrowed $37 million, and Hytera produced documents showing that (1) Hytera signed the Share Purchase Agreement regarding the Teltronic sale on July 16, 2025 (Ex. 2); (2) Hytera started receiving Teltronic sale proceeds on July 17, 2025 (Ex. 14); and (3) Hytera transferred $19 million in Teltronic sale proceeds to other creditors on July 24 and 25, 2025. Exs. 18–19. Then, despite claiming for years it must pay its banks before Motorola, Hytera confirmed in the August 19 Joint Motion that, despite placing $37 million in escrow, it told its banks it "is confident that it will meet all upcoming loan repayments and will not default." Dkt. 1892 at 2.

## III. HYTERA SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE CITATION ORDER IN MULTIPLE WAYS

Civil contempt requires clear and convincing evidence of: (1) a court order that sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning that the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor did not make a reasonable and diligent effort to comply. *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). All factors are met by three separate acts: Hytera's Teltronic sale, use of the proceeds to pay other creditors, and failure to produce required discovery.

### A. The Citation Order Imposes Unambiguous Transfer Restrictions And Discovery Obligations

The Citation is a court order that unambiguously prohibits Hytera from transferring or disposing of any non-exempt assets and cash. Dkt. 1021-2 at 7–8; *NHC LLC v. Centaur Constr. Co.*, 2025 WL 1547264, at *3 (N.D. Ill. May 30, 2025) ("'restraining provision' . . . command[ing] respondent] not to 'transfer' or 'dispose' of any non-exempt assets he maintains" are the "Court's unambiguous commands"); *Clay Fin. LLC v. Mandell*, 2020 WL 13608316, at *5 ((N.D. Ill. Nov. 30, 2020) ("Field is violating the unambiguous terms of the Citation[.] By the terms of the Citation, Field is not permitted to 'pay over' or 'dispose' of his assets, including his stock holdings.").

The Citation transfer restriction prohibits the sale of Hytera's wholly-owned subsidiary, which is not property exempt from execution or garnishment. *See* 735 ILCS 5/2–1001. It also prohibits Hytera from dissipating any sale proceeds. *Id.* When a judgment creditor serves a citation, the "balance due on the judgment becomes a lien" on the judgment debtor's assets. 735 ILCS 5/2–1402(m).[4] The lien binds "all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation." 735 ILCS 5/2–1402(m)(1); *see also* Dkt. 1172 at 12–13. Citation restraining provisions prohibit the respondent from "making or allowing any transfer or other disposition of . . . any property not exempt from the enforcement of a judgment therefrom . . . and from paying over or otherwise disposing of any moneys not so exempt which are due . . . to the judgment debtor[.]" 735 ILCS 5/2–1402(f)(1). "This restraining provision assists the judgment creditor in asset discovery and satisfaction of judgment" and prevents the judgment debtor from "frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets . . . in the possession of [the] debtor . . . ." *Clay*, 2020 WL 13608316, at \*4. While Hytera argues that it can use cash generated from asset sales "for ordinary business" (Ex. 20 at 25:20-22), there is no such exception to the Citation. *Shales*, 847 F. Supp. 2d at 1110 (transfer of $41k for payroll violated citation); *Voso v. Ewton*, 2017 WL 2653143, at \*3 (N.D. Ill. June 20, 2017) (debtor cannot prioritize operations over court order); *Clay*, 2020 WL 13608316 at \*5 (selling assets to pay expenses and debts violated citation). And contrary to Hytera's claims (Ex. 20 at 24–25), Motorola repeatedly told Hytera it must seek Court approval before using

---

[4] Supplementary proceedings to enforce a money judgment "must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). "In Illinois, 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 govern supplementary proceedings." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1111 (N.D. Ill. 2012). "A citation to discover assets is one such proceeding." *Clay Fin.*, 2020 WL 13608316, at \*3.

proceeds from asset sales for operations or debt payment, from correspondence in 2023 (Ex. 23 at 2, 6) through the pending turnover briefing in February 2025. Dkt. 1846 at 12 (citing Court Orders rejecting Hytera's argument); Dkt. 1803 at 20. The Court has also never ruled that Hytera's prior misconduct was permissible under the Citation; to the contrary, the Court instead reminded Hytera of the Citation's ongoing obligations. Dkts. 1172 at 13, 18; 1348 at 3; 1461 at 15.

The Citation also unambiguously required Hytera to produce documents about the Teltronic sale. Dkt. 1021-2. The Citation clearly covered Hytera's board approvals; Hytera's execution of the purchase agreement; Hytera's anticipated and actual receipt of proceeds; supposed communications with Hytera's banks regarding the sale and plans to pay the banks; and Hytera's transfers of sale proceeds. *Id.* at 13–15 (Requests 1, 4, 7, 11, 13, 15, 18, 19, 21 (all amounts Hytera expects to be paid and approximate date of expected payment), 22 (all payments Hytera expects to make or has made), 26 (any payment Hytera received)). The production obligations are "continuing in nature" and require "immediate[]" supplements. *Id.* at 13; Dkt. 1461 at 15.

The Court may hold Hytera in contempt for violating the Citation. *NHC LLC*, 2025 WL 1547264, at *3 (citing 735 ILCS 5/2–1402(f)(1)); *Clay Fin.*, 2020 WL 13608316, at *8. The Citation created a judgment lien binding all nonexempt property in Hytera's "possession or control . . . or which may thereafter be acquired or come due to [Hytera] to the time of the disposition of the citation." 735 Ill. Comp. Stat. 5/2-1402(m)(1); Dkt. 1172 at 12–13. Consistent with that lien, the Citation prohibits Hytera from transferring assets without Court approval. Dkt. 1021-2 at 7–8; 735 Ill. Comp. Stat. 5/2-1402(f)(1). The Court has repeatedly confirmed the Citation's transfer restrictions and ongoing discovery obligations. Dkt. 1172 at 18; Dkt. 1348 at 3; Dkt. 1461 at 15.

### B. Hytera Violated the Citation's Transfer Restrictions By Its Sale Of Teltronic, Use Of The Sale Proceeds, And Failure To Timely Provide Discovery

Hytera's sale of Teltronic and use of the proceeds to pay other debts without Court approval

violates the Citation's unambiguous transfer restrictions. Teltronic is a wholly-owned subsidiary of Hytera (Ex. 4 at 7) and Hytera admitted that Teltronic was a Hytera "asset." Ex. 22 at 15:21–23 ("HCC did, however, agree with it [the Teltronic sale]. They said *we own Teltronic right now as an asset*"), 18:12–15 ("Hytera did agree with the sale for the reasons that . . . they'll maximize value out of this asset. . . . It was transferred into cash . . . ."). Hytera signed the Share Purchase Agreement (Ex. 2 at -3041) and both Hytera's board of directors and supervisory board approved the sale. Ex. 4 at 7; Ex. 5 at 3; Ex. 6 at 3. Hytera also admitted at the July 30, 2025 hearing that it "agreed" with the sale (Ex. 22 at 15:21–23, 18:12–15) and that the cash proceeds were in its possession, under its control, and "subject to the Citation." *Id.* at 14:3–9, 25:10–11.

Because Teltronic and the proceeds from its sale were Hytera assets in Hytera's possession and control, they were subject to the Citation's transfer restrictions (as Hytera admitted) and cannot be disbursed to other creditors without prior Court approval. *NHC LLC*, 2025 WL 1547264, at *3 ("[judgment debtor's] repeated unaccounted-for transfers of assets blatantly disregarded this Court's unambiguous commands"); *Clay Fin.*, 2020 WL 13608316, at *5 (judgment debtor "is violating the unambiguous terms of the Citation against him by selling assets and using the proceeds for personal use," such as paying other debts). Hytera's argument that its banks "conditioned" the Teltronic sale on receiving $50M+ of the sale proceeds (Ex. 22 at 21:17-18; Dkt. 1873 at 3) is not supported by any evidence and is belied by Hytera's and its lenders' decisions to abandon supposed priority claims to the escrowed $37M (Dkt. 1892). Further, Hytera's August 19 assertion that it told its banks it is "confident that it will meet all upcoming loan repayments and will not default" (*id.* at 2) confirms that one of Hytera's primary arguments against paying Motorola—that it cannot afford to because it must pay its banks first (Dkt. 1824 at 13–17)—is inaccurate. As Motorola has shown (including in its pending turnover motion), Hytera is a cash-

and assets-rich company capable of paying the Judgment. Dkt. 1803 at 13-14 (citing Westerman Decl.). It simply repeatedly favors its own interests over Motorola's, despite the Court's Citation.

Tellingly, Hytera refused to disclose that it would receive $88 million from the Teltronic sale, that it actually did receive that amount, or that it transferred $19 million until Hytera claimed it was too late to recover the funds. When Motorola told Hytera on July 23 that the sale violated the Citation, and asked Hytera to "[i]dentify all dates and amounts of any payments Hytera will receive from any source for this transaction" (Ex. 1 at 5), Hytera said the next day that it would respond "next week"—*when it had already received all of the sale proceeds over* ██████████ Hytera's timing prevented Motorola from seeking turnover of those funds and from stopping Hytera's $19 million of bank payments on July 24 and 25. Compounding the issue, Hytera repeatedly evaded acknowledging that it made bank payments after Motorola's July 23 correspondence until its document production on August 15, 2025. Ex. 20 at 7:9-11, 17:10-19.

### C. Hytera's Actions Are All Significant Citation Violations

There is no question that Hytera's sale of Teltronic, use of $19M to pay other debts, and failure to produce discovery are significant violations and do not substantially comply with the Citation. *Radio One, Inc., v. Direct Media Power, Inc.,* 2018 WL 4685470, at *9 (N.D. Ill. Sep. 28, 2018) ("by transferring large sums that were indeed its own property, [judgment debtor] did not 'substantially' comply with the citation's restraining provision"). Despite being fully aware of the transfer restrictions—and agreeing that they applied to the cash sale proceeds once in hand— Hytera did not notify the Court or Motorola of the sale, receipt of funds, or payments to Hytera's banks. That Hytera plowed forward with selling its subsidiary, receiving the $88M proceeds, and distributing $19M to its banks is a willful disregard of the Citation, particularly given Motorola's July 23 objections and information requests. These violations are especially egregious since Hytera has repeatedly obfuscated its finances and ability to pay the Judgment. *Clay*, 2020 WL 13608316,

at *7 (Citation violations are significant where "Plaintiffs remain unable to access a full picture of [debtor's] financial situation and ability to satisfy the judgment"). While Hytera touts the sale and subsequent payment to Motorola as efforts to pay the Judgment, Hytera's Citation violations yet again allowed it to improperly divert another $19M for its own benefit.

### D. Hytera Was Not Reasonable or Diligent in Complying with the Citation

Hytera did not seek a Court order allowing the sale or distribution of $19 million to its other creditors (as required by the Citation), did not give advance notice to the Court or Motorola of the sale, and delayed answering Motorola's basic questions about it until after dissipating significant funds. Hytera also has not substantiated any supposed efforts to recover the $19M.

This is not the first time Hytera violated the transfer restrictions. In July 2022, Hytera sold another subsidiary, Sepura, for €160 million in cash, which Hytera used to repay "████████ ████" of ████████. Then, Hytera gave the balance of the money to ████████████████ ████████████, rather than using those proceeds to satisfy the outstanding Judgment. Dkt. 1352 at 7; Dkt. 1352-1 ¶ 12. ████████████████████ to Hytera, which Hytera admitted it used to pay lenders and suppliers instead of paying Motorola. *Id.* And in 2021, Hytera improperly sold over 5% of its stock to raise $134 million in cash without disclosing the sale or what happened to the cash it raised. Dkt. 1286-1 ¶ 42. All of this financial chicanery is barred by the Citation.

Hytera is aware that the impropriety of its Sepura stock sale as a violation of the Citation is pending before the Court. Dkts. 1803, 1824. Although Hytera has maintained a baseless argument that the sales were not violations (Dkt. 1824), Hytera should unquestionably have provided documents concerning the Teltronic sale under the Citation, notified the Court, and sought Court approval before engaging in the exact same behavior that is currently challenged.

## IV. THE COURT SHOULD ORDER SEVERAL SANCTIONS

As a remedy for Hytera's civil contempt, Motorola asks that the Court order Hytera to:

1. Make all possible efforts to have the $19M in Teltronic sale proceeds returned from Hytera's creditors, and file a status report within two weeks detailing Hytera's efforts, with documentary evidence showing Hytera's efforts, its creditors' responses, and any return of funds;

2. To the extent those efforts do not result in return of the $19 million and payment thereof to Motorola within two weeks, turn over to Motorola within two weeks of an Order on this Motion the additional $19M in Teltronic sale proceeds that Hytera paid to its creditors;

3. Pay Motorola's attorneys fees and costs related to the Teltronic sale, Motorola's Emergency Motion, this Motion for Contempt, and all related status reports and hearings; and

4. Submit monthly sworn affidavits to Motorola, by the 10th calendar day: (i) detailing every payment, transfer, or receipt of $100,000 or more by Hytera or any of its subsidiaries in the preceding month; (ii) identifying all amounts of $100,000 or more that Hytera or any of its subsidiaries expects to receive by the next report, and the expected date of such payment; and (iii) identifying all amounts of $100,000 or more that Hytera or any of its subsidiaries intends to pay to anyone by the next report, at least two weeks prior to the intended payment.

For civil contempt, "[t]he court has 'broad discretion to fashion a remedy that coerces [Defendant's] compliance with the Court's orders.'" *Clay Fin.*, 2020 WL 13608316, at *8. Courts may order coercive sanctions to induce "a recalcitrant party . . . to comply with an express court directive" and remedial sanctions "to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience." *Id.*; Dkt. 1172 at 23 ("when a judgment debtor engages in improper conduct to dissipate or hide assets and evade satisfying the judgment, the Court has broad authority under Section 2-1402 to enter a variety of collateral orders to effectuate transfers of the judgment debtor's assets and satisfy the judgment."). The requested sanctions properly remedy the harm to Motorola from Hytera's Citation violations (requests 1–3 above, including turnover of funds that should have been paid to Motorola) and proportionally coerce compliance (requests 1 and 4), as opposed to punishing past conduct (the remedy for criminal contempt (18 U.S.C. § 402)). Turnover of the $19M is also justified for the same reasons as turnover of other Hytera assets. Dkt. 1803 at 13-20; Dkt. 1846. *NHC*, 2025 WL 1547264, at *5 (ordering paying amounts transferred in violation of the citation plus fees, and monthly reporting, as ***civil*** contempt sanctions).

14

This Court has entered similar sanctions for civil contempt on very similar facts. In *Clay*, the judgment debtor used assets of a wholly-owned subsidiary to pay down its other debts and personal expenses. 2020 WL 13608316, at *4–5. Just like Hytera's argument that it used the sale proceeds for normal expenses, the judgment debtor in *Clay* argued that it "is not selling assets" but rather "has been getting loans to cover living expenses." *Id*. at *5. The *Clay* Court rejected that argument, finding a violation of nearly identical Citation transfer restrictions "by selling assets and using the proceeds for personal use." *Id*. The Court also found that the debtor violated the Citation by failing to produce documents disclosing the existence of the wholly-owned subsidiary's assets used to pay other creditors. *Id*. at *6. This Court held the debtor in contempt, confirmed ongoing applicability of the transfer restrictions and discovery obligations, ordered filing a sworn affidavit detailing the steps taken to comply with the Citation, ordering production of additional discovery, and awarding fees and costs. *Id*. at *8–9; *NHC LLC*, 2025 WL 1547264, at *5 (order to pay fees and amounts transferred in violation of citation, to submit monthly reports, and other sanctions).

Hytera has repeatedly shown blatant disregard for Court orders unless and until it is held in contempt and sanctioned to ensure compliance. Hytera claimed it could not pay ~$50 million owed under the Royalty Order, but paid it days after facing a world-wide injunction. Hytera also claimed it could not withdraw its action in a Shenzhen Court but did so after the Court entered a world-wide injunction. And for years, Hytera claimed it must pay its creditors before Motorola— a demonstrably untrue claim given Hytera's confirmation that, despite putting $37M earmarked for its creditors in escrow, it will pay its creditors without defaulting. The requested sanctions are reasonable to coerce compliance with the Citation and remedy the harm inflicted on Motorola.

## V.      CONCLUSION

Motorola respectfully requests that the Court grant this Motion. If the Court desires oral argument, Motorola requests to include this issue in the October 14–15, 2025 hearing.

DATED: August 21, 2025

Respectfully submitted,

_/s/ Adam Alper_

Adam Alper (*admitted pro hac vice*)
adam.alper@kirkland.com
Akshay S. Deoras (*admitted pro hac vice*)
akshay.deoras@kirkland.com
Brandon H. Brown (IL Bar No. 266347 CA)
brandon.brown@kirkland.com
Laura Vartain Horn (*admitted pro hac vice*)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (*admitted pro hac vice*)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
Telephone: (714) 982-8822

Christopher Lawless (*admitted pro hac vice*)
christopher.lawless@kirkland.com
Ali-Reza Boloori (*admitted pro hac vice*)
ali-reza.boloori@kirkland.com
Justin Singh (*admitted pro hac vice*)
justin.singh@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

David Rokach (IL SBN: 6279703)
david.rokach@kirkland.com
KIRKLAND & ELLIS LLP
333 W Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Leslie M. Schmidt (*admitted pro hac vice*)
leslie.schmidt@kirkland.com
Joshua L. Simmons (*admitted pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

Facsimile: (212) 446-4900

Attorneys for Plaintiffs
*Motorola Solutions, Inc. and Motorola
Solutions Malaysia SDN. BHD.*

### CERTIFICATE OF SERVICE

I, Adam Alper, an attorney, hereby certify that on August 21, 2025, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  August 21, 2025

*/s/ Adam Alper*
Adam Alper